Cristina C. Arguedas (Cal. Bar No. 87787)
Ted W. Cassman (Cal. Bar No. 98932)
Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Email: arguedas@achlaw.com
       cassman@achlaw.com

Attorneys for James Larkin

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES LARKIN,<br><br>Defendant. | NO. CR 18-00422 - 02-PHX-SPL<br><br>DEFENDANT JAMES LARKIN'S MEMORANDUM OF OPPOSITION POINTS AND AUTHORITIES IN SUPPORT OF REASONABLE CONDITIONS FOR PRETRIAL RELEASE |

## I. INTRODUCTION

For almost 50 years, James Larkin has been a leading force in hard-hitting investigative journalism, speaking truth to government, the rich and the powerful. As the publisher of the *Phoenix New Times* and sixteen other weekly newspapers of Village Voice Media Holdings, Inc., Mr. Larkin has advocated for freedom of expression under the First Amendment, specifically on the internet. As a publisher of third party content, Mr. Larkins' activities that are the subject of this indictment were protected by the First Amendment.

Mr. Larkin's reward for these laudatory efforts are the instant indictment and the government's request for detention pending trial. But that request and the

underlying assertions that Mr. Larking poses a risk of flight and/or a danger to the community are without merit. The acts that the government charges as alleged crimes derive from Backpage.com's publication of advertising written and posted by others with whom Mr. Larkin had no contact whatsoever. Far from absconding or avoiding process, Mr. Larkin has voluntarily appeared in every court that has requested his presence, including a pending state criminal case in California that previously involved analogous charges to those now filed here (which the court in that case dismissed).[1] He may be counted on to continue that record. Accordingly, the Court should order Mr. Larkin's release on the following terms and conditions:

- A $500,000 appearance bond.
- An agreement to surrender of his passport to the Clerk of the Court forthwith in the event it is released by the Court in California.
- Reporting to a pretrial services office as required by that officer.
- Travel within the United States.
- Make all required court appearances.

---

[1] On September 26, 2016, Mr. Larkin was charged by complaint in Sacramento, California with ten felony counts of pimping and conspiracy based on third-party advertisements posted on Backpage.com. After being admitted to bail in the amount of $250,000, Mr. Larkin made all required court appearances. On December 9, 2016, the court sustained a demurrer and dismissed all of the charges. The California Attorney General's office filed a second criminal complaint on December 23, 2009, restating the pimping charges and adding charges of money laundering based on Backpage.com's receipt of payments from users for ads posted on the website. The court ultimately dismissed those charges as well, by order dated August 23, 2017, while allowing the state to continue pursuing other money laundering charges based on allegations of bank fraud or wire fraud. After the filing of the renewed complaint, the court permitted Mr. Larkin to remain free without posting any bail has and he returned for four court appearances as ordered. On April 28, 2016, Mr. Larkin again posted bail in the amount of $250,000 and surrendered his passport to the court. These facts are further elaborated below.

These conditions are more than sufficient to reasonably ensure that Mr. Larkin will attend all court appearances and that his release does not pose a risk of danger to any person or to the community.

## II.   FACTS[2]

### A. Background

Sixty-eight years old, Mr. Larkin has lived virtually his entire life in the Phoenix, Arizona area. He graduated from Gerard High School in 1967. After two years of college, Mr. Larkin commenced his newspaper career in 1972 by joining the *Phoenix New Times* as a salesperson and reporter. He was all of 21 years old. In 1972, he left New Times for two years to learn the printing business at Sun Publishing. Returning to the *New Times* in 1977, Mr. Larkin, Michael Lacey and others built a small newspaper empire over the next 30 years. By 2001, New Times, Inc. had grown to 13 weekly newspapers in major cities across the United States. In 2006, with the acquisition of the Village Voice group of publications, the company took the name Village Voice Media Holdings ("VVM") and operated 17 weekly papers. VVM sold its interests in the newspapers in 2012 to a group of long-time company executives.

In 2004, as the Internet (and, more particularly, Craigslist) was eroding newspaper classified advertising (New Times, Inc. launched Backpage.com as an online classified advertising service. VVM sold its interests in Backpage.com, LLC to Carl Ferrer in May 2015.

### B. Family Ties

---

[2] The factual assertions contained herein are set forth as a proffer and will supplement with supporting documentation if necessary.

Mr. Larkin has been married to Margaret Larkin for 25 years. He is the father of six children and two grandchildren. Two of his children are college students, and one attends a private high school in San Francisco. All three remain financially dependent upon Mr. Larkin. One of his children lives in the Phoenix area. The others live in various regions of the country. None lives abroad. Mr. Larkin is close to each of his children and is in regular contact with them.

### C. Two Prior (Unfounded) Arrests, No Convictions

In 2007, Messrs. Larkin and Lacey were wrongfully arrested by the Maricopa County Sheriff based on articles critical of Sheriff Joe Arpaio. The charges were dismissed. Thereafter, Messrs. Larkin and Lacey sued Maricopa County and its sheriff, winning a settlement of $3.75 million, which they donated to various nonprofit immigrant rights groups in Arizona.

On September 26, 2016, the Attorney General of California filed a criminal complaint against Messrs. Larkin, Lacey and Ferrer charging one count of conspiracy and nine counts of pimping. All of the charges derived from advertisements posted on Backpage.com. Upon learning of those charges, Mr. Larkin voluntarily surrendered to authorities in Sacramento, California on October 10, 2016. On October 13, 2106, Mr. Larkin was admitted to bail in the amount of $250,000. The bail was posted by a bondsman and secured by Mr. and Mrs. Larkin's Napa, California property. (The property is further described below.) Thereafter, Mr. Larkin made all required court appearances. On December 9, 2016, the court sustained a demurrer to all of the charges, holding that the state's charges improperly sought to ascribe liability for online publishing activities, which were

4

barred under Section 230 of the Communications Decency Act (47 U.S.C. § 230) and California law. The case was dismissed and bail was exonerated.

On December 23, 2016, the Attorney General of California filed a new criminal complaint against Messrs. Larkin, Lacey and Ferrer re-charging the same pimping counts and adding 26 counts of money laundering. After notice of the charges, Mr. Larkin voluntarily appeared in court for arraignment on January 24, 2017. All 3 defendants demurred to the charges, and the court put the matter over for hearing without requiring that Mr. Larkin post bail. Thereafter, Mr. Larkin made 3 additional court appearances without any bail having been posted. On April 28, 2017, the third such appearance, Mr. Larkin was again admitted to bail in the amount of $250,000. The bail was once again posted by a bondsman and secured by Mr. and Mrs. Larkin's Napa, California property. Mr. Larkin surrendered his passport to the clerk of the court.

On August 23, 2017, the court sustained the defendants' demurrer and dismissed all of the charges relating to (1) pimping and/or (2) money laundering involving funds allegedly derived from payments by users to post ads on Backpage.com. The order left pending charges of money laundering based on allegations that Backpage committed bank fraud or wire fraud for use of descriptors on users' credit card bills that the state alleged were deceptive (e.g., "BP CLASSIFIED"). On March 5, 2018, defendants filed a motion to dismiss the remaining charges for gross governmental misconduct and/or to suppress evidence on the grounds that the California Attorney General violated California and constitutional law in issuing search warrants and subpoenas for its prosecution. This

motion remains pending.

Throughout the California proceedings, Mr. Larkin has made every court appearance, as required, and he remained at liberty until his arrest on these charges on April 6, 2018.

### D. Real Estate Holdings

#### 1. Paradise Valley Residence

Mr. Larkin has owned and lived in a residence in the Phoenix area since 1982. He and his wife purchased their current residence in 2007. It has a current fair market value of at least $2,775,000. (A copy of a recent appraisal is available for review by the Court.) Mr. Larkin and his wife own it free and clear. Title to the property is now held in Mr. and Mrs. Larkin's revocable living trust.

#### 2. Napa Valley Residence

Mr. and Mrs. Larkin purchased a second residence in Napa, California in 1999 for just under $1.7 million. It has a current fair market of at least $6.7 million. (A copy of a recent appraisal is available for review by the Court.) There is an outstanding revolving credit line on the property, and the balance is zero. Title to the property is now held in Mr. and Mrs. Larkin's revocable living trust.

#### 3. Residence in France

In February 2016, Mr. and Mrs. Larkin purchased a property in Paris, France for $3.7 million. Since that time, the Larkins have expended approximately $750,000 on improvements. The current fair market value is not known. The property is owned free and clear. To facilitate the purchase and maintenance of the property, the Larkins opened a bank account in Paris, France. The account balance as of

6

March 31, 2017 was $293,206 USD.

### E. The Current Case

Mr. Larkin has been aware of the grand jury investigation for more than a year. In March of last year, his counsel sent the government a letter requesting notice if charges were filed and offering to self-surrender. (Exhibit A.) The prosecutors chose to ignore that request.

## IV.  ARGUMENT

Given Mr. Larkin's lifelong residence in Arizona, his insignificant criminal history, his substantial family ties and ties to the community, together with his established record of attendance in court as required, the government has not and cannot carry its burden of showing that Mr. Larkin poses a risk of flight or a danger to the community. To the contrary, a personal recognizance bond is more than sufficient to reasonably ensure the safety of the community and Mr. Larkin's attendance at court appearances. However, in order to accommodate any concerns that the Court may have, we propose that Mr. Larkin be released with the posting of a $250,000 bond secured by his Arizona residence, together with the other conditions set forth above.

### A.  The Bail Reform Act

Under the Bail Reform Act of 1984, "[t]he judicial officer shall order the pretrial release of the person on personal recognizance" or unsecured appearance bond "*unless* the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (emphasis added). Even if the Court

determines that personal recognizance or unsecured release will not accomplish these objectives, the "Act mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' 18 U.S.C. § 3142(e)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

These conditions must be the "least restrictive" conditions necessary to "reasonably assure" the person's appearance and the community's safety. 18 U.S.C. § 3142(c)(1)(B). The provision that conditions "reasonably assure" appearance and safety does not require a *guarantee* of safety or non-flight. *Hir*, 517 F.3d at 1092 n. 9; *United States v. Gentry*, 455 F.Supp.2d 1018, 1032 (D. Ariz. 2006).

18 U.S.C. § 3142(g) sets forth the factors to be taken into account:

(1)  Nature and circumstances of the offense charged;
(2)  Weight of the evidence;
(3)  History and characteristics of the defendant; and
(4)  The nature and seriousness of the danger to any person in the community that will posed by the defendant's release.[3]

These are "the factors to be considered by a judicial officer in determining whether the government has proved by 'clear and convincing' evidence that it should be one of the rare cases warranting detention." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *United States v. Maldonado-Alarcon*, 2014 WL 4853098 *2 (D. Idaho 2014). "Only in rare cases should release be denied." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). "Doubts regarding the propriety of release are to be resolved in favor of defendants." *Id.* Courts considering these

---

[3] The least important of the factors to be considered is the weight of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

8

factors must "not [be] unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons." *Motamedi*, 767 F.2d at 1407.

The statute requires that the facts a judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (adopting the language in *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985)). Clear and convincing evidence in the context of the Bail Reform Act means proof that a particular defendant actually poses a danger to the community, not that a defendant in theory poses a danger. *United States. V. Patriarca*, 948 F.2d 789 (1st Cir. 1991). The government at all times maintains the burden of proving by a preponderance of the evidence that the person poses a risk of flight, and by clear and convincing evidence that the person is a danger to any other person or the community. *Motamedi*, 767 F. 2d at 1407; *Hir*, 517 F.3d at 1086; 18 U.S.C. § 3142(f)(2)(B).

**B.    Mr. Larkin is not a Flight Risk**

The conditions proposed by Mr. Larkin reasonably ensure that he will make all required court appearances. Mr. Larkin is a life-long resident of Arizona with deep and well-established roots to the community. In legal proceedings in Arizona in 2007 and in California over the last 18 months he has consistently demonstrated his respect for court orders and his willingness to attend court, despite facing a significant potential term of imprisonment and without having posted any bond at all.

9

Mr. Larkin's history in the California case demonstrates that he does not pose a serious risk of flight.

### C. Mr. Larkin does not pose a Risk to the Safety of a Person or to the Community

Age 68, Mr. Larkin has led a long and law-abiding life. He has no convictions and only 2 previous arrests. The first arrest was unlawful, and the charges were dismissed. The second arose from charges based on largely the same theory the government asserts here, *i.e.*, that Mr. Larkin allegedly could be criminally liable for his former ownership interests of Backpage based on allegations that third-party users who posted ads on the website engaged in criminal conduct. However, this theory has been rejected by *every court* that has considered it. Courts have uniformly held that Backpage's publishing and receiving payments for online ads is legal, such ads are constitutionally-protected speech, and the government cannot pursue criminal charges against a website operator based on accusations of generalized knowledge, *i.e.*, that it knew or should have known that some individuals misused the site for unlawful purposes. *See, e.g., M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC,* 809 F.Supp.2d 1041 (E.D. Mo. 2011); *Backpage.com, LLC v. McKenna,* 881 F.Supp.2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper,* 939 F.Supp.2d 805, 830 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman,* 2013 WL 4502097 (D.N.J. Aug. 20, 2013); *Backpage.com, LLC v. Dart,* 807 F.2d 229 (7th Cir. 2015), *cert. denied,* 137 S. Ct. 46 (2016); *Doe ex rel. Roe v. Backpage.com, LLC,* 104 F.Supp.3d 139 (D. Mass. 2015), *aff'd sub. nom. Jane Doe No. 1 v. Backpage.com, LLC,* 817 F.32d 12 (1st Cir. 2016), *cert. denied,* 137 S. Ct. 622 (2017); ; *In re Grand Jury Subpoenas to Backpage.com, LLC and Village Voice*

*Media Holdings, LLC*, No. GJ12-172RAJ (W.D. Wash. Jan. 17, 2013); *People v. Ferrer*, No. 16FE019224, 2016 WL 7237305, at *9 (Cal. Super. Ct. Dec. 9, 2016); *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017); . *see also Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003), *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967 (N.D. Ill. 2009).

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

The government has requested onerous conditions of release that are unreasonable and calculated to keep Mr. Larkin incarcerated. But Mr. Larkin poses neither a risk of flight nor a danger to any person or to the community. We have proposed conditions of release that reasonably ensure that Mr. Larkin will attend court and that he will not commit offenses while released on bail conditions that are reasonable under the circumstances. Mr. Larkin should be permitted to remain at liberty while he vigorously contests criminal charges that are repugnant to the fundamental tenets of free speech. Mr. Larkin's release ordered with the conditions proposed above.

RESPECTFULLY SUBMITTED this 9th day of April, 2018.

By: _____
Ted W. Cassman
Attorneys for Defendant James Larkin

A copy of the foregoing emailed/mailed/delivered this 9th day of May 2018, to:

Dominic Lanza
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
By email: Dominic.Lanza@usdoj.gov

# EXHIBIT A

# ARGUEDAS, CASSMAN & HEADLEY, LLP

Law Offices

803 Hearst Avenue, Berkeley, California 94710
Phone: (510) 845-3000   Fax: (510) 845-3003
www.achlaw.com

Cristina C. Arguedas
Ted W. Cassman
Laurel L. Headley
Julie A. Salamon
Raphael M. Goldman

Of Counsel:
Christy H. Chandler

March 30, 2017

AUSA Kevin Rapp
Office of the United States Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, AZ 85004-4408

Re: Jim Larkin

Dear Kevin,

This letter is to memorialize our conversation today in which I let you know that I represent Jim Larkin in the California criminal case and in any federal case in Arizona, if there should be one.

As I said on the phone, if there were ever a criminal case filed against Jim Larkin, he requests the opportunity to surrender voluntarily. While he currently is in possession of his passport, he is subject to posting it with the California court, as he did last year, if the case proceeds to arraignment in California.

Please let me know if you would like any other information from me on the subject of bail or the case in general.

Sincerely,

Cristina C. Arguedas