# Exhibit N

**Davis Wright Tremaine LLP**
Scott R. Commerson (*pro hac vice* to be filed)
Brendan N. Charney (*pro hac vice* to be filed)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
scottcommerson@dwt.com
brendancharney@dwt.com

**Rusing Lopez & Lizardi, P.L.L.C.**
Daniel J. Quigley (#011052)
Sarah S. Letzkus (#027314)
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
dquigley@rllaz.com
sletzkus@rllaz.com

(*Counsel Continued on Next Page*)

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sojourner Center,<br><br>                    Plaintiff,<br>    vs.<br><br>Backpage.com LLC; *et al.*,<br><br>                    Defendants. | Case No. 2:17-cv-00399-GMS<br><br>**MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(Oral Argument Requested) |

1

**Davis Wright Tremaine LLP**

2

Robert Corn-Revere (*pro hac vice* to be filed)

Ronald G. London (*pro hac vice* to be filed)

3

1919 Pennsylvania Avenue NW, Suite 800

Washington, D.C. 20006-3401

4

Telephone: (202) 973-4200

5

bobcornrevere@dwt.com

ronnielondon@dwt.com

6

7

**Davis Wright Tremaine LLP**

James C. Grant (*pro hac vice* to be filed)

8

1201 Third Avenue, Suite 2200

Seattle, WA 98101-3045

9

Telephone: (206) 622-3150

10

jamesgrant@dwt.com

11

Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.  BACKGROUND ........................................................................................... 2

    A.  Backpage.com ................................................................................ 2

    B.  The Complaint ............................................................................... 4

    C.  Standard of Review ........................................................................ 6

II.  ARGUMENT ................................................................................................. 6

    A.  Plaintiff Lacks Standing to Sue Backpage ................................... 6

    B.  Section 230 Bars Plaintiff's Claims ............................................ 10

        1.  Section 230 Was Designed to Promote Free Speech Online. .... 10

        2.  The Three-Part Test for Section 230 Immunity is Satisfied Here ..................................................................................... 10

        3.  Plaintiffs Cannot Evade Section 230 Through Artful Pleading. ................................................................................ 11

            a.  Backpage's Editorial Choices Are Protected by Section 230 ........................................................... 11

            b.  Notice Liability Cannot Defeat Section 230. ................... 14

            c.  Allegations of Conspiracy Cannot Overcome Section 230 ................................................................................ 15

    C.  Plaintiff Also Fails to State a Claim on Its Various Causes of Action ......................................................................................... 17

        1.  The RICO Claim Fails. ............................................................ 17

            a.  There Is No "Pattern of Racketeering Activity." ............ 18

            b.  Plaintiff Lacks Standing As A Remote Party Whose Claimed Injury Was Not Proximately Caused by Backpage. ......................................................................... 21

            c.  Plaintiff Does Not State A Claim For RICO Conspiracy. ...................................................................... 23

        2.  The Negligence Claim Fails .................................................... 24

        3.  The Nuisance Claim Fails. ....................................................... 24

III.  CONCLUSION ............................................................................................ 25

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

i

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*In re African-Am. Slave Descendants Litig.*,
    471 F.3d 754 (7th Cir. 2006) ......................................................................................... 8

*In re Am. Exp. Co. S'holder Litig.*,
    39 F.3d 395 (2d Cir. 1994) ........................................................................................... 22

*American Income Life Ins. Co. v. Google, Inc.*,
    2014 WL 4452679 (N.D. Ala. Sept. 8, 2014) ............................................................. 11

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*,
    148 Ariz. 1 (1985) ....................................................................................................... 25

*ASARCO Inc. v. Kadish*,
    490 U.S. 605 (1989) ...................................................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 6, 14

*Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*,
    241 F.3d 696 (9th Cir. 2001) ......................................................................... 18, 21, 22, 23

*Backpage.com, LLC v. Cooper*,
    939 F. Supp. 2d 805 (M.D. Tenn. 2013) ............................................................. *passim*

*Backpage.com, LLC v. Dart*,
    807 F.3d 229 (7th Cir. 2015) ........................................................................................ 3

*Backpage.com, LLC v. Hoffman*,
    2013 WL 4502097 (D. N.J. Aug. 20, 2013) ............................................................... 11

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012) ......................................................... 3, 4, 11

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
    88 F. Supp. 3d 543 (E.D. Va. 2015) ........................................................................... 17

*Barkhurst v. Kingsmen of Route 66, Inc.*,
    234 Ariz. 470 (Ct. App. 2014) .................................................................................... 24

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ............................................................................... 10, 17

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................6, 18, 23

*Bowker v. Morton,*
   541 F.2d 1347 (9th Cir. 1976).............................................................8

*Carafano v. Metrosplash.com,*
   339 F.3d 1119 (9th Cir. 2003).............................................................15

*Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.,*
   519 F.3d 666 (7th Cir. 2008)...........................................................7, 23

*Dart v. Craigslist, Inc.,*
   665 F. Supp. 2d 961 (N.D. Ill. 2009)...........................................7, 11, 24

*Davis v. Motiva Enterprises, L.L.C.,*
   2015 WL 1535694 (Tx. App. Beaumont Apr. 2, 2015) .........................14, 17

*Doe No. 1 v. Backpage.com,*
   817 F.3d 12 (1st Cir. 2016) ..........................................................*passim*

*Doe v. AOL,*
   783 So.2d 1010 (Fla. 2001) ..........................................................16, 19

*Doe v. Backpage.com, LLC,*
   104 F. Supp. 3d 149 (D. Mass. 2015)...........................................2, 11, 13

*Doe v. Bates,*
   2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ...............................2, 14, 15

*Doe v. Roe,*
   958 F.2d 763 (7th Cir. 1992).............................................................22

*Duquesne Light Co. v. E.P.A.,*
   166 F.3d 609 (3d Cir. 1999)...............................................................7

*Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.,*
   28 F.3d 1268 (D.C. Cir. 1994) ...........................................................9

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
   521 F.3d 1157 (9th Cir. 2008).....................................................10, 11, 16

*Fulani v. Brady,*
   935 F.2d 1324 (D.C. Cir. 1991) .......................................................7, 8

*GoDaddy.com, LLC v. Toups,*
   429 S.W.3d 752 (Tex. App. Beaumont 2015)...................................13, 14

iii

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Google v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ........................................................................ 2

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998) ...................................................................... 23

*H.J. Inc. v. Northwestern Bell Telephone, Co.*
   492 U.S. 229 (1989) ..................................................................................... 21

*Hebert v. Club 37 Bar*,
   145 Ariz. 351 (Ct. App. 1984) ..................................................................... 24

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ..................................................................................... 22

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) .................................................... 6, 10, 11, 16

*Kathleen R. v. City of Livermore*,
   87 Cal.App.4th 684 (2001) .......................................................................... 25

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ................................................................ 2, 12

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...................................................................... 1

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ...................................................................... 9

*Levine v. Vilsack*,
   587 F.3d 986 (9th Cir. 2009) ........................................................................ 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................... 7

*M.A. v. Village Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011) ............................... 1, 11, 13, 15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ................................................... 6, 14, 25

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) ........................................................................ 1

*Oscar v. Univ. Students Co-op. Ass'n*,
   965 F.2d 783 (9th Cir. 1992) ...................................................................... 22

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*People v. Ferrer*,
    2016 WL 7237305 (Cal. Super. Dec. 9, 2016)...........................................10, 11, 16, 19

*Peters v. LifeLock Inc.*,
    2014 WL 12544495 (D. Ariz. Sept. 19, 2014) ...............................................10

*Pritikin v. Dep't of Energy*,
    254 F.3d 791 (9th Cir. 2001) ...............................................................7

*Salinas v. United States*,
    522 U.S. 52 (1997) ...........................................................................23

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) .........................................................................18

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999)...............................................................22

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't,
AFL-CIO*,
    770 F.3d 834 (9th Cir. 2014)..............................................................18

*United States v. Ackerman*,
    831 F.3d 1292 (10th Cir. 2016)............................................................4

*United States v. Campbell*,
    977 F.2d 854 (4th Cir. 1992)..............................................................20

*United States v. Sanders*,
    929 F.2d 1466 (10th Cir. 1991)...........................................................20

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ......................................................10, 11, 14

*Van Buskirk v. CNN, Inc.*,
    284 F.3d 977 (9th Cir. 2002)................................................................1

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................7

*Witkoff v. Topix, LLC*,
    2015 WL 5297912 (Cal. Ct. App. Sept. 10, 2015)........................................25

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996)............................................................18, 21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

*Yslava v. Hughes Aircraft Co.*,
   1998 WL 35298580 (D. Ariz. June 29, 1998) ..................................................... 25

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ............................................................... 10, 14

**Statutes**

18 U.S.C.
   § 1591 ............................................................................................. 19
   § 1956 ............................................................................................. 20
   § 1956(a)(1) ...................................................................................... 20
   § 1956(a)(1)(B)(i)-(ii) ........................................................................ 21
   §§ 1961-1968 (RICO) ..................................................................... *passim*
   § 1962 ............................................................................................. 21
   § 1962(a) ...................................................................................... 6, 17
   § 1962(b) ........................................................................................... 6
   § 1962(c) ........................................................................................... 6
   § 1964(c) ..................................................................................... 18, 21
   § 1964(d) .................................................................................. 6, 23, 24
   § 2251 ............................................................................................. 19
   § 2252 ............................................................................................. 19
   § 2422 ............................................................................................. 19

47 U.S.C.
   § 230 (Communications Decency Act) ............................................... *passim*
   § 230(c)(1) ..................................................................................... 10, 16
   § 230(e)(3) ......................................................................................... 10

**Rules**

Federal Rules of Civil Procedure
   12(b)(1) ............................................................................................. 1
   12(b)(6) .......................................................................................... 1, 6

Federal Rules of Evidence 201 ................................................................ 1

**Constitutional Provisions**

U.S. Const. amend. I ..................................................................... 1, 10

U.S. Const. art. III .............................................................................. 6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Other Authorities**

Mark Latonero, *The Rise of Mobile and the Diffusion of Technology-Facilitated Trafficking*, Nov. 2012 (USC Annenberg Ctr. on Commc'n Leadership & Policy Research Series on Tech. & Human Trafficking) ........................ 9

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Defendants (collectively, "Defendants" or "Backpage") move, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss for lack of standing and failure to state a claim, including because Section 230 of the Communications Decency Act provides Backpage with complete immunity against liability arising from content created by website users and posted to Backpage.com, 47 U.S.C. § 230 ("Section 230"), and because the Complaint fails to allege sufficient facts to support any of the purported causes of action.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, a domestic violence shelter, alleges several of its clients were victimized by third-party criminals who involved the clients in sex trafficking by posting on the classified advertising website Backpage.com.[1]  Plaintiff has not sued the criminals, but rather the owner and operator of the Backpage.com website, its CEO, and its former owners and executives, despite scores of decisions holding such online publication is protected by the First Amendment and immunized from suit and liability under Section 230.  Plaintiff lacks standing to pursue its claims, which add nothing to well-trod ground establishing federal immunity, fail on their own merits as a matter of law, and should be dismissed.

Numerous courts have held the kinds of claims raised in this Complaint are contrary to constitutional law and foreclosed by federal policy, dismissing virtually identical claims alleged against Backpage based on Section 230's command that "[n]o provider…of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  In *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053-54 (E.D. Mo. 2011), the court rejected claims that Backpage was culpable for sex trafficking based on the website's structure and operation, alleged editorial functions, and purported knowledge by Backpage of illegal acts.  The First Circuit also affirmed dismissal of claims that Backpage's policies sought to

---

[1] Plaintiff references the website throughout the Complaint, *see, e.g., id.* ¶¶ 42, 48, 51, 58-59, 65, and the Court may consider it in deciding this motion.  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).  Judicial notice may be taken of court decisions about the site.  Fed R. Evid. 201; *see Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 435 (9th Cir. 1992).

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

promote "illicit sex trade" and "trafficking of children", holding its practices "[s]ingly or in the aggregate…amount to neither affirmative participation in an illegal venture nor active web content creation." *Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 152, 157 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017).

The Complaint is peppered with conclusory assertions that Backpage somehow "conspired" with purchasers of ads on its site or "created" content via editorial practices. But, stripped of its conclusory verbiage, the Complaint's factual averments about the ads involving Plaintiff's clients show they ***were created and posted by third parties***, *not* Backpage. Compl. ¶¶ 115, 122, 129-132. The practices Plaintiff claims make Backpage a "conspirator" or "content creator" are editorial prerogatives uniformly held immune under Section 230. Such "artful" pleading cannot "skirt[]" Section 230—especially where Plaintiff does not make any *factual* allegations that Backpage created the *specific* ads at issue, but instead relies on conclusions and innuendo drawn from the general design and operation of the website. *See Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1266 (9th Cir. 2016).

Backpage by no means minimizes the grievous harms Plaintiff's clients may have suffered. But Congress made a considered policy judgment that plaintiffs should hold the actual wrongdoers liable rather than cripple the Internet by imposing liability on websites that host third-party-created content. Courts similarly recognize "the importance of preserving free speech on the internet, even though that medium serves as a conduit for much that is distasteful or unlawful." *Google v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). Even in cases where facts are "highly offensive, Congress has decided that the parties to be punished and deterred are not the internet service providers but rather are those who created and posted the illegal material[.]" *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006). In accord with those policy judgments, this case should be dismissed. Not only does Section 230 bar this action, Plaintiff lacks standing and it has failed to state a claim.

## I.    BACKGROUND

### A.    Backpage.com

Defendants are all allegedly the owners or operators of Backpage.com, or otherwise

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

associated with Backpage.com. Compl. ¶¶ 12- 32. Backpage.com is an online classified advertising service through which users can post ads in a variety of categories, including buy/sell/trade, automotive, musician, rentals, real estate, jobs, dating, and services. *See Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013). The site is organized geographically, by state and municipality. *See* Compl. ¶ 42. Until January 2017, Backpage included a category for "adult" services (such as escort services), which—following years of pressure from government actors, including a campaign the Seventh Circuit described as an unconstitutional effort to "crush Backpage," *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015)—has now been shuttered.

Millions of ads are posted every month, making Backpage.com the second-largest online classified ad service in the U.S., after Craigslist. *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1266 (W.D. Wash. 2012). Users create and provide all content for ads they post on the site (both text and images), using an automated interface; Backpage.com does not dictate or require any ad content. *Cooper*, 939 F. Supp. 2d at 813 ("The website works by allowing users to post their own advertisements").

To prevent improper ads or misuse of the site, Backpage.com has terms and rules for posting ads. Users must affirmatively accept the Terms of Use to post ads in any category on the website. *Cooper*, 939 F. Supp. 2d at 813-14. The Terms of Use expressly prohibit the posting or viewing of any adult content or explicit material by anyone under 18 years of age. *Id.*; Backpage.com Terms of Use ¶ 4(a)(ii), available at http://phoenix.backpage.com/classifieds/TermsOfUse. The Terms of Use prohibit advertising illegal activities and nude or lewd photos. *See id.* ¶¶ 4(b), 5. In particular, they specifically forbid: "[p]osting any solicitation directly or in 'coded' fashion for any illegal service exchanging sexual favors for money or other valuable consideration," (*id.* ¶ 4(c)); "[p]osting any material on the Site that exploits minors in any way" (*id.* ¶ 4(d)); "[p]osting any material on the Site that in any way constitutes or assists in human trafficking" (*id.* ¶ 4(e)); and posting "any ad for products or services, use or sale of which is prohibited by any law or regulation" (*id.* ¶ 5). Users are directed to "report any violations of these Terms to: abuse@backpage.com." *Id.*

¶ 18; *see also Cooper*, 939 F. Supp. 2d at 814.

When a user attempts to post an ad in the Backpage.com dating section (or, while it was active, the Adult Services section), a notice appears again warning the user not to post ads about illegal activities, ads that exploit minors, or ads with other harmful content. Commerson Decl. at ¶ 3, Exh. A. The notice includes a link to the "Cybertipline"—an online tool operated by the National Center for Missing and Exploited Children ("NCMEC"), which helps law enforcement locate and rescue missing and exploited children. *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016). The site also contains numerous hyperlinks to a "User Safety" page with links to NCMEC and similar resources. *McKenna*, 881 F. Supp. 2d at 1266. Every ad contains a "Report Ad" button, and Backpage.com has an email address (abuse@backpage.com) for users to notify Backpage.com of any potentially inappropriate ads. *See Cooper*, 939 F. Supp. 2d at 814.

Backpage.com takes other measures to police user posts. *See* Compl. ¶¶ 54-56, 58-59, 65, 67 (screening). "In addition to user reports, Backpage.com monitors…ad[s] through automated and manual reviews." *Cooper*, 939 F. Supp. 2d at 814. By screening, Backpage.com blocks or removes posts and refers ads that may involve child exploitation to NCMEC. *See McKenna*, 881 F. Supp. 2d at 1266-67; *Cooper*, 939 F. Supp. 2d at 814. "Backpage.com also regularly works with local, state, and federal law enforcement officials by responding to subpoena requests, providing officials with Internet search tools, and re-moving posts and blocking users at the request of officials." 939 F. Supp. 2d at 814.

**B.    The Complaint.**

Plaintiff identifies itself as a shelter providing care to victims of domestic violence and claims that, because of Backpage, its mission has been "frustrated" as it has had to "divert" resources "from its mission" so it can care for trafficking victims. Compl. ¶¶ 33, 116-120. The Complaint alleges several unidentified clients of Plaintiff were harmed by third-party criminals. Compl. ¶¶ 33, 121-128. The Complaint also makes allegations about purported "co-conspirators" of Backpage, apparently based on third parties posting ads on Backpage.com—but those allegations appear to have nothing to do with Plaintiff or any of

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   its clients.  Compl. ¶¶ 129-133.  Plaintiff also alleges that Defendants somehow "knowingly

2   conspired" with traffickers to make trafficking "more efficient" by, among things, operating

3   other websites—BigCity.com and EvilEmpire.com—aggregating content from

4   Backpage.com.  Compl. ¶¶ 90-97, 134.  The Complaint is replete with claims about

5   Backpage's purported structure and editorial practices, but contains no plausible allegation

6   that any of the Defendants created either the content of any ads posted concerning

7   Plaintiff's clients or the content of any ads Backpage.com reposted on other websites (much

8   less that any reposted ads pertained to Plaintiff's clients).  *See*, *e.g.*, Compl. ¶ 92

9   ("EvilEmpire organizes and reposts ad[s] posted on Backpage.").  Plaintiff alleges

10  Defendants' website operation and acceptance of payment for ads constitute the RICO

11  predicates of sex trafficking, exploitation, and money laundering.  Compl. ¶¶ 134-147.

12          Apart from conclusory allegations that one of the Backpage entities "owns, operates,

13  designs, and controls the website," *id.* ¶ 12, that "Defendants actively participate in the

14  creation of" ads it hosts, *id.* ¶ 6, that Backpage somehow is "on notice" traffickers may use

15  the website, *id.* ¶ 40, and "took no precautions to prevent [ ] misconduct" by third-party

16  traffickers, *id.* ¶ 173, Plaintiff alleges no specific facts to support a claim that any

17  Defendants either created or developed the content of ads at www.backpage.com or—even

18  more importantly—created or developed any content in the ads that allegedly involved

19  Plaintiff's clients.  *See* Compl. ¶¶ 129-133.  The Complaint vaguely alleges Backpage

20  "creates" and "develops" the content of certain "Sponsored Advertisements" by

21  "enhanc[ing]" them, Compl. ¶¶ 50-52, but there is no claim that any ads concerning

22  Plaintiff's clients were "sponsored," nor is there any attempt to connect other harms alleged

23  in the Complaint to the ads concerning Plaintiff's clients.  *See id.*

24          Plaintiff's other allegations rely on Backpage's general editorial functions—as

25  opposed to any claim that Backpage.com created the content of any particular ad.  *See*, *e.g.*,

26  Compl. ¶¶ 53-69; *see also id.* ¶ 64 (Backpage.com uses filters to ban certain terms from ads

27  posted by users); ¶ 65 (Backpage.com filters ads posted by "*traffickers who attempt to*

28  *advertise*" a child under 18) (emphasis added); ¶ 173 ("*traffickers* used Backpage to post

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

advertisements") (emphasis added).  Plaintiff emphasizes Backpage.com's editing and deletion of offending terms from ads, but takes care to avoid acknowledging the ads are written and posted in the first place by third-party users of Backpage.com.  *See id.*

Plaintiff alleges six causes of action against all Defendants: 1) violation of RICO, § 1962(c); 2) violation of RICO, § 1962(a); 3) violation of RICO, § 1962(b); 4) violation of RICO, § 1964(d);[2] public nuisance, and negligence under Arizona state law.

## C.    Standard of Review.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard" requires more than "a sheer possibility that a defendant has acted unlawfully" and is met only when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation and internal quotation marks omitted).  Further, Section 230 immunity should be resolved at the earliest phase of litigation because it provides "***immunity from suit*** rather than a mere defense to liability and it is effectively lost" if a case is improperly allowed to proceed.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quotation marks and citation omitted); *accord Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) (Section 230 "immunity…should be resolved at an earlier stage of litigation" given law's purpose to protect "an open and robust internet").

## II.    ARGUMENT

## A.    Plaintiff Lacks Standing to Sue Backpage.

Article III of the U.S. Constitution requires Plaintiff to show 1) a concrete and particularized "injury in fact;" 2) that is "fairly ... trace[able] to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the

---

[2] 18 U.S.C. § 1964(d) creates no cause of action; rather, it involves estoppel after a criminal conviction—a circumstance not present here.  The substance of the allegations suggests Plaintiff intended to assert a cause of action for conspiracy under Section 1962(d).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

court;" and 3) "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot satisfy the requirements for standing.

*First*, Plaintiff cannot show Backpage caused Plaintiff's injury. The requisite element of causation is lacking when a plaintiff brings an action "to change the defendant's behavior **only as a means** to alter the conduct of a third party, not before the court, who is the direct source of the plaintiff's injury." *Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991) (internal citation omitted); *see also Warth v. Seldin*, 422 U.S. 490, 506 (1975). In *Warth*, the Supreme Court held prospective town residents lacked standing to sue a town for alleged exclusionary zoning, because their difficulty finding housing depended on "the efforts and willingness of **third parties** to build low- and moderate-cost housing"; their claims thus "fail to support an actionable causal relationship between [the town's] zoning practices and petitioners' asserted injury." *Warth*, 422 U.S. at 506-507 (emphasis added). In *Fulani*, the court held that a presidential candidate lacked standing to sue the IRS to challenge the tax-exempt status of a debate commission, because her claimed injury— exclusion from the debate—arose from the *Commission's* decision, not the IRS' conduct in "facilitat[ing] the [commission] through tax-exempt funds[.]" *Fulani v. Brady*, 935 F.2d at 1330. *See also Pritikin v. Dep't of Energy*, 254 F.3d 791, 798 (9th Cir. 2001) (denying standing where injury is "manifestly the product of the independent action of a third party" (quoting *Duquesne Light Co. v. E.P.A.*, 166 F.3d 609, 613 (3d Cir. 1999)).

Here, the Complaint admits **third parties** created and posted the offending ads—not Defendants. *See, e.g.,* Compl. ¶¶ 54, 62, 65, 129-133; s*ee also Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F.3d 666, 671 (7th Cir. 2008) (Craigslist did not "cause" publication of notice by a user, reasoning that "[d]oubtless craigslist plays a causal role in the sense that no one could post a discriminatory ad if craigslist did not offer a forum. That is not, however, a useful definition of cause"); *see also Dart*, 665 F. Supp. 2d at 969. Plaintiff's lawsuit seeks to "end sex trafficking" by third parties, Compl. ¶ 128, by preventing what the Complaint characterizes as Backpage's "enablement" or "facilitation"

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of their conduct—*i.e.,* permitting these third parties to post ads on Backpage.com, *see* Compl. ¶¶ 129-133, 172-173. In other words, Plaintiff targets Backpage to alter the conduct of traffickers who directly caused injuries to Plaintiff's clients and allegedly injured Plaintiff. This does not confer standing.

Nor can there be a plausible allegation the claimed "increase in sex trafficking" is because of Backpage, as the "causal chain is too long and has too many weak links for a court to be able to find that the defendants' conduct harmed [Plaintiff]." *In re African-Am. Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir. 2006). There, the Seventh Circuit held descendants of slaves lacked standing to sue companies involved in American slavery for injuries caused by their alleged facilitation of slavery because, among other things, "it is impossible to determine how much, if any, less slavery there would have been had the defendants not done business with slaveowners, [or] what effect a diminution of slavery would have had on bequests by ancestors of the class members." *Id.* at 760. Similarly, here, Plaintiff's conclusory allegation that Backpage's alleged allowance of postings by third parties "caused the number of trafficking victims to increase" in an unspecified amount, causing Plaintiff to expend resources, *see* Compl. ¶ 11, is too attenuated to support standing. Trafficking existed long before Backpage.com began hosting online classified ads and trafficking will exist if Backpage.com no longer hosts classified ads. *See* Commerson Decl. at ¶ 4, Exh. B ("Sojourner Center … has been providing services to people who have experienced human trafficking throughout its nearly 40 years in operation"); s*ee also, e.g.*, *Cooper*, 939 F. Supp. 2d at 840 (when one site is shut down ads merely migrate elsewhere).

*Second*, and for similar reasons, the relief sought by the Complaint will not redress the harm suffered by Plaintiff and its clients, because traffickers, not Backpage.com, cause that harm. *See* Compl. ¶¶ 121-133; *Fulani*, 935 F.3d at 1331; *see also ASARCO Inc. v. Kadish,* 490 U.S. 605, 614 (1989) (standing denied where redressability uncertain)*; Bowker v. Morton*, 541 F.2d 1347, 1350 (9th Cir. 1976) ("the solution to plaintiffs' problem depends upon decisions and actions by third parties who are not before the court and who could not properly be the subject of a decree directing the result sought by plaintiffs");

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 *Levine v. Vilsack*, 587 F.3d 986, 995 (9th Cir. 2009); *see also Cooper*, 939 F. Supp. 2d at

2 840 (law restricting advertising platform less effective than holding liable "those who post

3 ad[s] for sex acts with minors"). Plaintiff's pursuit of Backpage may be *counterproductive*

4 by making it harder for law enforcement to ferret out illegal trafficking, and thus is likely to

5 *hamper* redress of the injuries caused by trafficking. *See, e.g.*, Mark Latonero, *The Rise of*

6 *Mobile and the Diffusion of Technology-Facilitated Trafficking*, Nov. 2012 (USC

7 Annenberg Ctr. on Commc'n Leadership & Policy Research Series on Tech. & Human

8 Trafficking), at 30 ("online classified ad sites like Backpage ... are visible, accessible, and

9 well known to law enforcement staff," and this helps investigations); *id.* at 26.

10     *Third*, while an organization suing on its own behalf can establish an injury when it

11 suffers "both a diversion of its resources and a frustration of its mission" as a result of the

12 defendant's conduct, it "cannot manufacture the injury by ... choosing to spend money

13 fixing a problem that otherwise would not affect the organization." *La Asociacion de*

14 *Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)

15 (citing *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d

16 1268, 1276 (D.C. Cir. 1994) (fair housing group's choice to divert resources from one

17 program to another in response to defendant's actions did not constitute cognizable injury)).

18     Here, Plaintiff identifies its mission to "create a world free from domestic violence,"

19 Compl. ¶ 116, and claims an "increase in sex trafficking has frustrated this mission"

20 because Plaintiff is required to "divert scarce resources from its mission to caring for

21 trafficking victims" by, among other things, performing "a holistic assessment of its

22 organization" to "adjust[ ]" "its services and training" so as to "care for trafficking victims

23 as compared to victims of domestic violence." Compl. ¶¶ 117-118, 170. But Plaintiff's

24 claimed institutional "harm is self-inflicted; it results not from any actions taken by

25 [Defendants], but rather from [Plaintiff's] own ... choice[ ]" to "adjust" its mission from a

26 focus on domestic violence to care for trafficking victims. *BMC Mktg. Corp.*, 28 F.3d at

27 1276. Plaintiff cannot choose to "adjust" its mission, and then cast its choice as an "injury"

28 caused by Backpage. Thus, Plaintiff lacks standing to pursue its claims.

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## B.    Section 230 Bars Plaintiff's Claims.

### 1.    Section 230 Was Designed to Promote Free Speech Online.

Section 230 is a statutory embodiment of First Amendment principles for online speech. Congress designed Section 230 "to encourage the unfettered and unregulated development of free speech on the Internet," *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003), "to promote the development of e-commerce," *id.*, and to encourage online providers to "self-police" for potentially harmful or offensive material by providing immunity for such efforts, *id.* at 1028. Congress sought to eliminate the "'obvious chilling effect'" that imposing liability on online providers would cause, "'given the volume of material communicated through [the Internet], the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech.'" *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007) (citation omitted). "[T]he protections afforded by the First Amendment were the motivating factors behind" Section 230. *People v. Ferrer*, 2016 WL 7237305, at *3 (Cal. Super. Dec. 9, 2016); *Batzel*, 333 F.3d at 1028.

Section 230(c)(1) mandates that "[n]o provider…of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Additionally, Section 230 expressly preempts all federal civil claims and all state-law claims, whether civil or criminal, effectively barring any civil claims against an online publisher based on third-party content it publishes. *Peters v. LifeLock Inc.*, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014).

### 2.    The Three-Part Test for Section 230 Immunity is Satisfied Here.

Section 230 immunity applies expansively, *Lycos*, 478 F.3d at 419, and "close cases ... must be resolved in favor of immunity." *Jones*, 755 F.3d at 408 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*)). Immunity must be granted where "(1) [defendant] is a provider or user of

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

an interactive computer service, (2) the claim is based on information provided by another information content provider; and (3) the claim would treat [defendant] as the publisher or speaker of that information." *Doe No. 1 v. Backpage.com*, 817 F.3d 12 (1st Cir. 2016) (quoting *Lycos*, 478 F.3d at 418); *accord American Income Life Ins. Co. v. Google, Inc.,* 2014 WL 4452679 at *7 (N.D. Ala. Sept. 8, 2014).  At least six courts have held Section 230 immunizes Backpage from liability.  *Doe No. 1*, 104 F. Supp. 3d at 157-58, *aff'd*, 817 F.3d at 20-22; *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 at *8 (D. N.J. Aug. 20, 2013); *Cooper*, 939 F. Supp. 2d at 823-25; *McKenna,* 881 F. Supp. 2d at 1271-75; *M.A.*, 809 F. Supp. 2d at 1050-54; *Ferrer*, 2016 WL 7237305.

The same conclusion holds here.  *First*, "Backpage.com is the quintessential publisher contemplated by [Section 230.]" *Cooper*, 939 F. Supp. 2d at 823; *see also Ferrer*, 2016 WL 7237305, at *6.  *Second*, Plaintiff bases its claims on ads about its clients that third-party traffickers allegedly "listed" and "posted" on Backpage.com.  *See* Compl. ¶ 130; *see also id.* ¶¶ 129, 131 (third-party trafficker "used Backpage.com"); ¶ 132 (third-party traffickers made promises of support to Plaintiff's client "before *advertising her* for sexual services on Backpage") (emphasis added).  Such postings are the essence of "information provided by another content provider." *E.g.*, *Doe No. 1*, 817 F.3d at 17-21; *M.A.*, 809 F. Supp. 2d at 1050-53.  *Third*, Plaintiff's claims treat Backpage.com "as the publisher or speaker" of the ads, as the factual allegations take Backpage to task for decisions about "whether to publish, withdraw, postpone or alter content," traditional editorial functions Section 230 protects.  *Jones*, 755 F.3d at 407 (citation omitted); *Roommates.com*, 521 F.3d at 1170-71 ("deciding whether to exclude material that third parties seek to post online is perforce immune."); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-68 (N.D. Ill. 2009).

### 3. Plaintiffs Cannot Evade Section 230 Through Artful Pleading.

#### a. Backpage's Editorial Choices Are Protected by Section 230.

Plaintiff cannot evade Section 230 by characterizing Backpage.com as "providing content, authoring text, deleting text, and editing information." *See, e.g.*, Compl. ¶¶ 6, 50-57.  In particular, Plaintiff points to Backpage.com's alleged practices of: (1) "review[ing]"

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and "edit[ing]" ads through its filter and moderation processes, Compl. ¶¶ 53-57; and (2) "enhanc[ing]" "Sponsored Advertisements", Compl. ¶¶ 50-52. Neither of these editorial practices, however, removes immunity under Section 230, because Backpage.com is not the originator or creator of the allegedly actionable content. The Complaint's repetitive, conclusory allegations that Backpage.com "create[s]," or "author[s]" content based on general features of its website cannot suffice to evade Section 230, because a "plausible" claim that a website created content appearing to come from a user requires "specific alleg[ations]" of fact showing the defendant "created the content of the statements" at issue (the ads concerning Plaintiff's clients). *Kimzey*, 836 F.3d at 1268-1269. Here, the conclusory recitations of Backpage.com's "authorship" are belied by averments underscoring that the content of the ads concerning Plaintiff's clients was provided by *third-party users*. Compl. ¶ 65 (Backpage.com includes a "filter" that prevents posting of ads by "*traffickers who attempt to advertise* that the child being sold is under 18 years of age" (emphasis added)); *id.* ¶ 94 ("EvilEmpire organizes ad[s] based on the *trafficker posting them*" (emphasis added)). Most importantly, the Complaint does not allege the specific ads concerning Plaintiff's clients were created by Backpage.com, nor does it connect Backpage.com's purported editorial practices and website structure to those ads. *See* Compl. ¶¶ 121-128. This telling omission cannot be cured by amendment, because, even if the Complaint claimed Backpage moderated, filtered, reposted, or otherwise edited specific ads about Plaintiff's clients, Section 230 immunity still would apply.

Where "third-party content … appears as an essential component of each and all" of Plaintiff's claims—as it does here—the claims are barred by Section 230. *Doe No. 1*, 817 F.3d at 22. There, the plaintiff similarly alleged Backpage had deliberately structured its website, selectively removed content, permitted anonymous posting, stripped metadata from photos, and otherwise tailored its posting requirements to facilitate sex trafficking in order to maximize profits. The district court found the alleged website features "amount to neither affirmative participation in an illegal venture nor active web content creation," and noted "courts have repeatedly rejected this 'entire website' theory as inconsistent with the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  substance and policy of section 230." *Doe No. 1*, 104 F. Supp. 3d at 152, 156-157, 162.

2  The First Circuit affirmed, holding "Backpage's decisions about how to treat [third-party]

3  postings" were "***editorial choices that fall within the purview of traditional publisher***

4  ***functions.***" *Doe No. 1*, 817 F.3d at 21 (emphasis added).

5      Likewise, in *M.A.*, the court rejected the plaintiff's arguments challenging general

6  aspects of the site's "construct and operation," *M.A.*, 809 F. Supp. 2d at 1050, holding a

7  website is "immune under § 230 unless it 'created the offending ads,'" and "however

8  horrific the consequences to M.A … the ads were created by [the pimp]." *Id.* at 1051. It

9  was "immaterial" that Backpage allegedly "elicit[ed] online content for profit"; what

10  matters is whether the website or third parties create the content at issue. *Id.* at 1050.

11  *Compare* Compl. ¶¶ 1, 141. Where a plaintiff attempts to impose liability on a service

12  provider based on allegations it "profited from the activity," such complaints must be

13  dismissed under Section 230. *E.g.*, *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752 (Tex.

14  App. Beaumont 2015). That is so even if it is alleged those posting content engaged in such

15  illegal activity as child pornography, or obscenity. *Id.* at 760 (statute's plain language

16  "contemplates [] immunity from civil suit …even when the posted content is illegal…or

17  otherwise may form the basis of a criminal prosecution.")

18      Plaintiff fares no better in trying to paint Backpage.com as a content creator for

19  certain "Sponsored Advertisements." *See* Compl. ¶¶ 50-52 (alleging "Backpage creates,

20  develops, and posts illegal content … in the 'Sponsored Ads' part of the 'Adult Services'

21  section of its website.") Plaintiff does not allege its clients were the subject of Sponsored

22  Ads. Moreover, the suggestion that Backpage.com itself is the originator and creator of

23  Sponsored Ads is refuted by Plaintiff's own allegations, stating the alleged content creation

24  actually involves nothing more than "enhanc[ing]" user-submitted ads by "rewriting" and

25  "reorganizing" those ads (including "adding" and "summarizing" the submitted text)—in

26  other words, editing. Compl. ¶ 50. The Complaint characterizes Backpage.com as

27  "writ[ing] and design[ing] the text and layout of the advertisement," but the same sentence

28  makes clear it is the ***trafficker*** who "submits information to Backpage." Compl. ¶ 51.

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Again, this simple fact undercuts the unfounded characterizations on which Plaintiff premises its claims. *See Nemet*, 951 F.3d at 255 ("legal conclusions, elements of a cause of action, and bare assertions" do not prevent dismissal) (citing *Iqbal*, 556 U.S. at 678).

### b. Notice Liability Cannot Defeat Section 230.

Nor can Plaintiff evade Section 230 by alleging Defendants knew (or should have known) third parties may misuse its website. *See, e.g.*, Compl. ¶¶ 40, 97, 135, 137, 173. First, these general claims of "knowledge" invoke traditional editorial functions that Section 230 immunizes from liability as explained above. *See supra* I.A.1.a. Second, Plaintiff's allegations of knowledge are pure conclusion, with no supporting facts tying Backpage's purported knowledge to the ads concerning Plaintiff's clients. The Complaint fails to explain *how*, from among Backpage.com's millions of users and ads, Backpage may have acquired knowledge about the ads concerning Plaintiff's clients. All allegations of "knowledge," rather, are about Backpage's alleged practices as a general matter. *See, e.g.,* Compl. ¶¶ 39-40. The Complaint "does not contain facts alleging how [Backpage] received notice of [the alleged 'co-conspirators'] conduct against [Plaintiff's clients]." *Davis v. Motiva Enterprises, L.L.C.*, 2015 WL 1535694, at *4 (Tx. App. Beaumont Apr. 2, 2015).

Moreover, "[i]t is … well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." *Lycos*, 478 F.3d at 420. *See Bates*, 2006 WL 3813758, at *3, *6, *18 (immunity applied even where it was alleged Yahoo! "knew or had reason to know about the illegal nature" of the activities of its users). Any "contention that [Backpage] is not entitled to immunity from plaintiff['s] state law claims" based simply on "the alleged…unlawful nature of the material posted on the website [] is without merit." *GoDaddy*, 429 S.W.3d at 760-61. Indeed, even *actual* knowledge of illegal content posted on its site does not make an online provider liable if it fails to delete the content. *See, e.g., Zeran*, 129 F.3d at 331-332. That is because "[l]iability upon notice would defeat the dual purposes advanced by § 230." *Zeran, 129 F. 3d.* at 333. Thus, courts reject the same argument Plaintiff makes here—that Backpage should be denied immunity because it allegedly knows or should know "of minors being

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 sexually trafficked on its website." *M.A.*, 809 F. Supp. 2d at 1050-51. *Compare* Compl.

2 ¶ 173 ("Defendants took no precautions to prevent [traffickers'] misconduct").

3        Plaintiff offers only conclusory, unfounded allegations of "conspiracy" in its attempt

4 to connect particular ads or knowledge by Backpage to alleged unlawful conduct. Plaintiff

5 refers to five alleged "co-conspirators"—third-party traffickers who allegedly posted ads on

6 Backpage.com—but conspicuously fails to allege any facts showing Backpage created the

7 content of those ads, or that these ads have anything to do with Plaintiff or its clients. *See*

8 Compl. ¶ 129-133. Instead, Plaintiff claims Backpage.com creates "efficiencies" rendering

9 Backpage a "co-conspirator" with any user—trafficker or otherwise—who posts an ad.

10 Compl. ¶ 134 (citing *id.* ¶¶ 103-113). These "efficiencies" refer merely to Backpage.com's

11 general editorial practices, *see id.*, and the Complaint does not allege Backpage.com did

12 *anything* different or in particular to the ads concerning Plaintiff's clients.

13        This is fatal to Plaintiff's attempt to plead around Section 230, as the "the immunity

14 analysis turns on who was responsible for *the specific harmful material at issue*, not on

15 whether the service provider was responsible for the general features and mechanisms of

16 the service or other content…that might have also appeared on the service." *Bates*, 2006

17 WL 3813758, at *17 (citing *Carafano v. Metrosplash.com*, 339 F.3d 1119 (9th Cir. 2003).

18 Specifically with respect to Backpage, the *M.A.* court agreed the relevant question was

19 whether Backpage developed "the specific content that was the source of the alleged

20 liability" and held Backpage was not liable for "content and consequences of the ads posted

21 by [the pimp]." 809 F. Supp. 2d at 1051 (citation omitted). The same is true here.

22        **c.    Allegations of Conspiracy Cannot Overcome Section 230.**

23        Nor can Plaintiff evade Section 230 by recasting claims under "encouragement" or

24 "conspiracy" theories, or by alleging Backpage "financially benefited" from trafficking by

25 operating a website containing information posted by others. *See, e.g.*, Compl. ¶¶ 129-

26 132, 152(e). To be clear, Backpage works to ***prevent*** misuse of the website and to ***combat***

27 sex trafficking. But even if the allegations were true, they would not salvage defective

28 claims. Such attempts to impose liability "***necessarily*** treat the website as a publisher or

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)." *Doe No. 1*, 817 F.3d at 22 (emphasis added). Further, the practices Plaintiff claims "facilitate" or "assist" traffickers are general features of Backpage.com not specifically tied to any ads concerning Plaintiff's clients. *See* Compl. ¶¶ 121-128.

In any event, websites cannot be sued on an "encouragement" theory because that would "eclips[e] the immunity from publisher-liability that Congress established." *Jones*, 755 F.3d at 414. In many cases "a clever lawyer could argue that ***something*** the website operator did encouraged the illegality," but such cases "must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented—to the illegality of third parties." *Roommates.com*, 521 F.3d at 1174. In *People v Ferrer*, for example, the court dismissed charges against some of the defendants sued here, rejecting the knowing encouragement theory. 2016 WL 7237305 at *7; *see also, e.g., Doe v. AOL*, 783 So.2d 1010, 1017 (Fla. 2001) (AOL immune from claims it knowingly hosted chat rooms where users violated child pornography laws).

The same applies to allegations that Backpage somehow "educates" or "coach[es]" traffickers on how to draft ads to avoid detection by law enforcement. *See, e.g.*, Compl. ¶¶ 61-69. This is pure speculation, contradicted by Backpage's well-documented work to assist law enforcement. *See* Section I.A, *supra*. And Plaintiff's allegation that Backpage "takes an active role in creating the content of…advertisements" by "educat[ing] traffickers on the best terms to use," *id.* ¶ 61, merely characterizes in sinister language the fact that Backpage.com informs its users of its posting and moderation policies (which prohibit posts made by minors and posts for illegal activities) and generally does not ban or report a user simply for using a banned term or entering a wrong age. *See also id.* ¶¶ 58, 64, 65, 67. Nor can Plaintiff evade Section 230 by characterizing as "bad faith" design "features that are part and parcel of the overall design and operation of the website (such as the lack of phone number verification, the rules about whether a person may post after attempting to enter a forbidden term, and the procedure for uploading photographs)" because "[f]eatures such as

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

these, which reflect choices about what content can appear on the website and in what form, are editorial choices" protected by Section 230. *Doe No. 1*, 817 F.3d at 21; *see* Compl. ¶¶ 76-84. Ultimately, the Complaint's allegations of "content creation," "bad faith" website design, and "encouragement" are precisely the sort of allegations the court in *Doe No. 1* held could not overcome Section 230 immunity. *Id.* ¶¶ 16-17, 20-21. Any other result would have the perverse effect of discouraging the self-policing Section 230 was specifically enacted to encourage. *Davis*, 2015 WL 1535694, at *4 (Section 230 "allows an interactive computer service provider to 'establish standards of decency without risking liability for doing so'") (citation omitted); *see also Batzel*, 333 F.3d at 1027-28.

## C.   Plaintiff Also Fails to State a Claim on Its Various Causes of Action.

### 1.   The RICO Claim Fails.

Plaintiff characterizes Backpage.com and its publication of advertisements submitted by third parties as an alleged "Sex Trafficking Enterprise," *see* Compl. ¶149, in violation of RICO, § 1962 subsection (a) (investing income from racketeering into an enterprise); (b) (using a pattern of racketeering to maintain an enterprise); (c) (participating in an enterprise through racketeering); and (d) (conspiring to violate the above subsections).

These claims are barred by Section 230 because they are all founded on publication of content submitted by third parties. In *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, licensed locksmiths made claims—similar to those here—that Google and other directory websites are liable under RICO because they "facilitate" false advertising by unlicensed locksmiths who provided content to the website. 88 F. Supp. 3d 543, 546 (E.D. Va. 2015), *aff'd,* 624 F. App'x 81 (4th Cir. 2015). The court easily dismissed the plaintiff's RICO claims, reiterating the well-established principle that "[b]y providing a platform for third-party users to publish information, Defendants have allowed locksmiths access to a portal to post information and the speech is not properly attributable to them. Absent an exception, Defendants are immune under Section 230 as the publishing website, despite their knowledge of the false information." *Id.* at 547; *see also* Sections I.B, II.B.2, *supra*.

In addition to being barred by Section 230, the elements of a RICO claim are not

adequately pled.  To state a cause of action under the pertinent sections of RICO, Plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), and must also show that violation of RICO caused a cognizable injury to its "business or property" under 18 U.S.C. § 1964(c), *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).  The Complaint's conclusory and hyperbolic allegations fail to establish these basic elements of a RICO claim, and the claims therefore must be dismissed.

### a. There Is No "Pattern of Racketeering Activity."

Most fatal to Plaintiff's claims is that the Complaint fails to plausibly allege Backpage engaged in illegal "racketeering activity" at all.  Where alleged RICO predicate acts are "part and parcel of a single, otherwise lawful transaction," a "pattern of racketeering activity" has not been shown.  *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996) (dismissing RICO claim because "[t]he alleged acts were all part of a single, lawful endeavor—namely the production of television news reports concerning a particular subject").

Here, the Complaint's allegations, stripped of characterization and conclusory allegations of conspiracy, show that all of Backpage's alleged conduct is "part and parcel of a … lawful transaction"—Backpage.com's editorial decisions and publication of third-party content on a website.  The Complaint makes clear the alleged predicate acts of trafficking, exploitation, coercion and enticement, and money laundering are all founded on the allegedly wrongful conduct or content provided by third party sex traffickers, *see* Compl. ¶¶ 129-147.  The Complaint's conclusory allegations of "conspiracy" between Backpage and third-party traffickers who posted ads to Backpage.com, *see id.* ¶¶ 129-133, do not make Backpage liable for third parties' conduct, *see, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007) ("conclusory allegation" will not save claim founded on conspiracy from dismissal); *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (conclusory allegations of conspiracy with non-parties insufficient to support civil RICO claims founded on alleged extortion).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In particular, the Complaint does not adequately plead Backpage's commission of the predicate offenses of sex trafficking (18 U.S.C. § 1591), *see* Compl. ¶ 135, or coercion and enticement (18 U.S.C. § 2422), *see* Compl. ¶¶ 141-142, because any trafficking or coercion or enticement of prostitution was committed by third parties whose only link to Backpage is the allegation they posted ads on Backpage.com, *see* Compl. ¶¶ 129-133. Generalized and conclusory allegations that Backpage knew traffickers posted on the site does not make Backpage liable for trafficking committed by others. *See, e.g., People v. Ferrer*, 2016 WL 7237305, at *7. That is especially true here, where the Complaint includes no allegation that, out of the millions of posts and users on Backpage.com, Backpage specifically knew of the particular ads concerning Plaintiff's clients, or interacted with the third parties who trafficked Plaintiff's clients. *See* Complaint ¶¶ 121-133. Rather, Plaintiff's allegations of knowledge are apparently founded on Backpage.com's editorial decisions to remove certain objectionable content from postings, *see* Compl. ¶ 62; the way it structures its website, and, in particular, the fallacious inferential leap that because multiple ages (of majority) may be listed for a given poster, Backpage somehow knows the poster is a minor, *see* Compl. ¶ 97; and the unsupportable proposition that, because Backpage has been given "notice" by certain elected officials that some postings on the site may be connected to trafficking or prostitution, it is charged with knowledge as to every specific instance in which an advertisement is allegedly connected to trafficking or prostitution, *see* Compl. ¶ 40. These conclusory and illogical allegations of notice do not suffice to create liability. *See, e.g., People v. Ferrer*, 2016 WL 7237305, at *7.

Nor does the Complaint plead that Backpage violated 18 U.S.C. § 2251 (sexual exploitation of children), Compl. ¶¶ 136-138, or 18 U.S.C. § 2252 (material involving the sexual exploitation of minors), Compl. ¶¶ 139-140, given that the alleged exploitation was done—and any depictions posted—by third-party users. *See AOL*, 783 So.2d at 1017. Moreover, there is no allegation that any of the content concerning Plaintiff's clients on Backpage.com actually contained or involved a "visual depiction" of a minor engaging in sexually explicit conduct. *See* Compl. ¶ 140. Rather, the only specific allegations of visual

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

depictions are that unidentified third-party traffickers posted an undescribed "picture" of one of Plaintiff's unnamed clients, with no allegation about the client's age at the time the picture allegedly was taken, *see* Compl. ¶ 122, and another alleged trafficker posted pictures of a minor, apparently not a client of Plaintiff, "in revealing clothing," *see* Compl. ¶ 130. And, again, Plaintiff's conclusory and generalized allegations of Backpage's "knowledge" fail to plead *facts* showing Backpage **knew** any ad involved or offered sexually explicit conduct, or depictions of such conduct, by a minor, *see* Compl. ¶¶ 136-137.

Finally, because Backpage's conduct—online publication—was lawful, Plaintiffs cannot plead that Backpage engaged in money laundering under 18 U.S.C. § 1956. *See, e.g., United States v. Sanders*, 929 F.2d 1466, 1472 (10th Cir. 1991) (rejecting "argument that the money laundering statute should be interpreted to broadly encompass all transactions, however ordinary on their face, which involve the proceeds of unlawful activity"), *abrogated on other grounds* by *Salinas v. United States*, 522 U.S. 52 (1997); *see* Compl. ¶¶ 143-147. As discussed throughout this Motion, Plaintiff's conclusory and generalized allegations that Backpage knew some users may be engaged in trafficking do not mean it knew the fee for any particular ad involved the proceeds of unlawful activity. *See* 18 U.S.C. § 1956(a)(1). Rather, "the statute requires actual subjective knowledge. [A defendant] cannot be convicted on what she objectively should have known … or because she was negligent in failing to recognize what was occurring or even because she was reckless or foolish in failing to recognize what was occurring." *United States v. Campbell*, 977 F.2d 854, 857 (4th Cir. 1992) (actual knowledge or willful blindness found where nature of large under-the-table real-estate transaction was on its face "fraudulent"). Nor does the Complaint offer anything more than speculation or innuendo that any transaction "in fact" involved proceeds of unlawful activity. *See* 18 U.S.C. § 1956(a)(1). Backpage.com's routine acceptance of fees for ads cannot be characterized as intended to promote unlawful activity, *see* Compl. ¶ 143, where (1) the *only factual* claim of intent is based on the claim Backpage was "on notice" that some unspecified users engaged in trafficking, *see id.* ¶ 40; and (2) the Complaint repeatedly acknowledges Backpage.com

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*banned* content advertising illegal or underage transactions from its site, *id*. ¶¶ 58, 65. Allegations of intent here boil down to a suggestion that, having received vague "notice" of potential trafficking, Backpage didn't take Plaintiff's preferred "precautions" to stop it —a claim that, even if true, at most would sound in *negligence*, not intent. *Id*. ¶¶ 40, 173. Finally, there can be no plausible allegation that a website's ordinary acceptance of modest advertising fees from customers operates to "conceal" the funds' source, or avoid a transaction reporting requirement—let alone Backpage knew customers' routine payments were so intended. *See* 18 U.S.C. § 1956(a)(1)(B)(i)-(ii); Compl. ¶ 144.

Finally, to establish a "pattern" of racketeering activity, a plaintiff "must show the racketeering predicates are related, and they amount to or pose a threat of *continued* criminal activity." *H.J. Inc. v. Northwestern Bell Telephone, Co*. 492 U.S. 229, 239 (1989) (emphasis added). First, there is no pattern, as the conduct alleged against Backpage amounts to a "single, lawful endeavor"—running a website. *See Sawyer*, 90 F.3d at 123. Second, putting aside the legality of Backpage's conduct, there is no "continuity" given as the Complaint admits Backpage.com closed its Adult Services section. Compl. ¶ 87.

### b. Plaintiff Lacks Standing As A Remote Party Whose Claimed Injury Was Not Proximately Caused by Backpage.

Plaintiff does not have standing to bring the RICO claim because the Complaint alleges activities that would have, at most, harmed *third parties*—victims of trafficking—not Plaintiff. Any claimed injury to Plaintiff based on its treatment of such victims was not proximately caused by Backpage because of the lack of "direct relationship between the injury and the alleged wrongdoing." *Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).

A plaintiff has standing under RICO only if it has been "injured in [its] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Flowing from this provision is the "requirement that the alleged violations of the law be the 'proximate cause' of the injury suffered" by a plaintiff to have standing to sue. *Wash. Pub.*, 241 F.3d at 705. Courts consistently hold that "a plaintiff who complained of harm flowing merely from the

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 (3d Cir. 1999) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). The rationale for this rule is "(1) the more indirect the injury, 'the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to [defendant's wrongdoing], as distinct from other, independent, factors'; (2) allowing recovery by indirectly injured parties would require complicated rules for apportioning damages; and (3) direct victims could generally be counted on to vindicate the policies underlying the relevant law." *Wash. Pub.*, 241 F.3d at 705 (quoting *Holmes*, 503 U.S. at 268). Moreover, the "potential for duplicative recoveries created by granting standing to attenuated and indirect parties weighs against finding proximate causation." *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 401 (2d Cir. 1994) (holding shareholders did not have standing to sue officers and directors for alleged RICO violations since the shareholders were "not the intended targets of the RICO violations" and only the "target and victim of the scheme" had standing to sue).

Here, similarly, there is a "fundamental defect" with Plaintiff's claim: Plaintiff is "attempting to recover for harm that is derivative of personal injuries visited upon [its clients]." *See Wash. Pub.*, 241 F.3d at 705. The injuries that Plaintiff's clients allegedly suffered, Compl. ¶¶ 129-133, would not be cognizable under RICO because they are not injuries to "business or property." *See, e.g.*, *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785–86 (9th Cir. 1992) ("it is clear that personal injuries are not compensable under RICO," collecting cases), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005); *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) (forced exaction of sexual services not cognizable under RICO where services are illegal under state law). Plaintiff cannot convert clients' non-cognizable injuries into grounds for Plaintiff's suit by claiming Plaintiff "diverted and drained" its resources to provide services to its clients. Compl. ¶ 120; *see also id.* ¶¶ 114-119. Indeed, the Ninth Circuit has repeatedly rejected attempts by hospitals and other service providers to premise RICO standing on costs spent to treat

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

others.  *See, e.g.*, *Wash. Pub.*, 241 F.3d at 705 (hospital districts lacked RICO standing to sue alleged source of injury to patients).  For the same reason, Plaintiff here lacks standing.

As discussed above, Backpage was not the cause in fact of any injuries suffered by Plaintiff's clients, *see Chicago Lawyers' Comm.*, 519 F.3d at 671 (not a "useful definition of cause" to ascribe users' activity to website); based on settled RICO principles, neither is it the proximate cause of any injuries Plaintiff suffered.  The elements of proximate and in-fact causation under RICO are therefore absent, and the RICO claims should be dismissed.

### c.    Plaintiff Does Not State A Claim For RICO Conspiracy.

Plaintiff's Complaint is premised on conclusory allegations of conspiracy between Backpage and third-party traffickers, but no allegation can be made there was any actual agreement between Backpage and any trafficker—let alone the particular traffickers who harmed Plaintiff's clients.  Because there was no agreement, not only is Backpage not responsible for the traffickers' action, but Plaintiff's RICO conspiracy claim fails.

The "touchstone of liability under § 1962(d) is an *agreement* to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 731–33 (7th Cir. 1998) *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) (emphasis added); *see also Salinas v. United States*, 522 U.S. 52, 63 (1997) ("The partners in the criminal plan must agree to pursue the same criminal objective").  Allegations of conspiracy under Section 1962(d) must be dismissed where there is no allegation of "either a specific agreement by these defendants to participate in the affairs of the enterprise or an agreement to the commission of two specific predicate acts."  *Goren*, 156 F.3d at 732.  It is also "well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy."  *Id.* at 733; *see also Twombly*, 550 U.S. at 557, 564.

Here, the Complaint does not plead any facts showing agreement between Backpage and any of the alleged conspirators—nor could it.  *See* Compl. ¶¶ 97-102, 129-134, 165. Instead, the Complaint attempts to manufacture a conspiracy from conclusion and conjecture, positing that "aggregation features on BigCity and EvilEmpire" somehow

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"make it clear that Defendants know that they are conspiring with traffickers"—apparently because "sometimes" individuals are "listed multiple times as different ages." *Id.* 97. This conclusory innuendo falls far short of plausible allegations of agreement, and the Section 1962(d) claim must be dismissed for this independent reason.

### 2. The Negligence Claim Fails.

Plaintiff's negligence claim is premised on a contradiction: on one hand, Plaintiff insists Backpage.com must take precautions to prevent the posting of "advertisements selling trafficked adults and children," Compl. ¶ 173; on the other hand, Plaintiff castigates Backpage.com for imposing posting guidelines, moderation, and filters that remove the very terms that could advertise illegal services or conduct, *Id.* ¶¶ 53-60, 65-66.

Putting aside the Catch-22 created by these allegations—as well as Section 230 immunity—the negligence claim fails because the alleged harm was caused by third-party traffickers and Backpage had "no duty to prevent a third person from causing physical harm to another." *See, e.g., Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 472–73 (Ct. App. 2014) (organization did not owe a duty to individual assaulted by third parties even though it sponsored event where plaintiff was injured and advertised location on its website). Even if Backpage had some duty to individuals depicted in ads—and it does not—it certainly owes no duty to Plaintiff, a shelter with no relationship to Backpage. Moreover, the actions of third-party criminals were intervening causes breaking the claimed chain of causation between Backpage and Plaintiff's clients—and breaks the even more attenuated claimed chain of causation between Backpage and Plaintiff. *See, e.g., Hebert v. Club 37 Bar*, 145 Ariz. 351, 352 (Ct. App. 1984) (tavern owner not liable for negligence where drunk patron's criminal act was intervening cause of victim's murder, even though owner knew patron was intoxicated and kept gun in his car). The claimed organizational harm to Plaintiff's mission is even more causally remote. The negligence claim thus fails.

### 3. The Nuisance Claim Fails.

*First*, courts do not hesitate to dismiss public nuisance claims arising from a website's facilitation of posting of content by third parties. *See, e.g., Dart*, 665 F. Supp. 2d

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

at 968 (nuisance claim alleging website facilitated prostitution); *Kathleen R. v. City of Livermore,* 87 Cal.App.4th 684 (2001) (nuisance claim arising from minor patron's receipt of pornography through computers in city library); *Witkoff v. Topix, LLC*, 2015 WL 5297912, at *2 (Cal. Ct. App. Sept. 10, 2015) (unpublished), *as modified* (Sept. 18, 2015) (nuisance and wrongful-death claims against website for operating webpages where users could post information concerning availability of controlled narcotics).

*Second*, even if Section 230 did not bar the nuisance claim, the Complaint does not plead that Backpage—as opposed to certain users—intentionally caused a significant interference with public rights. Backpage was not the proximate or factual cause of Plaintiff's or its' clients' injuries. The Complaint instead attempts to hold Backpage was "on notice" some users might engage in trafficking. *See* Compl. ¶ 40. "[G]eneral warnings," however, cannot establish Backpage *intentionally* caused a public nuisance. *Yslava v. Hughes Aircraft Co.*, 1998 WL 35298580, at *16 (D. Ariz. June 29, 1998).

*Finally*, putting aside the above defenses, Plaintiff does not have standing to bring a nuisance claim founded on an interference that purportedly affects a common wrong to the public at large. *See* Compl. ¶ 169 (alleging that the interference affects "a large number of children and vulnerable adults" and "the surrounding communities as well"). Standing to bring a nuisance claim that involves an interference with the public at large is restricted in order to, first, "relieve defendants and the courts of the multiple actions that might follow if every member of the public were allowed to sue for a common wrong. Second, it was believed that a harm which affected all members of the public equally should be handled by public officials." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 148 Ariz. 1, 5 (1985). For the above reasons, the nuisance claim should be dismissed.

## III. CONCLUSION

Consistent with Congress' binding policy judgment in Section 230 that "plaintiffs may hold liable the person who creates or develops [the] unlawful content, but not the interactive computer service provider who merely enables that content to be posted online," *Nemet*, 591 F.3d at 254, this Court should dismiss the Complaint in its entirety.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: June 8, 2017

**Davis Wright Tremaine LLP**
Scott Commerson( *pro hac vice* to be filed)
Brendan N. Charney (*pro hac vice* to be filed)
James Grant (*pro hac vice* to be filed)
Robert Corn-Revere (*pro hac vice* to be filed)
Ronald London (*pro hac vice* to be filed)

**Rusing Lopez & Lizardi, PLLC**
Daniel J. Quigley
Sarah S. Letzkus

By: /s/ Daniel J. Quigley
    Daniel J. Quigley

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that, on June 8, 2017, I electronically transmitted this document to the Clerk's office using the CM/ECF System and copies were served on the parties by Notice of Electronic Filing generated and transmitted by the CM/ECF system of the District of Arizona.

/s/ Daniel J. Quigley

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Sojourner Center,<br><br>                         Plaintiff,<br><br>vs.<br><br>Backpage.com LLC; *et al.*,<br><br>                        Defendants. | Case No. 2:17-cv-00399-GMS<br><br>**DECLARATION OF SCOTT R. COMMERSON AND NOTICE OF CERTIFICATION OF CONFERRAL**<br><br>(Motion to Dismiss and Memorandum of Points and Authorities; [Proposed] Order filed concurrently) |

I, Scott R. Commerson, declare as follows:

1.     My name is Scott R. Commerson. I am a partner with the law firm of Davis Wright Tremaine, LLP, one of the law firms representing Defendants in the above-captioned action. I am over the age of eighteen (18) years, am fully competent to make this declaration, and make the statements in this declaration based on my own personal knowledge, except where a statement is specifically identified as based on information and belief. The facts stated in this declaration all are true and correct and, if called to testify, I would and could competently testify as set forth below.

2.     On June 5, 2017, at approximately 3:15 PM Pacific Standard Time, I spoke with Karen Chesley, a partner in the law firm of Boies Schiller Flexner LLC, via a conference call. Additional counsel for both Plaintiff and Defendants (collectively, the "Parties") participated in the conference call. During the call, counsel for Parties conferred to determine whether an amendment could cure any of the deficiencies in the Complaint

1 | identified in my June 4, 2017 e-mail to Ms. Chesley.   Counsel for the Parties, however,
2 | were unable to agree that any of the grounds for Defendants' Motion to Dismiss would be
3 | curable by a permissible amendment to the Complaint.

4 |       3.      On June 6, 2017, I caused to be printed a true and correct copy of the notice
5 | that appears when a user of Backpage.com attempts to post an ad in the Phoenix dating
6 | section of Backpage.com.  In particular, this notice are available at
7 | <http://posting.phoenix.backpage.com/online/classifieds/PostAdPPI.html/phx/phoenix.back
8 | page.com/?region=4458&serverName=phoenix.backpage.com&superRegion=Phoenix&u=
9 | phx&section=4383&category=4454>.  A true and correct copy of the notice, as printed
10 | from the above URL, is attached hereto as **Exhibit A**.

11 |       4.      On June 7, 2017, I caused to be printed a true and correct copy of a section of
12 | Plaintiff's website titled "Safe Action Project"  available at
13 | <https://www.sojournercenter.org/about-us/safe-action-project/> .  A true and correct copy
14 | of the website, as printed from the above URL, is attached hereto as **Exhibit B**.

15 |       I declare under penalty of perjury that the foregoing is true and correct.
16 |       Executed on June 8, 2017.

17 |
18 |       Scott R. Commerson

**Exhibit A**

Phoenix - men seeking women personals - backpage.com       http://posting.phoenix.backpage.com/online/classifieds/PostAdPPI.html/...

Case 2:18-cr-00422-DLH-Document-118-1-2-Filed 04/25/18 Page 40 of 45
Case 2:17-cv-06399-GMS Document 70-1 Filed 06/08/17 Page 4 of 5

**Post Ad**

**phoenix, az**    **free classifieds**

backpage.com > post ad > dating > men seeking women

# Posting Rules

You agree to the following when posting in this category:

- I will not post obscene or lewd and lascivious graphics or photographs which depict genitalia, actual or simulated sexual acts or naked images;
- I will not post any solicitation directly or in "coded" fashion for any illegal service, including exchanging sexual favors for money or other valuable consideration;
- I will not post any material on the Site that exploits minors in any way;
- I will not post any material on the Site that in any way constitutes or assists in human trafficking;
- I am at least 18 years of age or older and not considered to be a minor in my state of residence.

**Any post exploiting a minor in any way will be subject to criminal prosecution and will be reported to the Cybertipline for law enforcement.**

Postings violating these rules and our Terms of Use are subject to removal without refund.

**Continue**

My Account | Buy Credits | Contact | Help | Privacy | Terms | Safety

phoenix.backpage.com is an interactive computer service that enables access by multiple users and should not be treated as the publisher or speaker of any information provided by another information content provider. © 2017 backpage.com

# Exhibit B

SAFE Action Project - Sojourner Center           https://www.sojournercenter.org/about-us/safe-action-project/

Case 2:18-cr-00422-DJH Document 118-12 Filed 04/25/18 Page 42 of 45
Case 2:17-cv-00399-GMS Document 70-1 Filed 06/08/17 Page 6 of 9



GIVE NOW



# SAFE Action Project

## Raising Awareness of Human Trafficking

Domestic violence takes many forms, including the trafficking of adults and children. A new program of Sojourner Center, the SAFE Action Project will educate the community that exploitation through force, fraud and coercion are all forms of domestic violence, and that, with a coordinated community strategy, human trafficking can be stopped.

The Sandra Day O'Connor Institute created the SAFE Action Project in 2013 to educate the hospitality industry to recognize and report commercial sexual exploitation of children. In 2016, the Institute chose Sojourner Center to carry on SAFE Action's important work and expand its reach. Sojourner Center will guide the expansion of the program to include training the broader tourism industry to recognize and report all forms of human trafficking.

Sojourner Center's SAFE Action Project will work to raise public awareness of how an informed community can effectively end the cycle of violence. Sojourner Center is a full-service human and social services agency that is dedicated to moving the conversation on the issues of domestic violence, raising awareness through targeted education and outreach, while working to change societal norms to end the silence.

## Our Program

Sojourner's SAFE Action Project offers a wide variety of human trafficking training resources to help tourism staff, along with travelers nationwide, to recognize warning signs of human trafficking and to report suspicious behavior, with a "see

SAFE Action Project - Sojourner Center                    https://www.sojournercenter.org/about-us/safe-action-project/

Case 2:18-cr-00422-DJH  Document 118-12  Filed 04/25/19  Page 48 of 45
Case 2:17-cv-00599-GMS  Document 70-1  Filed 06/08/17  Page 43 of 45

something, say something" approach. The training program aims to reach all aspects of the tourism industry, including hotels, restaurants, theaters, airports, stadiums and other places where large groups of people gather and travel.

Sojourner Center has worked in the field of domestic violence for nearly 40 years. During that time the shelter has helped thousands of people known to be victims of human trafficking. The issues of human trafficking and domestic violence go hand-in-hand, and both circumstances require similar responses and services such as case management and trauma-informed care. The SAFE Action Project represents another opportunity for Sojourner Center to be a voice for those person: been subject to exploitation and abuse.

In addition to in-person trainings, there are an abundance of free resour and airport staff available on the program website: http://www.safeactionproject.org

For more information about holding the training at your business, pleas Sojourner Center at communications@sojournercenter.org.

**LEAVE SITE**
Deje esta sitio

**CRISIS NUMBERS**

Metro Phoenix
602.244.0089
602.889.1610 (TDD)

Out of Town
888.886.8793
888.886.8794 (TDD)

## FAQs

Q: How does training about human trafficking fit into the services provided by a domestic violence shelter like Sojourner Center?

A: Sojourner Center is a human and social services agency that has been providing services to people who have experienced human trafficking throughout its nearly 40 years in operation. The SAFE Action Project adds to our efforts to help community members recognize the warning signs of abuse. There are deep connections between domestic violence and human trafficking, and both circumstances require similar responses and services such as case management and trauma-informed care. The SAFE Action Project is a natural expansion of services for Sojourner Center and will draw upon our existing strengths.

The SAFE Action Project represents another opportunity for Sojourner Center to be a voice for those persons who have been subject to exploitation and abuse. We have deep empathy for these women, children and men. We are fortunate to offer a service that helps prevent abuse by raising community awareness about human trafficking.

Q: Why is Sojourner Center taking over a program of the Sandra Day O'Connor Institute?

A: Sojourner Center was chosen by the O'Connor Institute to take over a successful

program it had incubated to address child sex trafficking in the Southwest. The program grew to a point that it outside the scope of the Institute's work. It needed a partner with the capability to handle that growth and also to expand the program. It will be the responsibility of Sojourner Center to secure the funding that will allow us to sustain and grow the program. Over the nearly 40 years of Sojourner Center's existence, we have demonstrated the ability to operate and support a social service program of this nature.

**Q: Has Sojourner Center worked in the human trafficking space before?**
A: Sojourner Center has worked in the field of domestic violence for nea
During that time we have helped thousands of people known to be victi
human trafficking. The issues of human trafficking and domestic violen
hand-in-hand. We are merely moving in the direction of formally recog
issue. The SAFE Action Project enables us to do that. The program is con
our mission and the skill sets of our employees.

LEAVE SITE
Deje esta sitio

CRISIS NUMBERS

Metro Phoenix
602.244.0089
602.889.1610 (TDD)

Out of Town
888.886.8793
888.886.8794 (TDD)

**Q: Who is behind human trafficking in the United States? Is it foreign
bringing women and children across our borders?**
A: While the media and popular culture have frequently depicted huma
occurring in other countries, human trafficking also is prevalent throug
United States. There is no one snapshot of a trafficker. People of every ge
nationality, race and socio-economic status are involved in human trafficking. No one stereotype should be applied to traffickers, buyers or people who are being trafficked.

**Q: What types of businesses can receive the SAFE Action Project training?**
A: The program aims to reach all aspects of the tourism industry, including hotels, restaurants, theaters, airports, stadiums and other places where large groups of people gather and travel. In addition to in-person trainings, we have an abundance of free resources for hotel and airport staff, accessible on our website at http://www.safeactionproject.org/training/stop-sex-trafficking-toolkit/. For more information about holding the training at your business, please contact Sojourner Center at communications@sojournercenter.org.

# Key Facts

- Human trafficking is the world's fastest growing criminal enterprise, with global profits estimated in excess of $150 billion annually.

- There are 20.9 million victims of human trafficking globally, including 5.5 million

SAFE Action Project - Sojourner Center                    https://www.sojournercenter.org/about-us/safe-action-project/

Case 2:18-cr-00422-DJH   Document 118-12   Filed 04/25/18   Page 45 of 45
Case 2:17-cv-06599-CMS   Document 70-1   Filed 06/08/17   Page 5 of 5

children."

- More than 25,000 human trafficking cases were identified on the U.S.-based National Human Trafficking Resource Center hotline.[iii]

- Of the millions of people estimated to be victims of human trafficking globally, 55 percent are women and girls, and 45 percent are men and boys.[iv]

**For More Information Please Contact:**

Community Outreach Programs Manager

Ramoncita Cocova
Email

**References**
[i] Estimates according to the International Labour Organization
[ii] Ibid
[iii] Polaris Project
[iv] International Labour Organization

**LEAVE SITE**
Deje esta sitio

**CRISIS NUMBERS**

**Metro Phoenix**
602.244.0089
602.889.1610 (TDD)

**Out of Town**
888.886.8793
888.886.8794 (TDD)

**Contact Us**

Sojourner Center P.O. Box 20156, Phoenix, AZ 85036 © Copyright 2014-2016 all rights reserved