1          UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF ARIZONA

3            _____

4
United States of America,      )
5                              )   No.  CR 18-0422-PHX-SPL
            Plaintiff,         )
6                              )
        vs.                    )   Phoenix, Arizona
7                              )   April 16, 2018
James Larkin (2),              )   2:07 p.m.
8                              )
            Defendant.         )
9  _____ )

10
     BEFORE:  THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE
11

12            TRANSCRIPT OF PROCEEDINGS

13              (Detention Hearing)

14  APPEARANCES:
    For the Plaintiff:
15          U.S. ATTORNEY'S OFFICE
            By:  Kevin M. Rapp, Esq.
16          By:  Dominic W. Lanza, Esq.
            40 North Central Avenue, Suite 1200
17          Phoenix, Arizona 85004

18  For the Defendant:
            ARGUEDAS CASSMAN & HEADLEY LLP
19          By:  Ted W. Cassman, Esq.
            803 Hearst Avenue
20          Berkeley, California 94710

21  Transcriptionist:
    Laurie A. Adams
22  Sandra Day O'Connor U.S. Courthouse, Suite 312
    401 West Washington Street, SPC-43
23  Phoenix, Arizona 85003-2151
    (602) 322-7256

24
    Proceedings Recorded by Electronic Sound Recording
25  Transcript Produced by Transcriptionist

```
 1                    P R O C E E D I N G S

 2             THE MAGISTRATE CLERK:  Case Number CR 18-422, United

 3   States of America versus James Larkin, on for detention

 4   hearing.

 5             MR. RAPP:  Good afternoon.  Kevin Rapp and Dominic          03:37PM

 6   Lanza on behalf of the United States.

 7             THE COURT:  Good afternoon.

 8             MR. CASSMAN:  Good afternoon, Your Honor.  Ted Cassman

 9   appearing on behalf of Mr. Larkin.  He's present and in

10   custody.                                                              03:37PM

11             THE COURT:  Good afternoon.  Good afternoon, Mr.

12   Larkin.

13             Sir, we're here for your detention hearing.  Let me

14   hear from the government first.  What's the government's

15   position regarding detention?                                        03:37PM

16             MR. RAPP:  Judge, the parties have reached an

17   accommodation on some terms and, therefore, we would be

18   withdrawing our motion to have the defendant detained.

19             THE COURT:  All right.  I have reviewed it.  I have a

20   copy that's even been signed by Mr. Larkin of the release            03:37PM

21   conditions.  Let me review those with you, and I will turn to

22   Mr. Larkin.

23             The request that is added to this case is that he not

24   travel outside of Maricopa County and that he be subject to

25   electronic monitoring.  That electronic monitoring would not         03:38PM
```

1    have the standard curfew, home detention, or home incarceration

2    but it would monitor his whereabouts in Maricopa County.  Any

3    requests regarding electronic monitoring other than that?

4            MR. RAPP:  No.

5            THE COURT:  Regarding the surety and the properties          03:38PM

6    that have been placed before the Court, have you reviewed that

7    documentation?

8            MR. RAPP:  We have, Your Honor.  We're satisfied with

9    the documentation.

10           THE COURT:  And both of the properties that are listed      03:38PM

11   you have information about those as well?

12           MR. RAPP:  We do.

13           THE COURT:  Okay.  Mr. Cassman, anything you would

14   like to say regarding detention?  I'm inclined to release Mr.

15   Larkin on the terms that have been agreed upon.  They seem          03:38PM

16   sufficient to secure your attendance, Mr. Larkin.

17           But anything you would like to add?

18           MR. CASSMAN:  I just wanted to put on -- first of all,

19   thank you to your staff very much and to Pretrial Services for

20   their facilitating this and getting it on earlier today.  We        03:40PM

21   very much appreciate that.

22           Second, with regard to Maricopa County, the original

23   agreement between the parties was Arizona, and it's understood

24   that my office is in California and his daughter is in high

25   school in California.  So we anticipate that there -- oh, and        03:41PM

```
 1   his son is graduating from Brown University in May.  So we
 2   anticipate there will be requests to travel outside Maricopa.
 3   But I have discussed it with Pretrial Services and they assured
 4   us if we give appropriate advance notice and an explanation and
 5   appropriate location information it shouldn't be a problem.      03:41PM
 6            THE COURT:  All right.  Good.
 7            Anything else to add?
 8            MR. CASSMAN:  No.
 9            THE COURT:  Let me ask you regarding your involvement
10   in the surety first, were you involved in this process?          03:41PM
11            MR. CASSMAN:  Obtaining signatures and filling it out?
12   Yes, I was, Your Honor.
13            THE COURT:  And the amount of the bond as well, I just
14   want to know if you had -- if you understand what this is, the
15   appearance bond.                                                 03:41PM
16            MR. CASSMAN:  Yes.
17            THE COURT:  And you reviewed it with Mr. Larkin?
18            MR. CASSMAN:  Yes.
19            THE COURT:  Okay.  Mr. Larkin, I'm going to review it
20   with you as well.  I wanted to make sure that you have talked    03:42PM
21   to your attorney about it and you know its implications.
22            Anything you wish to place on the record regarding
23   either the property or the surety bond.
24            MR. CASSMAN:  No, Your Honor.
25            THE COURT:  From Pretrial Services, anything to add     03:42PM
```

1    today?

2         THE PRETRIAL SERVICES OFFICER:  No, Your Honor.  The

3    only concern I do have is with the possible length of travel.

4    We certainly can approve, however, it would be something where

5    it's for a few days at a time, not extended stays in          03:42PM

6    California, et cetera, just because of the location of the

7    monitoring equipment and the need to be able to access it to

8    make sure it's functioning properly.

9         THE COURT:  Okay.  Well, I will allow you to work with

10   Mr. Larkin and his counsel if need be.  If it becomes a problem  03:42PM

11   you can contact the Court or U.S. Attorney's Office.  These

12   things are usually worked out well between the parties.  But if

13   there are concerns, raise it with the Court.

14        THE PROBATION OFFICER:  I just wanted to go on record

15   with that.  Thank you, Your Honor.                            03:42PM

16        THE COURT:  Thank you.

17        Mr. Larkin, before we continue, do you have any

18   questions for me?

19        THE DEFENDANT:  No.

20        THE COURT:  Okay.  Let me tell you the simple terms of   03:43PM

21   your release conditions, and then I will review them in detail.

22   You are going to be released on court-ordered conditions.  I

23   will review it all with you.  As part of that process I have

24   received a copy of the appearance bond and also information

25   relating to two properties.  In very simple terms, if you do   03:43PM

| | |
|---|---|
| 1 | not appear for your court proceedings, if you are convicted of |
| 2 | an offense and you fail to surrender for service of a sentence |
| 3 | or you fail to comply with the conditions of your release, you |
| 4 | could be back before the Court. |
| 5 | Importantly, if you fail to appear and you don't abide |
| 6 | by court orders, you are posting this amount of money and the |
| 7 | properties, and that means they are collateral.  If you do not |
| 8 | abide by court orders or if you fail to appear, a hearing can |
| 9 | issue.  You could lose these items, the money and the property. |
| 10 | Do you understand? |
| 11 | THE DEFENDANT:  Yes.  I understand. |
| 12 | THE COURT:  You are going to hear me repeat that a few |
| 13 | times.  I'm going to go through the details as well.  This is a |
| 14 | substantial amount of money and the properties have significant |
| 15 | value, so I'm sure you are aware of that as well. |
| 16 | MR. CASSMAN:  Your Honor, could I get a cup of water, |
| 17 | please? |
| 18 | THE COURT:  Of course. |
| 19 | All right.  Mr. Larkin, let me review with you your |
| 20 | release conditions.  For the record, I have reviewed your case. |
| 21 | I have reviewed the two Pretrial Service reports and the |
| 22 | information submitted to the Court by the government and also |
| 23 | that's been placed before the Court in these documents.  I find |
| 24 | that your release is appropriate.  The bond and its surety and |
| 25 | the property are sufficient to secure your attendance, and I |

03:44PM
03:44PM
03:44PM
03:44PM
03:45PM

1    don't find that you are a danger.

2           So you are to appear at all proceedings as required,

3    surrender for service if a sentence is imposed.  You will

4    maintain contact with your attorney by Friday noon of each

5    week.  You can do that by telephone.                          03:45PM

6           Do you understand those conditions?

7           THE DEFENDANT:  Yes, I do.

8           THE COURT:  It's always your responsibility to appear,

9    not your attorney's.  If you fail to appear, of course, the

10   burden is on you at all times.                                03:45PM

11          Do not commit any federal, state, local, or tribal

12   crime on release.  Cooperate in the collection of a DNA sample

13   if authorized by law.  Immediately advise the Court, your

14   attorney, and U.S. Attorney in writing if you change your

15   address or telephone number.  If you wish to change your       03:46PM

16   address or telephone number, you must request permission to do

17   so and obtain that permission from Pretrial Services or the

18   Court.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.                             03:46PM

21          THE COURT:  Would you state for me, and for the

22   record, the residence that you will be residing at?

23          THE DEFENDANT:  5555 North Casa Blanca Drive, Paradise

24   Valley, Arizona, 85253.

25          THE COURT:  Okay.  The electronic monitoring I will    03:46PM

1    review in just a moment, but that is the residence that will

2    show you will be at.

3            You are to report as directed to Pretrial Services.

4    You will meet with them after this hearing today.  Does he have

5    clothing here today?                                            03:46PM

6            MR. CASSMAN:  Yes.

7            THE COURT:  Surrender all travel documents to Pretrial

8    Services by the 17th at 5 p.m.

9            Do you have travel documents?

10           THE DEFENDANT:  No, the government has them.            03:47PM

11           MR. CASSMAN:  And I'm informed the FBI, is it, is

12   going to be turning them over to Pretrial Services.

13           THE COURT:  Okay.  I want to be clear, though, sir,

14   that you don't have any travel documents, which means any

15   passports from the United States or elsewhere or any passport  03:47PM

16   cards.  Is that correct?

17           THE DEFENDANT:  That's correct.

18           THE COURT:  From Pretrial Services?  You have them?

19           THE PRETRIAL SERVICES OFFICER:  Your Honor, we have

20   them.                                                           03:47PM

21           THE COURT:  Fair enough.

22           All right.  Let's talk about the ability of you to

23   make purchases.  There's been a recommendation that you not

24   make major purchases exceeding $1,000 without Pretrial

25   Services' approval.  That excludes current recurring expenses.  03:48PM

```
 1    So I imagine those would be property-related expenses.

 2            MR. CASSMAN:  We anticipate also payments on cars,

 3    possibly, and tuition for his children.

 4            THE COURT:  Okay.  So tuition, cars, property.  Any

 5    business expenses, or is he completely out of the business?    03:48PM

 6            MR. CASSMAN:  There are no business expenses at this

 7    time.

 8            THE COURT:  From the government then, properties,

 9    tuition, vehicle payments.  Any others known to the government?

10            MR. RAPP:  No.                                         03:48PM

11            THE COURT:  Okay.  Mr. Larkin, those are the three

12    areas now that we have established them.  I won't put them in

13    writing on your form, but we understand what they are.  Those

14    are your recurring expenses.  And if you have another one

15    contact Pretrial Services and notify them.                     03:49PM

16            The importance of all of this is just to use common

17    sense and act in good faith.  If you have a question, talk to

18    your attorney.  Talk to Pretrial Services.  We have described

19    three of those now, but if you think of another one that comes

20    up you are always better off notifying Pretrial Services in    03:49PM

21    advance.  If you freelance and decide, oh, this is something I

22    think is covered, and it's not, you can be brought back before

23    the Court.

24            Pretrial Services will work with you, but you have to

25    meet them more than halfway.  It's your responsibility.  Does  03:49PM
```

```
1    that make sense?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  You are not to assert any control

4    over Backpage.com.  Is there anything we need to clarify?

5    Because right now that's an absolute prohibition.          03:49PM

6              MR. CASSMAN:  There's nothing that needs to be

7    clarified, Your Honor.

8              THE COURT:  That's an absolute prohibition over any

9    control over Backpage.com.  Do you understand?

10             THE DEFENDANT:  Yes, I do.  I haven't been in control  03:49PM

11   for three years.

12             THE COURT:  That's fine.  I don't know anything about

13   your involvement in that company.  I just asked in case you

14   have a question.  Seems you don't have any control over it so

15   that should not be an issue.  United States Attorney's Office  03:50PM

16   will be monitoring that as well.

17             Finally, you are to abide and take steps within three

18   days to transfer the balance of the Banque Wormser account.

19   Let me first have, I guess, Mr. Cassman, can you describe what

20   this condition means.                                      03:50PM

21             MR. CASSMAN:  Your Honor, there's a bank account in

22   France that we have agreed to repatriate the funds.  But there

23   was a little interdelineation in the previous bond that we

24   meant to include there, which is within 72 hours of release of

25   his computer to Mr. Larkin, because he's doesn't have the  03:50PM
```

```
 1    information at this time.

 2           THE COURT:  So upon release of the computer he has

 3    three days to transfer?

 4           MR. CASSMAN:  Three business days, right?

 5           THE COURT:  Who has the computer?                        03:50PM

 6           MR. CASSMAN:  The government's got the computer.

 7           THE COURT:  Is the government releasing the computer

 8    to Mr. Larkin?

 9           MR. RAPP:  Yes, under certain conditions.

10           THE COURT:  Okay.                                        03:51PM

11           MR. RAPP:  So we're not exactly sure when that's going

12    to take place.  As the Court knows, we have to image the

13    computer before we can make it available to him.  And we are

14    negotiating whether that's going to be done by search warrant

15    or consent.                                                     03:51PM

16           THE COURT:  Thank you.  One other question then.

17           It states that the amount of the account will retain

18    $20,000 in U.S. currency but the remainder, as I read this

19    correctly, is to be transferred?

20           MR. RAPP:  That's correct.                               03:51PM

21           THE COURT:  You are not required to, but do you wish

22    to place on the record then what you believe would be

23    transferred from that account?  It's enough that you know what

24    it is, but I want to be clear that if there's a dispute about

25    how much might be transferred, I don't want parties coming back 03:51PM
```

| | |
|---|---|
| 1 | before the Court saying, oh, we thought there was X amount and | |
| 2 | he thought there was Y amount.  If you have an understanding | |
| 3 | between the two of you and it's something you want to put on | |
| 4 | the record, we'll let you do that. | |
| 5 | MR. CASSMAN:  I don't think it's necessary.  It's in | 03:52PM |
| 6 | Euros, but we have a very good idea of how much is in the | |
| 7 | account. | |
| 8 | THE COURT:  Fair enough.  All right.  Thank you. | |
| 9 | So the government, at some point, is going to work to | |
| 10 | have you either use or have access to this computer.  And when | 03:52PM |
| 11 | you have that access, you have three business days to transfer | |
| 12 | the balance of that Banque Wormser account minus $20,000.  And | |
| 13 | that will be repatriated to the United States and specifically | |
| 14 | that means that goes to, I presume, the government in relation | |
| 15 | to this prosecution. | 03:53PM |
| 16 | MR. CASSMAN:  No.  Actually, it's going to go to our | |
| 17 | trust account, Your Honor. | |
| 18 | THE COURT:  Your trust account.  Is that correct, Mr. | |
| 19 | Rapp? | |
| 20 | MR. RAPP:  Yes.  That's acceptable. | 03:53PM |
| 21 | THE COURT:  All right.  That's fine. | |
| 22 | THE PRETRIAL SERVICES OFFICER:  Your Honor, is that | |
| 23 | condition going to be monitored by the U.S. Attorney's Office | |
| 24 | that they are going to be put on the release conditions that | |
| 25 | will be monitored by the U.S. Attorney's Office? | 03:53PM |

1          THE COURT:  It will be monitored by them.  Pretrial

2     Services will not need to be involved.

3          THE PRETRIAL SERVICES OFFICER:  I'm just asking if

4     that can be stated in the conditions.

5          THE COURT:  We will.  So the U.S. Attorney's Office          03:53PM

6     will monitor that.  And if there's some kind of non-compliance

7     they can bring it before the Court.

8          All right.  Finally, you are not to take any steps to

9     access those funds during the pendency of the case.  So between

10    now and the time that that's transferred, you are not to access          03:54PM

11    the funds.  And even after they are accessed who has control

12    over this trust account?

13          MR. CASSMAN:  I do.

14          THE COURT:  All right.  Okay.  Anything else about

15    that trust account from the government?          03:54PM

16          MR. RAPP:  No, Your Honor.

17          THE COURT:  All right.  Thank you.

18          Those are the conditions before the Court.  Any

19    additions or corrections from the government?

20          MR. RAPP:  None, Your Honor.          03:56PM

21          THE COURT:  Mr. Cassman, any additions or corrections?

22          MR. CASSMAN:  No, Your Honor.

23          THE COURT:  Mr. Larkin, let me tell you as well that

24    you are to submit to location monitoring indicated and that

25    will be location monitoring technology at the discretion of          03:56PM

1    Pretrial Services.  So you have to abide by the electronic

2    monitoring.  Essentially it's to track your whereabouts here in

3    Maricopa County because you have no other restrictions.  You

4    can travel within Maricopa County.  If you wish to travel

5    outside of Maricopa County, you need permission from Pretrial          03:57PM

6    Services.  But you do have to abide by electronic monitoring.

7            Do you understand that?

8            THE DEFENDANT:  Yes, I do.

9            THE COURT:  Do you have any questions at all?

10           THE DEFENDANT:  No.                                            03:57PM

11           THE COURT:  Finally now, let me return now to the

12   purpose of the appearance bond.  There's a secured bond of $1

13   million.  I have reviewed the paperwork as well.  Let me be

14   clear to you, I'm just going to read for you right out of this

15   appearance bond, it states that the bond may be forfeited if        03:57PM

16   you do not comply with the above agreement which requires you

17   to appear, surrender for a sentence, or comply with all

18   conditions of release.

19           Do you understand that?

20           THE DEFENDANT:  Yes, I do.                                     03:57PM

21           THE COURT:  The Court may immediately order the bond

22   of the amount surrendered forfeited to the United States.  If

23   you do not comply with the agreement the Court may order a

24   judgment, a forfeiture against you in each surety in the amount

25   of the bond including interest and costs.                             03:57PM

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  This is a two-page form.  I'm showing you

4   the second page.  Is that your signature?

5          THE DEFENDANT:  Yes, it is.                      03:58PM

6          THE COURT:  Below it is Margaret G. Larkin.  Your

7   wife's name is Molly?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is this different?

10          THE DEFENDANT:  No.  Margaret is Molly.           03:58PM

11          THE COURT:  Is Ms. Larkin here in court today?

12          MR. CASSMAN:  She is, Your Honor.

13          THE COURT:  Ma'am, would you please approach the

14   Court?

15          And thank you for stepping forward.  Are you Margaret  03:58PM

16   G. Larkin?

17          Is that yes?

18          MS. LARKIN:  Yes.

19          THE COURT:  Thank you.  On the second page of this

20   appearance bond form, there's a signature in blue ink.  Is that  03:58PM

21   your signature?

22          MS. LARKIN:  Yes, it is.

23          THE COURT:  You were here while I just read the

24   conditions regarding the appearance bond.  Did you hear them?

25          MS. LARKIN:  I did.                              03:58PM

1          THE COURT:  Do you understand then that if Mr. Larkin

2     fails to appear this $1 million bond is gone.  It's forfeited.

3     The Court can enter a judgment.  If he doesn't comply with

4     release conditions or if he doesn't surrender for a service of

5     sentence, those can also result in the loss of the $1 million.      03:59PM

6          Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you have any questions for me?

9          All right.  Thank you.

10         Let me tell you as well, then, on the two properties,      03:59PM

11    Mr. Cassman, is she listed on these as well?

12         MR. CASSMAN:  Yes, she is the surety, Your Honor.

13         THE COURT:  Ma'am, do you understand there are two

14    properties here this also applies to?

15         MS. LARKIN:  Yes.      03:59PM

16         THE COURT:  All right.  The first one is what's being

17    described as the Zinfandel Properties.  Let me show you this

18    form.  It has two pages and it also has Attachments A, B, and

19    then additional attachments.  Let me show the second page to

20    you.  Do you see that signature?      03:59PM

21         MS. LARKIN:  Yes.

22         THE COURT:  It's dated April 11, 2018.  It's

23    captioned, "Agreement to Forfeit Real Property to Obtain a

24    Defendant's Release."

25         Did you review this entire document before you signed      03:59PM

1    it?

2              MS. LARKIN:  Yes.

3              THE COURT:  Finally, let me review with you the Casa

4    Blanca agreement.  Again, it has several pages.  The first two

5    pages are pursuant to the Agreement to Forfeit Real Property to          04:00PM

6    Obtain a Defendant's Release.  It contains exhibits.  Let me

7    show you the second page as well.  Do you see this page?

8              MS. LARKIN:  Yes.

9              THE COURT:  Did you review this entire document before

10   you signed it?                                                          04:00PM

11             MS. LARKIN:  Yes.

12             THE COURT:  There's a waiver of a homestead exemption

13   as well.  Do you understand that?

14             MS. LARKIN:  Yes.

15             THE COURT:  These are being placed up, in simple             04:00PM

16   terms, as collateral for Mr. Larkin's appearance.  If he does

17   not appear, does not follow court orders, or fails to surrender

18   for a service of sentence these properties may also be

19   forfeited, taken away, lost.  You and he would have no interest

20   in them.  Do you understand?                                           04:01PM

21             MS. LARKIN:  Yes.

22             THE COURT:  Do you have any questions?

23             MS. LARKIN:  No.

24             THE COURT:  Finally, did you talk with an attorney

25   before you signed these?                                               04:01PM

1          MS. LARKIN:  Yes.

2          THE COURT:  Was it Mr. Cassman or someone else?

3          MS. LARKIN:  Mr. Cassman.

4          THE COURT:  Mr. Cassman, anything else for the record?

5          MR. CASSMAN:  No, Your Honor.                    04:01PM

6          THE COURT:  That's all, ma'am.  Thank you very much,

7     sir.

8          Mr. Larkin, you understand as well that these items

9     are being placed as collateral for your appearance and the

10    requirement to follow court orders?                   04:01PM

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  Regarding those properties,

13    anything else from the government?

14         MR. RAPP:  No, Your Honor.

15         THE COURT:  Mr. Cassman?                          04:01PM

16         MR. CASSMAN:  No, Your Honor.

17         THE COURT:  I will sign the documents relating to

18    these as well.  This will place these two properties in the $1

19    million secured bond up as a requirement of your release in

20    this case.  I will sign for your release conditions.   04:01PM

21         I will tell you again, Mr. Larkin, if you have any

22    questions about your release, if there's an issue, work with

23    Pretrial Services or your attorney.  The worst thing you can do

24    is make decisions on your own and ask for forgiveness later.

25    It's always best to ask permission in this context.  You are   04:02PM

1   required to do that.

2           Do you understand all that?

3           THE DEFENDANT:  Yes, I do.

4           THE COURT:  You paid close attention, so thank you.

5           I will sign for your release.  You are required to          04:02PM

6   report to Pretrial Services and I think the marshals will take

7   you there because you have to be fit for electronic monitoring.

8           All right.  Regarding the conclusion of the hearing,

9   anything else from the government?

10          MR. RAPP:  No, Your Honor.  Thank you.                      04:02PM

11          THE COURT:  Mr. Cassman.

12          MR. CASSMAN:  No, Your Honor.  We do have the bond in

13  court.  Do we take that downstairs to submit it?

14          THE COURT:  Yes.

15          MR. CASSMAN:  The secured bond, the actual million         04:02PM

16  dollar secured bond?

17          THE COURT:  I thought we already had it here.  You are

18  required to give that to us before you depart.

19          MR. CASSMAN:  Okay.

20          THE COURT:  Thank you all.  We're adjourned.                04:02PM

21          (Proceeding concluded at 2:26 p.m.)

22

23

24

25

1

2

3

4

5                    C E R T I F I C A T E

6

7          I, LAURIE A. ADAMS, court-approved transcriber,

8    certify that the foregoing is a correct transcript from the

9    official sound recording of the proceedings in the

10   above-entitled matter.

11

12          DATED at Phoenix, Arizona, this 3rd day of May, 2017.

13

14

15                          s/Laurie A. Adams

16                          _____
                            Laurie A. Adams

17

18

19

20

21

22

23

24

25