Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com

Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
emccampbell@lglaw.com

*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-SPL (BSB) |
| Plaintiff, | |
| vs. | DEFENDANT LACEY'S OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY HENZE COOK MURPHY PLLC |
| Michael Lacey, *et al.*, | |
| Defendants. | (Oral argument requested) |

The government has moved to disqualify the law firm of Henze Cook Murphy PLLC ("HCM") from any further representation of Michael Lacey on the basis of HCM's prior representation of Carl Ferrer, whom the government intends to call as a witness against Mr. Lacey in the instant prosecution ("Government's Motion"). (Doc. 118.) Mr. Lacey, by and

through Paul J. Cambria, Jr., files the instant memorandum in opposition to the Government's Motion. This Court should deny the Government's Motion because Mr. Ferrer waived his attorney-client privilege with respect to HCM and has declined to participate in the Government's Motion (which purportedly seeks to protect the duties HCM owes to him as a former client). Further, even if Mr. Ferrer had not waived privilege, HCM has proposed a limited representation of Mr. Lacey which does not present an actual or potential conflict with HCM's prior representation of Mr. Ferrer. The unique facts and circumstances of this case indicate that the government has failed to demonstrate that disqualification of HCM is necessary, let alone that "extreme circumstances" justify the government's interference with Mr. Lacey's Sixth Amendment right to counsel of choice.

## BACKGROUND

Attorneys Tom Henze and Janey Henze Cook of HCM have represented Mr. Lacey on personal and professional legal matters for over a decade. Their institutional knowledge of Mr. Lacey's affairs and the company he co-founded, Backpage, LLC ("Backpage"), as well as their First Amendment expertise are invaluable to Mr. Lacey as he defends himself in the instant prosecution. HCM is Mr. Lacey's counsel of choice on this prosecution and on most matters. Mr. Lacey does not want to replace HCM as counsel on any matters for which HCM is representing him and, due to the government's pretrial seizure efforts, has no funds to retain replacement counsel.

In response to the Government's Motion, HCM met with the government and proposed a more limited representation of Mr. Lacey, which would include HCM's continued representation of Mr. Lacey on compliance with conditions of release, forfeiture, and unrelated

personal matters. The government declined to stipulate to HCM's proposed, limited representation of Mr. Lacey.

In light of this impasse, the undersigned provided independent counsel to Mr. Lacey on his potential conflict with HCM. Mr. Lacey understands that HCM cannot participate in his defense at trial because HCM could not cross-examine Mr. Ferrer, while at the same time, the failure to do so would constitute a failure to effectively defend him against the government's charges. Nonetheless, Mr. Lacey wants HCM to continue their representation of him on compliance with conditions of release, forfeiture, and personal matters as his counsel of choice on those matters. Mr. Lacey has waived any conflict with respect to HCM's representation of him on those matters as evidenced in his declaration. (A true and correct copy of Mr. Lacey's written waiver is attached hereto as Exhibit A.)

Mr. Lacey respectfully requests that this Court to deny the Government's Motion to the extent that it would interfere with the proposed, limited representation by HCM on compliance with conditions of release, forfeiture, and unrelated personal matters. Under this proposed, limited representation, Mr. Lacey will continue to benefit from HCM's institutional knowledge of his business and professional affairs; however, HCM's representation would not involve acting as trial counsel or sharing any confidential information with Mr. Lacey's trial counsel in this prosecution, including the undersigned.

The government has no ground for seeking disqualification of HCM's proposed, limited representation of Mr. Lacey. Although it is not stated in the Government's Motion, it is possible that the government believes that HCM has provided or will provide the undersigned with privileged information Mr. Ferrer disclosed to HCM during its prior representations of him. Rest

3

assured, there is no risk of such disclosures. HCM has indicated that it will not provide such information to the undersigned. Our firms are separate and our representation of Mr. Lacey in this prosecution involves little overlap on the substantive issues of the government's case. For example, HCM has been instrumental in providing detailed information about Mr. Lacey's assets to the undersigned in connection with the government's wholesale pretrial seizure of Mr. Lacey's assets to enable defense counsel to evaluate whether the particular seizures at issue were appropriate under the law. None of the communications between HCM and the undersigned on this issue have had anything to do with Mr. Ferrer.

## ARGUMENT

The Sixth Amendment guarantees the right to assistance of counsel in a trial for any serious crime. *See Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). A critical element of that assistance is "the right of the defendant who does not require appointed counsel to *choose who will represent him*." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (emphasis added). For this reason, when "the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id.* at 148.

The right to counsel of one's choice is not absolute; however, it is well-settled that a court analyzing a motion for disqualification must start with a "presumption in favor of petitioner's counsel of choice," which can be overridden only by an actual conflict of interest or a serious potential for conflict. *Wheat v. United States*, 486 U.S. 153, 159, 164 (1988). Because of the potential for abusive tactics, the Ninth Circuit has cautioned courts to review motions for disqualification brought by opposing counsel with "particularly strict scrutiny." *Optyl Eyewear*

4

*Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). The risk of abusive use of disqualification by the government in a criminal prosecution is particularly troubling, as the Supreme Court has recognized that, under the guise of the integrity of the courts, the government "may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *Wheat*, 486 U.S. at 163.

In light of the risk of abusive use of disqualification of defense counsel on the grounds of concern for the integrity of the courts, the Ninth Circuit has explained that "the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification." *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986). Similarly, the Arizona Supreme Court has cautioned that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court*, 141 Ariz. 157, 161 (1984) (citations omitted).

Against the backdrop of this fundamental constitutional right, essential to an effective defense, the Government has moved for disqualification of HCM under Rule 1.9 of the Arizona Rules of Professional Conduct. (*See* Gov't's Mot. Doc. 118 at 8.)[1] Rule 1.9 governs a lawyer's responsibility to former clients, protecting former clients from disclosure or use of confidential information in the course of a representation of a current client "in the same or substantially

---

[1] It does not appear that the government has moved for disqualification of HCM under Rule 1.7 because that rule addresses concurrent conflicts, which are not applicable to HCM's prior representation of Mr. Ferrer. Indeed, HCM concluded its representation of Mr. Ferrer in October 2017.

5

related matter in which [the current client's] interests are materially adverse to the interests of the former client."[2]

As the foregoing demonstrates, the government has failed to demonstrate "extreme circumstances" meriting its attempt to interfere with Mr. Lacey's Sixth Amendment right to counsel of choice under Rule 1.9.

I.  **HCM is Mr. Lacey's counsel of choice on certain issues in this prosecution and on other, unrelated matters.**

HCM is Mr. Lacey's counsel of choice on compliance with conditions of release and forfeiture issues in this prosecution, as well as unrelated personal matters. HCM's institutional knowledge of Mr. Lacey's personal affairs, which is at the heart of HCM's representation of Mr. Lacey on these issues, is irreplaceable. HCM's knowledge was gained through over a decade of representation of Mr. Lacey with respect to his personal and commercial interests, as well as representation of his family in personal matters. Mr. Lacey has waived any potential conflict with respect to HCM's continued representation of him on these isolated matters. (*See* Ex. A.)

---

[2] In greater detail, Rule 1.9 states:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

\* \* \*

(c) A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

6

It would be fundamentally unfair and cause an undue hardship to Mr. Lacey and his family, if he is required to find new counsel on these isolated matters, unrelated to the merits of the government's case. Moreover, Mr. Lacey would struggle to retain new counsel on these matters because the government's pretrial restraint of his assets has rendered Mr. Lacey unable to meet basic financial obligations regarding his living expenses, let alone sufficient funds to retain new counsel.

II. **Mr. Ferrer waived the right to challenge any potential conflict regarding HCM's continued representation of Mr. Lacey when he waived his attorney-client privilege with HCM in writing in his proffer agreement.**

Critical to the government's efforts to purportedly protect Mr. Ferrer's interests with respect to HCM under Rule 1.9, conflicts arising under Rule 1.9 are waivable through "informed consent, confirmed in writing." RPC 1.9(a). Mr. Ferrer has done just that.

On April 5, 2018, Mr. Ferrer signed a proffer agreement. (A true and correct copy of the proffer agreement is attached hereto as Exhibit B.) In the proffer agreement, Mr. Ferrer waived any conflict arising out of HCM's personal or professional representation of him by virtue of his waiver of "all claims of attorney-client privilege" as to all of his former attorneys except with respect to his "current attorneys, Nanci Clarence, Jonathan Baum and anyone working on their behalf." (Ex. B ¶ 2.) Mr. Ferrer's blanket waiver as to privilege with respect to HCM, alone, should result in the denial of the Government's Motion because Mr. Ferrer would have no basis to complain about the potential risk of use of privileged information when he, himself, has disclaimed, in writing, any privilege with HCM.[3]

---

[3] Further, Mr. Ferrer's communications with HCM were also pursuant to a joint-defense agreement, which can be provided to the Court *in camera*, if needed.

7

Moreover, it cannot be underscored enough that Mr. Ferrer declined to participate in the Government's Motion as the government conceded in its May 14, 2018 letter to Mike Piccarreta. (A true and correct copy of the Government's May 14, 2018 Letter is attached hereto as Exhibit C.) If Mr. Ferrer was at risk for a legitimate breach of the duties owed to him by HCM under Rule 1.9, he could have joined in the Government's Motion to protect his interests. Instead, he declined the government's offer to safeguard his rights under Rule 1.9. His failure to join the Government's Motion strongly suggests the government is seeking disqualification for its own tactical reasons.

### III. The proposed limited role for HCM's representation of Mr. Lacey presents no actual or potential conflict that would run afoul of Rule 1.9.

HCM has proposed to limit its representation of Mr. Lacey in a manner that presents no actual or potential conflict with its prior representation of Mr. Ferrer under Rule 1.9. With respect to the instant prosecution, HCM intends to limit the scope of its representation of Mr. Lacey to assisting Mr. Lacey with compliance with this Court's conditions of release, and any forfeiture issues. This aspect of HCM's representation in this prosecution is personal to Mr. Lacey and cannot be said to be "materially adverse" to Mr. Ferrer or related to the allegations Mr. Ferrer made against Mr. Lacey during his plea allocution.

With respect to HCM's continued representation of Mr. Lacey on personal matters unrelated to the instant prosecution, there can be no credible claim that this representation violates Rule 1.9.

Separate and apart from the fact that these limited representations do not involve an actual conflict or pose the risk of a potential conflict, HCM has indicated that it has

8

established a screen to prevent disclosure of any purportedly privileged information regarding Mr. Ferrer from being disseminated to Mr. Lacey's defense counsel in this prosecution (even though Mr. Ferrer has waived privilege in writing). Critically, an attorney's good faith statement that he or she has erected and will abide by a screen is sufficient to dispel any concerns about disclosure of confidential communications. *See United States v. Caramadre*, 892 F. Supp. 2d 397, 405 (D.R.I. 2012) (rejecting the government's argument that an attorney's erection of a screen, and statement that he would comply with the screen was insufficient to fend off disqualification because "[w]ithout evidence to the contrary, this Court will rely upon the good faith and judgment of counsel"); *see also United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 136-39 (D.C.D.C. 2015) (denying government's motion to disqualify defense counsel because defense counsel erected an ethical screen and based on the court's knowledge of counsel's practice and integrity, the screen was sufficient to dispel any concerns about counsel's intentional or unintentional disclosure of confidential information to the attorney cross-examining counsel's former client).

Further, HCM has stated that it will not participate in any aspects of the instant prosecution other than compliance with conditions of release and forfeiture, which means that HCM will not be involved with the merits of the instant prosecution or the preparation for or cross-examination of any of the government's witnesses. These limitations on HCM's representation make it clear that there will be no actual or potential conflict with Mr. Ferrer rendering the Government's Motion insufficient.

Finally, the government's conclusory concerns about the integrity of the judicial system are insufficient to justify disqualification of Mr. Lacey's counsel of choice, HCM. As the Ninth Circuit has recognized:

> It is easy to express vague concerns about public confidence in the integrity of the judicial process. It is quite a different matter to demonstrate that public confidence will in fact be undermined if criminal defendants are permitted to retain lawyers who worked for the government in the field of law implicated by an indictment. We are unwilling to sacrifice a defendant's Sixth Amendment right to counsel of his choice on such an unsubstantiated premise.

*Washington*, 797 F.2d at 1466 (vacating conviction and remanding for reconsideration of the government's motion for disqualification).

### IV. None of the cases upon which the government relies support disqualification under these circumstances.

The government has not provided this Court with a single case that supports disqualification of HCM under these unique facts and circumstances. None of the cases in which the government has prevailed on disqualification of defense counsel on the basis of defense counsel's prior representation of a government witness involved that witness's blanket waiver of privilege in writing.

Further, each of the cases cited by the government supports disqualification of criminal defense attorneys from appearing as trial counsel due to the expected participation of former clients as cooperators when the attorney or firm at issue would be involved in *cross-examination* of the former client(s). Here, HCM has stated that it will not participate in the trial of the instant action, nor will HCM provide any privileged information gained through its prior representation of Mr. Ferrer to Mr. Lacey's trial counsel. The government has not provided any cases that

10

result in the duty to a former client trumping a current client's Sixth Amendment right to counsel of choice under these circumstances.

For example, in *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the defendant retained an attorney at a law firm which, in the past, had represented one of the key prosecution witnesses on similar charges. *See id.* at 1522. The Eleventh Circuit explained that "if the conflict could cause the defense attorney to use privileged communications in cross-examination, then disqualification is appropriate." *Id.* at 1523. In finding that "there were actual, and potential, conflicts that could have impeded the trial," the Court focused on issues that might arise during examination at trial. *See id.* Under this standard, the Court concluded that potential questioning of the government's witness about a prior retainer payment he made to the defense attorney "would have opened the door to potential conflict" because that questioning would have been necessary to an effective defense of the current client but would have violated the duty of confidences and loyalty to the prior client, the government witness. *See id.* Critically, the Court's decision turned on the fact that the attorney's effective cross-examination of the government's witness would have turned a potential conflict into an actual conflict. *See id.*

*United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991) is equally unavailing to the Government's Motion. In that case, defense counsel had represented several employees from the same company, including the defendant, on RICO and fraud charges related to operation of defendant's real estate business. *See id.* at 747. Prior to trial, the government moved for disqualification of defense counsel on the ground that two of its witnesses, employees of the same company as defendant whom had been represented by the attorney, would be called as witnesses against the defendant. *See id.* The Third Circuit noted that "an attorney who cross-

examines former clients inherently encounters divided loyalties," and that defendant's counsel could not cross-examine the former clients "without revealing information 'relating to' his representation of them." *Id.* at 750. Again, the Court's determination that disqualification was appropriate turned on the actual conflict that would arise when the attorney cross-examined his prior clients.

Similarly, *United States v. Williams*, 81 F.3d 1321 (4th Cir. 1996) lends no support to the Government's Motion regarding disqualification of HCM. In that case, the attorney at issue had been retained, previously, by the defendant's girlfriend; however, the government declined to charge the girlfriend, and, instead, sought indictment of the defendant. *See id.* at 1322-23. Citing *Ross*, the Fourth Circuit explained that "the lawyer would have faced exactly the same potential conflict that properly concerned the *Ross* court." *Id.* at 1325. Further, the Court declined to endorse the retention of auxiliary counsel for the purpose of cross-examining the government's witness, the girlfriend, because the risk of potential conflict remained too great to allow the continued representation. Again, in this case, there is no risk of potential conflict involving cross-examination of Mr. Ferrer because HCM will not serve as trial counsel and will not share any privileged or confidential information obtained from Mr. Ferrer with Mr. Lacey's trial counsel.

In *United States v. Alfonzo-Reyes*, 592 F.3d 280 (1st Cir. 2010), cited by the government, the defendant's attorney had previously represented a government witness who was scheduled to testify at trial. See id. at 293. The court found that the attorney's "representation may have placed her in the position of having to cross-examine her former client, a witness with whom she shared confidences protected by attorney-client privilege." Id. at 294. Here, no such risk

exists because HCM will not appear as trial counsel and there is no possibility, even remote, that attorneys from HCM will cross-examine Mr. Ferrer at trial.

In an attempt to bolster its disqualification motion on the basis of future appellate concerns, the government cites two cases in which neither the government nor a witness raised disqualification pre-trial, but an appellate court reversed the convictions due to ineffective assistance of counsel because trial counsel labored under a conflict. (*See* Gov't's Mot. at 13-14 (citing *United States v. Iorizzo*, 786 F.2d 52 (2d Cir. 1986), and *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000).) Those cases are readily distinguishable because Mr. Lacey has retained *independent* trial counsel for this prosecution. Indeed, the undersigned has had no prior contact with Mr. Ferrer.

## CONCLUSION

In sum, there will be no actual or potential conflict with HCM's continued representation of Mr. Lacey in the limited, proposed capacity because there is no potential for HCM's cross-examination of Mr. Ferrer and no potential for HCM's conveyance of privileged information obtained from representation of Mr. Ferrer to Mr. Lacey's defense counsel in this action. Even if there was a risk of conflict, Mr. Ferrer waived pursuit of the conflict in writing. Tellingly, Mr. Ferrer declined to participate in the Government's Motion. Under these circumstances, disqualification is not only improper, but has been deployed as an abusive tactic, which this Court should reject.

Mr. Lacey respectfully requests that this Court deny the Government's Motion and allow HCM to continue representing him in the proposed capacity as his counsel of choice. The

government has presented no facts or law that support a contrary ruling and his Sixth Amendment rights would be eviscerated by disqualification of HCM.

RESPECTFULLY SUBMITTED this 6th day of June, 2018,

/s/   *Paul J. Cambria, Jr.*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

On June 6, 2018, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal Of a Notice of Electronic Filing to the Following CM/ECF registrants:

Dominic Lanza, dominic.lanza@usdoj.gov
Kevin Rapp, kevin.rapp@usdoj.gov