# EXHIBIT A

James C. Grant (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone:    (206) 622-3150
Facsimile:    (206) 757-7700
Email:        jamesgrant@dwt.com

*Counsel for Defendants Michael Lacey*
*and James Larkin, and for*
*Backpage.com, LLC*

Paul J. Cambria, Jr. (SBN 177957)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue #120
Buffalo, New York 14202
Telephone:    (716) 849-1333
Fax:          (716) 855-1580
Email:        pcambria@lglaw.com

*Counsel for Defendant Michael Lacey*

Nanci L. Clarence (SBN 122286)
Jonathan M. Baum (SBN 303469)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Telephone:    (415) 749-1800
Facsimile:    (415) 749-1694
Email:        nclarence@clarencedyer.com

*Counsel for Defendant Carl Ferrer*

David W. Dratman (SBN 78764)
1007 7th Street, Suite 305
Sacramento, CA 95814
Telephone:    (916) 443-2000
Facsimile:    (916) 443-0989
Email:        dwdratman@aol.com

*Counsel for Defendant Michael Lacey*

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA**, <br><br> Plaintiff, <br><br> v. <br><br> **CARL FERRER, MICHAEL LACEY,** and **JAMES LARKIN,** <br><br> Defendants. | Case No. 16FE024013, Dept. No. 8 <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT AND TO VOID WARRANTS AND SUBPOENAS AND SUPPRESS EVIDENCE FOR VIOLATIONS OF THE CALIFORNIA ELECTRONIC COMMUNICATIONS PRIVACY ACT AND THE U.S. AND CALIFORNIA CONSTITUTIONS** |

DAVIS WRIGHT TREMAINE LLP

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, on May 14, 2018, at 1:30 p.m. or as soon thereafter as

3 the matter may be heard in Department 8 of the Sacramento County Superior Court, 651

4 I Street, Sacramento, California 95814, Defendants Carl Ferrer, Michael Lacey and James

5 Larkin, will and hereby do move to (1) dismiss the First Amended Complaint filed by the

6 Attorney General on April 28, 2017; and/or (2) void certain search warrants obtained and

7 subpoenas issued by the Attorney General's Office ("AGO"), and  order the destruction and

8 suppression of all evidence obtained by such warrants and subpoenas directly or derivatively;

9 or (3) as to search warrants not otherwise declared void, order the AGO to provide discovery

10 and thereafter conduct an evidentiary hearing concerning the sufficiency of the warrants under

11 *Franks v. Delaware* (1978) 438 U.S. 154.  Additionally, Backpage.com, LLC joins in this

12 motion as to the grounds listed in the second category above.

13       More specifically, this motion is brought on the following grounds:

14       1.      The AGO's investigation and prosecution of Defendants constitutes outrageous

15 government misconduct.  Given the record before the Court, it would also be appropriate for

16 the Court, on its own motion, to dismiss this matter in the interest of justice under Penal Code

17 § 1385(a).  The Attorney General had no authority to investigate or prosecute Defendants for

18 the publishing activities of Backpage.com, as the State's criminal laws are expressly

19 preempted and Defendants are immunized under Section 230 of the Communications Decency

20 Act.  (42 U.S.C. § 230; "Section 230" and "CDA".)  The Attorney General knew this and

21 admitted in 2013 that the State had no jurisdiction to prosecute, but did so nonetheless.  In

22 warrant applications, the AGO did not mention the Attorney General's admission but instead

23 represented that California criminal law was not preempted.  Further, the AGO violated

24 California's Electronic Communications Privacy Act (Penal Code §§ 1546-1546.4;

25 "CalECPA") in several ways to continue its investigation and prosecution of Defendants.  The

26 AGO's conduct, taken as a whole, has so violated fundamental fairness, due process and

27 Defendants' constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments as

28 to justify dismissal.  (*See Barber v. Municipal Court* (1979) 24 Cal. 3d 742, 759 (recognizing

DAVIS WRIGHT TREMAINE LLP

i

1  nonstatutory dismissal for outrageous government conduct infringing constitutional rights);

2  *see also* Penal Code § 1385.)

3      2.      The AGO's warrants and subpoenas violated CalECPA in several ways and

4  should be voided as a result.  CalECPA prohibits the AGO from using subpoenas to obtain

5  electronic communication information "for the purpose of investigating or prosecuting a

6  criminal offense" (Penal Code § 1546.1(b)(4)), but the AGO issued at least eleven subpoenas

7  in violation of this restriction.

8      CalECPA also requires the AGO to provide notice of warrants and its investigation to

9  Backpage and Defendants (Penal Code § 1546.2(a), but the AGO failed to comply with this

10  requirement at least eleven times.    While CalECPA required the AGO to inform Defendants

11  of this investigation by January 1, 2016, the AGO improperly kept the investigation and the

12  warrants secret until after the State arrested and incarcerated Defendants.

13      CalECPA also requires the AGO to seal any information seized "that is unrelated to the

14  objective of the warrant," and the Act precludes "review, use or disclosure" of such

15  information without a separate court order.  (Penal Code § 1546.1(d)(2).)  The AGO

16  misconstrued and violated this provision by treating it as nothing more than a requirement that

17  it limit its review to the "scope" of the warrant.  As a result, it appears the AGO never

18  segregated or sealed any of the data and information it received, and, just the opposite, shared

19  information obtained by several warrants with "out-of-state and federal law enforcement

20  agencies."  The AGO also violated CalECPA by reviewing information "unrelated to the

21  objective" of the original warrants concerning "pimping" to identify alleged bases for new

22  charges (*i.e.*, the bank fraud/money laundering charges).  The AGO has acknowledged that

23  these later charges were based on evidence from prior warrants, and therefore all such

24  evidence is also subject to exclusion under the fruit of the poisonous tree doctrine and

25  CalECPA itself.  (*See Wong Sun v. United States* (1963) 371 U.S. 471; Penal Code §

26  1546.4(a).)

27      Under CalECPA, all of the AGO's improper warrants and subpoenas should be

28  declared void and all evidence the AGO obtained that is inconsistent with CalECPA or the

ii

1  California or U.S. Constitutions should be suppressed and destroyed.  (Penal Code

2  § 1546.4(a), (c).)[1]

3       As noted, the AGO's First Amended Complaint should be dismissed outright, but  even

4  if not, under CalECPA, 14 of the AGO's warrants (excluding one warrant that was not

5  executed) and nine of its subpoenas (the two other subpoenas were previously quashed by this

6  Court) should be voided and evidence from them should be suppressed and destroyed.

7  Attached to the declaration accompanying this motion as Exhibit A is a chart listing all of the

8  AGO's warrants and subpoenas and the grounds upon which each should be invalidated.

9       In the alternative, Defendants request that the Court order an evidentiary hearing

10  pursuant to *Franks* (*see also Theodor v. Superior Court* (1972) 8 Cal. 3d 77, 100) to assess the

11  AGO's applications for specific search warrant applications.

12                                        * * * * *

13       The Motion is based on this Notice of Motion; the attached Memorandum of Points and

14  Authorities; the Declaration of James C. Grant ("Grant Decl.") and accompanying exhibits; as

15  well as such further briefs and other materials that may hereafter be filed with the Court, all

16  the papers and records on file in this action and in the related action No. 16FEO19224, and on

17  such argument and evidence as may be presented at the hearing of the motion.

18  DATED:  March 2, 2018.                    Respectfully submitted,

19                                            DAVIS WRIGHT TREMAINE LLP

20
                                             By:   *s/ James C. Grant*
21                                                 James C. Grant

22                                           Attorneys for Defendants Michael Lacey and
23                                           James Larkin, and for Backpage.com, LLC

24

25

26

27
   _____

28  [1] The Court should also take further steps to ensure that improperly obtained information has not
    been disclosed to others, or, if it has been, to order the AGO to ensure its return or destruction.

---

iii

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

*(left margin, vertical text)* DAVIS WRIGHT TREMAINE LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARENCE DYER & COHEN LLP

By:   _s/ Nanci L. Clarence_
      Nanci L. Clarence

Attorney for Defendant Carl Ferrer

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND .............................................................................................. 4

      A.   The AGO Undertook Its Investigation After Admitting the State Had No
           Authority and Was Prohibited from Prosecuting Backpage. ............................. 4

      B.   The Law Prohibiting the AGO's Investigation and Prosecution Has Long
           Been Clear. .................................................................................................. 5

      C.   This Court Has Twice Held that the AGO Is Foreclosed from Prosecuting
           Defendants for Publishing Activities. .............................................................. 6

      D.   The AGO's Efforts to Obtain Vast Amounts of Evidence by Warrants and
           Subpoenas. ................................................................................................. 8

III.  ARGUMENT .................................................................................................. 27

      A.   The AGO Unconstitutionally Pursued an Investigation and Prosecution of
           Defendants While Admitting It Had No Authority or Jurisdiction. .................. 27

      B.   The AGO's Warrant Applications Lacked Probable Cause Because They
           Advanced Theories That Are Precluded by Section 230. ................................ 34

      C.   The AGO Has Repeatedly Violated CalECPA, and the Court Should Void
           the Warrants and Subpoenas As a Result. ..................................................... 38

           1.   The AGO Violated CalECPA § 1546.1(a)(4) by Using Subpoenas
                for a Criminal Investigation. ................................................................ 39

           2.   The AGO Violated the CalECPA § 1546.2(a) Notice Requirements.... 43

           3.   The Government Violated the CalECPA § 1546.2(a) Requirement
                To Segregate and Seal Unrelated Information. ...................................... 49

           4.   Invalidation of the Warrants and Subpoenas and Suppression of
                Evidence Is Warranted Because the AGO Has Violated Provisions
                of CalECPA That Are Central to the Act's Purpose. ............................. 54

      D.   The AGO Violated the Fourth Amendment By Not Setting Aside Unrelated
           Information from the Warrants. ...................................................................... 56

      E.   Given the Extent of the AGO's Constitutional and Statutory Violations, the
           Court Should Dismiss this Case for Outrageous Government Misconduct
           and In the Interests of Justice. ....................................................................... 59

           1.   Standards Regarding Dismissal for Outrageous Government
                Misconduct. ........................................................................................ 60

DAVIS WRIGHT TREMAINE LLP

i

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

2.  Standards Dismissal Under Penal Code § 1385.................................... 61

3.  Dismissal Is Appropriate in this Case, Given the Scope and Extent of the AGO's Misconduct.................................................................. 62

F.  If the Court Does Grant Dismissal, It Should Order a *Franks* Hearing and Related Discovery As To Search Warrants Not Otherwise Void. ................... 66

IV.  CONCLUSION ....................................................................................................... 68

DAVIS WRIGHT TREMAINE LLP

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. Superior Court* (2003)
29 Cal. 4th 1033 ................................................................................................ 42

*Ashcroft v. Free Speech Coalition* (2002)
535 U.S. 234 .................................................................................................... 35

*Backpage.com, LLC v. Cooper* (M.D. Tenn. 2013)
939 F. Supp. 2d 805 ................................................................................ *passim*

*Backpage.com, LLC v. Dart* (7th Cir. 2015)
807 F.3d 229 ...................................................................... 6, 29, 35, 65

*Backpage.com, LLC v. Hoffman* (D.N.J. Aug. 20, 2013)
2013 WL 4502097 ......................................................................... 5, 12, 29, 35

*Backpage.com, LLC v. McKenna* (W.D. Wash. 2012)
881 F. Supp. 2d 1262 .............................................................................. *passim*

*Bantam Books, Inc. v. Sullivan* (1963)
372 U.S. 58 ..................................................................................................... 65

*Barber v. Municipal Court* (1979)
24 Cal. 3d 742 ................................................................................................ 60

*Barrett v. Rosenthal* (2006)
40 Cal. 4th 33 ............................................................................................ 34, 36

*Berger v. United States* (1935)
295 U.S. 78 ..................................................................................................... 64

*Bishop Paiute Tribe v. County of Inyo* (9th Cir. 2002)
291 F.3d 549 .................................................................................................. 31

*Burrows v. Superior Court* (1974)
13 Cal. 3d 238 ................................................................................................ 42

*Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003)
339 F.3d 1119 ................................................................................................ 34

*Cohen v. Facebook, Inc.* (E.D.N.Y. 2017)
252 F. Supp. 3d 140 ....................................................................................... 37

DAVIS WRIGHT TREMAINE LLP

iii

*Dart v. Craigslist, Inc.* (N.D. Ill. 2009)
  665 F. Supp. 2d 961 ................................................................. 6, 35

*Doe ex rel. Roe v. Backpage.com, LLC* (D. Mass. 2015)
  104 F. Supp. 3d 149. ............................................................... 6, 29

*Doe v. GTE Corp.* (7th Cir. 2003)
  347 F.3d 655 ............................................................................ 6

*Dombrowski v. Pfister* (1965)
  380 U.S. 479 ............................................................................ 65

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC* (9th Cir. 2008) 521 F.3d 1157 .............................................................. 34

*Franks v. Delaware* (1978)
  438 U.S. 154 ................................................................... 4, 33, 66

*Goddard v. Google, Inc.* (N.D. Cal. Dec. 17, 2008)
  2008 WL 5245490 .................................................................... 36

*Google, Inc. v. Hood* (S.D. Miss. 2015)
  96 F. Supp. 3d 584 ................................................................... 63

*Heien v. North Carolina* (2014)
  135 S. Ct. 530 ......................................................................... 38

*Hill v. StubHub, Inc.* (N.C. Ct. App. 2012)
  727 S.E.2d 550 ................................................................... 29, 34

*Illinois v. Gates* (1983)
  462 U.S. 213 ........................................................................... 37

*In re Miller* (2017)
  14 Cal. App. 5th 960, 977 ....................................................... 27

*Inyo County v. Paiute-Shoshone Indians* (2003)
  538 U.S. 701 ........................................................................... 31

*Jane Doe No. 1 v. Backpage.com, LLC* (1st Cir. 2016)
  817 F.3d 12 ......................................................................... 6, 34

*Jones v. Dirty World Entm't Recordings LLC* (6th Cir. 2014)
  755 F.3d 398 ........................................................................... 34

*Kling v. Superior Court* (2010)
  50 Cal. 4th 1068 ...................................................................... 42

*Lewellen v. Raff* (8th Cir. 1988)
  843 F.2d 1103 ......................................................................... 63

DAVIS WRIGHT TREMAINE LLP

iv

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC* (E.D. Mo. 2011)
  809 F. Supp. 2d 1041 ......................................................................*passim*

*Morrow v. Superior Court* (1994)
  30 Cal. App. 4th 1252 ................................................................................. 61

*Murgia v. Municipal Court* (1975)
  15 Cal. 3d 286 ................................................................................... 62, 68

*Northrup v. City of Toledo Police Dep't* (6th Cir. 2015)
  785 F.3d 1128 ......................................................................................... 38

*People v. Betts* (2005)
  34 Cal. 4th 1039 ....................................................................................... 62

*People v. Bradford* (1997)
  15 Cal. 4th 1229 ....................................................................................... 66

*People v. Camarella* (1991)
  54 Cal. 3d 592 ......................................................................................... 38

*People v. Chapman* (1984)
  36 Cal. 3d 98 ..................................................................................... 42, 65

*People v. Gourlay* (Mich. Ct. App. Mar. 3, 2009)
  2009 WL 529216 .................................................................................. 5, 37

*People v. Hatch* (2000)
  22 Cal. 4th 260 .................................................................................. 61, 62

*People v. Hobbs* (1994)
  7 Cal. 4th 948 ......................................................................................... 66

*People v. Jackson* (2005),
  129 Cal. App. 4th 129 .......................................................................... 55, 56

*People v. Kraft* (2000)
  23 Cal. 4th 978 ....................................................................................... 37

*People v. Luttenberger* (1990)
  50 Cal. 3d 1 ........................................................................................... 66

*People v. Machupa* (1994)
  7 Cal. 4th 614 ......................................................................................... 59

*People v. McGee* (1977)
  19 Cal. 3d 948 ......................................................................................... 62

*People v. Navarro* (2006)
  138 Cal. App. 4th 146 ............................................................................... 66

DAVIS WRIGHT TREMAINE LLP

v

DAVIS WRIGHT TREMAINE LLP

*People v. S.M.* (2017)
 9 Cal. App. 5th 210, 218 .................................................................... 61, 65

*People v. Scott* (2011)
 52 Cal. 4th 452 ..................................................................................... 66

*People v. Superior Court* (2000)
 80 Cal. App. 4th, 1305, 1318 ............................................................... 42

*People v. Superior Court (Marin County)* (1968)
 69 Cal. 2d 491 ...................................................................................... 61

*People v. Superior Court (Mouchaourab)* (2000)
 78 Cal. App. 4th 403 ............................................................................ 67

*People v. Vasilyan* (2009)
 174 Cal. App. 4th 443 .......................................................................... 27

*People v. Velasco-Palacios* (2015)
 235 Cal. App. 4th 439 ................................................................. 60, 61, 65

*United States v. Baker* (10th Cir. 1990)
 894 F.2d 1144 ....................................................................................... 30

*United States v. Comprehensive Drug Testing, Inc.* (9th Cir. 2010)
 621 F.3d 1162 (en banc) ........................................................... 56, 57, 58, 59

*United States v. DeLeon* (9th Cir. 1992)
 979 F.2d 761 ......................................................................................... 66

*United States v. Gamez-Orduno* (9th Cir. 2000)
 235 F.3d 453 ......................................................................................... 68

*United States v. Goyal* (9th Cir. 2010)
 629 F.3d 912 ......................................................................................... 64

*United States v. Lopez-Avila* (9th Cir. 2012)
 678 F.3d 955 ......................................................................................... 64

*United States v. Namer* (5th Cir. 1982)
 680 F.2d 1088 .................................................................................. 31, 32

*United States v. Pascal* (N.D. Ill. 1979)
 496 F. Supp. 313 ................................................................................... 61

*United States v. Peltier* (E.D. Mich. 2004)
 344 F. Supp. 2d 539 .............................................................................. 30

*United States v. Perkins* (9th Cir. 2014)
 583 F. App'x 796 .................................................................................. 33

vi

DAVIS WRIGHT TREMAINE LLP

*United States v. Perkins* (9th Cir. 2017)
   850 F.3d 1109 ..................................................................... 32, 33, 35

*United States v. Tamura* (9th Cir. 1982)
   694 F.2d 591 ........................................................................... 57, 58

*United States v. Vasey* (9th Cir. 1987)
   834 F.2d 782 ................................................................................. 59

*Universal Commc'n Sys., Inc. v. Lycos, Inc.* (1st Cir. 2007)
   478 F.3d 413 ........................................................................... 34, 36

*Voicenet Commc'ns, Inc. v. Corbett* (E.D. Pa. Aug. 30, 2006)
   2006 WL 2506318 ....................................................................... 37

*Wong Sun v. United States* (1963)
   371 U.S. 471 ................................................................................. 59

*Zeran v. Am. Online, Inc.* (4th Cir. 1997)
   129 F.3d 327 ................................................................................. 36

**Constitutional Provisions**

United States Constitution
   First Amendment ................................................................. *passim*
   Fourth Amendment .............................................................. *passim*
   Fifth Amendment ................................................................................ 2
   Fourteenth Amendment ..................................................................... 2

California Constitution Article I
   § 1 .......................................................................................... 42
   § 28(f)(2) ................................................................................ 42

**Statutes**

42 U.S.C. § 1983 ............................................................................ 31

47 U.S.C.
   § 230 .................................................................................... 29
   § 230(e)(3) ............................................................................ 37

California Evid. Code § 1560(b) .................................................... 23

California Penal Code
   § 182 ................................................................................ *passim*
   § 266h .............................................................................. *passim*
   § 629.50 ................................................................................ 55
   § 647(b) ............................................................... 2, 12, 14, 30

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

California Penal Code
§ 939.71 ................................................................................................... 67
§ 995 ....................................................................................................... 67
§ 1054 ..................................................................................................... 67
§ 1326(b) ................................................................................................. 23
§ 1385 ............................................................................................ 3, 60, 61
§ 1546(a) ................................................................................................. 44
§ 1546(c) ................................................................................................. 40
§ 1546(d) ........................................................................................... 40, 41
§ 1546(e) ........................................................................................... 41, 42
§ 1546(j) .................................................................................................. 41
§ 1546(l) .................................................................................................. 43
§ 1546.1(a)(4) .......................................................................................... 39
§ 1546.1(b)(4) ............................................................................ 2, 39, 42, 63
§ 1546.1(d) .............................................................................................. 26
§ 1546.1(d)(1) ........................................................................... 43, 44, 52, 54
§ 1546.1(d)(2) .................................................................................... passim
§ 1546.1(d)(3) ..................................................................................... 43, 56
§ 1546.1(e)(1) .......................................................................................... 49
§ 1546.1(e)(2) .......................................................................................... 49
§ 1546.2 .................................................................................................. 47
§ 1546.2(a) ........................................................................................ passim
§ 1546.2(a)(1) ..................................................................................... 44, 45
§ 1546.2(b) .............................................................................................. 45
§ 1546.2(b)(1) ................................................................................... passim
§ 1546.2(b)(2) .......................................................................................... 45
§ 1546.2(b)(3) .......................................................................................... 45
§ 1546.4(a) ........................................................................................ passim
§ 1546.4(c) ........................................................................................ passim
§ 1564.1(d)(2) .......................................................................................... 50

**Other Authorities**

ABA Criminal Justice Standards
§ 2.8(f) ................................................................................................... 64
§ 3-2.8(a) ................................................................................................ 65
§ 3-2.8(d) ................................................................................................ 65
§ 3-3.1(c) ................................................................................................. 5

*California Updates Privacy Rights with the Electronic Communications Privacy
   Act* (Nov. 17, 2015), ............................................................................... 40

Hon. Gregory M. Caskey, CAL. SEARCH & SEIZURE § 10.20 ............................. *passim*

Orin S. Kerr, *The Effect of Legislation on Fourth Amendment Protection*, 115
   MICH L. REV. 1117, 1120 (2017) ................................................................ 38

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

# I.   INTRODUCTION

In July 2013, Attorney General Kamala Harris signed a letter to Congress complaining that Section 230 of the CDA "preempts state criminal law" and deprives "State and local law enforcement [of] the authority to investigate and prosecute" websites "such as Backpage.com." Harris and other State AGs urged Congress to amend Section 230 to "restore[] to State and local authorities their traditional jurisdiction to investigate and prosecute" and override the decisions of federal courts, which had "broadly interpreted the immunity provided by the CDA" to preclude state-law criminal charges against websites for third-party content they publish.  Congress has not amended Section 230; the law is today the same as it was in 2013. Backpage and Defendants were, are, and always have been immune from state criminal charges based on third-party ads on the website.

Yet, despite admitting it was precluded from investigating or prosecuting Backpage, the AGO commenced an investigation to pursue prosecution of Backpage.  The AGO's theory was exactly what Section 230 prohibits – *i.e.*, that the website could be liable under state criminal laws for publishing third-party ads and receiving payments for ads.

The AGO pursued its "pimping" theory by obtaining at least 17 search warrants and issuing some 20 subpoenas to collect more than 100 million records of data and documents. (This motion concerns 15 of the warrants and 12 of the subpoenas, which are the ones the AGO produced on November 1, 2017.)  The AGO's seizures include some seven years' worth of all emails of Backpage and the Defendants; all records of users' ad purchase transactions through the website; Backpage's computers and files from its offices; a complete copy of Backpage's systems, databases, and all records of the website from the company's cloud services provider; and more.

Yet, in the warrant applications and supporting affidavits, not once did the AGO mention the Attorney General's admission that the State had no authority to investigate or prosecute.  Quite the opposite, the applications contradicted Harris's statement, offering an agent's assertion that *he believed* "Backpage.com [was] violating the California Penal Code by

1

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   accepting payment from individuals" for ads, adding that, "[t]o my knowledge, no California

2   court has held that the CDA prevents enforcement of Penal Code sections 647(b) - Prostitution,

3   or 266(h) - Pimping." Of course, AG Harris had opined that *all* California criminal laws are

4   preempted by Section 230, so the agent's assertion was misleading, at the least. The AGO

5   cannot write off this misrepresentation as an ill-informed view of a law enforcement officer in

6   the midst of a hurried investigation. Senior AGO attorneys (the same attorneys who have

7   prosecuted this case) reviewed and signed off on this and all of the warrant applications, and

8   the same misstatements appeared repeatedly in the AGO's applications for two years.

9       The warrant applications were founded on premises that Section 230 expressly

10   precludes:  a website cannot be liable based on accusations that it knew or should have known

11   individuals misused the site, or because it accepted payments for online posts, or on a theory

12   that Section 230 immunity and preemption does not apply to state criminal laws. This Court

13   has confirmed this in two rulings dismissing on demurrer all of the State's charges based on

14   ads on Backpage.com or receipt of payments for ads, which are "services rendered for legal

15   purposes" and publishing activities for which Section 230 provides immunity and a

16   "foreclosure from prosecution." (Dec. 9, 2016 Final Ruling at 13, 15; *accord* Aug. 23, 2017

17   Order at 17.) The AGO's "pimping" theory for investigating Backpage was illegal from the

18   start – as the Attorney General Harris admitted in 2013. Yet, 14 of the AGO's warrants and at

19   least nine of the subpoenas at issue here were based on this illegal premise.

20       That the AGO commenced and continued its investigation and prosecution after having

21   admitted it had no authority to do so is a fundamental violation of due process and Defendants'

22   constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments. But the AGO

23   also committed numerous violations of CalECPA, and thereby ensured Backpage and

24   Defendants would not know of the State's actions and so could not object or protect their

25   rights. The AGO issued eleven subpoenas for electronic communications information

26   concerning users' ads and transactions on Backpage.com. Yet, Penal Code § 1546.1(b)(4)

27   prohibits the AGO from using subpoenas "for the purpose of investigating or prosecuting a

28

DAVIS WRIGHT TREMAINE LLP

2

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    criminal offense," as the Court recently held in quashing two of the AGO's subpoenas to

2    Backpage.

3          The AGO also repeatedly violated Penal Code § 1546.2(a), which required it to provide

4    notice to Backpage of its warrants and the investigation, absent court orders to delay

5    notification.  While acknowledging that the CalECPA notification requirement applied, the

6    AGO failed to provide notice for at least eleven of its warrants.  Had Backpage and Defendants

7    known of the AGO's investigation, they could have exercised their rights as contemplated by

8    CalECPA by moving to void the warrants and/or enjoin the investigation

9          The AGO also violated the segregation and sealing requirements of CalECPA.  Penal

10   Code § 1546.1(d)(2) required the AGO to set aside "any information obtained through the

11   execution of [a] warrant that is unrelated to the objective of the warrant" and mandates that

12   such information "shall be sealed and not be subject to further review, use, or disclosure except

13   pursuant to a court order." (*Id.*)  The AGO misconstrued the sealing requirement to mean that

14   it was only required to seal data outside the "scope" of the warrant.  In practice, the AGO's

15   misreading of the statute allowed it to obtain and review all emails of Defendants and

16   Backpage personnel on any subject and not set aside or seal anything.  And then, when the

17   Court had rejected the government's pimping theory, the AGO simply went back to re-review

18   all the emails and other data previously seized to see if it could come up with some other

19   theory of prosecution (the bank fraud/money laundering charges).  This is precisely what

20   CalECPA prohibits, and what the Fourth Amendment also prohibits.

21         As has become clear, the AGO has used its considerable powers to conduct an

22   investigation  and prosecution it had no authority to pursue; misled courts to do so; and

23   violated California law and constitutional law at almost every turn.  The AGO's charges

24   should be dismissed outright based on outrageous government misconduct or on the Court's

25   motion under Penal Code § 1385.  But, even short of complete dismissal, the Court should

26   enter an order declaring void 14 of the AGO's warrants and nine of its subpoenas (excepting

27   the two that the Court has already quashed) for violations under CalECPA and require the

28

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  return, destruction and suppression of all information and data obtained by the AGO pursuant

2  to these warrants and subpoenas or derivatively based on them.  (Penal Code § 1546.4(a), (c).)

3          Finally, if the Court should conclude that any of the challenged warrants may survive

4  notwithstanding the AGO's overall conduct and violations of CalECPA and the Constitution,

5  Defendants request the Court hold a *Franks* hearing  as to such warrants, after requiring the

6  AGO to provide required discovery.

7                                    **II.        BACKGROUND**

8          From prior briefing, the Court is familiar with much of the background of this case.

9  The points relevant to the present motion are summarized here.

10         **A.      The AGO Undertook Its Investigation After Admitting the State Had No
11                 Authority and Was Prohibited from Prosecuting Backpage.**

12         In July 2013, Attorney General Harris joined other state AGs in a letter to Congress

13  urging that Section 230 of the CDA be amended because the law foreclosed state and local

14  authorities from prosecuting Backpage.  (*See* Ex. B (NAAG letter to members of Congress

15  (July 23, 2013).)[2]  The letter expressly targeted Backpage.com, attacking the website in the

16  first paragraph and mentioning it five other times.  It complained that courts had "interpreted

17  [the CDA] to "prevent[] State and local law enforcement agencies from prosecuting" "online

18  classified ad services such as Backpage.com."  (*Id.* at 1.)  Harris and the other AGs noted that

19  "[f]ederal courts have broadly interpreted the immunity provided by the CDA," and "held that

20  the CDA preempts state criminal law."  (*Id.* at 1-2 (citing *Backpage.com, LLC v. McKenna*

21  (W.D. Wash. 2012) 881 F. Supp. 2d 1262.)  They insisted that "[t]his must change," and urged

22  that "Congress amend the CDA so that it restores to State and local authorities their traditional

23  jurisdiction to investigate and prosecute those who promote prostitution and endanger our

24  children."  (*Id.* at 1.)  And they reiterated the point in the letter's concluding sentence, urging

---

25  [2] All materials submitted in support of this motion are attached to the accompanying Declaration of
26  James C. Grant, and are cited here as simply "Ex."  For clarity, the declaration references the 27
   warrants and subpoenas and related materials produced by the AGO and at issue here by numerical
27  designations, corresponding to the chronological order of the warrants and subpoenas, *i.e.*, exhibits
   numbered 1-27.  Other materials cited and relied upon in this motion have been given alphabetic
28  designations, *i.e.*, exhibits A-R.

4

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1 that "State and local law enforcement ... be granted the authority to investigate and prosecute"

2 websites such as Backpage.com, because Section 230 precludes them from doing so.  (*Id.* at

3 2.)

4 However, at the same time the Attorney General publicly admitted that Section 230

5 deprived the State of jurisdiction or authority to investigate or prosecute Backpage, the AGO

6 launched an investigation aimed at prosecuting Backpage for ads on the website.  (*See* Ex. C

7 (AG Harris's Oct. 6, 2016 press release indicating the AGO began its investigation three years

8 prior).)

9      **B.     The Law Prohibiting the AGO's Investigation and Prosecution Has Long
              Been Clear.**

10     In a series of cases in 2012-2013, federal courts enjoined state criminal laws that

11 targeted Backpage.com, holding that escort ads on the website are protected speech and states'

12 efforts to criminalize publication violated the First Amendment and Section 230.  (*See*

13 *McKenna*, 881 F. Supp. 2d at 1282 (enjoining Washington law); *Backpage.com, LLC v.*

14 *Cooper* (M.D. Tenn. 2013) 939 F. Supp. 2d 805, 831 (enjoining Tennessee law);

15 *Backpage.com, LLC v. Hoffman* (D.N.J. Aug. 20, 2013) 2013 WL 4502097, at *6-7 (enjoining

16 New Jersey law).)  In each of these cases, the courts rejected state AGs' arguments that escort

17 ads on the website were for prostitution and therefore illegal.  (*See, e.g.*, *McKenna*, 881 F.

18 Supp. 2d at 1282 (noting that escort ads have long been permitted and escort services are

19 licensed and regulated in many states); *Cooper*, 939 F. Supp. 2d at 833-34 (holding that third-

20 party ads on Backpage.com are protected speech under the CDA and the First Amendment).)

21 The courts also uniformly held that state criminal laws are preempted by Section 230, and

22 state authorities are prohibited from prosecuting websites for third-party content.  (*See*

23 *McKenna*, 881 F. Supp. 2d at 1275; *Cooper*, 939 F. Supp. 2d at 821-26; *Hoffman*, 2013 WL

24 4502097, at *6; *see also People v. Gourlay* (Mich. Ct. App. Mar. 3, 2009) 2009 WL 529216,

25 at *3.  As the *Cooper* court noted, a state may not "enforce a law that flatly conflicts with

26 federal law."  (939 F. Supp. 2d at 813.)

27

28

DAVIS WRIGHT TREMAINE LLP

5

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    Other cases have long held that escort ads on Backpage.com are protected speech; the

2    government may not presume that such ads concern criminal activities; a website's conduct in

3    publishing third-party ads cannot establish participation in sex trafficking or prostitution of

4    individuals who may misuse the site; and allegations that a website facilitates unlawful

5    conduct such as prostitution based on its structure, posting rules or charges are barred under

6    Section 230, because these are traditional publisher functions for which the CDA provides

7    immunity.  (*See Jane Doe No. 1 v. Backpage.com, LLC* (1st Cir. 2016) 817 F.3d 12, 20-22,

8    *cert. denied* (2017) 137 S. Ct. 622; *Backpage.com, LLC v. Dart* (7th Cir. 2015) 807 F.3d 229,

9    230, *cert. denied* (2016) 137 S. Ct. 46; *Doe ex rel. Roe v. Backpage.com, LLC* (D. Mass. 2015)

10   104 F. Supp. 3d 149, 162-63, *aff'd sub nom. Jane Doe No. 1 v. Backpage.com*, 817 F.3d 12;

11   *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC* (E.D. Mo. 2011) 809 F. Supp. 2d 1041,

12   1052; *see also Dart v. Craigslist, Inc.* (N.D. Ill. 2009) 665 F. Supp. 2d 961, 967-69; *Doe v.*

13   *GTE Corp.* (7th Cir. 2003) 347 F.3d 655, 659.)

14   The law is also clear that government officials may not misuse their prosecutorial and

15   other powers to attack a publisher for speech they dislike.  As Judge Posner wrote for the

16   Seventh Circuit in enjoining the Cook County Sheriff from threatening credit card companies

17   in order to "crush" Backpage.com:

18       [A] public official who tries to shut down an avenue of expression of ideas and
         opinions through actual or threatened imposition of government power or
19       sanction is violating the First Amendment.

20   (807 F.3d at 230 (internal quotation marks omitted).)

21   **C.    This Court Has Twice Held that the AGO Is Foreclosed from Prosecuting
             Defendants for Publishing Activities.**
22

23   The AGO filed its original criminal complaint in this action on September 26, 2016,

24   alleging charges of pimping (Penal Code § 266h) and conspiracy (§ 182) on the premise that

25   Backpage.com published and received payments for third-party ads on its website.

26   Defendants demurred to the complaint on October 19, 2016, and shortly thereafter

27   Judge Bowman issued a tentative ruling to grant the demurrer based on Section 230.  (*See*

28

6

DAVIS WRIGHT TREMAINE LLP

1    Nov.16, 2016 Tentative Ruling.)  After further briefing, Judge Bowman issued his Final

2    Ruling on December 9, 2016, granting Defendants' demurrer in its entirety.  The Court

3    rejected all of the AGO's arguments and held the State's charges were barred by Section 230,

4    concluding that "Congress has precluded liability for online publishers for the action of

5    publishing third party speech and thus provided … a foreclosure from prosecution."  (Dec. 9,

6    2016 Final Ruling at 15.)  The Court specifically rejected the AGO's contentions that

7    Defendants could be criminally liable because Backpage.com received payments from users

8    for ads, as this "qualif[ies] as services rendered for legal purposes" and is a function

9    "traditionally associated with publishing" which is "provided immunity under the CDA." (*Id.*

10    at 13.)  The Court dismissed all charges by order dated December 13, 2016.

11        Notwithstanding Judge Bowman's ruling, the AGO served a new complaint on

12    December 23, 2016, alleging the same charges of pimping and conspiracy as before and adding

13    26 charges of money laundering based on the same theory Judge Bowman had rejected, *i.e.*

14    that ad revenues were proceeds of pimping and prostitution.  Defendants moved to dismiss the

15    refiled complaint, and the Court allowed further briefing, ultimately inviting the AGO to

16    amend the complaint.  (Ex. D (Mar. 10, 2017 Trans. at 59).)

17        The AGO submitted its First Amended Complaint ("FAC") to the Court on March 24,

18    2017, and the complaint was deemed filed on April 28, 2017.  Defendants renewed their

19    demurrer, and the Court considered another round of briefing and heard argument on July 14,

20    2017.  At this point, for the first time, the AGO asserted another theory to support charges of

21    alleged money laundering – that Backpage allegedly engaged in bank fraud or wire fraud by

22    using deceptive billing descriptors for transactions involving credit cards issued by Bancorp,

23    Wells Fargo, Chase and American Express.  Up to this point, all of the State's charges and

24    arguments had been premised on its "pimping" theory, and, as has now come to light, the

25    AGO's warrant applications and subpoena demands through this time likewise were all based

26    on the rejected and preempted pimping theory.

27

28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    On August 23, 2017, this Court issued its Ruling on Defendants' Motion to Dismiss.

2  The Court again rejected the State's efforts to prosecute based on the content of users' ads,

3  holding that this is "prohibited under the immunity provision of the CDA." (Aug. 23, 2017

4  Order 18.)  As the Court stated:

5           Because this Court has rejected the prosecution based on the theory that
             Defendants engaged in pimping, their purported use of proceeds from
6           prostitution cannot now serve as the basis for money laundering charges.  As
             this Court has already determined, Defendants provide an online forum for
7           third-party speech, and their decisions to charge money for such postings
             constitutes activity protected by the CDA.
8

9  (*Id.*)  The Court's ruling allowed the money laundering/bank fraud charges to remain,

10  accepting the AGO's representation that these charges are unrelated to and "not based on

11  publication of third-party speech." (*Id.* at 11.)

12       **D.     The AGO's Efforts to Obtain Vast Amounts of Evidence by Warrants and
                   Subpoenas.**
13

14       Throughout this litigation, Defendants have repeatedly expressed concerns about the

15  AGO's actions in obtaining search warrants and issuing subpoenas in its pursuit of Backpage

16  and whether the AGO was accurately representing and following the law.  A week after the

17  AGO arrested and incarcerated Defendants, their counsel wrote AG Harris, expressing

18  concerns that the State had secured search warrants without telling judicial officers of Harris's

19  admission that the State had no authority to prosecute. (*See* Ex. E at 3 (Oct. 17, 2016 letter to

20  AG Harris).)  Neither AG Harris nor her office responded.  Defendants' counsel wrote again

21  on October 26, 2017, asking the AGO to provide all search warrants and applications and to

22  confirm that it would not access or review materials until the Court decided the demurrer that

23  was then pending. (Ex. F. (Oct. 26, 2016 letter to Ms. Krell and Ms. Mailman).)  The AGO

24  did not respond.  On November 3, 2016, Defendants repeated their request for all search

25  warrants and supporting documents. (*See id.* Ex. G (Nov. 3, 2016 letter to Ms. Mailman and

26  Ms. Krell).)  The AGO did not respond.

27       As the case continued after Judge Bowman's tentative ruling to grant the first demurrer

28  Defendants' counsel learned the AGO had nonetheless issued new subpoenas. (Ex. H (Nov.

DAVIS WRIGHT TREMAINE LLP

8

1   22, 2016 letter to Ms. Krell and Ms. Mailman).)  Again, Defendants' counsel asked the AGO

2   to provide all subpoenas, warrants and supporting materials, and again the AGO did not

3   respond.  After Judge Bowman granted the demurrer, Defendants' counsel again asked the

4   AGO to provide the warrants and subpoenas and to return or destroy all materials the AGO

5   previously obtained as to the dismissed charges.  (Ex. I (Dec. 14, 2016 letter to Ms. Krell and

6   Ms. Mailman).)  This time the AGO responded that "[w]e fully intent to comply with our

7   discovery obligations" (Ex. J (Dec. 20, 2016 email from Ms. Mailman)), although that was no

8   longer an issue because all of the AGO's charges had been dismissed.  Thereafter, Defendants

9   again asked the AGO to provide complete copies of all search warrants and supporting

10  affidavits.  (Ex. K (Jan. 3, 2017 letter to Ms. Mailman and Ms. Krell).)  Again, the AGO's tack

11  was simply to ignore this request and not respond.

12       Finally, to attempt to obtain the warrant and subpoena information the AGO had

13  refused to provide, Defendants' counsel made a proposal that the AGO provide all such

14  information by November 1, 2017, and (assuming it did so), Defendants would move to

15  challenge the State's actions (if appropriate) by February 1, 2018.  (*See* Ex. L (Oct. 3, 2017

16  Trans. at 6:23-7:18).)  The schedule has since been extended, in part because the AGO did not

17  fully disclose all the warrants and related information as promised.

18       Defendants have identified 17 search warrants and at least 20 subpoenas used by the

19  AGO in its investigation and pursuit of Backpage and Defendants.  The AGO has produced 15

20  of the warrants and 12 subpoenas,[3] which, notwithstanding the many omissions, amply reveal

21  the AGO's tactics.  With these warrants and subpoenas, the State has obtained over 100

22  million records, including (for a period of more than seven years) essentially all of Backpage's

23  and Defendants' email communications; all ads, transactions and communications of users on

24  ─────────────────
    [3] As noted, Defendants do not know all of the warrants and subpoenas the AGO has obtained or
25  used because the AGO has refused to provide complete information.  However, in addition to the
    warrants and subpoenas in the AGO's November 1 production, Defendants are aware of two search
26  warrants obtained by Texas law enforcement authorities at the behest of and based on an affidavit
    supplied by the AGO for searches of Backpage's offices and Mr. Ferrer's home on October 6-7,
27  2016.  Defendants have also found references to several other subpoenas the AGO issued, but has
28  not produced.  (*See* Grant Decl. ¶ 4.)

DAVIS WRIGHT TREMAINE LLP

9

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    the website; Backpage's databases and systems for running the website; all data of payment

2    processors for handling transactions, and much more.  The warrant and subpoena materials

3    and other information from the AGO reflect that it has obtained tens of millions of additional

4    data and records.[4]  With one exception, *all* of these warrants and subpoenas were premised on

5    the State's rejected "pimping" prosecution theory.  And, without *any* exception, the AGO did

6    not mention at any time Attorney General Harris's admission that the State had no authority to

7    investigate or prosecute based on its pimping theory.

8         As the State's searches and demands have been voluminous, so too are its warrants and

9    subpoenas, although the substance of the AGO's warrant applications is relatively thin and

10   largely consistent throughout.  The following is a summary.

11       **1.      Search Warrant to Backpage (October 29, 2014).**  In October, 2014, the

12   AGO obtained a search warrant directed to Backpage and seeking copies of ads, identification

13   of users, billing records and other information concerning 16 "Post IDs," which are

14   identification numbers for specific ads.  (*See* Ex. 1; Placer County SW No. 63-017629; AGS

15   00000652-685).[5]  As the AGO knew from prior experience, Backpage routinely cooperates

16   with and readily responds to law enforcement warrants and subpoenas about individuals who

17   may have misused the website for criminal activity (*see Cooper*, 939 F. Supp. 2d at 814), and

18   the warrant as served on Backpage gave every indication the State was investigating the users

19   who posted the specific ads.  But the affidavit issued in support of the warrant indicates that

---

21  [4] (*See, e.g.*, Banafa Decl. in Support of Opp. to Mot. to Quash ¶¶ 20-23 (warrant to Amazon Web
22  Services encompassed 15 terabytes of data for over 10 million transactions, 800,000 "new"
    advertisements, which would take as long as two days to two weeks just to download); Ex. 15 at
23  AGS 00001072 (email from payment processor Vantiv, noting the AGO's subpoena called for 90
    million transactions, and that it had taken four days to decrypt 12 million transactions); Ex. 5 at
24  AGS 00000418 (AGO statement that Google had produced more than 4 million files); Ex. 18 at
    AGS 00001006 (email from payment processor JetPay, explaining that AGO's subpoena demands
25  would require in excess of 125 hours to research).)

26  [5] The AGO produced the warrant and subpoena materials in such a fashion that it can be difficult to
27  make sense of them.  In the accompanying exhibits, Defendants have provided the materials as they
    were produced (with the exception that certain materials regarding Ex. 26 (subpoena to CoStar
28  Group, Inc.)) have been omitted as they were voluminous and not relevant to this motion.

10

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    the AGO's target was Backpage itself. (*See* AGS 00000659-669.) Backpage promptly

2    complied with the warrant.

3        **2.      First Search Warrant to Google (July 2, 2015).**  The AGO next obtained a

4    search warrant directed to Google, demanding all emails to and from the address

5    carl.ferrer@backpage.com, and all related account information. (Ex. 2; Placer County SW

6    No. 63-017880, AGS 00000328-357 at AGS 000000353.) As many companies do, Backpage

7    used Google to host and provide email services. This was a warrant for Backpage's own

8    information, sought in a way to avoid giving notice to Backpage or Mr. Ferrer by going to the

9    company's cloud services provider.

10       The warrant issued upon the affidavit of Special Agent Brian Fichtner, who explained

11   that the AGO initiated its investigation of Backpage in 2013. (AGS 00000338.) Agent

12   Fichtner opined that ads in the "Adult" section "openly advertise sexual, lewd acts for

13   money," although he did not provide or quote any such ad. (*Id.*) Fichtner described an

14   "undercover operation" in which he posted an ad for escort services on Backpage with a photo

15   of a woman dressed in lingerie and no mention of sex acts, as well as another ad offering to

16   sell a couch. (AGS 00000340-341.) Fichtner averred that he called Carl Ferrer (Backpage's

17   CEO), and informed him that the fake ad was a "known prostitution ad," and within 20

18   minutes Backpage took the ad down, and also removed the couch ad because it was posted by

19   the same user. (AGS 00000342.) Mr. Ferrer also offered to preserve the escort ad in case the

20   California DOJ wanted to subpoena records for an investigation. (AGS 00000343.) Two days

21   later, Fichtner attempted to repost the escort ad in a variety of ways (*e.g.*, using a different

22   email address, trying to post in a different city) but was blocked from doing so.

23   (AGS 00000344.) Fichtner also stated that Backpage promptly blocked and refused to allow

24   re-posting of other fake ads from his office after agents reported them to Backpage.

25   (AGS 00000345.)[6]

26

27   ──────────────────────

[6] Fichtner also recounted prior sting operations in which other California law enforcement
authorities had responded to ads on Backpage.com and, after making contact, had identified

28   individuals involved in prostitution or sex trafficking. (AGS 0000346-348.) Fichtner admitted

                                          11

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    Agent Fichtner also discussed Section 230, stating:

2    Backpage.com's promotion of prostitution drew criticism from state legislators
     and Attorneys General.  The State of Washington passed a law criminalizing
3    Backpage.com's business model of profiting from the advertisement of minors
     sold for sex, and Attorneys General publicly called for Backpage.com to shut
4    down the Adult section.  But the Washington legislation was deemed
     unconstitutional because federal courts cited conflicts with 47 U.S.C. 230, the
5    Communications Decency Act of 1996 (CDA), and Backpage.com did not
     accede to the Attorneys General's demands.  Although Section 230 of CDA
6    has been interpreted to protect providers from liability for third party content, I
     believe Backpage.com is violating the California Penal Code by accepting
7    payment from individuals promoting and/or offering lewd acts or sexual favors
     for money.  To my knowledge, no California court has held that the [CDA]
8    provides protection under Penal Code sections 647(b) - Prostitution, or 266(h)
     - Pimping.
9

10   (AGS 00000338.)  As discussed further below, in several respects this this statement is

11   misleading, at the very least.  (*See* Section III.A, *infra.*)  No court had ever held that Backpage

12   was involved in "promotion of prostitution" or "profiting from the advertisement of minors

13   sold for sex" – no fewer than four courts had expressly rejected such claims and held that First

14   Amendment principles forbid the government from presuming that ads on Backpage.com are

15   unlawful.  (*See McKenna*, 881 F. Supp. 2d 1262; *Cooper*, 939 F. Supp. 2d 805; *Hoffman*, 2013

16   WL 4502097; *M.A.*, 809 F. Supp. 2d 1041.)  Agent Fichtner mentioned one of these cases

17   (*McKenna*), without citing it, but then offered his opinion that the established law was

18   inapplicable because he "believe[d] Backpage.com is violating the California Penal Code by

19   accepting payment from individuals promoting and/or offering lewd acts or sexual favors for

20   money" and "no California court has held that the [CDA] provides protection under Penal

21   Code sections 647(b) Prostitution, or 266(h) - Pimping."  (AGS 00000338.)  Agent Fichtner

22   did not mention that courts had uniformly held that CDA Section 230 precludes enforcement

23   of *all* state criminal laws against Backpage for third-party content posted on the site or that

24   this was the Attorney General's own view, expressed in the July 23, 2013 letter to Congress.

25

26

27   _____

     Backpage fully cooperated and provided subpoena responses for these investigations.
28   (AGS 00000347.)

                                    12
     MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    Agent Fichtner urged the court to authorize a search of all of Mr. Ferrer's emails on

2    Fichtner's belief that, because Backpage charged and received payments for escort ads,

3    Messrs. Ferrer, Larkin and Lacey "are accepting and profiting from monies generated by

4    prostitution in violation of [Penal Code § 266h and] conspiring to commit prostitution and/or

5    pimping in violation of [Penal Code § 182.]." (AGS 00000350.) On the AGO's request, the

6    court also ordered Google "that notification to the customer [*i.e.*, Mr. Ferrer] be deferred

7    pending further order of this court." (AGS 00000329.)

8    **3.    Search Warrant to Union Bank (July 30, 2015).** The AGO next sought and

9    obtained a warrant directed to Union Bank for records reflecting the financial institutions and

10   accounts that received payments for the three Backpage.com ads purchased by the AGO in

11   March 2015 in connection with its "undercover operation" (discussed above). (Ex. 3; Placer

12   County SW 63-017915; AGS 00000358-382 at AGS 00000364.) Union Bank was the issuer

13   of the credit card used by the AGO's office to purchase the ads. Agent Fichtner's supporting

14   affidavit copied large portions of his prior affidavit for the first Google warrant, including the

15   same paragraph misstating Section 230. (AGS 00000362; *see also* AGS 00000358 (this

16   warrant application and affidavit also reviewed and signed by Ms. Krell).)

17   **4.    Second Search Warrant to Google (August 26, 2015).** The AGO obtained a

18   second warrant to Google, which the court issued on August 26, 2015. (Ex. 4; Placer County

19   SW 63-017987; AGS 00000383-414.) Agent Fichtner again provided the affidavit, noting the

20   AGO had obtained and reviewed "over 21,000 emails for carl.ferrer@backpage.com," and

21   now sought all emails for 20 specified Backpage company accounts, all other accounts with

22   @backpage.com addresses, and all emails and information for Mr. Larkin's personal Gmail

23   account. (AGS 00000393, 399.) The warrant contained no restriction on the types of

24   messages the government would obtain; it sought all messages related to all the accounts.

25       In this affidavit, Agent Fichtner offered his summary of "statistics and financial

26   earnings data for Backpage.com" based on his review of the emails previously seized from

27   Google (AGS 00000393), and a DOJ investigative auditor's opinion about Backpage's

28

DAVIS WRIGHT TREMAINE LLP

13

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1   revenues based on the same materials (AGS 00000394-396.)[7] Fichtner opined that ads in the

2   adult section accounted for 9%-14% of ads on the website, while the DOJ auditor estimated

3   that perhaps 99% of the website's revenues were from adult ads.  (AGS 00000393-395.)[8]

4   With no other basis, Agent Fichtner concluded that, based on "the information discovered in

5   FERRER's emails, and [the auditor's] evaluation of the statistics and financial statements

6   found in those emails, I believe that the internet website Backpage.com is permeated with

7   fraud and is in violation of Penal Code section 266h – Pimping and Penal Code 647(b) –

8   Prostitution."  (AGS 00000396.)  Regarding the warrant's demands for Mr. Larkin's email

9   account and communications, Fichtner's affidavit says only that he found Mr. Larkin's email

10  address while reviewing Mr. Ferrer's emails, and "I believe information discussing,

11  identifying, and supporting these criminal acts will also be found in the emails sent to and

12  from LARKIN …."  (AGS 00000396.)

13         The AGO obtained an order that Google also not disclose this warrant.

14  (AGS 00000384, 392.)  Acknowledging that CalECPA applied (even though the warrant was

15  executed before CalECPA's effective date of January 1, 2016), the AGO requested and

16  received four subsequent orders to extend the deferral of notification (*see* AGS 00000407,

17  409, 410, 414), but the last of the deferrals expired on June 1, 2016 (AGS 00000414).  The

18  AGO did not notify Backpage, Mr. Ferrer or Mr. Larkin of the warrant or its investigation at

19  that time.  The AGO did not disclose the warrant until October 12, 2016, after it had arrested

20  and incarcerated Defendants.  (Grant Decl. ¶ 3.)

21         **5.    Third Search Warrant to Google (October 29, 2015).**  The AGO obtained a

22  third warrant to Google, issued on October 29, 2015, for all emails and records for a personal

23  email account held by Mr. Lacey.  (Ex. 5; Placer County SW 63-018099; AGS 00000415-

24  _____

25  [7] Fichtner's affidavit states that he attached the first Google warrant as a confidential attachment
    (AGS 00000393), but there was no such attachment in the materials produced by the AGO.

26  [8] The affidavit does not mention that adult ads were the only ones for which Backpage charged nor

27  that charges for adult classified ads were originally instituted at the recommendation of law
    enforcement agencies to reduce abusive postings and provide data about individuals who might

28  misuse the site. (*See Cooper*, 939 F. Supp. 2d at 813.)

14

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

480.)  The AGO's production concerning the warrant is not clear, but it appears Agent

Fichtner simply provided the same explanation as he had offered for the second Google

warrant, concerning statistics and revenue estimates for the Backpage.com website (discussed

above).  (*See* AGS 00000456-468.)  He offered no grounds to search Mr. Lacey's personal

emails except to say that, in reviewing the 21,000 emails seized from Mr. Ferrer's Backpage

account, Fichtner found *one email* Mr. Ferrer had sent to Mr. Lacey's email address in 2014.

(AGS 00000467.)  On the strength of this one email, Fichtner repeated his opinion that Mr.

Lacey was among the "co-conspirators… accepting monies directly related to prostitution"

and information about "these criminal acts" would be found in Mr. Lacey's personal emails.

(AGS 00000468.)

In a format the AGO used throughout its applications, this warrant provided that the

objective was to identify "fruits, contraband, evidence and instrumentalities of violations of

Pen. Code §§§ 647, 266h, and 182" (regarding, respectively, lewd conduct, pimping and

conspiracy), but went on to state that all items "within the scope of this warrant may be copied

and retained by investigating officers" and they were required to seal only "information that

does not fall within the scope of **Attachment B**."  (AGS 00000471.)  However, the scope of

Attachment B encompassed all of Mr. Lacey's emails on any subject over a period of nearly

six years.  (AGS 00000470.)

In this instance again, the AGO obtained an order to prevent Google from disclosing

the warrant (AGS 00000426, 447, 463), and again sought extensions pursuant to CalECPA

(AGS 00000420, 436), but the extensions expired as of June 1, 2016 (AGS 000000418), and

the AGO did not disclose the warrant until over four months later.

**6.**    **Second Search Warrant to Backpage (January 27, 2016).**  In January, 2016,

the AGO again sought a warrant to seize records from Backpage directly.  (Ex. 6; Sacramento

County No. 16SW000179; AGS 00000001-30.)  This time, the AGO demanded all

information about ads, users and their transactions identified by 54 Post IDs, 32 telephone

numbers, 5 email addresses and 4 IP addresses.  (AGS 00000006.)

15

1    Special Agent Tera Mackey provided the supporting declaration.  (AGS 00000008-29.)

2    Mackey averred that she had reviewed records of other law enforcement agencies and the

3    National Center for Missing and Exploited Children ("NCMEC") to identify victims of sex

4    trafficking and then reviewed and searched for past ads concerning the individuals on

5    Backpage.com.  (AGS 00000015-17.)  However, Mackey offered nothing to show that

6    Backpage had any role in posting the ads or victimization of the individuals.  To the contrary,

7    when she mentioned Backpage's actions it was to note that Backpage itself provided

8    CyberTipline reports to NCMEC and cooperated with law enforcement officials.  (*See, e.g.*,

9    AGS 00000017, 18, 20, 22, 25.)

10    Again admitting that CalECPA applied (AGS 00000001), the AGO sought and

11    obtained an order compelling Backpage to "delay notification of the existence of the warrant

12    [or] the investigation, to the listed subscriber[s] … for a period of ninety days …."

13    (AGS 000000003.)  But this was a ruse, because the State's targets for this warrant were

14    Backpage and Defendants.  The AGO never obtained a court order to delay notice to the

15    targets of the warrant (as required by Penal Code § 1546.2(a)) and the AGO did not provide

16    notice to Defendants or Backpage on January 27, 2016, when the warrant issued.

17    **7.    Fourth Search Warrant to Google (March 3, 2016).**  The AGO obtained

18    another search warrant to Google on March 3, 2016, this time seeking all emails and account

19    records for ten different email addresses associated with Messrs. Larkin, Lacey and Ferrer and

20    other individuals who formerly had roles with Village Voice Media (the former parent

21    company of Backpage).  (*See* Ex. 7; Placer County SW 63018231; AGS 00000481-605.)

22    Agent Mackey provided the supporting affidavit, largely consisting of language from prior

23    warrant applications and affidavits.  Mackey repeated the conclusory assertion that "I believe

24    FERRER, LARKIN, and LACEY are knowingly deriving profit from commercial sex and thus

25    committing the crime of pimping" (AGS 00000501), but provided no evidence for this (*see,*

26    *e.g.*, AGS 00000502 ("FERRER is directly and extensively involved in the day-to-day

27    operation of Backpage.com" and "frequently communicates with … staff" and others).)  Agent

28

DAVIS WRIGHT TREMAINE LLP

16

1    Mackey also did not mention AG Harris's admission that Section 230 barred the State from

2    investigating or prosecuting, and her only mention of Section 230 was by incorporating Agent

3    Fichtner's affidavit for the first Google warrant, thus repeating the same misstatements.

4    (AGS 00000539.)  Here too, the AGO acknowledged the notice requirement of CalECPA and

5    obtained an order delaying notification (AGS 00000483), but did not disclose the warrant or

6    the investigation to Defendants after this extension expired on June 1, 2016

7            **8.**     **Third Search Warrant to Backpage (May 12, 2016).**  The AGO sought and

8    obtained another search warrant to Backpage on May 12, 2016, concerning ads about seven

9    individuals that allegedly appeared on the website.  (Ex. 8; Sacramento County No.

10   16SW00804; AGS 00000031-58.)  Agent Fichtner provided the supporting affidavit.  Again,

11   he included the paragraph misstating Section 230 immunity and preemption.  (AGS

12   000000043.)  And, again, the AGO obtained an order directing Backpage not to notify the

13   individual users of the warrant (Ex. 12 at AGS 00000080, citing Penal Code § 1546.2(a)), and

14   later obtained an order extending this deferral through October 24, 2016 (AGS 0000055).  But,

15   as before, Backpage and Defendants were the actual targets of the warrant, the AGO never

16   obtained an order to defer notification to them, and did not notify Defendants on May 12,

17   2016, as required by Penal Code § 1546.2(a).

18           **9.**     **Fifth Search Warrant to Google (August 10, 2016).**  Although the AGO had

19   previously seized approximately 4 million files from Google for Backpage accounts and

20   Defendants' personal accounts, the AGO sought and obtained another warrant for the same

21   accounts (to seize more recent emails) and others (eight corporate and personal email accounts

22   related to five other individuals).  (Ex. 9; Placer County SW No. 63-018454; AGS 00000606-

23   651.)  The supporting declaration of Agent Mackey alludes to money laundering, but the

24   alleged underlying criminal activity was that Defendants were engaged in "prostitution and/or

25   pimping" because Backpage received payments from users for escort ads on the website.  (*See*

26   AGS 00000641-42.)  The AGO further recognized, and the court confirmed in its order to

27   delay notice, that this warrant was subject to CalECPA.  (*See* AGS 00000608, 623.)

28

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1        **10.**    **Fourth Search Warrant to Backpage (August 11, 2016).**  The AGO issued its

2  fourth warrant to Backpage on August 11, 2016, concerning ads about three individuals and

3  related information about billing, identification of users, IP addresses, etc.  (Ex. 10;

4  Sacramento County No. 16SW01279; AGS 00000059-78.)  Using the same tack as before, the

5  warrant gave every indication that the individual users were the targets of investigation, and

6  the warrant directed Backpage not to provide notice to the users.  (AGS 00000060.)  But the

7  AGO never obtained judicial authorization to override CalECPA's requirement that notice of

8  the investigation be provided to the actual targets, and the AGO did not provide the

9  § 1546.2(a) notice to Backpage or Defendants when the warrant was issued.  Backpage

10  provided information in response to the warrant in less than 24 hours (*see* AGS 00000078

11  (return dated August 11, 2016, the same day the warrant was issued).)

12        **11.**    **First Search Warrant to Amazon Web Services (September 8, 2016).**  In

13  September 2016 the AGO expanded its searches related to Backpage by seeking a warrant to

14  Amazon Web Services ("AWS").  (Ex. 11; Sacramento County No. 16SW01745;

15  AGS 00000084-120.)  AWS is a cloud services provider that provides computing capacity and

16  storage for websites and other companies such as Backpage to run their services. The systems

17  and data belong to Backpage and are merely hosted by AWS.  (*See* AGS 00000108; *see also*

18  AGS 00000233.)  The AGO did not execute this warrant but instead sought and obtained a

19  replacement warrant less than a month later (discussed below).

20        **12.**    **Fifth Search Warrant to Backpage (October 3, 2016).**  The AGO obtained

21  another search warrant directed to Backpage on October 3, 2016, concerning ads about two

22  individuals and related information about billing, identification of users, IP addresses, etc.

23  (Ex. 12; Sacramento County No. 16SW01722; AGS 00000079-83.)  The AGO has not

24  produced the affidavit submitted in support of the warrant application.  But, like each of the

25  prior warrants to Backpage, this warrant made it appear the AGO was investigating the

26  individual users and directed Backpage not to provide them notice.  (*See* AGS 00000080.)

27

28

18

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

13.     **Second Search Warrant to Amazon Web Services (October 3, 2016).**  The AGO obtained the second warrant to AWS on October 3, 2016. (Ex. 13; Sacramento County No. 16SW02132; AGS 00000212-237.)  It was identical to the prior (unexecuted) warrant in terms of the categories of information and the time period covered – essentially all data and systems hosted by AWS for Backpage dating back to 2013, including all accounts associated with Backpage; all users' ads transactions and identifying information; all databases, applications, files and logs used to run the Backpage websites; and all billing and payment processing information for all users and transactions. (AGS 00000217-218.)  Again, the warrant application was based on the AGO's pimping theory, with Agent Fichtner opining that because Backpage received ad payments it was "accepting and profiting from commercial sex in violation of Penal Code section 266h" and Defendants therefore "are conspiring to commit prostitution and/or pimping in violation of Penal Code section 182." (AGS 00000235.)  Like all of the other warrants applications, this one also did not mention AG Harris's admission that the AGO had no authority to investigate or prosecute Backpage.

The warrant form submitted by AGO for this warrant contained a sentence directing AWS not to disclose the warrant "or the existence of the investigation" to Backpage for 90 days and excusing the AGO from providing the notification required under Penal Code § 1546.2(a) for the same period. (AGS 00000214.)  However, the affidavit submitted by Agent Fichtner did not did not request the notification deferral and offered no showing that an "adverse result" would occur if the CalECPA notification was provided, as required by § 1546.2(b)(1).

This warrant provided that any "[i]tems within the scope of this warrant" could be "copied and retained by investigating officers," and sealing was only required for information that "does not fall within the scope of the warrant." (AGS 00000218.)  Also like many of the other warrant applications, the AGO requested (and apparently received approval) that it "be authorized to share the seized property with … out-of-state and federal law enforcement agencies." (AGS 00000235.)

DAVIS WRIGHT TREMAINE LLP

19

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   The warrant to AWS requested a "vast amount of data," in fact, so much that AWS had
2   not been able to fully comply by December 29, 2016.  (Ex. M (AGO *ex parte* request to
3   further delay CalECPA notification).)  The AGO continued to press AWS for this data into
4   early 2017, notwithstanding the Court's December 9, 2016 Final Ruling holding that the State
5   was foreclosed from prosecuting on its pimping theory, upon which this warrant was based.
6   (Dec. 9, 2016 Final Ruling at 15.)  It appears the AGO did not inform AWS (or the judge from
7   whom it received an order further delaying notification (*see* Ex. M)) of Judge Bowman's order
8   dismissing the case.

9   **14.    Search Warrants to Four Banks (October 8, 2016).**  Two days after the AGO
10  arrested Mr. Ferrer (and the day that Messrs. Larkin and Lacey voluntarily traveled to
11  Sacramento and were taken into custody), the AGO obtained a search warrant directed to four
12  banks – BMO Harris Bank, BB&T Bank, Arizona Bank & Trust, and U.S. Bank – for all
13  account records and transaction data relating to four companies dating back to 2009  – Ad
14  Data Solutions, LLC (a former name of Backpage.com, LLC), Website Technologies, LLC
15  (an affiliate company of Backpage that handles administrative functions such as payroll and
16  leases, but has no role in operation of the website), Camarillo Holdings, LLC (a former parent
17  holding company), and Cereus Properties, LLC (a separate company affiliated with
18  Camarillo).  (Ex. 14; Sacramento County No. 16SW02121; AGS 00000121-211.)

19  The supporting affidavit for the warrant (submitted by Investigative Auditor Darrell
20  Early) largely repeated statements from prior warrant applications that law enforcement
21  officers had contacted individuals and learned they misused Backpage.com for prostitution,
22  the site earned revenues from user-posted ads, and therefore (according to Mr. Early)
23  "BACKPAGE is accepting and profiting from commercial sex in violation of Penal Code
24  section 266h" and Messrs. "LACEY and LARKIN, and CEO FERRER, are conspiring to
25  commit pimping in violation of Penal Code section 182" because they are the website's
26  "beneficiary owners."  (AGS 00000157.)

27
28

20

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    The application and the warrant further reflected that the AGO's demands

2  encompassed "digital text data" and "digital image data" for all "transaction records" between

3  the account holders and the banks, and again acknowledged the application of CalECPA.  (*See*

4  AGS 00000125, 135, 141.)  The supporting declaration did not, however, provide any showing

5  of an "adverse result" that would occur if notice were provided and did not mention that the

6  AGO had arrested Defendants and demanded bail totaling $1 million.

7    The materials provided by the AGO concerning this warrant reflect that the banks

8  needed considerable time to respond, given the AGO's voluminous requests (*see, e.g.*, AGS

9  00000211 (U.S. Bank response), and the banks' efforts to comply continued to March 2017

10  (*e.g.*, AGS 00000210).  During this time, the AGO apparently did not inform the banks or the

11  court that issued the warrant that Judge Bowman had dismissed the pimping-related charges

12  upon which the warrant was based.

13    **15.    Subpoena to Vantiv, LLC (December 23, 2016).**  After Judge Bowman's

14  December 9, 2016 holding that the State was foreclosed from prosecuting on its pimping

15  theory, the AGO shifted its approach to demand information by way of subpoenas rather than

16  search warrants.  The AGO also expanded the scope and volumes of data it demanded.

17    The AGO began with a set of four subpoenas issued December 23, 2016 – the same

18  day the AGO served its Refiled Complaint based on the same pimping theory the Court had

19  rejected.  One of the four subpoenas was to "Vantiv, LLC fka Litle & Co." (Ex. 15; AGS

20  00001066-1071.)  Litle acted as Backpage's primary processor for users' credit card

21  transactions through the website until 2014.  All such transactions were communicated and

22  processed electronically, and Vantiv (formerly Litle) stored the communications

23  electronically.  (*See, e.g.*, AGS 00001080.)

24    The AGO first subpoenaed Vantiv on November 11, 2016 (AGS 00001078), and

25  demanded compliance by November 30, 2016 (AGS 00001080).  Vantiv responded that the

26  AGO's demands requested "a total of 90 million transactions," and decrypting and generating

27  such a huge volume of data could not be done in two weeks' time.  (AGS 00001080.)  While

28

DAVIS WRIGHT TREMAINE LLP

21

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    that first subpoena was outstanding, Judge Bowman entered his Final Ruling on December 9,

2    2016.  The AGO did not inform Vantiv that the Court had rejected the State's charges and

3    theory as a matter of law.  Rather, in a December 23, 2016 email Ms. Mailman wrote Vantiv

4    that the AGO was issuing a new subpoena as a clerical matter because the case number had

5    changed:

> On November 11, 2016, Vantiv, [sic] was served with a subpoena for financial
> records relating to Sacramento County Superior Court criminal case number
> 16FE024l013, in the matter of People v. Ferrer, Larkin and Lacey.  The case
> was dismissed by the court and has now been refiled [sic] by the Attorney
> General's Office under case number 16FE024013.  Unfortunately, because the
> matter now has a new case number, we have to reissue the subpoena.  The
> records you have already sent to the court, [sic] will remain in the court's
> closed file.  Shortly, we will be sending you another subpoena [for] the same
> records.  I apologize for the inconvenience....

12   (AGS 00001078.)  Vantiv apparently responded to the subpoena in full by January 6, 2017.

13   (*Id.*)

14        **16.    Subpoena to American Express (December 23, 2016).**  The AGO also issued

15   a subpoena to American Express, calling for all records relating to users' transactions (and

16   related account records) through Backpage and for other entities.  (Ex. 16; AGS 00000704-

17   725.)  Like the AGO's other subpoenas, this one contained no date limitation – it encompassed

18   all Backpage customers' transactions at any time.  (*See* AGS 00000705.)  Like Vantiv, the

19   AGO apparently issued an earlier subpoena (*see* AGS 00000710), and apparently never

20   informed American Express of the demurrer ruling.  Here too, American Express explained

21   the records demanded were "voluminous" (AGS 000000709), and the company did not fully

22   comply with the subpoena until February 10, 2017.  (AGS 00000716.)

23        **17.    Subpoena to Stripe, Inc. (December 23, 2016).**  The AGO subpoenaed Stripe,

24   Inc. on December 23, 2016, demanding "[a]ny and all transaction records, account access

25   records, account documents, and correspondence related to … Backpage.com, LLC …" (Ex.

26   17; AGS 00001058-1065.)  Stripe is a company that provides online payment processing

27   services to Internet businesses.  Stripe apparently responded to the AGO's subpoena on

28   January 11, 2017.  (AGS 00001064.)

DAVIS WRIGHT TREMAINE LLP

22

1      **18.    Subpoena to JetPay Inc. (December 23, 2016).**  On December 23, 2016, the

2    AGO also issued a subpoena to JetPay, Inc., another company that provided payment

3    processing services for Backpage customers' credit card transactions.  (Ex. 18;

4    AGS 00000998-1033.)  Here, too, it appears the AGO issued an earlier subpoena, but in this

5    instance JetPay had learned that the Court rejected the State's charges and responded:  "Based

6    on the Judge[']s last response regarding the demurrer he granted, I will not be producing the

7    requested data unless the case swings the other direction."  (AGS 00001004.)  The AGO

8    insisted that JetPay respond to the reissued subpoena notwithstanding the prior dismissal and

9    JetPay's expressed concerns that it would take over "125 hours of research to comply."

10   (AGS 00001005.)  As noted below, JetPay ultimately did comply, returning materials in

11   response to the subpoena on April 28, 2017.  (Ex. N (Apr. 28, 2017 Trans. at 26:7-26:27).)

12       **19.    Subpoena to Ad Data Solutions, LLC (February 8, 2017)**

13       **20.    Subpoena to Website Technologies, LLC (February 8, 2017)**

14        At a court hearing on February 8, 2017, the AGO served subpoenas to Backpage's

15   general counsel for Backpage itself (Ad Data Solutions, LLC is a former name of

16   Backpage.com, LLC) and an affiliate administrative company, Website Technologies, LLC.

17   (Exs. 19 & 20; AGS 00000686-691, AGS 00001085-1090.)  The Court is familiar with these

18   subpoenas from Backpage's motion to quash, which the Court granted on the grounds that the

19   subpoenas violated CalECPA, as well as Penal Code § 1326(b) and Evidence Code § 1560(b).

20   (*See* Ex. O (Jan. 24, 2017 Trans. at 6:5-7:28).)

21       **21.    Subpoena to JetPay Merchant Services, LLC (March 7, 2017)**

22       **22.    Subpoena to JetPay Corporation (March 7, 2017)**

23       **23.    Subpoena to JetPay ISO Services, LLC (March 7, 2017)**

24       **24.    Subpoena to JetPay Services, TX, LLC (March 7, 2017)**

25        On March 7, 2017, the AGO issued four subpoenas to other JetPay entities, identified

26   as Jet Pay Merchant Services, LLC (Ex. 21; AGS 00000955-969); JetPay Corporation (Ex. 22;

27   AGS 00000970-997); JetPay ISO Services, LLC (Ex. 23; AGS 000001034-1049); and JetPay

28

DAVIS WRIGHT TREMAINE LLP

23
MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   Services, TX, LLC (Ex. 24; AGS 00001050-1057).  The subpoenas demanded all data for all

2   customer transactions through Backpage.com, as well as all account records, documents and

3   correspondence (unrestricted as to time period), which likely included many millions of

4   records.  (AGS 00000957-962.)  JetPay Services TX, LLC produced the data on April 28,

5   2017 on behalf of all four of these companies.  (*See* AGS 000001053-1054.)

6        **25.     Subpoena to ADP (September 6, 2017).**  The Court's August 23, 2017 ruling

7   granting Defendants' second demurrer conclusively "rejected [the State's] prosecution based

8   on the theory that Defendants engaged in pimping" as well as the theory that charges for ad

9   postings could "serve as the basis for money laundering charges."  (Aug. 23, 2017 Order at

10   18.)  That left only the charges for "financial crimes" based on the AGO's bank fraud-money

11   laundering theory.  But the AGO continued to issue broad subpoenas with no connection to the

12   remaining charges.

13        On September 6, 2017, the AGO issued a subpoena to ADP, a company that handled

14   payroll processing and administration for Website Technologies, as it does for thousands of

15   other companies.  (Ex. 25; AGS 00000692-703.)  The subpoena did not seek any information

16   about Backpage's banking relationships, credit card billing descriptors, or anything else

17   related to the remaining charges.  Instead, it demanded all payroll records, pay statements,

18   W-2's and other tax filings, and all electronic data (including employees' transactions and

19   communications) for all employees of Backpage and five other entities covering an eight-year

20   period, from January 1, 2009 to the present.  (AGS 00000694-695.)

21        **26.     Subpoena to CoStar Group Inc. (September 18, 2017).**  On September 18,

22   2017, the AGO issued a subpoena even further afield from anything relevant to the remaining

23   charges.  The AGO subpoenaed CoStar Group Inc. for  all documents in the company's

24   possession obtained in connection with a lawsuit by CoStar against Xceligent, Inc.  (Ex. 26;

25   AGS 00000726-739 at AGS 00000728.)  CoStar is a commercial real estate data company that

26   accused Xceligent, a competitor, of appropriating and misusing CoStar's data such as

27   copyrighted photos.  In the course of the lawsuit, CoStar obtained an order from a Philippines

28

DAVIS WRIGHT TREMAINE LLP

24

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  court to seize the computers and data of Avion, a third-party contractor for Xceligent.

2  Reviewing the seized data, CoStar found information about marketing services provided by

3  Avion for Backpage-affiliated websites that operated exclusively overseas.  CoStar released

4  and promoted the materials to the press.  The Avion data CoStar obtained had nothing to do

5  with Backpage's relationships with payment processors or billing descriptors or even

6  operations in the United States, and thus had no relevance to any remaining claims in this case.

7         **27.    Search Warrant from the AGO to the AGO to Search Materials Previously**

8  **Seized (October 3, 2017).**  On October 3, 2017, the AGO sought and obtained a warrant to

9  search materials that it previously obtained by warrants for its rejected pimping, conspiracy

10  and money laundering charges.  (Ex. 27; Sacramento County No. 17SW02048;

11  AGS 00000238-327.)  More specifically, the AGO (through Special Agent Supervisor Reye

12  Diaz) sought a warrant to permit it to search materials it had already seized pursuant to

13  warrants to:

14  - Google (specifically Exs. 2, 4 and 7), encompassing all emails of Backpage

15    personnel and Defendants' personal emails;

16  - Union Bank, BMO Harris Bank, U.S. Bank, BB&T Bank, and Arizona Bank &

17    Trust (Exs. 3, 14), including all banking records and data of Backpage and affiliated

18    entities; and

19  - Amazon Web Services (Ex. 13), which covered all transactions, ads, payment

20    processing and systems for running the Backpage website through AWS cloud

21    storage.

22  (AGS 00000243.)  Agent Reyes explained that

23         Previous search warrants authorized DOJ to obtain and search the records for
          evidence of Pimping (California Penal Code 266 (h) and Conspiracy
24         (California Penal Code 18).  This warrant seeks to search the same evidence
          obtained from the following warrants [for] evidence of money laundering
25         through fraud (California Penal Code 186.10).

26  (*Id.*) Reyes' affidavit went on to state that, "[w]hile reviewing evidence obtained through the

27  aforementioned search warrants," the AGO "observed evidence that the defendants were also

28

25

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    defrauding financial institutions" allegedly by using "misleading billing descriptors." (AGS

2    00000244, 249.) Indeed, the supporting affidavit mentioned repeatedly that the AGO and its

3    investigators came up with their alleged evidence of bank fraud while reviewing the materials

4    previously seized for the objective of finding evidence of "pimping." (See, e.g., AGS

5    00000248 (attempts to justify the DOJ self-review warrant based on "emails and other records

6    obtained from [prior] search warrants"); AGS 00000249 (same; information "observed"

7    "[w]hile  reviewing the bank records, emails and transaction records" from prior warrants);

8    AGS 00000250 (same; information based on "other emails obtained via search warrant").)

9           Agent Reyes' affidavit did not address the validity of the prior search warrants or their

10   omission of AG Harris's admission that the State had no authority to investigate or prosecute

11   Backpage.  The affidavit did mention Judge Brown's ruling "that the Communications

12   Decency Act (CDA) provided immunity to the defendants with respect to the conspiracy to

13   commit pimping and pimping charges" (AGS 00000244-245), but did not mention that this

14   ruling and Judge Bowman's prior rulings held that, from the outset, the AGO was "foreclosed

15   from prosecuting" based on Backpage's publishing activities.

16          The affidavit also reflects that the AGO did not segregate and seal information from the

17   prior warrants that was unrelated to their "pimping" objective. (See Penal Code § 1546.1(d).)

18   The affidavit offers no explanation why information about billing descriptors, payment

19   processing arrangements, or actions of credit card issuers could have anything to do with the

20   State's prior "pimping" charges, or even how an agent could "observe" information about

21   Backpage's interactions with its credit card processors when supposedly reviewing

22   information for evidence of pimping.  Indeed, four months before this warrant application, the

23   AGO represented that its bank fraud/money laundering charges in the First Amended

24   Complaint had nothing to do with any claims that Defendants had engaged in pimping. (See

25   People's Opp. to Continued Demurrer at 8, 9, 10, 13, 14, 15.)

26                                           * * * * *

27

28

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  Despite its multiple assurances, the AGO still has not produced all of the warrants,

2  subpoenas, supporting applications and affidavits used in the State's now five-year pursuit of

3  Backpage and Defendants.  The AGO has refused to provide information or materials

4  concerning warrants it obtained through other law enforcement authorities.  The AGO has

5  refused to respond concerning subpoenas the AGO issued previously to which recipients did

6  not respond or refused to respond.  And, notwithstanding the AGO's agreement that the Court

7  should have an opportunity to address and rule on the warrants, subpoenas, and the AGO's

8  tactics, it has proceeded to issue *more* subpoenas seeking millions more records.  (*See, e.g.*,

9  Ex. R (Nov. 1, 2017 Trans. at 9:12-9:19), indicating the AGO had issued new subpoenas and

10  understood the Court had received returns of data from eMerchantPay and Wells Fargo).)

11  Regardless, there is ample evidence in the record to demonstrate the AGO's

12  misconduct and repeated violations of California law and the Constitution to require that the

13  State's charges against Defendants be dismissed and its warrants and subpoenas declared void.

### III.   ARGUMENT

#### A.   The AGO Unconstitutionally Pursued an Investigation and Prosecution of Defendants While Admitting It Had No Authority or Jurisdiction.

Among the most fundamental principles of due process is that the State cannot prosecute for conduct that cannot constitute a crime under state law.  As the Court of Appeal said recently, this is "an overarching, dispositive point," *i.e.*, the State cannot, "consistently with the Federal Due Process Clause, convict [a person] for conduct that its criminal statute, as properly interpreted, does not prohibit."  (*In re Miller* (2017) 14 Cal. App. 5th 960, 977 (quoting *Fiore v. White* (2001) 531 U.S. 225, 228).)  Put somewhat differently, if conduct is not punishable as a crime under California law, the State and its courts have no subject matter jurisdiction.  (*People v. Vasilyan* (2009) 174 Cal. App. 4th 443, 450 ("if there is no crime, the court lacks subject matter jurisdiction").)  Again, this is based on "fundamental principles of justice."  (*Id.* ("The notion that a person can be punished under the criminal law for committing an act that is not a crime is entirely outside our system of jurisprudence.").)

DAVIS WRIGHT TREMAINE LLP

27

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    When the State cannot charge or convict a party for conduct that is not punishable

2  under state law, it follows that it is improper for the AGO to pursue an investigation or

3  prosecution on such grounds.  In this case, it is undisputed the AGO set out to investigate and

4  prosecute Defendants (and did so for five years) based on charges that were expressly

5  precluded and could not be prosecuted under State law.  The AGO obtained 15 warrants and

6  issued at least eleven subpoenas based on its "pimping" theory.  Based on long-established

7  law, the Court twice held that the AGO was foreclosed from prosecuting Backpage for ads on

8  the website, as Backpage's actions in publishing (and receiving payments) for such ads are

9  activities protected by Section 230 and the First Amendment principles it embodies.  (Dec. 9,

10  2016 Final Ruling at 1, 4; Aug. 23, 2017 Order at 11.)

11    However, *none* of the warrant applications or supporting affidavits mentioned AG

12  Harris's public acknowledgement that the State had no authority or jurisdiction to investigate

13  or prosecute Backpage for publishing activities.  The supporting affidavits quoted and

14  discussed Penal Code § 266h (pimping) and § 182 (conspiracy) often and at length (*see, e.g.*,

15  Ex. 4 at AGS 00000396-97; Ex. 13 at AGS 00000223; Ex. 14 at AGS 00000144), but alluded

16  to Section 230 in only one paragraph of a declaration from Agent Fichtner, although the same

17  paragraph appeared in at least five of the AGO's warrant applications.  (*See* Ex. 2 at AGS

18  00000338; Ex. 3 at AGS 00000362; Ex. 6 at AGS 00000014; Ex. 8 at AGS 00000043; Ex. 10

19  at AGS 0000071.)

20    The Fichtner paragraph is not only a misrepresentation of the law, it is a direct

21  contradiction of AG Harris's opinion and admission.  Agent Fichtner mentioned that the State

22  of Washington passed a law targeting Backpage, but his description focused on the

23  accusations against Backpage (which were rejected) rather than the court's ruling.  This is an

24  allusion to *Backpage.com v. McKenna* (although the Fichtner paragraph does not name or cite

25  the case), in which the Court enjoined a Washington statute under both the First Amendment

26  and Section 230, holding that state authorities may not presume that adult ads on the website

27  are unlawful, Section 230 provides broad immunity to websites for third-party content posted

28

DAVIS WRIGHT TREMAINE LLP

28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    by users, and all state criminal laws inconsistent with Section 230 are preempted.  (*See*

2    *McKenna*, 881 F. Supp. 2d at 1273, 1274-75, 1280-81.)

3         Agent Fichtner mentioned none of this, but instead wrote that "the Washington

4    legislation was deemed unconstitutional because federal courts cited conflicts with 47 U.S.C.

5    230 … and Backpage.com did not accede to the Attorney General's demands."  (Ex. 3 at

6    AGS 00000338.)  This statement is both wrong (the court found the Washington law

7    unconstitutional under the First Amendment *and* held the law conflicted with and was

8    preempted by Section 230) and nonsensical (it is unclear what is meant by the "Attorney

9    General's demands" to which Backpage "did not accede").

10        Agent Fichtner's description was also a misstatement because the AG's theory of

11   prosecution had been rejected – and Section 230 immunity and preemption conclusively

12   upheld – not just in *McKenna*, but in *five other cases* involving Backpage.  (*See M.A.*, 809 F.

13   Supp. 2d 1041; *Cooper*, 939 F. Supp. 2d 805; *Hoffman*, 2013 WL 4502097; *Doe*, 104 F. Supp.

14   3d 149; *Dart*, 807 F.3d 229.)  Even if Fichtner could be excused for not being fully versed in

15   the 300-plus cases that had upheld website immunity under Section 230 (*see Hill v. StubHub,*

16   *Inc.* (N.C. Ct. App. 2012) 727 S.E.2d 550, 558), omitting all the other cases that involved the

17   very same party, Backpage, was a deceptive misstatement of the facts.  And Fichtner was not

18   preparing and submitting the warrant applications on his own – each one was reviewed and

19   approved by senior attorneys in the AGO, most often Ms. Krell, who served as the lead

20   attorney for the AGO's prosecution.  (*See, e.g.*, Ex. 2 at AGS 00000328 (Krell); Ex. 3 at AGS

21   00000358 (Krell); Ex. 6 at AGS 00000001 (approved by Senior Assistant AG Robert

22   Morgester); Ex. 8 at AGS 00000031 (Krell); Ex. 10 at AGS 00000059 (Deputy AG Jessica

23   Owen).)

24        Even more deceptive was Agent Fichtner's conclusion:

25        Although Section 230 of CDA has been interpreted to protect providers from
          liability for third party content, I believe Backpage.com is violating the
26        California Penal Code by accepting payment from individuals promoting
          and/or offering lewd acts or sexual favors for money.  To my knowledge, no
27

28

DAVIS WRIGHT TREMAINE LLP

---

29

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

> California court has held that the [CDA] provides protection under Penal Code
> sections 647(b) - Prostitution, or 266(h) - Pimping.

(AGS 00000338.)  With this statement, the AGO contradicted the AG's opinion.  The AGO

offered Agent Fichtner's view that the state could prosecute Backpage, while AG Harris had

opined that Section 230 deprived the State of all authority and "jurisdiction to investigate and

prosecute" Backpage.  (Ex. B (July 23, 2013 letter at 1).)  Fichtner added that no court had

specifically held that Penal Code §§ 647(b) and 266h were preempted, but AG Harris stated

that Section 230 *preempts all state criminal laws* for Backpage's publishing of third-party ads.

Certainly, the Attorney General's publicly stated interpretation of the law trumps the AGO's

carefully couched statement of a field agent offering his personal belief.  And, just as

certainly, it would be material for any judicial officer considering a search warrant application

to know that the AG had admitted the State had no authority to prosecute or investigate on the

theory advanced in requesting the warrant.

When state authorities obtain search warrants to investigate for a prosecution they have

no authority to bring, courts have invalidated the warrants and suppressed the seized evidence.

For example, in *United States v. Baker* (10th Cir. 1990) 894 F.2d 1144, state law enforcement

officers obtained a warrant to search the defendant's property on a Native American

reservation.  They found evidence of methamphetamine production, which they turned over to

federal authorities that prosecuted and obtained a conviction of the defendant.  The Tenth

Circuit reversed the conviction and held that all evidence from the search had to be suppressed

because it was undisputed that the defendant's property was located within Indian country and

that Colorado authorities had no jurisdiction to prosecute.  (*Id.* at 1146.)  The court went on to

conclude that because the law was well established, any reasonably trained law enforcement

officer should "have been aware that a proposed search would be illegal," and so "a judicial

official's concurrence in the improper activity" could not overcome the exclusionary rule.  (*Id.*

at 1149; *accord United States v. Peltier* (E.D. Mich. 2004) 344 F. Supp. 2d 539, 547-48 (state

DAVIS WRIGHT TREMAINE LLP

30

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   court-issued warrant for search on tribal lands was invalid where authorities had no

2   jurisdiction over tribal members).)[9]

3          In *United States v. Namer* (5th Cir. 1982) 680 F.2d 1088, Louisiana state attorneys

4   investigating a loan broker obtained a warrant based on an application stating that a deputy

5   commissioner of the state's Securities Commission had advised that loan commitments

6   obtained by the broker would be classified as "securities" under the state's Blue Sky law, and

7   on this basis, the application asserted that the state had probable cause to prosecute the broker

8   for selling unregistered securities. (*Id.* at 1091.) The state authorities executed the warrant

9   and conducted "a sweeping search of [the broker's] offices for a wide variety of business

10  papers." (*Id.*) The state did not bring charges, but later turned over all the information seized

11  to federal authorities, who obtained an indictment charging the broker with wire fraud,

12  conspiracy and violation of the Travel Act. (*Id.*) In the district court, the defendant was

13  convicted after unsuccessfully moving to suppress evidence seized pursuant to the warrant

14  (*Id.*) The Fifth Circuit reversed and held that the warrant was invalid and evidence from it

15  should have been suppressed. (*Id.* at 1092.) The court's opinion parallels and underscores the

16  duplicity of the AGO's approach here.

17         The Fifth Circuit wrote: "At the outset, we note that the most striking aspects of the

18  warrant are that it was premised on alleged criminal violations under a novel legal theory and

19  that it authorized a search and seizure of virtually all of Namer's papers." (*Id.*) The court

20  observed that the state Securities Commission had no procedure for classifying offerings as

21  securities, and the deputy commissioner had only offered his qualified view that loan

---

[9] *Bishop Paiute Tribe v. County of Inyo* (9th Cir. 2002) 291 F.3d 549, is also instructive. In that case, county officials obtained and executed a state-court search warrant and seized personnel records of 78 employees at the tribe's casino in connection with a welfare fraud investigation of three employees. (*Id.* at 554-55.) The district court dismissed the tribe's suit challenging the search, but the Ninth Circuit reversed, holding "as a matter of law that a reasonable county officer would have known, at the time the warrant was executed against the Tribe, that seizing tribal property held on tribal land violated the Fourth Amendment because the property and the land were outside the officer's jurisdiction." (*Id.* at 568.) The U.S. Supreme Court vacated the judgment on the basis that the tribe did not qualify as a "person" entitled to seek redress under 42 U.S.C. § 1983, but remanded for further consideration of whether the tribe could advance its claims under federal common law. (*Inyo County v. Paiute-Shoshone Indians* (2003) 538 U.S. 701, 712.)

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    commitments obtained by the broker for his clients could be considered securities. (*Id.* at

2    1092-93.) But the state's attorneys "camouflaged the novelty of [their] legal theory" (*id.* at

3    1092), and their representation that the broker's offerings "were 'classified as securities' [was]

4    a misstatement and a material one at that." (*Id.* at 1093.) The court continued: "The

5    affidavit's statement is no less a misrepresentation because it manipulates the facts subtly,"

6    since it "was the only item in the affidavit tending to establish that Namer acted criminally."

7    (*Id.* at 1094.) The court also noted that omissions from the warrant application must be treated

8    "essentially the same as misstatements," because when "the facts omitted from the affidavit

9    are clearly critical to a finding of probable cause, ... recklessness may be inferred from proof

10   of the omission itself." (*Id.*) And, again in terms apt to the AGO's conduct in this case, the

11   court opined that the state's attorneys' involvement drafting the declaration and the not-

12   hurried pace of the investigation reflected that the attorneys "proceeded in reckless disregard

13   of the truth" with the "hope [of] conferring an aura of legitimacy" for their "novel" if not

14   "frivolous" legal theory. (*Id.* at 1092, 1094.)

15        More recently, in *United States v. Perkins* (9th Cir. 2017) 850 F.3d 1109, the Ninth

16   Circuit reversed a defendant's conviction and held that evidence should have been suppressed

17   based on misstatements in a warrant application analogous to the AGO's misstatements here.

18   In that case, Canadian authorities stopped Perkins when he landed in Toronto from an

19   international flight as he was returning to his home in Washington State, searched his laptop

20   computer, and arrested him based on two images a Canadian border agent found and initially

21   believed were child pornography. (*Id.* at 1113.) The Canadian authorities later determined the

22   images were not pornographic and dropped the charges. (*Id.*) However, a U.S. Homeland

23   Security agent obtained a warrant to search computers at Perkins' home, recounting in his

24   supporting affidavit the Canadian authorities' initial arrest but not mentioning that they had

25   dropped all charges. (*Id.* at 1113-14.) The U.S. officials found child pornography on Perkins'

26   home computers, and after losing a motion to suppress, Perkins conditionally pleaded guilty

27   while reserving his rights to appeal the ruling denying his suppression motion. (*Id.* at 1114.)

28

DAVIS WRIGHT TREMAINE LLP

32

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    The Ninth Circuit reversed, first holding that a *Franks* hearing was required (*United*

2   *States v. Perkins* (9th Cir. 2014) 583 F. App'x 796, 797), and then ruling that the evidence

3   made clear the federal agent deliberately or recklessly misstated facts to secure the warrant by

4   omitting mention of the Canadian authorities' determination that the images on Perkins' laptop

5   were not pornographic and could not support prosecution, and by not providing the images

6   themselves.  (850 F.3d at 1116-17.)  The court concluded that the agent's actions revealed a

7   "clear, intentional pattern" to "selectively include[] information bolstering probable cause

8   while omitting information that did not." (*Id.* at 1117.)  The agent's "incomplete and

9   misleading recitation of the facts" "presented a skewed version of events and overstated the

10  incriminating nature of the images," thereby "effectively usurp[ing] the magistrate's duty to

11  conduct an independent evaluation of probable cause." (*Id.* at 1118; *see also id.* at 1117-18

12  ("We have recognized that an affiant can mislead a magistrate '[b]y reporting less than the

13  total story, [thereby] … manipulating the inferences a magistrate will draw.'") (internal

14  alterations supplied by the court) (quoting *United States v. Stanert* (9th Cir. 1985) 762 F.2d

15  775, 781).)

16    The AGO's warrant applications in this case are similarly based on misstatements and

17  misleading omissions.  The AGO's failure to mention AG Harris's admission of the State's

18  lack of authority or the half-dozen cases finding Backpage immune under Section 230 skewed

19  the facts to suggest that the law was unsettled when it clearly was not.  The applications

20  manipulated the facts to suggest that conduct immunized under federal law could be deemed

21  criminal under preempted state law.  The AGO's misrepresentations were clearly by design, as

22  the AGO repeated the same paragraph verbatim in many warrant applications.  For the State to

23  pursue a prosecution it admittedly has no authority to bring is a fundamental violation of due

24  process.  For the AGO to do so by means of misrepresentations to obtain warrants to pursue its

25  unauthorized prosecution is outrageous.

26

27

28

DAVIS WRIGHT TREMAINE LLP

33

DAVIS WRIGHT TREMAINE LLP

**B.     The AGO's Warrant Applications Lacked Probable Cause Because They Advanced Theories That Are Precluded by Section 230.**

In addition to the misrepresentations and omissions in the warrant applications, the grounds they alleged as supposed probable cause violated the First Amendment, Section 230, and the Fourth Amendment in numerous ways.  The AGO's applications proceeded from the theory that a website publisher could be liable for acts of third parties who used the website – the very same theory this Court twice rejected in its demurrer rulings.  Just as the Court rejected the State's pimping theory as a matter of law, the AGO's warrant applications premised on the same theory could not show probable cause as a matter of law.[10]

The AGO's warrant applications consistently level accusations against the Backpage website as a whole, yet the law is clear that Section 230 immunity applies to all activities of websites related to their "status or conduct as a publisher."  (Aug. 23, 2017 Order at 12 (quoting *Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096, 1101-02); *see also* Dec. 9, 2016 Final Ruling at 5; *Barrett v. Rosenthal* (2006) 40 Cal. 4th 33, 53).  The AGO cannot overcome immunity by alleging that Backpage encouraged unlawful conduct (*see* Dec. 9, 2016 Final Ruling at 9; *Jones v. Dirty World Entm't Recordings LLC* (6th Cir. 2014) 755 F.3d 398, 413-14; *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC* (9th Cir. 2008) 521 F.3d 1157, 1174), and Section 230 "bar[s] claims unless [the website] created or developed the particular information at issue" (*Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1125; *see also  Hill v. StubHub*, 727 S.E.2d at 561-62 (an "entire website" attack is "fatally flawed" under Section 230); *Universal Commc'n Sys., Inc. v. Lycos, Inc.* (1st Cir. 2007) 478 F.3d 413, 422 (Section 230 precludes challenges to the "construct and operation" of a website); *accord Doe No. 1 v. Backpage.com*, 817 F.3d at 20.)

Yet, in all of the warrant applications, not once did the AGO provide *any* third-party ad on Backpage.com ad that was unlawful on its face.  The AGO also did not offer any evidence

---

[10] Indeed, the supporting affidavits the AGO offered in support of its search warrant applications are largely similar to the affidavit of Agent Fichtner that the AGO incorporated in the original complaint, which Judge Bowman rejected and dismissed as a matter of law.

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    that Backpage created or developed any ad on the website (it does not).  The AGO instead

2    offers agents' opinions that "the obvious nature of the 'Escort' ads on BACKPAGE makes it

3    plain to any individual … that [the]  ads are for prostitution."  (*See, e.g.*, Ex. 14 at AGS

4    00000146, Ex. 8 at AGS 00000225; *see also* Ex. 8 at AGS 00000052, Ex. 7 at AGS 00000551,

5    Ex. 9 at AGS 00000641 (calling Backpage.com "a virtual brothel"); Ex. 10 at AGS 00000071,

6    Ex. 11 at AGS 00000095, Ex. 11 at AGS 00000226 (characterizing ads as "openly

7    advertis[ing] sexual, lewd acts for money").)  This not only violates First Amendment and

8    Section 230 principles,[11] it violates the Fourth Amendment.  (*See Perkins*, 850 F.3d at 1118-19

9    (invalidating warrant where agent failed to provide images for the magistrate's review but

10    instead offered only his "incomplete and misleading description of the image[s]").)

11       The AGO's warrant applications also incorrectly suggested Backpage and Defendants

12    could be criminally complicit for allegedly knowing that individuals had used the website to

13    offer or engage in commercial sex.  (*See, e.g.*, Ex. 3 at AGS 00000373 (asserting Backpage's

14    cooperation with law enforcement to support investigations of prostitution and sex trafficking

15    "clearly demonstrates that Backpage.com has knowledge that solicitation for prostitution is

16    taking place on their website"); Ex. 4 at AGS 00000412 (claiming that because Backpage.com

17    charges for ads, "[its] principals are knowingly deriving support from commercial sex").)[12]

---

18    [11] The First Amendment precludes the government from presuming that speech is unlawful

19    (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 255), and every court that has addressed similar government officials' accusations has rejected them and held that escort ads on

20    Backpage.com are protected speech under the First Amendment and Section 230. (*See*

21    *Backpage.com v. Dart*, 807 F.3d at 234 (Backpage cannot be held liable as "an intermediary between the advertisers of adult services and visitors to [the] website"); *McKenna*, 881 F. Supp. 2d

22    at 1280, 1282; *Cooper*, 939 F. Supp. 2d at 831; *Hoffman*, 2013 WL 4502097, at *9-11; *see also*

23    *Dart v. Craigslist, Inc.* 665 F. Supp. 2d at 967, 969 (websites "are not culpable for 'aiding and abetting' their customers who misuse their services to commit unlawful acts"); *accord M.A.*, 809 F. Supp. 2d at 1053-54.)

24    [12] The AGO's agents admit they determined individual ad posters were engaged in prostitution only

25    after contacting the individuals (*see, e.g.*, Ex. 8 at AGS 00000046-51), or based on instances when law enforcement had made arrests through other means and then the AGO reviewed online archives

26    afterward to determine if the individuals ever posted ads on Backpage.com (*see, e.g.*, Ex. 6 at

27    AGS 000001015-27, Ex. 10 at AGS 00000074-76), or the AGO or other law enforcement officers had posted fake ads on Backpage.com, and based on users' responses, concluded that such ads

28    could be used for prostitution (Ex. 3 at AGS 00000364-366).  In sum, in every instance the AGO

---

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

*DAVIS WRIGHT TREMAINE LLP*

DAVIS WRIGHT TREMAINE LLP

1   But, for thirty years, the law of Section 230 has been clear that allegations that a website knew

2   or allegedly should have known of illegal postings cannot overcome Section 230 immunity.

3   (*See* Aug. 23, 2017 Order at 14 ("[E]ven if Backpage knew of the unlawfulness of the content

4   of the ads, knowledge is insufficient to render Defendants liable."); Dec. 9, 2016 Final Ruling

5   at 9; *Zeran v. Am. Online, Inc.* (4th Cir. 1997) 129 F.3d 327, 332-33; *Lycos*, 478 F.3d at 420

6   ("It is, by now, well established that notice of the unlawful nature of the information provided

7   is not enough to make it the service provider's own speech."); *Barrett*, 40 Cal. 4th at 45

8   (subjecting providers to notice liability would defeat the purposes of Section 230); *M.A.*, 809

9   F. Supp. 2d at 1044, 1050-54 (Section 230 immunity applied despite allegations Backpage

10  "had knowledge" of postings that "were ad[s] for prostitution" and "illegal sexual contact with

11  minors").)

12      The AGO's warrant applications also improperly asserted that users' payments to post

13  ads on Backpage.com could be taken to mean that Defendants were "knowingly accepting

14  monies directly related to prostitution." (Ex. 7 at AGS 00000571; *see* Ex. 8 at AGS 00000052

15  ("The fact that the bulk of Backpage.com's website is dedicated to these sorts of ads [*i.e.*,

16  escort ads, although in fact they were only a fraction of ads on the site], and that

17  Backpage.com charges for these ads, tends to show that Backpage.com's principals are

18  knowingly deriving support from commercial sex."); *see also* Ex. 13 at AGS 00000235, Ex. 2

19  at AGS 00000338, Ex. 4 at AGS 00000393-396.) Such allegations could not and cannot

20  establish criminal liability because Backpage's charges and receipt of payments from users

21  were (and are) "services rendered for legal purposes" and immunized publisher functions.

22  (Dec. 9, 2016 Final Ruling at 13-14; *accord* Aug. 23, 2017 Order at 13; *Goddard v. Google,*

23  *Inc.* (N.D. Cal. Dec. 17, 2008) 2008 WL 5245490, at *3 (the fact that a website elicits online

24  content for profit is immaterial"); *M.A.*, 809 F. Supp. 2d at 1050.)

25      The AGO's warrant applications were all founded on the flawed premise that Section

26  230 did not preempt California criminal laws for pimping and prostitution and therefore the

27

28  was able to identify alleged unlawful activity of individual users only (not any conduct of
    Backpage), that could be determined based solely on interactions with the users.

36

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

State could prosecute an online publisher for receiving ad payments from users. (*See, e.g.*, Ex.

2; AGS 000000338; Ex. 6, AGS 00000014; Ex. 10, AGS 00000071.)  These assertions are not

only misrepresentations (*see* Section III.A, *supra*), they are a plainly wrong view of the law.

(*See* 47 U.S.C. § 230(e)(3) ("no liability may be imposed under *any* State or local law that is

inconsistent with this section") (emphasis added); *Voicenet Commc'ns, Inc. v. Corbett* (E.D.

Pa. Aug. 30, 2006) 2006 WL 2506318, at *4 ("[T]he plain language of the CDA provides

internet service providers immunity from inconsistent state criminal laws...."); *People v.*

*Gourlay*, 2009 WL 529216, at *3 ("the phrase 'any State or local law' includes civil and

criminal laws"); *accord McKenna*, 881 F. Supp. 2d at 1274-75; *Cohen v. Facebook, Inc.*

(E.D.N.Y. 2017) 252 F. Supp. 3d 140, 157 n.11.)

Probable cause to issue a search warrant must be based on the issuing magistrate's

determination that the totality of the circumstances set forth in the affidavit supports "a fair

probability that contraband or evidence of a crime will be found in a particular place."

(*Illinois v. Gates* (1983) 462 U.S. 213, 238; *see also People v. Kraft* (2000) 23 Cal. 4th 978,

1041 ("[T]he test of probable cause is ... whether the facts contained in the affidavit are such

as would lead a man of ordinary caution or prudence to believe, and conscientiously to

entertain, a strong suspicion of the guilt of the accused.").)  A warrant is defective under the

Fourth Amendment where it fails to "provide the magistrate with a substantial basis for

determining the existence of probable cause." (*Gates*, 462 U.S. at 239.)  "In order to ensure

that ... an abdication of the magistrate's duty does not occur, courts must continue to

conscientiously review the sufficiency of affidavits on which warrants are issued." (*Id.*)

The AGO simply had no reasonable basis to suggest that the conduct described in the

warrant affidavits could support state-law criminal charges of pimping or prostitution against

Backpage or Defendants. (*See Gates*, 462 U.S. at 238.)  Backpage and Defendants were and

are immune from charges based on publishing activities, (Aug. 23, 2017 Order at 12-13.)  The

AGO had no basis to assert that the State's criminal pimping and prostitution laws were not

preempted, when *all state criminal laws were and are preempted* for the "pimping" theory the

DAVIS WRIGHT TREMAINE LLP

37

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

AGO advanced.  Because the conduct alleged in the affidavits did not constitute a crime, the

Court should hold that the warrants lacked probable cause and suppress all evidence obtained

by the warrants.

On this record, the State cannot show that it was objectively reasonable for the AGO

and its agents to rely on warrants unsupported by probable cause. [13]  (*See People v. Camarella*

(1991) 54 Cal. 3d 592, 596 ("The [U.S. Supreme Court] made clear that the government has

the burden of establishing 'objectively reasonable' reliance.").)  "If a well-trained officer

should reasonably have *known* that the affidavit failed to establish probable cause (and hence

that he should not have sought a warrant), exclusion is required … and a court may not rely on

the fact that a warrant was issued in assessing objective reasonableness of the officer's

conduct in seeking the warrant." (*Id.* (emphasis in original).)  "The Fourth Amendment

tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be

*objectively* reasonable." (*Heien v. North Carolina* (2014) 135 S. Ct. 530, 539 (emphasis in

original).)  No "well-trained" officer – and certainly not the attorneys of the AGO, who

reviewed and approved every one of the warrant applications at issue – could reasonably have

believed that the State could pursue charges under preempted state law for conduct the CDA

expressly protected and immunized. (*See Northrup v. City of Toledo Police Dep't* (6th Cir.

2015) 785 F.3d 1128, 1132 ("If it is appropriate to presume that citizens know the parameters

of the criminal laws, it is surely appropriate to expect the same of law enforcement officers –

at least with regard to unambiguous statutes.").)

### C.     The AGO Has Repeatedly Violated CalECPA, and the Court Should Void the Warrants and Subpoenas As a Result.

As addressed in Backpage's recent motion to quash, CalECPA is "the most strict and

far-reaching legislative regulation of government access to digitally stored evidence ever

seen." (*See, e.g.,* Orin S. Kerr, *The Effect of Legislation on Fourth Amendment Protection,*

---

[13] Additionally, CalECPA provides for suppression of "any electronic information obtained or retained in violation of the Fourth Amendment to the United States Constitution (Penal Code § 1546.4(a)), without regard to whether it was objectively reasonable for the government to rely on such warrants.

38

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    115 MICH L. REV. 1117, 1120 (2017); *see generally* Reply on Mot. to Quash at 5-6.)

2    CalECPA was enacted with the goal of creating a "clear, uniform warrant rule for California

3    law enforcement access to electronic information." (Assem. Com. On Business, Professions,

4    and Consumer Protection, Analysis, Rep. on Sen. Bill. No. 178 (2015-2016 Reg. Sess.) Aug.

5    28, 2015, p. 5.)  The Act protects online data in other important ways too, including by

6    requiring the State to provide prompt notice of a warrant to the parties targeted (to allow them

7    opportunity to object), and mandating that the State must segregate and seal all information

8    seized that is unrelated to the objective of a warrant (to prevent the State from overbroad

9    fishing expeditions).  The AGO violated each of these requirements and protections of

10   CalECPA, and did so repeatedly.

11               **1.    The AGO Violated CalECPA § 1546.1(a)(4) by Using Subpoenas for
                         a Criminal Investigation.**

12

13                   As noted, a central purpose of CalECPA is to ensure that "law enforcement must obtain

14   a warrant based on probable cause before obtaining electronic communication information or

15   electronic device information."  (Hon. Gregory M. Caskey, CAL. SEARCH & SEIZURE § 10.20

16   ("The narrow exceptions to the warrant requirement will make warrantless acquisition of

17   electronic information rare in California.")  To that end, CalECPA prohibits the State from

18   using a subpoena to obtain electronic communication information when it is "sought for the

19   purpose of investigating or prosecuting a criminal offense." (Penal Code § 1546.1(b)(4).)  The

20   Court recently interpreted and enforced this prohibition in quashing the AGO's two subpoenas

21   to Backpage (*i.e.*, Ex. 19 (subpoena to Ad Data Solutions, LLC), Ex. 20 (subpoena to Website

22   Technologies, LLC).  (*See* Ex. O (Jan. 24, 2018 Trans. at 7) ("The statute was designed to

23   provide greater protection for Internet service providers and to essentially require the service

24   of a search warrant, not subpoenas.").)

25                   Yet, these were not the only instances when the AGO misused subpoenas for its

26   criminal investigation and thereby evaded the warrant requirement of Penal Code

27   § 1546.1(b)(4).  Indeed, after the Court's December 9, 2016 Final Ruling granting the first

28   demurrer, the AGO resorted almost exclusively to subpoenas (previously the AGO had

DAVIS WRIGHT TREMAINE LLP

39

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  proceeded entirely by seeking warrants) to make broad demands for data from companies that

2  provided services to Backpage and its users.  Among the subpoenas the AGO has produced,

3  nine of them sought electronic communications information in violation of CalECPA.[14]

4  **The Subpoenas to JetPay.**  The subpoenas to various JetPay entities (Exs. 18 and 21-

5  24) provide a good example of the AGO's tack.[15]  JetPay provided payment processing

6  services for credit card transactions of users on the Backpage.com website.  The subpoenas

7  demanded "all transaction records, account access records, account documents, and

8  correspondence related to" Backpage and more than a dozen other entities, including all data

9  about customers' names, addresses, credit card numbers and the details of all transactions.

10  (*See* Ex. 22 at AGS 00000974-979.)  This information was communicated as electronic data

11  between Backpage, JetPay and other financial institutions (such as Backpage's merchant

12  banks) and constituted electronic communications under CalECPA.[16]  JetPay is a service

13  provider within the meaning of the Act because it stores, processes and transmits electronic

14

15  [14] The count excludes the two subpoenas the Court has already quashed, and includes Ex. 15

16  (subpoena to Vantiv); Ex. 16 (American Express); Ex. 17 (Stripe), Exs.18, 21-24 (JetPay entities), and Ex. 25 (ADP).

17

18  [15] The AGO's November 1, 2017 production contained six JetPay subpoenas, but also included a reference to another subpoena the AGO failed to produce.  This was the instance in December 2016

19  when JetPay's president wrote the AGO to indicate that his company would not produce documents in light of Judge Bowman's first ruling on Defendants' demurrer.  (Ex. 18 at AGS 00001004.)

20  Other than this email, Defendants have not received any information about this prior subpoena to JetPay.

21

22  [16] CalECPA defines "electronic communication information" in the "broadest terms possible" (Dennis Daniels, *California Updates Privacy Rights with the Electronic Communications Privacy*

23  *Act* (Nov. 17, 2015), http://www.swlaw.com/blog-data-security/2015/11/17/california-updates-privacy-rights-with-the-electronic-privacy-act/.  Under the Act, "'Electronic

24  communication' means the transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical

25  system." (Penal Code § 1546(c).)  "Electronic communication information" is defined as "any information about an electronic communication or the use of an electronic communication service,

26  including, but not limited to, the contents, sender, recipients, format, or location of the sender or recipients at any point during the communication, the time or date the communication was created,

27  sent, or received, or any information pertaining to any individual or device participating in the communication, including, but not limited to, an IP address." (*Id.* § 1546(d).)

28

40

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1   communications information.[17]  The electronic communications that JetPay handles and stores

2   are the types of information CalECPA was designed to protect – millions of records of online

3   users' transactions and their personally identifying information.  (*See* Penal Code § 1546(d),

4   reflecting the core requirement of CalECPA to protect the "contents, sender, recipients,

5   format" and other particulars of electronic communications.)  By the plain terms of CalECPA,

6   the AGO's subpoenas to JetPay were invalid.

7        **The Subpoenas to Vantiv, Stripe and American Express.**  The other credit card

8   processors and companies to which the AGO served subpoenas – Vantiv, Stripe and American

9   Express (Exs. 15-17) – likewise provided electronic communications services to communicate,

10   process and store data for Backpage customers' transactions.  (*See, e.g.*, Ex. 15 at

11   AGS 00001081 (email from Ms. Mailman to Vantiv, stating:  "[S]ince your company relies

12   heavily on electronic communication and data storage, you will not need more than 10 days to

13   generate a dataset that is available electronically.").)  Vantiv's correspondence to the AGO

14   underscores the extraordinary breadth of AGO's subpoena:

15        We ran a report to try to identify the number of transactions – not a report to
16        pull the transactions themselves.  The new report is showing a total of 90
     million transactions.  Because you are requesting full card data, each of those
17        transactions need to be decrypted ....

18   (AGS 00001073.)  The sheer size of this request – sweeping in "any and all transaction

19   records" for 90 million credit card transactions – makes clear that it falls within CalECPA's

20   goal of limiting government's ability to access mass data without a warrant.

21        **The Subpoena to ADP.**  The AG's subpoena to payroll services provider ADP also

22   sought electronic communications information in violation of CalECPA.  In this subpoena, the

23   AGO demanded a wide array of personal financial information, including employee IRS

24   forms, paystubs, direct deposit information, employee contracts, and "all account activity,

---

25

26   [17] A "'Service provider' means a person or entity offering an electronic communication service,"
(Penal Code § 1546(j)) which, in turn, is defined as "a service that provides to its subscribers or
27   users the ability to send or receive electronic communications, including any service that acts as an
intermediary in the transmission of electronic communications, or stores electronic communication
28   information." (*id.* § 1546(e).)

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    including but not limited to: Employee online self-service activity, Administrative actions,

2    Customer service transactions, Payroll transactions, Time card entries, Commission and

3    bonuses entries, Supplemental earnings entries, [and] Bonus memo entries." (Ex. 25 at

4    AGS 00000695.)  The subpoena sweeps in a wide range of electronic communications,

5    including Backpage's communications with employees.  ADP acts as a portal between

6    Backpage and its employees, by offering a "service that provides to its subscribers or users the

7    ability to send or receive electronic communications." (Penal Code § 1546(e).)  It therefore is

8    subject to CalECPA and Penal Code § 1546.1(b)(4), which prohibits the government from

9    obtaining information via subpoena.[18]

10                                          * * * * *

11        CalECPA is designed to prevent state authorities from making dragnet seizures of

12   individuals' online communications, data and transactions.  (See Caskey, CAL. SEARCH &

13   SEIZURE § 10.20 (CalECPA is intended to ensure against "overseizure" of electronic

14   _____

15   [18] The AGO's subpoena to ADP also should be invalidated for two other reasons. First, the
     subpoena violates the California Constitution's Right to Privacy.  (Cal. Const. art. I, § 1; see also
16   Penal Code 1546.4.(c) (permitting the court to void a warrant or other legal process "that is
     inconsistent with this chapter, or the California Constitution").)  Before the implementation of
17   Proposition 8 (Cal. Const. art. I, § 28(f)(2)), the California Supreme Court recognized that
     California's Constitution includes a right to privacy in individuals' financial records. (See People v.
18   Chapman (1984) 36 Cal. 3d 98, 106; Burrows v. Superior Court (1974) 13 Cal. 3d 238.) This right
     encompasses bank statements, but applies equally to related financial documents, such as
19   employees' personal W-2 forms, time cards, and payroll transactions requested in this subpoena.
     While Proposition 8 barred suppression as a remedy for violations of this right, CalECPA's status
20   as an exception to the "Truth-in-Evidence" provision means the Court may order suppression for
     violation of the right to privacy in financial records that are electronic communications information.
21
22   Second, the Court should invalidate the ADP subpoena because it is extraordinarily overbroad and
     irrelevant to any of the charges or issues in this case.  The AGO issued the subpoena two weeks
23   after the Court's August 23, 2017 Order, but it is inconceivable how obtaining every Backpage
     employee's payroll and tax records could have anything to do with the AGO's charges of bank
24   fraud/money laundering.  As discussed before, the issuance of a subpoena does not entitle the AGO
     to obtain access to the records demanded. (Kling v. Superior Court (2010) 50 Cal. 4th 1068, 1074;
25   see generally Mot. to Quash at 6.)  It is the Court's role to act as a gatekeeper in reviewing
     subpoenas and returns to ensure the subpoenaing party meets its burden of establishing good cause
26   for acquiring the records. (Alford v. Superior Court (2003) 29 Cal. 4th 1033, 1045; People v.
     Superior Court (2000) 80 Cal. App. 4th, 1305, 1318.)  The AGO had no good cause for the ADP
27   subpoena.
28
                                                42
     _____
     MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  information and "fishing expeditions by government entities").)  That is why CalECPA

2  precludes the State from using subpoenas.[19]  The Act reflects the legislature's view that

3  interposing a judicial officer to review the State's efforts to obtain electronic communications

4  information would ensure that such requests be appropriately narrow and limited by a requisite

5  showing of probable cause.  (*See* Penal Code § 1546.1(d)(1) (a "warrant shall describe with

6  particularity the information to be seized").)

7         The AGO used subpoenas to collect data of tens of millions of Backpage.com users'

8  transactions in violation of CalECPA and its warrant requirement.  Accordingly, under the

9  Act, the Court should void the subpoenas, order that all information and data the AGO

10  obtained pursuant to the subpoenas be destroyed, and suppress all such information in any

11  further proceedings in this action.  (Penal Code § 1546.4(a), (c).)

12         **2.**     **The AGO Violated the CalECPA § 1546.2(a) Notice Requirements.**

13         CalECPA sets forth a number of mandatory requirements for warrants used by State

14  authorities to obtain electronic communications information.  The requirements parallel Fourth

15  Amendment principles but are more exacting.  CalECPA requires (1) that the warrant

16  "describe with particularity the information to be seized" in more detail than required under

17  the Fourth Amendment (Penal Code § 1546.1(d)(1); *see* Caskey, CAL. SEARCH & SEIZURE

18  § 10:20); (2) that "any information obtained through the execution of the warrant that is

19  unrelated to the objective of the warrant shall be sealed and shall not be subject to further

20  review, use, or disclosure except pursuant to a court order" (Penal Code § 1546.1(d)(2);

21  addressed in Section III.C.3, *infra*); (3) that the warrant must "comply with all other

22  provisions of California and federal law" (Penal Code § 1546.1(d)(3)); and (4) that

23  government authorities executing a warrant must provide to the targets of the warrant a copy

24  of the warrant and a notice describing of the government's investigation (Penal Code

25

26

27

28

---

[19] CalECPA does allow the State to use a subpoena to obtain limited "subscriber information" (Penal Code § 1546(*l*)), but all of the AGO's subpoenas at issue here seek much more, including the content and details of users' electronic communications and transactions.

DAVIS WRIGHT TREMAINE LLP

43

1    § 1546.2(a)).  The AGO violated these requirements in numerous way, including, in particular,

2    the notice requirements.

3         CalECPA requires that the government must provide notice to the "identified targets of

4    the warrant" contemporarily with the execution of the warrant.  (Penal Code § 1546.2(a)(1).)[20]

5    The Act specifically prescribes what the notice must contain.  First, it must "inform[] the

6    recipient that information about the recipient has been compelled or obtained[.]"  (*Id.*)

7    Second, the notice to the targets must include a copy of the warrant.  (*Id.*)  Third, the notice

8    must "state[] with reasonable specificity the nature of the government investigation under

9    which the information is sought."  (*Id.*)[21]

10        CalECPA also provides a specific procedure by which the government may request an

11   order delaying notice.  Section 1546.2(b)(1) provides that the court may enter an "order

12   delaying notification" upon request from a government entity "supported by a sworn affidavit"

13   demonstrating that "there is reason to believe that notification may have an adverse result ...."

14   (*Id.*)[22]  The court may order the notification delay "only for the period of time that the court

15   finds there is reason to believe that notification may have an adverse result, and not to exceed

16   ─────────────────────────

17   [20] Though not relevant here, in the case of an emergency, the Act allows  government authorities to
     delay providing the notice for up to "three court days after obtaining the electronic information."

18   (Penal Code § 1546.1(d)(1).)

19   [21] Penal Code § 1546.2(a)(1) states:

20        Except as otherwise provided in this section, any government entity that executes a
          warrant, or obtains electronic information in an emergency pursuant to Section

21        1546.1, shall serve upon, or deliver to by registered or first-class mail, electronic
          mail, or other means reasonably calculated to be effective, the identified targets of

22        the warrant or emergency access, a notice that informs the recipient that
          information about the recipient has been compelled or obtained, and states with

23        reasonable specificity the nature of the government investigation under which the
          information is sought. The notice shall include a copy of the warrant or a written

24        statement setting forth facts giving rise to the emergency. The notice shall be
          provided contemporaneously with the execution of a warrant, or, in the case of an

25        emergency, within three court days after obtaining the electronic information.

26   [22] An "adverse result" is defined in the Act to mean:  "(1) Danger to the life or physical safety of an
     individual[;] (2) Flight from prosecution[;] (3) Destruction of or tampering with evidence[;]

27   (4) Intimidation of potential witnesses[; or] (5) Serious jeopardy to an investigation or undue delay

28   of a trial."  (Penal Code § 1546(a).)

                                         44
     ─────────────────────────
     MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    90 days." (*Id.*)  The court may order further extensions of up to 90 days each based on a

2    supplemental submission from the government based on a sworn affidavit showing continuing

3    grounds to believe an adverse result may result from notification.  (Penal Code

4    § 1546.2(b)(2).)

5         As noted, absent a delay order, CalECPA mandates that the government provide notice

6    to investigative targets "contemporaneously with the execution of the warrant."  (Penal Code

7    § 1546.2(a)(1).)  In instances when the government does obtain a notification delay order,

8    upon expiration of the order and any extensions, the government is required to provide to the

9    targets the § 1546.2(a) notice (*i.e.* a copy of the warrant and a reasonably specific description

10   of the government's investigation), as well "a copy of all electronic information obtained or a

11   summary of that information, including, at a minimum, the number and types of records

12   disclosed, the date and time when the earliest and latest records were created, and a statement

13   of the grounds for the court's determination to grant a delay in notifying the individual."

14   (Penal Code § 1546.2(b)(3).)

15        The AGO violated the CalECPA notice requirements for at least ten of the warrants

16   that were executed  to search records of Backpage, Google, Amazon Web Services, and the

17   four banks (BMO Harris Bank, BB&T Bank, U.S. Bank, and Heartland Bank).[23]  In sum, the

18   AGO should have provided notice of its investigation to Defendants by January 1, 2016, and

19   should have provided the requisite notice on several other dates (*e.g.*, January 27, March 3,

20   May 12, and August 10, 2016), but did not do so.  Instead, by breaching its obligations and not

21   providing any notice until October 12, 2016 – after the DOJ arrested and jailed the Defendants

22   – the AGO effectively hid the warrants and precluded Defendants from exercising their rights

23   under CalECPA and the California and U.S. Constitutions.

24        The AGO's violations took several different forms.  In some instances, the AGO did

25   seek and obtain notification delay orders and extensions under § 1546.2(b), but, when the

26

27   [23] Specifically, Exs. 1, 6, 8, 10, and 12 (warrants to Backpage); Exs. 2, 4, and 7 (warrants to
28   Google), and Ex. 13 (warrant to Amazon Web Services).

45

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1   extensions expired, the AGO did not provide the requisite notice or the documents that were

2   seized (or a summary of them).  The second Google warrant (Ex. 4) is a good example.  That

3   warrant required Google to produce, among other things, "contents of all electronic or wire

4   communications, read or unread" for every email address ending with @backpage.com" as

5   well as all such communications from or to Mr. Larkin's personal email address.  (Ex. 4 at

6   AGS 00000405.)  The AGO served the warrant on August 26, 2015, but recognized that

7   Google was "a provider of electronic communication service," (AGS 00000383),[24] and that

8   the warrant was subject to the CalECPA notice requirements beginning on January 1, 2016,

9   when the Act took effect.  (See AGS 00000408 (Oct. 5, 2015 order on AGO's request that "the

10  notification by the government otherwise required under Penal Code Section 1546.2 (a)

11  [effective January 1, 2016 …] be delayed for a period of ninety days." (bracketed text in

12  original).)  Thereafter, the AGO sought and obtained extension orders (AGS 00000407-414),

13  but the last extension expired on June 1, 2016 (AGS 00000414).  The AGO did not provide

14  any notice to Defendants (or Backpage) then and waited over four months before doing so.

15  (See Grant Decl. ¶ 3.)

16      The AGO did the same thing with regard to the third Google warrant (Ex. 5, seeking all

17  emails and related records for Mr. Lacey's personal email address, see AGS 00000475), which

18  was issued November 24, 2015 (AGS 00000454), and for which the AGO obtained orders

19  ostensibly extending the notification deadline to June 1, 2016.[25]  (AGS 00000436, 453.)  The

---

[24] Google, Backpage, AWS, and the four banks are all service providers and the warrants all seek
electronic communications information within the scope of CalECPA, as the AGO admits in its
warrant and extension applications. (See, e.g., Ex. 4 at AGS 00000411, 413; Ex. 5 at
AGS 00000416, 418, 437; Ex. 7 at AGS 00000498; Ex. 9 at AGS 00000623 (AGO affidavits
admitting applicability of CalECPA notice requirements as to Google warrants); Ex. 6 at
AGS 00000011; Ex. 8 at AGS 00000040; Ex. 10 at AGS 00000068 (same as to Backpage
warrants); Ex. M (same as to AWS warrant); Ex. 14 at AGS 00000125, 135, 141 (same as to the
banks).)

[25] Additionally, based on the documents produced, in its extension application on March 3, 2016,
the AGO did not provide any sworn affidavit to support the extension (see AGS 00000453), as
required by Penal Code § 1546.2(b)(1), and the court failed to make the required finding that "there
is reason to believe that notification may have an adverse result." (Id.)  This extension was
therefore defective under CalECPA.  The same is true of the warrant issued to the banks (Ex. 14.)

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1   AGO did not say anything to Defendants about the warrant or the investigation at this time.  In

2   a similar vein, for the fourth Google warrant (Ex. 7, seeking additional emails and records for

3   accounts of Messrs. Larkin, Lacey and Ferrer and for four other email addresses, *see*

4   AGS 00000486), the AG again acknowledged the CalECPA notice requirements and received

5   an extension to delay notice in the original warrant (AGS 00000483), but never obtained any

6   extension and did not notify defendants on June 1, 2016, as was required.

7         In other instances, the AGO never sought or received *any* judicial order delaying the

8   required § 1546.2(a) notice.  This is true for two of the warrants the AGO obtained for records

9   of Backpage itself (Exs. 1, 10), as well as the first warrant to Google (Ex. 2).  While the first

10  Backpage warrant and the first Google warrant were issued before CalECPA's effective date,

11  as noted above, the AGO has admitted the statute's requirements applied to prior warrants that

12  had been executed but not disclosed by January 1, 2016.  (*See* Ex. 4 at AGS 00000408, Ex. 5

13  at AGS 00000436, 453.)  Thus, as of January 1, 2016, CalECPA required the AGO to provide

14  notice to the Defendants about the warrants and the State's investigation.  It did not do so.  For

15  the fourth Backpage warrant, issued on August 11, 2016, the AGO was required to provide

16  notice on that date, contemporaneous with the execution of the warrant (Penal Code

17  § 1546.2(a)), but did not do so.

18        The AGO also violated CalECPA's notice requirements in a different way concerning

19  each of the five warrants served on Backpage for users' ads, communications, transactions,

20  and data.  (Exs. 1, 6, 8, 10, 12.)  The AGO requested and obtained provisions in these warrants

21  directing *Backpage* not to disclose the warrants or the investigation *to the users* whose

22  information was requested.[26]  However, CalECPA requires the government to provide notice

23  *to the targets* of a warrant and the government's investigation, absent a court order finding

24  [26] (*See, e.g.*, Ex. 10 at AGS 00000060 ("IT IS ORDERED that Backpage.com, LLC shall delay
25  notification of the existence of the warrant, or the existence of the investigation, to the listed
    subscriber or to any other person, for a period of ninety days unless otherwise directed by the
26  Court."); *see also id.* at AGS 00000068 (Agent Mackey's affidavit requesting that, pursuant to
    Penal Code § 1546.2, the court direct Backpage not to disclose the warrant to "the subscriber
27  customer or owner of the electronic communication" or "any person"); *see also* Ex. 6 at
    AGS 00000003, 11; Ex. 8 at AGS 00000032, 40.)

28

47

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    possible adverse results.  (Penal Code § 1546.2(a).)  The AGO's supporting affidavits for

2    these warrants make clear that Backpage and Defendants were the AGO's targets – not

3    individual users of Backpage.com.  (*See, e.g.*, Ex. 6 at AGS 00000014-15, 28; Ex. 8 at

4    AGS 00000044, 51.)  But the AGO never obtained any court authorization to delay the

5    required notification to Defendants explaining that *they* were the targets of the AGO's

6    investigation and describing the investigation with "reasonable specificity," as required by

7    Penal Code § 1546.2(a).  Thus, for the Backpage warrants, the AGO should have provided

8    notice to Defendants on January 1, 2016 (for the first Backpage warrant, Ex. 1); January 27,

9    2016 (for Ex. 6); May 12, 2016 (for Ex. 8); August 11, 2016 (for Ex. 10); and October 3, 2016

10   (for Ex. 12).  The AGO said nothing about these warrants on these dates.

11        The AGO violated the CalECPA notice requirement for the warrant to Amazon Web

12   Services (Ex. 13) and the fourt banks (Ex. 14) in yet another way.  In the supporting affidavits

13   for these warrants, the AGO did not include any request or justification to delay the CalECPA

14   notification to Defendants.  (*See* Ex. 13 at AGS 00000220-236; Ex. 14 at AGS 00000142-

15   167.)  The AGO instead submitted a form order including a section directing the warrant

16   recipients to "delay notification of the existence of the warrant, or the existence of the

17   investigation, to the listed subscriber or to any other person, for a period of 90 days."  (*see,*

18   *e.g.*, Ex. 13 at AGS 00000214.)  However, the notice requirements of CalECPA cannot be

19   satisfied by the AGO's inclusion of boilerplate language in a proposed warrant order.  The Act

20   requires the government to justify a request to defer notice by "sworn affidavit" showing an

21   "adverse result" if notification were provided.  It provides that a court may order such a

22   notification deferral only if it finds "reason to believe" the government's averments of an

23   adverse result.  (Penal Code § 1546.2(b)(1).)  None of this happened for these warrants.  As a

24   result, the issuing magistrates made no findings and apparently did not consider the "adverse

25   result" requirement at all.

26                                    * * * * *

27

28

                                    48

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    The CalECPA notice requirements are a core predicate to protect the rights of

2    investigative targets, service providers and individuals whose electronic communications

3    information the government seeks to obtain.  These parties may move to void or modify

4    warrants (Penal Code § 1546.4(c)), seek suppression of any information obtained

5    (§ 1546.4(a)), petition for appointment of a special master to prescribe and limit information

6    the government may access and use (§ 1546.1(e)(1)), and obtain orders requiring the

7    government to destroy materials obtained that are "unrelated to the objective of the warrant"

8    or contrary to CalECPA or other laws (§§ 1546.1(e)(2), 1546.4(c)).  But they cannot do these

9    things to rein in the government's actions from the outset, if the government disregards the

10    CalECPA notice requirements.

11    That is what the AGO did in this case – at least eleven times.  Defendants could not

12    protect their rights because they did not know the State was violating their rights.  The AGO

13    should have provided notice of its investigation to Defendants no later than January 1, 2016.

14    If the AGO had followed the law and provided the required notice, Defendants could have

15    moved to void the warrants and shown then that the State was foreclosed from prosecuting on

16    their pimping theory, as this Court later held was clear based on Section 230.

17    Accordingly, the Court should enter an order declaring these eleven warrants void and

18    ordering that all information obtained pursuant to the warrants be destroyed.  (Penal Code

19    § 1546.4(c).)

20    ### 3.    The Government Violated the CalECPA § 1546.2(a) Requirement To Segregate and Seal Unrelated Information.

21

22    CalECPA further requires that a warrant issued for electronic communications

23    information must "require that any information obtained through the execution of the warrant

24    that is unrelated to the objective of the warrant shall be sealed and shall not be subject to

25    further review, use, or disclosure except pursuant to a court order or to comply with discovery

26    as required by Sections 1054.1 and 1054.7."  (Penal Code § 1546.1(d)(2).)

27    The warrants drafted and proffered by the AGO reflect that the State has fundamentally

28    misinterpreted the CalECPA sealing requirement.  Instead of requiring that all information

49

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  "unrelated to the objective of the warrant" be sealed and not used or disclosed, each warrant

2  contained the following statement:

> Those items that are *within the scope of this warrant* may be copied and
> retained by investigative officers.  Investigating officers will then *seal any*
> *information that does not fall within the scope of Attachment B* and will not
> further review the information absent an order from the Court.

6  (Ex. 6 at AGS 00000003 (emphasis added).)[27]  On a cursory reading, this may sound

7  like § 1564.1(d)(2), but it is actually very different.

8      Attachment B to the respective warrants described the categories of data and

9  information the AGO was authorized to search, *e.g.*, "the contents of all electronic or wire

10 communications, read or unread" in Google Gmail accounts of Messrs. Larkin, Lacey or

11 Ferrer (and other individuals.  (*See* Ex. 7 at AGS 00000486.)  According to the AGO's

12 characterization, the State was entitled to retain all of this information and did not have to seal

13 any of it because it fell within the "scope of the warrant."

14     CalECPA actually requires government authorities to segregate and seal "any

15 information ... that is *unrelated to the objective of the warrant*." (Penal Code § 1546.1(d)(2)

16 (emphasis added).)  The Act recognizes that authorities may initially seize electronic

17 communications information described by categories (*e.g.*, all of an individual's emails).  But

18 it requires that, when authorities thereafter review the materials collected, they must set aside,

19 seal and not further review or disclose all materials that do not relate to the objective of the

20 warrant.  This is clear from the terms of the Act, which provides that the sealing requirement

21 applies to "information *obtained through the execution of the warrant*" and prevents "*further*

22 *review, use, or disclosure except pursuant to a court order ....*" (*Id.* (emphasis added).)  In

23 other words, CalECPA does not allow the AGO to keep all materials that could be searched –

24

25

---

26 [27] The government used virtually the same language in every search warrant. (*See, e.g.*, Ex. 5 at
   AGS 00000431; Ex. 7 at AGS 00000483; Ex. 8 at AGS 00000032; Ex. 9 at AGS 00000612; Ex.
27 10 at AGS 00000060; Ex. 12 at AGS 00000080; Ex. 13 at AGS 00000214; Ex. 14 at
   AGS 00000196.)
28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1   no matter how irrelevant to the objective of a warrant – and thereafter use or disclose the

2   materials for whatever purpose the AGO chooses.

3          The difference between the actual CalECPA sealing requirement and the AGO's

4   interpretation is critically important, as this case demonstrates.  Under the AGO's

5   interpretation, it was entitled to retain and did not have to seal *any* of the 4 million Google

6   files it seized (*see* Ex. 5 at AGS 00000418), whether or not they had anything to do with the

7   government's pimping theory of prosecution.  As the AGO would have it, the State need only

8   seal documents seized that were not requested by a given warrant, *e.g.*, if Google had

9   improperly provided some other user's emails.  Unquestionably, the vast majority of the

10  Google emails were completely unrelated to the AGO's objective to prove pimping, and,

11  indeed, the record in this case reflects that the AGO could find nothing in the emails to

12  support its theory.[28]  Yet, the AGO's view is that it could nonetheless retain and re-review all

13  the emails to try to come up with some other criminal charges.  This is directly contrary to

14  § 1546.1(d)(2) and would make a mockery of the CalECPA sealing requirements.  But this is

15  what the AGO did.

16         The documents produced by the AGO reflect that it did not abide by the CalECPA

17  sealing requirements.[29]  This is shown, first, by the AGO's October 3, 2017 warrant

18  application asking for authorization to search "records previously seized" pursuant to six

19  warrants obtained based on the AGO's rejected pimping theory – which was the AGO's

20  putative basis and objective for all the prior warrants – to try to find evidence for its new bank

21

22

23

24  [28] This is clear from the evidentiary submissions the State offered purportedly to support and defend
    its pimping charges (*see* Fichtner Decl. in Support of Original Complaint; Banafa Decl. in Support
25  of People's Supp. Brief in Opposition to First Demurrer), which Judge Bowman rejected in granting
    the first demurrer.)
26
    [29] After reviewing the November 1, 2017 production, Defendants' counsel asked the AGO to
27  provide information about whether it had sealed materials in accordance with CalECPA.  The AGO
    declined to answer Defendants' request.
28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    fraud/money laundering theory.  (Ex. 27 at AGO AGS 00000246.)[30]  The supporting affidavit

2    for the warrant application reflects that the AGO did not seal any information obtained from

3    its prior warrants, but instead used the information to come up with other charges the State

4    might bring – and offered this as a basis for the court to issue the subsequent "re-review"

5    warrant.[31]

6            The affidavit of Special Agent Supervisor Reye Diaz stated:  "While reviewing

7    evidence obtained through the aforementioned search warrants, … your affiant observed

8    evidence that defendants were also defrauding financial institutions and laundering money

9    …."  (Ex. 27 at AGS 00000244.)  He went on to assert that, in the course of reviewing emails

10   and other information obtained through the Google and AWS warrants for pimping, another

11   AGO agent had "observed and shared with me" that Backpage experienced "blocked and

12   declined transactions" and used multiple payment processors "to process their customer card

13   payments."  (AGS 00000249.)  Agent Diaz labeled this as "Evidence of Fraud"

14   (AGS 00000248), which is baseless, but, regardless, Backpage's dealings with credit card

15   processors or treatment of declined transactions were completely unrelated to the AGO's

16   pimping objective.  (For that matter, it is difficult to imagine why agents would have been

17   combing through communications with credit card processors as part of an investigation into

18   its original "pimping" charges.)  Had the AGO followed the law, it would have sealed all

19   information about credit card and payment processing from the outset.  And, in any event, the

20   AGO could not use the materials that should have been sealed as supposed grounds for

21   authorization to re-review those materials for a different theory.  Section 1546.1(d)(1)

22   requires the government to get a court order *before* any "further review, use, or disclosure"; it

23   _____

24   [30] The six warrants were the ones to AWS (Ex. 13), BMO Harris Bank and three other banks (Ex. 14); Union Bank (Ex. 3), and three of the warrants to Google (Exs. 2, 4, and 7).  (*See* Ex. 27 at AGS 00000243.)

25
26   [31] Other warrant applications further reflect that the AGO did not segregate or seal unrelated information, but used it to try to come up with other charges against Defendants.  (*See* Ex. 9 at AGS 00000626 (Special Agent Mackey's declaration stating that, based on information obtained from the prior search warrants and Google records, "I believe probable cause supports [charges of] Money Laundering …."))

27
28

52

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    does not permit the AGO to re-review the unrelated materials first and ask for permission

2    later.[32]

3        The AGO's apparent disregard of the CalECPA sealing requirement is also reflected

4    by references in the warrant applications to the AGO's desire to share the information

5    obtained through the warrants with other authorities.  Several of the supporting affidavits

6    contain the following statement:

7        Your affiant also request[s] that the DOJ be authorized to share the seized
           property with members of the investigation and prosecution teams, including
8        out-of-state and federal law enforcement agencies."

9    (Ex. 13 at AGS 00000235.)[33]  Defendants are aware that the AGO has in fact been

10   coordinating with other state and federal law enforcement authorities in their pursuit of

11   Defendants and Backpage.  Defendants do not know whether the AGO has shared the data

12   and information it obtained through the search warrants and subpoenas, but it would be

13   improper and a violation of CalECPA if the AGO has disclosed such information which

14   should have been sealed.  (See Penal Code § 1546.1(d)(2) (information unrelated to the

15   objective of a warrant "shall be ... not subject to further review, use, *or disclosure*" (emphasis

16   added).)

17

18

19   [32] In fact, the AGO's re-review warrant itself does not contain any sealing requirement – or any
20   mention of CalECPA at all.  (See Ex. 27, at AGS00000238-240.)  This not only violated CalECPA
      again, it raises the concern that the AGO may believe it can re-review the same materials again to
21   try to come up with some other charges.

22   [33] (See also Ex. 7 at AGS 00000507; Ex. 9 at AGS 00000641; Ex. 14 at AGS 00000158; Ex. 27 at
      AGS 00000254.)  The warrant forms used by the AGO also ambiguously authorize sharing in terms
23   that misstate the CalECPA sealing requirement:

24        Investigating officers and agents acting under their direction, as well as members
           of the investigation and prosecution teams, including out-of-state and federal law
25        enforcement agencies, are authorized to access all records searched to determine if
           the data contains the items as described in Attachment B.
26

27   (Ex. 9 at AGS 00000608; see also, e.g., Ex. 7 at AGS 00000483 (containing same sentence); Ex.
      13 at AGS 00000214 (same).)  As discussed above, Attachment B to the respective warrants sets
28   forth all of the categories of information that may be searched.

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    The Court should enter an order declaring the AGO's re-review warrant (Ex. 27) and

2  its fifth Google warrant (Ex. 9) void, as the supporting affidavits for these warrants reflect

3  that the AGO violated CalECPA § 1546.1(d)(1) by not sealing materials from prior warrants

4  that were unrelated to the State's pimping objective.  Defendants further request that, if the

5  Court does not otherwise void the remaining warrants, it should order the AGO to show cause

6  why they should not be invalidated for failure to follow the sealing requirements or for

7  improperly disclosing information to other law enforcement authorities. [34]

8          **4.    Invalidation of the Warrants and Subpoenas and Suppression of
            Evidence Is Warranted Because the AGO Has Violated Provisions of
9          CalECPA That Are Central to the Act's Purpose.**

10   CalECPA provides multiple remedies for violations of the Act.  It provides that "[a]ny

11  person … may move to suppress any electronic information obtained or retained in violation

12  of the Fourth Amendment … or of this chapter."  (Penal Code § 1546.4(a).)  The Act also

13  allows any:

14          individual whose information is targeted by a warrant, order or other legal
            process that is inconsistent with this chapter, or the California Constitution, or
15          the United States Constitution, or any service provider or any other recipient of
            the warrant, order, or other legal process [to] petition the issuing court to void
16          or modify the warrant, order, or process, or to order the destruction of any
            information obtained in violation of this chapter, or the California Constitution,
17          or the United States Constitution.

18  (*Id.* § 1546.4(c).)  The Act thus provides for standing broader than under the Fourth

19  Amendment.  (*See* Caskey, CAL. SEARCH & SEIZURE § 10.20 (§ 1546.4(a) "establishes

20  vicarious standing").)[35]  Additionally, because CalECPA was passed by a two-thirds majority

21

---

22  [34] By its terms, the CalECPA sealing requirement only applies to electronic communications
    information obtained through search warrants.  (*See* Penal Code § 1546.1(d)(1).)  However, as
23  shown above, the AGO improperly used subpoenas in lieu of warrants.  While the subpoenas
    should be invalidated for this reason alone, the Court should also order return and destruction of
24  all information obtained through the subpoenas that was disclosed to other law enforcement
    authorities.  (*See* Penal Code § 1546.4(c) (court may "order the destruction of any information
25  obtained in violation of this chapter").)

26  [35] Accordingly, this motion is brought by Defendants and Backpage, which has standing as a
    service provider and a recipient of the AGO's warrants, as well as an apparent target of the warrants
27  and the State's investigation.

28

54

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   of the legislature, it constitutes an exception to Proposition 8, the "Truth-in-Evidence" ballot

2   initiative adopted in 1982, and therefore "mandat[es] suppression for a statutory violation

3   irrespective of whether the fourth amendment [is] implicated." (*Id.*)

4          The remedies of suppression and destruction of evidence and invalidation of the

5   warrants and subpoenas are appropriate here because the AGO's violations of CalECPA

6   undermine the central protections of the statutory scheme. Here, *People v. Jackson* (2005),

7   129 Cal. App. 4th 129, is instructive. (*See* Caskey, CAL. SEARCH & SEIZURE § 10.20

8   (suggesting *Jackson* provides proper framework for analysis of remedies under CalECPA).)

9   In that case, the Court of Appeal addressed the California Wiretap Act (Penal Code § 629.50),

10   which was also passed by a two-thirds majority and therefore is not subject to Proposition 8.

11   The court acknowledged that not every technical violation of the Act should require

12   suppression, but also recognized that the statutory suppression remedy was broader than under

13   the Fourth Amendment. The court adopted a three-part test to determine when the Wiretap

14   Act required suppression:

15          We believe the proper analysis of a motion to suppress wiretap evidence must
           ask and answer the following questions....
16
           (1)   Has the defendant established a violation of a provision of the wiretap
17         law? If not, the motion is denied.

18         (2)   If a wiretap violation has been established was the provision violated
           one which 'was intended to play a central role in the statutory scheme[?]' If
19         the provision was not intended to 'play a central role,' failing to comply with
           it will not render interceptions under the wiretap order unlawful and the
20         motion is denied.

21         (3)   If the provision violated was central to the legislative scheme was the
           purpose of the provision achieved in spite of the error? If the purpose was
22         achieved, the motion is denied. If the purpose was not achieved, the motion
           is granted."
23
24   (129 Cal. App. 4th at 149 (citations omitted).) "[S]uppression is required," the court explained

25   "for a 'failure to satisfy any of those statutory requirements that directly and substantially

26   implement the [legislature's] intention to limit the use of intercept procedures to those

27

28

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  situations clearly calling for the employment of this extraordinary investigative device.'" (*Id.*

2  at 150 (quoting *United States v. Giordano* (1974) 416 U.S. 562, 527).)

3      Here, it is clear that the AGO's failures to comply with the warrant, notice, and sealing

4  requirements of CalECPA all transgress provisions that were intended to play a "central role in

5  the statutory scheme." In his treatise, Judge Caskey agrees:

> Central to the CalECPA is the requirement a search be conducted pursuant to a
> warrant absent very limited exceptions, that any search warrant must include
> the requisite language to protect overseizing and minimize invasions of
> privacy of third parties, that the officer must provide notice to the requisite
> individuals in a timely matter, and the magistrate must provide oversight of
> any emergency searches or seizures of electronic devices.

10  (Caskey, CAL. SEARCH & SEIZURE § 10.20, at 8.)

11      As discussed elsewhere, Defendants maintain that the AGO's prosecution should be

12  dismissed altogether for government misconduct and in the interests of justice. (*See* Section

13  III.E, *supra*.) In any event, however, CalECPA mandates that the Court should void and

14  suppress all evidence from the subpoenas and warrants the AGO obtained and executed in

15  violation of the Act.[36]

16      **D.   The AGO Violated the Fourth Amendment By Not Setting Aside Unrelated**
        **Information from the Warrants.**

17

18      As discussed, the AGO's apparent failure to segregate and seal information obtained

19  through its warrants violated CalECPA, and the warrants should be invalidated without more.

20  (*See* Section III.C.3, *supra*.) However, the AGO's conduct in this regard also violated the

21  Fourth Amendment, which is also enforceable through CalECPA. (*See* Penal Code

22  § 1546.1(d)(3).)[37] The Ninth Circuit's decisions in *United States v. Comprehensive Drug*

23  ------

24  [36] To be clear, pursuant to CalECPA the Court should invalidate and suppress evidence from the
    warrants set forth in Exs. 1, 2, 4-14, and 27, and the subpoenas that are Exs. 15-18 and 21-25.

25  [37] Section 1546.1(d)(3) provides that warrants subject to CalECPA also "shall comply with all other
    provisions of California and federal law, including any provisions precluding, limiting, or imposing
    additional requirements on the use of search warrants." The Act thus provides a statutory

26  mechanism for enforcement of California and federal constitutional rights. (*See also* § 1546.4(a),
    (c) (providing remedies and standing under the statute for a "violation of the Fourth Amendment"

27  or any "warrant, order, or other process that is inconsistent with … the California Constitution or
    the United State Constitution").)

28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    *Testing, Inc.* (9th Cir. 2010) 621 F.3d 1162, 1176 (en banc), and *United States v. Tamura* (9th

2    Cir. 1982) 694 F.2d 591, make this clear in the context of overreaching government conduct

3    like the AGO's conduct here.

4         In *Tamura*, in an investigation of alleged kickbacks, the government obtained a

5    warrant to seize evidence of certain payments received by Tamura from records of his

6    employer.  Finding the relevant records required reviewing computer printouts, locating

7    vouchers that related to specific payments recorded on the printouts, and then finding checks

8    that corresponded to the vouchers.  (694 F.2d at 594-95.)  When the company's employees

9    refused to help, the federal agents seized and removed dozens of file drawers to review at

10   their offices.  The Ninth Circuit condemned the government's actions, noting that "the

11   wholesale *seizure* for later detailed examination of records not described in a warrant is

12   significantly more intrusive [than reviewing files on site], and has been characterized as 'the

13   kind of investigatory dragnet that the fourth amendment was designed to prevent.'"  (*Id.* at

14   595 (quoting *United States v. Abrams* (1st Cir. 1980) 615 F.2d 541, 543) (emphasis in

15   original).)  The court instructed that,"[i]n the comparatively rare instances where documents

16   are so intermingled that they cannot feasibly be sorted on site," the proper procedure is for the

17   government to "seal[] and hold[] the documents pending approval by a magistrate of a further

18   search." (*Id.* at 595-96.)

19        In *Comprehensive Drug Testing*, the Ninth Circuit recognized that, in the digital age,

20   the problems of over-seizure of data are no longer comparatively rare.  "[The] pressing need

21   of law enforcement for broad authorization to examine electronic records … creates a serious

22   risk that every warrant for electronic information will become, in effect, a general warrant,

23   rendering the Fourth Amendment irrelevant." (621 F.3d at 1176.)  That case concerned the

24   federal government's investigation of the Bay Area Lab Cooperative (Balco) for allegedly

25   providing steroids to professional baseball players.  Pursuant to an agreement with the

26   players' union, Major League Baseball contracted with two independent companies (CDT and

27   Quest Diagnostics, Inc.) to obtain urine samples and conduct drug testing.  The players were

28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   assured the test results would be anonymous and confidential and used solely to determine

2   whether more than five percent of players tested positive, to consider whether additional

3   testing should be required in future. (*Id.* at 1166.)

4        During the Balco investigation, the federal authorities learned that ten players had

5   tested positive in the CDT program.  The government obtained two search warrants in

6   Nevada and California to obtain all drug testing records and specimens held by CDT and

7   Quest relating to Major League Baseball, and, in the process of executing the warrants seized

8   and reviewed the records for hundreds of players "and a great many other people."  (*Id.*)  The

9   government used evidence from these warrants to obtain still more search warrants, as well as

10  a grand jury subpoena "demanding production of the same records it had just seized."  (*Id.*)

11  Three district court judges respectively granted motions requiring return of the seized

12  evidence and quashing the subpoena.  (*Id.* at 1166-67.).

13       The Ninth Circuit affirmed, agreeing that "the government failed to comply with the

14  procedures outlined in our venerable precedent, [*Tamura*]."  (*Id.* at 1167.)  The court held that

15  the federal authorities violated the Fourth Amendment by over-broadly seizing data, not

16  segregating the data by search queries or other computer analytics, and instead allowing the

17  case agent to review all the information, which he then used "to generate additional warrants

18  and subpoenas to advance the investigation."  (*Id.* at 1171.)  The government sought to defend

19  its actions by asserting that evidence it found regarding steroid use by other baseball players

20  was in plain view once the agent reviewed the evidence seized to determine what fell within

21  the scope of the warrants.  The Ninth Circuit found this argument "too clever by half."  (*Id.* at

22  1170.)  "The point of the *Tamura* procedures is to maintain the privacy of materials that are

23  intermingled with seizable materials, and to avoid turning a limited search for particular

24  information into a general search of office file systems and computer databases."  (*Id.*)  Under

25  the government's theory, "everything the government chooses to seize will ... automatically

26  come into plain view."  (*Id.* at 1171.)  "Since the government agents ultimately decide how

27  much to actually take, this [would] create a powerful incentive ... to seize more rather than

28

DAVIS WRIGHT TREMAINE LLP

58

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1   less." (*Id.* ("Let's take everything back to the lab, have a good look around and see what we

2   might stumble upon.").)

3         In several ways, the AGO's actions are reminiscent of the conduct the Ninth Circuit

4   held improper in *Comprehensive Drug Testing*.  In executing the various warrants, the AGO

5   seized millions of records of data by broad categories (*e.g.*, all emails of Backpage employees

6   and Defendants).  It apparently did not segregate these materials to sort out only those that

7   related to the State's pimping theory.  As in *Comprehensive Drug Testing*, the AGO then

8   reviewed and used the unrelated materials to issue more warrants and subpoenas and to come

9   up with another basis to charge Defendants.  Also similar to the federal authorities' grand jury

10  subpoena in *Comprehensive Drug Testing*, the AGO here likewise sought *post hac*

11  authorization to review what it had already seized (Ex. 27, the re-review warrant),

12  notwithstanding the State's prior statutory and Constitutional violations.

13        Given the AGO's actions, this case is also rife with problems of "fruit of the poisonous

14  tree." (*Wong Sun v. United States* (1963) 371 U.S. 471, 488.)  Evidence from an illegal

15  search cannot be used to establish probable cause for a warrant to conduct a further search.

16  (*See People v. Machupa* (1994) 7 Cal. 4th 614, 631; *United States v. Vasey* (9th Cir. 1987)

17  834 F.2d 782, 788.)  Here, the AGO obtained search warrants without disclosing that it had

18  no authority to prosecute, used the evidence seized to obtain other warrants (again without

19  authority), and repeatedly violated CalECPA to achieve its overbroad seizures and collection

20  of information.  Indeed, the AGO's violations are so numerous and multi-layered, it is likely

21  impossible to sort out whether any of the evidence it has seized and otherwise collected is *not*

22  fruit of the poisonous tree.

23      **E.**    **Given the Extent of the AGO's Constitutional and Statutory Violations, the
    Court Should Dismiss this Case for Outrageous Government Misconduct
24  and In the Interests of Justice.**

25        As shown above, the AGO's violations of Constitutional and statutory mandates have

26  been pervasive throughout its five-year pursuit of Backpage and Defendants.  From the outset,

27  the AGO pursued a prosecution it admittedly had no authority to bring.  The AGO engaged in

28

DAVIS WRIGHT TREMAINE LLP

59

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    misrepresentations in order to obtain warrants.  It hid the investigation when CalECPA

2    required disclosure.  Even after this Court issued rulings holding that the AGO's prosecution

3    was foreclosed as a matter of law, the AGO continued to issue more subpoenas and press for

4    warrant responses on the same rejected theory.  During this time (and despite Defendants'

5    objections), the AGO amassed a huge collection of more than 100 million records of data,

6    encompassing most or all email communications of the company and Defendants, all ads and

7    transactions by users through the website, all payments processed and received, and far more –

8    the effective equivalent of a general warrant.  And, again contrary to CalECPA, the AGO

9    apparently never segregated or sealed any of this data, but instead reviewed it to come up with

10   the unrelated bank fraud/money laundering charges.

11          The AGO's actions have been so contrary to due process that the proper remedy here is

12   dismissal.  The Court may dismiss either on the non-statutory ground of outrageous

13   government misconduct (*see People v. Velasco-Palacios* (2015) 235 Cal. App. 4th 439, 445),

14   or its own motion under Penal Code § 1385, "in furtherance of justice."  Under either

15   standard, dismissal is warranted here.  And, while dismissal is an exceptional remedy, this is

16   an exceptional case: the prejudice to Defendants cannot be cured absent dismissal, and

17   permitting the case to proceed would do nothing to deter State authorities from committing

18   constitutional and statutory violations in the future.

19          **1.      Standards Regarding Dismissal for Outrageous Government Misconduct.**

20          "[T]here is ample support for [the] contention that egregious violations of a

21   defendant's constitutional rights are sufficient to establish outrageous government

22   misconduct."  (*Id.* at 447; *see also id.* at 446 ("dismissal is an appropriate sanction for

23   government misconduct that is egregious enough to prejudice a defendant's constitutional

24   rights") (citing *United States v. Morrison* (1981) 449 U.S. 361, 365).)  Thus, California courts

25   have held that prosecutors engaged in outrageous misconduct by allowing an undercover

26   police officer to attend meetings among defendants and their counsel (*Barber v. Municipal*

27   *Court* (1979) 24 Cal. 3d 742, 756-60), by inserting a false confession into a transcript of a

28

DAVIS WRIGHT TREMAINE LLP

60

1   defendant's interrogation (*Velasco-Palacios*, 235 Cal. App. 4th at 448), and by eavesdropping

2   on a defendant's confidential courtroom communications (*Morrow v. Superior Court* (1994)

3   30 Cal. App. 4th 1252, 1263 (such conduct "shocks the conscience" and merits dismissal of

4   criminal charges)).

5       Such a dismissal is appropriate for misconduct and prejudice occurring at any stage in

6   "'the criminal proceeding' as a whole." (*Velasco-Palacios*, 235 Cal. App. 4th at 450 (quoting

7   *Morrison*, 449 U.S. at 365)), and the assessment of whether the government's conduct has

8   been outrageous is based on the "totality of the circumstances" (*see, e.g.*, *United States v.*

9   *Pascal* (N.D. Ill. 1979) 496 F. Supp. 313, 319 ("Case law … dictates that when the "totality of

10  circumstances" surrounding the government misconduct is such as to offend basic tenets of

11  fair play and justice, dismissal of the indictment with prejudice is proper.")).  The decision to

12  dismiss is committed to the trial court's sound discretion.  (*Velasco-Palacios*, 235 Cal. App.

13  4th at 445.)

14  **2.    Standards Dismissal Under Penal Code § 1385.**

15      In a similar vein, Penal Code § 1385 empowers the Court to dismiss a criminal

16  complaint on its own motion when doing so is "in furtherance of justice."  Dismissal under

17  § 1385 should be based on balancing of a defendants' constitutional rights against the

18  government's interest in "fair prosecution of crimes properly alleged."  (*People v. S.M.* (2017)

19  9 Cal. App. 5th 210, 218.)[38]  Here too, the Court's discretion to dismiss is "broad."  (*People v.*

20  *Superior Court (Marin County)* (1968) 69 Cal. 2d 491, 502, 504 ("The Legislature has given

21  the trial court the power to dismiss under the broad standard of justice …."); *People v. Hatch*

22  (2000) 22 Cal. 4th 260, 273 ("the standard for dismissal under section 1385 is quite broad and

23  permits dismissal under a variety of circumstances").)  And the Court's dismissal powers

24

25

26  [38] "If a trial judge is convinced that the only purpose to be served by a trial … is harassment of the

27  defendant, he should be permitted to dismiss notwithstanding the fact that there is sufficient
    evidence of guilt, however weak, to sustain a conviction on appeal." (*Marin County*, 69 Cal. 2d

28  491 at 504.)

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1   apply with the same force for actions before trial as for ones during or after trial. (*People v.*

2   *Hatch* (2000) 22 Cal. 4th 260, 268.)[39]

3       **3.    Dismissal Is Appropriate in this Case, Given the Scope and Extent of the AGO's Misconduct.**

4

5         Dismissal is appropriate in this case because the AGO has violated Defendants'

constitutional and statutory rights at every step of its investigation and prosecution.

6

7         From the start, the AGO violated Defendants' due process rights by pursuing a criminal

action knowing it lacked the authority to do so.  The Attorney General admitted the State

8

9   lacked jurisdiction to investigate or prosecute Backpage and that Section 230 preempts state

criminal laws. (*See* Ex. B.)  It is a fundamental violation of due process to seek to prosecute

10

11   conduct that violates no state criminal laws. (*See* Sections III.A and III.B, *supra*.)

12         When the AGO proceeded nonetheless, it then sought and obtained search warrants by

making material misstatements and omissions in all the warrant applications. (*See* Section

13

14   III.A, *supra*).  Had the AGO been candid in the applications – *i.e.*, revealing AG Harris's

admission, the prior cases concerning Backpage, and Section 230's immunity for publishers'

15

16   activities and preemption of state criminal laws – magistrates would not have granted the

warrants, or, at least, would have pressed the AGO for an explanation of how its "pimping"

17

18   theory did not violate the law.  With a fair, objective presentation of the law and the evidence,

these judicial officers likely would have concluded – as this Court twice concluded – that the

19

20   warrants should not issue because the State's theory of criminal liability was precluded by

federal law.

21

22

23

24   [39] It is the Court's role to determine when there have been constitutional or statutory defects in a prosecution and to dismiss charges when that occurs. (*See Murgia v. Municipal Court* (1975) 15

25   Cal. 3d 286, 293 n.4 (court decides the issue of discriminatory prosecution, which "addresses itself to a constitutional defect in the institution of the prosecution") (quoting *United States v. Berrigan*

26   (3d Cir. 1973) 482 F.2d 171, 175); *People v. McGee* (1977) 19 Cal. 3d 948, 968 ("the question of a statutory defect in the institution of a prosecution … is properly resolved by the trial court"); *People*

27   *v. Betts* (2005) 34 Cal. 4th 1039, 1051-54 (the issue of territorial jurisdiction is to be decided by the

28   court).)

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

*(left margin, rotated)* DAVIS WRIGHT TREMAINE LLP

1    Thereafter, the AGO compounded its violations and prejudice to Defendants by failing

2 to provide notice as required by CalECPA.  As discussed, the AGO knew that CalECPA

3 required it to provide notice of its investigation and the warrants to Backpage and Defendants,

4 and should have done so no later than January 1, 2016.  (*See* Section III.C.2, *supra*.)  But the

5 AGO again violated the law – no fewer than eleven times – and did not disclose the warrants

6 until October 12, 2016, *after* it filed the first criminal complaint and arrested and incarcerated

7 Defendants.  The notice provision of CalECPA (Penal Code § 1546.2(a)) is not a technical

8 matter, it is the key part of the Act by which investigative targets and service providers can

9 enforce their rights and the rights of their users.  (*See* Section III.C.4, *supra*.)  Had Backpage

10 and Defendants received the notices CalECPA required, they could have moved to void the

11 warrants (Penal Code § 1546.4(c)) or sought to enjoin the AGO's investigation outright.  (*See,*

12 *e.g., Google, Inc. v. Hood* (S.D. Miss. 2015) 96 F. Supp. 3d 584, 596-600 (enjoining

13 Mississippi AG's investigation of Google as violating Section 230 and the First Amendment),

14 *vacated on procedural grounds* (5th Cir. 2016) 822 F.3d 212; *Lewellen v. Raff* (8th Cir. 1988)

15 843 F.2d 1103, 1109-10 ("A showing that a prosecution was brought in retaliation for or to

16 discourage the exercise of constitutional rights will justify an injunction *regardless* of whether

17 valid convictions conceivably could be obtained.") (emphasis in original) (internal quotation

18 marks omitted).)

19    Next, the AGO violated CalECPA by issuing subpoenas to third parties for electronic

20 communications information, contrary to the Act's express prohibition that subpoenas may not

21 be used for "the purpose of investigating or prosecuting a criminal offense." (Penal Code

22 § 1546.1(b)(4); *see* Section III.C.1, *supra*.)  Notably, the AGO propounded every one of the

23 eleven subpoenas at issue *after* Judge Bowman's December 9, 2016 Final Ruling rejecting the

24 AGO's charges and holding that its entire theory was precluded as a matter of law.  If the

25 AGO had proceeded by seeking warrants as CalECPA requires (and assuming the AGO had

26 been candid this time in disclosing the law and the facts), it would have had to reveal that

27 Judge Bowman held that AGO was foreclosed from prosecuting on the "pimping" theory

28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1   which was the premise for its demands for millions of records of data from Vantiv, JetPay,

2   American Express and others.  Presumably, no judicial officer would issue a search warrant

3   under such circumstances.  The AGO misused the subpoena process instead.

4           Finally, the AGO also violated the sealing requirements of CalECPA.  (Penal Code

5   § 1546.1(d)(2).)  It appears the AGO did not set aside or seal any information from the first 14

6   warrants, and, as discussed, its interpretation of CalECPA's sealing requirement would

7   eviscerate the law.  (*See* Section III.C.3, *supra.*)  Even assuming the warrants were not

8   otherwise invalid, if the AGO had at least set aside and sealed all information that did not

9   reflect evidence of pimping, it could not have used the information to come up with a new and

10  unrelated theory of prosecution (the bank fraud/money laundering charges), as it did.  Here

11  again, the AGO's violations were not technical flaws; they contravened core protections of

12  CalECPA and, indeed, were Fourth Amendment violations as well.  (*See* Sections III.C.4,

13  III.D, *supra.*)

14          Prosecutors such as the AGO have a heightened duty to act fairly and in furtherance of

15  justice.  (*See, e.g., Berger v. United States* (1935) 295 U.S. 78, 88 (while a prosecutor "may

16  strike hard blows, he is not at liberty to strike foul ones"); *United States v. Lopez-Avila* (9th

17  Cir. 2012) 678 F.3d 955, 964 ("Prosecutors, as servants of the law, are subject to constraints

18  and responsibilities that do not apply to other lawyers; they must serve truth and justice first.

19  Their job is not just to win, but to win fairly, staying within the rules.").)[40]  Prosecutors must

20  ensure that warrant affidavits are accurate, legally sufficient and not misleading.  (ABA Crim.

21  Justice Standards § 2.8(f).)  They may not intentionally misrepresent matters of law to a court

22

23  [40] *See also United States v. Goyal* (9th Cir. 2010) 629 F.3d 912:

24      [C]riminal law should clearly separate conduct that is criminal from conduct that
        is legal.  This is not only because of the dire consequences of a conviction … but
25      also because criminal law represents the community's sense of the type of
        behavior that merits the moral condemnation of society.  *When prosecutors have*
26      *to stretch the law or the evidence to secure a conviction, as they did here, it can*
        *hardly be said that such moral judgment is warranted.*
27

28  (*Id.* at 922 (Kozinski, J., concurring) (emphasis added) (citations omitted).)

64

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

1    (*id.* § 3-2.8(a)), and they cannot fail to disclose to a court legal authority adverse to the State's

2    position (*id.* § 3-2.8(d).)  The AGO may not use illegal means to obtain evidence (*id.* § 3-

3    3.1(c).)

4              The Constitution has long prohibited state officials' actions and threats when they have

5    no "expectation of securing valid convictions," but instead aim to "harass … and discourage"

6    the exercise of "constitutional rights." (*Dombrowski v. Pfister* (1965) 380 U.S. 479, 482.)

7    More specifically, the State's pursuit of Backpage and Defendants is an attack on a publisher

8    for third-party speech the AGO dislikes and plainly would like to censor, notwithstanding that

9    courts have held the speech and Backpage's publishing are constitutionally protected.  "[A]

10   public official who tries to shut down an avenue of expression of ideas and opinions through

11   actual or threatened imposition of government power or sanction is violating the First

12   Amendment." (*Backpage.com v. Dart*, 807 F.3d at 230; *see also Bantam Books, Inc. v.*

13   *Sullivan* (1963) 372 U.S. 58, 67 ("[T]he threat of invoking legal sanctions and other means of

14   coercion, persuasion, and intimidation … to achieve the suppression of publications deemed

15   'objectionable' … warrant[s] injunctive relief.").)

16             The AGO's actions have not been a fair prosecution of crimes properly alleged.  (*S.M.*,

17   9 Cal. App. 5th at 218.)  The AGO has repeatedly disregarded the law as well as its duties of

18   candor and objectivity.  The AGO has prejudiced Defendants and precluded them from

19   protecting their constitutional and statutory rights.  Dismissal is the appropriate remedy for

20   these reasons, but also to ensure the State is held to a proper standard of fair prosecution for

21   *all cases.*  The sanction of dismissal is not only for the "vindication of [a] defendant's rights,"

22   but to "serve[] as a potent deterrent to government misconduct." (*Velasco-Palacios*, 235 Cal.

23   App. 4th at 451; *see also Chapman*, 524 F.3d at 1085.)  Here, the AGO's pursuit of an

24   investigation and prosecution it was barred from bringing, its misrepresentations to courts, and

25   its near-complete disregard of CalECPA all should be deterred  The State should not be

26   allowed to disregard the law and pursue these sorts of tactics again.

27

28

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1

2

**F.     If the Court Does Grant Dismissal, It Should Order a *Franks* Hearing and Related Discovery As To Search Warrants Not Otherwise Void.**

3        For the reasons explained above, the Court should dismiss this case outright for

4   government misconduct.  If not that, the Court should enter an order voiding the warrants and

5   subpoenas the AGO obtained or executed in violation of CalECPA.  As to any remaining

6   warrants (or in the alternative if the Court does not otherwise invalidate warrants), Defendants

7   request that the Court hold an evidentiary hearing pursuant to *Franks v. Delaware* (1978) 438

8   U.S. 154, and require the AGO to provide discovery in advance of the hearing.

9        Defendants have, at the least, satisfied the *Franks* threshold step of making a

10  substantial preliminary showing that the AGO's warrant affidavits contained material

11  misrepresentations and omissions.  If the Court does not otherwise invalidate one or more of

12  the warrants, it should conduct a hearing to determine whether any such warrant, "purged of

13  [the] falsities and supplemented by the omissions," was nonetheless "sufficient to support a

14  finding of probable cause."  (*United States v. Stanert* (9th Cir. 1985) 762 F.2d 775, 782.)[41]  In

15  California, this is a "motion to traverse."  (*See, e.g.*, *People v. Scott* (2011) 52 Cal. 4th 452,

16  484.)  Defendants believe that such a hearing would establish that the AGO's affidavits

17  misrepresented the facts and the law intentionally or at least recklessly, so that the "warrant[s]

18  must be voided and the fruits of the search[es] excluded to the same extent as if probable cause

19  was lacking on the face of the affidavit.  (*Franks*, 438 U.S. at 156; *Bradford*, 15 Cal. 4th at

20  1297 (final probable cause determination should be made after *Franks* hearing).)

21        If the Court finds it appropriate to conduct an evidentiary hearing, it should require the

22  AGO to provide discovery to Defendants, to be able to obtain and assess evidence that may

23  controvert statements made in the warrant affidavits.  (*People v. Luttenberger* (1990) 50 Cal.

24  3d 1, 19; *see also People v. Hobbs* (1994) 7 Cal. 4th 948, 964-65; *People v. Navarro* (2006)

25

26

27

28

---

[41] Notably, "[a] deliberate or reckless omission by a government official who is not the affiant can be the basis for a *Franks* suppression."  (*United States v. DeLeon* (9th Cir. 1992) 979 F.2d 761, 764; *People v. Bradford* (1997) 15 Cal. 4th 1229, 1300 ("it is the rule that the police cannot insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity") (internal quotation marks omitted).)

66

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1    138 Cal. App. 4th 146, 165-66.)  The Court should also require the AGO to provide discovery

2    pursuant to Penal Code § 1054, *et seq.* concerning the State's actions relating to compliance

3    (or noncompliance) with CalECPA.

4    Before bringing this motion, Defendants issued an informal discovery request to the

5    AGO asking for, among other things, documents related to whether the AGO segregated and

6    sealed materials seized pursuant to its warrants and whether the AGO shared materials with

7    other state or federal law enforcement agencies  The AGO refused Defendants' request,

8    notwithstanding that the information is discoverable under Penal Code § 1054(e) (providing

9    for discovery pursuant to "other express statutory provisions, or as mandated by the

10   Constitution of the United States").)  CalECPA is a statutory provision, which, by its terms

11   and design, provides a basis for pretrial discovery.  Enforcement of the Act necessarily turns

12   on knowing what State authorities have done or failed to do.  If investigative targets or others

13   harmed by State authorities' disregard of CalECPA are precluded from discovery, the law

14   would be largely just a paper proscription.  (*See People v. Superior Court (Mouchaourab)*

15   (2000) 78 Cal. App. 4th 403, 426-430 (holding that Penal Code §§ 995 and 939.71 allowing

16   challenges to unfair conduct in grand jury proceedings are an "express statutory provision"

17   requiring pretrial discovery, even though there is no explicit mention of discovery in the

18   statutes).  "It defies common sense to think that the Legislature intended to provide rights

19   under these statutes but at the same time denied [a] defendant any means to enforce those

20   rights."  (*Id.* at 428.)  The same is true of CalECPA, which created a new regime to protect

21   privacy rights for online information and to strictly limit government access to such

22   information.  Here too, it defies common sense to suggest the Legislature created important

23   privacy protections and government restrictions while denying to defendants, investigative

24   targets, service providers and others any means to enforce CalECPA by discovery to show

25   violations of those rights.

26   Discovery here is also authorized under § 1054(e) because the U.S. Constitution

27   requires that a defendant be given access to information that could allow him to assert and win

28

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

1  a suppression motion.  As the Ninth Circuit has explained, "The suppression of material

2  evidence helpful to the accused, whether at trial or on a motion to suppress, violates due

3  process if there is a reasonable probability that, had the evidence been disclosed, the result of

4  the proceeding would have been different."  (*United States v. Gamez-Orduno* (9th Cir. 2000)

5  235 F.3d 453, 461 (citing *Brady v. Maryland* (1963) 373 U.S. 83, 87); *see also Murgia v.*

6  *Municipal Court* (1975) 15 Cal. 3d 286,  305 (allowing discovery on defendant's claim of

7  discriminatory prosecution).)

## IV.    CONCLUSION

9          The AGO's conduct throughout its five-year pursuit of Backpage and Defendants

10  warrants dismissal of this case and all charges.  The State has violated California law and the

11  Constitution in so many respects that no other relief would fully remedy the prejudice caused

12  to Defendants or the harm done to the justice system if tactics of the sort the AGO has used

13  are not condemned and disallowed.  Under CalECPA alone, fourteen of the AGO's search

14  warrants and nine of its subpoenas should be declared void and all resultant evidence should

15  be destroyed and suppressed.  Under the Constitution, the AGO's prosecution amounts

16  improper retaliation against an online publisher, as well as persistent disregard of due process

17  and Fourth Amendment rights.

18

19  DATED:  March 5, 2018                        Respectfully submitted,

20                                                              DAVIS WRIGHT TREMAINE LLP

21

22                                                              By: _____

23                                                                     James C. Grant

24                                                              Counsel for Defendants Michael Lacey and James
                                                                 Larkin and for Backpage.com, LLC
25

26

27

28

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013

DAVIS WRIGHT TREMAINE LLP

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury under the laws of the state of California that on this date, I arranged to be served a true and correct copy of the *Motion to Dismiss for Government Misconduct and to Void Warrants and Subpoenas and Suppress Evidence for Violations of the California Electronic Communications Privacy Act and the California and U.S. Constitutions* on counsel of record as follows:

*Via Hand Delivery and E-mail:*

Randy Mailman
1300 I St., Suite 125
PO Box 944255
Sacramento, CA 94244-2550

Executed this 5th day of March, 2018, at Seattle, Washington.

DAVIS WRIGHT TREMAINE LLP

By: _____
James C. Grant

69

MOTION TO DISMISS, VOID WARRANTS, SUPPRESS EVIDENCE, Case No. 16FE024013