Paul J. Cambria, Jr. (Cal. Bar No. 177957)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite #120
Buffalo, New York 14202
Telephone:    (716) 849-1333
Facsimile:    (716) 855-1580
Email:        pcambria@lglaw.com
              emccampbell@lglaw.com

*Counsel for Defendant Michael Lacey*

Thomas H. Bienert, Jr. (Cal. Bar No. 135311)
Kenneth M. Miller (Cal. Bar No. 151874)
John L. Littrell (Cal. Bar No. 221601)
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone:    (949) 369-3700
Facsimile:    (949) 369-3701
Email:        tbienert@bmkattorneys.com
              kmiller@bmkattorneys.com
              jlittrell@bmkattorneys.com

*Counsel for Defendant James Larkin*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-18-00422-PHX-SPL (BSB) |
|---|---|
| Plaintiff, | **OPPOSITION TO UNITED STATES' MOTION TO DISQUALIFY COUNSEL** |
| v. | |
| Michael Lacey, et al., | **Oral argument requested** |
| Defendants. | |

1

## TABLE OF CONTENTS

2

Page

3  TABLE OF AUTHORITIES ....................................................................................ii

4  I.      INTRODUCTION .................................................................................... 1

5  II.     BACKGROUND ....................................................................................... 3

6          A.    Overview of DWT's Representation of Backpage ............................ 3

7          B.    Agreements Among Backpage Parties for DWT's Joint Representation ................... 6

8          C.    Ferrer's Plea Agreements and Communications With the Government
                 Concerning DWT's Representation ............................................ 8

9          D.    The Government's Motion and Revelations that Ferrer Had Waived All
10               Claims of Attorney-Client Privilege ........................................ 9

11 III.    ARGUMENT ........................................................................................... 11

12         A.    Under the Sixth Amendment and Arizona Law, the Court Should Not
                 Disqualify Defendants' Counsel on a Prosecutor's Motion Except in Extreme
13               Circumstances ....................................................................... 11

14         B.    Ferrer Gave Informed Consent to DWT's Joint Representation and Conflict
15               Waivers, and He Agreed Not to Seek Disqualification ..................... 12

16         C.    Ferrer's Guilty Pleas and Agreement to Cooperate With the Government
                 Precludes the Government's Disqualification Motion ...................... 16

17         D.    Ferrer Has Waived All Claims to Protect Prior Confidential Privileged
18               Communications ................................................................... 18

19         E.    All Factors to Consider Regarding a Disqualification Motion Favor Denial of
                 the Government's Motion ........................................................ 20

20 IV.     CONCLUSION ........................................................................................ 23

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3  **Federal Cases**

4  *Almeida. Murdoch v. Castro*,

5      365 F.3d 688 (9th Cir. 2004)...............................................................................18

6  *Backpage.com, LLC v. Cooper*,

7      939 F. Supp. 2d 805 (M.D. Tenn. 2013) ................................................................4

8  *Backpage.com, LLC v. Dart*,

      807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016) ..............................4

9  *Backpage.com, LLC v. Hawley*,

10      2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) ........................................................5

11  *Backpage.com, LLC v. Hoffman*,

12      2013 WL 4502097 (D.N.J. Aug. 20, 2013) ..............................................................4

13  *Backpage.com, LLC v. McKenna*,

      881 F. Supp. 2d 1262 (W.D. Wash. 2012) ...............................................................4

14  *Doe ex. Rel. Roe v. Backpage.com, LLC*,

15      104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir.

16      2016), *cert. denied*, 137 S. Ct. 622 (2017) ..............................................................5

17  *In re Grand Jury Subpoena No. 16-04-108*

18      (D. Ariz.) ................................................................................................................5

19  *In re Grand Jury Subpoenas to Backpage.com, LLC and Village Voice
        Media Holdings, LLC*,

20      No. GJ12-172RAJ (W.D. Wash. Jan. 17, 2013) .......................................................4

21  *In re Paradyne Corp.*,

22      803 F.2d 604 (11th Cir. 1986)...............................................................................22

23  *In re Shared Memory Graphics LLC*,

      659 F.3d 1336 (Fed. Cir. 2011)..............................................................................14

24

25  *In Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement &
        Power Dist.*,

26      810 F. Supp. 2d 929 (D. Ariz. 2011).................................................................6, 12

27  *Lorenzana-Cordon*, 125 F. Supp. 3d at 136 ................................................................22

28

*Norton v. Tallahassee Mem'l Hosp.*,
   689 F.2d 938 (11th Cir.1982) ............................................................11

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*,
   760 F.2d 1045 (9th Cir.1985) ...........................................................11

*Powell v. Alabama*,
   287 U.S. 45, 52 S. Ct. 55, 77 L. Ed. 158 (1932) ..............................11

*Research Corp. Techs. v. Hewlett-Packard Co.*,
   936 F. Supp. 697 (D. Ariz. 1996) ................................................20, 21

*Richards v. Holsum Bakery, Inc.*,
   2009 WL 3740725 (D. Ariz. Nov. 5, 2009) ......................................20

*Sandoval v. Corizon, L.L.C.*,
   2017 WL 2687626 (D. Ariz. June 22, 2017) .....................................21

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
   856 F.3d 1080 (D.C. Cir. 2017) ..........................................................5

*United States v. Alfonso-Reyes*,
   592 F.3d 280 (1st Cir. 2010) .......................................................16, 20

*United States v. Almeida*,
   341 F.3d 1318 (11th Cir. 2003) ..............................................17, 18, 20

*United States v. Caramadre*,
   892 F. Supp. 2d 397 (D. R.I. 2012) ..............................................6, 15

*United States v. Cheshire*,
   707 F. Supp. 235 (M.D. La. 1989) ....................................................16

*United States v. Diozzi*,
   807 F.2d 10 (1st Cir. 1986) ...............................................................11

*United States v. Gonzales-Lopez*,
   548 U.S. 140, 126 S. Ct. 2557, 165 L.Ed.2d 409 (2006) .................3, 11

*United States v. Henke*,
   222 F.3d 633 (9th Cir. 2000) .............................................................16

*United States v. Moscony*,
   927 F.2d 742 (3d Cir. 1991) .......................................................16, 20

*United States v. Renda*,
   669 F. Supp. 1544 (D. Kan. 1987) ....................................................22

iii

*United States v. Ross*,
  33 F.3d 1507 (11th Cir. 1994)...............................................................16, 20

*United States v. Washington*,
  797 F.2d 1461 (9th Cir. 1986)......................................................................12

*United States v. Williams*,
  81 F.3d 1321 (4th Cir. 1996)........................................................................16

*United States v. Wings*,
  2007 WL 9676968 (N.D. Ga. Aug. 10, 2007) ............................................18

*Welch v. Paicos*,
  26 F. Supp. 2d 244 (D. Mass. 1998) ...........................................................15

*Wheat v. United States*,
  486 U.S. 153, 108 S. Ct. 1692, 100 L.Ed.2d 140 (1988)............................11

**State Cases**

*Alexander v. Superior Court*,
  141 Ariz. 157, 685 P.2d 1309 (1984).................................................. *passim*

*Amparano v. ASARCO, Inc.*,
  208 Ariz. 370, 93 P.3d 1086 (2004)......................................................12, 22

*Gomez v. Superior Court*,
  149 Ariz. 223, 717 P.2d 902 (1986).............................................................12

*Knapp v. Hardy*,
  111 Ariz. 107, 523 P.2d 1308 (1974)...............................................3, 12, 21

*People v. Ferrer*,
  No. 16FE019224, 2016 WL 72373505 (Cal. Super. Ct. Dec. 9, 2016).......6

*People v. Ferrer*,
  No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017).......................................6

*Rodriguez v. State*,
  129 Ariz. 67 (1981) ......................................................................................12

*Sellers v. Superior Court*,
  154 Ariz. 281 (Ariz. Ct. App.1987) .............................................................23

*Villalpando v.* Reagan, 211 Ariz. 305, 308, 121 P.3d 172 (2005) ....................12

iv

**Federal Statutes**

18 U.S.C. § 371 ................................................................................................ 8, 9

18 U.S.C. § 1956(h) ............................................................................................... 8

47 U.S.C. § 230 ...................................................................................................... 4

**Rules**

RPC 1.7(b) ........................................................................................................... 14

RPC 1.7 cmt. 21 ............................................................................................... 14, 15

RPC 1.9(a) ........................................................................................................ 14, 19

Rule 1.7 ............................................................................................................ 13, 14

Rule 1.9 ....................................................................................................... 13, 15, 20

**Constitutional Provisions**

Fifth Amendment ................................................................................................. 11

Sixth Amendment ...................................................................................... 3, 11, 22

**Other Authorities**

AM. LAW INSTITUTE – AM. BAR ASS'N, TRIAL EVIDENCE IN FEDERAL
    COURTS: PROBLEMS & SOLUTIONS at 35 (1999) ....................................... 15

John W. Strong, MCCORMICK ON EVIDENCE § 91 (5th ed. 1999) ................... 17

OF THE LAW GOVERNING LAWYERS, § 122 cmt. D (2000) ............................ 14

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 cmt. f &
    illust. 7 (2000) .............................................................................................. 14

1

## I.      INTRODUCTION

2    The government has moved to disqualify Davis Wright Tremaine LLP ("DWT")

3 from representing James Larkin and Michael Lacey in this action.  (Doc. 118; "Mot.").

4 The government contends DWT should be disqualified because Carl Ferrer (who was

5 the CEO and later the owner of Backpage.com, LLC) has pleaded guilty and agreed to

6 cooperate with the government in its prosecution of Messrs. Larkin and Lacey and

7 others associated with Backpage.com.  The government's motion is based on

8 misinformation about DWT's past representation of Backpage parties and their express

9 agreements requesting joint representation and waiving conflicts.  The motion is also

10 based on a facile view of the law concerning the circumstances when disqualification is

11 required.  The government's motion falls well short of satisfying its burden of showing

12 that this is one of the few "extreme circumstances" in which "a party to a lawsuit" –

13 here, the government – may "be allowed to interfere with the attorney-client relationship

14 of his opponent."  *Alexander v. Superior Court*, 141 Ariz. 157, 161, 685 P.2d 1309

15 (1984).

16    DWT has represented Backpage[1] in a number of cases dating back to 2012,

17 focusing on First Amendment and Internet free speech issues, for which the firm and its

18 lawyers are nationally recognized.  DWT has represented the Backpage parties

19 collectively; Mr. Ferrer has had separate counsel representing him personally regarding

20 potential criminal liability.  DWT's representation of the Backpage parties has been

21 pursuant to agreements among the parties that anticipated and addressed potential

22 conflicts and that provided DWT could continue its representation even if a party – such

23 as Mr. Ferrer – decided to withdraw from the joint representation agreements.

24

25 _____

26 [1] As used herein, "Backpage.com" refers to the website and Backpage.com, LLC, the
company that operated the site.  "Backpage" or the "Backpage parties" refers collectively
27 to all of the entities and individuals that have been sued or charged concerning the
website or have brought suit to invalidate government actions against the website.
28

Given the *actual* circumstances regarding DWT's representation, viewed in light of the *applicable* law, the government's motion should be rejected for several reasons.

***First***, in the parties' agreements, Mr. Ferrer requested and gave his informed consent to DWT's joint representation, waived any conflicts, and promised not to seek disqualification of DWT for its continued representation of other parties. These agreements are consistent with and enforceable under Arizona Rules of Professional Conduct ("RPC") 1.7 and 1.9.

***Second***, having agreed to plead guilty and cooperate with the government, Ferrer cannot assert that DWT's prior joint representation requires disqualification now. Courts have held that when a party turns state's evidence and attempts to target others in an effort to avoid or reduce his own punishment, he can no longer claim confidences as to communications with former joint counsel as a means to disqualify the counsel.

***Third***, Ferrer cannot assert that prior communications with DWT under the parties' joint representation agreements are somehow personal confidences of Mr. Ferrer that require DWT's disqualification. The agreements allowed that all confidential and privileged communications could be shared among Ferrer, Lacey, Larkin and other Backpage parties (while being protected from disclosure to third parties).

***Fourth***, Ferrer cannot claim DWT's continued representation would contradict duties of confidentiality, given that he has expressly waived all claims of attorney-client privilege or work product protections (to full extent he can) as part of his plea deal. As courts have recognized, disqualification is improper in the face of such waivers.

***Finally***, the balancing of the parties' interests tips sharply in favor of the rights of defendants to have their chosen counsel. The government has not shown it will suffer "substantial and irreparable harm" from DWT's continued involvement. On the other hand, Lacey and Larkin would be prejudiced if they cannot continue with DWT, given the firm's institutional knowledge, DWT's successful representation in Backpage cases, the parties' prior agreement to allow this representation, and the substantial burden and costs of having to engage new First Amendment counsel (especially given that the

government has seized all of Lacey's and Larkin's assets, precluding retention of new counsel).  Lacey and Larkin are represented here by their own individual criminal counsel (the undersigned).  DWT's role will be (as it has been) to address issues concerning the First Amendment, free speech and protections for Internet providers and users, and *not* as trial counsel.  Even if there were a conflict, this is a reasonable alternative as compared to the Draconian approach of disqualification.

The Sixth Amendment guarantees an accused's right to be "defended by the counsel he believes is best."  *United States v. Gonzales-Lopez*, 548 U.S. 140, 146 n.2, 126 S. Ct. 2557, 165 L.Ed.2d 409 (2006).  As the Arizona Supreme Court has recognized, a prosecutor's motion to disqualify defendants' counsel is "unseemly" and "strike[s] at the very heart of the adversary system," and, accordingly, prosecutors have "no standing to object to who will or will not represent the defendant or be associated as counsel."  *Knapp v. Hardy*, 111 Ariz. 107, 112, 523 P.2d 1308 (1974) (internal quotations omitted).  Here, the government purports to be protecting Ferrer's interests, yet acknowledges that he has refused to join in a motion to disqualify DWT (perhaps because of his agreements barring such a challenge).  The government's only remaining purported justification – its asserted concern for the "integrity of the trial" – fails in comparison to defendants' Sixth Amendment rights.  Indeed, even without showing prejudice, a wrongful disqualification of defendants' choice of counsel would require automatic reversal.

## II.    BACKGROUND

### A.    Overview of DWT's Representation of Backpage

DWT has represented Backpage in several cases dating back to 2012, concerning public officials' censorship efforts; civil damage suits; government investigations; and ultimately criminal charges attacking the website.  Village Voice Media Holdings, LLC

1    (("VVMH"); Backpage.com's then-parent company)) retained DWT for its recognized

2    expertise on First Amendment and Internet issues.[2]

3            For example, DWT represented Backpage.com in three cases involving state

4    laws that created felony crimes targeting Backpage.com for third-party ads on the site,

5    successfully enjoining all three statutes as contrary to the First Amendment and Section

6    230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230").  *See*

7    *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012);

8    *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013);

9    *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013).[3]

10           DWT represented Backpage.com in an action against the Sheriff of Cook

11   County, Illinois, after he "embarked on a campaign to … crush Backpage" by making

12   threats to Visa and MasterCard to terminate use of their cards on the website.

13   *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015), *cert. denied*, 137 S. Ct.

14   46 (2016).  In that case, the Seventh Circuit entered a preliminary injunction, holding

15   that the Sheriff had affected an unconstitutional informal prior restraint.  *Id.*

16           DWT has represented Backpage regarding government investigations and

17   subpoenas.  DWT participated in suits challenging subpoenas issued by the United

18   States Senate Permanent Subcommittee on Investigations ("PSI") and by the Attorney

19   General of Missouri.  *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856

20   F.3d 1080 (D.C. Cir. 2017); *Backpage.com, LLC v. Hawley*, 2017 WL 5726868 (E.D.

---

21

22   [2] *See, e.g.*, *Best Law Firms for Litigation – First Amendment*, U.S. NEWS & WORLD
23   REP., https://bestlawfirms.usnews.com/search.aspx?practice_area_id=54&page=1 (last
     visited June 6, 2018); *Practice Groups of the Year – Media and Entertainment*, LAW
24   360, https://www.law360.com/rankings/practice-groups-of-the-
     year?q=tag%3A%22Media+%26+Entertainment%22 (last visited June 6, 2018).
25   .

26   [3] DWT also successfully represented Backpage in grand jury proceedings in the Western
27   District of Washington on First Amendment grounds.  Because the government has
     objected to descriptions of this litigation in publicly filed documents, further description
28   of this litigation may be provided at the hearing on this matter, *in camera*, if necessary.

Mo. Nov. 28, 2017).  The subpoenas in these cases sought records of Backpage.com, although they were nominally directed to Ferrer in his capacity as Chief Executive Officer ("CEO").  DWT therefore appeared on behalf of Ferrer in order to represent the company.  The same is true of DWT's later involvement with a grand jury subpoena in this district.  *In re Grand Jury Subpoena No. 16-04-108* (D. Ariz.).  DWT appeared on behalf of Ferrer there because the subpoena sought documents from Backpage.com and merely named Ferrer as a representative and custodian of Backpage.com.

DWT has represented Backpage in civil cases, including, for example, *Doe ex. Rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017).  There, the district court and the First Circuit dismissed all claims against Backpage as preempted by Section 230 and because the plaintiffs' allegations about the website could not establish "affirmative participation in an illegal venture."  *Id*. at 157.  More recently, in the last year, plaintiffs' counsel have brought a dozen cases asserting individual plaintiffs' claims, naming as defendants every company with any connection to the website and Messrs. Ferrer, Larkin and Lacey.  Along with local counsel, DWT appeared in the cases on behalf of all Backpage parties.  *See* Mot. at 4-5 (citing several of these cases).

In October 2016, the California Attorney General's office brought criminal charges against Ferrer, Larkin and Lacey.  DWT represented all defendants jointly, while each was represented individually by his own personal counsel.  In the California proceedings, DWT twice filed successful demurrers, with two judges dismissing all charges alleging pimping or money laundering on the theory that the defendants knowingly "profited from prostitution."  *People v. Ferrer*, No. 16FE019224, 2016 WL 72373505, at *9 (Cal. Super. Ct. Dec. 9, 2016); *see also* Order, *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017).  The courts held that "charg[ing] money

for the placement of advertisements" and "[p]roviding a forum for online publishing is a recognized legal purpose" under California law and Section 230.  *Id.*at 13.[4]

**B.    Agreements Among Backpage Parties for DWT's Joint Representation.**

As noted, Backpage.com formerly was a subsidiary of VVMH; the website was sold to entities owned by Ferrer in April 2015.  *See* Declaration of James C. Grant ¶ 5 ("Grant Decl.").  Prior to the sale, DWT represented Backpage corporate entities (*e.g.*, Backpage.com and VVMH), as the website and companies were under common ownership.  *Id.*  Ferrer was employed by Backpage.com (as a vice president and later as CEO), and DWT worked with him as a representative of the company.  After the sale, DWT represented Backpage parties collectively pursuant to joint representation agreements and continued to work with Ferrer in the same representative role as before, as Backpage.com CEO.  Since October 2016, when claims were first asserted against Ferrer, Lacey and Larkin as individuals (in the California criminal proceeding), each has had separate counsel regarding potential personal liability, while DWT has worked with these counsel pursuant to joint defense agreements.  *Id.* ¶ 7.

Because the agreements about DWT's representation are privileged, they are provided *in camera* declaration and are described here only generally.[5]

Shortly after the California Attorney General ("AG") brought criminal charges against Ferrer, Larkin and Lacey, the parties entered into agreements for DWT's joint representation.  These included an engagement agreement between DWT and Messrs. Ferrer, Larkin and Lacey (dated December 12, 2016), and a more comprehensive

───────────────────

[4] DWT withdrew as counsel for Ferrer on January 24, 2018, while remaining as counsel for Larkin and Lacey and continuing to work with Ferrer and his counsel under the joint defense agreement ("JDA").

[5] Case law makes clear that it is appropriate to submit information *in camera* for a motion to disqualify.  *In Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F. Supp. 2d 929 (D. Ariz. 2011); *United States v. Caramadre*, 892 F. Supp. 2d 397, 401, 404 n.7 (D. R.I. 2012).

Common Interest and Litigation Management Agreement (dated December 31, 2016), executed by the three individuals on behalf of themselves and the Backpage-related companies they respectively controlled (*i.e.*, all of the Backpage parties). *See* Grant Decl. Exs. A, B (filed *in camera*). These agreements recognized that the parties shared interests in defending claims related to Backpage.com. They spelled out the parties' undertakings to retain joint counsel, share confidential information, and waive potential conflicts of interest. These agreements requested that DWT act as joint counsel – given the firm's experience and prior successful representation of Backpage on First Amendment and Internet free speech issues. *See* Grant Decl. ¶ 15. As to any claims – civil or criminal, whether then pending or that might arise in the future – Ferrer agreed to waive any actual or potential conflicts of interest to allow for the joint representation. *Id.* ¶ 16. Ferrer and the other parties agreed they would share information with one another and with joint counsel such as DWT, including attorney-client communications and work product, with the understanding that doing so would not provide any basis to assert putative conflicts. *Id.* ¶ 18. The agreements contemplated that the parties' interests could diverge in the future, and therefore allowed that a party could withdraw from the joint representation but could not move to disqualify counsel from continuing to represent other parties. *See id.* ¶ 19. The agreements recited that each party had the opportunity to consult with individual counsel. *Id.* ¶ 11. Ferrer was personally represented by Nanci Clarence of Clarence Dyer Cohen LLP at the time – and therefore accepted the agreements with fully informed consent. *Id.* ¶ 7, 10.

Thereafter, in June 2017, Ferrer, Larkin, Lacey and others entered into a joint defense agreement ("JDA"),[6] providing for sharing of information and conflict waivers

---

[6] It is important to understand the distinction between joint representation (or "common interest") agreements and joint defense agreements, as reflected here and in the law. Joint representation agreements are ones in which multiple parties hire the same counsel to represent their interests jointly. *See, e.g.*, *Alexander*, 141 Ariz. at 162 (referring to this as "simultaneous representation"). JDAs are agreements among multiple parties and their respective counsel to work together and share information to advance common

among the parties and their counsel in connection with the California criminal case or other proceedings (the parties were aware by then that the government had commenced a grand jury investigation in this district).  *See* Grant Decl. Ex. C (*in camera*).  In the JDA, Ferrer again agreed not to seek disqualification of counsel even if he should withdraw from the agreement.  Grant Decl. ¶ 24.  Here, as well, Ferrer was separately represented by Ms. Clarence, and it was acknowledged that DWT was encompassed within the joint defense undertakings and protections.  *Id.* ¶ 21.

> **C.**     **Ferrer's Plea Agreements and Communications With the Government Concerning DWT's Representation.**

On April 5, 2018, Ferrer entered a personal guilty plea in this district to one count of conspiracy (18 U.S.C. § 371) and entered a plea on behalf of Backpage.com (and other Backpage parties he controls) to one count of money laundering (18 U.S.C. § 1956(h)), committing to cooperate with the government in its prosecution of others, including Messrs. Lacey and Larkin.  *See United States v. Ferrer*, No. CR 18-464-PHX-DJH (Dkt. 7).  DWT had no involvement in Ferrer's pleas (or any knowledge of them until a week after they were entered); Ferrer was represented by his personal counsel, Ms. Clarence.  Grant Decl. ¶ 26.

On April 6, 2018, the government filed an indictment against Messrs. Larkin and Lacey and five other individuals who had been employed by or associated with Backpage.com, charging various crimes under the Travel Act and federal money laundering statutes (18 U.S.C. §§ 371, 1952, 1956, 1957).

Also on April 6, DWT received a letter from Mr. Ferrer indicating that he would no longer waive conflicts of interest as to DWT's joint representation.  Grant Decl. ¶ 27 & Ex. D (*in camera*).  Three days later, other counsel (Mike Piccarreta, counsel for Andrew Padilla) received a mailed letter from Mr. Ferrer's counsel stating that he was withdrawing from the JDA.  *Id.* ¶ 28 & Ex. E (*in camera*).

---

defenses of claims or charges.  This case involves both types of agreements.  *See* Grant Decl. Exs. A, B (joint representation agreements), & C (JDA).

Given Ferrer's stated positions, on April 13, DWT gave notice that the firm could no longer represent him or Backpage.com in grand jury proceedings in this district. *Id.* ¶ 29 & Ex. F. DWT also received a letter from Ferrer that day, in which he asserted that an "incurable conflict" had arisen as to DWT's representation of Larkin and Lacey and claimed his prior "informed consent" "would be no longer valid." *Id.* ¶ 30 & Ex. G. Although the government has said it has not been privy to any of the agreements or communications between Ferrer and the other Backpage parties, *see id.* Ex. K at 2, 4, it provided a copy of this letter with its motion. *See* Mot. Ex. A.

By letter dated April 20, DWT informed Ferrer that it would be withdrawing from representation of him and all Backpage.com parties (*i.e.*, companies controlled by Ferrer) in all civil cases. *See* Grant Decl. Ex. H (also Mot. Ex. U). DWT followed that with a letter on May 2, 2018, correcting assertions Mr. Ferrer had made (*e.g.*, in his April 6 and 13 letters), and noting that he had ignored or mischaracterized express terms of the joint representation agreements and the JDA in which he had requested and agreed to DWT's joint representation, waived conflicts, and agreed not to seek disqualification of DWT. *Id.* ¶ 32 & Ex. I.

### D.   The Government's Motion and Revelations that Ferrer Had Waived All Claims of Attorney-Client Privilege.

The government correctly notes that the parties had a meet-and-confer call on April 25, 2018, in which defendants' counsel asked then to defer any motion so the parties could attempt to resolve issues, and the United States Attorneys Office ("USAO") refused to do so. *See* Mot. at 2. The government filed its disqualification motion hours after the call.

The government's motion focuses on alleged harm to Mr. Ferrer's interests if former counsel were to use personal privileged information disclosed in prior representation. *See* Mot. at 9-14. However, after the government filed its motion, defendants' counsel learned that Ferrer had waived all claims of attorney-client privilege or work product protection for communications with DWT or other counsel. The government first revealed this, in part, on May 3, 2018, providing a copy of Mr. Ferrer's

Waiver of Attorney-Client Privilege, which he had signed on April 5, 2018, three weeks before the government's motion.  Grant Decl. Ex. J.  The USAO asserted then that Ferrer had executed only a "waiver of the *corporate* attorney-client privilege" but had "not waived his *individual* attorney-client privilege, as to either his current criminal defense attorneys or to the prior attorneys who represented him on an individual basis. " *Id.* Ex. J, at 1 (emphasis in original).  When defense counsel pressed, the government disclosed Ferrer's "Proffer/Interview Agreement" (also signed April 5, 2018), which waived all of his rights to assert privilege claims as to any counsel who represented him in his personal capacity or as a representative of Backpage.com (excepting only Ms. Clarence and her firm).  *Id.* Ex. K, at 5.[7]

The government's motion also asserted that Ferrer "does *not* consent to [DWT's] representation of Lacey and Larkin."  Mot. at 2 (emphasis in original).  Three weeks later, however, the government indicated Ferrer did *not* seek to disqualify DWT and refused to join the government's motion to do so.  Grant Decl. Ex. K at 4 ("Mr. Ferrer did not wish to be a party to this motion"; "the United States filed the motion on its own behalf, in the interest of protecting the integrity of the trial").

Defendants' counsel repeatedly asked the government to provide information about Mr. Ferrer's privilege waivers and his communications with the government, as such information would be relevant to the government's motion.  *See* Grant Decl. ¶ 36 & Exs. L, M.  The government declined defendants' requests.

---

[7] The Proffer/Interview Agreement states:  "Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC as to any communications with any attorney or law firm that represented Backpage.com or any related entity.  This waiver does not apply to Mr. Ferrer's current attorneys, Nanci Clarence and Jonathan Baum and anyone working on their behalf."  Grant Decl. Ex. K, at 5.

10

### III.   ARGUMENT

**A.   Under the Sixth Amendment and Arizona Law, the Court Should Not Disqualify Defendants' Counsel on a Prosecutor's Motion Except in Extreme Circumstances.**

The Sixth Amendment guarantees the right of non-indigent defendants to choose who will represent them, *i.e.*, "that the accused be defended by the counsel he believes to be best." *Gonzalez-Lopez*, 548 U.S. at 146.  "The right to select counsel of one's choice … has been regarded as the root meaning of the constitutional guarantee." *Id.* at 147-48; *see also Powell v. Alabama*, 287 U.S. 45, 53, 52 S. Ct. 55, 77 L. Ed. 158 (1932) (Fifth Amendment due process guarantees protect a defendant's "fair opportunity to secure counsel of his own choice").  "Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Gonzalez-Lopez*, 548 U.S. at 148. Such a denial of the right to counsel of choice requires automatic reversal.

Courts have "warned that disqualification of defense counsel should be a measure of last resort." *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986); *see also Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir.1982) (A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly."); As the Ninth Circuit has noted, disqualification motions are subject to "'particularly strict judicial scrutiny'" because of potential abuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1379 (S.D.N.Y. 1978)); *see also, e.g.*, *Wheat v. United States*, 486 U.S. 153, 163, 108 S. Ct. 1692, 100 L.Ed.2d 140 (1988) ("the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side").  Thus, in moving to disqualify a defendant's chosen counsel, "the government bears a heavy burden of establishing" that disqualification is justified.  *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986).

Arizona law, which governs the Court's consideration of the present motion, *see Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011), is to the same effect. The Arizona RPC warn that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* at 944 (quoting Ariz. RPC, Preamble ¶ 20). The Arizona Supreme Court "view[s] with suspicion motions by opposing counsel to disqualify a party's attorney based upon conflict of interest" and places particular emphasis on the "public suspicion regarding an attempt by the state to disqualify a defendant's attorney." *Gomez v. Superior Court*, 149 Ariz. 223, 226, 717 P.2d 902 (1986); *Villalpando v.* Reagan, 211 Ariz. 305, 308, 121 P.3d 172 (2005) (same); *Amparano v. ASARCO, Inc.,* 208 Ariz. 370, 376, 93 P.3d 1086 (2004) (RPC "are not designed to be used as a means to disqualify counsel"). Under Arizona law, the prosecution "has no standing to object as to who will or will not represent the defendant or be associated as counsel." *Knapp*, 111 Ariz. at 112. "Not only does this strike at the very heart of the adversary system, but 'for the prosecution to participate in the selection or rejection of its opposing counsel is unseemly if for no other reason than the distasteful impression which could be conveyed.'" *Id.* (quoting *State v. Madrid*, 105 Ariz. 534, 535, 468 P.2d 561 (1970)); *accord Rodriguez v. State*, 129 Ariz. 67, 70 (1981).

Thus, "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent" and the burden falls on "moving party to show sufficient reason why an attorney should be disqualified from representing his client." *Alexander*, 141 Ariz. at 161; *accord Roosevelt*, 810 F. Supp. 2d at 944. As shown below, the government fails to satisfy its burden here.

**B.     Ferrer Gave Informed Consent to DWT's Joint Representation and Conflict Waivers, and He Agreed Not to Seek Disqualification.**

The government bases its motion on RPC 1.9 and 1.7, Mot. at 8-9, but misunderstands the rules and their application on the facts of this case.

Rule 1.9 concerns a lawyer's responsibilities to former clients, and, more specifically, seeks to protect subsequent disclosure or use of a former client's

confidential information.  *See* RPC 1.9(a), 1.9(c).[8]  Rule 1.7, on the other hand, deals with a lawyer's duties to current clients and addresses whether representation would be "materially limited" by responsibilities to another current client or former client.[9]  Here, Lacey and Larkin are the current clients, and they not only accede to DWT's continued representation but are the ones opposing the government's motion to disqualify.  The government cannot plausibly claim that it is protecting Lacey and Larkin's interests under Rule 1.7.

_____

[8] Rule 1.9 provides in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. …

> (c) A lawyer who has formerly represented a client in a matter shall not thereafter:

>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

[9] Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if: …

>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if each affected client gives informed consent, confirmed in writing, and:

>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

>> (2) the representation is not prohibited by law; and

>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

13

Regardless, both rules provide that a lawyer may continue representation when clients have provided "informed consent, confirmed in writing."  RPC 1.9(a); *cf.* RPC 1.7(b).  Ferrer did so here.  He cannot retroactively "extinguish" his consent and conflict waivers, *see* Grant Decl. Exs. D, F, and the government cannot override Ferrer's agreements on the premise of "protecting the integrity of the court."  *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 cmt. f & illust. 7 (2000) (revoking consent to the client's own representation does not prevent the lawyer from continuing to represent other clients who have been jointly represented where revocation was not because of actions of the lawyer or former jointly-represented clients and material detriment to them would result).

Ferrer and the other parties requested and agreed to DWT's joint representation to efficiently address issues and advance positions shared among all parties.  *See* Grant Decl. Exs. A, B.  The "rules of professional legal conduct recognize that in certain circumstances it is not only proper but beneficial for parties to contractually consent to a waiver of future conflicts of interest."  *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1341 (Fed. Cir. 2011); *see* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 122 cmt. D (2000) ("[T]he gains to both lawyer and client from … advance consent to defined future conflicts might be substantial."); RPC 1.7 cmt. 21 (recognizing appropriateness of parties jointly contracting counsel and entering into advance conflict waivers).  The Arizona Supreme Court likewise recognizes the value of permitting and encouraging joint representation, as such arrangements can reduce legal fees, avoid conflicts, and present a united front.  *Alexander*, 141 Ariz. at 162.

Ferrer gave informed written consent to DWT's joint representation and to continued representation of others – Larkin, Lacey or Backpage-related entities they controlled – even if he decided to withdraw from the joint representation.  *See* Grant Decl. Exs. A, B, I.  As noted, Ferrer agreed to waive all conflicts relating to the joint representation as to any claims, expressly including future claims or criminal charges. He agreed that information provided to joint counsel could be shared with Larkin,

14

Lacey and all parties to agreements and could not be the basis of any claimed conflict. He acknowledged that he would not seek disqualification of joint counsel such as DWT. *See id.*

Mr. Ferrer's agreements and waivers are enforceable. The joint representation agreements expressly anticipated the possibility of potential criminal charges and that one or more of the parties might later choose to withdraw from the joint representation because of divergent interests. *See* RPC 1.7 cmt. 21 (agreements addressing possible consequences are more likely enforceable). All the parties were experienced in litigation and legal services, having been involved in numerous cases over the prior five years. *See id.* ("if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that an unforeseeable conflict may arise, such consent is more likely to be effective"). Ferrer was independently represented. *Id.* (stressing factor of whether "the client is independently represented by other counsel in giving consent"); *see also United States v. Caramadre*, 892 F. Supp. 2d 397, 406 (D. R.I. 2012) (that defendant had the opportunity to discuss conflict issues with separate counsel supported conclusion that he had knowingly consented); *Welch v. Paicos*, 26 F. Supp. 2d 244, 248-49 (D. Mass. 1998) ("With one distinguishable exception, we find no cases where consent of a former client, represented at the time by independent counsel, was held insufficient under Rule 1.9."). *See generally* AM. LAW INSTITUTE – AM. BAR ASS'N, TRIAL EVIDENCE IN FEDERAL COURTS:  PROBLEMS & SOLUTIONS at 35 (1999) (model JDA providing for advance waiver of conflicts and precluding disqualification if a signatory party decides to withdraw and cooperate with the government).

None of the cases the government mentions in its squibs, *see* Mot. at 10-14,[10] involved situations in which parties had entered into agreements waiving conflicts or

---

[10] *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994); *United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991); *United States v. Williams*, 81 F.3d 1321 (4th Cir. 1996); *United States v. Alfonso-Reyes*, 592 F.3d 280 (1st Cir. 2010); *United States v. Cheshire*, 707 F. Supp. 235 (M.D. La. 1989).

precluding disqualification, and indeed, with one exception, none concerned joint

representation agreements or JDAs at all.[11]  The government's motion fails from the

outset in light of Mr. Ferrer's agreements consenting to DWT's representation.[12]

### C.   Ferrer's Guilty Pleas and Agreement to Cooperate With the Government Precludes the Government's Disqualification Motion.

The premise of the government's motion is that counsel must be disqualified

from representation when "a former client will be called as a cooperating witness."

Mot. at 2.  Even aside from the parties' agreements belying the government's argument,

its premise is wrong.  Case law holds that, when an individual decides to abandon a

joint representation agreement or JDA and turn state's evidence, he thereafter has no

grounds to seek to disqualify his former counsel.

In *United States v. Almeida*, 341 F.3d 1318 (11th Cir. 2003), the Eleventh Circuit

rejected a similar argument to disqualify a defendant's counsel.  There, the government

charged two individuals, Almeida and Fainberg, with conspiracy to distribute cocaine.

Represented by separate counsel, they entered into an oral joint defense agreement.  *Id.*

at 1320.  Shortly before trial, Fainberg agreed to plead guilty in exchange for a reduced

sentence.  *Id.*  The government moved to disqualify Almeida's attorney on the basis that

---

[11] In *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000), which the government cites, Mot. at 14, the parties entered into a JDA, but the situation there was the converse of this case.  A defendant's counsel sought to withdraw because another party to the JDA (who became a cooperating witness) had not agreed to waive conflicts.  *Henke*, 222 F.3d at 638.  Reflecting the presumption in favor defendants' rights, the Ninth Circuit found the district court abused its discretion by not permitting defense counsel's withdrawal.  *Id.* The court also explained:  "Nothing in our holding today is intended to suggest … that joint defense meetings are in and of themselves disqualifying.  We stress that it was defense counsel in this case that timely moved for disqualification."  *Id.*

[12] The government says it has taken pains *not* to receive or review the parties' joint representation agreements, so as to avoid intruding on privileges, *see* Grant Decl. Ex. K, at 4, and that was appropriate.  The government says it proceeded with its motion based on consultations with Mr. Ferrer's counsel "to confirm that the factual recitations in the motion were accurate."  *Id.*  If this is so, however, it is apparent the representations unfortunately were incomplete and very inaccurate.

he had obtained confidential information from Fainberg in connection with the prior joint defense and therefore had a conflict of interest. The district court agreed and entered an order barring Almeida's counsel from using any information from Fainberg in cross examination during trial. *Id.* at 1321.

The circuit court held that "Fainberg waived his attorney-client privilege when he turned state's evidence, thereby entirely removing the possibility of a conflict of interest." *Almeida*, 341 F.3d at 1324. This conclusion flowed from two tenets. First, where "the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other." *Id.* at 1324 (quoting *Garner v. Wofinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970); *see also* John W. Strong, MCCORMICK ON EVIDENCE § 91 (5th ed. 1999) (clients jointly sharing information with an attorney "had obviously no intention of keeping these secrets from each other, and hence as between themselves, it was not intended to be confidential"). Second, the court noted the rule that "where an accomplice turns state's evidence and attempts to convict others by testimony which also convicts himself, he thereby waives the privilege against disclosing communications between himself and counsel." *Almeida,* 341 F.3d at 1325 (internal quotation omitted).

> [N]o witness shall be required to answer any question that may tend to criminate himself, yet the accomplice, when he enters the witness box with a view of escaping punishment himself, by a betrayal of his co-workers in crime, yields up and leaves the privilege behind him. He contracts to make a full statement, to keep back nothing …. He should be allowed no privileged communications. These he has voluntarily surrendered. The enforcement of such a rule may be the only protection the party on trial has left—the only means remaining to him to meet, it may be, the perjury of the criminal upon the witness stand.

*Id.* (quoting *Alderman v. People*, 4 Mich. 414 (Mich. 1857)). The Ninth Circuit has approved this analysis of *Almeida*. *Murdoch v. Castro*, 365 F.3d 688, 703 n.2 (9th Cir. 2004); *see also Murdoch* , 365 F.3d at 704 ("[E]ach contract for testimony [from an accomplice] is fraught with the real peril that the proffered testimony will not be truthful, but simply factually contrived to 'get' a target of sufficient interest to induce

17

concessions from the government." (quoting *Commonwealth of N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1124 (9th Cir. 2001)).

*United States v. Wings*, 2007 WL 9676968 (N.D. Ga. Aug. 10, 2007), reached the same conclusion in rejecting a government motion to disqualify counsel.  There, two individuals (Wings and Lumsden) jointly hired a law firm to represent them and two companies they owned in connection with a government investigation.  After the government issued an indictment charging bank and wire fraud, Lumsden agreed to plead guilty and testify against Wings.  *Id.* at *2.  Following *Almeida*, the court held that Lumsden had "voluntarily surrendered any … protections of attorney-client privilege, at least as to counsel of a co-defendant with whom he had a joint defense agreement."  *Id.* at *4.  The court wrote:  "To the extent the government is concerned about the harm to the integrity of the court, … this concern is simply misplaced."  *Id.*  "Mr. Lumsden entered into a bargain by which he gave up his right to assert confidentiality as against [his former counsel].  In balancing the harm which would be suffered by Mr. Wings if [his counsel] is disqualified as against the harm to Mr. Lumsden if [the counsel] is allowed to cross-examine him, the court finds that Mr. Wing's right to counsel of his choice should prevail."  *Id.* at *5.

By entering into the plea agreements, Ferrer waived rights to claim confidentiality or disqualify joint counsel – even aside from his prior express agreements (discussed above) and his later express privilege waivers (discussed below).

### D.    Ferrer Has Waived All Claims to Protect Prior Confidential Privileged Communications.

In any event, the government cannot urge disqualification purportedly to protect prior confidential communications of Ferrer when he has now waived all of his rights to protect any such confidences.  Ferrer has waived his rights to claim privileges (except

18

as to Ms. Clarence's firm) – on at least two occasions. [13] *See* Grant Decl. Ex. J at 4-5 (Ferrer's "Waiver of Attorney-Client Privilege" agreement); Ex. K at 5-7 (Ferrer's "Proffer/Interview Agreement").  Put simply, Ferrer no longer has attorney-client confidences left to protect.[14]

The Arizona Supreme Court's decision in *Alexander* is instructive here too.  In that case, the former client/cooperating witness voluntarily disclosed his prior communications with counsel, and the court held that as a result the state could not seek disqualification.  Because the witness had "revealed any information that might have been confidential, that information is no longer privileged."  141 Ariz. at 163.  "If the client himself does not treat the particular information as privileged, that communication will not be recognized as a confidence by this court."  *Id.*  The court held that, even if it were presumed that the former client had shared confidential privileged information with counsel in connection with the prior representation,[15] by waiving his rights to maintain the confidences, the "substantial relationship test" of RPC 1.9(a) "is not applicable," and thus no conflict was present.  *Id.* at 164.  *See Almeida*, 341 F.3d at 1322 (when cooperating witness waived rights to claim privilege as to communications with former joint counsel, district court reversed its prior ruling finding a conflict with counsel's continued representation of other client).

The cases the government cites are premised on concerns that an attorney's ongoing representation would divulge a former client's confidential information.  *See,*

---

[13] The government has also alluded to a "cooperation addendum to Mr. Ferrer's plea agreement," which it says is under seal and has not been produced.  Ex. K, at 2.  This underscores defendants' need for discovery the government has refused to provide.

[14] Defendants do not concede that Ferrer's waivers entitle the government to access all communications with Backpage counsel, as the communications are the subject of joint privileges to which Larkin and Lacey (and the entities in which they hold ownership interests) are parties.  Defendants' counsel have notified the government of this concern.

[15] *See Alexander*, 141 Ariz. at 163-64 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953) (noting that courts may

*e.g.*, *Ross*, 33 F.3d at 1523; *Muscony*, 927 F.2d at 750; *Alfonzo-Reyes*, 592 F.3d at 294. But, in none of those cases had the former clients expressly disclaimed rights to protect attorney-client privileges – as Ferrer has done here. *Cf*, *Alfonzo-Reyes*, 592 F.3d at 294 (defendant asserted that witnesses were willing to waive their privileges, but the court rejected this argument as "hypothetical" because there was no record of any actual waivers). Moreover, the Arizona State Bar has opined that under RPC 1.9 "[t]he duty of confidentiality is the only duty owed by an attorney to a former client." Ariz. Ethics Op. 92-03 (disqualification unnecessary where "confidential information … is not in jeopardy"); *see also* Ariz. Ethics Op. 91-05 (RPC 1.9 is "for the protection of clients"). In this case, because Ferrer has waived the privilege to the full extent that he can (in his "personal or official capacity," Grant Decl. Ex. K at 5), he has correspondingly waived any objections that DWT's continued representation of Lacey and Larkin could improperly reveal confidences he does not have.

### E.   All Factors to Consider Regarding a Disqualification Motion Favor Denial of the Government's Motion.

The government has shown no conflicts or breach of confidentiality that amount to violation of any ethics rule. But even if there were a conflict, that would not require automatic disqualification. *See, e.g.*, *Research Corp. Techs. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 703 (D. Ariz. 1996) (refusing to disqualify counsel despite conflict where circumstances made disqualification inappropriate); *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, at *5–6 (D. Ariz. Nov. 5, 2009) ("[W]hile potentially a matter of concern to the Arizona Bar, [the ethical violation] is not so egregious as to require the disqualification of counsel, as the substantial prejudice Plaintiff would incur by being forced to obtain new representation outweighs the other considerations."). Rather, the Court would need to weigh several factors before ordering disqualification, specifically:

---

presume confidential information was shared in prior representation); Ariz. Ethics Op. 91-05 (same).

> (1) whether the motion is being made for the purposes of harassing the defendant, (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

*Sandoval v. Corizon, L.L.C.*, 2017 WL 2687626, at *5 (D. Ariz. June 22, 2017); *accord Alexander*, 141 Ariz. at 165.[16]  In this case, all these factors weigh against disqualification.

As to the first factor, while defendants do not wish to impugn the government's motives, it bears noting that the disqualification motion followed shortly after the government sought and obtained orders seizing essentially all assets of Messrs. Lacey and Larkin.  *See Alexander*, 141 Ariz. at 165 ("By 'drying up' petitioners' funds, the State has successfully prevented petitioners from engaging the services of a lawyer").

Second, the government has not shown that it will be harmed if DWT remains in the case.  As explained, Arizona courts have indicated that the government does not even have standing to seek disqualification of criminal defense counsel, much less a sufficient interest to outweigh a defendant's constitutional right to choice of counsel. *See Knapp*, 111 Ariz. at 112.  And even in a civil case, a party seeking disqualification must establish "substantial and irreparable harm growing out of the ethical violation." *Sandoval*, 2017 WL 2687626m at *4 (citing *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, at *6 (D. Ariz. Nov. 5, 2009)).  However laudable the government's asserted interest to protect the "integrity of the process" may be, that does not amount to substantial, irreparable, or *any* harm if the Court were to deny the government's motion. On the other hand, Messrs. Lacey and Larkin clearly would be harmed if they could no longer work with DWT and instead would have to retain new First Amendment/Internet

---

[16] This Court has also framed the analysis as weighing: "(1) the nature of the ethical violation, (2) the prejudice to the parties, including the extent of actual or potential delay

counsel.   Even if they "were possessed of sufficient funds" to hire new counsel, the time, expense and inconvenience of doing so would be substantial.  *See Alexander*, 141 Ariz. at 165.  And, the prejudice of disqualifying DWT would extend beyond Lacey and Larkin to the other defendants, who similarly stand to benefit from DWT involvement, expertise and knowledge.  *See United States v. Renda*, 669 F. Supp. 1544, 1549 (D. Kan. 1987) ("In an extremely complicated case it may cause a fundamental injustice to remove the *one* attorney whose intimate knowledge of the defense and whose close relationship with the defendants make him practically the only available attorney capable of presenting effective assistance of counsel.") (emphasis original).

Also, an "alternative solution" is reasonable and already in place.  DWT's role is not and never has been to act as criminal trial counsel for Larkin or Lacey (or, previously, for Ferrer).  Rather, DWT has addressed legal issues under the First Amendment, federal statutes, and as regards the Internet.  DWT can continue its longstanding role, while undersigned counsel will have responsibility for and act as trial counsel in defending Larkin and Lacey in this case.

In effect, the government seeks to "transform the sixth amendment right to conflict-free counsel into a two-edge sword … to sever defendants from those most able to protect their legitimate legal interests" *In re Paradyne Corp.*, 803 F.2d 604, 611 (11th Cir. 1986). Depriving Messrs, Lacey and Larkin of their counsel "would certainly threaten the integrity of the judicial process." *Lorenzana-Cordon*, 125 F. Supp. 3d at 136 (quoting *Caramadre*, 892 F.Supp.2d at 408). And, to the extent the government advances its altruistic "integrity" argument to eliminate involvement of DWT, Arizona courts have held that such assertions are "too slender a reed upon which to rest disqualification of counsel." *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 378 (Ariz. Ct. App. 2004); *see also Sellers v. Superior Court,* 154 Ariz. 281, 289 (Ariz. Ct. App.1987); *Alexander*, 141 Ariz. at 165.

---

in the proceedings, (3) the effectiveness of counsel in light of the violations, and (4) the

## IV.    CONCLUSION

The Government has fallen far short of meeting its burden of showing the "extreme circumstances" necessary to warrant disqualification.  As a result, the Court should deny the government's motion to disqualify DWT as counsel for Messrs. Larkin and Lacey.

DATED:  June 6, 2018                    Respectfully submitted,


                                        */s/ Paul J. Cambria, Jr.*
                                        LIPSITZ GREEN SCIME CAMBRIA LLP
                                        Attorneys for Defendant Michael Lacey

                                        */s/ Thomas Henry Bienert, Jr.*
                                        BIENERT MILLER & KATZMAN PLC
                                        Attorneys for Defendant James Larkin

---

public's perception of the profession."  *Research Corp.*, 936 F. Supp. at 703.

1

## CERTIFICATE OF SERVICE

I certify that on this 6th day of June, 2018, I electronically transmitted a
PDF version of this document to the Clerk of Court, using the CM/ECF System,
for filing and for transmittal of a Notice of Electronic Filing to the attorneys of
record. See attached service list.


*/s/ Toni Lindemann*
Toni Lindeman

| COUNSEL | REPRESENTING |
|---|---|
| Anne M. Chapman<br>Mitchell Stein & Carey PC<br>1 Renaissance Sq.<br>2 N Central Ave., Ste. 1900<br>Phoenix, AZ 85004<br>Email: anne@mscclaw.com | Henze Cook Murphy, PLC |
| Lee Stein<br>Mitchell Stein & Carey PC<br>1 Renaissance Sq.<br>2 N Central Ave., Ste. 1900<br>Phoenix, AZ 85004<br>lee@mscclaw.com | Henze Cook Murphy, PLC |
| James C. Grant<br>Davis Wright Tremaine LLP<br>1201 3rd Ave., Ste. 2200<br>Seattle, WA 98101-3045<br>jimgrant@dwt.com | Michael Lacey |
| Robert Corn-Revere<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW, Ste. 800<br>Washington, DC 20006<br>bobcornrevere@dwt.com | Michael Lacey |
| Ronald G. London<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW, Ste. 800<br>Washington, DC 20006<br>ronnielondon@dwt.com | Michael Lacey |
| Paul J. Cambria, Jr.<br>Liptsitz Green Scime Cambria LLP<br>42 Delaware Ave., Ste. 120<br>Buffalo, NY 14202<br>pcambria@lglaw.com | Michael Lacey |

| COUNSEL | REPRESENTING |
|---|---|
| Janey Henze Cook<br>Henze Cook Murphy PLLC<br>4645 N 32nd St., Ste. 150<br>Phoenix, AZ 85018<br>janey@henzecookmurphy.com | Michael Lacey |
| Bruce Feder<br>Feder Law Office PA<br>2930 E Camelback Rd., Ste. 160<br>Phoenix, AZ 85016<br>bf@federlawpa.com | Scott Spear |
| Michael D. Kimerer<br>Kimerer & Derrick PC<br>1313 E Osborn Rd., Ste. 100<br>Phoenix, AZ 85014<br>mdk@kimerer.com | John Brunst |
| Rhonda E. Neff<br>Kimerer & Derrick PC<br>1313 E Osborn Rd., Ste. 100<br>Phoenix, AZ 85014<br>rneff@kimerer.com | John Brunst |
| Gary S. Lincenberg<br>Bird Marella<br>1875 Century Park E # 23<br>Los Angeles, CA 90067<br>glincenberg@birdmarella.com | John Brunst |
| Ariel A. Neuman<br>Bird Marella<br>1875 Century Park E # 23<br>Los Angeles, CA 90067<br>aneuman@birdmarella.com | John Brunst |

| COUNSEL | REPRESENTING |
|---|---|
| Gopi Panchapakesan<br>Bird Marella<br>1875 Century Park E # 23<br>Los Angeles, CA 90067<br>gpanchapakesan@birdmarella.com | John Brunst |
| KC Maxwell<br>Maxwell Law, PC<br>899 Ellis Street<br>San Francisco, CA 94109<br>kcm@kcmaxlaw.com | Dan Hyer |
| Michael L. Piccarreta<br>Piccarreta Davis Keenan Fidel PC<br>2 E Congress St., Ste. 1000<br>Tucson, AZ 85701<br>mlp@pd-law.com | Andrew Padilla |
| Jefferson Keenan<br>Piccarreta Davis Keenan Fidel PC<br>2 E Congress St., Ste. 1000<br>Tucson, AZ 85701<br>jlk@pd-law.com | Andrew Padilla |
| Stephen M. Weiss<br>Karp & Weiss PC<br>3060 N Swan Rd.<br>Tucson, AZ 85712<br>sweiss@karpweiss.com | Joye Vaught |
| Andrew Stone<br>US Attorney's Office<br>40 N Central Ave, Ste 1800<br>Phoenix, AZ 85004<br>andrew.stone@usdoj.gov | USA |

SERVICE LIST

| COUNSEL | REPRESENTING |
| --- | --- |
| John Jacob Kucera<br>US Attorney's Office - Los Angeles, CA<br>312 N Spring St., Ste. 1200<br>Los Angeles, CA 90012<br>john.kucera@usdoj.gov | USA |
| Kevin M. Rapp<br>US Attorney's Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>kevin.rapp@usdoj.gov | USA |
| Margaret Wu Perlmeter<br>US Attorney's Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>margaret.perlmeter@usdoj.gov | USA |
| Peter Kozinets<br>US Attorney's Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>peter.kozinets @usdoj.gov | USA |