Thomas H. Bienert, Jr., State Bar No. 135311
*(Admitted Pro Hac Vice)*
tbienert@bmkattorneys.com
Kenneth M. Miller, State Bar No. 151874
*(Admitted Pro Hac Vice)*
kmiller@bmkattorneys.com
John L. Littrell, State Bar No. 221601
*(Admitted Pro Hac Vice)*
jlittrell@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700 / Facsimile (949) 369-3701

Attorneys for Defendant
James Larkin

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Michael Lacey, et al.,<br><br>    Defendants | Case No. CR-18-00422-PHX-SPL (BSB)<br><br>**DEFENDANT JAMES LARKIN'S MOTION TO AMEND THE CONDITIONS OF HIS PRETRIAL RELEASE -- REDACTED**<br><br>(First Request)<br><br>(Oral Argument Requested) |

   Defendant James Larkin, through his undersigned counsel of record, hereby moves pursuant to 18 U.S.C. § 3142(c)(1)(B) & (3) to amend the conditions of his pretrial release (which are currently set forth in Document 93).  This motion is based on the grounds that the conditions requiring electronic monitoring and limiting travel to Maricopa County are not the least restrictive conditions that will reasonably ensure his presence at trial and the safety of the community.  Further, the electronic monitoring and travel restrictions are

undermining Mr. Larkin's ability to be with his wife and provide essential emotional support to his 17-year-old daughter.

This motion is based on the attached Memorandum of Points and Authorities, the Court's entire file and any evidence or argument presented at the hearing on this matter. This is Mr. Larkin's first motion to amend the conditions of his pretrial release and he requests oral argument.

U.S. Pretrial Services takes no position on this Motion. However, if the electronic monitor is removed, then Pretrial Services does not object to allowing Mr. Larkin to travel throughout Arizona and California. On the other hand, if the electronic monitor remains in place, then Pretrial Services requests Mr. Larkin's travel be limited to Maricopa County (without Pretrial Services' prior permission) to comply with their policies and procedures concerning electronic monitoring. The government opposes this Motion.

Excludable delay under 18 U.S.C. § 3161(h)(1) will occur as a result of this motion or of an order based thereon.

Dated: June 1, 2018

BIENERT, MILLER & KATZMAN, PLC

<u>/s/ Thomas H. Bienert, Jr.</u>
Thomas H. Bienert, Jr.
Kenneth M. Miller
John L. Littrell
Attorneys for Defendant James Larkin

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant James Larkin moves to amend the conditions of his pretrial release. *See* Doc. 93. Mr. Larkin's counsel had been in contact with the government for over one year before Mr. Larkin's Indictment. Mr. Larkin offered to self-surrender, but on April 6, 2018, the government proceeded by arrest warrant, instead. Mr. Larkin was arrested at the airport and escorted off the plane on a Friday night after returning from a trip to Scotland. He spent the weekend in custody before his initial appearance.

On April 9, the government filed a Motion for Detention Pending Imposition of Release Conditions, and the detention hearing was continued to April 12. *See* Doc. 22. On April 12, the parties announced they reached an agreement on the terms of Mr. Larkin's pretrial release. *See* Doc. 63. The detention hearing was continued to April 16 and Mr. Larkin remained in custody. *See id*. On April 16, the parties announced in open court that they had stipulated to certain bail conditions, including electronic monitoring and no travel outside Maricopa County without Pretrial Services' prior permission.

This Court "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).[1] Mr. Larkin now seeks to amend these conditions because they are not the least restrictive conditions that will reasonably assure his presence at trial or the safety of the community, as required by 18 U.S.C. §3142(c)(1)(B). Instead, Mr. Larkin submits that the conditions of his pretrial release should be amended to permit state-wide travel in and between Arizona and California, without electronic monitoring.

---

[1] Under the plain terms of Section 3142(c)(3), changed or new circumstances are not required for this Court to amend Mr. Larkin's release conditions. Nonetheless, there are substantial changed circumstances, including: the appearance of new counsel on Mr. Larkin's behalf, the impact of the electronic monitoring and travel restrictions on Mr. Larkin's ability to support his daughter and the impact of the travel restrictions on Mr. Larkin's ability to be with his wife. Most important, Mr. Larkin is entitled to a judicial determination of the least restrictive release conditions that are reasonably necessary.

## II.   BACKGROUND

Mr. Larkin has lived almost all of his 68 years in the Phoenix area. He graduated from Gerard High School in 1967. In 1971, he commenced his newspaper career by joining the Phoenix New Times as a salesperson and reporter. In 1975, he left New Times for two years to learn the printing business at Sun Publishing. He returned to the New Times in 1977. Over the next 35 years, Mr. Larkin as CEO, and others, built a national newspaper company.

By the early 2000s, the Internet—and particularly Craigslist—was destroying newspaper classified advertising. In response, New Times, Inc. launched a free website called Backpage.com in 2004. Backpage.com was an online platform for the dissemination of ideas and content (including advertising) posted by third parties. Backpage.com arose from the world of alt-weekly newspapers and simply took their classified advertising efforts online. When it launched, Backpage.com included ad categories typically found in daily newspapers (e.g., real estate, jobs, buy/sell/trade, rentals), as well as categories for the types of ads that had expanded in alternative weekly publications, such as personals and adult-oriented services (e.g., dating, massage, escorts). Backpage.com soon became the second largest online classified site in the U.S.

New Times, Inc. also expanded by acquiring and launching alternative weeklies across the country. In 2005, it acquired Village Voice Media (and assumed the name), creating a chain of 17 weeklies with a combined circulation of 1.8 million, including the Village Voice in New York City. The New Times and Village Voice Media papers have won hundreds of journalism awards, including the Pulitzer Prize.

In January 2013, the Village Voice Media sold its interests in the newspapers to long-time company executives. In April 2015, the Village Voice Media sold its interest in Backpage.com, LLC to a company headed by Backpage.com's CEO, Carl Ferrer.

Mr. Larkin has been married to Margaret Larkin for over 25 years. He is the father of six children and two grandchildren. Two of his children are graduate students, and one is finishing her junior year at a private high school in San Francisco.

The daughter in San Francisco is 17 years old and currently lives with only her mother, Mrs. Larkin, because of the geographical limitations on Mr. Larkin's travel. This is not right because she has always been close to her father. In fact, because she is currently finishing her junior year, she only has one year left before leaving for college. And the situation is made far worse because she was greatly affected by the FBI raid on the Larkins' home. The agents knew Mr. Larkin was not in the home. Still, a number of agents burst into her small bedroom, some with masks and machine guns, to shout at her to awake. She is in great fear for her, her mother and her father's safety. Sadly, the travel restrictions undermine Mr. Larkin's ability to provide her with necessary emotional support.

The travel restrictions also preclude Mr. Larkin from spending significant time with his wife. She must live apart from him with their daughter in San Francisco.

Finally, all three of Mr. Larkin's older children in school remain financially dependent upon Mr. Larkin. The others live in various regions of the country. None lives abroad. Mr. Larkin is close to each of his children and is in regular contact with them.

### III.  LARKIN IS NOT A FLIGHT RISK OR A DANGER

Bail conditions must be the "least restrictive" conditions necessary to "reasonably assure" the person's appearance and the community's safety. 18 U.S.C. § 3142(c)(1)(B). The provisions that conditions "reasonably assure" appearance and safety do not require a guarantee of safety or non-flight. *United States v. Hir*, 517 F.3d 1081, 1086, 1092 n.2 (9th Cir. 2008); *United States v. Gentry*, 455 F.Supp.2d 1018, 1032 (D. Ariz. 2006). Section 3142(g) sets forth the factors to be taken into account:

- Defendant's history and characteristics;

- Danger to the community; and,

- Nature of the Offense and Weight of the Evidence.

18 U.S.C. § 3142(g).

### A. Defendant's History and Characteristics

Mr. Larkin has exceptionally strong family and local ties. He has no prior convictions and no criminal history other than a wrongful arrest for publishing criticism of then-Maricopa County Sheriff Joe Arpaio,[2] and pending criminal charges in California. As explained below, the California allegations have been repeatedly dismissed pursuant to the First Amendment.[3] At any rate, in that California case, Mr. Larkin was released on a $250,000 bond, permitted to travel internationally and has fully complied with all bail conditions.

The most important factor demonstrating that Mr. Larkin is not a flight risk is his long history of fighting challenges to his right to publish. He has fought Attorney Generals across the country. He has fought Maricopa County's infamous former Sheriff. And he will fight the U.S. Department of Justice. While the government has the burden of proving flight risk by a preponderance, Mr. Larkin's long history in this state make it abundantly clear that he will stay and fight the charges against him.

Finally, Mr. Larkin has a legitimate need to travel throughout California. As explained below, he needs to be able to travel to San Francisco to be with his wife and daughter (the Northern District of California). He still needs to travel to Sacramento to attend state court proceedings there (the Eastern District of California). And the government has now filed a civil forfeiture action in Los Angeles (the Central District of California). Mr. Larkin's undersigned defense counsel are also located in the Central District of California. Accordingly, Mr. Larkin requests that his bail conditions permit him to travel throughout Arizona and California.

---

[2] Messrs. Larkin and Lacy sued Maricopa County. The County paid $3.75 million to settle and Larkin and Lacy donated the money to various immigrant rights and First Amendment groups.

[3] While California charges that defendants engaged in money laundering—which is not really related to the alleged prostitution—were allowed to proceed, there are no such charges here. Instead, all money laundering allegations in this case are premised on the knowing receipt of proceeds from prostitution or sex trafficking, so they are all subject to the below-described First-Amendment headwinds.

**B. <u>Danger to the Community</u>**

The government has previously complained that any effort by Mr. Larkin to exert control over Backpage.com would pose a threat to the community. While the defense disagrees, the point is moot—Backpage.com is closed.

**C. <u>Nature of the Offense and Strength of the Evidence</u>**

The weight of the evidence is the least important factor. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Nonetheless, the government's basic theory is that defendants, through Backpage.com, promoted prostitution and sex trafficking.[4] Because they used interstate commerce to do this, they violated the Travel Act. Because they engaged in monetary transactions designed to conceal and promote their crime, they committed money laundering. And the proceeds of those crimes are subject to forfeiture.

The problem is that the government's theory is based on the false premise that Backpage.com engaged in prostitution and sex trafficking. In *Backpage.com LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015), the Seventh Circuit Court of Appeals recognized Backpage.com as "an avenue of expression of ideas and opinions" protected by the First Amendment, including its "classified ads for 'adult' services." In that case, the Sheriff of Cook County, Illinois "embarked on a campaign intended to crush Backpage's adult section -- crush Backpage, it seems -- by demanding that firms such as Visa and MasterCard prohibit the use of their credit cards to purchase any ads on Backpage, since the ads might be for illegal sex-related products or services, such as prostitution." *Id*. at 230. The court held that the Sheriff was "using the power of his office to threaten legal sanctions against the credit-card companies for facilitating future speech, and by doing so he is violating the First Amendment unless there is no constitutionally protected speech in the ads on Backpage's website -- and no one is claiming that." *Id.* at 231.

In recognizing the First Amendment's protection for Backpage.com's adult section, the court used as an example the similar protections for print publications featuring such

---

[4] The defense does not intend to litigate these First Amendment issues at this time. The point is: this case raises significant legal issues; Mr. Larkin has won the many lawsuits brought against Backpage to date; and, he has every incentive to attend trial and defend his conduct again.

ads. "Even entities that know the information's content do not become liable for the sponsors' deeds. Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity?" *Id.* at 234 (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).

This is just one example of very clear judicial recognition that Backpage.com's activities relating to "adult" advertisements are constitutionally protected. There are many others, and no cases to the contrary. *See, e.g., Doe v. GTE Corp.*, *supra*; *Backpage.com LLC v. McKenna*, 881 F.Supp.2d 1262, 1282 (W. D. Wash. 2012) ("The Court finds it unlikely that Defendants would be able to prove that all online advertisements for escort services are ads for prostitution. Thus, a website that contains a section for postings for escort services that chooses to either shut down that section or require age verification will likely chill protected speech in the course of doing so") (emphasis in original); *Backpage.com LLC v. Hoffman*, 2013 WL 4502097 at *8 (D. N.J. 2013) (rejecting the argument "that the Act does not regulate speech protected by the First Amendment because it only prohibits the advertisement of an illegal transaction"); *accord Backpage.com LLC v. Cooper*, 939 F.Supp.2d 805 (M. D. Tenn. 2013).



DEFENDANT JAMES LARKIN'S MOTION TO AMEND THE CONDITIONS OF HIS
PRETRIAL RELEASE -- REDACTED

Likewise, the California courts have now twice rejected proposed criminal charges based on the premise that Backpage.com profited from prostitution because it received revenue for "adult" ads, recognizing that "[p]roviding a forum for online publishing is a recognized legal purpose" under the law. People v. Ferrer, No. 16FE019224 (Cal. Super. Ct. Dec. 16, 2016, *10) and No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017, p. 13).

The government claims this case is different. Perhaps. But it cannot be reasonably disputed that the government's case faces unusual and strong head winds generated by the First Amendment. Accordingly, the nature of the charges and the inherent problems with the government's case support a finding that Mr. Larkin is not a flight risk.

## IV. CONCLUSION

For the foregoing reasons, the defense respectfully submits that Mr. Larkin's pretrial release conditions be amended to omit the requirement that he wear an electronic monitor and to permit him to travel throughout Arizona and California.

Dated: June 1, 2018

BIENERT, MILLER & KATZMAN, PLC

*/s/ Thomas H. Bienert, Jr.*
Thomas H. Bienert, Jr.
Kenneth M. Miller
John L. Littrell
Attorneys for Defendant James Larkin

## **CERTIFICATE OF SERVICE**

I certify that on this 1st day of June, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the attorneys of record. See attached service list.

*/s/     Toni Lindemann*

Toni Lindemann

| COUNSEL | REPRESENTING |
|---|---|
| Anne M. Chapman<br>Mitchell Stein & Carey PC<br>1 Renaissance Sq.<br>2 N Central Ave., Ste. 1900<br>Phoenix, AZ 85004<br>Email: anne@mscclaw.com | Henze Cook Murphy, PLC |
| Lee Stein<br>Mitchell Stein & Carey PC<br>1 Renaissance Sq.<br>2 N Central Ave., Ste. 1900<br>Phoenix, AZ 85004<br>lee@mscclaw.com | Henze Cook Murphy, PLC |
| James C. Grant<br>Davis Wright Tremaine LLP<br>1201 3rd Ave., Ste. 2200<br>Seattle, WA 98101-3045<br>jimgrant@dwt.com | Michael Lacey |
| Robert Corn-Revere<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW, Ste. 800<br>Washington, DC 20006<br>bobcornrevere@dwt.com | Michael Lacey |
| Ronald G. London<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW, Ste. 800<br>Washington, DC 20006<br>ronnielondon@dwt.com | Michael Lacey |
| Paul J. Cambria, Jr.<br>Liptsitz Green Scime Cambria LLP<br>42 Delaware Ave., Ste. 120<br>Buffalo, NY 14202<br>pcambria@lglaw.com | Michael Lacey |
| Janey Henze Cook<br>Henze Cook Murphy PLLC<br>4645 N 32nd St., Ste. 150<br>Phoenix, AZ 85018<br>janey@henzecookmurphy.com | Michael Lacey |
| Bruce Feder<br>Feder Law Office PA<br>2930 E Camelback Rd., Ste. 160<br>Phoenix, AZ 85016<br>bf@federlawpa.com | Scott Spear |

SERVICE LIST

| | |
|---|---|
| Michael D. Kimerer<br>Kimerer & Derrick PC<br>1313 E Osborn Rd., Ste. 100<br>Phoenix, AZ 85014<br>mdk@kimerer.com | John Brunst |
| Rhonda E. Neff<br>Kimerer & Derrick PC<br>1313 E Osborn Rd., Ste. 100<br>Phoenix, AZ 85014<br>rneff@kimerer.com | John Brunst |
| Gary S. Lincenberg<br>Bird Marella<br>1875 Century Park E # 23, Los Angeles, CA 90067<br>glincenberg@birdmarella.com | John Brunst |
| Ariel A. Neuman<br>Bird Marella<br>1875 Century Park E # 23, Los Angeles, CA 90067<br>aneuman@birdmarella.com | John Brunst |
| Gopi Panchapakesan<br>Bird Marella<br>1875 Century Park E # 23, Los Angeles, CA 90067<br>gpanchapakesan@birdmarella.com | John Brunst |
| KC Maxwell<br>Browne George Ross LLP<br>101 California St., Ste. 1225<br>San Francisco, CA 94111<br>kmaxwell@bgrfirm.com | Dan Hyer |
| David Wakukawa<br>Browne George Ross LLP<br>101 California St., Ste. 1225<br>San Francisco, CA 94111<br>dwakukawa@bgrfirm.com | Dan Hyer |
| Michael L. Piccarreta<br>Piccarreta Davis Keenan Fidel PC<br>2 E Congress St., Ste. 1000<br>Tucson, AZ 85701<br>mlp@pd-law.com | Andrew Padilla |

| | |
|---|---|
| Jefferson Keenan<br>Piccarreta Davis Keenan Fidel PC<br>2 E Congress St., Ste. 1000<br>Tucson, AZ 85701<br>jlk@pd-law.com | Andrew Padilla |
| Stephen M. Weiss<br>Karp & Weiss PC<br>3060 N Swan Rd.<br>Tucson, AZ 85712<br>sweiss@karpweiss.com | Joye Vaught |
| Andrew Stone<br>US Attorneys Office<br>40 N Central Ave, Ste 1800<br>Phoenix, AZ 85004<br>andrew.stone@usdoj.gov | USA |
| John Jacob Kucera<br>US Attorneys Office - Los Angeles, CA<br>312 N Spring St., Ste. 1200<br>Los Angeles, CA 90012<br>john.kucera@usdoj.gov | USA |
| Kevin M. Rapp<br>US Attorneys Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>kevin.rapp@usdoj.gov | USA |
| Margaret Wu Perlmeter<br>US Attorneys Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>margaret.perlmeter@usdoj.gov | USA |
| Peter Kozinets<br>US Attorneys Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>peter.kozinets @usdoj.gov | USA |

SERVICE LIST