# **<u>Exhibit A</u>**



One Renaissance Square
2 North Central Ave., Suite 1450
Phoenix, AZ 85004
MSCCLaw.com

Lee Stein
P 602 358 0292 | M 602 478 1772 | F 602 358 0291
lee@MSCCLaw.com

May 14, 2018

**VIA EMAIL**

Dominic Lanza
Kevin Rapp
Assistant United States Attorneys
United States Attorney's Office
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004
Dominic.Lanza@usdoj.gov
Kevin.Rapp@usdoj.gov

Re: Backpage/Henze Matter

Dear Dom and Kevin:

Thank you for your willingness to discuss with us the possibility of Henze Cook Murphy, PLLC participating in a limited fashion, consistent with its ethical obligations, in the representation of Mr. Lacey in criminal case number 2018-CR-00422-SPL. When we spoke last week, I told you that I intended to engage ethics counsel to help guide this discussion. I have done so. Ed Novak is serving that role and has assisted us in evaluating the competing interests at work here. You know his criminal defense credentials well, but he also has significant ethics experience as the Chair of the State Bar Committee on Character and Fitness, past President of the Arizona State Bar, and as an adjunct ethics professor. The combination of his experiences seemed to make him a good fit for helping us with this matter.

Tom and Janey fully appreciate that they may not ethically play a role in the case that is materially adverse to their former client Carl Ferrer, and they do not intend to do so. Admittedly, that leaves a rather limited role for them. Despite these limitations, Mr. Lacey very much wants them to be involved to whatever extent they can. Given what is at stake for Mr. Lacey in this matter, it makes sense to see if we can agree on a role for Henze Cooke Murphy; and if so, to present the proposed role to the Court so the Court can conduct an independent inquiry, if it wishes to do so. As part of such an inquiry, the Court can ensure that Mr. Ferrer's interests are protected and that Mr. Lacey's Sixth Amendment right to the counsel of his choice is respected as well. As Dom said when we met, the devil will be in the details. We agree. We think the roles can be separated out into

Dominic Lanza
Kevin Rapp
May 14, 2018
P a g e | **2**

categories, but before we do that, let me make clear what Tom and Janey will <u>not</u> do (and have not done):

- Disclose to anyone confidential information obtained from Mr. Ferrer
- Participate in the preparation of the examination of Mr. Ferrer at trial or any evidentiary hearing, or in the preparation to rebut his testimony
- Draft documents using facts provided by Mr. Ferrer which were not shared under the JDA
- Conduct the examination at trial of any witness for any party in 2018-CR-00422-SPL
- Participate in any tasks, research, discussion or drafting that relies on information provided by Mr. Ferrer and not shared pursuant to the JDA.

Our intent is to make clear that Tom and Janey have no intention of: (1) doing anything to the detriment of their former client; or (2) using information provided to them by their former client to his detriment. They understand their ethical obligations and have worked hard to maintain them.

There are five categories of work we think they can perform and that are consistent with their ethical obligations, which we would like to discuss with you.

1. **Work for Michael Lacey Unconnected to the Government's Case**

There is a substantial body of work performed primarily by Janey for Mr. Lacey that has nothing to do with the case, some of which may not even constitute legal work. This includes things like dealing with a dispute with Mr. Lacey's HOA and his personal insurance and banking issues. None of this appears to even implicate ER 1.9 and therefore should not be an issue for the Government. If you disagree, let us know.

2. **Compliance with Conditions of Release**

On Mr. Lacey's behalf, Janey has taken the lead on assisting him in complying with the terms of his release. This work includes interacting with Pretrial Services on issues such as travel, obtaining permission for financial expenditures above $1,000, recordkeeping, and maintaining contact with his Pretrial Services officer. In the event that the Government sought to modify the terms of his release or if there were an allegation that he violated a condition, Janey would be the person to address the matter, at least in the first instance. We do not see any adversity to Mr. Ferrer in this role, but if you do, we can discuss further.

3. **Forfeiture**

When we met last week, the one specific area we discussed was assisting Mr. Lacey with respect to asset forfeiture. To a great extent, Mr. Ferrer would seem to have no interest in whether assets seized by the Government or identified for forfeiture and claimed by Mr. Lacey are subject to forfeiture. The exception to that general proposition might be the one we discussed when we met – if there were an argument that the assets are not subject to forfeiture because they are not proceeds of a crime because no crime was committed, as opposed to them not being proceeds because they can be traced to an entirely legitimate source. Excluding arguments regarding whether a crime was

Dominic Lanza
Kevin Rapp
May 14, 2018
P a g e | **3**

committed, our analysis is that Tom and Janey may ethically participate in the forfeiture case by doing things such as identifying and tracing Mr. Lacey's assets, conducting legal research, drafting motions pertaining to the seizure and/or forfeiture of Mr. Lacey's assets, and analyzing constitutional issues implicated by the seizure of Mr. Lacey's assets.  Notably, Janey has been functioning in this role with Mr. Kucera and with Dom for some time and we expect that the Government might prefer to interact with someone who is knowledgeable about the identity and location of assets.

   **4. Purely Legal Matters**

As you know, Tom and Janey have been involved in matters relating to Village Voice Media, New Times, and Backpage for many years and as a consequence, they have previously considered many of the legal and constitutional issues presented by this case.  They would like to be able to continue to participate on Mr. Lacey's behalf with respect to purely legal matters, by conducting legal research, drafting and revising legal memoranda, and consulting with other lawyers on exclusively legal issues.  It is important to note that they would be conducting legal research, not applying the research to the facts.  (As an example and to put this in context, assuming the Government agrees that legal research related to forfeiture issues is not adverse to Mr. Ferrer, there would be additional research in the area of First Amendment law, as it relates to forfeiture.)  Mr. Ferrer cannot be adverse to Mr. Lacey with respect to the law, so we hope this is an area that the Government will not object to as well, provided that the work is limited to developing legal arguments and not relying on Mr. Ferrer's confidences.

   **5. Administrative Tasks**

Janey has played a central administrative role on the defense team, doing things such as scheduling calls with counsel, coordinating meetings and logistics, managing documents and the database and providing counsel with documents as requested.  None of this involves information obtained from Mr. Ferrer or is adverse to his interests.  It is, though, enormously helpful to the defense team because of Janey (and Tom's) institutional memory; they know what documents exist and how to put their hands on them.  They, of course, would not do anything that reveals confidential communications from Mr. Ferrer.  Instead, they (primarily Janey) would simply facilitate the orderly administration of this potentially unwieldy case, something that is especially helpful for people new to the case.  They would be receiving or retrieving the documents and disseminating them, not performing the analysis of them.

*\* \* \**

Neither Tom nor Janey see their roles going forward as being part of the trial team.  They understand that their prior representation of Mr. Ferrer precludes that.  If we can come to an agreement and if the Court agrees, they will draft a limited engagement letter and set up all of the necessary shields and screens to prohibit participation adverse to Mr. Ferrer.  We think they can serve a role that allows them to use the long history they have representing Village Voice Media, the New Times, Mr. Lacey personally and Backpage to the benefit of Mr. Lacey, without doing anything that is adverse to Mr. Ferrer or reveals his client confidences.  We think such a role nicely balances Mr.

Dominic Lanza
Kevin Rapp
May 14, 2018
P a g e | **4**

Ferrer's legitimate interest in ensuring that confidential information he shared with his lawyers will not be revealed and used to his detriment and Mr. Lacey's Sixth Amendment interest in having counsel of his choice.  *See In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988) ("While we have recognized that a district court has some discretion to limit the exercise of the right to counsel of choice when insistence upon it would … interfere with the ethical and orderly administration of justice, … we have also warned that disqualification of … counsel should be a measure of last resort") (internal citations omitted).  As you undoubtedly recognize, such a resolution avoids the litigation of difficult issues and eliminates potential appellate issues.  In that regard, if we can come to an agreement concerning the role Henze Cook Murphy will play, Mr. Lacey will execute appropriate waivers upon the advice of independent counsel.

      Thank you again for your willingness to engage with us on these issues.  We all appreciate it.

      Sincerely,

      MITCHELL | STEIN | CAREY | CHAPMAN, PC

By:   */s/ Lee Stein*
      Lee Stein
      Anne Chapman