# **Exhibit G**

Case 2:13-cv-03952-DMC-JAD   Document 1   Filed 06/26/13   Page 1 of 17 PageID: 1

DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, NY  10019-6708
Telephone:  (212) 489-8230

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150

McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
210 Park Ave., Suite 301
Florham Park, N.J. 07932
Telephone: (973) 635-6300

*Attorneys for Plaintiff Backpage.com, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACKPAGE.COM, LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>JOHN JAY HOFFMAN, Acting Attorney General of the State of New Jersey; JOHN L. MOLINELLI, Bergen County Prosecutor; CAROLYN A. MURRAY, Essex County Prosecutor; GAETANO T. GREGORY, Hudson County Prosecutor; FREDRIC M. KNAPP, Morris County Acting Prosecutor; CAMELIA VALDEZ, Passaic County Prosecutor; DAVID WEAVER, Sussex County Prosecutor; GRACE H. PARK, Union County Acting Prosecutor; JAMES P. MCCLAIN, Atlantic County Prosecutor; ROBERT D. BERNARDI, Burlington County Prosecutor; | No. _____<br><br>**VERIFIED COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF N.J.S.A. § 2C:13-10 (P.L. 2013, c.51 § 12)** |

*Caption continued on next page*

WARREN W. FAULK, Camden County Prosecutor; ROBERT L. TAYLOR, Cape May County Prosecutor; JENNIFER WEBB-MCRAE, Cumberland County Prosecutor; SEAN DALTON, Gloucester County Prosecutor; ANTHONY P. KEARNS, III, Hunterdon County Prosecutor; ANDREW C. CAREY, Middlesex County Prosecutor; CHRISTOPHER J. GRAMICCIONI, Monmouth County Prosecutor; JOSEPH D. CORONATO, Ocean County Prosecutor; JOHN T. LENAHAN, Salem County Prosecutor; GEOFFREY D. SORIANO, Somerset County Prosecutor; and RICHARD T. BURKE, Warren County Prosecutor,

Defendants, in their official capacities

## LOCAL CIVIL RULE 10.1 STATEMENT

1. The mailing addresses of the parties to this action are:

Backpage.com, LLC
P.O. Box 192307
Dallas, TX 75219

John Jay Hoffman, Attorney General of the State of New Jersey
P.O. Box 080
Trenton, NJ  08625-0080

John L. Molinelli, Bergen County Prosecutor
10 Main Street
Hacksensack, NJ  07601

Carolyn A. Murray, Essex County Prosecutor
Veterans Courthouse, 50 West Market Street
Newark, NJ  07102

Gaetano T. Gregory, Hudson County Prosecutor
595 Newark Avenue
Jersey City, NJ  07306

2

Fredric M. Knapp, Morris County Prosecutor
P. O. Box 900 – Court Street
Morristown, NJ  07963

Camelia Valdez, Passaic County Prosecutor
401 Grand Street
Paterson, NJ  07505

David Weaver, Sussex County Prosecutor
19-21 High Street
Newton, NJ  07860

Grace H. Park, Union County Prosecutor
32 Rahway Avenue
Elizabeth, NJ  07202

James P. McClain, Atlantic County Prosecutor
4997 Unami Boulevard, Suite 2
May Landing, NJ  083330

Robert D. Bernardi, Burlington County Prosecutor
49 Rancocas Road
Mt. Holly, NJ  08060

Warren W. Faulk, Camden County Prosecutor
25 North Fifth Street
Camden, NJ  08102

Robert L. Taylor, Cape May County Prosecutor
DN-110, 4 Moore Road, 110 Justice Way
Cape May Court House, NJ  08210

Jennifer Webb-McRae, Cumberland County Prosecutor
43 Fayette Street
Bridgton, NJ  08302

Sean Dalton, Gloucester County Prosecutor
2 South Broad Street
P. O. Box 337
Woodbury, NJ  08096

Anthony P. Kearns, III, Hunterdon County Prosecutor
65 Park Avenue

P. O. Box 756
Flemington, NJ 08822

Joseph L. Bocchini, Jr., Mercer County Prosecutor
209 S. Broad Street
Trenton, NJ 08608

Andrew C. Carey, Middlesex County Prosecutor
Public Safety Building, 25 Kirkpatrick Street, 3rd Floor
New Brunswick, NJ 08901

Christopher J. Gramiccioni, Monmouth County Prosecutor
132 Jersey Avenue
Freehold, NJ 07728

Joseph D. Coronato, Ocean County Prosecutor
119 Hooper Avenue
Toms River, NJ 08754

John T. Lenahan, Salem County Prosecutor
Fenwick Building, Second Floor, 87 Market Street
P. O. Box 462
Salem, NJ 08079

Geoffrey D. Soriano, Somerset County Prosecutor
40 North Bridge Street
Somerville, NJ 08876

Richard T. Burke, Warren County Prosecutor
413 Second Street
Belvidere, NJ 07823

Plaintiff Backpage.com, LLC ("Backpage.com") alleges and complains as follows:

### 1. INTRODUCTION

1. This is an action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin enforcement of a recently-enacted New Jersey statute, P.L. 2013, c.51 § 12, to be codified as N.J.S.A. § 2C:13-10 (the "Act"), that, if allowed to take effect, would impose an intolerable burden on speech, in violation of the Communications

Decency Act of 1996, 47 U.S.C. § 230, and the First and Fourteenth Amendments and Commerce Clause of the United States Constitution.

2. Scheduled to take effect July 1, 2013, the Act will, by threat of criminal prosecution, force websites and others to become the government's censors of third-party users' content. Although a goal of preventing sex trafficking of children is laudable, the law is not. It threatens 20 years' imprisonment, a minimum $25,000 fine, and mandatory sex offender registration against anyone who knowingly publishes, disseminates or displays *or* anyone who "causes … indirectly" the publication, dissemination, or display of content that contains an explicit or even "implicit" offer of any sexual contact for "something of value" in New Jersey if the content includes an image that turns out to be of a minor. Because of its expansive language (*e.g.*, "indirectly" "causes"), the law applies not only to online classified ad services like Backpage.com, but also to any website that allows third parties to post content (including user comments, reviews, chats, and discussion forums) and to social networking sites, search engines, internet service providers, and more.

3. Backpage.com supports the State's efforts to punish those who actually engage in child sex trafficking. A portion of the Act does this, by making it a crime to "knowingly purchase[] advertising in this State for a commercial sex act which includes the depiction of a minor." N.J.S.A. § 2C:13-10.b(2). Backpage.com does not challenge this portion of the Act. The remainder of the law, however, is not rationally tailored to combat sex trafficking, but instead seeks to impose Internet censorship in a manner that would burden or eliminate substantial amounts of lawful speech.

4. The law expressly states that it is *not* a defense that the defendant did not know that an image contained in a post was of a minor. Instead, to avoid prosecution, the defendant must obtain governmental or educational identification for the person depicted, even if that identification does *not* contain a photograph. This means that every service

provider—no matter where headquartered or operated—must review *each and every* piece of third-party content posted on or through its service to determine whether it may be an "implicit" offer for a commercial sex act in New Jersey, and whether it includes a depiction of a person, and, if so, the provider must obtain and maintain a copy of identification. These obligations would threaten the practice of hosting third-party content online.

5. The Act plainly contravenes well-settled federal law. Section 230 to the Communications Decency Act prohibits interactive computer service providers from being "treated as the publisher or speaker of any information" provided by a third party and expressly preempts state laws inconsistent with this protection. In addition, the First and Fourteenth Amendments to the Constitution prohibit state laws that severely inhibit and impose strict criminal liability on speech, as the Act does. Finally, the Constitution's Commerce Clause also prohibits states from passing and enforcing laws, like the Act, that regulate activity beyond the state's borders.

6. Federal courts in Tennessee and Washington have entered permanent injunctions prohibiting those states from enforcing statutes that are identical to the Act in all material respects. *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, __ F. Supp. 2d __, 2013 WL 1558785 (M.D. Tenn. Jan. 3, 2013). In both cases, the courts held that the statutes were unconstitutional and unenforceable on all of the grounds Backpage.com advances here.

7. If this Court does not enjoin enforcement of the Act, Backpage.com and other service providers throughout the nation that cannot possibly review the millions of third-party posts processed by their services will have a daunting choice—either block most or all third-party content or risk first-degree criminal charges, penalties and imprisonment. Eliminating or significantly impairing online forums for free speech in this way will cause

irreparable harm to online providers and the public at large, who will lose lawful avenues for free expression on the Internet.

## II. PARTIES

8. Plaintiff Backpage.com, LLC is a limited liability company, organized and existing under the laws of the state of Delaware, with its principal place of business in Dallas, Texas.

9. Defendant John Jay Hoffman is Acting Attorney General of the State of New Jersey.

10. The remaining defendants are the county prosecutors in New Jersey for each of the counties as identified in the caption above and in the Rule 10.1 statement in paragraph 1. They are responsible for the enforcement of criminal laws of the State of New Jersey and for initiating proceedings for the arrest and prosecution of individuals suspected of first-degree criminal offenses and for civil actions in which their respective counties are parties.

11. All defendants are sued in this action in their official capacities as representatives of the State of New Jersey and their respective counties.

## III. JURISDICTION AND VENUE

12. This Court has jurisdiction of this action under 28 U.S.C. § 1331 because Backpage.com alleges a violation of 42 U.S.C. § 1983.

13. This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because all of the Defendants in this action are located and reside in this judicial district.

## IV. FACTUAL ALLEGATIONS

15. In 2010, a group of state attorneys general ("AGs") demanded that the online classified ad service Craigslist remove its adult services category from its website. In response to this pressure, Craigslist did remove the adult services category in 2010. Almost immediately, adult ads migrated to other categories and websites, including Backpage.com.

16. Upon information and belief, Backpage.com is the second largest online classified advertising service in the United States. Backpage.com allows users to post in a multitude of categories (*e.g.,* local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, forums, dating, adult, and services) and subcategories.

17. In September 2011, the National Association of Attorneys General ("NAAG") publicly released a letter, joined by New Jersey's then-AG, demanding that Backpage.com remove the adult category and requesting numerous categories of information from Backpage.com "in lieu of a subpoena." At the time, NAAG's President, Washington AG Rob McKenna, admitted that state AGs "have little legal standing to forcibly shut down the site" and that the Communications Decency Act provided "broad immunity" to websites for third-party content, presenting a "high barrier" for any actions that state AGs might pursue.

18. Backpage.com attempted to cooperate with NAAG, but has resisted the demand to eliminate its adult category, maintaining that selective online censorship is not a solution to trafficking and child exploitation, but rather that technology and responsible businesses such as Backpage.com can help address and combat these problems.

19. Backpage.com takes numerous steps to prevent any abuse of its site. It prohibits users from misusing its site for illegal purposes, including human trafficking and sexual exploitation of children, and reports suspect user-submitted posts to the authorities. It employs extensive voluntary monitoring measures to prevent and remove improper postings, including automated filtering and two rounds of manual review of individual postings. And

Backpage.com collaborates and cooperates with law enforcement officials, for example by responding to subpoenas, usually within 24 hours of receipt.

20. In 2012, Washington State enacted a statute that created a felony offense labeled "advertising commercial sexual abuse of a minor." Wash. Rev. Code Ann. § 9.68A.104. Backpage.com brought suit shortly before that law was to take effect, and the United States District Court for the Western District of Washington entered a temporary restraining order enjoining enforcement of the law. The court entered a preliminary injunction on July 27, 2012. *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d at 1262. The Washington law has since been permanently enjoined.

21. Tennessee enacted a similar law in May 2012. Backpage.com brought suit challenging that statute as well, and the United States District Court of the Middle District of Tennessee issued a preliminary injunction preventing enforcement of the law on January 3, 2013. *Backpage.com, LLC v. Cooper*, 2013 WL 1558785. On March 19, 2013, the court converted its preliminary injunction to a permanent injunction and declared the Tennessee law invalid.

22. In October 2012, the New Jersey Assembly and Senate introduced identical versions of a bill (A.3352 and S.2239) entitled "Human Trafficking Prevention, Protection, and Treatment Act." The bills proceeded as A.3352, which, in section 11, created a new offense entitled "advertising commercial sexual abuse of a minor."

23. The legislative history indicates that the Act was modeled on the Washington law referenced above, Wash. Rev. Code Ann. 9.68A.104.

24. During hearings on the Act, legislators indicated the law was intended to target Backpage.com and burden escort ads and similar Internet postings. The legislative findings in the Act state that "craigslist.com removed its escort section, but another website with an escort section, backpage.com, has to date refused to do so[.]" N.J.S.A. § 2C:13-10(a)(5).

25. Both houses of the New Jersey legislature approved A.3352 on March 21, 2013, with the advertising provision largely unchanged from the initial bill. The Governor signed the bill into law on May 6, 2013. Enacted as P.L. 2013, c.51 § 12, the Act will be codified at N.J.S.A. § 2C:13-10.

26. As enacted, the Act provides:

> b. A person commits the offense of advertising commercial sexual abuse of a minor if:
>
> (1) the person knowingly publishes, disseminates, or displays, or causes directly or indirectly, to be published, disseminated, or displayed, any advertisement for a commercial sex act, which is to take place in this State and which includes the depiction of a minor; or
>
> (2) the person knowingly purchases advertising in this State for a commercial sex act which includes the depiction of a minor.[1]
>
> c. A person who commits the offense of advertising commercial sexual abuse of a minor as established in subsection b. of this section is guilty of a crime of the first degree. Notwithstanding the provisions of N.J.S.2C:43-3, the fine imposed for an offense under this section shall be a fine of at least $25,000, which shall be collected as provided for the collection of fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4) and forwarded to the Department of the Treasury to be deposited in the "Human Trafficking Survivor's Assistance Fund" established by section 2 of P.L.2013, c.51 (C.52:17B-238).
>
> d. Nothing in this section shall preclude an indictment and conviction for any other offense defined by the laws of this State.
>
> e. For the purposes of this section:
>
> "Advertisement for a commercial sex act' means any advertisement or offer in electronic or print media, including the Internet, which includes either an explicit or implicit offer for a commercial sex act to occur in this State.
>
> "Commercial sex act" means any act of sexual contact or sexual penetration, as defined in N.J.S.2C:14-1, or any prohibited sexual act, as defined in N.J.S.2C:24-4, for which something of value is given or received by any person.

---

[1] As noted above, Backpage.com does not challenge section b(2) of the Act.

"Depiction" means any photograph or material containing a photograph or reproduction of a photograph.

"Minor" means a person who is under 18 years of age.

"Photograph" means a print, negative, slide, digital image, motion picture, or videotape, and includes anything tangible or intangible produced by photographing.

    f.    It shall not be a defense to a violation of this section that the defendant:

(1) did not know the age of the minor depicted in the advertisement; or

(2) claims to know the age of the person depicted, unless there is appropriate proof of age obtained and produced in accordance with subsections g. and h. of this section.

    g.    It shall be a defense to a violation of this section that the defendant made a reasonable, bona fide attempt to ascertain the true age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written representations of the minor's age, or the apparent age of the minor as depicted. The defendant shall prove the defense established in this subsection by a preponderance of the evidence.

    h.    The defendant shall maintain and, upon request, produce a record of the identification used to verify the age of the person depicted in the advertisement.

27.    Absent relief from this Court, the Act will take effect July 1, 2013.

28.    Backpage.com and numerous other online service providers face a threat of prosecution under the Act if it is allowed to go into effect, based on its vague standards criminalizing dissemination of any third-party content containing an "implicit offer" of sex for "something of value" and a depiction of a minor, with no requirement of scienter and no defense that an online service provider did not know or had no reason to know that the person depicted in an online post was a minor.

29.    Backpage.com and numerous other online service providers will suffer immediate and irreparable harm if the Act is allowed to go into effect, because the threat of

criminal prosecution under the law will require them to undertake the impossible task to review and censor third-party content, obtain and retain the required forms of identification from all third-party users seeking to post such content, or block content altogether.

30. The public and particularly Internet users desiring to post third-party content will be irreparably harmed if the Act is allowed to take effect because their rights of free speech will be burdened or precluded.

## V. CLAIMS FOR RELIEF

### CLAIM I: VIOLATION OF AND PREEMPTION UNDER THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, PURSUANT TO 42 U.S.C. § 1983

31. Backpage.com incorporates all previous paragraphs as if fully set forth herein.

32. Backpage.com is an "interactive computer service" within the meaning of 47 U.S.C. § 230, because it operates the interactive online classified ad service Backpage.com.

33. The Act violates Backpage.com's rights under 47 U.S.C. § 230(c)(1), because enforcement of the new law would treat Backpage.com, a provider of an interactive computer service, as the publisher or speaker of information provided by another information content provider.

34. The Act is a "State … law that is inconsistent with" Section 230, in direct violation of 47 U.S.C. § 230(e)(3).

35. The Act violates and is preempted by Section 230 of the CDA, and it therefore should be enjoined and declared invalid.

### CLAIM II: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

36. Backpage.com incorporates all previous paragraphs as if fully set forth herein.

37. The Act is invalid under the First and Fourteenth Amendments of the United States Constitution because it purports to impose strict criminal liability on online service

providers such as Backpage.com and others for third-party content, in the absence of proof of scienter, particularly concerning knowledge of the age of any individual depicted in such content.

38. The Act is invalid under the First Amendment because it is a content-based restriction that impermissibly chills a substantial amount of protected speech, is not narrowly tailored to serve the State's asserted interests, and is far from the least restrictive alternative available to address the State's interests.

39. The Act is invalid under the First Amendment as an overbroad statute because it criminalizes fully protected speech.

40. The Act is invalid under the First Amendment as an unduly vague state regulation, because it imposes severe criminal liability without providing reasonable notice of what speech is prohibited.

### CLAIM III: VIOLATION OF THE COMMERCE CLAUSE OF THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

41. Backpage.com incorporates all previous paragraphs as if fully set forth herein.

42. The Act violates the Commerce Clause of the United States Constitution because it attempts to regulate commercial transactions that take place wholly outside the State of New Jersey.

43. The Act violates the Commerce Clause of the United States Constitution because it seeks to apply New Jersey law in a manner that constitutes an unreasonable and undue burden on interstate commerce that is excessive in relation to any local benefit conferred on the State of New Jersey and is likely to subject parties to inconsistent state regulations.

### CLAIM IV: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

44. Backpage.com incorporates all previous paragraphs as if fully set forth herein.

45. This action presents an actual case or controversy between Backpage.com and Defendants concerning the validity and enforceability of the Act.

46. Because the Act violates the CDA, 47 U.S.C. § 230, and the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution, Backpage.com asks for a declaration pursuant to 28 U.S.C. § 2201 that the law is invalid and unenforceable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Backpage.com, LLC respectfully requests that the Court:

1. Declare that N.J.S.A. § 2C:13-10.b(1) and all other provisions of the Act as they relate to section b(1) violate and are preempted by 47 U.S.C. § 230, are unconstitutional under the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution, and are therefore invalid and unenforceable;

2. Preliminarily and permanently enjoin Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them from taking any actions to enforce the Act (other than section b(2)), including any investigation, subpoena, arrest, and/or prosecution under the law.

3. Award Backpage.com its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. Award Backpage.com such other and further relief as the Court deems just and proper.

DATED this 26th day of June, 2013.

McCusker, Anselmi, Rosen & Carvelli, P.C.

By  *s/ Bruce S. Rosen*
    Bruce S. Rosen
    210 Park Ave., Suite 301
    Florham Park, NJ  07932

Telephone: 973-635-6300
Fax: 973-456-0726
E-mail: brosen@marc-law.com

DAVIS WRIGHT TREMAINE LLP
Robert Balin
1633 Broadway, 27th Floor
New York, NY 10019-6708
Telephone: 212-489-8230
Fax: 212-489-4340
E-mail: robertbalin@dwt.com

DAVIS WRIGHT TREMAINE LLP
James C. Grant, *Pro hac vice* application to be filed
Eric M. Stahl, *Pro hac vice* application to be filed
Ambika K. Doran, *Pro hac vice* application to be filed
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: 206-757-8096
Fax: 206-757-8096
E-mail: jamesgrant@dwt.com
E-mail: ericstahl@dwt.com
E-mail: ambikadoran@dwt.com

MCCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
Bruce S. Rosen
210 Park Ave., Suite 301
Florham Park, N.J. 07932
Telephone: 973-635-6300
Fax: 973 456 -0726
Email: brosen@marc-law.com

*Attorneys for Plaintiff Backpage.com, LLC*

15

## LOCAL RULE 11.2 CERTIFICATION

  Pursuant to Local Civil Rule 11.2, Backpage.com certifies that the matter in controversy in this action is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.  However, Backpage.com expects that another plaintiff, the Internet Archive, will file a similar lawsuit in this Court on or about the date of this filing.

          MCCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.

          By *s/ Bruce S. Rosen*
            Bruce S. Rosen
            210 Park Ave., Suite 301
            Florham Park, NJ  07932

## VERIFICATION

I, Carl Ferrer, declare as follows:

1. I have read the forgoing COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF N.J.S.A. § 2C:13-10 (P.L. 2013, c.51 § 12).

2. I am the Chief Operating Officer of Backpage.com, LLC, the plaintiff in this action, and I am authorized to make this verification for and on its behalf. I am competent to testify to the matters stated herein. I make this verification based on my personal knowledge and business records of Backpage.com, LLC.

3. I verify that the factual statements in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 25, 2013 at Dallas, Texas.

_____
Carl Ferrer