Thomas H. Bienert, Jr., State Bar No. 135311
*(Admitted Pro Hac Vice)*
tbienert@bmkattorneys.com
Kenneth M. Miller, State Bar No. 151874
*(Admitted Pro Hac Vice)*
kmiller@bmkattorneys.com
John L. Littrell, State Bar No. 221601
*(Admitted Pro Hac Vice)*
jlittrell@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700 / Facsimile (949) 369-3701

Attorneys for Defendant
James Larkin

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  vs.<br><br>Michael Lacey, et al.,<br><br>  Defendants. | Case No. CR-18-00422-PHX-SPL (BSB)<br><br>**DEFENDANT JAMES LARKIN'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO AMEND THE CONDITIONS OF HIS PRETRIAL RELEASE**<br><br>(Oral Argument Requested)<br><br>Date: July 20, 2018<br>Time: 1:30 p.m.<br>Place: Sandra Day O'Connor<br>       United States Courthouse Courtroom 304<br>       401 W. Washington St.<br>       Phoenix, Arizona 85003<br><br>Judge: Bridget S. Bade |

Defendant James Larkin, through his undersigned counsel of record, hereby replies to the government's Response to Motion to Amend Release Conditions of Defendant Larkin's Pretrial Release ("Response"). While U.S. Pretrial Services takes no position on this motion, and will not object to Mr. Larkin's traveling throughout Arizona and

California if his electronic monitor is removed, the government raises the following objections to the proposed amendments.

First, the government claims there are no changed circumstances that warrant amending Mr. Larkin's release conditions from those stipulated in the original release order. But changed circumstances are not required to amend release conditions, and even if they were, there are compelling new circumstances (*i.e.*, Mr. Larkin's need to support his daughter and be with his wife) that justify a motion to amend his release conditions.

Second, the government unjustifiably claims Mr. Larkin made a false statement at his bail hearing and engaged in misconduct in separate civil litigation. But Mr. Larkin's statement at his bail hearing was demonstrably true (he has not controlled Backpage since he sold it) and the assertion he engaged in misconduct in separate civil litigation is patently meritless (because it is not misconduct to deny the government's charges).

Third, the government makes the baseless assertion that "since his arrest, the weight of the evidence against [Mr. Larkin] has increased." In fact, the government's allegations (not evidence) don't differ from the time of Mr. Larkin's Indictment and the "weight" the government gives its allegations is seriously overblown.

Additionally, the government simply ignores Mr. Larkin's compelling need to amend his release conditions to support his daughter and be with his wife. Because electronic monitoring is not necessary and interferes with Mr. Larkin's pressing need to be with and support his family, it should be omitted. And because limiting Mr. Larkin's travel to Maricopa County is required only because of the electronic monitoring, that condition should be removed, too.

1. There Are Changed Circumstances (Even Though None Are Required)

The government faults Mr. Larkin for "fail[ing] to articulate changed circumstances" to justify his motion to amend his release conditions. Response at 3. But the plain language of 18 U.S.C. § 3142(c)(3) has no such requirement and that resolves

the issue.[1]  In fact, the single sentence from the Senate Report that the government cites to support the alleged changed-circumstance requirement does not even say that changed circumstances are required.[2]  And the unpublished district court opinion from the First Circuit that the government cites to support its position is not persuasive authority to the contrary.[3]

The government goes on to cite numerous cases noting that changed circumstances are expressly required by the text of Section 3142(f) to reopen a detention hearing.  Response at 3-4.  But the government apparently fails to appreciate that those cases are irrelevant since (as the government acknowledges) there was no detention hearing here to reopen.

Regardless, these legal technicalities are beside the point.  As stated in his original motion, the new conditions include "the impact of the electronic monitoring and travel restrictions on Mr. Larkin's ability to support his daughter and the impact of the travel restrictions on Mr. Larkin's ability to be with his wife."  Doc. 183 at 3 n.1.  Having never worn an electronic monitor before, there is no way Mr. Larkin could have foreseen how it would impact his relationship with his wife and daughter.  But it has clearly undermined

---

[1] *See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007) (*"But what of the provision's literal language? The matter is important, for normally neither the legislative history nor the reasonableness of the Secretary's method would be determinative if the plain language of the statute unambiguously indicated that Congress sought to foreclose the Secretary's interpretation."*).

[2] "The final sentence of Section 3142(c) retains the authority now set forth in 18 U.S.C. § 3146(e) for the court to amend the release order at any time to impose different or additional conditions of release. This authorization is based on the possibility that a changed situation or new information may warrant altered release conditions."  1983 WL 25404 at *16.

[3] *See, e.g., United States v. Hutchins,* 298 F.Supp.3d 1205, 1208 (E.D. Wisc. 2017) (Certainly, in the government's primary citation, *United States v. Lafrance* . . . . modification of the release conditions was not warranted. . . .  Moreover, this Court is not prepared to accept *Lafrance*'s broad statement that mere compliance with release conditions is *never* sufficient to warrant a reduction thereof. Consequently, the Court finds the case to be of little relevance here."

his ability to be with his wife. Moreover, as explained in the original motion:

> [T]he situation is made far worse because [Mr. Larkin's daughter] was greatly affected by the FBI raid on the Larkins' home. The agents knew Mr. Larkin was not in the home. Still, a number of agents burst into her small bedroom, some with masks and machine guns, to shout at her to awake. She is in great fear for her, her mother's and her father's safety. Sadly, the travel restrictions undermine Mr. Larkin's ability to provide her with necessary emotional support.

Doc. 183 at 5. Mr. Larkin was arrested at the airport and was not at his home when agents raided it. He was in custody from that time through the time his release conditions were negotiated. He could not, and did not, appreciate the full scope of the agents' conduct and its impact on his daughter.[4]

2. <u>Mr. Larkin Made a Provably True Statement at his Bail Hearing and Engaged in No Misconduct in Related Civil Litigation</u>

The government's claims that Mr. Larkin has engaged in misconduct are meritless. First, the government argues that Mr. Larkin's statement at his bail hearing--"I haven't been in control [of Backpage] for three years"--is false. But the government admits that Backpage was sold to a company controlled by Carl Ferrer in 2015. The government cannot deny that Ferrer was Backpage's CEO. And it is plain Ferrer actually controlled Backpage. For example, Ferrer caused Backpage to plead guilty to money laundering in *United States v. Backpage.com LLC et al.*, CR 18-00465-PHX-SPL, which Ferrer could only do because he *controlled* Backpage (and which Larkin could not prevent, because Larkin did *not* control Backpage). Ferrer also caused Backpage to forfeit its interest in many millions of dollars, which he could do only because *he* (not Larkin) controlled

---

[4] By focusing on changed circumstances, the government is trying to deny Mr. Larkin relief on a technicality. The government touts the fact the current release conditions were negotiated over 10 days. The government fails to appreciate that during that 10-day negotiation, one of the parties was incarcerated and the other was not. Logic and the law dictate that this Court give little weight to the fact Mr. "Larkin's release conditions resulted from a stipulated agreement between him and the government." Doc. 197 at 2.

Backpage.

The government's claims (even if true) that Mr. Larkin had "numerous discussions" with Ferrer about circumventing conventional bankers, met with Ferrer to "discuss the management" of Backpage and "insisted that he retain management of the legal strategy" of Backpage would not establish that the sale was "a sham" or that Mr. Larkin "controlled" Backpage.  Response at 5.  Mr. Larkin does not deny that he met with Ferrer after the sale of Backpage to Ferrer.  After the sale, Ferrer owed Mr. Larkin's companies millions of dollars and Mr. Larkin was entitled to certain information about the company under agreements related to that sale.  The government apparently intends to argue at trial that this amounted to "control" of Backpage.  But that is *just* an argument; and it is a weak argument given the undeniable proof that Ferrer *actually controlled* Backpage (which his dealings *with the government* prove).

The government next claims Mr. Larkin engaged in misconduct because he was sanctioned by a trial court in Washington State.  The sanctions were imposed because civil defendants, including companies in which Mr. Larkin had an ownership interest, denied wrongdoing in a civil action that asserted some of the same claims that are charged in the Indictment here.  Defendants denied wrong doing in their answer, responses to interrogatories, responses to requests for admissions and elsewhere.  But after Ferrer and Backpage pled guilty in Arizona federal court, the Washington court concluded those denials must have been done in bad faith.  *See* 5/23/18 Hearing Transcript at 45-55 and 64-65.[5]  And the government is asserting that finding as a basis to allege Mr. Larkin engaged in misconduct.  Response at 5-6.

In short, the government is claiming Mr. Larkin engaged in misconduct by denying the government's charges.  When properly understood, the argument is patently frivolous.  Ferrer had his own reasons for pleading guilty and those reasons will be explored at trial.  But his decision to plead guilty does not suggest Mr. Larkin has engaged in misconduct by consistently and repeatedly denying the charges.

---

[5] The full transcript is attached as Exhibit 1.

3. <u>There Is No New Evidence and the Government Overstates Its Weight</u>

The government's third argument is that "since [Mr. Larkin's] arrest, the weight of the evidence against him has increased." Response at 2. But the government does not allege any new facts (and presents no evidence). Every case, factual allegation and argument the government cites existed and was known at the time of Mr. Larkin's indictment. And the government overstates the weight of the so-called evidence it does cite.

The government cites three cases that supposedly show courts have accepted the argument that advertising publishers can be liable for facilitating prostitution. Response at 7-8. But each of these cases—*United States v. Omuro,* N.D. Cal 14-CR-336, *United States v. Hurant,* E.D.N.Y. 16-CR-45 and the www.escorts.com forfeiture case—was based on a guilty plea. "The results in these cases are hardly surprising"[6]—not for the reasons given by the government—but because they only confirm the government's overwhelming power to force guilty pleas. The government does not—and cannot—cite a single contested case that resulted in a conviction that supports its theory of prosecution.

The government's citations to opinions in recent civil litigation do not help its cause, either. Response at 9-10.

- While the court in *J.S. v. Village Voice Media Holdings, Inc.,* 359 P.3d 714, 715-716 (Wash. 2015) denied a motion to dismiss civil claims, it did so after noting: it must accept all plaintiffs' allegations as true; motions to dismiss are disfavored (in Washington); and, Backpage had to show the plaintiff's action was baseless beyond a reasonable doubt. The three sentence denial of Backpage's summary judgment motion--*with no analysis*--is not "telling."
- The denial of the motion to dismiss in *Jane Doe No. 1 v. Backpage.com, LLC,* 2018 WL 1542056 at 1* (D. Mass. 2018) is far from solid support for the government's theory. Rather, the court dismissed the complaints of two plaintiffs

---

[6] Reply at 8.

on immunity grounds, and denied the motion as to a third plaintiff only after "drawing all reasonable inferences in Plaintiff's favor, [finding] a modicum of support for the notion that Backpage has substantively changed an ad, which then support[ed] the information and belief allegation in the complaint." A "modicum of support" may be sufficient to keep a civil claim alive, but it hardly suggests that the government can prevail on its criminal charges.

- •Contrary to the government's assertion, the defense did not "conspicuously avoid noting that the *Dart* case was *dismissed*." Response at 10. The case was dismissed as moot because of "Backpage's shutdown" and because the company chose not to contest a motion to dismiss in the wake of Ferrer's plea agreement. Doc. 197-4 at 3 of 4. That fact was omitted from Mr. Larkin's motion because it has no bearing on the larger point, *i.e.,* publishing "classified ads for 'adult' services" is protected by the First Amendment. *See* Doc. 183 at 7.
- •Likewise, a court's refusal to quash a grand jury subpoena means the subpoena was not "unreasonable, oppressive, or improper." *Impounded,* 277 F.3d 407, 415 (3d Cir. 2002). That not only is a low bar that the government should not crow about clearing, but its clearing of the bar has absolutely no bearing on the merits of the government's charges.

The government delineates its allegations (not evidence) about "strip filter moderation," "aggregation" and the "Erotic Review." These are factual allegations that will be addressed at trial (assuming the case is not dismissed before then). Refusing to give undue weight to this argument is particularly appropriate given that the weight of the evidence is the least important factor in determining the least restrictive conditions necessary. *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985).

Finally, the government repeatedly and wrongly claims Mr. Larkin "bases his motion to modify release conditions primarily on First Amendment grounds." Response at 6. *See also* Response at 11. To the contrary, the motion is based on his history of facing and fighting charges like these, his exceptionally strong family and community

ties, his almost life-long history as a journalist and publisher bringing injustices to light, and he and his family's need for him to be able to travel freely between Arizona and California. The defense cites to Mr. Larkin's long and successful history of defending the First Amendment, and Backpage under the First Amendment, to prove his determination to fight this case and demonstrate that there is truly something to fight about.

Accordingly, Mr. Larkin respectfully submits that the conditions of his pretrial release be amended to omit electronic monitoring and permit unrestricted travel between California and Arizona.

Dated: June 22, 2018

BIENERT, MILLER & KATZMAN, PLC

/s/ Thomas H. Bienert, Jr.
Thomas H. Bienert, Jr.
Kenneth M. Miller
John L. Littrell
Attorneys for Defendant James Larkin

# **CERTIFICATE OF SERVICE**

I certify that on this 22nd day of June, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the attorneys of record. See attached service list.

/s/     *Toni Lindemann*
Toni Lindemann

| **COUNSEL** | **REPRESENTING** |
|---|---|
| Anne M. Chapman<br>Mitchell Stein & Carey PC<br>1 Renaissance Sq.<br>2 N Central Ave., Ste. 1900<br>Phoenix, AZ 85004<br>Email: anne@mscclaw.com | Henze Cook Murphy, PLC |
| Lee Stein<br>Mitchell Stein & Carey PC<br>1 Renaissance Sq.<br>2 N Central Ave., Ste. 1900<br>Phoenix, AZ 85004<br>lee@mscclaw.com | Henze Cook Murphy, PLC |
| James C. Grant<br>Davis Wright Tremaine LLP<br>1201 3rd Ave., Ste. 2200<br>Seattle, WA 98101-3045<br>jimgrant@dwt.com | Michael Lacey |
| Robert Corn-Revere<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW, Ste. 800<br>Washington, DC 20006<br>bobcornrevere@dwt.com | Michael Lacey |
| Ronald G. London<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW, Ste. 800<br>Washington, DC 20006<br>ronnielondon@dwt.com | Michael Lacey |
| Paul J. Cambria, Jr.<br>Liptsitz Green Scime Cambria LLP<br>42 Delaware Ave., Ste. 120<br>Buffalo, NY 14202<br>pcambria@lglaw.com | Michael Lacey |
| Janey Henze Cook<br>Henze Cook Murphy PLLC<br>4645 N 32nd St., Ste. 150<br>Phoenix, AZ 85018<br>janey@henzecookmurphy.com | Michael Lacey |
| Bruce Feder<br>Feder Law Office PA<br>2930 E Camelback Rd., Ste. 160<br>Phoenix, AZ 85016<br>bf@federlawpa.com | Scott Spear |

| | |
|---|---|
| Michael D. Kimerer<br>Kimerer & Derrick PC<br>1313 E Osborn Rd., Ste. 100<br>Phoenix, AZ 85014<br>mdk@kimerer.com | John Brunst |
| Rhonda E. Neff<br>Kimerer & Derrick PC<br>1313 E Osborn Rd., Ste. 100<br>Phoenix, AZ 85014<br>rneff@kimerer.com | John Brunst |
| Gary S. Lincenberg<br>Bird Marella<br>1875 Century Park E # 23, Los Angeles, CA 90067<br>glincenberg@birdmarella.com | John Brunst |
| Ariel A. Neuman<br>Bird Marella<br>1875 Century Park E # 23, Los Angeles, CA 90067<br>aneuman@birdmarella.com | John Brunst |
| Gopi Panchapakesan<br>Bird Marella<br>1875 Century Park E # 23, Los Angeles, CA 90067<br>gpanchapakesan@birdmarella.com | John Brunst |
| KC Maxwell<br>Browne George Ross LLP<br>101 California St., Ste. 1225<br>San Francisco, CA 94111<br>kmaxwell@bgrfirm.com | Dan Hyer |
| David Wakukawa<br>Browne George Ross LLP<br>101 California St., Ste. 1225<br>San Francisco, CA 94111<br>dwakukawa@bgrfirm.com | Dan Hyer |
| Michael L. Piccarreta<br>Piccarreta Davis Keenan Fidel PC<br>2 E Congress St., Ste. 1000<br>Tucson, AZ 85701<br>mlp@pd-law.com | Andrew Padilla |

| | |
|---|---|
| Jefferson Keenan<br>Piccarreta Davis Keenan Fidel PC<br>2 E Congress St., Ste. 1000<br>Tucson, AZ 85701<br>jlk@pd-law.com | Andrew Padilla |
| Stephen M. Weiss<br>Karp & Weiss PC<br>3060 N Swan Rd.<br>Tucson, AZ 85712<br>sweiss@karpweiss.com | Joye Vaught |
| Andrew Stone<br>US Attorneys Office<br>40 N Central Ave, Ste 1800<br>Phoenix, AZ 85004<br>andrew.stone@usdoj.gov | USA |
| John Jacob Kucera<br>US Attorneys Office - Los Angeles, CA<br>312 N Spring St., Ste. 1200<br>Los Angeles, CA 90012<br>john.kucera@usdoj.gov | USA |
| Kevin M. Rapp<br>US Attorneys Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>kevin.rapp@usdoj.gov | USA |
| Margaret Wu Perlmeter<br>US Attorneys Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>margaret.perlmeter@usdoj.gov | USA |
| Peter Kozinets<br>US Attorneys Office - Phoenix, AZ<br>2 Renaissance Square<br>40 N Central Ave., Ste. 1800<br>Phoenix, AZ 85004-4408<br>peter.kozinets @usdoj.gov | USA |