Paul J. Cambria, Jr., NY State Bar No. 15873
*(Admitted Pro Hac Vice)*
pcambria@lglaw.com
Erin McCampbell, NY State Bar No. 4480166
*(Admitted Pro Hac Vice)*
emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone (716) 849-1333 / Facsimile (716) 855-1580
*Counsel for Defendant Michael Lacey*

Thomas H. Bienert, Jr., CA State Bar No. 135311
*(Admitted Pro Hac Vice)*
tbienert@bmkattorneys.com
Kenneth M. Miller, CA State Bar No. 151874
*(Admitted Pro Hac Vice)*
kmiller@bmkattorneys.com
Anthony R. Bisconti, CA State Bar No. 269230
*(Admitted Pro Hac Vice)*
tbisconti@bmkattorneys.com
Whitney Z. Bernstein, CA State Bar No. 304917
*(Admitted Pro Hac Vice)*
wbernstein@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700 / Facsimile (949) 369-3701
*Counsel for Defendant James Larkin*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Michael Lacey, James Larkin, Scott Spear, John Brunst, Dan Hyer, Andrew Padilla, and Joye Vaught,<br><br>　　　　　　　Defendants. | No. 18-CR-00422-PHX-SPL (BSB)<br><br>**REPLY ON CROSS-MOTION FOR DISCOVERY IN RESPONSE TO UNITED STATES' MOTION TO RESOLVE PRIVILEGE ISSUES**<br><br>**Oral argument requested**<br><br>**Evidentiary hearing requested** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT..................................................................................................... 1

    A. Ferrer Cannot Waive Privileges VVMH Holds for Communications Up to April 22, 2015. ................................................................................... 1

    B. Ferrer Cannot Waive Privileges Subject to the Joint Representation Agreements. ............................................................................................ 3

    C. Judge Campbell's Order Requiring Production of Specific Documents Did Not Establish a Broad Subject Matter Waiver. ............................... 6

    D. The Government's Mischaracterizations of the Facts and the Law Prove the Need for Discovery. ............................................................... 8

III. CONCLUSION ................................................................................................ 111

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1158 (9th Cir. 1992) ................................................................................. 7

*Commodity Futures Trading Commission v. Weintraub*,
  471 U.S. 343 (1971) ................................................................................................ 2

*Glidden Co. v. Jandernoa*,
  173 F.R.D. 459 (W.D. Mich. 1997) .................................................................... 2, 3

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) ................................................................................ 6

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987) ..................................................................................... 7

*Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.
  Supp. 381, 386 (S.D.N.Y. 1975) ............................................................................ 2

*Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*,
  689 F. Supp. 841 (N.D. Ill. 1988) ....................................................................... 2, 3

*PageMasters, Inc. v. Autodesk, Inc.*,
  2009 WL 825810 (D. Ariz. Mar. 30, 2009) ............................................................ 9

*Polycast Tech. Corp. v. Uniroyal, Inc.*,
  125 F.R.D. 47 (S.D.N.Y. 1989) .......................................................................... 2, 3

*United States v. Gonzales*,
  669 F.3d 974 (9th Cir. 2012) .................................................................................. 4

*United States v. Plache*,
  913 F.2d 1375 (9th Cir. 1990) ................................................................................ 6

*The Jordan (Bermuda) Inv. Co. Ltd. v. Hunter Green Inv. Ltd.*,
  2006 WL 2773022 ................................................................................................... 3

**Other Authorities**

Paul R. Rice, *et al.*, 2 ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 9:85 (Dec.
  2017) ....................................................................................................................... 7

I. INTRODUCTION

The government's motion to "resolve privilege issues" (Doc. 195; "Mot.") seeks to eliminate all privilege protections for attorney-client communications relating to Backpage.com except for claims the government selectively asserts to try to disqualify Defendants' longtime counsel. Defendants noted in opposition (Doc. 235; "Opp.") that the government mischaracterizes the facts regarding the relationship between Backpage.com, LLC and its former parent, VVMH; the parties that retained counsel and hold privileges; and their agreements to be jointly represented and to share and preserve privileges. Defendants also showed that the government's vague and contradictory positions about what Carl Ferrer has disclosed about attorney-client communications raises serious concerns that the government has already improperly breached privileges.

Defendants' opposition therefore included a cross-motion for discovery, asking the Court to direct the government to disclose all communications with Ferrer or others about dealings with counsel, his purported waivers of privilege, and/or the parties' joint representation agreements, as well as complete disclosure about its review processes, whether it has accessed privileged or work product materials, and, if so, the extent of such access. The government has provided no response to the cross-motion on the merits. Regardless, the government's assertions underscore its serious misunderstanding of the facts and the law, providing added reason the Court should grant discovery.

II. ARGUMENT

A. **Ferrer Cannot Waive Privileges VVMH Holds.**

Prior to April 22, 2015—when Backpage.com was sold to Ferrer—VVMH retained and directed counsel relating to litigation concerning the website. *See* Opp. at 4-5, 16-17. During this period Ferrer was an employee; he interacted with counsel as a company representative and this counsel never represented him personally. *Id.* at 5, 16.

The government contests none of this, but claims the only issue is "whether Ferrer had authority to execute" "a waiver of Backpage's corporate attorney-client privilege." (Doc. 269, at 3; "Reply"). It cites *Commodity Futures Trading Commission v. Weintraub*,

1

471 U.S. 343 (1971), for the proposition that when a company is sold to new management "the authority to assert and waive the attorney-client privilege passes as well." *Reply* at 2. But that is *not* the issue here because prior to April 22, 2015, VVMH held and controlled rights as to privileged communications, and VVMH and Defendants still hold and control such rights.

The government goes on to assert that, even if a parent company had and retains interests in privileged communications, "the buyer possessed the unilateral right to waive the privilege." *Id.* at 5. This is simply wrong under the law, and the cases the government cites say the opposite. The cases all involved disputes between companies that sold subsidiaries and parties that bought them. *See id.* at 4-6 and the cases cited therein. The cases hold that parent and subsidiary companies hold privileges jointly, and in a subsequent adverse proceeding *between the parties* (*i.e.*, between the seller and the acquirer), "the privilege [will] not stand as a bar to full disclosure at the instance of any one of them." *Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 50 (S.D.N.Y. 1989) (quoting *Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F. Supp. 381, 386 (S.D.N.Y. 1975)). However, the rule is the opposite for communications that concern counsel's joint defense of the parent and subsidiary against third-party claims—in that circumstance, one party *cannot* waive privileges without consent of all parties. *See id.* ("A joint defense privilege covers conversations between actual or potential co-defendants and their attorney or attorneys for any common defense purpose; the content of such communications may not be disclosed without the consent of all co-defendants."); *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 689 F. Supp. 841, 845 (N.D. Ill. 1988) (refusing to compel disclosure of communications with prior joint counsel despite acquiring company's purported waiver; "[T]he joint defense privilege—and its requirement that all former co-defendants consent to any waiver of the privilege—applies where a corporate parent and the subsidiary are the joint defendants

and the subsidiary is later sold"; "Confidential communications between joint defendants and their counsel are shielded from third parties.").[1]

Discovery is necessary here because of the government's incorrect view that Ferrer could unilaterally waive privileges held by other parties. Defendants are entitled to know, for example, whether the government has spoken with Ferrer about dealings with counsel who were retained by and represented VVMH on the mistaken premise that Ferrer could disclose privileged communications if they merely *related* to Backpage.com (as it appears has happened, *see* Doc. 192-6 (Ferrer declaration discussing his dealings with DWT)). As for the filter team's review of over 6,500 privileged documents to date, Defendants are entitled to know if any of those documents have been disclosed or used, as it appears also has happened. *See* Mot. at 12 (indicating the "filter team" has said the reviewed documents concern "how to moderate ads" and the alleged "prevalence of prostitution ads").

### B. Ferrer Cannot Waive Privileges Subject to the Parties' Joint Representation Agreements.

The government similarly misunderstands the parties' joint representation agreements, and, in this regard, offers arguments that are in some senses indecipherable.

The government seemingly asserts that Defendants have claimed that only Davis Wright Tremaine LLP ("DWT") jointly represented VVMH, Backpage.com, LLC and related parties, and so communications with any other counsel are not covered by the

---

[1] *See also Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 472 (W.D. Mich. 1997) (noting the issue before the court was whether prior privileged communications could be disclosed in a dispute between a former parent company and an acquirer, and there was no dispute as to the "fundamental proposition[] that such communications are generally privileged from disclosure to outsiders"); *see also The Jordan (Bermuda) Inv. Co. Ltd. v. Hunter Green Inv. Ltd.*, 2006 WL 2773022, at *3 (S.D.N.Y. Sept. 27, 2006) (*Polycast* and *Medcom* represent the *inter sese* rule that privilege does not bar disclosure among former co clients "*in a subsequent adverse proceeding between them*," and an interpretation of those cases to suggest that "unilateral waiver by any joint client waives the privilege as to third parties … is contrary to the general rule") (emphasis in original; internal quotation omitted).

3

parties' agreements. *See* Reply at 7-8.[2]  As shown previously, many counsel jointly represented Ferrer Parties and Medalist Parties, both before and after the sale of Backpage.com, including Perkins Coie, Akin Gump, Paul Hastings, and other firms. *See* Opp. at 6, 12 n.14.  These and other joint counsel relationships were covered by the Common Interest and Litigation Management Agreement, which memorialized the parties' agreements to retain counsel jointly.  *See id.* at 8; Grant Decl. Ex. B (*in camera*).  Again the government attempts to confuse the facts to destroy privileges.[3]

The government offers another unfathomable argument when it asserts "[t]he First Circuit has held that, when an individual corporate officer and a corporation are jointly represented by the same attorney, the corporation can unilaterally waive the privilege over the individual officer's objection." Reply at 8.  Whether or not this is a correct statement of the law in the Ninth Circuit, it is irrelevant.  Defendants (and the Medalist Parties) have rights to preclude disclosure of the privileged information to third parties *by virtue of their joint representation agreements*; no one claims that Larkin or Lacey were corporate officers of Backpage.com, LLC after the April 2015 sale.

Otherwise, the government confuses the distinction between parties' agreements to jointly retain counsel versus joint defense agreements ("JDA"), where each party has separate counsel who work together to defend similar claims against their respective

---

[2] In a similar vein, the government asserts that "Defendants do not claim there are any joint representation agreements that involve Elizabeth McDougall," and "therefore her communications are no longer privileged."  Opp. at 14 n.3.  But Defendants explained before that Ms. McDougall originally was retained by VVMH to act as *its* general counsel and, like other counsel, her relationship and communications were covered by the joint representation agreements.  *See id.* at 5 & n.5, 8-9.  The government cannot just pretend Defendants have not said what they said.

[3] The government also suggests Defendants would have to establish that the parties entered into oral joint representation agreements with every lawyer on April 22, 2015.  Reply at 8.  This is also not the law, as the Ninth Circuit recognizes that parties' agreements for joint representation "may be implied from conduct and situation," and "it is clear that no written agreement is required." *United States v. Gonzales*, 669 F.3d 974, 979 (9th Cir. 2012).  Here, for the whole of the period from April 22, 2015 through April 6, 2018, the Ferrer Parties and the Medalist Parties worked with joint counsel, and the Common Interest Agreement expressly reflected and confirmed these arrangements.

4

clients. *See id.* at 9. The government acknowledges Ferrer cannot "unilaterally waive any *joint-defense* privileges that may exist between him, Lacey and Larkin" and says it is "not seeking access to any [such] materials." *Id.* at 9 (emphasis in original). Then the government asserts there are no rights to claim "joint defense privilege" because it says the documents before its "filter team" are not covered by the JDA entered into by Messrs. Larkin, Lacey, Ferrer and others (*see* Grant Decl. Ex. B). *Id.* at 10. Consistent with its tack throughout, the government asserts that Defendants must simply take its word about the materials it has or has not reviewed, while accepting its patent misunderstandings of the parties' agreements. The Common Interest Agreement between the Ferrer Parties and Larkin and Lacey (and the other Medalist Parties) is a joint representation agreement that provides broader protections than the JDA. It expressly precludes Ferrer from disclosing privileged communications to third parties. It applies whether or not the communications were also protected by the JDA.

The government ignores all this, and says it instructed Ferrer only that he "should not discuss JDA-protected material." Grant Decl. Ex. K, at 2. But this indicates the government took no precautions to prevent disclosure of information covered by the other, broader joint representation agreements. And, here again, the evidence reflects that Ferrer *has breached* the joint representation agreements in cooperation with the government. Ferrer and his counsel sent unsolicited letters to courts in numerous civil cases across the county misstating those agreements in an effort to interfere with continuing representation by DWT and other counsel of the Medalist parties in those cases. (Doc. 235-5, April 24, 2018 letter from N. Clarence, purporting that Ferrer could withdraw consent for DWT's representation, although he had previously expressly agreed that he could not seek disqualification). When Defendants asked the government's counsel for information about whether they had caused or participated in these communications, the government refused to respond. The joint representation agreements are privileged in their own right. Defendants are entitled to discovery to know if, as it appears, the government has worked

5

with Ferrer to have him misstate the agreements to attempt to prejudice the rights of Defendants in other cases.

### C. Judge Campbell's Order Requiring Production of Specific Documents Did Not Establish a Subject Matter Waiver.

The government also repeats its claim that Judge Campbell's order overruling privilege claims for certain specific documents containing communications of counsel with public relations consultants should result in a broad subject matter waiver requiring disclosure of essentially all privileged communications. Reply at 11 (seeking all privileged information about "ad moderation" (*i.e.*, efforts to screen and block improper content) or "whether/how to acknowledge the prevalence of prostitution ads on the Backpage website" (although the documents ordered to be produced said no such thing). *Id.* Here too the government misstates the law and the circumstances of this case.

In its effort to impose a broad subject matter waiver, the government cites cases in which parties purposefully disclosed privileged communications to advance their litigation positions, and courts held that, as a matter of fairness, the waivers extended to other communications on the same subject. *See* Reply at 11 (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (where plaintiff provided attorney's affidavit in support of summary judgment, fairness required disclosure of attorney's other communications about same subject, but did not effect a blanket waiver); and *United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990) (where defendant voluntarily testified before grand jury about his communications with counsel—even after being cautioned by U.S. attorney—he waived privilege as to same subject matter)).

Cases such as these have nothing to do with the situation here. Neither Backpage.com nor Defendants voluntarily disclosed the communications with PR consultants in this or any action. They did not use or attempt to use the documents for strategic advantage. The communications were withheld from production in response to the prior grand jury subpoena, and the specific documents were properly identified on a privilege log. The government challenged those privilege claims, asserting that

communications with PR consultants could not be protected under the attorney-client privilege or work product doctrine. Judge Campbell ruled in favor of the government, compelling production of the 154 documents previously withheld. Defendants disagree with the ruling, but complied with it in good faith.[4]

The government offers no authority for the proposition that when a court disagrees with good faith privilege claims and orders the production of specific documents that causes a broad subject-matter waiver of privileges. Here too the law is the opposite. Courts impose "subject matter" waivers only when "[f]airness compels this result [because] the disclosure was made in the context of a judicial proceeding and afforded the [party] an adversarial gain." Paul R. Rice, *et al.*, 2 ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 9:85 (Dec. 2017). In other contexts—and, more importantly, in this context—the rule is that a waiver extends only to the specific communications actually disclosed. *Id.* (citing *e.g.*, *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) (holding that attorney's disclosures of information to an author waived privilege only as the specific disclosures made)); *see also Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1158, 1162 (9th Cir. 1992) (Pennzoil's disclosure of counsel's advice about acquiring Chevron stock constituted waiver only as to communications actually disclosed, except to the extent Pennzoil affirmatively put counsel's advice at issue).

Again, Defendants are entitled to discovery in this regard. As noted, despite the supposed separation of its "filter team" and "prosecution team," the government has indicated the two groups have already discussed the substance of the privileged documents—indeed, the government points to the taint team's explanation of the documents it has reviewed as a basis for asserting that the government should be entitled to review *all* privileged documents. *See* Mot. at 12.

---

[4] Defendants reserve all rights (including appellate rights) regarding the court's order, as the majority rule is that privilege protections extend to counsels' communications with PR consultants, particularly where, as here, the consultants were retained to address legal challenges and filled roles for which the company had no in-house expertise.

7

### D. The Government's Mischaracterizations of the Facts and the Law Prove the Need for Discovery.

Defendants' cross-motion asked the Court to block any further review by the government's taint team and to allow discovery regarding whether the government has accessed privileged or work product information and the government's communications with Ferrer or others about privileged information or the joint representation agreements. Opp. at 2-3, 22-24. The cross-motion sought discovery to (1) understand and address whatever Ferrer has disclosed or purportedly waived; (2) provide a fair opportunity to respond to the "privilege issues" motion; and (3) protect Defendants' rights to seek relief, as appropriate, for improper invasions of privilege rights that have occurred. *Id.*

The government offered no opposition to Defendants' cross motion. Its only response was a footnote stating that it previously opposed Mr. Lacey's motion for disclosures in connection with the motions to disqualify counsel. *See* Reply at 16, n.4 (referring to Docs. 206, 266). While Defendants *are* entitled to discovery to respond to the disqualification motions, the cross-motion sought relief for additional and separate reasons. Among other things, the cross-motion sought discovery not just to *defend* against the government's ill-founded motions, but also to seek *affirmative relief* to address the government's conduct. Because the government offers no opposition on the merits, the cross-motion should be granted. *PageMasters, Inc. v. Autodesk, Inc.*, 2009 WL 825810, at *10 (D. Ariz. Mar. 30, 2009) (a party's failure to respond to grounds for a motion is treated as "conceding the validity of [the] argument on the merits").

Regardless, the government's assertions underscore the need for discovery and amply support granting Defendants' cross-motion. The government's positions are hopelessly contradictory, except in the sense that the government consistently maintains it can decide unilaterally whether privileges have been waived or preserved, based solely on its views about communications and dealings it will not disclose.

For example, the government initially claimed Ferrer had waived only "the *corporate* attorney-client privilege" but not his "*individual* attorney-client privilege."

8

Grant Decl. Ex. J, at 1 (USAO May 3, 2018 letter providing Ferrer's Waiver of Attorney-Client Privilege, signed April 5, 2018 (emphasis in original)). Then, when defense counsel asked for more information, the government disclosed Ferrer's "Proffer/Interview Agreement," in which he agreed to "voluntarily waive[] all claims of attorney-client privilege in his personal or official capacity." *Id.* Ex. K, at 5 (USAO May 14, 2018 letter, attaching Proffer/Interview Agreement, also dated April 5, 2018). The government has also said Ferrer signed another agreement concerning his purported privilege waivers, but has refused to provide it. *Id.* Ex. K, at 2.

Recognizing that the Proffer/Interview Agreement reflects on its face that Ferrer waived his personal attorney-client privilege rights, the government has backpedaled and said the agreement was just poorly written, contending "*it was not meant to apply* to attorneys and law firms that represented Ferrer in a personal capacity." (Doc. 216, at 13 (emphasis added)). Then, the government argues that if the agreement *did* waive Ferrer's personal attorney-client privilege rights—*i.e.*, contradicting the government's own contention that it did not—it meant only that Ferrer would "discuss matters related to these firms *if asked to do so*" and, the government asserts, "this topic … was never broached during Ferrer's proffer sessions." *Id.* (emphasis in original). But, again, the government's position is that Defendants must simply take on faith whatever the government says was or was not discussed or disclosed. Notably, the government has provided no evidence, affidavit or other proof to support its arguments.

At the same time, the government's arguments reflect that it so completely misunderstands the roles and relationships between counsel and their actual clients that its assertions are meaningless. Again, the government's assertion that Ferrer did not discuss dealings with his "personal counsel" in the April 5 proffer interview illustrates the point. Directly contradicting this assertion, the government has supplied (and likely drafted) a declaration from Ferrer in which he said that he believed DWT were his "personal lawyers." (Doc. 192-6, ¶¶ 4, 11). While this is patently wrong, Ferrer's declaration makes clear that he did discuss with the government his communications and dealings with DWT.

9

*See id.* ¶¶ 9, 13-22. So, the government represents that it did not discuss Ferrer's dealings with "personal counsel," and simultaneously shows that Ferrer discussed his dealings with attorneys he claims were "personal counsel." Defendants are entitled to discovery to have the truth, not just the government's characterizations.[5]

As discussed above and elsewhere, there is ample reason to believe the government has invaded privilege rights. To summarize:

- The government is precluded from accessing privileged information or work product for the period up to April 22, 2015 because the Medalist parties retained counsel and hold privileges that Ferrer cannot waive.

- The government is precluded from accessing privileged information or work product for the period after April 22, 2015 pursuant to the parties' joint representation agreements, which provided that Ferrer and Backpage.com were and are obligated to protect privileges as to third parties and could not unilaterally waive them.

- Ferrer therefore can only waive privileges for communications *after* April 6, 2018 (when he withdrew from joint representation) and/or as to his actual personal counsel, such as Nanci Clarence and her firm.

- The little information the government has provided reflects that it has already received and discussed privileged information with Ferrer improperly. Ferrer's proffer agreement commits that he would reveal "communications with any attorney or law firm that represented Backpage.com, or any related entity." (Doc. 216, at 3). Ferrer's declaration shows that he has discussed privileged information about his dealings with counsel (Doc. 192-6). The letters sent on his behalf to courts handling civil cases (*see, e.g.*, Doc. 235-5) reflect that Ferrer has communicated with the government about the parties' privileged agreements and mispresented them in attempts to interfere with the Medalist parties' rights and counsel representation.

- The government's mischaracterizations of the actual attorney-client relationships and joint representation undertakings raise substantial concerns that it has improperly accessed privileged information. The government's view seemingly is that Ferrer can waive all privileges about any communications

---

[5] This also illustrates the disingenuousness of the government's positions. When it suits the government's purposes—*i.e.*, in seeking to disqualify counsel—it asserts DWT acted as Ferrer's personal counsel and discloses information about Ferrer's communications with DWT. But when the government seeks to eliminate Defendants' privilege rights, it claims Ferrer has not waived or disclosed anything except as to corporate privileges.

10

*related to* Backpage.com, when, in fact, under the law and his agreements, he can waive or disclose little or nothing. [6]

The government acknowledges it is obligated to provide at least a significant part of the information Defendants seek—*i.e.*, reports of the interviews with Ferrer—but claims such disclosures should be denied as "premature." (Doc. 216, at 13-14). The Court should not countenance such procedural gamesmanship. The government has brought motions to invalidate privileges and disqualify Defendants' counsel, and has urged that its motions be decided now. The government cannot postpone producing information relevant to the motions until after they are decided. Defendants have shown the government's actions have broader ramifications about improper transgression of privilege rights, and this too is an issue that the government should not be allowed to avoid by delay.

### III. CONCLUSION

The government seeks to take every advantage it can to preclude Defendants from representation by their longtime counsel, preclude privilege and work product protections, and pretend this is all permissible without allowing Defendants opportunity to discover the facts to defend and protect their rights. The government is wrong.

---

[6] Similarly, the government offers implausible explanations of its segregation of potentially privileged documents for "filter team" review. In warrant applications, the government said it would segregate only documents to or from Ms. McDougall, then claimed its taint team had actually segregated documents identifying four attorneys and two law firms. (Doc. 195, at 4). Now, the government asserts vaguely that it used a list of "over 265 search terms to determine what documents may need further review." Reply at 16. Yet, the government does not say that it set these documents aside as potentially privileged and ones that should *not* be reviewed. In fact, the government's assertions suggest it flagged these documents for *more extensive* review.

The government also tries to explain its segregation of just 10,733 potentially privileged documents—as compared to the California AG's identification of 64,000 potentially privileged documents—on the asserted premise that "federal authorities didn't take possession of the 64,000 documents that the AG had previously culled." Reply at 16. This is a remarkable statement, as the California AG's Office did not even discuss segregating documents reflecting attorney names (to allow defendants to review them) until three months after the USAO obtained the documents from the AG.

11

| | | |
|---|---|---|
| 1 | DATED:  September 4, 2018 | Respectfully submitted, |

*/s/ Paul J. Cambria, Jr.*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

*/s/ Thomas H. Bienert, Jr.*
BIENERT, MILLER & KATZMAN PLC
Attorneys for Defendant James Larkin

**CERTIFICATE OF SERVICE**

I certify that on this 4th day of September, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

*s/ Toni Thomas*
Toni Thomas

CM/ECF Registrants:

Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Kevin Rapp, kevin.rapp@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Paul Cambria, pcambria@lglaw.com
Tom Bienert, tbienert@bmkattorneys.com
Bruce Feder, bf@federlawpa.com
Michael Kimerer, mdk@kimerer.com
Stephen Weiss, sweiss@karpweiss.com