# Exhibit A

| | |
|---|---|
| **From:** | Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov> |
| **Sent:** | Tuesday, October 30, 2018 2:08 PM |
| **To:** | Tom Bienert |
| **Cc:** | Ken Miller; Whitney Bernstein; Kozinets, Peter (USAAZ); Perlmeter, Margaret (USAAZ); Stone, Andrew (USAAZ) |
| **Subject:** | RE: Larkin Travel Restriction Allowing Northern District of CA |

Tom,

My apologizes for the delay in responding, I have been tied in court the last couple of days. For a couple of reasons we are unwilling to stipulate to any change in Jim Larkin's release conditions. Usually we agree to ratcheting down conditions where there is evidence of compliance. But here, we still have some serious concerns that Larkin poses a flight risk due to the movement of tainted funds. Recently we opened an investigation on Molly Larkin because we were alerted that she has been engaging in transactions that are clearly money laundering and structuring. Relevant to your request, we believe she was doing this at the direction of Jim Larkin. We do not believe she engaged in these transactions on her own.

To date, the evidence demonstrates that on April 9, 2018,--just three days after the arrest of Jim Larkin—Molly Larkin drove to three different bank branches (2 JPMC, 1 NBAZ) to withdraw $9,500 in cash at each bank. In the case of JPMC she withdrew the money from the same account on the same day but at different branches. This is clearly structuring to avoid alerting law enforcement to the withdrawals and knowing that we were pursuing seizures. We have sourced both JPMC and NBAZ accounts to criminally derived funds. Even more concerning, GARR-LARKIN's NBAZ's account received millions in checks made to James Larkin and signed over to her. The largest of the debits out of the account are the purchase of two cashier's checks made out to GARR-LARKIN, with an aggregate total of $1,648,500.00, where one of the checks was deposited into an unknown community first credit union account, and the other to an unknown bank of marin account. It appears that these checks originated from a cereus properties account that the government seized the same day (July 19, 2018) this $1.6M was disbursed to the unknown account. As a result we are considering charges for Molly Larkin for violations of 18USC1956(a)(1)(B)(concealment money laundering) 18USC2232( destruction or removal or property to prevent seizure) and Title 31, United States Code, Section 5324(structuring). She should have an attorney contact me no later than the end of next week to discuss these potential charges. Because we cannot trace cash and we do not know the accounts these funds were deposited in. If Larkin wants to flee he would have considerable untraceable assets available to him.

Second, although we are not inclined to agree to any change of his conditions in light of the above-- why does the ankle bracelet prevent Larkin from spending time with his daughter? Unless I'm missing something he is able to travel to San Francisco he just needs to obtain permission prior to travel. Also, the daughter is able to travel to Arizona as well. Setting aside Molly Larkin's financial transactions what are Larkin's changed circumstances that would convince a judge to remove this condition?

Best,


**Kevin M. Rapp| Assistant U.S. Attorney**
**Senior Litigation Counsel**
**Financial Crimes and Public Integrity Section**
**U.S. Department of Justice | Office of the United States Attorney**
**40 N. Central Ave., Ste. 1800, Phoenix, AZ  85004**
**602.514.7609, kevin.rapp@usdoj.gov**

**From:** Tom Bienert <tbienert@bmkattorneys.com>
**Sent:** Monday, October 29, 2018 10:31 AM
**To:** Rapp, Kevin (USAAZ) <KRapp@usa.doj.gov>
**Cc:** Ken Miller <kmiller@bmkattorneys.com>; Whitney Bernstein <wbernstein@bmkattorneys.com>; Kozinets, Peter (USAAZ) <PKozinets@usa.doj.gov>; Perlmeter, Margaret (USAAZ) <MPerlmeter@usa.doj.gov>; Stone, Andrew (USAAZ) <AStone1@usa.doj.gov>
**Subject:** RE: Larkin Travel Restriction Allowing Northern District of CA

Kevin,

I'm following up on seeking a bail modification of Mr. Larkin's release conditions, seeking to remove the anklet and change his restriction to allow travel within the District of Arizona and the Northern District of California.  As we previously noted, under the current situation with him limited to Arizona he is separate from his wife and daughter, who are in San Francisco where the daughter is a senior in high school.  As of next summer, his daughter will be moving out of the house to go to college; so the time between now and then is his only time to be with her before she moves out. Mr. Larkin has ongoing medical appointments and court related obligations in Arizona, so it would be difficult to simply move full time to N.D. CA.

You had previously opposed this request but indicated you would reconsider after 6 months had passed with him on bond.  He has now been on bond for almost 7 months, and has demonstrated that he is not a flight risk.  I'm hoping we can stipulate to an adjustment of his bond conditions to meet his reasonable desire to spend time with his daughter in San Francisco.  I'd appreciate your letting me know your views at your earliest convenience.  In addition to email, I'm available on my cell phone (949) 350-9419 if you'd like to discuss.

Thanks.

**Thomas H. Bienert, Jr.**
**BIENERT, MILLER & KATZMAN, PLC**

**From:** Tom Bienert
**Sent:** Tuesday, May 15, 2018 12:23 PM
**To:** Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov>
**Cc:** Lanza, Dominic (USAAZ) <Dominic.Lanza@usdoj.gov>; Ken Miller <kmiller@bmkattorneys.com>
**Subject:** Re: Larkin Travel Restriction Allowing Northern District of CA

Thanks a lot for getting back to me.

My understanding is that it becomes a significant scheduling issue.  There has to be scheduling well in advance of travel to arrange for the transition of the anklet either on and off of him physically, or on and off from a monitoring standpoint. And that they are unable, for example, to monitor him with his anklet from Phoenix. while he's in San Francisco.  Additionally, it becomes a problem at security check at the airport, as the security inspectors at airports often don't know what to do or how to react to someone within an anklet  going through security. All of this makes the ability to freely go back  and forth between the bay area and Phoenix difficult, if not impossible from a practical standpoint.  I believe that the security in place through bond and the travel restrictions to the two areas (along with the additional

requirement that he has to notify his pretrial officer each time he leaves Phoenix to go to the Bay area and when he is returning) provide sufficient basis to adequately ensure his appearance without the anklet.

Thomas H. Bienert, Jr.
Bienert Miller & Katzman

On May 15, 2018, at 12:05 PM, Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov> wrote:

> Tom:
>
> I understood that he could travel with the ankle bracelet.
>
> **Kevin M. Rapp| Assistant U.S. Attorney**
> **Senior Litigation Counsel**
> **Financial Crimes and Public Integrity Section**
> **U.S. Department of Justice | Office of the United States Attorney**
> **40 N. Central Ave., Ste. 1800, Phoenix, AZ  85004**
> **602.514.7609, kevin.rapp@usdoj.gov**
>
> **From:** Tom Bienert <tbienert@bmkattorneys.com>
> **Sent:** Monday, May 14, 2018 11:20 AM
> **To:** Lanza, Dominic (USAAZ) <DLanza@usa.doj.gov>; Rapp, Kevin (USAAZ) <KRapp@usa.doj.gov>
> **Cc:** Ken Miller <kmiller@bmkattorneys.com>; Toni Lindemann <tlindemann@bmkattorneys.com>
> **Subject:** Larkin Travel Restriction Allowing Northern District of CA
>
> Dom and Kevin,
>
> I write to ask that you agree to alter the bail conditions of my client, Jim Larkin, to include the Northern District of California in his travel restrictions, and to remove his electronic monitoring.  He currently is restricted to the Phoenix area and has an ankle bracelet.  My client's youngest child, Rose, is 17 and a junior in high school in San Francisco.  Since my client is currently restricted to Phoenix, his daughter and wife are living without him in San Francisco.   Under normal circumstances, he would go back and forth between Phoenix and the Bay Area frequently.  I'm asking that he be allowed to travel freely between Phoenix and San Francisco/Napa Valley, where the Larkin's typically spend their time.
>
> In addition to the obvious difficulty caused by a father being separated from his wife and daughter, the circumstances of the case have been tough on Rose, and she is having a difficult time emotionally without spending her usual time with her father.  Given her age and year in high school, the next 15 months or so is the last time that my client will be able to spend with Rose before she moves out of their house and goes away for college.  Given our trial date, under the current bail conditions Mr. Larkin's ability to live with his daughter will have passed before we even have trial in this case.
>
> I believe that my client's ties to the community, appearances at various court matters in the Sacramento case, and remaining in the community knowing of your investigation demonstrate

3

that his appearance at court can properly be assured with the significant property and surety conditions currently in place.  The ankle bracelet is not necessary to assure his appearance and will preclude ready travel back and forth between Phoenix and Northern California.  Accordingly, I ask that you accommodate this reasonable request for bail modification.

I'm available to discuss whenever is convenient to you.  Since I'm in and out of the office a lot, best to reach me on my cell phone.  949 350-9419.

Thanks a lot.


*Thomas H. Bienert, Jr.*
**BIENERT, MILLER & KATZMAN, PLC**
903 Calle Amanecer, Suite 350
San Clemente, CA. 92673
Tel. (949) 369-3700
Fax (949) 369-3701
Toll free (888) 897-8794
Email: tbienert@bmkattorneys.com
Website: www.bmkattorneys.com

The foregoing message is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney/client and/or work product privileges.  Accordingly, if you have received this message in error, please contact BIENERT, MILLER & KATZMAN, PLC at (949) 369-3700 immediately, and delete the message without reviewing, copying, or making further use of the information contained herein.