ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Michael Lacey, et al.,<br><br>Defendants. | CR-18-422-PHX-SPL (BSB)<br><br>**UNITED STATES' STATUS MEMORANDUM**<br><br>**[Status Conference set for Jan. 25, 2019, 9:30 a.m.]** |

## I.    Introduction

On April 26, 2018, the government and Defendants submitted a Joint Proposed Case Management Order to the Court setting forth a number of discovery and disclosure deadlines.  CR 121.  On May 2, 2018, the court adopted the proposed order with the exception of granting Defendants' request to move the trial date from October 14, 2019 to

1  January 15, 2020.[1] CR 131.  The United States has complied with the Scheduling Order as

2  set forth below.

3  **II.      Superseding Indictment**

4          On July 25, 2018, a District of Arizona grand jury returned a 100-count Superseding

5  Indictment charging Defendants Michael Lacey, James Larkin, Scott Spear, Jed Brunst,

6  Daniel Hyer, Andrew Padilla, and Joye Vaught with conspiracy, facilitating prostitution,

7  and money laundering offenses for their roles in operating the website Backpage.com.  *See*

8  CR 230.[2]   The superseding indictment was timely returned in accordance with the

9  Scheduling Order.  CR 131.

10 **III.     Discovery**

11         The government has produced to Defendants approximately 7.8 million documents,

12 comprising approximately 10.6 million pages in an agreed-upon electronic, load-ready,

13 industry-standard format—easily searchable by text or metadata fields (e.g. email date,

14 sender, etc.).  To assist Defendants in navigating these documents, the government has

15 also: (1) created indexes consisting of more than 25 categories denoting the source from

16 which the materials were obtained; (2) produced subsets of "hot documents"—documents

17 specifically related to the allegations in the Superseding Indictment—that the government

18 thinks is helpful to its case; and (3) made arrangements for a DOJ discovery specialist in

19 Washington, D.C. to assist defense counsel with certain technical questions.

20         For example, on May 24, 2018—nearly 20 months in advance of trial—the

21 government provided Defendants with approximately 10.4 million pages of documents.

22 *See* Exhibit A.  Of those 10.4 million pages of documents, more than 2.1 million pages

---

24 [1] As the Court may recall the government initially requested an October 14, 2019, trial date
25 and Defendants requested a date in January 2020.  CR 121.  The Court granted Defendants'
   request, but none of the other deadlines were moved to correspond to the extended trial
26 date.

27 [2] On August 17, 2018, Backpage's former Sales and Marketing Director Daniel Hyer
28 pleaded guilty to conspiracy to facilitate prostitution.  *See* CR 270.

were documents Backpage had previously provided the U.S. Senate Permanent Subcommittee on Investigations ("PSI") in the fall of 2016,[3] as well as documents Backpage had previously produced to the government on September 15, 2017, as a result of the district court's April 7, 2018 order and the Ninth Circuit's mandate compelling them to comply with Grand Jury Subpoena No. 16-04-108.  *See* Exhibit B.

Additionally, more than 5.9 million pages of documents disclosed to Defendants originated from a source entitled "Co-Star materials."  Because of the large production of Co-Star materials, the government agreed to disclose to Defendants materials contained in this production that it believes are relevant to the case and might be utilized at trial.  The government provided these approximately 100 pages of materials to Defendants on August 14, 2018.  *See* Exhibit C.

Hence, more than 7 million of the 10.6 million documents produced to Defendants in discovery to date either are documents Defendants have previously produced to the government, or a category of materials whereby the government has provided Defendants with pertinent documents the government might utilize at trial.

A.    Hot Documents

In addition to providing Defendants with discovery well in advance of trial, the government has also produced to Defendants a subset of those documents that it believes is important to its case (i.e. "hot documents").  For example, on July 19, 2018, the government provided Defendants with more than 1,070 pages of "hot documents," and on September 24, 2018, the government supplemented this production by providing Defendants with an additional 400 pages of "hot documents."  *See* Exhibits D and E.  These nearly 1,500 pages of documents contained emails and other documentary evidence supporting the allegations contained in the Superseding Indictment.  This includes materials about the Defendants' efforts to: 1) aggregate adult content from other

---

[3] Declaration of Breena Ross, *Senate Permanent Subcommittee on Investigations v. Carl Ferrer*, Misc. No. 1:16-mc-00625-RMC (D.D.C. Nov. 30, 2016).

prostitution websites in order to increase content on Backpage;  2) create business relationships with other prostitution websites in order to increase traffic on Backpage;  3) remove words and/or images overtly indicative of prostitution (including the prostitution of children) from Backpage ads, and then posting these "moderated" ads knowing that they advertised prostitution services; and 4) engage in money laundering activities.

Apart from providing Defendants with "hot documents," the government has also provided counsel for a number of Defendants (upon request) with subsets of the 1,500 pages of "hot documents" specifically related to the allegations in the Superseding Indictment against their respective clients, and has even participated in meetings with counsel to discuss these materials.  For example, in December 2017—nearly four months before the grand jury returned an indictment in this case—the government met with counsel for Defendant Andrew Padilla to discuss the government's theory of the case.  The government subsequently provided counsel with more than 100 pages of documents relevant to Defendant Padilla's knowing facilitation of illegal services via Backpage.  *See* Exhibit F.  Additionally, on August 26, 2018, the government provided counsel for Defendant Scott Spear with approximately 50 "hot documents" comprising hundreds of pages of materials specifically related to the allegations in the Superseding Indictment against Spear.  Furthermore, on September 6, 2018, the government held an hour-long conference call with counsel to discuss these documents and its theory of the case.  *See* Exhibit G.

Moreover, on October 2-3, 2018, the government provided counsel for Defendant Jed Brunst with approximately 35 "hot documents" consisting of more than 100 pages of materials specifically related to the allegations in the Superseding Indictment against Brunst.  The government has also offered to meet with counsel to discuss these documents and the government's theory of the case in detail.  *See* Exhibit H.  Most recently, on January 9, 2019, the government provided counsel for Defendant Joye Vaught with approximately 25 "hot documents" consisting of more than 100 pages of materials specifically related to the allegations contained in the superseding indictment against Vaught.  As was the case

1  with Defendant Brunst, the government offered to meet with Vaught's counsel to discuss
2  these documents and the government's theory of the case in detail.   *See* Exhibit I.

3      As detailed above, the government has been unusually forthcoming with the
4  Defendants when it comes to discovery.  Not only did it provide Defendants with over ten
5  million pages of discovery more than 20 months in advance of trial, the government also
6  created detailed indexes to assist Defendants in navigating these documents, produced a
7  subset of "hot documents" to all Defendants, and even produced additional subsets of "hot
8  documents" for individual Defendants upon request.

9      B.    <u>Backpage Server Data</u>

10      The government has identified a number of servers that are associated with
11  Backpage.  These include the following: [4]

12  - 32 servers and three hard drives located in Tucson, Arizona, from Desert Net,
13     which is an Internet service provider;
14  - 5 servers from Dallas, Texas—one from Backpage's headquarters and four other
15     servers from a data center; and
16  - 40 servers from a datacenter in Amsterdam.
17  *See* Exhibit J.

18      Currently, the government is in possession of all 32 servers from Desert Net, all five
19  servers from Dallas, and nine of the 40 servers in Amsterdam.[5]  The government is
20  currently in the process of imaging the servers in its possession.  This is a time consuming
21  task, but the government has already completed the imaging of at least eight servers.  The
22  information contained on these servers includes: images uploaded to Backpage;

---

[4] This information was provided to Defendants in a letter dated December 10, 2018, which is attached as Exhibit J.

[5] Desert Net administrators have informed the government that the 31 servers remaining in Amsterdam do not contain pertinent data, but were utilized for frontend websites associated with Backpage.  That said, the government is working to obtain the remaining 31 servers through a request to the Netherlands pursuant to the Mutual Legal Assistance Treaty and will inform Defendants if and when this occurs.

marketplace databases with advertisements that were posted to Backpage; and payment processing. The advertising data contains a myriad of ad postings that are typical of the ads referenced in the U.S. Senate PSI report, the Superseding Indictment, and discovery. In addition, much of the information is duplicative. The government understands that many of these servers were used primarily for backing-up the company's information, including all 32 servers that were maintained by Desert Net. Despite the likely lack of utility for Defendants, the government is working to provide the Defendants with verified imaged copies of the information contained on the servers currently in the government's possession.[6] Ex. J.

## IV. Initial Expert Disclosures

On December 14, 2018, the government filed its notice of expert witnesses. The notice provided Defendants with an initial overview of the individuals and subjects the government may seek to present evidence of by way of expert testimony. *See* CR 422.

## V. Pending Motions

The parties await the Court's ruling on the following motions: (1) the United States' Motion to Compel Destruction of Inadvertently Disclosed documents (CR 352); (2) the United States' Motion for Clarification re: Order to Resolve Attorney-Client Privilege (CR 355); (3) Defendant Lacey's Motion for Release of Funds Unrelated to Backpage and Request for Expedited Relief (CR 385); and (4) Defendant Lacey's Motion to Strike (CR 415).

## VI. Upcoming Deadlines

On February 25, 2019 (nearly eleven months before trial), the government intends

---

[6] There are a few other categories of documents that may be subject to disclosure in this case. These include, among others, documents the government has received from Defendants' personal electronic devices and a third party IT company, along with Defendants' personal and corporate taxes. For several of these categories of documents, it is likely that the government will need its filter team to conduct an initial review to determine whether the attorney-client privilege applies. The government has not yet started this process because of Defendants' objections to the filter team, which the parties have discussed in detail in their briefing on the government's motion for clarification (CR 355).

to provide Defendants with statements (*Jencks* Act material) of witnesses whom the government intends to call at trial.  CR 131.  The government will provide an index for all *Jencks* Act statements for Defendants' ease of use.  In addition, on April 1, 2019, the government will provide a preliminary witness and exhibit list to Defendants.  (*Id.*)

Respectfully submitted this 18th day of January, 2019.

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

*s/ Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA
Assistant U.S. Attorneys

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that on this date, January 18, 2019, I transmitted the foregoing under-seal document for filing to the Clerk of the United States District Court and sent a copy via electronic mail to: Paul J. Cambria Jr. Esq. and Erin e. McCambell, Esq., Lipsitz Green Scime Cambria, LLC, 42 Deleware Ave, Suite 120, Buffalo, NY 14202, **pcambria@lglaw.com** and **emccampbell@lglaw.com**, Thomas H. Bienert, Jr., Esq., Anthony R. Bisconti, Esq., Kenneth M. Miller, Esq., and Whitney Bernstein, Esq., Bienart, Miller & Katzman, PLC, 903 Calle Amanecer, Suite 350, San Clemente, CA 92673, **tbienert@bmkattorneys.com,**        **tbisconti@bmkattorneys.com,** **kmiller@bmkattorneys.com, wbernstein@bmkattorneys.com**; Mike Piccarreta, Esq., Piccarreta Davis Keenan Fidel, PC, 2 East Congress Street, Suite 1000, Tucson, AZ 85701, **mlp@pd-law.com**; Jim Grant Esq., Davis Wright Termaine, LLP, 1201 Third Avenue, Suite 2200, Seattle, WA 98101, **jimgrant@dwt.com**; Michael D. Kimerer, Esq. and Rhonda Elaine Neff, Esq., 1313 E. Osborn Road, Suite 100, Phoenix, AZ 85014, **MDK@kimerer.com** and **rneff@kimerer.com**; Steve Weiss Esq., Karp & Weiss, PC, 3060 North Swan Rd., Tucson, AZ 85712, **sweiss@karpweiss.com;** Robert Corn-Revere Esq., Davis Wright Termaine, LLP, 1919 Pennsylvania Avenue N.W., Suite 800, Washington, D.C., 20006, **bobcornrevere@dwt.com**; Bruce Feder, Esq., 2930 East Camelback Road, Suite 160, Phoenix, AZ 85016, **bf@federlawpa.com**; Gary Linenberg, Esq., Ariel Neuman, Esq., Gopi K. Panchapakesan, Esq., Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C., 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067, **glincenberg@birdmarella.com, aan@birdmarella.com, gkp@birdmarella.com.**

4

5

6

7

8

9

10

11

12

13

14

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office

15

16

17

18

19

20

21

22

23

24

25

26

27

28