1  Thomas H. Bienert, Jr. (CA State Bar No. 135311, *admitted pro hac vice*)
     tbienert@bmkattorneys.com
2  Whitney Z. Bernstein (CA State Bar No. 304917, *admitted pro hac vice*)
     wbernstein@bmkattorneys.com
3  BIENERT KATZMAN, PLC
   903 Calle Amanecer, Suite 350
4  San Clemente, CA 92673
   Telephone: (949) 369-3700
5  Facsimile: (949) 369-3701

6  *Attorneys for James Larkin*

7

8  Robert Corn-Revere (D.C. State Bar No. 375415, *admitted pro hac vice*)
     robertcornrevere@dwt.com
   DAVIS WRIGHT TREMAINE LLP
9  1919 Pennsylvania Avenue NW, Suite 800
   Washington, DC 20006-3401
10 Telephone: (202) 973-4225
   Facsimile: (202) 973-4499
11
   James C. Grant (WA State Bar No. 14358, *admitted pro hac vice*)
12     jamesgrant@dwt.com
   DAVIS WRIGHT TREMAINE LLP
13 920 Fifth Ave, Suite 3300
   Seattle, WA 98104-1610
14 Telephone: (206) 757-8096
   Facsimile: (206) 757-7096
15
   *Attorneys for Michael Lacey and James Larkin*
16

17 Additional counsel listed on following page

18
19                    **UNITED STATES DISTRICT COURT**
20                    **FOR THE DISTRICT OF ARIZONA**
21

| | |
|---|---|
| United States of America, | CASE NO. 2:18-CR-00422-SMR |
| Plaintiff, | **DEFENDANTS' SUPPLEMENTAL JOINT STATUS REPORT** |
| vs. | Date: June 24, 2019 |
| Michael Lacey, *et al.*, | Time: 11:00 a.m. |
| Defendants. | Assigned to Hon. Susan M. Brnovich, Courtroom 506 |

1  Paul J. Cambria, Jr. (NY State Bar No. 1430909, *admitted pro hac vice*)
       pcambria@lglaw.com
2  Erin E. McCampbell (NY State Bar No. 4480166, *admitted pro hac vice*)
       emccampbell@lglaw.com
3  LIPSITZ GREEN SCIME CAMBRIA LLP
   42 Delaware Avenue, Suite #120
4  Buffalo, NY 14202
   Telephone: (716) 849-1333
5  Facsimile: (716) 855-1580

6  *Attorneys for Michael Lacey*

7

   Bruce Feder (AZ State Bar No. 004832)
8      bf@federlawpa.com
   FEDER LAW OFFICE, P.A.
9  2930 E. Camelback Road, Suite 160
   Phoenix, AZ 85016
10 Telephone: (602) 257-0135
   Facsimile: (602) 954-8737
11
   *Attorneys for Scott Spear*
12

13 Gary S. Lincenberg (CA State Bar No. 123058, *admitted pro hac vice*)
       glincenberg@birdmarella.com
14 Ariel A. Neuman (CA State Bar. No. 241594, *admitted pro hac vice*)
       aneuman@birdmarella.com
15 Gopi K. Panchapakesan (CA State Bar No. 279586, *admitted pro hac vice*)
       gpanchapakesan@birdmarella.com
16 BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
17 1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
18 Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
19
   *Attorneys for John Brunst*
20

21 David Eisenberg (AZ State Bar No. 017218)
        david@deisenbergplc.com
22 DAVID EISENBERG, P.L.C.
   3550 N. Central Avenue, Ste. 1550
23 Phoenix, Arizona 85012
   Arizona State Bar No. 017218
24 Telephone: (602.237.5076

25 *Attorneys for Andrew Padilla*

26
   Additional counsel listed on following page
27

28

ii

DEFENDANTS' SUPPLEMENTAL JOINT STATUS REPORT

1  Joy Bertrand (AZ State Bar No. 024181)
        joyous@mailbag.com
2  JOY BERTRAND, ESQ.
   PO Box 2734
3  Scottsdale, Arizona 85252-2734
   Telephone: 602-374-5321
4  Fax: 480-361-4694

5  *Attorneys for Joye Vaught*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

Defendants submit this supplemental joint status report to address discovery issues raised by the government's status report (Doc. 626) and to address new developments since Defendants filed their status report (Doc. 627).

## II. DEFENDANTS' REQUEST FOR SPECIFIC DATA FROM BACKPAGE'S SERVERS AND SYSTEMS

During the April 23, 2019, status conference, the government represented it would provide data from the Backpage.com servers and systems to Defendants upon request. *See* Transcript of April 23, 2019 Hearing, Doc. 577 at 24 ("Your Honor, but we went a step further. We said, hey, can you articulate to us what else on these servers that you would like extracted and we can look for it and provide it to you."); *see id.* at 25 ("We've asked them repeatedly, hey, is there anything that we haven't provided[?]").

On May 23, 2019, Defendants wrote to the government requesting 29 categories of data from the Backpage.com servers and systems (providing a justification for each request—even though under no obligation to do so). *See* Doc. 627-3. The government had not yet responded to Defendants' requests when Defendants filed their Joint Status Report on June 1, 2019 (Doc. 627), but did respond subsequently.

Despite the government's representations to the Court that it would extract information from the Backpage.com servers and systems if Defendants identified the information they sought, the government responded to Defendants' 29 requests by disclaiming any obligation to "identify this information . . . in the available discovery and provide the requested analysis of the servers." *See* Exhibit A, June 3, 2019 Letter from AUSA Rapp to W. Bernstein. Instead, the government offered to provide nothing to Defendants. For example:

- Defendants asked the government to extract information on the numbers of ads Backpage.com reported to the National Center for Missing and Exploited Children (NCMEC) or other law enforcement each month, and to provide copies of the ads reported. Doc. 627-3. This request was made because the government has not produced this information and/or has produced it in an unusable format.

The government responded saying (a) Defendants could review "the interviews of NCMEC employees" (which don't contain the requested information) and (b) "you are free to conduct your own analysis of the servers' data." Exh. A.

- Defendants asked the government to extract records and data documenting Backpage.com's cooperation with law enforcement authorities—such as subpoena responses, communications related to those subpoenas/responses, and testimony provided by Backpage.com at criminal trials. Doc. 627-3. This request was made because the government has not produced this information and/or has produced it in an unusable format. The government responded by disputing that Backpage.com cooperated with law enforcement, claiming "whether Backpage was sincerely cooperating with law enforcement is ultimately a jury question," and inviting Defendants to present any evidence they may have at trial. Exh. A.

- Defendants asked the government to extract data showing the numbers of ads Backpage.com hosted in each category (e.g., "buy/sell/trade," "jobs," "rentals," "adult," etc.) each month and for each subcategory within the "adult" category (e.g., "escorts," "massage," "dating," etc.), as well as data showing the revenues for ads in all categories and subcategories.[1] Doc. 627-3. This request was made because the government has not produced this information and/or has produced it in an unusable format. The government's only response was to dispute that Backpage.com hosted large numbers of ads in categories other than adult and to assert that most of Backpage.com's revenues came from adult ads. Exh. A.

- Defendants asked the government to extract data showing the number of ads Backpage.com blocked by category and subcategory each month—noting that

---

[1] Backpage.com was the second largest classified advertising website in the United States, "allowing users to post their own advertisements in a range of categories: local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, forums, dating, adult, and services." *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013). "Users posted more than 3.3 million ads on the website in the month of April 2012." *Id.*

Backpage.com blocked a large numbers of ads.[2]  Doc. 627-3.  This request was made because the government has not produced this information and/or has produced it in an unusable format.  The government responded saying "we do not agree with your position, but you are free to conduct your own analysis."  Exh. A.

The bottom line is that Defendants articulated the information from the Backpage.com servers and systems that they wished for the government to extract, but the government has refused to look for that data or to provide it to Defendants.  Defendants expect to file a motion to compel the government to produce information to Defendants, including the information identified in their May 23, 2019, letter to the government.

## III. INFORMATION THE GOVERNMENT RECENTLY PRODUCED OR HAS YET TO PRODUCES

### A. Bates Numbers for the Government's Exhibits

The government represented at the April 23, 2019, status conference that it would provide Bates numbers for all the documents on its list of potential trial exhibits.  The government provided Bates numbers for many of the exhibits on May 29, 2019, but has yet to identify the balance of the documents by Bates number—despite the passage of nearly two months since the April 23, 2019, status conference.  Further, the government's most recent exhibit list rearranged its ordering from the original exhibit list, rendering defense counsels' extensive work done off of the prior list useless.  The most recent exhibit list also added new exhibits, some of which the government has still not produced to defendants despite repeated requests following receipt of the new exhibit list.  Finally, the most recent exhibit list denotes exhibits 1062-1064, which are comprised of 141,226 pages of bank records.  Given the volume of records, defense counsel requested that the government identify the records that relate to the transactions underlying the money laundering counts alleged in the Superseding Indictment or

---

[2] "Through its monitoring, Backpage.com blocked or removed more than one million user submissions and reported approximately 400 submissions to the [National Center for Missing and Exploited Children] in April 2012." *Backpage.com, LLC v. Cooper*, at 814.

otherwise indicate the actual pages that the government intends to reference at trial. The government has yet to respond.

### B. Historical Archived Backpage.com Email

On April 23, 2019, the government produced to counsel for one of Defendants a hard disk containing a large volume of email that Backpage.com had archived. The government obtained the email in October 2018 and has not explained why it did not produce the emails by the government's disclosure deadline nor justified its six-month delay in producing the email to Defendants. Moreover, despite the government's repeated representations to the Court that it agreed to produce all documents in Relativity format, the government did not do so. Accordingly, Defendants have not yet been able to access the emails, but, based on information their IT consultant recently provided about the volume of data on the hard disk, Defendants estimate that the disk may contain several million emails comprising many millions of pages of data.

### C. Current Backpage.com Email

On March 8, 2019, the government produced to counsel for one of Defendants a hard disk containing Backpage.com's non-archived email. The government seized the server with these emails in April 2018 and has not explained why it did not produce the email by the government's disclosure deadline nor justified its eleven-month delay in producing the email to Defendants. Again, the government did not produce these documents in Relativity format. Thus, Defendants have not yet been able to access these emails and have asked their IT consultant to assess what is on the hard disk. As Backpage.com relied heavily on email for communication, Defendants expect the hard disk will contain hundreds of thousands (if not millions) of email comprising many millions of pages of data.

### D. Law Enforcement Cooperation Data

In its status report, the government disclosed that it seized a Backpage.com server containing "subpoena data preservation requests" (*i.e.* documentation of Backpage.com's extensive cooperation with law enforcement). Doc. 626-4 at 8. Defendants believe the government seized this data in April 2018. The government does not state that it has produced

this data to Defendants, and Defendants do not believe the government has done so. The government has not explained why it did not produce the law enforcement cooperation data by the government's disclosure deadline nor justified its delay of more than a year in producing these documents to Defendants. Defendants believe this data will be extensive given the history of Backpage.com's cooperation with law enforcement, and in light of the government's statement that the email data discussed immediately above and the law enforcement cooperation data are on a 120 Terabyte (120,000 Gigabyte) disk.

### E. Payment Processing Data

In its status report, the government said it expected to transfer Backpage.com's payment processing data from where it seized the data in Europe to the United States by no later than last week, and to produce that data to Defendants next month. It is unclear why it has taken more than a year for this data to come to the United States given the date of the government's seizures, and the government has not confirmed that it has actually even yet transferred the data to the U.S. As Backpage.com hosted hundreds of millions of ads over the years, with many of those ads being paid ads, Defendants expect the payment data will include tens of millions of records. In its status report, the government appears to admit that the data it proposes to produce to Defendants next month will not be in a usable format: "There was a way to associates ads or users with their related transactions in the PPI [Payment Processing Island], but details of how that worked are not readily available." Doc. 626-4 at 17. Defendants interpret this statement to mean that the government will produce records of tens of millions of payments, but that Defendants will have no ability to associate any payment with a particular user or a particular ad—meaning the data will be useless to Defendants.

### F. BDO Discovery

In its seventh disclosure, the government's cover letter stated that the "government has in its possession copies of tax returns and related transmittals prepared by BDO USA Consulting for Backpage and related clients." Doc. 627-5 at 22. The government stated that it would not share these documents with Defendants. *Id.* In order for Defendants to determine whether to seek access to these documents, defense counsel wrote to the government on May

5

13, 2019 requesting an index of the documents it was withholding. The government has yet to respond.

### G. Ad Data

In its status report, the government states that, in March 2019, it produced to Defendants certain data related to the ads hosted on Backpage.com. The government seized this data in April 2018 and the government has not explained why it did not produce the ad data by the government's disclosure deadline nor justified its delay of nearly a year in producing the ad data.

Moreover, in its status report the government admits the ad data it belatedly produced is deficient. That is, the hard disk images the government has produced cannot be used to search or display ads and ad data in the manner that was possible before the government's seizure. Meaning, it is difficult or impossible for Defendants to find the data underlying particular ads despite the fact that this data was easily accessible and searchable before the government seized and disassembled the website. As the government's expert Special Agent Richard Robinson admits:

- "No one server contains web pages as they were presented to the user when the site was active. Elements would need to be pulled from a database server and an image server for a web server to be able to generate an ad as it would have been displayed to the user." Doc. 626-4 at 4[3], ¶ 7(B).
- "[FBI Information Technology Specialist Examiner Matthew] Frost has been able to identify database entries and images that were included in ads specified in the indictment in the form of database entries and individual image files, rather than rendered as a single coherent webpage." Doc. 626-4 at 9, ¶ 18.

The government then goes on to admit:

- "Because of this manner of operation, any given ad is not saved on any of the

---

[3] This and the following page numbers refers to the page number (of 22) assigned to Document 626-4 by the ECF system.

servers as a user would have seen it. Viewing a page as it would have appeared would require interaction with all three basic types of servers. . . . Even though the any one [sic] of the Database Servers and Image Servers contain data for all Backpage.com ads at the time that the site was taken down, simulating the function of the website would require extensive time and expertise, *if it is possible at all*." Doc. 626-4 at 13 (emphasis supplied).

The government also tacitly admits that it understood the importance of maintaining the functionality of the website. Special Agent Robinson says that the government "hoped" to keep the website functional in Amsterdam after it rendered the system non-functional in the United States "to improve the possibility of being able to easier search and display ads as they would have appeared when the Backpage.com site was live." Doc. 626-4 at 9, ¶ 19.

## IV. CONCLUSION

Defendants expect to address these issues further in a forthcoming motion to compel.

DATED: June 18, 2019

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN, PLC

By: */s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Attorneys for James Larkin

DATED: June 18, 2019

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By: */s/ Ariel A. Neuman*
Ariel A. Neuman
Attorneys for John Brunst

| | | |
|---|---|---|
| DATED:  June 18, 2019 | | Robert Corn-Revere<br>James C. Grant<br>DAVIS WRIGHT TREMAINE LLP |

By: _/s/ James C. Grant_
James C. Grant
Attorneys for Michael Lacey and James Larkin

DATED:  June 18, 2019

Paul J. Cambria, Jr.
Erin E. McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP

By: _/s/ Paul J. Cambria, Jr._
Paul J. Cambria, Jr.
Attorneys for Michael Lacey

DATED:  June 18, 2019

Bruce Feder
FEDER LAW OFFICE, P.A.

By: _/s/ Bruce Feder_
Bruce Feder
Attorneys for Scott Spear

DATED:  June 18, 2019

David Eisenberg
DAVID EISENBERG, P.L.C.

By: _/s/ David Eisenberg_
David Eisenberg
Attorneys for Andrew Padilla

DATED:  June 18, 2019

Joy Bertrand
JOY BERTRAND, ESQ.

By: _/s/ Joy Bertrand_
Joy Bertrand
Attorneys for Joye Vaught

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of June 2019, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

*/s/ Toni Thomas*
Toni Thomas

Anne Michelle Chapman, anne@mscclaw.com
Erin E. McCampbell, emccampbell@lglaw.com
Anthony R. Bisconti, tbisconti@bienertkatzman.com
Ariel A. Neuman, aan@birdmarella.com
Bruce S. Feder, bf@federlawpa.com
James C. Grant, jimgrant@dwt.com
Lee David Stein, lee@mscclaw.com
Paul J. Cambria, pcambria@lglaw.com
Robert Corn-Revere, bobcornever@dwt.com
Ronald Gary London, ronnielondon@dwt.com
Janey Henze Cook, janey@henzecookmurphy.com
John Lewis Littrell, jlittrell@bmkattorneys.com
Seetha Ramachandran, Seetha.Ramachandran@srz.com
Thomas H. Bienert, Jr. tbienert@bienertkatzman.com
Whitney Z. Bernstein, wbernstein@bienertkatzman.com
Gary S. Lincenberg, glincenberg@birdmarella.com
Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com
Michael D. Kimerer, mdk@kimerer.com
Rhonda Elaine Neff, rneff@kimerer.com
David S. Eisenberg, david@deisenbergplc.com
Joy Malby Bertrand, joyous@mailbag.com
John Jacob Kucera, john.kucera@usdoj.gov
Kevin M. Rapp, Kevin.Rapp@usdoj.com
Margaret Wu Perlmeter, Margaret.perlmeter@usdoj.gov
Reginald E. Jones, reginald.jones4@usdoj.gov
Peter Shawn Kozinets, Peter.Kozinets@usdoj.gov
Andrew C. Stone, andrew.stone@usdoj.gov