1  Nanci L. Clarence (CA State Bar No. 122286, admitted pro hac vice)
2  Jonathan Baum (CA State Bar No. 303469, admitted pro hac vice)
   Shaneeda Jaffer (CA State Bar No. 253449, admitted pro hac vice)
3  CLARENCE DYER & COHEN LLP
4  899 Ellis Street
   San Francisco, CA 94109
5  Tel: (415) 749-1800
6  Fax: (415) 749-1694
   nclarence@clarencedyer.com
7  jbaum@clarencedyer.com
8  sjaffer@clarencedyer.com
9  Attorneys for Movant CARL FERRER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-SMB |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA SERVED BY DEFENDANT JAMES LARKIN ON CARL FERRER** |
| v. | |
| Michael Lacey, et al. | Hearing Date: Oct. 3, 2019 |
| Defendants. | Hearing Time: 9:00 a.m. |

## INTRODUCTION

Defendants' subpoena to Carl Ferrer should be quashed for two independent reasons. First, as a matter of Constitutional law, Mr. Ferrer's Fifth Amendment rights are fully intact because he is an unsentenced defendant in pending criminal cases in this Court and in state courts in California and Texas, and remains vulnerable to prosecution in other jurisdictions. *See United States v. Trejo-Zambrano*, 582 F.2d 460 (9th Cir. 1978), cert. denied, 439 U.S. 1005 (1978); *United States v. Moore*, 682 F.2d 853 (9th Cir. 1982); *United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979). Defendants do not cite a single case undermining this established principle. Instead, Defendants advance the novel argument that Mr. Ferrer's plea agreements—still not accepted by any of the respective courts where he has entered them, and to which they are not party—somehow constitute blanket waivers of his Fifth Amendment rights in this separate proceeding, despite the fact they do not say any such thing. This broad view of waiver[1] is contrary to established law, as several federal and state courts have already held in upholding Mr. Ferrer's privilege assertions in civil cases related to the same subject. *See* Castillo Decl., Ex. A (U.S. District Court Judge Leo Sorokin orders civil case stayed because discovery could "interfere with Ferrer's Fifth Amendment protection against self-incrimination." Case No. 1:17-cv-11069-LTS (D. Mass.), Dkt. No. 100, Nov. 30, 2018.)

Second, this subpoena to Mr. Ferrer should be quashed pursuant to Fed. R. Crim. P. 17(b) because, given Mr. Ferrer's limited knowledge of the subject at issue and his status as an unsentenced criminal defendant, mandating compliance would be unreasonable and oppressive. Defendants argue in their response that Mr. Ferrer is "in a **unique position** to provide testimony about the Backpage I.T. systems." (Dkt. No. 750, at 3 (emphasis added).) Yet their brief does not even mention the declaration of

---

[1] Indeed, if accepted by the Court, Defendants' view would arguably leave Mr. Larkin and Mr. Lacey, who recently gave lengthy media interviews about their involvement with Backpage.com to Wired magazine, equally subject to subpoena for this hearing. *See* Christine Biederman, Inside Backpage.com's Vicious Battle With the Feds, Wired, June 18, 2019. This is clearly not the case.

1  Backpage's former Chief Information Officer, Chris Kempel, who explained that Mr.
2  Ferrer was not, in fact, knowledgeable about how Backpage's I.T. systems functioned,
3  and that several other people, including employees at Backpage, Desertnet, and Amazon
4  Web Services likely were more knowledgeable than Ferrer about these subjects. (Dkt.
5  No. 739-1, paras. 4-5.)

6  Rather than addressing these substantive issues, Defendants' response appears
7  aimed at the government. Indeed, when Mr. Ferrer's counsel wrote a letter to Mr.
8  Larkin's counsel requesting that the subpoena be withdrawn, Mr. Larkin's counsel never
9  responded. Instead, she wrote a letter to the U.S. Attorney's Office, asking that it
10 "produce Carl Allen Ferrer," pursuant to Ferrer's plea agreement with the State of Texas.
11 (Dkt. No. 750-1, Exhibit A.) This makes little sense. The United States is, of course, not
12 a party to Mr. Ferrer's plea agreement with the State of Texas, so it has no standing to
13 enforce that agreement. *See United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir.
14 1999) ("Plea agreements are contracts"). Similarly, Defendants are not a party to any of
15 Mr. Ferrer's three plea agreements, so they have no standing to enforce those plea
16 agreements.

17                              **ARGUMENT**

18 **I.   Mr. Ferrer's Fifth Amendment Rights are Fully Intact and Prevail Over
19       Defendants' Effort to Compel His Testimony**

20      It is black letter law that "[a] convicted but unsentenced defendant retains his
21 Fifth Amendment rights." *United States v. Paris*, 827 F.2d 395, 399 (9th Cir. 1987),
22 citing *United States v. Miller*, 771 F.2d 1219, 1235 (9th Cir. 1985). This is precisely
23 Mr. Ferrer's situation. He has entered a plea, but not yet been sentenced in his federal
24 criminal case or any other case.

25      The text of Mr. Ferrer's federal plea agreement illustrates the rationale behind
26 this rule. Specifically, Mr. Ferrer's federal plea agreement is conditioned on the future
27 decisions of state court judges in California and Texas, over which neither he nor the
28 United States have control. Case No. 2:18-cr-464-SMB, Dkt. No. 7-1, para. 5(b) ("if

the state courts considering related claims in California and Texas reject the defendant's plea agreements in those states, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge, and any charges that have been dismissed because of this plea agreement shall automatically be reinstated."). Should either state judge decline to accept his plea agreement, Mr. Ferrer's federal plea agreement would be void, and Mr. Ferrer would be exposed to federal prosecution.

Lastly, it is firmly established that Mr. Ferrer's Fifth Amendment right against self-incrimination takes precedence over Defendants' rights in this situation. "The Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege." *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978).

## II. Mr. Ferrer Has Not Waived the Privilege Against Self-Incrimination

### A. Mr. Ferrer's Proffer Sessions and his Prior Declarations Do Not Waive the Privilege

Defendants' untimely response, filed shortly after the Court's 5:00 p.m. Friday deadline (Dkt. No. 742), together with the briefing schedule that left one business day for counsel to draft and file this reply, prevents counsel from including a point-by-point rebuttal showing how Mr. Ferrer's proffered statements do not waive the privilege and do not actually relate to the issue before the Court at this hearing—the state of Backpage's servers. However, the substance of Mr. Ferrer's proffers is irrelevant to the present motion and cannot be construed as a waiver of Mr. Ferrer's Fifth Amendment rights in any case. *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979) ("It is settled that a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs. [citations omitted] Consequently, voluntary testimony before a grand jury does not waive the privilege against self-incrimination at trial.").

Just as the Ninth Circuit held in *Licavoli* that grand jury testimony does not waive the privilege for later stages of the same case, neither do Mr. Ferrer's proffered statements to the government in his case, *United States v. Ferrer*, Case No. 2:18-cr-464-SMB, waive the privilege as to a different stage of a different case, *United States v. Lacey, et al.*, Case No. 2:18-cr-422-SMB. 604 F.2d at 623; *see also United States v. Berberian*, 767 F.2d 1324, 1326 (9th Cir. 1985) (Ninth Circuit holds that co-defendant's testimony admitting guilt in suppression hearing does not constitute a waiver of the Fifth Amendment at his then-severed co-defendant's trial). Additionally, the declarations that Mr. Ferrer signed in civil cases predating his plea agreements have no bearing on the present proceeding, because they occurred in the context of separate cases.[2]

**B.    Mr. Ferrer's Federal Plea Agreement Does Not Waive the Privilege**

Defendants next argue that "in the plea agreement in the related case *United States v. Ferrer*, 18-CR-464, Ferrer expressly agreed to waive his Fifth Amendment rights[.]" (Dkt. No. 750, at 7.) This is incorrect. Mr. Ferrer's federal plea agreement does not even mention the Fifth Amendment, let alone expressly waive it.[3]

Mr. Ferrer's federal plea agreement states that he may "be called upon to testify about this matter in the future." (Case No. 2:18-cr-464-SMB, Dkt. No. 7-1, at 14.) This is certainly not a waiver of the privilege for the instant hearing. First, Mr. Ferrer's anticipated testimony in Case No. 2:18-cr-464-SMB, may well never occur. For example, if defendants plead guilty or prevail in one of their two pending motions to dismiss (Dkt. Nos. 561, 746), Mr. Ferrer will not testify in this case, so the act that Defendants argue waives the privilege will not take place. Second, even if Mr. Ferrer

---

[2] To the extent that Defendants intend to make an issue of declarations Mr. Ferrer signed in civil cases, Mr. Ferrer has explained that his former counsel directed him to sign the declarations and "only gave me a few hours between when they sent the draft declarations and when they needed me to return them signed." (Dkt. No. 192-6, para. 18.)

[3] Defendants' brief leaves it unclear what part of the federal plea agreement they are referring to. Their citation points to "Ex. H at 14; ¶ 7.b.)." However, paragraph 7(b) is on page 7 of their exhibit, not page 14, and neither page 7 nor page 14 mentions the Fifth Amendment, let alone includes an express waiver of the privilege.

does eventually testify at a trial in this case, that will be a later stage of the proceeding, so it has no bearing on whether his Fifth Amendment rights are intact at this earlier stage. *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979). Lastly, Mr. Ferrer's plea agreement has not been finalized and he has not been sentenced, so his Fifth Amendment rights are fully intact. *Paris, supra,* 827 F.2d at 399.

### C. Mr. Ferrer's California and Texas Agreements Do Not Waive the Privilege

Mr. Ferrer's plea agreements with the States of Texas and California are even less relevant to the present motion. First, neither of those plea agreements have yet been accepted by the respective courts, and Mr. Ferrer has not been sentenced in either jurisdiction. "A convicted but unsentenced defendant retains his Fifth Amendment rights." *Paris*, *supra*, 827 F.2d at 399. Second, these are different cases, and so even if Ferrer had waived in those cases, which he has not, that waiver would not be imputed to the present matter. *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979) ("waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs").

Lastly, a review of the text of the agreements themselves shows that neither actually purports to waive the Fifth Amendment privilege. The Texas plea agreement contains language conferring use immunity for statements Ferrer made pursuant to that agreement that is "coextensive with Defendant's right against self-incrimination" (Dkt. No. 750, Ex. M., at para. 2), but it does not purport to be a blanket waiver for future proceedings. (Indeed, Texas state courts have upheld Ferrer's assertion of the privilege as recently as February 2019. *See* Castillo decl, para. 5.) Additionally, Mr. Ferrer's promise in the Texas plea agreement to "give full, complete, and truthful evidence concerning [his] knowledge of any and all offenses committed by any and all co-defendants identified by Texas, California, or federal authorities" does not provide any rights to the Defendants in this case, because they are not a party to that agreement. The only parties to that agreement are Mr. Ferrer and the Texas Attorney General's Office.

Likewise, Mr. Ferrer's California plea agreement does not even mention the Fifth Amendment. (Dkt. No. 750, Ex. I.) While it includes a promise that Mr. Ferrer will "mak[e] himself available to the [California] Attorney General's Office to assist in the investigation and prosecution . . . providing truthful testimony at preliminary hearing, grand jury, trial, or other court proceeding," this does not waive the privilege and does not create any rights in third-parties, such as Defendants. Mr. Ferrer's Texas and California plea agreements do not waive the privilege, and they do not confer any rights on Defendants that allow them to require Mr. Ferrer's testimony at this hearing.

### III. Mr. Ferrer is in Jeopardy of Criminal Prosecution in Other Jurisdictions

The privilege against self-incrimination can be asserted in any proceeding "in which the witness reasonably believes that the information sought or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys*, 524 U.S. 666, 6723 (1998). Here, Mr. Ferrer knows of ongoing investigations into Backpage in at least two states—Massachusetts and Missouri—which could result in future criminal proceedings against him. (*See* Dkt. No. 739 at 6); *Backpage.com, LLC v. Hawley*, Case No. 17-cv-1951 (E.D. Mo.) (Backpage's suit to block a civil investigative demand propounded by the Attorney General of Missouri); *Backpage v. Healey*, Case No. 17-2090 (1st Cir.) (under seal). This alone is sufficient to support Mr. Ferrer's assertion.

Additionally, Defendants' claim that Mr. Ferrer's three plea agreements "satisfied all charges" he faces is simply incorrect. (Dkt. No. 750, at 9) "A voluntary guilty plea, such as [witness's], is a waiver of the Fifth Amendment privilege only in regard to the crime that is admitted; the defendant retains the right against self-incrimination as to any crimes for which he may still be prosecuted." *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982). A review of the superseding indictment in this case (Dkt. No. 230), shows that the Defendants in this case face broader charges than does Mr. Ferrer, including charges related to violation of the Travel Act, 18 U.S.C. § 1952(a)(3)(A) and money laundering in violation of 18 U.S.C. § 1956-1957.

These charges have certainly not been "satisfied" by Mr. Ferrer's unfinalized plea agreement in the federal case against him, and so the argument that Mr. Ferrer is out of danger of criminal prosecution is incorrect.

IV. **Mr. Ferrer's Testimony at This Hearing Would Implicate the Fifth Amendment Privilege**

The Fifth Amendment privilege extends "not only to answers that would in themselves support a conviction," "but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant[.]" *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Here, while Defendants argue that questioning at this hearing is "unlikely to result in questioning of any kind that could implicate Ferrer in further wrongdoing beyond that to which he has already pleaded guilty three times," Defendants' response brief demonstrates this is incorrect. Among other things, Defendants state in their brief that they intend to elicit testimony about a broad range of topics, including Backpage's payment systems, its moderation program, its marketing efforts, and its effort to "partner" with known prostitution review sites, such as The Erotic Review. (Dkt. No. 750, at 3-6.) These lines of inquiry clearly implicate the Fifth Amendment.[4]

V. **Given the Availability of Several Other, More Knowledgeable Witnesses, this Subpoena is Oppressive and Unreasonable**

Defendants try to have it both ways. For the first several pages of their brief, they argue Mr. Ferrer's testimony is essential to this hearing because Mr. Ferrer is in a "unique position" to testify about a variety of topics, including how Backpage processed financial transactions, set pricing, moderated advertisements, cooperated with law enforcement, and marketed itself to pimps and prostitutes. (Dkt. No. 750, at 3-6.) Later, when arguing that questioning of Mr. Ferrer would not implicate his

---

[4] Should the Court deny the instant motion, Mr. Ferrer respectfully requests that the Court carefully limit any questioning to that which Defendants argue is necessary for this hearing—namely, testimony "limited to the state of the equipment Ferrer used (and directed others to use) in the course of his business." (Dkt. No. 750, at 11.)

1  privilege against self-incrimination, Defendants pivot 180 degrees, asserting that Mr.
2  Ferrer's "anticipated testimony is limited to the state of the equipment" he used. (*Id.*, at
3  10). This pivot reveals the flaw in Defendants' logic: If they intend to question Mr.
4  Ferrer about all the topics discussed in the first half of their brief, Ferrer's Fifth
5  Amendment rights would certainly be implicated. If they only want to discuss "the
6  state of the equipment" Backpage used, there are plenty of more knowledgeable
7  witnesses they could call.

8       Indeed, as Backpage's former Chief Information Officer, Chris Kempel,
9  explained in his sworn declaration submitted with Mr. Ferrer's motion, Mr. Ferrer
10 "was not technically versed, and did not have personal knowledge about how [the]
11 company's data servers functioned or how elements were pulled from multiple servers
12 in order to generate an advertisement on Backpage as it would have been displayed to
13 the user." (Dkt. No. 739-1, para. 3.) Defendants offer no evidence to support their
14 assertion that they need Mr. Ferrer's testimony to discuss the "state of the equipment"
15 that Backpage used.

16      Depending on what information they seek to elicit, Defendants could call
17 several more knowledgeable witnesses, including Mr. Kempel, who acknowledged that
18 his "role was to handle the company's IT systems, servers, and databases[.]" (*Id.*, para.
19 2.) Additionally, if Defendants seek testimony regarding the functionality of
20 Backpage's advertising data servers, witnesses from Desertnet likely would be most
21 knowledgeable, because "Desertnet handled the management of all Backpage data that
22 had to do with displaying advertisements, photos, text, banner ads, etc." (*Id.*, para. 4.)
23 If Defendants seek to elicit testimony about Backpage's financial data, they could call
24 a witness from Amazon Web Services, because, as Kempel explains, "Backpage's
25 financial data, including credit card information for advertisers, was managed offsite
26 by Amazon Web Services," and Mr. Ferrer "did not have involvement in managing
27 that data, and would not be knowledgeable about the manner in which it was
28 configured." (*Id.*, para. 6.) In any case, Defendants offer no evidence to rebut Mr.

Kempel's sworn declaration, which explains why Mr. Ferrer's testimony would be of little value at the present hearing.

### VI. Defendants Still Have Not Complied with Rule 17(d)

Defendants assert that they "have since sought a subpoena for Ferrer that includes the required witness-attendance fees and legal mileage allowances and anticipate service of all on Monday September 30, 2019." However, to date, Mr. Ferrer has not received the required documents. While Defendants characterize this as a "technical" mistake (Dkt. No. 739, at 11), the text of Rule 17 is clear. Even if Defendants' correct this error, that means they will not have complied with Rule 17 until just three days before expecting a witness to fly from out of state to attend a hearing. That is not reasonable.

### CONCLUSION

For all the reasons set forth above, the Court should quash the subpoena to Defendant Carl Ferrer.

Dated: September 30, 2019

Respectfully submitted,

CLARENCE DYER & COHEN LLP

By _____
Nanci L. Clarence
Jonathan Baum
Shaneeda Jaffer
Attorneys for Movant Carl Ferrer