Thomas H. Bienert, Jr. (CA 135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-CR-00422-PHX-SMB |
| Plaintiff, | **DEFENDANT JAMES LARKIN'S MOTION TO SUPPRESS** |
| vs. | |
| Michael Lacey, *et al.*, | **(Oral argument requested)** |
| Defendants. | |

Defendant James Larkin, by and through his undersigned attorney, moves to suppress evidence obtained from the search of his home and his electronic devices because the warrants leading to these searches were facially invalid under the Fourth Amendment.

This Motion is based on the attached Memorandum of Points and Authorities, the Court's file, and any evidence or argument presented at the hearing on this matter. This is Mr. Larkin's first motion to suppress related to a search of his home and electronic devices.

Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based on this Motion.

DATED: October 18, 2019          BIENERT | KATZMAN PC


                                 */s/ Whitney Z. Bernstein*
                                 Whitney Z. Bernstein
                                 Thomas H. Bienert, Jr.
                                 *Attorneys for James Larkin*

## MEMORANDUM OF POINTS AND AUTHORITIES

James Larkin moves for an order suppressing evidence obtained from the search of his home and his electronic devices. The search warrants at issue were facially invalid for the reasons set forth below.

## BACKGROUND

The government sought and obtained several search warrants in this District and elsewhere. At issue in this motion are two search warrants, both of which violate the Fourth Amendment.

## I.    The Home Search Warrant

On April 5, 2018, the government obtained a search warrant authorizing a search of Mr. Larkin's home and two of his co-defendant Michel Lacey's homes along with a safety deposit box that belonged to co-defendant Scott Spears and his wife ("Home Search Warrant")[1]. The Home Search Warrant authorized the government to enter Mr. Larkin's home to search for evidence identified in Attachment B,[2] which included, among other categories of evidence:

- "Evidence of wealth, assets, and real estate obtained from the illicit activity to include; notes, correspondence, and news articles related to prostitution, sex trafficking and/or Backpage and related entities."

- "Documentation of any funds received from Backpage or other related companies and disposition of those funds."

- "Any property or proceeds resulting from money laundering or international money laundering scheme to include computers, currencies, coins, precious metals, artwork, jewelry, home furnishings and vehicles."

*Id.*   The Home Search Warrant authorized the government to seize this evidence if "stored on magnetic or electronic media including hard drive, portable devices such as thumb drives or any other media capable of storing information in a form readable by a computer" as well as "external hard drives, CDs, DVDs, digital tape, and other forms of backup media." *Id.*

---

[1] A true and correct copy of the Home Search Warrant, issued under Arizona Docket No. 18-9126 MB, is attached as Exhibit A.

[2] The warrant covered the time period January 1, 2010 to the present.

JAMES LARKIN'S MOTION TO SUPPRESS

The government's application for the Home Search Warrant included an affidavit from F.B.I. Special Agent Amy L. Fryberger.[3]  The operative indictment at the time of the government's warrant application (since superseded) was attached to the affidavit and summarized but not incorporated by reference.  *See id.*  Fryberger noted that the indictment charged Mr. Larkin with violations of 18 U.S.C. §§ 371 (Conspiracy), 1952 (Travel Act), 1956 (Money Laundering), and 1957 (International Money Laundering).  Further, Fryberger claimed that Mr. Larkin and his co-conspirators "knowingly facilitated the commission of prostitution" and money laundering.  *Id.* at ¶ II.2.

In an effort to establish probable cause, Fryberger said that a grand jury found that Mr. Larkin and his co-conspirators "were involved in a conspiracy to commit several different forms of money laundering."  *Id.* at ¶ IV.1.  Fryberger alleged that Mr. Larkin purchased an apartment in Paris, France in 2016 and spent approximately $100,000 remodeling it.  *Id.* at ¶ IV.1.a.x.

The warrant return receipts[4] show that the government seized several items of personal property from Mr. Larkin's Arizona home, including documents, jewelry, vehicles, and electronic devices, but does not indicate whether and how any of it fell within the authorized search.

## II.   The Device Search Warrant

On August 31, 2018 the government obtained another warrant to search the electronic devices it had seized from Mr. Lacey and Mr. Larkin during execution of the Home Search Warrant and their arrest. ("Device Search Warrant")[5].

Attachment A2 to the Device Search Warrant identifies the digital devices that the government seized from Mr. Larkin's home (three DVDs, three computers, a monitor, an iPad, two hard drives, and a back-up drive) and person upon his arrest (laptop and iPhone).  *Id.*  Attachment B indicates that the government was authorized to search for "[a]ll information that constitutes fruits, evidence and instrumentalities of violations of 18 United States Code Section 371

---

[3] *See* Fryberger Affidavit in Support of Search and Seizure Warrant, a true and correct copy of which is attached hereto as Ex. B.

[4]  True and correct copies of receipts for items seized from Mr. Larkin are attached as Exhibit C.

[5]  A true and correct copy of the Device Search Warrant, issued under Arizona Docket No. 18-8365 MB, is attached hereto as Ex. D.

(Conspiracy), 1952 (Travel Act), and/or 1956 and 1957 (Money Laundering) spanning the period of the indicted conspiracies to commit any [of] these offenses from 2004-2008." That evidence included "correspondence" with co-Defendants and Carl Ferrer concerning Backpage, "[b]ank statements and financial records for Michael Lacey . . . covering a period from 2012 through 2018," "[r]ecords of purchase and ownership of assets" for an unspecified period of time, and "[r]ecords of banking transactions from 2012 through April 2018." *Id.* Attachment B sets forth required search procedures, including use of a Filter Team to conduct the first review of the data seized from the Defendants' devices. *See id.*

The government's application for the Device Search Warrant was supported by an affidavit from I.R.S. Special Agent-Computer Information Specialist Richard Robinson.[6] The superseding indictment, which was the operative indictment at that time (and now), was attached and incorporated by reference. *Id.*, ¶ III.2. Robinson noted that the superseding indictment charged Mr. Larkin with violations of 18 U.S.C. §§ 371 (Conspiracy), 1952 (Travel Act), 1956 (Money Laundering), and 1957 (International Money Laundering). *Id.*, ¶ III.1.

With respect to probable cause, Robinson alleged that Mr. Larkin and his co-conspirators "were knowingly involved in the facilitation of prostitution and were engaged in money laundering activities." *See* Robinson Aff., Ex. E ¶ IV.1. Robinson's affidavit quotes from cooperator Carl Ferrer and Daniel Hyer's plea agreements where they claim that the "great majority" or "majority" of advertisements posted to Backpage were for prostitution services. *Id.* at ¶¶ IV.2, 3.

## ARGUMENT

The Fourth Amendment mandates that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To be valid, a reviewing court must find that the warrant meets four separate requirements: (1) it must be based on probable cause; (2) supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the persons or things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A failure

---

[6] A true and correct copy of the Robinson Affidavit in Support of Application of Seizure Warrant is attached as Exhibit E.

to satisfy even one of these requirements renders a warrant facially invalid. *See id.* In addition to these requirements, in *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court recognized that a search conducted pursuant to a warrant is invalid if the supporting affidavit contains material misstatements of fact or omissions.

Under these standards, both the Home and Device Search Warrants are facially invalid. First, the warrants fail the probable-cause requirement because the underlying affidavits contain no factual information that would enable the issuing magistrate to make a neutral and detached probable-cause determination. Second, the Home Search Warrant fails the particularity requirement, both in terms of specificity and breadth. Finally, Mr. Larkin is entitled to a *Franks* hearing because the Home and Device Search Warrants contain material omissions and misrepresentations.

## I.     The Home and Device Search Warrants violate the probable cause requirement.

### A.     The Fourth Amendment requires that an issuing judge independently assess facts before finding probable cause to search.

For a search warrant to be valid, it must describe the place to be searched and things to be seized with sufficient particularity and "be no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). A search warrant is supported by probable cause if the issuing judge finds that "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A search is invalid where "the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quotations and alterations omitted).

When an affiant's statements lack factual support, a warrant lacks probable cause. *Id*; *accord Gates*, 462 U.S. at 239 ("wholly conclusory" statements of officers insufficient to establish probable cause); *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) (conclusory allegations lack factual support are "entitled to little weight"). If an affidavit fails to provide foundational facts, an issuing judge cannot fulfill his or her duty to complete an independent review of the warrant *See United States v. Leon*, 468 U.S. 897, 914 (1984) (lack of neutral and

detached review renders a reviewing judge "a rubber stamp for the police."); *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965) (magistrate must be provided foundational facts).

The basis for probable cause must be contained within the application without reference to outside information.  *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1984).  A grand jury's probable cause finding cannot serve as a proxy for a probable cause determination by a magistrate issuing a warrant.  *See id.* at 794-95 ("Fourth Amendment requires that warrants may issue only upon a determination of probable cause by a neutral and detached magistrate.").

Although the Ninth Circuit allows a magistrate to consider an indictment, it cannot be a substitute for facts in a warrant affidavit.  *Id.* at 795.  That is, a magistrate's probable-cause finding must be independent and cannot simply ratify an affiant's conclusions.  *See Gates*, 462 U.S. at 238; *see also Rubio*, 727 F.2d at 795 ("[W]arrant affidavit's mere recitation of the indictment is precisely that—the conclusion of another body, and a body whose function differs substantially from the magistrate's constitutional duty to assess probable cause.").  If the government contends that the magistrate should consider evidence presented to the grand jury in assessing probable cause, the government must present that evidence in its warrant application.  *Cf. Rubio*, 727 F.2d at 795 ("The facts upon which the magistrate bases his probable cause determination must appear within the four corners of the warrant affidavit; the warrant cannot be supported by outside information.").

**B.    The Home and Device Search Warrant applications were not supported by probable cause, so the magistrate erred in approving them.**

The magistrate lacked a substantial basis to find probable cause because the affidavits underlying the warrants provided no facts supporting the crimes allegedly committed by the Defendants.  Rather than outlining facts known to the affiants as is required, the affidavits summarize and incorporate the indictment.  *See Rubio*, 727 F.2d at 795 (reversing convictions where affidavit that referred to the indictment "furnished no basis whatsoever for believing the defendants" had engaged in a pattern of racketeering); *United States v. Bailey*, 327 F. Supp. 802, 806 (N.D. Ill. 1979) (denying order to compel defendants to provide handwriting exemplars because government failed to establish probable cause and recognizing that "the finding of

probable cause for arrest of an individual that accrues from his being indicted does not . . . become the equivalent of a finding of probable cause for a warrant to search that person's home, his car, or his business office").

In addition to improperly relying on the indictments, the search warrant affidavits do not include any facts establishing that Mr. Larkin had the heightened scienter required to establish probable cause that he engaged in any Travel Act (or money laundering) violations.  *See* Defs.' Mot. to Dismiss, Doc. 561 at 37-48 (incorporated herein by reference and explaining why the indictment is facially insufficient because it fails to provide any allegations on the requisite scienter for the charged crimes).  Because the warrant applications contain conclusory statements about generalized intent rather than facts establishing Mr. Larkin's knowledge and intent to engage in unlawful activity, the search warrants are facially invalid.  *See United States v. Weber*, 923 F.2d 1338, 1345-46 (9th Cir. 1990) (reversing conviction and ruling that suppression was warranted where affidavit in support contained only generalized conclusions about the behavior of child pornographers rather than particular evidence suggesting that the defendant was a child pornographer); *Underwood*, 725 F.3d at 1082-84 (affirming suppression where affidavit contained only expert opinion and conclusory statements that defendant trafficked ecstasy); *Cervantes*, 703 F.3d at 1139-40 (reversing denial of suppression due to affiant's failure to offer facts establishing probable cause to believe that defendant's home was a "narcotics stash location").

Finally, the affidavits are void of any facts that establish probable cause to believe that Defendants knowingly and intentionally promoted/facilitated a "business enterprise" involving prostitution.[7]  Critically, the government must provide facts to the issuing magistrate indicating that the targets of the warrants knowingly and intentionally engaged in "unlawful activity."  18 U.S.C. §1952(a)(3).  The plain text of the Travel Act defines "unlawful activity" as "any business enterprise involving … prostitution offenses."  18 U.S.C. §1952(b).  The affidavits contain no fact concerning a specific criminal "business enterprise" or that the targets of the warrants

---

[7] *See* Mr. Brunst's Motion to Dismiss Indictment Based on Failure to Allege Necessary Elements of the Travel Act (Doc. 746), and Mr. Larkin's Joinder to the same (Doc. 754), incorporated herein by reference.

knowingly and specifically intended to facilitate or promote a particular "business enterprise." As a result, the magistrate erred in authorizing the warrants.

**II. In addition to lacking probable cause, the Home Search Warrant violated Mr. Larkin's Fourth Amendment rights by failing to specify the items sought with particularity and because it was overbroad.**

In addition to establishing probable cause, a warrant must be sufficiently particular. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). To be particular, a "warrant must clearly state what is sought." *Id.* Further, a warrant that is broader in scope than the probable cause upon which it is based is defective. *Id.* The particularity and breadth requirements protect a citizen's Fourth Amendment's privacy rights by preventing the government from conducting "general, exploratory rummaging in a person's belongings." *Weber*, 923 F.2d at 1342. The Home Search Warrant violates the particularity requirement because it does not sufficiently specify the items sought and is overbroad.

**A. The Home Search Warrant did not sufficiently describe the particular items sought.**

The description of the items to be seized "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986); *see also United States v. Bridges*, 344 F.3d 1010, 1017 (9th Cir. 2003) ("The executing officer must be able to identify from the face of the warrant, as well as any attached or expressly incorporated documents, what it is that they are being asked to search for and seize from the targeted property."). The following search terms, limited to the period 2010 to the time of execution of the Home Search Warrant, fail to provide adequate specificity:

- "*Evidence of wealth*, assets, and real estate obtained from the illicit activity to include; notes, correspondence, and news articles related to prostitution, sex trafficking and/or Backpage and related entities."

- "Documentation of any funds received from Backpage or *other related companies* and disposition of those funds."

- *"Any property or proceeds resulting from money laundering or international money laundering scheme* to include computers, currencies, coins, precious metals, artwork, jewelry, home furnishings and vehicles."

*See* Ex. A.

These broad descriptions gave the searching agents unfettered discretion to decide what to seize and examine in violation of the Fourth Amendment. For example, it is unclear what items constitute "[e]vidence of wealth." Although the search term provides examples, those examples are not exclusive. Cash, antiques, jewelry, and any other unlimited number of objects could qualify as "[e]vidence of wealth" but in who's opinion? How much money constitutes wealth? How valuable is an item and according to what standard? This insufficiently particular term renders the warrant invalid. *See United States v. Washington*, 797 F.2d 1461, 1472-73 (9th Cir. 1986) (search warrant permitting seizure of articles of personal property tending to establish the wealth and financial status of defendant impermissibly overbroad).

Moreover, the warrant does not describe what companies are "related" to Backpage. Without a list of Backpage's subsidiaries and affiliates, the searching agents had no information from the warrant setting forth what items involved funds received from companies "related" to Backpage.

Also, the warrant does not distinguish what is meant by "property or proceeds" of money laundering (as opposed to any other household goods unrelated to money laundering). When a warrant covered items that are purportedly related to unlawful conduct, "the warrant must contain some guidelines to aid the determination of what may or may not be seized." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982) (reversing conviction and holding that "limiting the search to only records that are evidence of the violation of a certain statute is generally not enough" (quotations omitted).

The Home Search Warrant does not describe how searching agents can distinguish between goods purchased with funds derived from the publishing of alleged illicit Backpage ads from items bought with money derived from Defendants' lawful publishing activities, including money earned from Mr. Larkin's decades of work publishing print newspapers. Any items

acquired before the alleged unlawful conduct could not possibly be funds from Backpage and "related" companies.

Because the Home Search Warrant permits the "wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide no guidelines to distinguish items used lawfully from those the government had probable cause to seize," *Sprilotro*, 800 F.2d at 964 (affirming suppression of evidence), the Home Search Warrant is facially invalid.

**b.      The Home Search Warrant is unconstitutionally overbroad.**

The finding of probable cause must support the seizure of each of the particular items named in the warrant.  *See, e.g.*, *SDI Future Health, Inc.*, 568 F.3d at 702.   That is, even if the affidavit for the Home Search Warrant satisfied the probable-cause requirement (which it did not), the search of items vastly exceeded the scope of probable cause.

The scope of probable cause is limited to the operation of Backpage and expenditure or use of funds derived from Backpage's alleged unlawful activities for an unspecified time period.[8] The time period is unspecified because the search warrant allows the searching agents to search for the identified categories of evidence from 2010 through the time of execution (*see* Ex. A).  But the affidavit does not set forth probable cause for this identified time period; instead, it identifies isolated dates when purportedly unlawful transactions occurred without any indication that the period for which there is probable cause is 2010 through the time of search (*see* Ex. B).  As a result of this discrepancy, the Home Search Warrant allowed the search of evidence that fell outside of the time period in which the affidavit provided probable cause to believe a crime occurred, rendering the search warrant overbroad.  *See Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750-51 (9th Cir. 1989) (affirming suppression and concluding that "the broad scope of the warrants," which allowed the seizure of items unrelated to the forged Dali artwork "despite the total absence of any evidence of criminal activity unrelated to Dali" was "not justified" by the scope of probable cause); *see also SDI Future Health*, 568 F.3d at 704-05 (search term that authorized search for all "rolodexes, address books, and calendars" overbroad because

---

[8] Although the affidavit mentions various and isolated dates of financial transactions, it does not identify any time period for the purported criminal conduct.

it allowed the government to obtain contact information for anyone who had ever dealt with the corporate-defendant rather than limiting the search to information related to the "consultants, physicians, and health insurance companies" purportedly involved with the conspiracy).

**III.    Mr. Larkin is entitled to a *Franks* hearing because the Home and Device Search Warrants contain material misstatements and omissions.**

Because the affidavits omitted significant information material to the issuing magistrate's probable-cause determination, Mr. Larkin is entitled to a hearing on the validity of the affidavits under *Franks v. Delaware*, 438 U.S. 154 (1978).  There, the Supreme Court held that a defendant is entitled to an evidentiary hearing where there is evidence that a search conducted pursuant to a warrant was based on a supporting affidavit that contains intentional or reckless material misstatements of fact or omissions.  *See Franks*, 438 U.S. at 171-72.

Since *Franks*, the Ninth Circuit held that a defendant is entitled to an evidentiary hearing to challenge the veracity of an affidavit when the defendant preliminarily demonstrates that an affidavit contains "intentionally or recklessly false statements" and that without those falsities the government cannot support a probable cause finding sufficient to issue a search warrant.  *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985) (quotations omitted).  Clear proof of deliberate or reckless falsity is not required.  *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005).  Instead, to trigger a hearing a defendant must offer evidence supporting "a finding of intent or recklessness."  *Id.*  Once a defendant makes that preliminary showing, the district court "must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause."  *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988).

Half-truths like those in the affidavits offered in support of the Home and Device Search Warrants improperly allow a search warrant affiant to manipulate the magistrate's inferences. *Stanert*, 762 F.2d at 781; *see also Chism v. Washington State*, 661 F.3d 380, 388 (9th Cir. 2011) (an officer acts recklessly when affidavit does not report important factual information within the officer's knowledge at the time affidavit was prepared).  When an omission is essential to the

finding of probable cause, recklessness may be inferred from the omission itself.  *See Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1994).

A defendant is entitled to *Franks* hearing even if the misstatements or omissions are not the affiant's fault.  *See United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992); *accord Johns*, 851 F.2d at 1134 n.1.  If a defendant prevails on a *Franks* challenge, the evidence seized must be suppressed without application of the "good faith" rule.  *See United States v. Leon*, 468 U.S. 897, 922 (1984); *accord United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

Here, Mr. Larkin is entitled to a *Franks* hearing challenging the veracity of the affidavits underlying both the Home and Device Search Warrants because they contain material misrepresentations and omissions.  The most serious omission is that the affidavits selectively ignore cases holding that the First Amendment protects online classified advertising sites generally, and Backpage in particular.  This omission is critical because **all** allegations of unlawful conduct hinge on claims that advertisements posted to Backpage violated state prostitution laws. If publishing third-party advertisements for purported illegal activities cannot be unlawful, there is no predicate for the affiants' claims that resulting financial transactions violated federal money laundering laws or the Travel Act.

At the time the affidavits were written, the government knew that courts in California had *twice* rejected the specific theory on which all of the allegations in the affidavits are based; that is, that publishing classified ads for adult services violates state law prohibiting prostitution.[9]  *See People v. Ferrer*, 2016 WL 7237305, at *3 (Sup. Ct. Sacramento Cnty. Dec. 9, 2016) ("*Ferrer I*") (recognizing that "the relevant question in this case is whether, and to what extent, Defendants' activities entitle them to protection *of their First Amendment rights* through the immunity provision of the CDA" (emphasis added)); *People v. Ferrer*, No. 16FE024013 (Sup. Ct. Sacramento Cnty. Aug. 23, 2017) ("*Ferrer II*") (holding the First Amendment and Communications Decency Act

---

[9] Indeed, the government has stated that it "partner[ed]" with the California Attorney General's Office in their efforts to shut down Backpage.  *See* April 9, 2018 DOJ Press Release, available at https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads (last visited on Oct. 17, 2019).

("CDA") foreclose suit "against an online publisher when the suit is based on speech provided by a third party").

The affidavits disingenuously claim that Defendants' purported handling of the ads establishes probable cause that Backpage facilitated prostitution in violation of state law. (Ex. B at ¶ IV.1.a.vi; Ex. E at ¶¶ IV.8.a-f.)  However, the government knows that the editing of ads is protected under the First Amendment.  Indeed, moderation falls under "traditional editorial functions," and constitutes protected speech, even when terms or images are deleted, and the remaining portion of an advertisement is published.  *See Ferrer II*, No. 16FE024013, slip op. at 13-14 ("[E]ven if Backpage knew of the unlawfulness of the content of the ads, knowledge is insufficient to render Defendants liable.  This is true regardless of whether Backpage even exercised its editorial discretion and deleted or blocked certain terms from ads.").

The search warrant affidavits also intentionally fail to disclose that numerous courts have rejected claims that adult advertisements are synonymous with prostitution or trafficking.  *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("[N]ot all advertisements for sex are advertisements for illegal sex.").[10]  The government's suppression of this information, which should have been weighed by the judge considering probable cause for the warrants, renders the warrants materially misleading.  Indeed, the government knew and should have advised the

---

[10] *Accord Doe v. Backpage.com LLC*, 104 F Supp. 3d 149, 156-57 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016) ("existence of an escorts section in a classified ad service, whatever its social merits, is not illegal."); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 1262, 1282 (W.D. Wash. 2012) (escort ads have long been permitted and escort services are licensed and regulated in many states); *Backpage. com, LLC v.Cooper*, 939 F. Supp. 805, 816, 833-34 (D. Tenn. 2013) (ads on Backpage.com are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman,* 2013 WL 4502097, at *9-11 (D.N.J. 2013) (rejecting argument that escort ads on the website are unprotected speech); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011); *see also Dart v. Craigslist,* Inc., 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("We disagree . . . that the 'adult services' section is a special case. The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content."); *Cohen v. Bd. of Supervisors*, 707 P.2d 840, 852 (Cal. 1985) ("An escort service may very well involve lawful activities relating to sex." (internal quotations omitted)).

issuing magistrate that under the First Amendment special rules apply when the government seeks to hold a party accountable for third-party speech.

Similarly, the affidavits allege that Mr. Larkin and his co-conspirators knowingly facilitated prostitution.  (*See* Ex. B at ¶ II.2; Ex. E at ¶ III.2.)  This assertion ignores the long line of cases requiring a heightened proof of scienter when the government seeks to hold a publisher liable for publishing the speech of a third party and cases indicating that a heightened proof of scienter is required for Travel Act violations.  (*See* Defs.' Mot. to Dismiss, Doc. 561 at 37-42.)  These omissions are also materially misleading.

Finally, the indictments are riddled with material misstatements as set forth in greater detail in the concurrently filed Motion to Dismiss Indictment for Grand Jury Abuse or, in the Alternative, for Disclosure of Grand Jury Transcripts, incorporated herein by reference.

Due to the government's material misstatements and omissions in affidavits supporting its request for the search warrants, Mr. Larkin is entitled to a *Franks* hearing.  This hearing will establish the veracity of the affidavits underlying the Home and Device Search Warrants and show that the government's material omissions would have undermined the magistrate's probable-cause finding.  *See United States v. Perkins*, 583 F. App'x 796, 797 (9th Cir. 2014) (vacating conviction and remanding for *Franks* hearing where affidavit to search home for child pornography omitted information that Canadian officials had indicated that the images "had no obvious sexual purpose" and failed to provide that magistrate with the images).

## CONCLUSION

For all these reasons, this Court should:  (1) suppress the evidence obtained from execution of the Home and Device Search Warrants and any evidence derived from them; and, to the extent required, (2) hold a *Franks* hearing for Mr. Larkin to demonstrate that the Home and Device Warrants contain material misstatements and omissions in violation of the Fourth Amendment.

1

2    DATED: October 18, 2019                 BIENERT | KATZMAN PC

3                                            */s/ Whitney Z. Bernstein*
                                             Whitney Z. Bernstein
4                                            Thomas H. Bienert, Jr.
                                             *Attorneys for James Larkin*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JAMES LARKIN'S MOTION TO SUPPRESS

## CERTIFICATE OF SERVICE

I certify that on this 18th day of October, 2019, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

*s/ Toni Thomas*
Toni Thomas

Anne Michelle Chapman, anne@mscclaw.com

Erin E. McCampbell, emccampbell@lglaw.com

Anthony R. Bisconti, tbisconti@bienertkatzman.com

Ariel A. Neuman, aan@birdmarella.com

Bruce S. Feder, bf@federlawpa.com

James C. Grant, jimgrant@dwt.com

Lee David Stein, lee@mscclaw.com

Paul J. Cambria, pcambria@lglaw.com

Robert Corn-Revere, bobcornever@dwt.com

Ronald Gary London, ronnielondon@dwt.com

Janey Henze Cook, janey@henzecookmurphy.com

John Lewis Littrell, jlittrell@bmkattorneys.com

Seetha Ramachandran, Seetha.Ramachandran@srz.com

Thomas H. Bienert, Jr. tbienert@bienertkatzman.com

Whitney Z. Bernstein, wbernstein@bienertkatzman.com

Gary S. Lincenberg, glincenberg@birdmarella.com

Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com

Michael D. Kimerer, mdk@kimerer.com

Rhonda Elaine Neff, rneff@kimerer.com

David S. Eisenberg, david@deisenbergplc.com

Joy Malby Bertrand, joyous@mailbag.com

John Jacob Kucera, john.kucera@usdoj.gov

Kevin M. Rapp, Kevin.Rapp@usdoj.com

Margaret Wu Perlmeter, Margaret.perlmeter@usdoj.gov

Reginald E. Jones, reginald.jones4@usdoj.gov

Peter Shawn Kozinets, Peter.Kozinets@usdoj.gov

Andrew C. Stone, andrew.stone@usdoj.gov

JAMES LARKIN'S MOTION TO SUPPRESS