MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Michael Lacey, et al., <br><br> Defendants. | CR-18-422-PHX-SMB <br><br> **UNITED STATES' RESPONSE TO MOTION TO COMPEL *BRADY*** <br> **[Doc. 777]** |

## INTRODUCTION

On August 19, 2019, the Court expressly "prohibit[ed] the parties from filing any further motions to compel or motions for discovery until the parties contact the Court to discuss." (Doc. 728 at 2.) Inexplicably, Defendants have now filed a "Motion to Compel Production of *Brady* Material" in violation of the Court's Order. (*Cf.* Doc. 777.) A large portion of the motion seeks nearly 30 categories of materials Defendants requested in

October 2018. (*See* Doc. 777-1.) The United States responded at length to Defendants' request in November 2018. (*See* Exhibit B, attached hereto.) Without engaging in any meaningful follow-up in the ensuing 12 months, Defendants simply filed the instant motion. The motion is procedurally improper and should be denied.

Even if considered on the merits, Defendants' motion is divorced from the actual facts in this case. In the nearly 20 months since indictment, the government has taken numerous steps to provide Defendants robust discovery and has made early and broad disclosures that well exceed its criminal disclosure and discovery obligations under Rule 16, *Brady*, and the Jencks Act. Notwithstanding these efforts, Defendants seek to transform the government's liberality into a far reaching fishing expedition by demanding categories of documents that: (1) Defendants already have—thereby disregarding the Court's October 15, 2018 Order (Doc. 339) denying Defendants' request that the government cull through discovery to find and itemize material potentially helpful to their defense; (2) the government has stipulated it would turn over if it comes across in the future; (3) are irrelevant and to which they are not entitled under even the most expansive reading of Rule 16 and *Brady*; (4) the government does not possess; or (5) do not exist. Defendants' discovery demands are vague, vastly overbroad (entirely lacking in temporal limitations), and premised on false assumptions. Defendants' motion should be denied.[1]

**I. DEFENDANTS' ATTEMPT TO SEEK DISCOVERY FAR OUTSIDE THE BOUNDS OF RULE 16 AND BRADY SHOULD BE REJECTED.**

Defendants' assertion that they requested dozens of categories of *Brady* evidence from the government, and "the government has not, yet, disclosed this evidence or stated that it has searched for such evidence but was unable to locate evidence subject to the requests" is inaccurate and misleading. (Mot. at 9-10.) To start, on November 16, 2018—more than a year ago—the government responded to Defendants' request for approximately 30 categories of materials they deemed *Brady*. (Exhibit B.) In this letter,

---

[1] When this Response refers to "*Brady*" or "*Brady* material," the government is including *Giglio*, *Henthorn* and all information required by *Brady* and its progeny.

the government clearly articulated why it disagreed with Defendants' characterization of these materials as *Brady*. (Exhibit B.) Before this, on October 15, 2018, the Court denied Defendants' demand that the government itemize all *Brady* materials contained in the government's disclosures and discovery. (Doc. 339 at 4-6.) More recently, on August 19, 2019, the Court ordered the parties to refrain from filing further discovery motions without first contacting the Court. (Doc. 728 at 2; *see also* Doc. 732, 8/19/19 Hr'g Tr. at 93 (Judge Brnovich: "I am entering an order that there be no further motions to compel or other discovery motions unless and until you contact the court…").) Defendants are now attempting to re-litigate the October 15, 2018 Order—and in so doing, they've violated the August 19, 2019 Order. Defendants offer no justification for overriding the Court's Orders or obtaining other relief.

Much of Defendants' motion—including their assertion that "the government must promptly disclose all exculpatory and/or impeaching material in its possession, custody or control"—simply rehashes the government's *Brady* obligations (of which the government is well-aware). (Mot. at 5; *see also* Doc. 339 at 5-6.) To the extent Defendants seek an order compelling the government to disclose any particular materials, Defendants have fallen far short of meeting their burden for obtaining relief.

As the Ninth Circuit has recognized, to "challenge the government's representation that it lacks *Brady* information, [a defendant] must either make a showing of materiality under Rule 16 or otherwise demonstrate that the government improperly withheld favorable evidence." *United States v. Lucas*, 841 F.3d 796, 808 (9th Cir. 2016). The test for materiality is whether the requested evidence might affect the outcome of the trial. *United States v. Alvarez*, 358 F.3d 1194, 1211-12 (9th Cir. 2004). Moreover, the Ninth Circuit has rejected the premise that a defendant may compel production of notes so that he could search through them for anything useful. *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) ("Mere speculation about materials in the governments' files' [does] not require the district court to make those materials available, or mandate an in camera inspection."); *see also see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995) ("We never held

that the Constitution demands an open file policy…") (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("*Brady* does not "provide defense counsel with unlimited discovery of everything known by a prosecutor.").

Here, Defendants have neither shown materiality under Rule 16 nor demonstrated that the government has withheld favorable evidence. Defendants simply assert "the government must make broad disclosures under *Brady*" in hopes of landing some "new evidence" that might support their assertion that the government has failed to disclose impeachment and/or exculpatory evidence. (Mot. at 4.) However, the limited discovery in criminal cases does not allow for such fishing expeditions, and "defendants cannot use *Brady* simply to search for *Brady* materials. *Brady* is not a pretrial tool discovery tool." *United States v. Weld*, 2009 WL 901871, at *2 (N.D. Cal. Apr. 1, 2009).

That said, the government notes its specific responses to Defendants' approximately 30 categories of requests (Doc. 777, Mot. at 10-13) in Exhibit A to this Response.[2] For the general reasons set forth above, and the specific reasons set forth in Exhibit A, Defendants' requests should be denied.

## II. NCMEC AND CALIFORNIA AND TEXAS ATTORNEY GENERALS' OFFICES DO NOT FUNCTION AS ARMS OF THE GOVERNMENT.

### A. NCMEC Is a Private Non-Profit Organization.

It is black-letter law that private actors cannot "act[ ] on the government's behalf" for purposes of the government's *Brady* obligations. *See*, *e.g.*, *United States v. Josleyn*, 206 F.3d 144, 153-54 (1st Cir. 2000) ("While prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interest") (citing *Kyles*, 514 U.S. at 437-38); *Sleeper v. Spencer*, 453 F. Supp. 2d 204 (D. Mass. 2006)

---

[2] The government provides Exhibit A to comply with LRCiv 37.1 that require the parties set forth the discovery categories at issue in a document separate from a memorandum of law.

- 4 -

("Petitioner cites no well-established law to show that a private vendor, no matter how much business he conducts with the state, is a member of the prosecution team to whom a duty to disclose extends."); *United States v. Zinnel*, 2011 WL 6825684, at *2 (E.D. Cal. Dec. 28, 2011) ("a private trustee is simply not a governmental agent, or member of the prosecution team, so as to create any further duty in that regard"); *United States v. Tomasaetta,* 2012 WL 896152, at *4 (S.D.N.Y. Mar. 16, 2012) ("Documents in the hands of cooperating third parties are not attributable to the Government."); *United States v. Gray*, 731 F. Supp. 2d 810, 822 (N.D. Ind. 2010) (the private vendor providing data storage for state Medicaid agency likely "would not be considered part of the prosecution team since it is not a government agency but a third-party source to the government."). At least two circuits have held that "the availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state." *See United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir. 1991); *see also Crivens v. Roth*, 172 F.3d 991, 997-98 (7th Cir. 1999).

Despite the plethora of law holding that private parties are not agents of the government, Defendants assert the government "must seek and disclose any *Brady* material in the possession of NCMEC" because "it is well-settled that NCMEC"—a private non-profit entity—"is an agent of the government." (Mot. at 15.) In support, Defendants cite four inapposite cases: *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016); *United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012); *United States v. Keith*, 980 F.Supp.2d 33 (D. Mass. 2013); and *United States v. Coyne*, 2018 WL 8667649 (D. Vt. Apr. 10, 2018).

In *Ackerman*, the court examined whether NCMEC was a government entity or agent in determining whether a search it performed violated the Fourth Amendment. 831 F.3d at 1295-1297, 1301. The court held that NCMEC acted as a government entity—or a government agent at a minimum—through its maintenance of the CyberTipline, its review of material sent to the CyberTipline, and its reporting of contraband images to law enforcement. *Id.* at 1296-1304. In *Keith*, the court similarly found that NCMEC "act[ed] effectively as an agent of the government" when it examined a "file uploaded by AOL to the NCMEC CyberTipline." 980 F.Supp.2d at 41. In *Cameron*, the court observed that

"NCMEC is not officially a government entity," but nevertheless concluded that "in the context of the Sixth Amendment Confrontation Clause, NCMEC effectively acted as an agent of law enforcement" because it received a government grant to accept child pornography reports and forward them to law enforcement. 699 F.3d at 644-45.

In *Coyne*, although the court viewed NCMEC as an agent of law enforcement for Fourth Amendment purposes regarding its searches of electronic communications, the court rejected the defendant's argument that NCMEC is a governmental entity. *Coyne*, 2018 WL 8667649 at 399. The court held: "NCMEC is not a governmental entity. It was formed as a private not-for-profit corporation. It is governed by a board of directors that does not include any governmental representations among its voting members. For purposes of governance, it continues to operate as a non-profit." *Id.* The court observed that "like many non-profits, NCMEC receives funding both from governmental grants and from private fundraising" and that "NCMEC performs a range of functions related to the protection of children." *Id.* The court also recognized that "from [NCMEC's] founding following the death of Adam Walsh, NCMEC has been very clear about its purpose, which has been to protect children from abuse, including sexual abuse." *Id*. at 398. The court concluded by noting that "law enforcement shares this purpose, but there is no evidence that NCMEC is controlled by federal or state law enforcement agencies. NCMEC performs its clearinghouse function without governmental supervision." *Id.*

Despite the courts' analyses in *Ackerman, Cameron, Keith*, and *Coyne* being limited to Fourth and Sixth Amendment inquiries, Defendants suggest, without support, that the Court should engage in an expansive reading of these decisions that would generally bring NCMEC into the fold as an arm of the government for purposes of *Brady*. Even a cursory reading of these cases fails to support this theory—which no court has endorsed. Critically, these cases are all predicated on the same fact: that NCMEC reviewed private information contained in a CyberTip. Defendants make no allegation that NCMEC performed any similar function in connection with the Superseding Indictment in this case.

Further, the CyberTipline statutes were amended in response to *Ackerman*. *See The CyberTipline Modernization Act of 2018*, Pub. L. No. 115-395, 132 Stat. 5287 (Dec. 21,

2018). This legislation revised 18 U.S.C. §§ 2258A-2258E to make clear that NCMEC serves a "clearinghouse role as a private, nonprofit organization," and that any review it conducts of CyberTips is "in furtherance of its nonprofit mission." 18 U.S.C. § 2258A(c). *See also* 18 U.S.C. § 2258D(a) (referencing NCMEC's "clearinghouse role as a private, nonprofit organization and its mission to help find missing children, reduce online sexual exploitation of children and prevent future victimization."). The CyberTipline is operated to "reduce the proliferation of online child sexual exploitation and to prevent the online sexual exploitation of children." *Id*. at Section 2258A(a)(1)(A). *See also* 18 U.S.C. § 2258(b) (information is reported in a CyberTip in "an effort to prevent the future sexual victimization of children").

Likewise, 34 U.S.C. §§ 11291 and 11293(b), the statutes that set forth NCMEC's duties and responsibilities, were also amended following *Ackerman*. *See The Missing Children's Assistance Act*, Pub. L. No. 115-267, § 2, 132 Stat. 3757-3760 (Oct. 11, 2018). These statutory changes emphasize NCMEC's mission as a non-profit organization, and highlight its work with those outside law enforcement.

Defendants' reliance on *United States v. Rosenschein*, 2019 WL 2298810 (D.N.M. May 30, 2019), is likewise misplaced. (Mot. at 16.) In *Rosenschein*, law enforcement began investigating the defendant when they received two CyberTipline Reports from NCMEC generated by electronic service provider ChatStep. *Id*. at 1. NCMEC used the IP address information submitted by ChatStep to investigate the probable physical location of the defendant, and forwarded that information to law enforcement. *Id.* The defendant argued that under Rule 16 and *Brady*, he was entitled to discovery from NCMEC. *Id.* at 2. He further argued that under *Ackerman*, NCMEC is a federal law enforcement agency that participated in his case, making it subject to Rule 16 because NCMEC "qualifies as a governmental entity." *Id.* The government argued that the defendant's assertion was premised on an unjustifiably expansive reading of *Ackerman* and that NCMEC was not part of the prosecution team. *Id.*

The court first acknowledged that whether NCMEC is a member of the prosecution team after forwarding a CyberTipline Report to law enforcement was a question of first

impression. *Id.* at 5. The court then rejected the defendants' *Ackerman* argument—concluding, that, just because the Tenth Circuit has concluded that NCMEC is a governmental entity or agent for purposes of the Fourth Amendment analysis does not mean that it is part of the prosecution team for discovery purposes in a particular case. *Id.* at 6. Nevertheless, the court ultimately found that NCMEC was a part of the prosecution team for discovery purposes because NCMEC conducted, as it is charged to do by statute, *a limited investigation* to identify the location of the suspected internet user through the IP address provided in the CyberTipline report and then provided that information to law enforcement. *Id.* at 7. The court noted that NCMEC's acts of investigating the location and providing CyberTipline information to the geographically appropriate law enforcement agency effectively commenced the prosecution of the case.[3] *Id.*

Unlike in *Rosenschein*, Defendants here don't contend that any meetings between NCMEC's former President, Ernie Allen, and the government regarding Backpage at least six years prior to indictment commenced the prosecution of this case. (Mot. at 16-17.) Further, only four paragraphs in the 92-page, 100-count, 211 paragraph, Superseding Indictment even mention NCMEC. (Doc. 230 at ¶¶ 89, 97, 134, 140.) These allegations concern historical facts about NCMEC's repeated and ultimately futile attempts to persuade Backpage's executives to adopt safeguards aimed at combatting sex trafficking on Backpage; they do not involve the government investigation that culminated in Defendants' indictment here.

Defendants' assertions that because NCMEC produced documents to the government in response to a letter request rather than a grand jury subpoena and the fact that the government has identified NCMEC employees on its witness list makes NCMEC an arm of the government is unsupported and baseless. (Mot. at 17.) In fact, the aforementioned actions further support the government's argument that NCMEC is a private organization, not a government entity. The government has made similar requests

---

[3] On July 3, 2019, the United States filed a motion to reconsider the court's order granting the defendant's motion to compel the government produce NCMEC materials in *Rosenschein*. That motion remains pending.

- 8 -

for materials to public and private entities over the course of its investigation, and has identified employees of these entities as potential witnesses on its witness list. That does not make each of these entities an arm of the government.

### B. Defendants Should Issue Rule 17(c) Subpoenas to NCMEC for Any Records in NCMEC's Possession They Deem *Brady*.

Defendants should seek out any materials they deem impeaching or exculpatory from NCMEC through the issuance of a Federal Rule of Criminal Procedure 17(c) subpoena. A defendant's compulsion power under Rule 17(c) is just as powerful as that of the government. *United States v. Bartko*, 2011 WL 2471556, at *4 (E.D.N.C. June 21, 2011) ("the government had no obligation to assist the defendant or to subpoena records from the firm"). Further, courts have consistently held that when a defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991); *United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) (citing *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983)); *United States v. Hall*, 434 F.3d 42, 55 (1st Cir. 2006) ("*Brady* [does not] require[ ] a prosecutor to seek out and disclose exculpatory or impeaching material not in the government's possession."); *United States v. Todd*, 424 F.3d 525, 534 (7th Cir. 2005) (finding no *Brady* violation where, in part, defendant was aware of potentially exculpatory records and failed to subpoena them); *United States v. Celestin*, 612 F.3d 14, 22-23 (1st Cir. 2010); *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004) ("There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available … from another source, because in such cases there is really nothing for the government to disclose."); *McLean v. Romanowski*, 2014 WL 3870830, at *14 (E.D. Mich. 2014) ("The evidence petitioner claims was suppressed consisted of third-party business records, equally available to petitioner by subpoena, and of which he was equally aware because they involved transactions with which he was directly involved. Because these third-party business records were known to petitioner and could have been discovered through the exercise of reasonable diligence,

they were not suppressed within the meaning of *Brady*.") (citing *Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013)).

Based on the categories of supposed *Brady* material Defendants are demanding that the government obtain from NCMEC, it is evident that Defendants have enough information on their own to ascertain that these materials are supposedly exculpatory. (Mot. at 9, 11.) Moreover, at the October 24, 2019 evidentiary hearing, the government suggested Defendants request such records directly from NCMEC via Rule 17 subpoena. (Doc. 800, 10/25/19 Hr'g Tr. at 364-65 (Mr. Rapp: "Now, with respect to NCMEC, there has been quite a bit of testimony about the fact that the defense desperately would like to find the NCMEC referrals that are contained on the Website, correct?" … Mr. Robinson: "Correct."  Mr. Rapp: "And you know, from your investigation, that NCMEC catalogs every referral to their cyber tip line, correct?" Mr. Robinson: "Yes." Mr. Rapp:  "And so if you really wanted to find the referrals to NCMEC, you would just simply take a subpoena and go to NCMEC and they would provide you every referral that Backpage has made since 2004, right?"  Mr. Robinson:  "That's what I would…").)  The bottom line is the government has produced all documents in its possession from NCMEC.  Defendants should request any additional NCMEC records they seek directly from NCMEC.

### C. The California and Texas Attorney Generals' Offices Are Not Arms of the Government in This Case.

For obvious practical reasons, not every governmental agency can be considered as part of the "government" for discovery purposes. *Aichele,* 941 F.2d at 764 (finding that any materials which are in the possession of various state agencies are generally not in the government's actual possession, custody or control, and therefore they need not be disclosed); *see also United States v. Gatto,* 763 F.2d 1040 (9th Cir. 1985) (under Rule 16(a)(1)(C), the government's disclosure obligation is triggered only with respect to documents within the government's actual possession, custody or control); *United States v. Chavez–Vernaza,* 844 F.2d 1368, 1377 (9th Cir. 1987) (following *Gatto* in concluding that documents in the possession of state officials are not within the custody or control of the federal government which has the duty to obtain them); *United States v. Trevino*, 556

F.2d 1265 (5th Cir. 1977); *United States v. Bender*, 304 F.3d 161, 163-164 (1st Cir. 2002). Usually, documents within the possession of a federal court or probation officer, a state court, local law enforcement officers, or other state authorities are not considered to be within the possession of the government. *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997). The government, for instance, has only been ordered to disclose material possessed by state investigators when federal and state authorities pooled their investigative energies to considerable extent or the state investigators functioned as agents of the federal government under the principles of agency law. *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011). But where separate investigative teams do not collaborate extensively, knowledge of information of other investigative teams is not imputed to federal investigators for *Brady* purposes. *United States v. Cadden*, 2015 WL 5737144, at *2 (D. Mass. Sept. 30, 2015) ("I agree with the Magistrate Judge's analysis of what constitutes the "prosecution team" with respect to the government's duty to produce discoverable information, including *Brady* material, and her conclusion that "[m]aterials in the possession of state agencies are generally not in the [federal] government's possession, custody, or control").

In *United States v. Wilmington Trust Corp.*, 2016 WL 3749860, at *3 (D. Del. July 11, 2016), prior to the United States Attorney's Office ("USAO") opening an investigation, the Securities and Exchange Commission ("SEC") had previously opened its own investigation into Defendants. *Id.* at *1. After learning of this parallel investigation, the USAO sought and received documents from the SEC that had previously been subpoenaed by the SEC from the defendant and third parties. *Id.* The SEC later participated with the USAO in approximately 29 of the more than 300 witness interviews conducted in connection with the USAO's case. *Id.* The government produced to the defendants all the documents it received from the SEC and agreed to review and produce any exculpatory information contained in the notes or reports of any jointly conducted interviews. *Id.* With regard to government's *Brady* obligations, the defendants argued that the USAO constructively possessed and was required to seek out and produce documents held by the SEC. *Id.* at *3. In rejecting the defendants' argument, the court first noted that the

defendants presented no requests for specific pieces or types of evidence with which to assess their *Brady* claims. *Id.* The court went on to find that to broadly declare that the USAO is in constructive possession of documents held by other investigating agencies would amplify the USAO's discovery obligations beyond what is required, especially in a case of this scope and complexity. *Id.* at *4. The court held that the USAO should only be charged with constructive possession of documents and information that reflect any joint efforts it actually undertook with other agencies. *Id.*

Despite the circuit courts and district courts that have considered similar requests holding that materials in possession of various state agencies are not in the federal government's actual possession, custody or control, Defendants contend, without support, that the government is obliged to produce any evidence in the possession of California and Texas Attorney Generals' Offices because of a press release mentioning these offices as providing "significant support" in the seizure of Backpage. (Mot. at 17.) Defendants, however, cite no facts that support these separate state agencies pooling their investigative energies to a considerable extent or where state investigators have functioned as agents of the federal government in this case. Also, like in *Wilmington*, the government in this case has produced and will continue to produce to Defendants any and all documents it has received from the Attorney Generals' Offices for the States of California and Texas in accordance with its obligations under Rule 16. What is more, here, the government went a step further than the government in *Wilmington*. In *Wilmington*, the government agreed to review and produce any exculpatory information contained in the notes or reports of any jointly conducted interviews. 2016 WL 3749860, at *1. Here, the government has produced all factual statements (reports of interviews) from the few interviews it has conducted with the Attorney Generals' Offices for California and Texas.[4]

---

[4] Similar to the court's comment in *Wilmington*, the government notes that Defendants in this case make no requests for specific pieces or types of *Brady* evidence from the Attorney Generals' Offices for the States of California and Texas, providing further support that their request is nothing more than an attempt to use *Brady* as a pretrial discovery tool in hopes of finding some materials helpful to their case.

## CONCLUSION

For the foregoing reasons, the Motion to Compel *Brady* (Doc. 777) should be denied.

Respectfully submitted this 27th day of November, 2019.

> BRIAN BENCZKOWSKI
> Assistant Attorney General
> Criminal Division, U.S. Department of Justice
>
> *s/Reginald E. Jones*
> REGINALD E. JONES
> Senior Trial Attorney
> U.S. Department of Justice, Criminal Division
> Child Exploitation and Obscenity Section
>
> MICHAEL BAILEY
> United States Attorney
> District of Arizona
>
> KEVIN M. RAPP
> MARGARET PERLMETER
> PETER S. KOZINETS
> ANDREW C. STONE
> JOHN J. KUCERA
> Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office