# Exhibit B



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | Direct Fax: (602) 514-7450 |

November 16, 2018

<u>VIA EMAIL</u>

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ 85701

    Re:   *Your Letter of October 26, 2018*

Dear Mike:

    We wish to respond to your October 26, 2018 letter. The letter requests disclosure of *Brady* material and appears to be a standard letter that you send prosecutors in other cases with a few categories specific to this case. A *Brady* determination in this case, however, is particularly difficult based on the defense theories that the joint defense has advanced in pleadings (in this case and others), correspondence, and meetings with the prosecution team.

    As you well know, you and other defense counsel have repeatedly asserted that the activities on the Backpage.com website, including the conduct detailed in the Superseding Indictment, was somehow immunized by the First Amendment and/or Section 230 of the Communications Decency Act ("CDA"). We disagree. First, Section 230 of the CDA does not apply, on its face, to a federal prosecution. 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of … [any] Federal criminal statute."). The defense has not provided any counter-arguments to this position. Second, the evidence demonstrates considerable content creation on the part of the principals and employees of Backpage. The following three activities constitute, at a minimum, content creation by Backpage:

    **Moderation**: Backpage engaged in the practice of sanitizing ads by editing them—specifically, removing terms and pictures that are indicative of prostitution and then publishing a revised version of the ad. Unfortunately, this also included child sex trafficking victims.

    **Aggregation**: This was accomplished by identifying prostitutes advertising on other similar prostitution websites. Backpage would then post a free ad and contact the pimp or prostitute and solicit them to Backpage with the incentive of a free ad for six weeks or with similar financial incentives.

**Reciprocal Link and Affiliate Program**: This refers to Backpage's business arrangement with a website known as The Erotic Review (TER). Backpage and TER posted reciprocal ads on each other's websites. As you know, TER is a website that allows clients of prostitutes to provide written reviews of the prostitutes' various attributes. By inserting TER link in particular ads, Backpage was manipulating or creating content. In addition, Backpage entered into a financial arrangement with a person known as "Dollar Bill" who earned fees in return for arranging for numerous prostitutes and pimps to post ads on Backpage.

In light of the above, we do not share your view that there "is abundant information in the government's possession and/or generated by the government that is favorable and exculpatory to the defendants." Quite the opposite. It is noteworthy that neither you nor any of the other defense attorneys, in any of the pleadings and correspondence filed to date, have made any effort to address the above areas of content creation – all of which are described in detail in the Superseding Indictment. Nevertheless, we will attempt to address your *Brady* requests.

*First*, as set forth in the October 29, 2018 response to your letter ("USA response") requesting the inadvertently disclosed material, again we do not agree with your general assessment that there is an abundance of *Brady* material. As a reminder, we met in December 2017 and explained our legal theory, provided incriminating emails exchanged by your client, and identified witnesses that will be testifying against your client in a pending prosecution. In response, you asked that your client be provided immunity (this suggests that you recognized he had criminal exposure) but never provided any evidence that contradicts the emails and the witnesses expected to testify against your client. Instead, you took the position that your client maintains he had a First Amendment right to his activities at Backpage and alternatively, did not have the *mens rea* to commit the specific offenses contained in the indictment. Again, you have neither provided us any authority in support of that legal theory nor any counter evidence. And, that exchange occurred before both Backpage CEO Carl Ferrer and Backpage Sales and Marketing Director Dan Hyer agreed to cooperate and testify against your client and the remaining defendants.

*Second*, your request involving 2010 statements from Francey Hakes regarding whether Craigslist could be held criminally liable for content in their adult section eight years ago is not relevant to the Superseding Indictment in this case for several reasons. First, it is important to appreciate the distinctions between Craigslist and Backpage and what has occurred since 2010. Craigslist voluntarily shut down its adult section, presumably recognizing that it faced exposure to both criminal and civil liability for facilitating prostitution. Second, and more importantly, we are unaware of Craigslist engaging in the same business practices that Backpage employed to increase revenue from prostitution ads. For example, Craigslist did not have similar moderation practices employed by Backpage (*e.g.*, stripping out words or terms indicative of prostitution and then posting the ads (including ads indicative of child sex trafficking), etc.). We also have no evidence that Craigslist engaged in the solicitation and "aggregation" of prostitution ads from a competing prostitution websites. Furthermore, we

know of no financial relationship between Craigslist and "Dollar Bill" or someone similarly situated. As you know, in an email exchange between your client and another Backpage employee, "Dollar Bill" was characterized as a "super affiliate" who received considerable fees for arranging for prostitutes and pimps to post ads on Backpage. (*See* Superseding Indictment, ¶¶ 60-62.) In a related email, your client directed that 4200 [prostitution] ads posted by Dollar Bill be reinstated. (*Id.*) Finally, Craigslist did not have a financial relationship with the website TER or a similar site.

*Third,* we are also unaware of Craigslist engaging in activities designed to circumvent conventional banking and credit card processing to disguise the true nature of their adult services category. In contrast, Backpage was conspiring with others (e.g., "Dollar Bill", TER, and numerous other obvious pimps to facilitate prostitution. In short, whatever position a DOJ representative might have taken 10 years ago regarding the *mens rea* required by a website operator has little relevance to this prosecution. Lastly, the statement that you attribute to Ms. Hakes also predated the successful prosecutions of myRedBook.com, Rentboy.com, escorts.com and Ross William Ulbricht (the "Silk Road" prosecution). It is noteworthy that the defense, here, has made no meaningful attempt to distinguish the successful prosecutions of these websites from the activities engaged in by Backpage.

Next, you cite to a statement in the Congressional record that is relevant to concerns about legislation proposed to combat sex trafficking on prostitution websites similar to Backpage *by State and local prosecutors.* This is in the context of the application of the CDA. Yet this federal prosecution is exempted from the restrictions of the CDA. That was the point of the legislation referenced in the Congressional record—to allow states to prosecute websites like Backpage in the same manner a federal prosecution can be achieved. But again, the Backpage employees that are cooperating acknowledge that the Backpage defendants knew for years that they were facilitating prostitution, and the internal emails and public statements of Lacey and Larkin bear this out. Even James C. Grant, representing Backpage in the Arizona federal grand jury litigation, conceded that if the website knew "through participation in a venture, you're conspiring with somebody, you know they posted an ad, you know the person involved is underage [of course, the illegality of prostitution is not limited to underage sex trafficking victims] that's a prosecutable crime…" (GJ RT 2/22/17, p. 38 ) Here, because of the aggregation, affiliation and reciprocal link ventures and other conduct summarized above, Backpage knew that *every* ad had the potential for facilitating prostitution services, including child sex trafficking.[1]

*Fourth*, you cite a nearly forty-year old, out-of-circuit civil case, that stands for the proposition that a federal court can enjoin a *state court prosecution* if it was brought for

---

[1] As with our prior correspondence, the discussion in this letter is not meant to be an exhaustive statement of the reasons why the apparent defenses referenced by the joint defense defense team to date lack merit, particularly in view of the limited amount of information known so far about Defendants' theories and defenses.

improper purposes. *Fitzgerald v. Peek,* 636 F.2d 943, 945 (5th Cir.1981) ("conduct allegedly retaliated against or sought to be deterred is constitutionally protected and that the state's bringing of the criminal prosecution is motivated at least in part by a purpose to retaliate against or deter that conduct, and the state fails to show that it would have decided to prosecute even had the impermissible purpose not been considered."). This case has no relevance to the facts here and it does not even stand for the proposition that you are apparently citing it for, namely a discovery requirement. Although your request is based on mere speculation you are—in a manner of speaking—barking up the wrong tree. Categorically no such evidence exists. We are aware that Larkin and Lacey have publicly decried the late Senator John McCain and his wife Cindy as the architects of the federal Backpage prosecution, arguing that this case is politically motivated. The decision to investigate Backpage that resulted in the Superseding Indictment was made by the United States Attorney's Office in the District of Arizona, the DOJ Criminal Division, and no one else. The same analysis applies to your overly-broad request contained in paragraph 5.

*Fifth*, you are requesting all documents and commendations from law enforcement to Backpage relating to Backpage's cooperation in any criminal investigation. (Your October 26 letter, ¶¶ 6,7,11.) This request is unclear for several reasons. If you are asking for all subpoenas issued to Backpage in the course of state and federal investigations where Backpage complied with subpoenas, we do not share the view (nor is there any legal support) that this would be *Brady* material. Backpage was merely complying with a court order. Moreover, any documents or testimony at a trial or a hearing provided by Backpage in response to a subpoena would be in furtherance of court-ordered compliance. This isn't exculpatory—it's just avoiding contempt.

You also seek commendations Backpage received from law enforcement. These aren't *Brady* material either. Backpage was engaged in a veneer of cooperation with law enforcement. They hid their true business model that included moderation, aggregation, and affiliated programs. Moreover, after banks no longer would do business with Backpage they concealed payments from pimps posting prostitution ads and concealed Backpage as the payee, etc. We expect that at trial former Backpage employees (including but not limited to Ferrer and Hyer) will testify that Backpage's business model was concealed from law enforcement in variety of ways. We also expect at trial that law enforcement, including those that provided commendations to Backpage, will testify that had they known of Backpage's actual business practices (*e.g.*, stripping out words and posting the ads, inserting the link to TER, etc.) and financial relationships (*e.g.*, affiliated relationships with "Dollar Bill" and others, etc.) they would not have provided the commendations. In sum, we do not view commendations from law enforcement as *Brady* material.

*Sixth*, without providing any authority, you demand various communications between the prosecution team and attorneys representing cooperators, various law enforcement agencies, civil attorneys representing victims, NCMEC etc. (Your October 26 letter, ¶¶ 6-11) Without more, it is difficult to respond to such a request. Although you have provided some

authority for other requests (which we do not concede are necessarily on point), you provide no authority for this overbroad request. In short, this appears to be a wish list, based on speculation, in an effort to engage in a fishing expedition.

*Seventh*, you request all documents to and from Backpage and NCMEC relating to possible unlawful activity involving underage individuals. (Your October 26 letter, ¶ 10.) )It is unclear what you mean by "documents" nor do you articulate why you believe these are exculpatory. In any event, if you are asking for emails between Backpage and NCMEC, those are readily available based on emails we received via search warrants and subpoenas. They are also contained in the PSI Appendix, which is available on the U.S. Senate website. Any other documents we received from NCMEC has been provided or will be provided based on the scheduling order.

*Eight*, paragraph 12 of your October 26 letter requests internal Justice Department memoranda "relating the understanding of the applicable law government Backpage." Again, you provide no authority for this request. And, case law makes clear that material encompassing only an attorney's mental impressions or legal theories does not constitute *Brady*. *See, e.g., Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). "Extending the *Brady* rule to opinion work product would greatly impair the government's ability to prepare for trials." *Id*. Indeed, "if opinion work product were accessible by opposing counsel 'much of what is now put down in writing would remain unwritten.'" *Williamson v. Moore*, 221 F.3d 1177, 1182 (11th Cir. 2000) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

*Ninth and last*, paragraphs 4-31 make various general *Brady* requests, non-specific to this case, citing some authority (mainly from the 1980s). We will examine your specific requests and, to the extent we have information covered by the requests and supported by the cases you cite, we will make it available. Finally, in the event you are unsatisfied with our responses to your October 23 and 26 letters and file a discovery motion, please include our responses to both letters as attachments so the court has an understanding of our efforts to be responsive to your various requests.

Sincerely,

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona

*s/ Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney