Paul J. Cambria, Jr. (NY 1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL (Doc. 777)**<br><br>(Oral argument requested) |

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught, by and through their undersigned attorneys, file the instant reply brief in further support of their Motion to Compel Production of *Brady* Material ("Motion") (Doc. 777).  The government's opposition ("Opposition") (Doc. 810) fails to provide a basis for denial. Consequently, this Court should grant the Motion and order the government to seek and promptly disclose all *Brady* material, including all material that is in the possession, custody or control of the DOJ[1] that has not yet been disclosed, as well as all material in

---

[1] For consistency, this reply will use the designations and abbreviations set forth in the Motion.

possession, custody or control of organizations that function as an arm of the DOJ, including, but not limited to, NCMEC and the Offices for the Attorneys General for the States of California and Texas.

## ARGUMENT

### I. This Court should entertain this Motion on its merits.

This Court should entertain this Motion on its merits.  The government asks this Court to deny this Motion as out of hand because Defendants did not contact the Court about this Motion prior to filing it.  (Opp'n at 1-2.) Regrettably, Defendants overlooked the Court's order to contact chambers prior to filing discovery motions in the midst of preparing and filing numerous motions by the substantive motions deadline.  However, email correspondence among chambers and counsel for the Defendants and government would not have obviated the filing of this Motion.  As discussed below, the government apparently misunderstands its disclosure obligations for this most critical category of discovery – *Brady* material.  This is therefore not a ministerial discovery dispute, but rather a matter that goes to the heart of the government's legal and ethical obligations, and therefore requires full briefing and resolution.

Further, Defendants are not, as the government suggests, attempting to relitigate the October 15, 2018 order (Doc. 339) denying Padilla's Motion for Itemization of *Brady* material.  (Opp'n at 3.)  The issue of itemization, as a matter of due process and fundamental fairness, is separate and distinct from the issue of whether the government has produced all *Brady* material to the Defendants.  In this Motion, Defendants have identified specific categories of *Brady* material and Defendants seek an order from this Court compelling the government to seek out and produce all *Brady* material, regardless of whether the government itemizes it, although Defendants maintain that an order requiring itemization would ensure that Defendants' constitutional right to *Brady* material is meaningfully enforced.

### II. This Court should grant the Motion.

In the Motion, Defendants asserted that the government's *Brady* obligation is broad, and requires pretrial disclosure of all *Brady* material in time for its effective use for trial preparation,

noting that Judge Logan had previously ordered government to disclose such material to Defendants within ten days of discovery. (Mot. at 4-8.) Defendants identified specific categories of *Brady* evidence that exist that have not yet been disclosed to Defendants. (*Id*. at 9.) Further, Defendants identified specific categories of *Brady* material for which the government has not stated on the record either that it has disclosed such material or searched for but not found any such material. (*Id*. at 10-14.) Defendants sought an order compelling the government to search for and disclose such material (or to expressly state that it has done so).

In its Opposition, the government contends that Defendants have failed to meet the burden for an order compelling disclosure of these categories of *Brady* material because Defendants have not established materiality. (Opp'n at 3-4.) The government defines materiality as a showing that "the requested evidence might affect the outcome of the trial." (*Id*. at 3.) Contrary to the government's claim, no such showing is necessary. **The government has conflated the *post-trial* standard for obtaining a reversal of a conviction due to the government's withholding of Brady material with the *pretrial* standard for an order compelling production of Brady material.** *See United States v. Acosta*, 357 F. Supp. 2d 1228, 1232 (D. Nev. 2005) ("[T]he government urges the *Brady* materiality standard is the limit of the duty to disclose. This court cannot agree."); *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999) (rejecting the post-trial materiality standard for pretrial motions to compel and noting that the government must disclose evidence that "may reasonably be considered favorable to the defendant's case and that would likely lead to admissible evidence").

Indeed, in a recent case, the Ninth Circuit expressly rejected application of the post-trial materiality standard to the government's pretrial disclosure obligations, recognizing that, in the context of a motion to compel disclosure of *Brady* material, "materiality is a low threshold; it is satisfied so long as the information . . . *would have helped to prepare a defense*." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (emphasis added). "The test is not whether the discovery is admissible at trial, but whether the discovery may assist [the defendant] in formulating a defense." *Id*. (vacating conviction, reversing denial of motion to compel

disclosure of *Brady* material, and ruling that the "district court erred by finding that the documents were not material to the defense and were not discoverable because they were not admissible"). Simply put, the materiality standard advocated by the government has no application to resolution of this Motion. Instead, this Court should order the government to comply with its broad pretrial *Brady* obligation. *See id.* (recognizing that "it behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case"). Rather than engaging in a "fishing expedition," as the government suggests, Defendants' requests are targeted to *Brady* materials that the Defendants know or have reason to believe exist. These categories of evidence will "assist [Defendants] in formulating a defense" and should be disclosed as required by the Ninth Circuit. *See id.*

## III. The government must seek and disclose materials in possession of organizations that function as an arm of the government.

In the Motion, Defendants asserted that the government must seek and disclose materials in possession of any organization that functions as an arm of the government, including, but not limited to, NCMEC and the Offices of Attorney General of the States of California and Texas. (*See* Mot. at 14-17.) The government urges denial of this request, contending that "private actors cannot act on the government's behalf for purpose of the government's *Brady* obligations." (Opp'n at 4-9.) First, the government claims that NCMEC is not an arm of the government because, even though numerous courts have recognized NCMEC as an arm of the government for Fourth and Sixth Amendment analysis, this Court should ignore those rulings when assessing NCMEC's role in this prosecution for due process purposes. (*See id.* at 5-7.) It is absurd to suggest that this Court should ignore the prior findings of other courts on NCMEC's operation as an arm of the government simply because those other Courts evaluated NCMEC's conduct as it related to other provisions of the constitution. Either NCMEC stays in its statutorily defined lane or it does not, regardless of which constitutional protections are implicated by its involvement with a criminal prosecution. The rulings of other courts on the issue of whether

NCMEC has operated as an arm of the government are relevant to this Court's inquiry as to whether NCMEC operated as an arm of the government.

Second, the government urges denial of a finding that NCMEC operated as an arm of the government because Defendants failed to submit any evidence of meetings between NCMEC and the government within the six years prior to issuance of the indictment.  (Opp'n at 8.) Notably, the government has not stated whether NCMEC was involved with this prosecution or not, even if only through the operation of its CyberTipline.   That said, this non-answer is disingenuous at best.  One need only look to the DOJ's own website to see that NCMEC was the driving force behind the instant prosecution.  As reflected on the website, on October 4, 2019, the DOJ held an event entitled "Lawless Spaces:  Warrant-Proof Encryption and Its Impact on Child Exploitation Cases."   (*See* Oct. 4, 2019 Event Flyer, available at: https://www.justice.gov/olp/page/file/1204876/download.) This event included presentations by top DOJ officials, as well as NCMEC Co-founder and Director John Walsh, who spoke about NCMEC's push to "finally get" Backpage "shut down."  (*See* Video of Oct. 4, 2019 Event, available at https://www.justice.gov/opa/video/lawful-access-summit (Mr. Walsh's discussion of NCMEC's involvement with the instant prosecution begins at 1:18:06).)  He stated that during the three years prior to issuance of the indictment, NCMEC campaigned to "shut that goddamn website down."  He indicated that, prior to NCMEC's three-year campaign, no federal agency or investigative body was interested in pursuing criminal charges against the Defendants.  He pointed to NCMEC Senior Vice President and General Counsel Yiota G. Souras, who was in the audience, as "the woman who drove the case."  He reiterated that "she helped them prepare the case" and the Defendants are "going to trial because of Yiota."  This presentation, behind a podium bearing the DOJ's emblem, posted on the DOJ's website, demonstrates that NCMEC acted as an arm of the government with respect to *this specific case*.

Third, the government contends that NCMEC cannot be found to operate as an arm of the government because Congress enacted statutes that delineate NCMEC as a "private, nonprofit organization."  (Opp'n at 6-7.)  This contention lacks merit.  The statutes do not

immunize NCMEC from being found to operate as an arm of the government when NCMEC's involvement with a particular investigation and prosecution exceed its role as a purported "private, nonprofit organization."  Indeed, in *United States v. Rosenschein*, 2019 WL 2298810 (D.N.M. May 30, 2019), the court outlined NCMEC's role as recognized in various statutory provisions, but nonetheless held that NCMEC was an arm of the government because NCMEC investigated a cyber tip and passed it along to the government and that conduct led to the defendant's indictment.  *See id*. at *5-7 (finding that NCMEC "has been involved in the investigation of the case, and has provided information to the government in aid of the prosecution" which is "enough to make NCMEC part of the prosecution team" (emphasis omitted)).  NCMEC's self-proclaimed involvement in the investigation that led to the instant prosecution was far more extensive because NCMEC campaigned for the investigation for three years prior to issuance of the indictment, "drove the case," and "helped [the DOJ] prepare the case."  These statements undercut any claim that NCMEC was merely a "private" actor.

Finally, the government claims the Offices of Attorneys General for the States of California and Texas should not be found to be arms of the government here, relying on cases involving joint investigations or pooling of resources between federal and state investigations, where the state agencies were not found to have constituted arms of the government for *Brady* purposes.  Again, the government fails to state whether it did or did not participate in joint investigations or the pooling of resources with these State authorities and, if so, to what extent. Further, the government ignores its own statements.  Those cases might have some application here if Defendants could point to nothing more than a limited joint investigation or pooling of resources.  But the Defendants have identified specific statements from the DOJ that indicate that those Offices operated as arms of the federal government.  The DOJ, itself, stated that "partner[ed]" with those Offices and that DOJ's investigation and seizure of Backpage was based on "significant support" from those Offices.  *See* April 9, 2018 DOJ Press Release, available at https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads (last visited on Dec. 20, 2019); *see*

*also* http://backpage.com (online notice posted by DOJ when it seized the Backpage.com website, which still appears today, stating that the California and Texas AG Offices "participat[ed] in and support[ed] the [DOJ's] enforcement action"). These admissions show that the state authorities actively worked with the DOJ and did much more than just pool resources.

For all these reasons, this Court should order the government to seek and disclose any *Brady* materials in the custody, possession or control of NCMEC and the Offices of Attorney General for the States of California and Texas.[2]

**IV.    The government's disclosure responses are infirm.**

In their Motion, Defendants requested three sets of *Brady* material, delineated at pages 4-5, 9, and 10-13. The government's response did not address the categories identified on pages 4-5 and 9. Further, the government's responses to the Defendants' specific requests found on pages 10-13 of Defendant's Motion are insufficient. (*See* Gov't's Resps., Doc. 810-1.)

For example, the government has declined to produce documents responsive to several requests on the basis that the government does not think that such documents are relevant to the defenses that the *government* has decided Defendants can assert. (*See* Resps. 1, 2, 6, 10, 11, 13, 24, 27 .) In defending this case, Defendants will not be limited to asserting only those defenses approved by the government. Consequently, the government must produce any evidence that may "assist [Defendants] in formulating a defense" even if the government disagrees with Defendants about the viability of a defense.

---

[2]      Because NCMEC and the Offices of the Attorneys General for the States of California and Texas were part and parcel of the DOJ team that investigated Backpage, resulting in the instant prosecution, the government must affirmatively seek out and disclose all *Brady* material in their possession, custody, and control. This is the government's obligation, which cannot be fulfilled by Defendants' subpoenaing of documents from those entities. Aside from the fact that the government's suggestion that Defendants subpoena those entities is wrong on its obligations, it is particularly troubling here, with a gross disparity in resources between Defendants and the government.

Further, although the government has stated in some responses that it has produced and will continue to produce all such material without qualification (*see, e.g.*, Resps. 14, 16), the government's response is more nuanced with respect to other requests, qualifying its duty to disclose by what it understands to be its "obligations under Rule 16, *Brady*, and 18 U.S.C. § 3500" (*see* Resps. 4, 6, 7, 9, 12, 15, 17, 18, 19, 20, 21, 22, 23, 25, 26, 28, 29). The government's qualification of those responses renders them infirm because the briefing on this Motion makes it clear that the government's understanding of its disclosure obligation is at odds with firmly-rooted case law, as the government has advocated a materiality requirement that the Ninth Circuit has said is not applicable to pretrial motions to compel. With respect to these responses, this Court should order the government to state whether it has searched for: (1) and disclosed the materials; (2) but has not yet disclosed the materials; or (3) but was unable to find any such materials. Defendants should not be left to guess whether these materials exist amid the voluminous documents disclosed thus far.

In Response 5, the government indicated that it has produced "all communications to and from NCMEC relating to the possible criminal prosecution of Backpage" that are "in its possession." As set forth above, NCMEC is an arm of the prosecution in this case and the government has an obligation to seek and produce all *Brady* material in NCMEC's custody, control or possession. Response 8 is insufficient for the same reason.

Finally, Response 30 is insufficient. The government has not disclosed to Defendants documents evidencing Backpage's extensive cooperation with law enforcement because *the government* does not believe that such material is exculpatory. This material clearly meets the Ninth Circuit's definition of materiality, meaning, that it "may assist [Defendants] in formulating a defense." Rather than provide the requested *Brady* material to Defendants, the government has offered to produce what Defendants understand would be numerous hard disks containing image files for a massive backup server, not just the requested *Brady* material. Not only does the government's proposal appear to raise the same issues addressed at length in the recent evidentiary hearings on Defendants' motion to compel relating to other servers, but the

government has conditioned its willingness to provide the information on Defendants paying the significant cost for all the required hard disks.  The requested *Brady* material must be provided to Defendants, free of charge, in a reasonably usable format, without burying Defendants with other data in the process.

## CONCLUSION

For all these reasons, this Court should grant the Motion and order the government to seek and promptly disclose all *Brady* material, including all material that is in the possession, custody or control of the DOJ that has not yet been disclosed, as well as all material in possession, custody or control of organizations that function as an arm of the DOJ, including, but not limited to, NCMEC and the Offices for the Attorneys General for the States of California and Texas.

Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such materials shall become known to counsel for the Defendants, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

RESPECTFULLY SUBMITTED this 23rd day of December, 2019,

DATED: December 23, 2019        Paul J. Cambria, Jr.
                                Erin E. McCampbell
                                LIPSITZ GREEN SCIME CAMBRIA LLP

                          By:   /s/ Paul J. Cambria, Jr.
                                Paul J. Cambria, Jr.
                                Attorneys for Michael Lacey

DATED: December 23, 2019    Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN, PLC

By:    /s/ Whitney Z. Bernstein
        Whitney Z. Bernstein
        Attorneys for James Larkin

DATED: December 23, 2019    Bruce Feder
FEDER LAW OFFICE, P.A.

By:    /s/ Bruce Feder
        Bruce Feder
        Attorneys for Scott Spear

DATED: December 23, 2019    Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By:    /s/ Ariel A. Neuman
        Ariel A. Neuman
        Attorneys for John Brunst

DATED: December 23, 2019    David Eisenberg
DAVID EISENBERG, P.L.C.

By:    /s/ David Eisenberg
        David Eisenberg
        Attorneys for Andrew Padilla

DATED: December 23, 2019    Joy Bertrand
JOY BERTRAND, ESQ.

By:    /s/ Joy Bertrand
        Joy Bertrand
        Attorneys for Joye Vaught

On December 23, 2019, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov