Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>    Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO SUPPRESS (Doc. 827)**<br><br>(Oral argument requested) |

    Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught, by and through their undersigned attorneys, file the instant reply in further support of their Motion to Suppress (Doc. 827) ("Motion") the Datto warrant.[1]  The government's opposition (Doc. 851) fails to provide a basis for denial of the Motion.  Consequently, this Court should grant the Motion and suppress all evidence obtained from execution of the Datto warrant.

---

[1]  For consistency, this reply will use the designations and abbreviations set forth in the Motion.

## I.  This Court should entertain this Motion on its merits.

This Court should entertain this Motion on its merits. The government contends that this Court should decline to address the merits of this Motion because it is untimely and only two Defendants have standing to challenge the Datto warrant. (*See* Doc. 851 at 2-3.) These contentions lack merit.

First, as set forth in the Motion, Defendants were aware of the existence of the Datto warrant, but were unable to locate it within the government's voluminous discovery. Defense counsel emailed the government, but did not receive the government's response because it was either rejected by defense counsel's email security server or quarantined for containing a potential threat. (*See* Sanscrainte Aff., Doc. 827-3 ¶¶ 3-6.) Because defense counsel had not heard from the government before the substantive motion deadline, Defendants filed their suppression motion and expressly reserved the right to bring this Motion upon receipt and review of the Datto warrant. If defense counsel had the opportunity to review the Datto warrant prior to the October 18, 2019 substantive motion deadline, defense counsel, undoubtedly, would have filed this Motion by that deadline.

The government attempts to counter these facts by claiming that the government should have received an email rejection notice and did not, and therefore defense counsel's explanation cannot be true. The government is wrong. An email rejection notification is not sent to the sender for an email that is subjected to security software and rejected or quarantined. (*See* Reply Affidavit of Michael Sanscrainte, attached hereto as Ex. A.) Further, the security software and/or quarantine protocols of an email system review every email separately and can prevent delivery of or quarantine an email even when the email is a reply to an email that originated within the email system because the addition of new text and/or an attachment (like the government's reply email to defense counsel here) can trigger rejection by security software or quarantining. This Court should not penalize Defendants for bringing this Motion outside of the deadline based on these circumstances.

Further, the genuineness of our lack of ability to review the Datto warrant is demonstrated by our request to the government to provide it or identify it by Bates Numbers. We would not have made that request if we had it. And there is no possible advantage to us in proceeding that way if that was not how the events actually occurred.

Second, standing is no barrier to this Court's resolution of this Motion. The government agrees that Defendants Joye Vaught and Andrew Padilla have standing. All Defendants have standing to challenge the interception of their communications to the extent that the government obtained their communications while targeting other email addresses. *See Berger v. New York*, 388 U.S. 41, 52-59 (1967) (recognizing that the Fourth Amendment protects communications from "unauthorized invasions of privacy"). Further, the government has stated that it used this warrant to obtain "bank statements and financial records" for Defendants Michael Lacey and James Larkin. (*See* Gov't's Opp'n at 5.)

**II.     This Court should grant the Motion.**

This Court should grant the Motion and suppress all evidence obtained from execution of the Datto Warrant for the grounds discussed below.

**A.     The Datto Warrant violates the probable-cause standard.**

In the Motion, Defendants explained how the magistrate erred in authorizing the Datto Warrant because the application for the warrant was not supported by probable cause. In particular, the Robinson Affidavit did not contain facts known to the affiant, but instead only referenced and summarized the indictment, quoted from the hearsay pleas of two cooperating witnesses, and discussed lawful conduct that was not in any way tied to criminality. Therefore, the magistrate could not conduct an independent analysis of any facts actually supporting probable cause, as is required. (Doc. 827 at 5-7.)

For a warrant to be valid, a reviewing court must find it meets four separate requirements: (1) it must be based on probable cause; (2) supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the persons or things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A search is invalid where "the issuing judge

lacked a substantial basis for concluding that probable cause existed." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quotations and alterations omitted). When an affiant's statements are "unsupported by underlying facts," a warrant lacks probable cause. *Id.*; *accord Gates*, 462 U.S. at 239 (noting that "wholly conclusory" statements of officers are insufficient to establish probable cause); *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) (recognizing that a "conclusory allegation, without any foundational facts . . . [is] entitled to little weight"). If an affidavit fails to provide foundational facts, an issuing judge cannot fulfill his or her duty to complete an independent review of the warrant *See United States v. Leon*, 468 U.S. 897, 914 (1984) (explaining that the lack of neutral and detached review makes a reviewing judge "merely a rubber stamp for the police."); *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965) (recognizing that magistrate must be provided foundational facts "to perform his detached function and not serve merely as a rubber stamp for the police").

The Robinson Affidavit does many things, but it does not provide *any* foundational facts indicating criminality and, for that reason, fails to provide probable cause as a matter of law. *See Underwood*, 725 F.3d at 1081. Robinson incorporates and references the superseding indictment,[2] which constitutes the purported findings of the grand jury, rather than the foundational evidence presented to the grand jury. Reference to the indictment, without additional factual information known to the affiant, is insufficient because the grand jury's judgment is substituted for the independent and neutral judgment of the issuing magistrate. (*See* Doc. 824 at 2-4 (citing *United States v. Rubio*, 727 F.2d 786, 794-95 (9th Cir. 1984) as holding that that reference to an indictment, alone, is insufficient, without additional factual information known to the affiant, to support a probable-cause finding).)

---

[2] The government's suggestion that Defendants incorrectly referred to the indictment instead of the superseding indictment as being incorporated by Robinson is curious because, in their initial description of the Robinson Affidavit, Defendants stated that the "superseding indictment . . . was attached and incorporated by reference." (Doc. 827 at 5.)

If Robinson had provided sufficient factual information to support a finding of probable cause, in addition to reference to the indictment, reference to the indictment would not be problematic.  However, the Robinson Affidavit provides no additional factual information.  For example, Robinson alleges that Defendants "were knowingly involved in the facilitation of prostitution and were engaged in money laundering activities." (Doc. 827-2 at ¶ IV.1.)  This statement is a conclusion of law, not the articulation of foundational facts known to the affiant, and does not support probable cause.  *See, e.g.*, *Underwood*, 725 F.3d at 1082-84 (affirming suppression where affidavit contained only expert opinion and conclusory statements that defendant trafficked ecstasy).

Further, Robinson quotes from cooperator Carl Ferrer and Daniel Hyer's plea agreements, in which they claimed the "great majority" or "majority" of advertisements posted to Backpage were for prostitution services. (*Id.* at ¶¶ IV.2, 4.)  The government could have presented the cooperators to the magistrate to inform the magistrate about whatever purported factual information they had indicative of criminality (the plea agreements themselves contained no facts to support their assertions).³  Instead, the magistrate was deprived of the ability to make a neutral and detached determination about the cooperators' claims.  Again, the assertions or conclusions of others were substituted for the findings of a neutral and detached magistrate.

Robinson discusses aggregation, affiliation, and reciprocal link programs, but does not state how those programs tie to criminality.  (*Id.* at ¶ 5.)  Marketing techniques aimed at increasing advertisements for "erotic or adult" services do not, on their own, reflect criminality

---

³    In addition to being hearsay, the plea agreements do nothing to support a finding of probable cause.  A guilty plea of a codefendant "may not be used by the government and received over objection as substantive evidence of the guilt of those on trial." *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). Further, courts should be skeptical of plea agreements because "plea agreement[s] may adopt facts the government wants to hear in exchange for some benefit." *United States v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018); see also *Lee v. Illinois*, 476 U.S. 530, 541 (1986) (explaining that accomplices' confessions and arrest statements are "presumptively unreliable," "presumptively suspect," and "less credible than ordinary hearsay").

because such advertisements are judicially recognized protected expression. (*See* Doc. 827 at 15 n. 4.) Similarly, Robinson discusses meetings that occurred after the 2015 sale of Backpage, Backpage's relationships with partner sites, and a strategy meeting on how to respond to the PSI Report, but fails to indicate how any of this conduct is tied to criminality. (*Id.*) Without such allegations, Robinson has done nothing more than discuss lawful conduct because none of these actions, without being tied to illegality, are illegal conduct on their own.

Consequently, as much as the government seeks to distinguish the warrant for which the Ninth Circuit found probable cause lacking in *Rubio*, the Robinson Affidavit is equally infirm and this Court should grant the Motion.

Finally, the Robinson Affidavit fails to provide factual information sufficient to support a finding of probable cause because it fails to allege the heightened scienter or specific intent necessary to establish the crimes at issue and fails to provide factual information to believe that the Defendants knowingly and intentionally promoted/facilitated a "business enterprise" involving prostitution. (*See* Doc. 827 (citing and incorporating by reference Docs. 561 and 746).) The government attempts to counter this infirmity by arguing these issues relate to burdens of proof, which are inappropriate for consideration on review of a warrant. (*See* Doc. 851 at 12.) The government has mischaracterized this issue. Robinson's failure to include factual information to demonstrate defendants has the requisite scienter for the crimes purportedly at issue is a failure to provide factual information on a necessary element of those crimes. Defendants have identified two ways in which the Robinson Affidavit fails to establish a necessary element of the crimes at issue and, for this reason, the Affidavit is insufficient.

**B.     The Datto Warrant is insufficiently particular.**

In the Motion, Defendants asserted that the Datto Warrant is invalid because it contained three insufficiently particular terms by authorizing law enforcement to search for:

- Correspondence and files regarding "Backpage.com, *related companies and websites (including partner sites)*, their control, finances, and operations";

6

- Correspondence and files regarding the "sale of Backpage.com and *related entities*"; and

- Bank and financial information concerning "Backpage.com or *related business entities, including holding companies*."

(Doc. 827 at 12 (quoting Doc. 827-1 (emphasis added)).)

The government does nothing to counter these insufficiently particular terms other than to say that the "seizure of large quantities of material is within the scope of the probable cause underlying the warrant." (Doc. 851 at 14.) This non-responsive argument does not save the Datto Warrant. It is well-settled that the "executing officer must be able to identify from the face of the warrant, as well as any attached or expressly incorporated documents, what it is they are being asked to search for and seize from the targeted property." *United States v. Bridges*, 344 F.3d 1010, 1017 (9th Cir. 2003). The Datto Warrant and its attachments (A and B) do not define these insufficiently particular terms or identify any "related" companies. (*See* Doc. 827-1.) Because the Datto Warrant did not include a list of specific entities or otherwise define the term "related" companies, the executing officers had unfettered discretion to search and seize items that have nothing to do with Backpage.

Moreover, the government has conflated the leeway courts have extended law enforcement for initial seizure of electronic communications from an internet service provider with the subsequent, offsite search that must occur to cull only those materials that are subject to the warrant. *See United States v. Metter*, 860 F. Supp. 2d 205, 213-14 (E.D.N.Y. 2012) (explaining that courts do "not expect the government to make onsite determinations of whether a file or document contained on a hard drive or in an email account falls within the scope of the warrant and, thus, off-site imaging is a necessity of the digital era"). Here, Defendants do not challenge the government's seizure of data from the identified email accounts, to the extent that the government obtained a broader category of data from Datto than what was authorized by the Datto Warrant. However, once the government obtained that data, it had the obligations to search for the data subject to the Datto warrant and to cull that data and limit its investigation to the data that is subject to the Datta Warrant. Because

7

the search terms are insufficiently particular, this step of execution of the search warrant gave the investigators unfettered discretion in violation of the Fourth Amendment.

### III. This Court should order a *Franks* hearing.

In their Motion, Defendants moved for a *Franks* hearing on the basis that the Robinson Affidavit omitted material information, including that: (1) the First Amendment protects online classified advertisement websites, including Backpage; (2) at the time it sought these search warrants, the government knew that the novel legal theory upon which it was proceeding had been rejected by every court that had considered it, including rulings indicating that there can be *no liability for publishing and editing third-party ads*; (3) federal courts have expressly recognized that adult speech is protected; and (4) federal courts have expressly held that adult speech is not synonymous with prostitution or trafficking. The government has not refuted the impact of these critical omissions on the validity of the Datto Warrant.

First, the government says that there is no obligation to disclose decisions addressing the CDA to the issuing magistrate because years after issuance of the Datto Warrant this Court ruled that the CDA was inapplicable to this prosecution. (*See* Doc. 851 at 15.) Although Defendants maintain that the CDA is relevant to any analysis of a webhost's publishing activities, the government has said nothing to justify Robinson's failure to include reference to cases recognizing publication of classified advertisements, communication of adult services, including escort services, and editing of such advertisements as *First Amendment* protected expression in the Datto Warrant. (*See* Doc. 827 at 15 n.4.)

Second, Defendants maintain that, as a matter of First Amendment law and the law in this Circuit on Travel Act violations, the government must establish heightened scienter to hold a publisher liable for third party speech and the failure to disclose that requirement to the issuing magistrate necessitates a *Franks* hearing. This Court's order denying Defendants' Motion to Dismiss (Doc. 793) does not, as the government claims, inoculate the government from its failure to inform the magistrate about critical rulings because the proper inquiry is

8

what the issuing magistrate knew at the time the warrant was authorized, not what a later court decided at a different stage in a prosecution.

Third, the government claims that it did not equate lawful adult advertisements with prostitution because its cooperators only stated that the "great majority" of ads were for prostitution. This purported ability to distinguish between an ad for illegal prostitution and an ad for a lawful escort has been disavowed by the courts and should have been included in the Robinson Affidavit. *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) (recognizing the difficulty distinguishing between ads for escorts and ads for prostitutes). Further, Robinson's own statements conflated escort ads with illegal prostitution ads. (*See* Doc. 827-2 at ¶ IV.5.)

Based on these material omissions, this Court should order a *Franks* hearing.

**IV.    The Motion should be granted to the extent that any of the other suppression motions are granted because the Datto Warrant expressly incorporated evidence obtained from prior warrants.**

The Robinson Affidavit indicates that the Datto warrant application is based on "data gathered from warrants." (Doc. 827-2 at ¶ IV.1.) Thus, to the extent that this Court grants any of the other pending suppression motions, this Court should suppress the evidence obtained from execution of the Datto warrant as fruit of the poisonous tree. Alternatively, this Court should order a hearing to determine whether the Datto warrant application was tainted by reliance on evidence obtained from execution of search warrants found to be unlawful and in violation of the Fourth Amendment.

/
/
/
/
/
/

9

**CONCLUSION**

For all these reasons, this Court should: (1) suppress the evidence obtained from execution of the Datto Warrant and any evidence derived from them; and, to the extent required, (2) hold a *Franks* hearing for Defendants to demonstrate that the Robinson Affidavit in support of the Datto Warrant contains material misstatements and omissions in violation of the Fourth Amendment.

RESPECTFULLY SUBMITTED this 28th day of January, 2020,

DATED: January 28, 2020      Paul J. Cambria, Jr.
                             Erin E. McCampbell
                             LIPSITZ GREEN SCIME CAMBRIA LLP

                             By:   /s/ Paul J. Cambria, Jr.
                                   Paul J. Cambria, Jr.
                                   Attorneys for Michael Lacey

DATED: January 28, 2020      Thomas H. Bienert, Jr.
                             Whitney Z. Bernstein
                             BIENERT KATZMAN, PLC

                             By:   /s/ Whitney Z. Bernstein
                                   Whitney Z. Bernstein
                                   Attorneys for James Larkin

DATED: January 28, 2020      Gary S. Lincenberg
                             Ariel A. Neuman
                             Gopi K. Panchapakesan
                             BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                             DROOKS, LINCENBERG & RHOW, P.C.

                             By:   /s/ Ariel A. Neuman
                                   Ariel A. Neuman
                                   Attorneys for John Brunst

DATED: January 28, 2020       Bruce Feder
                              FEDER LAW OFFICE, P.A.

                              By:   /s/ Bruce Feder
                                    Bruce Feder
                                    Attorneys for Scott Spear


DATED: January 28, 2020       Joy Bertrand
                              JOY BERTRAND, ESQ.

                              By:   /s/ Joy Bertrand
                                    Joy Bertrand
                                    Attorneys for Joye Vaught


DATED: January 28, 2020       David Eisenberg
                              DAVID EISENBERG, P.L.C.

                              By:   /s/ David Eisenberg
                                    David Eisenberg
                                    Attorneys for Andrew Padilla

| | |
|---|---|
| 1 | On January 28, 2020, a PDF version |
| 2 | of this document was filed with |
| 3 | Clerk of the Court using the CM/ECF |
| 4 | System for filing and for Transmittal |
|   | Of a Notice of Electronic Filing to the |
| 5 | Following CM/ECF registrants: |
| 6 | |
| 7 | Kevin Rapp, kevin.rapp@usdoj.gov |
|   | Reginald Jones, reginald.jones4@usdoj.gov |
| 8 | Peter Kozinets, peter.kozinets@usdoj.gov |
|   | John Kucera, john.kucera@usdoj.gov |
| 9 | Margaret Perlmeter, margaret.perlmeter@usdoj.gov |
| 10 | Patrick Reid, Patrick.Reid@usdoj.gov |
| 11 | Andrew Stone, andrew.stone@usdoj.gov |
|   | Amanda Wick, Amanda.Wick@usdoj.gov |