MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Michael Lacey, et al.,<br><br>　　　　　Defendants. | No. CR-18-422-PHX-SMB<br><br>**UNITED STATES' REPLY TO DEFENDANT JOHN BRUNST'S RESPONSE TO THE FEBRUARY 11, 2020 COURT ORDER RE GRAND JURY DISCLOSURE (CR 881)** |

## SUMMARY OF ARGUMENT

The Court has ordered the United States to provide *in camera* the instructions on the law provided to the grand jury concerning the 18 U.S.C. § 1952 (the Travel Act) charges in the Superseding Indictment. (CR 879 at 2.) The United States will comply and is making efforts to expedite the subject transcript for the Court's review.

Meanwhile, Defendant John Brunst has filed a "response" to the Court's Order

claiming that the instructions should not be provided *in camera*, but rather should be produced to Defendants and include all instructions relating to *Pinkerton* liability. For several reasons, these requests are without merit. First, grand jury proceedings are secret, and Fed. R. Crim. P. 6(e)(3)(E) permits *in camera* review in certain limited circumstances "at a time, in a manner, and subject to any other conditions that [the Court] directs." Here, the Court has ordered a discrete, limited, and narrow *in camera* production of the grand jury Travel Act instructions. (CR 879 at 2.) The limited nature of that review is appropriate because—especially in the context of a defense demand to review legal instructions to the grand jury—there is no requirement to even instruct the grand jury on the law. Moreover, any mistakes in the instructions (or failure to instruct for that matter) can be readily cured by the petit jury at trial. The government likewise has no obligation to instruct the grand jury on a theory of *Pinkerton* liability. For these and other reasons explained below, Brunst's requests should be denied.

**LAW AND ARGUMENT**

Brunst has suggested that if the grand jury instructions were inadequate then any affected counts and/or the entire indictment should be dismissed. (CR 798 at 4, 7; CR 780 at 14-15.) Established law supports neither that claim nor Brunst's request for grand jury transcripts related to the government's instructions to the grand jury on the applicable law.

**A.    The Grand Jury Operates with a Presumption of Regularity**

The scope of judicial review of grand jury matters has been narrowly circumscribed by the Supreme Court. Grand jury proceedings are invested with a presumption of regularity. *United States v. R Enterprises, Inc.*, 498 U.S. 292, 301 (1991). (*See also* CR 884 at 2-3.) Applying this deferential standard to grand jury matters, the Supreme Court has long been reluctant to permit challenges to indictments based on alleged errors in grand jury proceedings. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *Costello v. United States*, 350 U.S. 359, 363 (1956) ("[a]n indictment returned by a legally constituted and unbiased grand jury ... if valid on its face is enough to call for trial of the charge on the merits").

In *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court further restricted the ability of federal courts to invoke the supervisory power for creating prosecutorial standards before the grand jury. The Court stated that precedent regarding the supervisory authority of the judiciary applied "strictly with the court's power to control their *own* procedures." 504 U.S. at 45. The Court then stated:

> We did not hold in *Bank of Nova Scotia*, however, that the courts' supervisory power could be used, not merely as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury, but as a means of *prescribing* those standards of prosecutorial conduct in the first instance just as it may be used as a means of establishing standards of prosecutorial conduct before the courts themselves.... Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such "supervisory" judicial authority exists.

*Id*. at 46-47.

The combined effect of these Supreme Court cases is to limit a defendant's ability to attack the validity of an indictment to those instances where the alleged misconduct *seriously* undermined the grand jury's independence and unfairly prejudiced the defendant. In exercising these supervisory powers, however, cases caution that the courts must not encroach on the legitimate prerogatives and independence of the grand jury and the prosecutor. *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir. 1977) (in view of the constitutionally-based independence of court, prosecutor, and grand jury, court may not exercise its supervisory power over grand jury in a way which encroaches on prerogatives of the other two unless there is a clear basis in fact and law for doing so).

**B.     Grand Jury Secrecy Regarding Transcripts**

Transcripts of witness testimony, statements made by government attorneys, and any other statements made by or before the grand jury, while in session, clearly constitute "matters occurring before the grand jury" or "grand-jury matters" and may not be disclosed, except in conformity with one of the exceptions to Rule 6(e). *See Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 211 (1979) (proper functioning of grand jury system depends upon secrecy of grand jury proceedings); *United States v. Proctor & Gamble*, 356 U.S. 677, 682 (1958); *United States v. Diaz*, 236 F.R.D. 470 (N.D. Ca. 2006)

1  (exchanges between grand jurors and prosecutors concerning the investigation are "matters
2  occurring before the grand jury").  As this Court has recognized, and contrary to Brunst's
3  assertion that the underpinnings for grand jury secrecy no longer apply at this stage of the
4  proceedings, Rule 6(e)'s considerations and the reasoning of *Douglas Oil* remain
5  informative and relevant here.  (*See* CR 884 at 9.)  At this juncture, *in camera* review is an
6  appropriate means of implementing Rule 6(e)'s provision for discrete and limited review.

### C. Legal Instructions to the Grand Jury

Brunst's request is based on the flawed premise that the government is under a strict obligation to the instruct grand jury on the law as it relates to an indictment.  In fact, the Ninth Circuit has long held that the government has no obligation to provide legal instructions to a grand jury.  *United States v. Larrazolo,* 869 F.2d 1354, 1359 (9th Cir. 1989) (the prosecutor has no duty to outline the elements of the crime as long as the elements are at least implied and the instructions are not flagrantly misleading), *overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) (rejecting argument that grand jury should receive jury instructions similar to those given at the end of trial; "[w]e are not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions") .

As noted in previous pleadings, Brunst's argument that the indictment should be dismissed due to speculative claims that the grand jury was not correctly instructed does not comport with long established law.  Under the *Bank of Nova Scotia* standard, "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  487 U.S. at 256.  As the Northern District of California recently noted in denying a motion to dismiss for erroneous legal instructions, "[t]he Ninth Circuit has held in no uncertain terms that the *Bank of Nova Scotia* standard sets a high bar for dismissal":

> Only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury. To hold otherwise would allow a minitrial as to each presented indictment contrary to the teaching [of the Supreme Court].

*United States v. Pacific Gas and Electric Co.*, 2015 WL 9460313, at *2 (N.D. Cal. Dec. 23, 2015) (*PG&E*) (quoting *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977)). Even "extensive prosecutorial misconduct" before the grand jury may not justify dismissal of an indictment. *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010) (citing *Bank of Nova Scotia*, 487 U.S. at 263).

Given this high standard, the Ninth Circuit has held that "[e]rroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). Rather, dismissal for improper instructions is warranted only where "the conduct of the prosecutor was so 'flagrant' it deceived the grand jury in a significant way infringing on their ability to exercise independent judgment." *Larrazolo*, 869 F.2d at 1359. The movant "must show that the grand jury's independence was so undermined that it could not make an informed and unbiased determination of probable cause." *Id.* And again, the Ninth Circuit has held that the government need not even instruct the grand jury on the law, recognizing that "the giving of such instructions portends protracted review of their adequacy and correctness by the trial court during motions to dismiss, not to mention later appellate review." *Kenny*, 645 F.2d at 1347.

In *Larrazolo*, for example, defendants contended that the definition of conspiracy offered to the grand jury "neglected to include the requirements of criminal intent and knowledge" and therefore "misled the grand jury in [the] explanations of conspiracy law." *Id.* Specifically, the prosecutor "characterized the acts of [defendants] in loading bales of marijuana as [both] the overt act and evidence of the mens rea requirement of conspiracy [,] without finding specific knowledge of the agreement." *Id.* Defendants argued that "if complete and proper jury instruction had been given, the grand jurors would have found evidence of the mens rea element missing." *Id.* But the Ninth Circuit held that the

erroneous instructions did not require dismissal because defendants had not "shown the erroneous instructions influenced the decision to indict or created a 'grave doubt' that the decision to indict was free from the substantial influence of such a violation." *Id.*

Similarly, in *PG&E,* the court found that the prosecutor's alleged failure to instruct the grand jury on causation, gain or loss and other issues relating to the Alternative Fines Act did not meet the high standard for dismissal set forth in *Bank of Nova Scotia*. 2015 WL 9460313, at *5-6. Even assuming the defendant was correct, the alleged errors were not "'so flagrant [that they] deceived the grand jury in a significant way infringing their ability to exercise independent judgment.'" *Id*. at *6 (quoting *Larrazolo*, 869 F.2d at 1359). The court reiterated that "the prosecutor need not provide legal instructions to the grand jury at all," and the proceedings did not give the court "grave doubt" that the grand jury's probable cause determination was made with anything other than "independent judgment." *Id*. *See also, e.g.*, *United States v. Dufau*, 2017 WL 5349541, at *2 (D. Idaho Nov. 13, 2017) (following *Larrazolo*, *Wright* and *Kenny*; denying motion to dismiss based on failure to instruct grand jury on two essential elements of harboring charge); *United States v. Chavez*, 2002 WL 35649603, at *3 (D.N.M. Nov. 14, 2002) ("a prosecutor is not required to provide elements instructions to a grand jury, particularly instructions like those given to a petit jury").

*Larrazolo*, *PG&E* and similar cases demonstrate that erroneous or incomplete legal instructions will rarely, if ever, rise to the level of flagrant misconduct sufficient to meet the *Bank of Nova Scotia*'s demanding standard.

Furthermore, courts have repeatedly held that a conviction at trial, which reflects a petit jury's determination of guilt beyond a reasonable doubt, renders harmless any alleged errors that occurred before the grand jury. *See, e.g., United States v. Mechanik*, 475 U.S. 66, 67-73 (1986); *Navarro*, 608 F.3d at 538 ("The petit jury's verdict establishes that probable cause existed."); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004); *United States v. Reyes-Echevarria,* 345 F.3d 1, 4 (1st Cir. 2003).

Lastly, as previously argued the instructions to the grand jury are secret. (CR 812). *In United States v. Chambers*, 2019 WL 1014850, at *3 (D. Conn. Mar. 4, 2019), the court responded to another district court decision allowing for the disclosure of instructions to the grand jury, finding:

> The Court is not persuaded that such a relaxed approach adequately protects the long-recognized goals of grand jury secrecy. . . .[1] Indeed, "[legal] instructions [given to the Grand Jury]..., or the existence of such instructions goes to the substance of the charge being laid before the Grand Jury as well as how the Grand Jury is to proceed regarding the type and manner of produced evidence before the panel." *United States v. Larson*, 2012 WL 4112026, at *5 (W.D.N.Y. Sept. 18, 2012). Accordingly, affording these instructions the same level of secrecy as other grand jury materials is, in this Court's view, appropriate.

Other courts—including those within the Ninth Circuit—have taken a similar view as *Chambers*. *See, e.g.*, *United States v. Stepanyan*, 2016 WL 4398281, at *2 (N.D. Cal. Aug. 18, 2016) ("courts have uniformly rejected the argument that the government's instructions or remarks to the grand jury are not entitled to secrecy");*United States v. Morales*, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) (denying request for release of the grand jury instructions).

### D.   Notice of *Pinkerton* Liability

Next, Brunst's concern about how the grand jury was instructed regarding *Pinkerton* is similarly misplaced. Because "a theory of defendant liability need not be pleaded in the indictment," there is no requirement that *Pinkerton* liability be charged or referred to in the indictment. *United States v. Washington*, 106 F.3d 983, 1011 (D.C. Cir. 1997); *United States v. Hayes*, 391 F.3d 958, 963 (8th Cir. 2004) ("In light of the conspiracy charge against Hayes, the District Court was warranted in giving this instruction, even though co-conspirator liability was not charged in the indictment."); *United States v. Sanchez*, 917 F.2d 607, 612 (1st Cir. 1990) (holding that a "district court may give a Pinkerton charge even though the indictment does not plead vicarious liability"). For the same reasons, and contrary to Brunst's suggestion, there is no requirement that the grand jury agree on what charges would even be subject to a *Pinkerton* instruction at trial. (*Cf.* CR 881 at 2-3.)

---

[1] Citing *In re Grand Jury Subpoena,* 103 F.3d 234, 237 (2d Cir. 1996).

In short, Brunst need not be given notice that the government intends to rely on a *Pinkerton* theory, and, therefore, his request for the instructions provided the grand jury on *Pinkerton* should be likewise rejected. *United States v. Jimenez*, 509 F.3d 682, 692 (5th Cir. 2018) ("Indictments do not recite the government's theory of proof, which is what the Pinkerton theory is. . . . [T]he function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them."); *United States v. Vazquez-Castro*, 640 F.3d 19, 24 (1st Cir. 2011) ("[T]he trial court may instruct the jury on a Pinkerton theory even though the indictment does not plead vicarious liability," and there was no unfair surprise in this case); *United States v. Ashley*, 606 F.3d 135, 142-143 (4th Cir. 2010) (*Pinkerton* theory of liability need not be charged in indictment); *United States v. Zackery*, 494 F.3d 644, 649 (8th Cir. 2007) (holding, referring to both *Pinkerton* and aiding and abetting, "[a]n indictment need not plead the government's theory of liability").

Brunst's request is not unlike the defendant's request in *Morales*, 2007 WL 628678, at *4. There, the defendant argued that had the grand jury been instructed on *Pinkerton* liability as interpreted by the Ninth Circuit in *United States v. Ruiz,* 462 F.3d 1082 (9th Cir. 2006), it would not have indicted him on the gun charges. Accordingly, he requested the transcript of the prosecutor's instructions to the grand jury as a basis for a motion to dismiss. The court denied the request, stating:

> The defendant has not overcome the presumption of regularity in this case. The defendant's request for release of the grand jury instructions is based on his own evaluation of the evidence, which he finds insufficient in light of *Ruiz,* which in turn leads him to conclude that the instructions must have been misleading in order for the grand jury to have returned an indictment. This sort of deductive reasoning is insufficient to overcome the presumption of regularity. Indeed, as in *Ruiz,* a properly instructed jury, grand or petit, may return an indictment or a verdict later found to be insufficient.

*Id.* * 4. The court concluded "this case provides little support for defendant's claim that the prosecutor's legal instructions are similarly not covered by grand jury secrecy." *Id*.; *see also In Re Grand Jury Investigations,* 903 F.2d 180, 182 (3d Cir. 1990) (to preserve

the freedom and integrity of the deliberative process, grand jury secrecy is designed to protect the essence of what takes place in the grand jury room).

## **CONCLUSION**

Proceedings before the grand jury are entitled to long-established rules regarding secrecy that encompass the instructions given to a grand jury.  But, in the final analysis, Brunst seeks grand jury materials the government is not even required to provide—namely, legal instructions.  Moreover, the government is required to neither include *Pinkerton* liability in the indictment nor instruct the grand jury on that theory.  The relief sought in Brunst's latest filing should be denied.

Excludable delay under 18 U.S.C. § 3161(h) may occur as a result of this motion or an order based thereon.

Respectfully submitted this 14th day of February, 2020.

    MICHAEL BAILEY
    United States Attorney
    District of Arizona

    *s/ Kevin Rapp*
    KEVIN M. RAPP
    MARGARET PERLMETER
    PETER S. KOZINETS
    ANDREW C. STONE
    Assistant U.S. Attorneys

    JOHN J. KUCERA
    Special Assistant U.S. Attorney

    BRIAN BENCZKOWSKI
    Assistant Attorney General
    U.S. Department of Justice
    Criminal Division, U.S. Department of Justice

    REGINALD E. JONES
    Senior Trial Attorney
    U.S. Department of Justice, Criminal Division
    Child Exploitation and Obscenity Section

Case 2:18-cr-00422-DJH   Document 887   Filed 02/14/20   Page 10 of 10

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office

- 10 -