Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 2:18-cr-00422-PHX-SMB |
|---|---|
| Plaintiff, | **DEFENDANTS LARKIN, LACEY, SPEAR, AND BRUNST'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE AS NON-HEARSAY STATEMENTS (DOC. NO. 929)** |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | (Oral argument requested) |

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*


Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

# Table of Contents

I.  THE COURT SHOULD DENY THE GOVERNMENT'S MOTION. ........................1

II.  THE CATEGORIES OF STATEMENTS THAT THE GOVERNMENT INTENDS TO INTRODUCE ARE INADMISSIBLE...........................................................................1

   A.  The Court cannot admit unknown statements of attorneys, brand analysis firms, or public relations firms..............................................................................1

      1.  The government fails to establish the foundation necessary to admit any statements under Rule 801(d)(2)(C). ...............................................2

      2.  The government fails to establish the foundation necessary to admit statements under Rule 801(d)(2)(D)................................................4

      3.  The government fails to establish the foundation necessary to admit statements under Rule 801(d)(2)(B)................................................7

      4.  The government must meet a high standard before the Court can admit an attorney's statements against a client in a criminal case. ...........................8

   B.  The Court should exclude statements of William Mersey and David Elms. .......11

      1.  The government has not proven the existence of a conspiracy or each Defendants' participation in the conspiracy..................................12

      2.  The government cannot prove that any hearsay statements it seeks to introduce were made "in furtherance" of the conspiracy. .........................15

      3.  Even if the government had met its burden under Rule 801(d)(2)(E), other evidentiary issues remain. ..................................................15

   C.  Defendants may impeach the government's declarants under Rule 806. .............16

III.  THE EVIDENCE THE GOVERNMENT SEEKS TO INTRODUCE IS UNDULY PREJUDICIAL UNDER RULE 403....................................................................... 17

IV.  CONCLUSION................................................................................................. 17

# Table of Authorities

<u>Cases</u>                                                                                                                    <u>Pages(s)</u>

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
   227 F.R.D. 313 (C.D. Cal. 2004)...................................................................................15

*Coleman v. Wilson*,
   912 F. Supp. 1282 (E.D. Cal. 1995) ..............................................................................5

*Bogutz v. Arizona*,
   No. CV 03-454-TUC-RCC, 2008 WL 11440636 (D. Ariz. Oct. 27, 2008) .............................6, 15

*Durham v. Cty. of Maui*,
   804 F. Supp. 2d 1068 (D. Haw. 2011) ..........................................................................3

*Kelly v. Maricopa Cty. Sheriff's Office*,
   No. CV-15-02572-PHX-GMS, 2017 WL 6054675 (D. Ariz. Dec. 7, 2017) ................................6

*Kowalski v. Anova Food, LLC*,
   No. CIV. 11-00795HG-RLP, 2015 WL 1117993 (D. Haw. Feb. 12, 2015)..........................6, 8, 9

*Lehman v. Maricopa Cty. Cmty. Coll. Dist.*,
   No. CV 11-00579-PHX-FJM, 2012 WL 3638715 (D. Ariz. Aug. 24, 2012) ..............................6

*Lightning Lube, Inc. v. Witco Corp.*,
   802 F. Supp. 1180 (D.N.J. 1992) .................................................................................10

*Litton Systems, Inc. v. American Telephone & Telegraph Co.*,
   700 F.2d 785 (2d Cir. 1983) .......................................................................................7

*Los Angeles News Serv. v. CBS Broad., Inc.*,
   305 F.3d 924 (9th Cir. 2002) ......................................................................................5

*Mahlandt v. Wild Canid Survival & Research Ctr., Inc.*,
   588 F.2d 626 (8th Cir. 1978) ......................................................................................4

*Merrick v. Farmers Ins. Grp.*,
   892 F.2d 1434 (9th Cir. 1990) .....................................................................................6

*Nekolny v. Painter*,
   653 F.2d 1164 (7th Cir. 1981)....................................................................................11

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*,
   699 F.2d 1292 (9th Cir. 1983)..................................................................................2, 3

*Sabel v. Mead Johnson & Co.*,
   737 F. Supp. 135 (D. Mass. 1990) .........................................................................3, 4, 5

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,
   285 F.3d 808 (9th Cir. 2002) ......................................................................................4

*Thomas v. Stone Container Corp.*,
   922 F. Supp. 950 (S.D.N.Y. 1996) ...............................................................................6

*Totten v. Merkle*,
   137 F.3d 1172 (9th Cir. 1998) .....................................................................................9

*United States v. Alonzo*,
   991 F.2d 1422 (8th Cir. 1993)....................................................................................14

*United States v. Becerra*,
   992 F.2d 960 (9th Cir. 1993) .....................................................................................16

*United States v. Bernal*,
   719 F.2d 1475 (9th Cir. 1983)....................................................................................16

*United States v. Blood,*
   806 F.2d 1218 (4th Cir. 1986) ............................................................................ 8

*United States v. Bonds,*
   No. CR 07-00732 SI, 2009 WL 416445 (N.D. Cal. Feb. 19, 2009) ........................... 10

*United States v. Castaneda,*
   16 F.3d 1504 (9th Cir. 1994) ............................................................................ 12

*United States v. Chang,*
   207 F.3d 1169 (9th Cir. 2000) ........................................................................... 4

*United States v. Cummings,*
   858 F.3d 763 (2d Cir. 2017) ............................................................................. 17

*United States v. Dolleris,*
   408 F.2d 918 (6th Cir. 1969) ........................................................................ 9, 10

*United States v. Eubanks,*
   591 F.2d 513 (9th Cir. 1979) ....................................................................... 15, 16

*United States v. Felix-Jerez,*
   667 F.2d 1297 (9th Cir. 1982) .......................................................................... 14

*United States v. Flores,*
   679 F.2d 173 (9th Cir. 1982) ....................................................................... 10, 11

*United States v. Freeman,*
   519 F.2d 67 (9th Cir. 1975) .............................................................................. 9

*United States v. Jung,*
   473 F.3d 837 (7th Cir. 2007) ............................................................................. 8

*United States v. Kendrick,*
   682 F.3d 974 (11th Cir. 2012) ........................................................................... 8

*United States v. Liera,*
   585 F.3d 1237 (9th Cir. 2009) .......................................................................... 12

*United States v. McCulloch,*
   980 F.2d 739 (9th Cir. 1992) ........................................................................... 16

*United States v. McKeon,*
   738 F.2d 26 (2d Cir. 1984) ............................................................................... 8

*United States v. Moody,*
   903 F.2d 321 (5th Cir. 1990) ........................................................................... 16

*United States v. Moore,*
   522 F.2d 1068 (9th Cir. 1975) ........................................................................ 7, 8

*United States v. Orellana-Blanco,*
   294 F.3d 1143 (9th Cir. 2002) .......................................................................... 14

*United States v. Perez,*
   658 F.2d 654 (9th Cir. 1981) ........................................................................... 14

*United States v. Reyes,*
   18 F.3d 65 (2d Cir. 1994) ............................................................................... 14

*United States v. Silverman,*
   861 F.2d 571 (9th Cir. 1988) .................................................................. 12, 13, 14

*United States v. Tavares,*
   512 F.2d 872 (9th Cir. 1975) ........................................................................... 14

*United States v. Tellier,*
   83 F.3d 578 .................................................................................................. 12

*United States v. Valencia,*
   826 F.2d 169 (2d Cir. 1987) ........................................................................ 8
*United States v. Villa,*
   19 F. App'x 696 (9th Cir. 2001)................................................................... 7

Rules

Fed. R. Evid. 403 ................................................................................................ 17
Fed. R. Evid. 801(d)(2) ................................................................................. passim
Fed. R. Evid. 801(d)(2)(B) ............................................................................... 2, 7
Fed. R. Evid. 801(d)(2)(C) ........................................................................... passim
Fed. R. Evid. 801(d)(2)(D) ........................................................................... passim
Fed. R. Evid. 801(d)(2)(E) ...........................................................................11, 15
Fed. R. Evid. 806 ............................................................................................... 16
U.S.S.G. § 5K1.1 ............................................................................................... 15

Other Authorities

*Weinstein's Fed. Evid.* § 801.30[1] (McLaughlin ed., 2d ed. 2014) ........................ 8

## I.   THE COURT SHOULD DENY THE GOVERNMENT'S MOTION.

The government filed a ten-page motion to "admit evidence as non-hearsay statements," Dkt. 929, but failed to identify any of the statements it seeks to admit through hearsay exceptions or the witnesses through whom it intends to introduce these unknown statements (only one of the speakers is on the government's witness list).  When asked by defense counsel to meet and confer to identify the statements at issue and narrow the disputes before the Court, the government flatly refused.  *See* Dkt. 936 at Ex. B (April 29, 2020 email from Kevin Rapp).  The government's obfuscation prevents Defendants from meaningfully responding to this motion and needlessly compounds the issues before this Court.  Moreover, the government utterly failed to present any evidence to meet the basic foundational requirements needed to establish a basis to admit the unidentified statements through of the specified hearsay exceptions.[1]  The government cannot seek the ruling that it wants, but hide the ball from Defendants and the Court as to the precise statements at issue, and refuse to identify the statements when asked by defense counsel.  The Court should not sanction the government's gamesmanship.  If the government wanted to seek admission of these statements ahead of trial, it was obligated to (1) identify the statements it intends to introduce that it believes are non-hearsay, (2) present the foundational requirements for establishing the relationship necessary for the hearsay exception to apply, and (3) identify the witnesses through whom it believes such alleged non-hearsay statements can be introduced.  The government failed on each count, so the Court should deny the motion.

## II.   THE CATEGORIES OF STATEMENTS THAT THE GOVERNMENT INTENDS TO INTRODUCE ARE INADMISSIBLE.

### A.   The Court cannot admit unknown statements of attorneys, brand analysis firms, or public relations firms.

The government argues that the Court should admit statements of various attorneys, brand analysis firms, and public relations firms under various exceptions to the prohibition against hearsay.  Dkt. 929 at 3-7.  The government does not specify what statements it contends are admissible, nor

---

[1] The government did not even make a pretense of establishing the required foundation, as it repeatedly said it would provide the foundation at trial—begging the question of why it filed this motion now. *See, e.g.,* Dkt. 929 at 2 ("[t]he government's evidence at trial will establish"), 4 ("the evidence will show"); 8 ("the evidence will establish").

does the government identify the persons through whom it believes such unknown statements can be introduced.  Only one of the thirteen declarants referenced in its motion is on its witness list (Rob Leggat, of Goddard Global).  Nonetheless, the government asserts that these unknown statements are admissible because the statements were made by a person whom each Defendant purportedly authorized to make a statement on the subject (Rule 801(d)(2)(C)) or were made by each Defendants' agent or employee on a matter within the scope of that relationship while it existed (Rule 801(d)(2)(D)).  *Id.*  In the case of statements by attorney Elizabeth McDougall only, the government additionally contends that the unknown statements are admissible because each Defendant manifested that s/he adopted or believed them to be true (Rule 801(d)(2)(B)).  *Id.* at 4.

Aside from its wholesale failure to identify any of the statements it intends to introduce, the government's motion also critically fails to provide the necessary foundational evidence to establish that each alleged speaker was an authorized speaker or agent of each, let alone all, Defendants or that each Defendant heard, understood, and acceded to McDougall's unidentified statements.  The motion also misstates the law on admission of attorney statements under Rule 801(d)(2).

### 1. The government fails to establish the foundation necessary to admit any statements under Rule 801(d)(2)(C).

Under Rule 801(d)(2)(C), the government seeks to introduce "statements McDougall made in emails, correspondence, and publicly," Dkt 929 at 3-4, some untold number of statements by attorney Moon, *id.* at 5, and unidentified "reports and emails from representatives of Greenberg Quinlan Rosner Research ("GQR") and public relation firms (e.g., Goddard Global, Culloton Strategies, Sitrick, and Barabara Roesner) or attorneys (Ed McNally, Steve Suskind, Samuel Fifer, and Hemanshu Nigam)," *id.* at 5-6.  The government argues, without support, that these people's statements are not hearsay because the government believes that each of the six Defendants authorized each of the above speakers to make each statement.  *Id.* at 3-6.  Defendants, and the Court, cannot even begin to assess whether any statement was in fact authorized by any Defendant because the government refuses to divulge the substance and timing of the statements at issue.

The government cites just one case, *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306 (9th Cir. 1983), to support its argument that "a brand analysis firm and public relation firms' reports, emails, power points, correspondence, and statements to the press are admissible."  Dkt.

929 at 6.  *Reid* is readily distinguishable.  In *Reid*, the court was provided evidence that the report at issue (1) was a formal written report, (2) prepared by an employee of one of the defendant's parent companies who had been given total access to all the defendant's books and records, (3) was presented at a meeting of the defendant's executives before being circulated amongst all the defendant's managers and officers—all of which led the Ninth Circuit to conclude that there was "little question" that the report's author was "authorized" to make statements regarding the defendant's operations.  699 F.2d 1292, 1306-07 (9th Cir. 1983).  The situation here is not remotely like the facts in *Reid*.  Moreover, another court rightfully distinguished *Reid* where a defendant "controlled the information given to the outside consultants, did not request or receive a final report from them, and did not adopt as its own the ideas expressed by the consultants during the meeting." *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 139 (D. Mass. 1990).

Here, the government presents no evidence that any Defendants (much less all of them) authorized whatever statements the government seeks to introduce.  The best the government puts forth is an alleged attorney-client relationship between attorney Moon and Defendants Larkin and Lacey only as of October 13, 2016, with no evidence that Moon was authorized by that relationship to make the statements sought to be admitted.  Dkt. 929 at Ex. A.  The government also fails to establish that Moon had authority to make statements on behalf of any other Defendants, or that any of the other lawyers identified were authorized to make statements for any of the six Defendants.  Regarding the brand analysis and public relation firms, there is zero indication of what reports, emails, power points, correspondence, or press statements are at issue – all of which may also contain additional hearsay or irrelevant, incomplete, or prejudicial material – and the government offers no evidence whatsoever as to who prepared these materials, what documents and information they were based upon, who received and reviewed these materials, and who agreed to their dissemination.  There is no evidence that any of these statements "were sworn under oath, produced as part of the discovery process, or otherwise specifically relied upon by [Defendants] in some manner." *Durham v. Cty. of Maui*, 804 F. Supp. 2d 1068, 1071-72 (D. Haw. 2011) (finding doctor report could not be admitted as an authorized statement).  Ultimately, the government offers no evidence regarding who retained these attorneys or consultants, what their assignments were, or

1    what the scope of their authority to speak on behalf of each of the six Defendants was.  As the

2    government fails establish those points, the Court should deny its motion.

3        Finally, despite the government's attempt throughout this case to conflate Defendants and

4    treat them all as one indistinguishable mass, the Defendant are separate individuals whose respective

5    roles evolved over time, notably after Carl Ferrer purchased Backpage in April 2015.  The failure to

6    establish which Defendant(s) authorized the out-of-court declarants to speak on their behalf, which

7    of the out-of-court declarants were authorized to say what, or when the out-of-court declarants

8    were authorized to make certain statements is fatal.  *See, e.g.*, *Mahlandt v. Wild Canid Survival & Research*

9    *Ctr., Inc.*, 588 F.2d 626, 631 (8th Cir. 1978) (holding that minutes of a corporate board meeting are

10   inadmissible under Rule 801(d)(2) against "a non-attending, non-participating employee of that

11   corporation").  Accordingly, in the complete absence of evidence, the government has not shown

12   that any declarants "enjoyed the specific 'speaking authority' contemplated by [Rule] 801(d)(2)(C)"

13   as to any statements and on behalf of any, let alone all six, Defendants.  *Sabel*, 737 F. Supp. at 139.

14                    **2.     The government fails to establish the foundation necessary to admit**
                              **statements under Rule 801(d)(2)(D).**

15

16       In order to admit statements under Rule 801(d)(2)(D), the government must establish: (1)

17   that the speaker was an agent; (2) that the statements were made during the existence of the agency;

     and (3) that the statements were within the scope of that agency.  *See Sea-Land Serv., Inc. v. Lozen*
18
     *Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (holding that a party seeking to admit a statement under
19
     Rule 801(d)(2)(D) must lay an adequate foundation to show that the statement "relates to a matter
20
     within the scope of the agent's employment").  The contents of the statement alone do not establish
21
     the existence or scope of the relationship necessary to apply Rule 801(d)(2)(D).  Fed. R. Evid.
22
     801(d)(2).  As the proffering party, the government bears the burden to demonstrate the
23
     foundational requirement that "an otherwise excludable statement relates to a matter within the
24
     scope of the agent's [agency or] employment."  *United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir.
25
     2000) (bracketed text in original).  The government has not met its burden.
26
         The government asserts that attorneys McDougall and Moon, and brand analysis and public
27
     relation firms were agents of the company Backpage (not agents of the individual Defendants) and
28
     that, as agents of Backpage, their unidentified statements are admissible against each individual

---

                                                       4

Defendant under Rule 801(d)(2)(D).  Dkt. 929 at 4 (McDougall was hired "as general counsel" to "represent Backpage's position"), 5 ("Moon was Backpage's agent"), 7 ("Backpage retained each [brand analysis and public relations] firm or attorney").  Again, the government makes no effort to identify any of the statements it seeks to introduce, nor presents any evidence that the statements were made within the course and scope of an alleged agency relationship as to each Defendant.  Without the foundational prerequisites, the statements cannot be admitted under Rule 801(d)(2)(D).

The government's motion raises more questions than it answers.  For which Defendants does the government contend each attorney declarant was an agent?  For which Defendants were the brand analysis and public relation firms an agent?  What was the nature and scope of each of these declarants' relationships with each of the Defendants?  What statements of each declarant does the government contend were made during the term of, and within the scope of, each relationship?  When were each of these statements made?[2]

The government has not established the requisite foundation of any agency relationship between each declarant and each Defendant.  Even if the government could establish that all of these declarants were agents of the company Backpage, the government wholly fails to account for the fact that the statements of a company's agents cannot be blindly imputed to each employee, officer, or stockholder, especially given that none of the Defendants controlled the company after its sale to the government's cooperator, Ferrer, in April 2015.  "Where defendant did not control the participants in the discussion, where the participants lacked the power to legally bind defendant through their statements and actions, and where the participants did not enter into a fiduciary relationship with defendant, the factors which support attribution of an agent's statements to her principal are completely missing."  *Sabel*, 737 F. Supp. at 139; *see also Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 934 (9th Cir. 2002), *opinion amended on denial of reh'g*, 313 F.3d 1093 (9th Cir. 2002) (holding evidence was inadmissible under Rule 801(d)(2) where the proponent of the evidence failed to offer evidence of the scope of the agency relationship "beyond the [declarant's] own hearsay declaration").  Even if a statement was admissible under the agency theory against one Defendant, the statement

---

[2] *See Coleman v. Wilson*, 912 F. Supp. 1282, 1296 (E.D. Cal. 1995) ("One of the predicates for admission of an employee's statement under [Rule] 801(d)(2)(D) is that the employee must have been employed by the party at the time the statement being offered was made.").

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AT DOC. NO. 929

would remain inadmissible hearsay as to all other Defendants.  *See Bogutz v. Arizona*, No. CV 03-454-TUC-RCC, 2008 WL 11440636, at *1 (D. Ariz. Oct. 27, 2008) ("It is well established that under Rule 801(d)(2), 'a party's statement is admissible as non-hearsay only if it is offered against that party.'").

Assuming the government had proved the existence of an employment or agency relationship between each Defendant and each declarant, it would still need to show that the statements were made during the existence of the agency.  Statements made prior to or after the existence of the agency cannot be admitted against the defendant.  *See Kelly v. Maricopa Cty. Sheriff's Office*, No. CV-15-02572-PHX-GMS, 2017 WL 6054675, at *3 (D. Ariz. Dec. 7, 2017), *aff'd sub nom. Kelly v. Arpaio*, 738 F. App'x 548 (9th Cir. 2018) (excluding hearsay statements when there was no evidence presented that they were made during the speaker's employment with defendant); *Kowalski v. Anova Food, LLC*, No. CIV. 11-00795HG-RLP, 2015 WL 1117993, at *3 (D. Haw. Feb. 12, 2015) (statements made by counsel while representing a different client and prior to representing the defendant in the case at issue were not admissions by a party agent).

Further, the government offers no evidence that any statements were made within the scope of the purported agency; it simply asserts that they were.  In the absence of such evidence, the Court must exclude statements under Rule 801(d)(2)(D).  *See Lehman v. Maricopa Cty. Cmty. Coll. Dist.*, No. CV 11-00579-PHX-FJM, 2012 WL 3638715, at *4 (D. Ariz. Aug. 24, 2012) ("Plaintiff offers no argument to show that [declarant's] statement was made within the scope of her employment; she simply states that it was."); *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1440 (9th Cir. 1990) ("[Plaintiff] did not establish that the [declarants] were 'agents' of [Defendant] as opposed to independent contractors; nor did he show that their statements [] concerned a matter within the scope of their agency.  The district court properly rejected this proffered evidence as hearsay.").

Finally, even if the unknown statements the government seeks to introduce were made by agents on a matter within the scope of their relationship while it existed, such that an exception under Rule 801(d)(2)(D) applied, the Court must still screen the substance of each statement for inadmissible layers of hearsay and other irrelevant, incomplete, and prejudicial statements.  *Thomas v. Stone Container Corp.*, 922 F. Supp. 950, 957 (S.D.N.Y. 1996) ("[T]he proponent of an admission by a party opponent must establish the declarant's competence; office or plant gossip does not

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AT DOC. NO. 929

become admissible simply because it is put into the mouth of someone whose statements are not subject to hearsay objection.") (citing *Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785, 816-17 (2d Cir. 1983)), *cert. denied,* 464 U.S. 1073 (1984).

In sum, the Court cannot admit any statements under this Rule and must deny the government's motion, as the government has not met its burden of establishing: (1) that each speaker was an agent of each Defendant; (2) that each statement was made during the agency relationship; (3) that each statement was within the scope of that agency; and (4) that the substance of each statement does not contain other inadmissible hearsay or objectionable content.

### 3. The government fails to establish the foundation necessary to admit statements under Rule 801(d)(2)(B).

As to attorney McDougall's statements only, the government additionally asserts that her unknown statements are "admissible non-hearsay because they were effectively adopted by Defendants as their own."  Dkt. 929 at 4.  The government claims that such adoption can be "manifested by silence" and alleges that its "evidence will show that McDougall often explicitly informed Defendants or their agents about her statements prior" to making them and "Defendants never disavowed or corrected any of McDougall's statements concerning Backpage."  *Id.*

As a threshold matter, it is impossible to know which of McDougall's statements in the past decade the government contends that each Defendant heard but "never disavowed or correct[ed]." *Id.*  Defendants do not know what statements they are alleged to have adopted, so they are unable to analyze whether any Defendant manifested knowledge of the statement, not to mention a belief, by silence or otherwise, about the truth of any of the alleged statements.

The government cannot introduce allegedly "adopted" statements without first presenting the requisite foundation for the Court to determine their admissibility.  *United States v. Villa*, 19 F. App'x 696, 697 (9th Cir. 2001) (reversing conviction when district court, after evidentiary hearing, erroneously admitted evidence as an "admission by silence" under Rule 801(d)(2)(B) without "sufficient foundational facts . . . for the jury to reasonably conclude that the defendant did actually hear, understand, and accede to the statement," as the evidence did not establish "whether under the circumstances an innocent defendant would normally be induced to respond"); *accord United States v. Moore*, 522 F.2d 1068, 1076 (9th Cir. 1975) (explaining the general rule regarding admissions

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AT DOC. NO. 929

by silence or acquiescence as requiring the defendant to hear the accusatory statement in his presence, understand it, and have an opportunity to deny it).  In the absence of the appropriate foundation, jurors would be exposed "to testimony that they legally could not consider but that might seem, nevertheless, to be extremely prejudicial to the defendant." *Id.*  Here, the government has presented no evidence that McDougall made statements in each Defendant's presence, that each Defendant heard her statements, that each Defendant understood her statements, that the circumstances were such that each Defendant would have been induced to dispute her statements, and that each Defendant instead acceded to her statements.  As the government failed to present any foundational facts on these elements, the Court should reject the government's motion for adoptive admission of whatever statements McDougall may have made.

### 4. The government must meet a high standard before the Court can admit an attorney's statements against a client in a criminal case.

To convince this Court to admit attorney statements against a client in a criminal matter, the government bears a high burden.  Courts in the Ninth Circuit also hold that "[a]n attorney's arguments generally are not statements of a party opponent pursuant to Rule 801(d)(2)." *Kowalski*, 2015 WL 1117993, at *2 (citing *Weinstein's Fed. Evid.* § 801.30[1] (McLaughlin ed., 2d ed. 2014) (citing *United States v. Kendrick,* 682 F.3d 974, 987–88 (11th Cir. 2012))).  In other circuits, an attorney's statements are only admissible if they are: (1) assertions of fact that are the equivalent of a testimonial statement by the client; and (2) inconsistent with similar assertions in a subsequent trial. *Kowalski*, 2015 WL 1117993, at *2 (citing *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984)); *see also United States v. Blood,* 806 F.2d 1218, 1221 (4th Cir. 1986) (adopting the Second Circuit's test for admissibility of attorney statements and finding the government attorney did not make a clear and unambiguous admission of fact); *see also United States v. Valencia*, 826 F.2d 169, 172-74 (2d Cir. 1987) (emphasizing that "care must be exercised in the criminal context in determining under what circumstances attorney statements may be used against a client" and declining to "subject such statements to the more expansive practices sometimes permitted under the rule allowing use of admissions by a party-opponent" because "the routine use of attorney statements against a criminal defendant risks impairment of the privilege against self-incrimination, the right to counsel of one's choice, and the right to the effective assistance of counsel"); *United States v. Jung*, 473 F.3d 837, 842

1    (7th Cir. 2007) (recognizing the "more exacting standard [that] must be demanded for admission of

2    statements by attorneys under Rule 801(d)(2)(D)" and explaining that "[f]rom a policy perspective,

3    defendants will be chilled from sharing information with their attorneys, defense attorneys will be

4    deterred from vigorous advocacy, and the attorney-client relationship will be impaired if statements

5    [] regarding criminal liability are admissible").

6           The government's brief grossly misrepresents the precedent it cites for the proposition that

7    attorney statements are generally admissible under Rule 801(d)(2).  For example, the government

8    represents to this Court that *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998), stands for the rule

9    that "a statement made by an attorney is generally admissible against the client."  Dkt. 929 at 3.  In

10    fact, *Totten* was a *habeas* case where "the nature of the defendant's ineffective assistance of counsel

11    claim required examination of the actions and statements by his attorney."  *Kowalski*, 2015 WL

12    1117993, at *2.  The admissible evidence in *Totten* "was a written declaration made by the attorney for

13    the purposes of the defendant's habeas corpus petition. It was not a statement or argument made by

14    the attorney to the court during the course of the underlying litigation."  *Id.*  The Court held that in

15    this specific scenario, the attorney's statement was admissible.  The Court did not hold that attorney

16    statements are attributable to and admissible against a client generally.  The Court did not find that

17    attorney statements made in emails, correspondence, and publicly as a purported representative of a

18    company are "generally admissible" against a client in a criminal prosecution.  *Totten*, 137 F.3d at 1176.

19           Similarly, in *United States v. Freeman*, 519 F.2d 67 (9th Cir. 1975), the Ninth Circuit reversed

20    and remanded after holding that an attorney's statements were inadmissible hearsay.  *Freeman*, 519

21    F.2d at 69, 70.  The government cites *Freeman* for the proposition that "*unequivocal admissions* by an

22    attorney, *clearly acting within the scope of his authority*, may indeed be binding on his client."  Dkt. 929 at

23    3 (emphasis added).  But *the very next* and final paragraph of the opinion explains that "[b]ut here, .

24    . . we think counsel's statements are not binding on his client as adopted . . . Were we to hold

25    otherwise in the absence of evidence of appellant's express authorization to her counsel to make

26    the representations, we might as well be ratifying a violation of her privilege against self-

27    incrimination or other substantial rights."  *Freeman*, 519 F.2d at 70.

28           Likewise, the government offers *United States v. Dolleris*, 408 F.2d 918 (6th Cir. 1969), for the

proposition that "statements by defendant's attorney in a meeting with IRS agents were properly received as admissions even though defendant was not at the meeting." Dkt. 929 at 3. The government misrepresents *Dolleris*, which in actuality held that where an accused has executed a power of attorney specifically authorizing the attorney to participate in conferences with treasury agents to attempt to explain to them the accused's returns, the attorney's statements during such conference constitute admissions. 408 F.2d at 921. *Dolleris* explained that "[w]hether such statements constituted admissions [] depends on the scope of [the attorney's] authority at the time [the statements] were made. . . . [A]n attorney, merely because of his employment in connection with litigation, does not have the authority to make out-of-court admissions for his client, except those which are directly related to the management of that litigation." *Id.*[3] The government's citation obscures the Sixth Circuit's straightforward reasoning and holding.

The rest of the cases the government cites, with cherry-picked quotations, are similarly distinguishable. The government quotes *United States v. Bonds*, No. CR 07-00732 SI, 2009 WL 416445, at *4 (N.D. Cal. Feb. 19, 2009), as saying: "[S]peaking authority may exist because of the nature of the relationship and the task the speaker is to perform, as is the case of attorneys . . ." Dkt. 929 at 3. But the beginning clause of that sentence reads: "Merely hiring someone to do some task does not impart authority to speak although speaking authority *may* exist . . ." *Bonds*, 2009 WL 416445, at *4 (emphasis added). Additionally, the government represents that *United States v. Flores*, 679 F.2d 173, 177-78 (9th Cir. 1982), held that there was "no error in admitting, under [Rule] 801(d)(2)(C) or (D), a letter by defendant's attorney which admitted defendant's possession of firearms." Dkt. 929 at 3. But *Flores* did not analyze exceptions to hearsay under Rule 801 at all. Instead, the Ninth Circuit declined to extend the *Simmons* doctrine prohibiting a defendant's testimony in support of a motion to suppress evidence to be thereafter used against him at trial, affirming the admission of an

---

[3] *Accord Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1198-99 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir. 1993) ("[N]ot every statement of a lawyer may be attributed to the client. In fact it is necessary to distinguish between those statements of an attorney made in the management of the litigation or in-court-statements (i.e. judicial admissions by pleadings, oral or written stipulations and formal opening or closing statements), with casual statements of counsel made outside of court. An attorney merely because of his employment in connection with litigation does not have the authority to make out-of-court admissions for his client, except those which are directly related to the management of that litigation." (internal citation omitted)).

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AT DOC. NO. 929

administrative claim letter the defendant's attorney sent alleging that the defendant's rights had been violated by the illegal seizure of his guns and demanding damages. *Flores*, 679 F.3d at 177-78. *Flores* concluded that "[w]hile different facts might produce a different result, under the circumstances here, it was not error to admit the claim letter into evidence at Flores' trial." *Id.* at 178.

Finally, the government quotes *Nekolny v. Painter*, 653 F.2d 1164, 1172 (7th Cir. 1981), for a rationale as to why attorney statements are admissible against clients. Dkt. 929 at 3. But *Nekolny* was a civil suit involving former public employees who alleged that they had been terminated from their positions because of their political affiliations. *Nekolny*, 653 F.2d at 1166. The Seventh Circuit's analysis of whether statements were the admissions of the defendant's agent concerned the relationship between the liaison to the Senior Citizens' Bus Service and the defendant Supervisor of the Township who terminated the plaintiffs. *Id.* at 1166, 1171. In short, *Nekolny* had nothing to do with attorney statements being admitted against clients in a criminal matter.

The admission of attorney statements against clients in criminal cases is subject to a more rigorous analysis than statements of other declarants under Rule 801(d)(2). Here, not only has the government failed to meet the heighted burden needed to admit the statement of an attorney against her client, it has not proven that the lawyers at issue were the lawyers for Defendants (as opposed to lawyers for Backpage or another entity), the scope of the lawyers' authority as to any Defendant actually represented, whether the lawyers were "clearly acting within the scope of their authority" for each Defendant, or whether the lawyers made "unequivocal admissions."

**B.      The Court should exclude statements of William Mersey and David Elms.**

The government moves to be allowed to offer hearsay statements of William Mersey, also known as "Dollar Bill," and David Elms under the co-conspirator hearsay exception in Rule 801(d)(2)(E). Dkt. 929 at 7-10. Offering no specificity about the statements it hopes to introduce, the government asks the Court to admit these unknown statements *without* first finding (a) that a conspiracy existed, (b) that Mersey and Elms, along with all six Defendants, were members of that same conspiracy, or (c) that Mersey and Elms' statements were made in furtherance of the alleged conspiracy. The government is inviting this Court to commit serious error.

1.    **The government has not proven the existence of a conspiracy or each Defendants' participation in the conspiracy.**

"[A]n accused's knowledge of and participation in an alleged conspiracy with the putative co-conspirator are *preliminary* facts that must be established, by a preponderance of the evidence, *before* the co-conspirator's out-of-court statements can be introduced into evidence." *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) (emphasis added).  To establish that the declarant knowingly participated in a conspiracy, "the government cannot rely solely on the alleged co-conspirator statements themselves." *Id.* (citing *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988)); *see also United States v. Tellier*, 83 F.3d 578 (2d Cir. 1996 (finding hearsay statements are "presumptively unreliable" and that "for such statements to be admissible, there must be some independent corroborating evidence of defendant's participation in the conspiracy").  To prove the connection between the accused and the alleged conspiracy, the government must produce "some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between the accused and the conspiracy." *Castaenda*, 16 F.3d at 1507.  The government must prove not only that each Defendant is a member of the conspiracy, but also that each declarant is.  *United States v. Liera*, 585 F.3d 1237, 1245 (9th Cir. 2009) (vacating conviction due to trial judge's error in admitting hearsay statements without the government first proving that declarant was a member of the conspiracy).  Once again, the government makes no effort to meet its burden, saying it will do so at trial.  But that precludes a decision in the government's favor now.

The government alleges that Mersey, Elms, and each of the six Defendants are co-conspirators, but offers no independent evidence demonstrating the existence of a conspiracy.  Dkt. 929 at 7-9.  The best the government offers are two emails reflecting former business relationships—not illegal conspiracies—between Ferrer (not Defendants) and Mersey and Elms. *Id.* at Ex. B & C.  The government presents no evidence that Mersey posted ads for pimps or prostitutes (much less that Defendants were aware he did, if he did).  The government also offers no proof that Elms was engaged in unlawful conduct, that Defendants knew that to be the case, or that Elms conspired each of the Defendants.  Moreover, facially, these materials deal with the lawful, licensed business of escorts.  The government also has not alleged that Mersey or Elms conspired to publish or published any of the fifty charged ads—nor could it, as Backpage terminated its

1   business relationships with both Mersey and Elms well before the earliest charged ad was published.

2   And, critically, this Court has limited the conspiracy against Defendants to those fifty ads charged

3   in the indictment.  *See* Dkt. 946 at 13.[4]  The government cannot create a crime or conspiracy by

4   continually misreading legal escort ads to be illegal prostitution ads, baselessly inserting the word

5   "prostitute" in place of "escort" or "adult," or claiming that "everyone knows" that every person

6   offering lawful massages or escort services actually is a prostitute.

7         Further, the government offers no evidence of any connection between Mersey, Elms, and

8   any of the six Defendants.   In over sixteen discovery productions totaling millions of pages

9   (including, most recently, a 14,000+ page production from the government on April 27, 2020), the

10  government has offered no evidence that any of the Defendants knew or ever communicated with

11  either Mersey or Elms.  The government produced no *Brady*, *Giglio*, or impeachment materials as to

12  either Mersey or Elms.  Rather, the government proffered just two emails, each to Ferrer, from

13  Mersey and Elms.  Dkt. 929 at Ex. B & C.  Without any evidence, the government asserts that

14  Mersey and Elms were engaged in prostitution.  *See* Dkt. 936 at Ex. B ("As for Elms and Dollar Bill

15  is there really a plausible objection that they were engaged in prostitution activities?").[5]  But the

16  government misses the mark.  Even if the government had demonstrated that Mersey or Elms were

17  engaged in prostitution activities, that fact would do nothing to establish that both of them and each

18  of the six Defendants here were engaged in the *same* alleged conspiracy.  *See Silverman*, 861 F.2d at

19  580 (government's "slight" corroborative evidence of existence of conspiracy was insufficient to

20  establish defendant knowingly participated in the alleged conspiracy).  And even if Mersey or Elms

21  were engaged in prostitution, and even if the government had demonstrated that both of them and

---

[4] Dkt. 946 at 13: "Defendants' suggestion that the SI improperly indicts a "boundless conspiracy to facilitate prostitution in general," (Reply at 4), however, mischaracterizes the charges against them. Such a claim is simply untrue. They were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution. (SI ¶ 201.)"

[5] Defendants also will respond to the government's rhetorical question with their own.  If there is no question that Mersey was engaged in the business of publishing prostitution ads on the Internet for pimps and prostitutes, why has the government prosecuted him only for failing to pay his income taxes, rather than for trafficking or violations of the Travel Act?  And if The Erotic Review was a notorious and unlawful prostitution website when Backpage commenced doing business with it 13 years ago, why is it still operating (www.theeroticreview.com) and why has the government not prosecuted Elms?

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AT DOC. NO. 929

each of the Defendants were in the same alleged conspiracy, the government has failed to demonstrate that any of Mersey or Elm's statements were made in furtherance of that conspiracy.

If the government had evidence linking Mersey, Elms, and each of six Defendants to the same conspiracy, it should have produced that evidence in support of its motion to introduce hearsay statements through the co-conspirator exception (and during the past twenty-five months of discovery).  As the government has failed to establish the required foundation to introduce hearsay statements through the co-conspirator exception, the Court should not admit these unidentified statements.  Not only would admission of such statements be extremely prejudicial to Defendants, if the Court admits such statements and the government later fails to lay the required foundation, the only remedies would be a motion to strike or a mistrial.  The Court may admit co-conspirator statements without the required foundation only if it determines "that a motion to strike could cure the defects resulting from insufficient proof of the necessary preliminary facts." *United States v. Perez*, 658 F.2d 654, 659-670 (9th Cir. 1981).  Here, the fiction that such a motion would unring the bell of Mersey's and Elms' statements in the minds of the jurors would threaten the integrity of the entire trial (where the government estimates its case-in-chief will take twelve-weeks).

When the evidence outside of the improperly admitted hearsay statements is weak or non-existent, the admission of such statements is prejudicial to the defendant and warrants reversal.  *See Silverman*, 861 F.2d at 580 (the "district court's error in admitting the [hearsay] statements, . . . was necessarily prejudicial and compels reversal" when the erroneously entered statements were a basis for the jury's conspiracy conclusion); *United States v. Tavares*, 512 F.2d 872, 875 (9th Cir. 1975) (where improperly admitted statements "were the strongest and the only direct evidence against [the defendant]," the admission was not harmless error); *United States v. Orellana-Blanco*, 294 F.3d 1143, 1152 (9th Cir. 2002) (same); *United States v. Felix-Jerez*, 667 F.2d 1297, 1304 (9th Cir. 1982) (same); *United States v. Alonzo*, 991 F.2d 1422, 1427 (8th Cir. 1993) (erroneous admission of hearsay evidence did not pass the "rigorous standard for harmless error" where a "crucial aspect of the prosecution's case was greatly enhanced by its use of the inadmissible [evidence]"); *United States v. Reyes*, 18 F.3d 65, 71-72 (2d Cir. 1994) (when the inadmissible co-conspirator statements "addressed the most important disputed issue in the trial" and there was no opportunity to cross-examine the alleged

declarants, error was not harmless).  The government must meet its burden of establishing the foundation for the unknown statements' admissibility before the jury hears them.

### 2. The government cannot prove that any hearsay statements it seeks to introduce were made "in furtherance" of the conspiracy.

The government must also prove that any hearsay statements it seeks to introduce were made "in furtherance" of that conspiracy. Fed. R. Evid. 801(d)(2)(E); *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979) ("Not all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy.").  The government has not come close to establishing this foundational requirement.  Indeed, the government has not even indicated which hearsay statements of Mersey or Elms it intends to introduce and has denied Defendants' request for clarification.  *See* Dkt. 936 at Ex. B.

As the government cannot prove (a) that a conspiracy existed, (b) that Mersey and Elms were a part of it, (c) that any or all of Defendants were also a part of it, or (d) that any statements of Mersey and Elms were made in furtherance of that conspiracy, the Court should deny the government's motion to admit out-of-court statements by Mersey and Elms.

### 3. Even if the government had met its burden under Rule 801(d)(2)(E), other evidentiary issues remain.

Even if the government had proved that a conspiracy existed, that Mersey, Elms, and all six Defendants were members of the same conspiracy, and that Mersey and Elms' statements were made in furtherance of that conspiracy, there still would be admissibility hurdles.  Neither Mersey nor Elms are on the government's witness list.  Defendants can only speculate how the government believes it can get their statements in.  Presumably, the government intends to have Ferrer, its lead cooperator, take the stand at trial and testify that he was in a conspiracy and that Mersey and Elms were in it with him, as were the Defendants.  The government then presumably, through Ferrer, would seek to admit various statements of Mersey, Elms, and anyone else Ferrer might claim (in his quest for cooperation credit under U.S.S.G. § 5K1.1) was in his alleged conspiracy.  The Court must carefully analyze the substance of any admissible co-conspirator statements to screen for multiple layers of hearsay and to ensure the Defendants' Confrontation Clause rights are not violated.  *See Bogutz*, 2008 WL 11440636, at *1; *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 335

1  (C.D. Cal. 2004) (even when a statement fell within the scope of one party-opponent's agency, it

2  did not make the statement admissible as to other parties); *Eubanks*, 591 F.2d at 519 ("Admissions

3  by individual defendants could not be considered as evidence against the other defendants.").

**C.     Defendants may impeach the government's declarants under Rule 806.**

5       Should the Court admit any out-of-court statements by attorney McDougall, attorney Moon,

6  brand analysis firms, public relation firms, other attorneys, Mersey, or Elms, it must permit

7  Defendants to fully impeach these declarants by cross-examining the witness offering the

8  statements.  Fed. R. Evid. 806 provides that "when a statement described in Rule 801(d)(2)(C), (D),

9  or (E) has been admitted in evidence, the declarant's credibility may be attacked, and then

10  supported, by any evidence that would be admissible for those purposes if the declarant had testified

11  as a witness."  Fed. R. Evid. 806.  This rule "permits attacks on the credibility of the declarant of a

12  hearsay statement as if the declarant had testified."  *United States v. Becerra*, 992 F.2d 960, 965 (9th

13  Cir. 1993).  Moreover, a defendant may introduce out-of-court statements to impeach a declarant

14  once the government has introduced his own out-of-court statements as affirmative evidence.  *See*

15  *United States v. Bernal*, 719 F.2d 1475, 1478 (9th Cir. 1983); *United States v. McCulloch*, 980 F.2d 739

16  (9th Cir. 1992) (unpublished).  Rule 806, then, permits Defendants to attack the credibility of

17  declarants by "any evidence that would be admissible for those purposes if [declarant] had testified

18  as a witness."  Fed. R. Evid. 806.  This includes attacks on their credibility, inconsistency, and bias

19  through testimony of prior convictions, reputation, or prior inconsistent statements.  *See United*

20  *States v. Moody*, 903 F.2d 321, 328-29 (5th Cir. 1990).   It is reversible error to prelude a defense

21  attorney from impeaching the veracity of hearsay declarants.  *Id.* at 329-31.

22       The Court should order the government to produce all statements made by each of its

23  declarants that may be used to impeach them for any reason.  These materials should have been

24  disclosed years ago, as part of the government's discovery obligations.  These statements include,

25  but are not limited to: any and all statements in the government's possession for all the out-of-court

26  declarants; for Mersey and Elms, any statements made during any of their arrests, post-arrest

27  interviews, proffers, plea agreements, 5K debriefs, or any other meeting with government agents or

28  attorneys; and any other *Giglio* statements that may be used to impeach any of these declarants for

credibility, bias, or inconsistency.  The determination of these materials' impeachment value should not be trusted to the government.  Should the government refuse to disclose them to the defense, Defendants request that the Court order all statements disclosed for *in camera* inspection.

### III.   THE EVIDENCE THE GOVERNMENT SEEKS TO INTRODUCE IS UNDULY PREJUDICIAL UNDER RULE 403.

Under Rule 403, even relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Even if any of the statements the government seeks to introduce were non-hearsay under Rule 801(d)(2) as to one or more Defendants, they still present a substantial risk of prejudice that weighs in favor of excluding the evidence.  Given the number of Defendants, the fourteen years the government alleges the charged conspiracy lasted, and the meager and unreliable corroborating evidence, if any, proffered by the government, it would be unduly prejudicial, confusing, and misleading to allow some statements to be offered as truth as to some Defendants, but expect the jury to disregard those same statements as to the remaining Defendants.  *See United States v. Cummings*, 858 F.3d 763, 774-75 (2d Cir. 2017) (even when court was uncertain whether improperly admitted statements only had a "very slight effect" on jury, the prejudicial nature of the statements required reversal).  It will also be a waste of time to continually address all the hearsay side issues at trial.  Accordingly, even if the Court finds that statements are admissible under Rule 801(d)(2), they should be excluded under Rule 403.

### IV.   CONCLUSION.

The government has utterly failed to meet is burden in establishing the basic foundational requirements for the unidentified statements it seeks to admit.  For the foregoing reasons, the Court must deny the government's motion.  Alternatively, to save time at trial and so these issues can be resolved now, the Court should order the government to file a new motion (1) identifying the specific statements it intends to introduce that it believes are subject to an exception to the hearsay rules, (2) supported by admissible evidence establishing the foundational requirements for the hearsay exception to apply, and (3) identifying the witnesses through whom it believes the statements can be introduced, and to produce the requested discovery forthwith.

RESPECTFULLY SUBMITTED this 8th day of May 2020,

                                             BIENERT | KATZMAN PC
                                             *s/ Whitney Z. Bernstein*
                                             Thomas H. Bienert, Jr.
                                             Whitney Z. Bernstein
                                             Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II(C)(3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

                                             LIPSITZ GREEN SCIME CAMBRIA LLP
                                             *s/ Paul J. Cambria, Jr.*
                                             Paul J. Cambria, Jr.
                                             Erin McCampbell Paris
                                             Attorneys for Michael Lacey

                                             FEDER LAW OFFICE PA
                                             *s/ Bruce Feder*
                                             Bruce Feder
                                             Attorneys for Scott Spear

                                             BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW PC
                                             *s/ Ariel A. Neuman*
                                             Gary S. Lincenberg
                                             Ariel A. Neuman
                                             Gopi K. Panchapakesan
                                             Attorneys for John Brunst

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AT DOC. NO. 929

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas