Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin McCampbell (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' MOTION FOR RECUSAL** |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

# Table of Contents

I.      BACKGROUND ............................................................................................ 1

II.    ARGUMENT ............................................................................................... 9

  A.   The legal system depends on both impartiality and the appearance of impartiality. ............... 9

  B.   Recusal is required under 28 U.S.C. §§ 455(b)(4) & (5). ................................... 9

  C.   Recusal is also required under 28 U.S.C. §§ 455(a). ........................................ 12

III.   CONCLUSION ......................................................................................... 16

# Table of Authorities

Page(s)

<u>Cases</u>

*Alexander v. Primerica Holdings, Inc.*,
   10 F.3d 155 (3d Cir. 1993) ................................................................................................. 9

*Blixseth v. Yellowstone Mountain Club, LLC*,
   742 F.3d 1215 (9th Cir. 2014) ......................................................................................12, 15

*Hoke v. Charlotte-Mecklenburg Hosp. Auth., Inc.*,
   550 F. Supp. 1276 (W.D.N.C. 1982) .............................................................................14, 15

*In re Bernard*,
   31 F.3d 842 (9th Cir. 1994)............................................................................................... 1, 4

*In re Cement & Concrete Antitrust Litigation*,
   515 F. Supp. 1076 (D. Ariz. 1981) ...................................................................................... 10

*In re Moody*,
   755 F.3d 891 (11th Cir. 2014) .............................................................................................. 9

*In re Murchison*,
   349 U.S. 133 (1955)............................................................................................................... 9

*Liljeberg v. Health Servs. Acq. Corp.*,
   486 U.S. 847 (1988)........................................................................................................12, 16

*Liteky v. United States*,
   510 U.S. 540 (1994)............................................................................................................. 12

*Melendres v. Arpaio*,
   2009 WL 2132693 (D. Ariz. July 15, 2009) ...................................................................... 14

*Potashnick v. Port City Const. Co.*,
   609 F.2d 1101 (5th Cir. 1980) ....................................................................... 9, 10, 12, 13

*Public Utilities Commission v. Pollak*,
   343 U.S. 451 (1952)............................................................................................................. 10

*SCA Services, Inc. v. Morgan*,
   557 F.2d 110 (7th Cir. 1977).......................................................................................... passim

*United States v. Conforte*,
   624 F.2d 869 (9th Cir. 1980)............................................................................................... 12

*United States v. Damron,*
    1998 WL 1780621 (D.N.D. Aug. 24, 1998) .................................................. 15

*United States v. Holland,*
    519 F.3d 909 (9th Cir. 2008) ......................................................................... 9, 12

*Williams v. Pennsylvania,*
    579 U.S. _____, 136 S. Ct. 1899 (2016) ............................................................ 9

<u>Statutes</u>

28 U.S.C. § 455 ...................................................................................... 8, 9, 10, 12

28 U.S.C. § 455(a) .......................................................................................... passim

28 U.S.C. § 455(b)(4) ...................................................................................1, 9, 10

28 U.S.C. § 455(b)(5)(iii) .............................................................................1, 9, 10

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

## I. BACKGROUND

Defendants were indicted on March 28, 2018, because of their connection with the website Backpage.com. This case originally was assigned to District Judge Steven P. Logan. On March 1, 2019, Judge Logan recused himself, without explanation. The case was reassigned to District Judge Douglas L. Rayes, who also recused himself, apparently because of his friendship with counsel on both sides. The case then was assigned to District Judge Susan M. Brnovich ("Judge Brnovich") on March 4, 2019.

The defense has recently discovered that Arizona Attorney General Mark Brnovich ("AG Brnovich")—Judge Brnovich's husband—others acting in his name and on his behalf, and organizations with which he is associated have made numerous public statements that 1) reflect a strong bias against Backpage.com and, therefore, Defendants, 2) invite Arizona's citizens and potential venire members to visit various websites that contain inflammatory and highly prejudicial statements about both Backpage.com and Defendants, 3) vouch for the credibility of many of the government's trial witnesses and the prosecutors in this case (whether directly or indirectly by touting the organizations with which they are or were associated), and 4) suggest that facts the government says will be at issue in the trial already are established (or that AG Brnovich believes they are). Therefore, Defendants move Judge Brnovich to recuse herself from this matter on the grounds that a) her spouse has interests that could be substantially affected by the outcome of this proceeding, which requires recusal under 28 U.S.C. §§ 455(b)(4) and 455(b)(5)(iii), and b) her spouse's interests, and public statements and actions, create an appearance of partiality, requiring recusal under 28 U.S.C. § 455(a).[1]

Specifically, on or about September 10, 2020, a member of the defense team discovered that AG Brnovich had published a booklet entitled: *Human Trafficking: Arizona's Not Buying It* ("the

---

[1] *See In re Bernard*, 31 F.3d 842, 847 (9th Cir. 1994) ("Counsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court. Judges are not omniscient and, despite all safeguards, may overlook a conflict of interest. A lawyer who reasonably believes that the judge before whom he is appearing should not sit must raise the issue so it may be confronted and put to rest. Any other course would risk undermining public confidence in our judicial system.").

booklet" or "AG Brnovich's Publication").  *See* Exh. 1.[2]  AG Brnovich's Publication is emblazoned with his name on the cover and starts with a "Letter from Mark," accompanied by a large photograph of AG Brnovich.  The "Letter from Mark" says that human trafficking is one of "the most dangerous and growing threats to children in Arizona."  *Id.* at 2.  The booklet purports to be a primer on human trafficking and claims that websites and social media are a primary means for human trafficking.  In targeting online publishers as a culprit, the booklet asserts that "75% of underage sex trafficking victims said they had been advertised or sold online."  *Id.* at 25.  AG Brnovich's booklet singles out Backpage.com, decrying it as "an online classified advertising site used frequently to purchase sex," claiming "over 300 ads are placed each day in Phoenix on Backpage.com for adult services—with an estimated 20% for girls under 18."  *Id.* at 22.  AG Brnovich repeatedly supports the booklet's claims about trafficking, Backpage.com, and other websites with citations to the United States Department of Justice or to organizations whose current or former leadership are listed as government witnesses in this case.[3]  *Id.* at 6, 8, 14, 20, 24, 34, and 46.  The booklet also directs readers to the websites of numerous advocacy groups, many of which are associated with the government's trial witnesses in this case, on which readers will find inflammatory and highly prejudicial comments about Backpage.com and some of Defendants.[4,5]  *Id.* at 46.  (Links to those websites appear not only in the booklet, but also in numerous places on AG Brnovich's website, in his social media posts, and in

---

[2]  Also available at https://www.azag.gov/sites/default/files/publications/2018-06/Human_Trafficking_Not_Buying_It.pdf.

[3]  Those organizations and the associated witnesses include the ASU Office of Sex Trafficking Intervention Research ("STIR") (Dominique E. Roe-Sepowitz), the Phoenix Police Department Vice Unit (Christina Decouflé), the Polaris Project (Bradley Myles), Shared Hope International (Ernie Allen), and the National Center for Missing and Exploited Children ("NCMEC") (Ernie Allen, John Shehan, Staca Shehan, Sharon W. Cooper, and James E. Hardie).

[4]  Those organizations include Trust Arizona, Shared Hope International, the Polaris Project, and NCMEC.

[5]  As addressed at some length in the government's and Defendants' motions *in limine*, the parties have very different views about what would be proper testimony and evidence at trial.  Even if Defendants broadly prevail on their motions *in limine*, however, AG Brnovich's website, webinars, booklet, "tweets" on Twitter, and other public statements, as well as many of the statements on the websites to which he refers readers of his website, booklet, and "tweets," and participants in his webinars, rigidly hew with the government's claims and positions and will be hotly contested at trial.

webinars bearing his name.) AG Brnovich appears to have updated and republished the booklet in December 2019 [Exh. 2] and also appears to have published a Spanish version of the booklet in June 2020 [Exh. 3].[6]

After discovering AG Brnovich's Published Statement, the defense conducted further research into other public statements and activities by AG Brnovich and learned the following:

On August 19, 2020, AG Brnovich issued a "tweet" on Twitter about a "human trafficking prevention" webinar the next day. AG Brnovich's website currently hosts a webinar presented by "Office of the Arizona Attorney General Mark Brnovich" entitled "Human Trafficking for Parents," which appears to be that webinar.[7] Among other things, the webinar: says there were "so many websites that are dedicated to posting advertisements for sex with underage children" [at 6:25]; says "Backpage.com . . . [was] where the vast majority of all advertisements were posted for sex trafficking and sexual exploitation" [at 34:42]; identifies organizations associated with two of the government's witnesses (STIR and the Polaris Project) as "the two very trustworthy sources that we always want to use" [at 5:03]; and tells viewers they can obtain more information on human trafficking from four organizations whose websites include inflammatory and highly prejudicial material about Backpage.com and Defendants (Trust Arizona, Shared Hope International, the Polaris Project, and NCMEC). At least seven of the government's witnesses are associated with those organizations.[8]

---

[6] The updated English and the Spanish versions of the booklet are available at https://www.azag.gov/sites/default/files/publications/2019-12/Human-Trafficking-Parents-Teens_v5.pdf and https://www.azag.gov/sites/default/files/publications/2020-06/AZAG-Spanish_Booklet_Human_Trafficking.pdf.

[7] The "tweet" is attached as Exhibit 4 and also is available at: https://twitter.com/AZAG_Outreach/status/1296105375607844864. The webinar can be accessed at https://www.azag.gov/outreach/webinars.

[8] For ease of reference, the opening slide of the webinar and slide referencing the four "resource" organizations are attached as Exhibit 5. AG Brnovich also touted three of these organizations (Trust Arizona, Shared Hope International, and the Polaris Project) in an August 6, 2020, webinar entitled "Human Trafficking for Teens" that was "Presented By: Office of the Attorney General, Mark Brnovich." The webinar can be accessed at https://www.azag.gov/outreach/webinars. AG Brnovich issued a "tweet" on Twitter for this second webinar on August 5, 2020. Exh. 6 and also available at https://twitter.com/AZAG_Outreach/status/1291029819572944896. For ease of reference, the opening slide of this second webinar and the slide referencing the three "resource"

In an August 16, 2017, press release, AG Brnovich characterized Backpage.com as a website that "actively profit[s] from the promotion and facilitation of sex trafficking and crimes against children." Exh. 8.[9] AG Brnovich's press release also promoted a letter that he sent to Congress, asking Congress to change federal law so he could prosecute Backpage. The press release said:

> Attorney General Mark Brnovich . . . urg[ed] Congress to amend a federal sex trafficking law to ensure all law enforcement agencies can continue to fight online sex trafficking. . . . Some federal courts have interpreted the CDA to render state and local authorities unable to take action against companies that actively profit from the promotion and facilitation of sex trafficking and crimes against children. . . . [T]he CDA . . . was never intended to place facilitators of child sex trafficking outside the reach of law enforcement. However, . . . [it] is being used as a shield by those who profit from prostitution and crimes against children . . . such as Backpage.com.

*Id.* AG Brnovich's August 16, 2017, letter to Congress made similar claims:

> The recent news highlighting the potential complicity of online classified-ad company Backpage.com in soliciting sex traffickers' ads for its website once again underscores the need to expand, not limit, the ability of all law-enforcement agencies to fight sex trafficking. . . . [S]tate and local law enforcement agencies have been left powerless to act against online classified ad services, such as Backpage.com, which have constructed their business models around advertising income gained from participants in the sex trade. . . . Clearly, . . . Backpage.com is facilitating—and profiting from—these illegal activities. . . . It is both ironic and tragic that the CDA, which was intended to protect children from indecent material on the internet, is now used as a shield by those who profit from prostitution and crimes against children.

Exh. 9.[10] AG Brnovich promoted his press release and letter via Twitter. Exh. 10.[11]

AG Brnovich also has issued multiple "tweets" on Twitter about the Arizona Anti-Trafficking Network ("AATN"), AATN's program known as "Trust Arizona, "TRUSTAZ," or "TRUST," and AATN's initiative known as "SAFE Action Plan." *See* Exh. 11.[12] On TRUST's Facebook page,

---

organizations are attached as Exhibit 7.

[9] Also available at https://www.azag.gov/press-release/attorneys-general-ask-congress-amend-sex-trafficking-law.

[10] Also available at https://www.azag.gov/sites/default/files/docs/press-releases/2017/letters/CDA_Final_Letter.pdf.

[11] Also available at https://twitter.com/GeneralBrnovich/status/897870570682859520.

[12] Also available at https://twitter.com/GeneralBrnovich/status/839955194565677056; https://twitter.com/GeneralBrnovich/status/1217485170011279360; https://twitter.com/GeneralBrnovich/status/1156294051215187968; https://twitter.com/GeneralBrnovich/status/1205204574883024896.

TRUST says "AATN/TRUST are thrilled to partner" with AG Brnovich's office. *See* Exh. 12.[13] AG Brnovich is featured in several videos on TRUST's Facebook page. In the video linked in footnote 13 (at 5:04), AG Brnovich says one of his and Judge Brnovich's daughters may have been approached by a recruiter for a sex trafficker while in a grocery store in Las Vegas and cautions that sex trafficking is "something that we as parents need to be cognizant of." On his website, AG Brnovich says that the "Arizona Attorney General's Office is a *proud partner* of the Arizona Anti-Trafficking Network." *See* Exh. 13 (emphasis added).[14] On that same web page, AG Brnovich directs readers to TRUST's website, which contains inflammatory and highly prejudicial comments and material about Backpage.com and four of the Defendants.

The website of AG Brnovich's "partner," TRUST, states as true misleading and highly contested allegations at issue in this trial: "Backpage.com was likely the largest internet source for advertising underage sex trafficking in Arizona. While the list of internet sources where sex can be advertised and purchased is ever-changing, nearly 80 percent of the ads that were posted as 'adult services' on Backpage.com were actually for the sale of sex." Exh. 14.[15] AG Brnovich's "partner," TRUST, goes on to discuss this case and related forfeiture proceedings on its website:

> The infamous story of Backpage.com's exploitation and trafficking of women and children is fairly well known at this point. **What is little known, however, is the raging battle being waged in the courts to prevent Backpage's erstwhile former owners from absconding with millions of dollars in illegal profits made from their now-shuttered sex business. The former owners have been caught red-handed attempting to steal away their ill-gotten profits to prevent the victims from ever recovering a penny's worth of compensation**. . . . It's well known that, before its downfall in 2018, Backpage sold ads advertising people for sex in over 400 cities in the United States and approximately 900 cities worldwide. Many of the individuals featured in the ads were victims of sexual abuse and sex trafficking, while some were just young children and teens. These ads earned Backpage's then-owners **James Larkin** and **Michael Lacey** and **their top lieutenants** an average of over $9 million in profits every month. After the release of a pair of explosive Senate investigative reports in 2016 and 2017 on Backpages' sex trafficking practices, and on the heels of a major court loss at the Supreme Court of Washington, Backpage's owners began moving their profits off-shore and purported to sell the company to a foreign buyer. All of these efforts were transparent attempts at concealing and indeed laundering the profits from their criminal enterprise to frustrate the claims of the victims. **The federal government is now properly attempting to secure the**

---

[13] Also available at https://www.facebook.com/270004956516789/videos/667563003427647.

[14] Also available at https://www.azag.gov/outreach/human-trafficking-exploitation.

[15] Also available at https://trustaz.org/human-trafficking-information/human-trafficking-101/.

**money earned from this illegal operation through federal forfeiture laws.** Backpage and its swarm of attorneys are resisting this effort claiming, incredibly, that the protection of the First Amendment shields them from the consequences of their illegal behavior. One can only imagine how the nation's founders would view this twisted interpretation of the Free Speech Clause where the First Amendment is turned on its head to license the rape, sexual abuse, and victimization of countless women and children. To date the casualties of this abuse have received zero compensation in damages and the courts must not allow Backpage to victimize them a second time. . . . **The name of the case is United States v. James Larkin, John Brunst, Michael Lacey, and Scott Spear**.

Exh. 15 (emphasis added).[16] TRUST's statement is grossly inaccurate, inflammatory, and highly prejudicial.

TRUST's website also contains a document called "Shocking Facts," Exh. 16,[17] which appears to be the source of numerous statements in AG Brnovich's booklet:

| TRUST "Shocking Facts" | AG Brnovich's Publication |
|---|---|
| "78,000 MEN in Phoenix are online sex ad customers" | "78,000 men in Phoenix are online sex ad customers" (Ex. 1 at 22) |
| "300+ ads are placed each day in Phoenix on Backpage.com for adult services – with an estimated 20% for girls under 18" | "Over 300 ads are placed each day in Phoenix on Backpage.com for adult services – with an estimated 20% for girls under 18" (*Id.*) |
| "The average age a teen enters the sex trade in Arizona is 14 YEARS OLD Law enforcement has seen girls as young as 9 sold for sex" | "The average age of entry into the sex trade in Arizona is 14 years old. Law enforcement has seen girls as young as 9 sold for sex" (*Id.* at 16) |
| "Backpage.com is listed as a privately held Arizona corporation, with headquarters in Phoenix" | "Backpage.com . . . is listed as a privately held Arizona corporation, with headquarters in Phoenix" (*Id.* at 22) |

AG Brnovich's verbatim (or near-verbatim) adoption of numerous statements from TRUST's website conveys that he has confidence in the accuracy of the information on TRUST's website—an impression that would extend to TRUST's false and scurrilous statements claiming four of Defendants were "caught red-handed attempting to steal away their ill-gotten profits to prevent the victims from ever recovering a penny's worth of compensation."

---

[16] Also available at https://trustaz.org/news/ncose-joins-brief-to-prevent-backpage-owners-from-hiding-assets-to-avoid-payment-of-damages-to-sex-trafficking-victims/.

[17] Also available at https://www.trustaz.org/downloads/aw-trust-shocking-facts.pdf.

In addition to promoting TRUST, and its parent AATN, AG Brnovich's website, AG Brnovich's booklet, and AG Brnovich's webinars also promote an organization called Shared Hope International. Exh. 13, fn. 14; Exh. 1 at 46, fn. 2; Exhs. 5 & 7. At least one of the government's trial witnesses (Ernie Allen) is associated with Shared Hope. The Shared Hope website is replete with derogatory and prejudicial pages attacking Backpage.com. For example, on a web page titled "Internet Safety Amidst the COVID-19 Outbreak," Shared Hope says that "[t]echnology, including social media and classified websites like Backpage.com, are widely viewed as responsible for the explosion of sex trafficking in the United States. Our own research backs this up." *See* Exh. 17.[18] This derogatory reference to Backpage.com amidst the COVID-19 outbreak is especially gratuitous as the website was seized and shuttered over two years before the COVID-19 pandemic commenced. Moreover, since 2014, Shared Hope has put on an annual sex trafficking conference (the "JuST Conference"). AATN has been a major sponsor of the JuST Conference. Backpage has been a major target of the JuST Conference, which has regularly featured as presenters one of the lead prosecutors on this case (DOJ Trial Attorney Reginald Jones) (as well as other representatives of the Department of Justice), law enforcement officers the government says it will call as witnesses in this case (including Christina Decouflé, Carrie Landau, and Jonathan Williamson), other fact witnesses the government says it will call in this case, and plaintiffs' lawyers who have brought civil claims against Defendants. *See*, *e.g.*, Exh. 18.[19] AG Brnovich not only regularly touts both Shared Hope and AATN/TRUST, but he personally appeared at Shared Hope's JuST First Response Conference in June 2016 (and issued a "tweet" about doing so on Twitter). Exh. 19.[20]

AG Brnovich's website, AG Brnovich's booklet, and AG Brnovich's webinars also promote an organization called the Polaris Project. Exh. 13, fn. 14; Exh. 1 at 46, fn. 2; Exhs. 5 & 7. One of the government's trial witnesses (Bradley Myles) was the long-time CEO of Polaris. On the day of

---

[18] Also available at https://SharedHope.org/what-we-do/prevent/awareness/internetsafety/.

[19] Also available at https://www.justconference.org/wp-content/uploads/2019/10/JuST-Conference-Program-2019_abbreviated2.pdf and http://www.justconference.org/wp-content/uploads/2017/01/2015NOLA.pdf.

[20] Also available at https://twitter.com/GeneralBrnovich/status/747609719896834049.

Defendants' arrest, Myles posted the following on Polaris' website: "The seizure of Backpage.com and its affiliated websites is a major victory and milestone in the fight against sex trafficking. Shutting down the largest online U.S. marketplace for sex trafficking will dramatically reduce the profitability of forcing people into the commercial sex trade." Exh. 20.[21]

The foregoing are just a sample of AG Brnovich's statements about human trafficking and Backpage.com, and literally a drop in the bucket with respect to the statements of AG Brnovich's "partners" and others with whom he has aligned himself. As discussed below, the Court must consider its obligations under 28 U.S.C. § 455 in the context not just of this information that Defendants have found in the last two weeks, but in the context of all information that exists.

Defendants are entitled to a case presided over by a judge whose impartiality cannot be reasonably questioned. Where the spouse of the presiding judge is the state's top, elected law enforcement officer and he makes public statements and takes public positions that bear directly on the issues and defendants in a criminal case pending before the judge—particularly statements that can readily be construed as him personally expressing his opinion that the Defendants are guilty— the spouse's statements and positions necessarily create an appearance that the judge cannot be impartial. The same is true where the elected official spouse publicly touts and aligns himself with others who claim that Defendants are guilty or otherwise make highly prejudicial statements about Backpage.com or Defendants. And where the elected official spouse publicly touts and vouches for the credibility of key witnesses for the government and the prosecutors, whether directly or indirectly.

Moreover, as an *elected* official who has made human trafficking a key part of his political agenda, while also making public statements and taking public positions that bear directly on this pending criminal case, including about the entity at the center of this case (Backpage.com), and the particular Defendants and trial witnesses in this case, AG Brnovich has an interest that could be substantially affected by the outcome of the proceeding—which mandates recusal even in the absence of either partiality or the appearance of partiality.

---

[21]  Also available at  https://polarisproject.org/press-releases/polaris-statement-on-backpage/.

## II. ARGUMENT

### A. The legal system depends on both impartiality and the appearance of impartiality.

The Supreme Court has stated that our system of law "*must satisfy the appearance of justice.*" *In re Murchison*, 349 U.S. 133, 136 (1955) (emphasis added). "An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself." *Williams v. Pennsylvania*, 579 U.S. ____, 136 S. Ct. 1899, 1909 (2016). *See also Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 167 (3d Cir. 1993) ("impartiality and the appearance of impartiality in a judicial officer are the *sine quo non* of the American legal system" (quotation marks and citation omitted)).

Section 455 "requires a judge to exercise [her] discretion in favor of disqualification if [she] has any question about the propriety of [her] sitting in a particular case." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1112 (5th Cir. 1980). Section 455 "eliminate[d] the so-called 'duty to sit.'" *Id.*; *accord SCA Services, Inc. v. Morgan*, 557 F.2d 110, 113 (7th Cir. 1977). The language in Section 455 "clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify [herself] in a questionable case" and "any inconvenience which does arise [from disqualification] is more than outweighed by the need to protect the dignity and integrity of the judicial process." *Id.* "[A]ny doubts must be resolved in favor of recusal." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014); *accord United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) ("[i]f it is a close case, the balance tips in favor of recusal"). "Any question of a judge's partiality threatens the purity of the judicial process and its institutions." *Potashnick*, 609 F.2d at 1111.

### B. Recusal is required under 28 U.S.C. §§ 455(b)(4) & (5).

A judge must recuse herself if her "spouse . . . has a financial interest in the subject matter in controversy . . . or any other interest that could be substantially affected by the outcome of the proceeding," or if her "spouse . . . [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. §§ 455(b)(4) and 455(b)(5)(iii).

Sections 455(b)(4) and 455(b)(5)(iii) provide for "the mandatory disqualification of a judge" in the specified circumstances. *SCA Services*, 557 F.2d at 113. Although the most common interests requiring disqualification are financial interests,[22] Sections 455(b)(4) and 455(b)(5)(iii) also apply to non-economic interests. *Potashnick*, 609 F.2d at 1113; *SCA Services*, 557 F.2d at 115-16.

In *SCA Services*, the Seventh Circuit held that "the language of the amended [Section 455], in contrast to its predecessor, does not require that the interest be financial" and noted that "the Congressional drafters recognized that non-economic interests may affect a judge's bias or prejudice." *Id.* at 115-16. As a "classic example" of a non-economic interest requiring recusal, the Seventh Circuit pointed to *Public Utilities Commission v. Pollak*, 343 U.S. 451, 466-68 (1952), in which Justice Frankfurter voluntarily recused himself from a case involving the constitutionality of playing radio broadcasts through speakers on streetcars and buses because of his personal disdain for being forced to listen to such broadcasts. *Id.* at 116. In explaining his reasoning for recusing himself, Justice Frankfurter said: "When there is ground for believing that such unconscious feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves." *Pollak*, 343 U.S. at 466-67. In *SCA Services*, the Court disqualified the district judge under Section 455(b)(5)(iii) because of an appearance of partiality, based, in part, on the non-economic interests ("reputation and goodwill") of the judge's brother, who was a partner in a law firm representing one of the parties in the case. *SCA Services*, 557 F.2d at 115-116.

Similarly, in *Potashnick*, the Fifth Circuit held that the "language of section 455(b)(5)(iii) referring to 'an interest' does not require that the interest of the judge's lawyer-relative be financial," noting that "the congressional drafters recognized that noneconomic interests may affect a judge's bias or prejudice." *Potashnick*, 609 F.2d at 1113. In *Potashnick*, the district judge's eighty-year-old "father was [the] senior partner in the law firm representing the plaintiff," but had "limited

---

[22] *See, e.g., In re Cement & Concrete Antitrust Litigation*, 515 F. Supp. 1076, 1078 (D. Ariz. 1981), *mandamus denied*, 688 F.2d 1297 (9th Cir. 1982), *aff'd*, 459 U.S. 1190 (1983) (28 U.S.C. § 455(b)(4) mandated Chief Judge Muecke's recusal because of his wife's *de minimis* financial interest in the case (between $4.23 and $29.70), even though the judge did not "feel a sense of conflict" or "feel that to continue would create the appearance of impropriety").

participation in the affairs of the firm." Although the Court found that the district judge's father's "financial interest was not actually affected by the outcome of the case," it nonetheless held that the judge's father's non-economic interests in his firm—including "his firm's reputation, its relationship with its clients, and its ability to attract new clients"—independently required disqualification. The Court held that "the statute requires automatic disqualification when the judge in a proceeding knows of his relative's interest, and the outcome of the proceeding may potentially affect that interest." *Id.* at 1114. It therefore reversed the judgment that was entered after trial and remanded the case for reassignment and retrial. *Id.* at 1120.

AG Brnovich unquestionably has an "interest" both in the outcome of this case and in the broader issues which it implicates. He has publicly claimed that Backpage.com facilitated illegal prostitution—the issue at the core of this case. He also has publicly claimed Backpage.com facilitated sex trafficking and called on Congress to change federal law so he himself would not be barred from prosecuting Backpage.com and/or Defendants. He has publicly aligned himself with others who have publicly made similar claims. He has directly and indirectly vouched for many of the government's trial witnesses (and even one of the prosecutors). He has repeatedly directed the public to websites that excoriate Backpage.com and/or Defendants and declare them to be criminals. He also has made sex trafficking and child sex trafficking a key agenda item in both his political campaigns and in his tenure as Attorney General.[23] AG Brnovich may not be directly involved in the prosecution

---

[23] AG Brnovich commenced his first term in office with a press conference on sex trafficking and child sex trafficking and, through his tenure, has regularly promoted his anti-trafficking agenda. *See, e.g.*, Exh. 21; also available at https://www.azag.gov/press-release/attorney-general-mark-brnovich-joins-cindy-mccain-fight-against-sex-trafficking and https://www.azag.gov/press-release/attorney-generals-office-provides-nearly-300000-grants-help-survivors-human. Although the charges in this case relate to facilitating prostitution, not sex trafficking or child sex trafficking, the government plainly intends to try to make this case about sex trafficking and child sex trafficking, as is the subject of outstanding motions *in limine*. AG Brnovich issued a "tweet" on Twitter directing readers to a news article containing inflammatory information about sex trafficking, which also highlighted one of the government's witnesses, Dominique E. Roe-Sepowitz, who expressed her opinion that all, or almost all, prostitution is, in fact, sex trafficking. AG Brnovich also was quoted in the article. The "tweet" and the article are attached as Exhibits 22 & 23 and also are available at https://twitter.com/Mark4AZ/status/556848689747341312 and https://www.azcentral.com/story/life/az-narratives/2015/01/17/what-sex-trafficking-really-

of this case, but he plainly has interests in it and its outcome. He has staked his own "reputation and goodwill" (*SCA Services*, 557 F.2d at 115-16) on this prosecution, the veracity of the government's claims, and the truthfulness of the government's trial witnesses. Because AG Brnovich has an "interest, and the outcome of the proceeding may potentially affect that interest," recusal is mandatory, even if the Court concludes it is (and can be) impartial and that AG Brnovich's interests do not create an appearance of partiality. *Potashnick*, 609 F.2d at 1113; *accord SCA Services*, 557 F.2d at 115-16.

### C.    Recusal is also required under 28 U.S.C. §§ 455(a).

A judge is required to recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard under Section 455 is objective: whether "a reasonable person *with knowledge of the facts* would conclude that the judge's impartiality might reasonably be questioned." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) (emphasis added); *accord Potashnick*, 609 F.2d at 1111 ("disqualification should follow if the reasonable man, were he to know *all* the circumstances, would harbor doubts about the judge's impartiality" (emphasis added)). Section 455(a) does not require "the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994); *see also Holland*, 519 F.3d at 913 (citing *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 864-65 (1988)). "Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how [her] participation in a given case looks to the average person on the street." *Potashnick*, 609 F.2d at 1111.

Although this objective standard may result in disqualification where a judge is not actually biased, "the appearance of partiality is as dangerous as the fact of it." *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980) (citations omitted). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865. "The general standard of section 455(a) was designed to promote the public's confidence in the impartiality and integrity of the judicial process by saying, in effect, that if any reasonable factual

means/21939797/.

basis for doubting the judge's impartiality exists, the judge 'shall' disqualify [herself] and let another judge preside." *Potashnick*, 609 F.2d at 1111 (holding that district "judge's business dealings with [with a lawyer in the case] constituted a ground for disqualification under section 455(a)"). As noted in *SCA Services*, 557 F.2d at 116, a case involving a judge and his brother:

> This appearance of partiality begins with the natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests. When one brother is a lawyer in the firm representing a party before his brother who is the judge in the case, the belief may arise in the public's mind that the brother's firm and its clients will receive favored treatment, even if the brother does not personally appear in the case.

So too here—and perhaps even more so given that the relationship is not adult siblings, but longtime husband and wife. AG Brnovich will not personally appear in this case (unless as a witness), but he has publicly declared that Backpage.com facilitated illegal prostitution—the core of the government's case. He has closely associated himself with others who also have very publicly branded Backpage.com and Defendants as criminals and as untrustworthy. At the same time he has publicly touted the government's witnesses—saying organizations they are affiliated with are "very trustworthy"—while the defense has and will argue these same witnesses should not be permitted to testify, or that their testimony should be limited, because, among other things, their testimony would be biased, unreliable, and/or include improper opinions.[24] Moreover, although this will be a jury trial, Judge Brnovich must rule on outstanding motions *in limine* and likely will be required to rule on a motion for acquittal arguing that Defendants did not facilitate prostitution (as her spouse and those associated with him claim they did), on motions to exclude or limit testimony on the grounds that the government's witnesses are not trustworthy (as her spouse claims they are), etc. Finally, in the event of convictions, Judge Brnovich will be called upon to make decisions regarding restitution of money that AG Brnovich's "partner" claims Defendants were "caught red-handed attempting to steal away . . . to prevent the victims from every recovering a penny's worth of compensation." Exh. 15. In today's "you are either for us or against us" environment, the "average person on the street" will assume that Judge Brnovich's "close personal and family relationship" with AG Brnovich means she

---

[24] *See, e.g.*, pending motions *in limine* at Dkts. 907, 908, 921, 927, 928.

"would be inclined to support [his] interests." *SCA Services*, 557 F.2d at 116.

In *Melendres v. Arpaio*, 2009 WL 2132693, at *1-16 (D. Ariz. July 15, 2009), District Judge Mary H. Murguia recused herself under § 455(a), even though the motion could have been denied "on timeliness grounds alone," where articles disparaging the defendants in the case were published on a website launched by the National Council of La Raza, whose President and CEO at the time was the judge's twin sister, Janet Murguia. The case was "high profile" and "one that [was] not likely to be free from controversy, regardless of who [was] presiding over it" since the "controversial and sensitive" issue of whether Defendants Sheriff Joseph Arpaio, Maricopa County, and the Maricopa County Sheriff's Office ("MCSO") racially profiled and unlawfully detained persons of Hispanic appearance and/or descent "elicits strong feelings" and "allegations of violations of Constitutional rights often arouse strong public passions." *Id.* at *12. The judge observed that the articles published in the website "refer[red] to Sheriff Arpaio as a 'relentlessly self-promoting caricature,' who has 'less than stellar respect for civil rights and due process,'" refer[red] to MCSO deputies as "thugs," and characterized the department "as a 'lawsuit-riddled folly' of an agency, among other things." *Id.* at *15. Judge Murguia noted that such comments "cannot be taken lightly" in "the context of a motion for recusal, when comments like these originate from a website that is associated with the Court's sister or the organization that she leads." *Id.* The judge also noted that the articles spoke directly to the MCSO's decision to enforce federal immigration laws and alleged violations of the constitutional rights of Latino persons in Maricopa County, the "exact questions" that the "instant litigation set out to determine." *Id.* Judge Murguia believed that whether "a reasonable person apprised of all relevant facts would question [the Court's] impartiality based on circumstances . . . [was] a close call," but, "because at the district court level all doubts should be resolved in favor of recusal when the issue is close," she granted the recusal motion under Section 455(a). *See id.* ("No Court should tolerate even the slightest chance that its continued participation in a high profile lawsuit could taint the public's perception of the fairness of the outcome. Certainly, this Court is unwilling to take such a risk.").

In *Hoke v. Charlotte-Mecklenburg Hosp. Auth., Inc.*, 550 F. Supp. 1276, 1277 (W.D.N.C. 1982), the district judge presided over the liability portion of the case in May 1979 and "[t]hree and one-half years later, on November 8, 1982, the case finally reached trial on question of damages." Following

the final pretrial conference in November 1982, the defendants filed a motion for recusal under Section 455(a) on the grounds that the judge's son had temporarily represented the plaintiff in an unrelated breach of contract action resulting in a consent judgment in February 1980. *Id.* The district judge granted the motion to recuse, even though he had "completely forgotten" about the unrelated litigation, the separate litigation "appeared to [the judge] of no more significance than a number of other irrelevant facts," "[n]o impropriety or partiality [was] shown," "[n]o conflict of interest on the part of this court or any counsel [was] suggested," and "[n]o violation of any statute, canon of ethics or court decision [was] shown." *Id.* The judge reasoned that "judges are not a privileged order; they have no shelter but their innocence," the "integrity of the court as a public institution, as seen even through the anxious eyes of litigants, is far more important than any opinion of [the judge's]," and the plaintiff "should have no objection to a court's leaning over backwards to avoid the possible appearance of unfairness to others, and to be sure that there is no lack of perceived impartiality in this forum." *Id.* at 1278; *see also United States v. Damron*, 1998 WL 1780621, at *1 (D.N.D. Aug. 24, 1998) (judge granted defendant's motion for recusal pursuant to § 455(a), finding that "recusal is appropriate for the sake of the appearance of propriety" even though the defendant was unable to point to any actual conflict if the judge, whose attorney son was involved in the "defense of an appeal by defendant of the State of North Dakota's prosecution" of a separate crime, continued to preside over the case).

Here, AG Brnovich's public statements, public positions, and public associations plainly create a situation where the Court's "impartiality might reasonably be questioned." *Blixseth*, 742 F.3d at 1219. Recusal is not warranted simply because the Court's spouse is the Attorney General, or even because the Court's spouse has made statements about the misuse of the internet, but because he has inserted himself into the mix in this case through his public statements, public positions, and public associations concerning Backpage.com and the Defendants, trial witnesses, and issues in *this* case. Indeed, he has proclaimed that Backpage.com facilitated illegal prostitution and publicly aligned himself with others (including trial witnesses in this very case) making such claims (and worse), has asserted that various claims the government is making in this case are true, has directly or indirectly vouched for many of the witnesses the government intends to call in this case (and one of the

prosecutors), and regularly refers constituents to websites containing inflammatory and highly prejudicial statements about both Backpage.com and Defendants. In short, he not only has made clear his views about the guilt of Defendants, but he also plainly is an advocate for Defendants' adversaries. To avoid "even the appearance of impropriety," *Liljeberg*, 486 U.S. at 865, the Court should recuse itself and let another judge preside.

## III.    CONCLUSION

Judge Brnovich should recuse herself from this case, with directions that the case be randomly assigned.

Respectfully submitted,

DATED:  September 23, 2020

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT | KATZMAN PC

By:    *s/ Thomas H. Bienert, Jr.*

Thomas H. Bienert, Jr.
Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (August 2020) § II(C)(3), Thomas H. Bienert, Jr. hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

DATED:  September 23,  2020

Paul J. Cambria, Jr.
Erin McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP

By:    *s/ Paul J. Cambria, Jr.* (with permission)

Paul J. Cambria, Jr.
Attorneys for Michael Lacey

DEFENDANTS' MOTION FOR RECUSAL

| | |
|---|---|
| DATED: September 23, 2020 | Gary S. Lincenberg |
| | Ariel A. Neuman |
| | Gopi K. Panchapakesan |
| | BIRD, MARELLA, BOXER, WOLPERT, NESSIM, |
| | DROOKS, LINCENBERG & RHOW, P.C. |

By: _s/ Gary S. Lincenberg_ (with permission)

Gary S. Lincenberg
Attorneys for John Brunst

DATED: September 23, 2020    Bruce Feder
FEDER LAW OFFICE, P.A.

By: _s/ Bruce Feder_ (with permission)

Bruce Feder
Attorneys for Scott Spear

DATED: September 23, 2020    David Eisenberg
DAVID EISENBERG, P.L.C.

By: _s/ David Eisenberg_ (with permission)

David Eisenberg
Attorneys for Andrew Padilla

DATED: September 23, 2020    Joy Bertrand
JOY BERTRAND, ESQ.

By: _s/ Joy Bertrand_ (with permission)

Joy Bertrand
Attorneys for Joye Vaught

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas