# Exhibit A



**COVID-19 JUDICIAL TASK FORCE**

Report of the Jury Subgroup

# Conducting Jury Trials and Convening Grand Juries During the Pandemic

# Conducting Jury Trials and Convening
# Grand Juries in the Age of COVID-19

Jury trials are the bedrock of our justice system, expressly provided for in the Constitution and in the Sixth and Seventh Amendments. When each court determines that the time is right, the judiciary must reconstitute jury trials during the COVID-19 pandemic. This report contains preliminary suggestions and ideas for courts to consider when restarting jury trials. The intent of this report is to assist each court in devising protocols that will minimize the risks to all participants and spectators, including jurors, attorneys, witnesses, parties, members of the public, the press, and court employees. Although the report's considerations, if followed, may impact constitutional issues, it does not attempt to analyze or resolve individual constitutional questions. Instead, where appropriate, the Jury Subgroup has attempted to spot some issues that judges may need to resolve depending upon their unique circumstances.

This report contains suggestions only. Each court will be able to adapt these suggestions to the concerns of its own jury pool and other local factors. Each court will be impacted by its location, stage of recovery, funding, and own decision regarding the appropriate steps to take to ensure safety. As each court develops its own protocol, these guidelines will be updated to provide the most recent developments in restarting trials. A clearinghouse of sample court orders and procedures, including photos of reconfigured courtrooms will be maintained on the Coronavirus (COVID-19) Guidance page on JNET for courts to review.

## I.  Initial Considerations

The appropriate time to reconvene juries will differ state by state, district by district, and perhaps even division by division. Each court will need to review its state and local government's "gating criteria" in determining when to reconvene a petit or grand jury. Different institutions including the AO and the CDC have offered guidance to the gating criteria. The AO has provided guidance on health screening and use of masks that can be found included with the Director's memorandum dated April 24, 2020. The CDC has provided a variety of documents with gating criteria guidance, including a comprehensive 60-page document. CDC guidance can be found on the CDC's coronavirus page. Please note that such guidance is continually updated.

This report offers suggestions for each district to consider in "how" to hold a jury trial during the course of the pandemic, recognizing that each court will have different abilities, facilities, and localized considerations. There is no one-size fits all approach, and not all of the suggestions will be necessary, practical, or feasible in all districts. At its core, this report offers guidance to help individual courts consider the multitude of issues that will impact reconvening jury trials in our federal courts.

Available funding is a consideration. Each court should discuss its own plan with the appropriate court officers and regional administrators at the Administrative Office of the Courts to determine the availability of any funding for the plan. The guidelines below include several recommendations related to juries that have an associated cost. Courts should expect to fund jury-related costs within their existing local, decentralized budgets. If centrally-held funds become available, the Administrative Office will notify the courts.

1

Ver. 6/5/20

**II.  Communicating Safety to the Public**

Jurors must be given reasonable assurance of their safety before participating in the jury process. They must be comfortable during the course of a trial, and be able to focus on the evidence and not the risk of a COVID-19 infection. This assurance is best conveyed when all of the factors that jurors experience are taken into consideration. Such factors include their home situations, transportation to the courthouse, safety within the courthouse, and concerns regarding being away from home.

**III.  Deciding the Level of Personal Protective Equipment to be Worn**

A. Preliminarily, each court will need to determine the level of personal protective equipment ("PPE") that is necessary for the public, attorneys, press, witnesses, and jurors. This should be determined first and communicated directly to the courthouse and the public in as many forums as possible, including issuing a court order. Open questions remain as to whether there will be any successful national procurement for any PPE or other mitigation tools. In the interim, courts should procure these items locally and charge the costs to their local salaries and expenses budget for consumable disposable supplies. Courts will need to determine how their PPE order will be enforced prior to entering the order.

B. Determine whether your court will provide PPE or whether you will allow jurors to bring their own PPE, recognizing the risks involved in outside PPE including: 1) contaminated/ un-sanitized PPE brought into the courthouse and courtroom; 2) jurors failing or refusing to bring their own PPE; and 3) political statements or otherwise controversial or inciteful personalized masks.

C. If face coverings will be used during proceedings, consider whether all parties must agree to their use, or if their use will be a court-wide policy.

D. Consider developing standard procedures for situations where a juror exhibits symptoms of illness during the trial. Consider whether to isolate or excuse that juror and how to inform the rest of the jury of the illness.

**IV.  First Communications with Prospective Jurors**

A. Consider providing information to the public on the court's website (perhaps a video by the Chief Judge) about steps being taken to create a safer environment in the courthouse. Walk through the various stages of being a juror, including gathering together, jury selection, sitting through trial, deliberating, and coming and going from the courthouse. Explain how the court is addressing safety throughout each of these stages. Additionally, consider placing a section on the court's website that is specifically for jury duty, explaining how the court is addressing safety at each stage as described above. Possibly consider adding a "most frequently asked questions about serving my civic duty in the time of COVID-19" section to the court's website. Courts could also designate a phone number for prospective jurors to call and ask specific questions related to COVID-19.

    B. To proactively address juror concerns, consider sending out a one-page document to prospective jurors with the summons explaining the steps that the court is taking to keep them safe. This document should also contain the individual court's order regarding masks and other PPE that may be required of jurors while serving.

    C. Consider requiring jurors to complete a COVID-19 supplemental jury questionnaire that asks relevant medical questions, including whether they or someone close to them has been diagnosed with COVID-19; when they were diagnosed with COVID-19; and whether they have recovered from COVID-19 or are caring for someone who has the illness. Consider asking whether they suffer from a comorbidity that would make them a higher risk for infection if they were to become ill and require that the condition be listed on their questionnaire. Consider possibly stating that answering the medical questions is solely for the purpose of determining whether a juror can serve and the answers to the questions will be filed under seal.

    D. Courts should consider an attestation clause for jury questionnaires making them subject to the penalties of perjury.

    E. Questionnaires could be distributed by mail for prompt completion and returned via eJuror, if possible. Because the questionnaires will be sent weeks prior to trial, the answers to health questions will be stale by the time the jurors report. Therefore, consider ways to obtain updated information within 48 hours of the jurors' report-time.

    F. Consider using a supplemental questionnaire on the day service begins to obtain up-to-date information regarding the prospective jurors' health and potential exposure to individuals with COVID-19. Possibly implement a call-in number where prospective jurors can call in and report that they are symptomatic so that they do not report in person for service. A staff member could also call each prospective juror the day before service begins to see if the juror is healthy.

**V. Prospective Juror COVID-19 Questionnaire Content**

    A. Courts should consider whether the court and counsel should concur in the contents of the questionnaire or whether the court wants to create a committee to prescreen prospective jurors.

    B. Inquire into health concerns, health fears, vulnerability to coronavirus, and issues concerning family exposure, vulnerability, or risk.

    C. Consider asking questions regarding juror availability due to the pandemic (work, childcare, family needs, etc.) and require detailed explanations.

    D. Consider asking questions regarding the usual general biographical information previously and typically addressed in open court (e.g., occupation of juror, spouse, and adult children; pretrial publicity; past jury service—number of jury cases sat on, civil v. criminal, verdicts in each, etc.).

## VI.  Prescreening of the Jury Questionnaires

A. Consider how to prescreen the jury questionnaires and determine whether the presiding judge and counsel or a committee of judges will prescreen juror responses to these questionnaires when jurors have expressed an inability to serve. Consider conducting an initial screening, eliminating certain jurors prior to coming into the courthouse and requiring others to appear for selection. Consider insufficient answers or failures to respond as a reason to proceed to summon that person for further inquiry. Consider how the questionnaire can be –recognize the risk of not having

B. Plan for a higher number of jurors requesting to be excused based on health concerns and develop criteria for evaluating such requests based on CDC guidelines.

C. Plan for a lower yield from the jury pool during the pandemic. Even healthy jurors not considered particularly vulnerable to COVID-19 may hesitate to serve for a variety of reasons: to avoid the risk of exposing other members of their household to the virus; to care for children who no longer have school or summer activities to attend;  to look for work if they have recently lost their employment; or because they have recently returned to work and cannot afford to take leave.

D. Plan for the loss of a greater number of seated jurors during the pandemic due to illness or the need to care for sick family members. An effective contact-tracing program will likely cause loss of jurors due to a required, immediate self-quarantine after exposure to COVID-19. Take into consideration the possibility of losing jurors during trial when considering the number of alternate jurors to seat in criminal cases and overall number of jurors to seat in civil cases. Avoid falling below constitutional minimums and be prepared to address law concerning when waivers of constitutional minimums may be sought or granted.

E. If able, keep statistics of questionnaires sent, excuses requested due to virus concerns, the number of people excused over virus concerns, and other factors considered useful for continued jury management. (<u>Add unique COVID-19 excuse code in Jury Management System (JMS) to track juror deferrals and excuses.</u>) Courts should monitor closely, and maintain statistics on, the impact these excusals and deferrals may have on minority representation.

F. Order the questionnaires be filed under seal under the compelling interest that sensitive health information of the venire has been revealed.

## VII.  Preparing for Juror Travel to and Presence in the Courthouse

A. Consider whether to reimburse jurors for parking, which is reimbursable under the Jury Act. In urban courts, where public transportation has been a reimbursable expense, parking may be reimbursed instead. Of course, the court should consider the significant cost increase.

B. Taxis and ride sharing services are NOT reimbursable as a public transportation equivalent "unless in an emergency situation the clerk of court specifically authorizes

4

Ver. 6/5/20

the use of a taxicab as essential to the expeditious performance of a juror's duties." *Guide to Judiciary Policy*, Vol. 4, sec. 365.50.25(b). It is unclear at this time whether travel in taxis or ride sharing services is appreciably "safer" compared with some traditional forms of public transportation, especially as those systems adopt their own measures to limit the spread of the virus.

## VIII. Space Preparation

A. Paths of Travel: Plan paths of juror travel from the entrance into the courthouse to rooms within the courthouse. Place social distancing markers around courthouse, in and near restrooms, and by elevators. Also, limit the number of riders per elevator, which may necessarily delay juror travel around the courthouse. Consider use of stairwells as alternatives to elevators and have stairwells marked with appropriate signage to ensure safe use. Consider having a cleaning staff member to continually spray and wipe down handrails used by anyone in the courthouse throughout the day.

B. Courtrooms: Create a space plan for courtroom(s) to allow for social distancing. Use the largest courtrooms for this purpose or consider using multiple rooms with video connections between rooms.

   1. Consider using a designated and shared courtroom to facilitate deep cleaning between trials and to minimize the retrofitting costs of the courtrooms, at least during a transitional phase. Using one courtroom on an experimental basis during an ongoing pandemic may allow for the testing and modification of safety precautions before courthouse-wide application.

   2. Consider conducting a mock trial in a designated and modified courtroom with OFPD, USAO, Clerk's Office, court reporter, and chambers personnel to test new equipment and trial procedures before implementation in a real trial.

   3. Consider courtroom reconfiguration, such as placing jurors in the gallery section of the courtroom and having the witness stand (table, box or mere seat) facing the gallery and lawyer tables. A podium could be placed off to the side.

C. Common areas: Restrict access to common areas, including juror amenities (water/ice, magazines, etc.). Consider expanded use of hand sanitizer stations in common areas.

D. Restrooms: Consider whether to restrict restroom facilities in jury areas only or access to all public restrooms. Consider additional special signage regarding importance of proper hand washing in the restroom and nearby public spaces.

E. Cleaning: Consider plans for deep cleaning all juror-occupied spaces after each session. Consider providing hand sanitizer and bleach wipes at the witness stand. A court employee or the witnesses themselves could wipe off the witness stand after each use. Although such may not be medically necessary in light of new findings regarding the virus's limited ability to survive on surfaces, such precautionary measures could be taken by a court. Consider consulting with your local public health officials for current medical guidance on cleaning.

    F.  Consider creating a hotline to report unsanitary conditions and conduct.

## IX.  Arrival on the Day of Jury Service

    A.  Consider placing signage at courthouse entrances explaining the court's response to COVID-19 and reminding individuals to maintain proper social distancing while going through security lines and while inside the courthouse. Consider placing tape marks on the floor for proper distancing of jurors, attorneys, and members of the public waiting in the security line. Work with GSA or the lessor to implement a temporary signage program regarding your court's order regarding PPE.

    B.  Depending on your court's decision regarding the wearing of masks, place signage describing that decision. If your court decides that masks shall always be worn, have masks available at the security line for those who have entered without wearing one.

    C.  Consider having free-standing hand sanitizer stations at each security line.

    D.  Consider having clearly marked signs for jurors directing them to the gathering area. If your courthouse has more than one gathering area, consider dividing those areas by juror number. For example, the sign might read: "Jurors whose summons ends in an even number shall meet in Room 221."

    E.  Consider verifying the juror's current situation with a short questionnaire at the time of check-in.

## X.   Gathering Jurors in a Safe Environment

    A.  Determine the access route for the jurors from the entrance of the courthouse to the gathering room and determine what hygiene methods will be employed to maintain a safe access route. If using a stairwell, consider having an employee of the cleaning staff wipe down the handrails throughout the day as jurors enter. If an elevator is used, measure the distance within the elevator to determine whether an employee will need to monitor the number of individuals in the elevator at one time. Consider placing markers in the elevator on the floor indicating where each person should stand.

    B.  Stagger times for jurors to arrive in smaller groups (alphabetically by last name or by number) to enable social distancing.

    C.  Once in the jury room, consider best methods for checking in. Some courts use kiosks; consider disabling them due to the risk of COVID-19. These should be deployed for a more traditional check-in with a jury department employee.

    D.  Consider using large areas or rooms in your courthouse for the jury assembly including the jury assembly room or large courtrooms.  Consider how jury movement will be impacted within the courthouse.

    E.  Consider whether in some courthouses, the jury assembly area could be bypassed. Instead, bring jurors directly to the courtroom, and have them processed immediately

outside the courtroom. The orientation, including the Chief Judge video, could be played inside the courtroom. Consider having assigned seats for jurors, even during jury selection.

F. Consider advising jurors to bring their own writing instruments, reading materials, water bottles, snacks, and lunches. For the health of the jurors and the court staff, whether the court provides these items or jurors are instructed to bring them to the courthouse, the jurors should be further instructed to keep all such items separated from other jurors' similar items.

G. This information can be reiterated when jurors call in to the court to check on the status of their service.

## XI. Staff Interaction with Jurors

A. Consider asking reporting jurors to self-report to the jury staff any symptoms they may have that morning before entering the courthouse.

B. Train staff to limit contact with jurors and documents that jurors' have handled.

C. Ask jurors to hold up documentation (summons and driver license) for scanning and review.

D. Use pre-printed, large stick-on labels for juror badges instead of plastic ones with pins to reduce contact with jurors.

E. Determine how to handle juror check-in on subsequent trial days. Consider using a check-in sheet completed and touched only by the courtroom deputy.

F. Consider installing a plexiglass shield to separate court staff from jurors at customer service points or counters since appropriate social distancing is not possible in these encounters, similar to the situations faced by checkers at grocery stores.

G. Juror orientation should include a review of the steps the court is taking to increase juror safety. Remind jurors of the steps they must take for their enhanced safety, including frequent hand washing, and so forth.

H. Consider adding a supplemental video from the Chief Judge or other local personality that covers the need to social distance and maintain safety while stressing the need to continue jury trials and the appreciation for those who serve.

I. Consider using tape to mark seats where jurors are permitted to sit enabling the court to have proper social distancing in the jury assembly room, or remove chairs, if possible, placing them the appropriate distance apart.

J. Consider providing hand sanitizer near any electronic device plug-in area where jurors may be charging electronic devices and a sign informing the prospective jurors to use the sanitizer if they use the area.

K. Remove magazines and newspapers from jury assembly and deliberation rooms, and encourage jurors to bring their own reading material.

L. Decide how prospective jurors will eat lunch. Analyze the risks of allowing outside food, use of the cafeteria, and allowing jurors to leave and return. If prospective jurors have been medically screened, consider having a designated area outside away from the general public to get fresh air at lunchtime. If your court permits the use of vending machines, consider providing disposable gloves and add signage regarding the use of the gloves.

M. Work with GSA to discuss air flow patterns in the gathering room. Consider adjusting the HVAC for optimal air replacement in those areas.

## XII.  Preparing the Courtroom for Jury Selection and Trial

A. Consider consulting with public health experts to help design or retrofit safe courtroom environments and to review your proposed jury reconstitution plan. Some jury boxes may be altered by adding minimal changes like risers on each side, but others may need more significant changes such as moving the box parameters. Each chair must be socially distanced from the chair to either side.

B. Each court will determine what level of PPE must be used, and this will vary significantly between states and districts. Once this decision is made, consider whether masks should be worn all day by all individuals in the courtroom, or by only certain individuals based on the infrastructure that has been created. Some courts may consider clear face shields or plexiglass dividers, which may impact this decision.

C. Consult with your IT department regarding the placement of microphones for sidebars, juror voir dire, court reporting, the viewing of electronic evidence, and remote presentation of proceedings.

   1. Determine whether there are sufficient stationary microphones in the voir dire area for prospective jurors to be heard so that hand-held microphones are not being passed.

   2. If sidebars are to be conducted, consider how these will take place. If the courtroom is large enough, tape the floor for proper placement of the attorneys and the prospective juror and the judge. A court reporter can remain at her place at the bench rather than being exposed to the sidebar if she uses a microphone at the sidebar location and headphones. Consider having your IT department arrange this set-up for court reporter safety.

   3. Consider methods to permit attorneys and clients to speak confidentially while in court, including the use of a closed-circuit telephone system, computers, laptops or iPads; and providing break out rooms for counsel for attorney/client communications.

D. Consult with GSA or the lessor to determine what HVAC modifications may be made

8

    regarding air flow and air sanitization in the courtroom.

E. Consider signage on the outside of the courtroom regarding your court's order regarding PPE and where the public may sit in the courtroom.

F. Consider streaming the trial live in another space or unused courtroom if there is little or no room for the public, or if the trial is high profile or being closely covered.

G. When social distancing is not possible, consider using plexiglass dividers in appropriate places in the courtroom if necessary.

H. When prospective jurors are gathering for jury selection, consider bringing smaller groups into the courtroom for voir dire to keep fewer people in the courtroom at any one given time. Consider, for example, questioning only 12 to 14 at any time.

I. Instruct jurors that, after they have completed their duty, the Employee Assistance Program (EAP) services are available to them for assistance required as a result of their serving during the time of COVID-19. This service is not available to grand jurors.

## XIII.  Considerations for Jury Selection and Trial

A. Some courts might consider in civil cases, or in criminal cases with consent, virtual voir dire with prospective jurors participating from home via videoconferencing technology. Understand that under the Jury Act this might prevent payment for the jury service.

B. Consider preparing a procedure to implement when privacy concerns compel individual voir dire. Consider where such an individual voir dire will occur, how social distancing norms will be respected, and who will be present, noting in a criminal case, the general right of a defendant to be present for all proceedings. Consult with your IT department to determine whether a headset can be given to the defendant to hear the sidebars while remaining seated at the table.

C. Consider continuance motions more favorably given the difficulties in preparation by both sides. Special consideration must be addressed for criminal cases on a speedy trial clock.  If a motion for a continuance is filed by an attorney, consider putting the defendant under oath and asking her if she agrees with the continuance. Note 18 U.S.C. § 2509 provides that the government may ask to prioritize a criminal trial with minor victims over other criminal trials.

D. Hearings on pretrial and posttrial motions and jury-charge conferences should be conducted in a manner that assures appropriate social distancing in the courtroom.

E. Communicate to all participants in the jury trial the mask rule that your court has implemented. Consider the possible inconsistency if jurors must wear masks to help protect others, but the attorneys are not required to wear masks that would help to protect jurors.

Ver. 6/5/20

1. Consider allowing attorneys to conduct examinations and arguments with masks in the courtroom or to move to a nearby courtroom or room so that they may proceed without a mask via videoconferencing technology, at their choice. Consider implementing the same rule for witnesses, except in criminal trials where the court should address Confrontation Clause issues with the parties pretrial. Be aware of the significant Confrontation Clause issues if a witness is testifying by closed-circuit television.

2. Consider disposable headphones for interaction between attorney and client. Consider providing to the defense attorney and the defendant an iPad with FaceTime or a similar app so that they may communicate with each other on breaks, especially where the defendant is in custody and may be in the lock-up.

3. Work with the U.S. Marshal in the district to determine a private area for attorney-client communication to occur during the break.

4. After each break in the trial, whether overnight or midday, ask the defendant whether he was able to speak to his attorney and place the answer on the record.

F. Selection/Seating

1. Limit Jury Trials: Within a courthouse, limit the number of jury trials that start on a given day to reduce the population in the jury assembly room or other staging areas to allow for social distancing. Coordinate schedules with other courthouse activities to help minimize entry queuing.

2. Consider on and off days for different judges. Consider dividing judges into an A group and a B group. The A group will be in the courthouse on certain days while the B group works from home.

3. For large courthouses, schedule only one trial per floor to minimize movement.

4. Assign seats to jurors, including during voir dire. Consider either individual voir dire, or a combination of group and individual voir dire. For individual voir dire, leave the jurors in the courtroom in assigned seats, and use a separate room or courtroom for the individual voir dire.

5. Consider seating jurors in designated spaces in the gallery section in a manner that assures appropriate social distancing.

6. To maintain appropriate social distance, as jurors arrive in the courtroom, consider seating them in the room front to back, left to right, row by row. Exit jurors in reverse for break or lunch.

    G. Audio and Record Taking

        1. Place microphones on each side of the bar entrance and direct that the juror being questioned speak from there. Consider marking the standing location on the floor.

        2. Consider using "shotgun" microphones for jurors, which will allow jurors to keep a safe distance from the microphone. For the lawyers and judge, consider using some covering (such as a small Ziploc bag) over the head of the microphone which could be changed between use.

        3. The court reporter could take record remotely from outside the courtroom, remain at the usual station with appropriate social distancing, or move to a different location as warranted.

    H. Court Interpreting

        1. Infrared assistive listening devices are typically available in all hearing rooms and allow the interpreter to listen to what the parties are saying without the need to be up close to anyone. Using a second channel, which is routine in the courts, the interpreter can also interpret simultaneously for the party in need of services without having to get overly close to the parties.

        2. The use of remote interpretation, generally by video, continues to gain popularity and may continue as the primary source of interpreting services for a while. Enhanced awareness is suggested from the parties, as the system may lag at times, speech may be choppy, and sound quality may not be optimal.

    I. Evidence presentation

        1. Add a large monitor for the gallery on the defense-side of courtroom or, budget and rules permitting, multiple monitors for jurors and the gallery to view evidence.

        2. Use JERS or another similar system for evidence presentation to eliminate the need for more than one individual to handle evidence.

        3. Instruct jurors that only one juror is allowed to use the mouse to operate JERS or other automated system. The mouse may also be covered with a plastic covering that may be disposed of each night.

        4. Consider adding additional monitors so jurors at appropriate social distances will have equal visibility and access to documentary or other physical evidence.

        5. Consider having the attorneys brief legal issues that are specific to conducting trial during a pandemic prior to the final pretrial conference.

J.  Sidebar

   1. Court and counsel could use a deliberation room or an unused courtroom for sidebars.

   2. Consider using wireless headphones connected through the courtroom audio system for court, counsel, and the court reporter. Consider alternatives such as the use or expanded use of white-noise machines to mask sidebar conferences when such conferences are held in the presence of others. Consider use of microphones, earpieces and real-time transcription feeds on designated channels to facilitate sidebar conferences that maintain social distancing but cannot be heard by jurors or others present in the courtroom.

   3. Consider developing a "sidebar" app that allows lawyers to submit issues and the court to rule on them electronically.

K. Counsel

   1. Add tables with skirting and presentation equipment perpendicular to existing counsel tables, extending defense table as far as possible toward the anteroom door without blocking access.

   2. Counsel should address the court and argue to the jury from counsel tables or podiums placed at the elbow of an L-table arrangement.

   3. Consider floor signage and other markings to restrict and direct movement in the courtroom for all trial participants.

   4. Parties must present evidence electronically, using a computer or document camera (no handing paper to the witness).

   5. The presiding judge should caution counsel not to approach the witness any closer than six feet. Video mute options on the electronic system should be used to identify and present an exhibit for admission.

   6. Consider setting up a "mock" courtroom to test lines of sight and the use of various technologies that might not otherwise be used during trial (e.g., an iPad for each juror).

L. Defendants in Criminal Cases

   1. Consider how to protect a defendant's rights to consult with his attorney and confront witnesses while using the protective measures necessitated by COVID-19.

   2. Consider specific guidance and develop reasonable accommodations to allow for socially distanced attorney-client conferences during trial. Possibilities include dedicated secure text-messaging capability to allow counsel and client

      to communicate midtrial. Consider separate secure and adequate space for such conferences to be held outside the courtroom setting if necessary. Consider use or expanded use of white-noise machines to mask privileged conversations. Have defense counsel accept on the record the setup for the courtroom once the issues are briefed by the parties.

    3. If defendant is in custody, make certain that the new configuration of the courtroom does not reveal his in-custody status. Take the same precautions you would in the past to prevent the jury from seeing/hearing shackles, handcuffs, prison garb, etc.

    4. Plan for objections from counsel based on an inability to read jurors' expressions in response to testimony, evidence, objections, and judges' rulings, among others. Address the courtroom layout and the courtroom rules in the final pretrial conference so that the attorneys can raise objections at that time.

    5. When deaf/hearing-impaired staff, defendants, or others are involved in a proceeding, consider providing participants with clear face coverings or clear face shields to allow the mouth to be visible. Create a plan for cleaning each night the court-provided individual hearing devices used by lawyers, witnesses, or jurors.

M. Spectator Seating

    1. If the courtroom does not have sufficient space to seat spectators and the jury with appropriate social distancing, spectators could watch trial proceedings remotely in the jury assembly room or other unused courtroom with appropriate spacing.

    2. Alternately, in courts with rules and technology allowing for it, spectators could watch trial proceedings remotely at locations other than the courthouse through videoconferencing.

N. Witnesses

    1. If your court requires witnesses to be sworn in on a Bible or other book, consider placing the book on or near the witness stand, under clear, single-use plastic covering.

    2. Witnesses could sit below the bench facing the gallery at a skirted table or witness box with presentation equipment.

    3. Witnesses could wait in attorney conference rooms or the grand jury room as necessary to maintain social distance. Note that special witnesses are given more protection under 18 U.S.C. § 3509 and must have a separate room for waiting. Take this into account when determining where they will wait because they also are entitled to enter the courtroom differently.

4. Consider having witnesses questioned from counsel tables or placing a podium at the elbow of an L-table arrangement.

5. Witnesses could be located across from the jury box instead of beside the judge's bench. Any location should be considered to improve social distancing and limit movement within the well of the courtroom.

6. Consider issues of credibility determination by the jury if the witness is wearing a mask during testimony.

7. Consider issues of procedures for in-court identification by witnesses when all participants are wearing masks. Have the parties brief whether they intend to have an in-court identification and, if so, how that will be performed to be certain that the Confrontation Clause is protected.

8. Consider allowing testimony from witnesses through live video streaming, if allowed by rule and the Constitution or with consent of the parties.

O. Breaks in Proceedings

1. Consider the best manner in which bathroom breaks may proceed with proper social distancing.

2. Consider where the jury can meet on breaks with proper social distancing and whether they should bring their materials with them.

3. Recognize that a significant component of jury collaboration comes from their interactions with each other outside the presence of the judge and the attorneys as they gather and take breaks. Take care not to separate the jury on these breaks because factions and coalitions could unwittingly be forming.

P. Additional Considerations

1. Consider placing individual supply bags on jurors' assigned seats before they arrive in the courthouse. Such supply bags should include hand sanitizer wipes or individual hand sanitizers and individual trial notebooks.

2. Consider placing a cubby-hole type organizer in the jury room labeled with the jurors' names for personal belongings and for juror notebooks so that they are not comingled.

3. Consider a protocol for the use of the refrigerator and microwave in the jury room, such as clearly marked individual containers or bags and the use of gloves to access the refrigerator and microwave.

## XIV. Deliberations

A. Consider having the jury deliberate in a vacant courtroom or other large space, such as a jury assembly room, to allow greater social distancing. Consider requiring that the deliberation area be cleaned and disinfected after each day's use.

B. Ensure that no one is able to stand outside the doors and overhear jurors during deliberations, as they will presumably be talking louder than usual because of social distancing. Consider posting a CSO outside the courtroom door and locking the door.

C. Notetaking/Questions

   1. Direct the jury to tell the CSO waiting outside the deliberation room when they have questions or a verdict.

   2. Consider having only the jury foreperson write jury questions and complete the verdict form.

   3. Have a large supply of single-use notebooks and pens on hand.

   4. Have jurors store their own notebooks and pens at the end of the trial day in the jury room. Consider providing each juror a large envelope for individual storage.

D. Lunch/snacks: Consider having lunch delivered to jurors at their expense in order to avoid their leaving the courthouse. Only if a judge enters an order that the jurors are to be sequestered for their safety because the virus is not contained in that community, may the lunches be charged to the juror fee appropriation.

E. If the parties consent, consider allowing verdicts to be delivered by a unanimous jury of ten or fewer in criminal trials. See Fed. R. Crim. P. 23(b) (requiring stipulation of the parties for verdict by fewer than eleven jurors); Williams v. Florida, 399 U.S. 78, 103 (1970) (six-member jury constitutionally permissible); Ramos v. Louisiana, No. 18-5924, 2020 WL 1906545, at *9 (U.S. Apr. 20, 2020) (unanimous verdict constitutionally required).

F. Dispose of pens and juror notebooks after each trial or, alternatively, request that jurors use their own pens.

G. For post-verdict questions, consider using an online questionnaire or mailing the court questionnaire (if any) to jurors.

## XV. Grand Jury Considerations

    A. Consider all recommendations for petit juries above.

    B. Prescreen grand jurors on health or hardship issues to ensure a quorum. Consider if it is necessary to call all 23 persons on the grand jury panel. Consider bringing in less than the 23 persons in order to make a quorum of 16.

    C. The court should consider having the Chief Judge or a Jury Liaison Judge to determine excusal of sitting grand jurors.

    D. Consider using the largest courthouse rooms to allow maximum social distancing.

    E. Consider reduced frequencies of sittings.

# WORKPLACES DURING THE COVID-19 PANDEMIC



The purpose of this tool is to assist employers in making (re)opening decisions during the COVID-19 pandemic, especially to protect vulnerable workers. It is important to check with state and local health officials and other partners to determine the most appropriate actions while adjusting to meet the unique needs and circumstances of the local community.

**Should you consider opening?**

- ✓ Will reopening be consistent with applicable state and local orders?
- ✓ Are you ready to protect employees at higher risk for severe illness?

**Are recommended health and safety actions in place?**

- ✓ Promote healthy hygiene practices such as hand washing and employees wearing a cloth face covering, as feasible
- ✓ Intensify cleaning, disinfection, and ventilation
- ✓ Encourage social distancing and enhance spacing between employees, including through physical barriers, changing layout of workspaces, encouraging telework, closing or limiting access to communal spaces, staggering shifts and breaks, and limiting large events, when and where feasible
- ✓ Consider modifying travel and commuting practices. Promote telework for employees who do not live in the local area, if feasible.
- ✓ Train all employees on health and safety protocols

**Is ongoing monitoring in place?**

- ✓ Develop and implement procedures to check for signs and symptoms of employees daily upon arrival, as feasible
- ✓ Encourage anyone who is sick to stay home
- ✓ Plan for if an employee gets sick
- ✓ Regularly communicate and monitor developments with local authorities and employees
- ✓ Monitor employee absences and have flexible leave policies and practices
- ✓ Be ready to consult with the local health authorities if there are cases in the facility or an increase in cases in the local area

**ALL YES** → **ALL YES** → **ALL YES** → **OPEN AND MONITOR**

**ANY NO** ↓  **DO NOT OPEN**

**ANY NO** ↓  **MEET SAFEGUARDS FIRST**

**ANY NO** ↓  **MEET SAFEGUARDS FIRST**



 **cdc.gov/coronavirus**