## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. CR-18-0422-PHX-SMB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | June 7, 2021 |
| Michael Lacey, | ) | 4:04 p.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE SUSAN M. BRNOVICH, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**STATUS CONFERENCE**

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2    For the Government:

3

4        U.S. ATTORNEY'S OFFICE
         By:  **Mr. Peter S. Kozinets**
5             **Mr. Kevin M. Rapp**
              **Ms. Margaret Wu Perlmeter**
              **Mr. Andrew C. Stone**
6        40 North Central Avenue, Suite 1200
         Phoenix, Arizona 85004

7

8        U.S. DEPARTMENT OF JUSTICE
         By:  **Mr. Reginald E. Jones**
9        1400 New York Avenue, NW, Suite 600
         Washington, DC 20530

10

11       U.S. ATTORNEY'S OFFICE
         By:  **Mr. Daniel G. Boyle**
12       312 North Spring Street
         Los Angeles, California 90012

13

14   For the Defendant Lacey:

15

16       LIPSITZ GREEN SCIME CAMBRIA
         By:  **Mr. Paul J. Cambria, Jr.**
              **Ms. Erin E. McCampbell-Paris**
17       42 Delaware Avenue, Suite 120
         Buffalo, NY 14202

18

19   For the Defendant Larkin:

20

21       BIENERT KATZMAN
         By:  **Mr. Thomas H. Bienert, Jr.**
              **Ms. Whitney Z. Bernstein**
22       903 Calle Amanecer, Suite 350
         San Clemente, CA 92673

23

24

25

                    UNITED STATES DISTRICT COURT

```
 1   For the Defendant Spear:

 2       FEDER LAW OFFICE
         By:  Mr. Bruce S. Feder
 3       2930 East Camelback Road, Suite 160
         Phoenix, AZ 85016
 4

 5   For the Defendant Brunst:

 6       BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
         LINCENBERG & RHOW
 7       By:  Mr. Gopi K. Panchapakesan
              Mr. Gary S. Lincenberg
 8       1875 Century Park E, Suite 2300
         Los Angeles, CA 90067
 9

10   For the Defendant Padilla:

11       DAVID EISENBERG, PLC
         By:  Mr. David S. Eisenberg
12       3550 North Central Avenue, Suite 1155
         Phoenix, AZ 85012
13

14   For the Defendant Vaught:

15       JOY BERTRAND, LLC
         By:  Ms. Joy M. Bertrand
16       P.O. Box 2734
         Scottsdale, AZ 85252
17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1        **P R O C E E D I N G S**

2              COURTROOM DEPUTY:  On the record in CR 18-422, United

3     States of America versus Michael Lacey and others, before the

4     Court for a status conference.

5              MR. RAPP:  Good afternoon, Kevin Rapp on behalf of the

6     United States.  Also appearing for the United States is

7     Reginald Jones, Margaret Perlmeter, Peter Kozinets, Andrew

8     Stone, and Daniel Boyle.

9              MR. CAMBRIA:  Good afternoon, Your Honor.  Paul

10    Cambria and Erin Paris appearing on behalf of Mr. Lacey.  And

11    we waive his appearance.

12             MS. BERNSTEIN:  Good afternoon, Your Honor.  Whitney

13    Bernstein and Tom Bienert on behalf of James Larkin, who is

14    also present.

15             MR. FEDER:  Bruce Feder for Scott Spear, who is

16    appearing digitally.  Good afternoon.

17             MR. LINCENBERG:  Good afternoon, Your Honor.  Gary

18    Lincenberg and Gopi Panchapakesan on behalf of Mr. Brunst, who

19    is present for this hearing.

20             MR. EISENBERG:  Good afternoon, Your Honor.  David

21    Eisenberg on behalf of Andrew Padilla.  We would waive his

22    appearance for the purpose of this hearing.

23             MS. BERNSTEIN:  Good afternoon.  Joy Bertrand appears

24    for Defendant Joye Vaught.  She also waives her appearance for

25    today's hearing.

1          THE COURT:  And that should be everybody.

2          Okay.  So we're set to discuss the jury questionnaire,

3     because we want to get those sent out so that we can have them

4     back by the final trial management conference to do some

5     screening.

6          I've looked at -- after I discovered that I missed it,

7     I looked at the juror questionnaire that was filed on June 26th

8     of '20.  Is that the most recent jury questionnaire submitted

9     by the parties?

10          Mr. Rapp?

11          MR. RAPP:  Yes.

12          THE COURT:  Okay.  So that's the one I'm working off

13     of.  And I'll just go through it with you.

14          With respect to the, sort of, instructions to the

15     jurors, on the first page I'm adding a couple of lines just to

16     let the jurors know that this information will be kept

17     confidential.  And it reads:  Only the Court and the attorneys

18     will use the information that you are -- that you give in

19     response to this questionnaire.  Your responses will be kept

20     confidential, and all the parties will be under orders to

21     maintain the confidentiality of any information they learn in

22     the course of reviewing this questionnaire.

23          Is there any objection to adding that from the

24     government?

25          MR. RAPP:  Not -- no, Your Honor.

1          THE COURT:  Any objection to adding that from -- these

2     aren't in order -- from Ms. Bertrand?

3          MS. BERTRAND:  Yes, Your Honor.

4          THE COURT:  Do you have an objection to adding that?

5          MS. BERTRAND:  No.

6          THE COURT:  Okay.  Mr. Eisenberg, do you have any

7     objection?

8          MR. EISENBERG:  No, Your Honor.

9          THE COURT:  Mr. Bienert, any objection -- or, I'm

10    sorry, Ms. Bernstein?

11         MS. BERNSTEIN:  No, Your Honor.

12         THE COURT:  Mr. Feder?

13         MR. FEDER:  No.  Thanks.

14         THE COURT:  Mr. Lincenberg?

15         MR. LINCENBERG:  No, Your Honor.

16         THE COURT:  And, Mr. Cambria?

17         MR. CAMBRIA:  No, Your Honor.

18         THE COURT:  Okay.  Then I will also, on page 2 -- the

19    jurors will be filling this out electronically, and you'll be

20    given the questionnaires electronically, usually on a zip

21    drive, so I'm taking out any language that talks about writing

22    on extra pages or using a black or blue pen, but other than

23    those types of things, I'm not making any other edits.

24         On page 3, with respect to the jury service and length

25    of trial, the first paragraph, I'm changing it -- obviously, I

1    need to change the dates -- I'm changing it -- I'm crossing out

2    Tuesday through Friday, and what I plan to do is insert a

3    proposed calendar so that the jurors can actually see in the

4    months of August, September, October, November, what days we

5    anticipate them being in trial.  I've found that's more helpful

6    than listing out the days.  I guess I'm a visual person.  But

7    if they were in person, I would put a calendar up on the Elmo

8    for them to look at while they were answering, so I wanted to

9    include that.

10            So let me ask you -- I did ask Elaine to send you an

11   updated trial calendar.  I understand that there was some

12   concern about trying to use every potential day, and so I

13   reduced it to mostly four-day weeks except for a couple weeks

14   before and after that long break.

15            But, from the government's perspective, did you have

16   any objection to the updated trial calendar or were there any

17   additional days that you want to be blocked?

18            MR. RAPP:  No.  We don't have any objection to the

19   calendar, the most recent calendar, and we don't require any

20   days to be blocked.

21            THE COURT:  Okay.  Mr. Cambria, did you get that

22   calendar and do you have any additional days you want blocked?

23            MR. CAMBRIA:  I did and I do not, Your Honor.  We do

24   not object to it.

25            THE COURT:  Okay.  Mr. Feder?

1          MR. FEDER:  No objection.  I appreciate the

2     modification.

3          THE COURT:  Mr. Lincenberg?

4          MR. LINCENBERG:  Your Honor, I have no objection.  I

5     do want to advise the Court that both Mr. Bienert and

6     Ms. Bernstein and I have a trial set in San Diego, and the

7     Court set the trial date overlapping with our current trial.

8     At the time we advised the Court that we had -- I believe we

9     had a stipulation pending before Your Honor.  We fully expected

10    it to be signed and have an August trial date.  I don't expect

11    there will be a problem with Judge Curiel in moving that date,

12    but the government is now opposing our moving that date.  I

13    will let you know if it doesn't get worked out.  I think it

14    will get worked out, I just feel obligated to let the Court

15    know that.

16         THE COURT:  And did you say that was supposed to be in

17    August?

18         MS. BERNSTEIN:  November.  It's November.

19         THE COURT:  All right.  Well, let me --

20         MR. LINCENBERG:  We had alerted Judge Curiel at the

21    time that we had a stipulation the trial was likely to go

22    through December, and he was just trying to figure out a date

23    to set, I think.  I believe he'll go our way and understand

24    that.  We just needed to alert the Court.

25         THE COURT:  Okay.  I appreciate that.

1      So, let's see, Ms. Bernstein, other than that, any

2 other objections to the trial calendar?

3      MS. BERNSTEIN:  No, Your Honor.  No, Your Honor.

4      THE COURT:  Mr. Eisenberg?

5      MR. EISENBERG:  I have reviewed it, Your Honor.  I

6 don't have any objections to it, but I would say that as time

7 goes on, sometimes other judges will set a time, for example,

8 for a sentencing or a hearing on another matter, and I will

9 bring those to the attention of Your Honor.

10      Typically, the judges I know will work with the Court

11 in terms of trying to set those dates around our trial, but as

12 of right now I don't anticipate or have not heard of any

13 conflicts in my calendar.

14      THE COURT:  Okay.  All right.  Thank you.

15      Ms. Bertrand?

16      MS. BERTRAND:  No objection, Your Honor.  I have

17 reviewed the calendar as well.

18      THE COURT:  Okay.  All right.  Let's see.  Okay.  On

19 page 5 I have removed question 9 where you ask for the juror's

20 full name.  Their name will not be anywhere on this

21 questionnaire.

22      Question 15 and 16 where we ask:  Have you been tested

23 for COVID or have you been diagnosed, I'm just adding the --

24 I'm narrowing the time frame, because I don't want to know if

25 they've ever been tested.  I want to know if they've been

1   tested within the 14 days prior to them filling this out.  And

2   the same with diagnosis or a positive test, I'm just adding

3   within the last 14 days.

4        On page 8, question 31, where you ask about a spouse,

5   partner, or close family member in the military, where it says

6   who, I'm just going to qualify that by saying, no names,

7   relationship only.  So they can tell us if it's their spouse or

8   their brother, but we -- I'm not going to ask them for their

9   relatives' names.

10        On page 12 I don't understand the objections, to be

11  quite frank.

12        So, Mr. Rapp, it says the government objects to United

13  States Citizenship and Immigration Services and ICE.

14        MR. RAPP:  Right.  So, you know, that particular

15  federal agency is not involved in this case in any respect.  In

16  other words, they're not one of the investigating agents on the

17  case, those three agencies, the United States Postal Service,

18  the FBI, and the IRS.  They do not factor into any of the

19  investigations of the trafficking cases that will be presented

20  at trial.

21        There is one case that involves Homeland Security

22  investigations, and so all we asked was that the -- that

23  particular agency be substituted for Homeland Security, because

24  they're not going to hear any evidence about the U.S. Customs

25  Enforcement, ICE.

1          THE COURT:  Okay.  And the defense -- it's written

2  defense objects to replacing USCIS and ICE with Homeland

3  Security.  Does someone from the defense want to answer what

4  that objection means?

5          MS. BERNSTEIN:  Your Honor, as best I recall, and,

6  forgive me, because this was about a year ago, but as best I

7  recall, we just wanted all of the federal law enforcement

8  agencies listed, felt that that was what we were targeting for

9  the jurors.  I don't know that there aren't instances where ICE

10  was later involved, or UC -- USCIS was later involved, I don't

11  know, and perhaps Mr. Rapp can proffer if anyone ever sought or

12  obtained any type of visa or anything as a result of any of the

13  allegations, if so, that might be relevant.

14          THE COURT:  Okay.  Anyone else?

15          (No response.)

16          THE COURT:  Okay.  I'm inclined -- as I read the

17  question, the goal is to find out if anybody has any experience

18  in law enforcement.  So I'm not sure that it -- just because

19  United States Citizenship and Immigration Services might not be

20  involved in this case, it still could be a relevant answer to

21  their experience with law enforcement, because the question

22  asks about state and local police officers, sheriffs, troopers,

23  military police, so I'm inclined to leave United States

24  Citizenship and Immigration Services in, as well as Homeland

25  Security.

1          Does anybody have anything else they want to put on

2     the record about that question?

3          MR. RAPP:  No, Your Honor.

4          THE COURT:  Okay.  Page 13, which is the end of

5     question 41, it says, defendants object to the use of the word

6     victim.  The government objects to the used phrase other

7     interested parties as a substitution for victim.

8          I'm going to leave victim in there only because it

9     talks about test -- family or close friends testifying in court

10    proceedings.  I would think it would be relevant to know

11    whether, if it was a criminal case, they were testifying as a

12    victim or just a witness, so I'm going to leave the word victim

13    in and strike other interested party.

14         Question 43, which has three parts, I'm striking the

15    entire question, only because I don't like the way it's

16    phrased.  I think it's set up to -- to not be a fair question,

17    because there is nothing in here explaining to the jurors or

18    asking them if they understand the rights that govern a

19    criminal trial.

20         I would suggest including something like this -- and

21    I'm taking this from a different questionnaire -- that reads:

22    The law requires the government to prove defendant guilty

23    beyond a reasonable doubt.  Each defendant is presumed by law

24    to be innocent until proven guilty beyond a reasonable doubt.

25    This means the defendant is not required to produce any

1    evidence or prove innocence.

2              Then a follow-up question:  Do you understand those

3    principles of law?

4              And a follow-up question:  Do you agree with this

5    principle -- these principles?  Yes or no?  If no, please

6    explain.

7              What's the government's position?

8              MR. RAPP:  No objection to that question as read.

9              THE COURT:  And, let's see, for the defense, let's

10   start with Ms. Bernstein?

11             MS. BERNSTEIN:  Your Honor, I think that preamble

12   makes sense.  And after what the Court read, we would request

13   that we still include those three questions, A, B, and C, to

14   follow what the Court read in the initial questions that the

15   Court read.

16             THE COURT:  Okay.  Mr. Lincenberg?

17             MR. LINCENBERG:  I agree with what Ms. Bernstein just

18   stated, Your Honor.

19             THE COURT:  Okay.  Mr. Feder?

20             MR. FEDER:  Same, Judge.  We would request what

21   Ms. Bernstein recommended and with the Court's preamble that

22   you stated.

23             THE COURT:  Okay.  Mr. Cambria?

24             MR. CAMBRIA:  Yes, I agree with that as well, Your

25   Honor.

1          THE COURT:  Mr. Eisenberg?

2          MR. EISENBERG:  I agree as well, Your Honor.

3          THE COURT:  And, Ms. Bertrand?

4          MS. BERTRAND:  Agreed.  Thank you.

5          THE COURT:  Okay.  So I'll add A, B, and C, however,

6    I'm not going to do this:  Agree strongly; agree somewhat;

7    disagree strongly; disagree somewhat.  It's either just going

8    to be agree or disagree, but I'll include the questions.  Okay.

9          MS. BERNSTEIN:  Thank you, Your Honor.

10         MR. FEDER:  You're going to keep the why question,

11   though, right, Judge?

12         THE COURT:  Yes.  Do you agree with these principles,

13   and, if no, please explain, yes.

14         MR. FEDER:  Okay.  Sure.  Thank you.

15         THE COURT:  Okay.  Page 16, question 50, the

16   defendants object to the term victims.  In this question I

17   agree with that objection, so I'm going to take out the term --

18   the word victims.  And so it will read:  Organizations that

19   advocate for human trafficking, sex trafficking awareness, or

20   the prevention of sexual exploitation of women.

21         51, the defendants object to the inclusion of the term

22   child exploitation.  I agree in this context.  I think the

23   context in which it's involved in this case is through either

24   prostitution, sex trafficking, or human trafficking, and child

25   exploitation really doesn't add anything, so I'm going to

1       strike that one.

2               On page 18, question 63, the government objects to the

3       use of the term escort services.

4               Mr. Rapp, can you tell me why you object to that in

5       the context of this question.

6               MR. RAPP:  Well, so, you know, it's really

7       prostitution services.  I think escort is sort of a misnomer.

8       So we would -- we would ask that it's -- because it suggests

9       that escort services is somewhat legal.  And, as we know, it's

10      only legal in a very a small county in Nevada, so it's really

11      prostitution services is really the right.  And so it should

12      really just read:  Do you have strong feelings about people

13      working in legal adult entertainment industry, or has someone

14      close to you ever been affected by this type of service?

15              THE COURT:  Okay.  Does anyone from the defense want

16      to respond?

17              MS. BERNSTEIN:  Yes, Your Honor.  Escort services are,

18      in fact, a legal and -- legal and regulated form of adult

19      entertainment.  There are restrictions in your state of Arizona

20      that regulate adult escort services.  For Mr. Rapp to insinuate

21      that it is synonymous is, unfortunately, not true, and we are

22      trying to establish whether any jurors do have strong feelings

23      about the fact that it is a lawful, legal, regulated industry.

24              THE COURT:  So I guess I did think there was a

25      distinction between escort services and prostitution services,

1   so I guess that's the main thing, or one of the issues involved

2   in the case, so I'll leave it as is.

3           The government's objection is overruled.

4           Page 19, it just says defendants object, under

5   question 67, so I'm assuming that's just a -- you don't want

6   the question asked.

7           Ms. Bernstein, do you know why?

8           MS. BERNSTEIN:  I apologize, Your Honor, I'm not

9   entirely sure what the objection was related to.  And if anyone

10  else does, they can jump in, but I think it was just to the

11  entirety of the question.

12          And, Your Honor, I'm sorry, as I look at this, I mean,

13  it's a question that seems to -- we object to the entirety of

14  the question.

15          THE COURT:  Okay.  And I'm guessing because the

16  defendants object, the prosecution wanted it, so Mr. Rapp.

17          MR. RAPP:  We think it's fair to ask a potential jury

18  and -- juror in this particular case whether they think

19  prostitution should be legalized.

20          THE COURT:  Okay.  Anyone else from the defense on

21  that?

22          (No response.)

23          THE COURT:  I'm going to allow question 67.

24          MR. LINCENBERG:  Your Honor, if I may add argument

25  here.  I think that the argument here was -- and I apologize, I

UNITED STATES DISTRICT COURT

1  don't think we knew that we were going to go through these at

2  today's hearing question by question.

3          But the objection here is that the jurors shouldn't be

4  allowed to speculate here as to what prostitution is.

5  Prostitution is defined differently in different states and the

6  like, and this question as worded, I think is vague and can be

7  misleading.

8          THE COURT:  Okay.  And just as a follow-up, I'm --

9          Elaine, can you get me the text order setting today's

10 hearing.  Didn't it say we were going over the questionnaire?

11         Okay.  While she's looking that up, we'll go on.

12         Question 68, defendants object to references to child

13 prostitution or trafficking of children.  I think I know why

14 the defendants object, but I don't want to put words in

15 anyone's mouth, so does anyone want to expound on that

16 objection?

17         MS. BERNSTEIN:  Sure, Your Honor.  And I'd also like

18 to just reference by incorporation all of the motions and

19 motions in limine that we filed similarly objecting to these

20 phrases.  They're prejudicial.  They assume a conclusion that

21 has not yet been established, and we think that it's very

22 prejudicial and inflammatory to include in the questionnaire

23 these types of phrases.

24         THE COURT:  Anyone else?

25         (No response.)

1          THE COURT:  Okay.  I'm going to -- I'll sustain the

2     objection, remove question 68.

3          All right.  The next objection is on question 79,

4     defendants object to the use of the term victim and child in

5     this context.  So let me reread the question.

6          Okay.  So I've already ruled on the fact that the term

7     victim can be used in the trial with respect to some of the

8     charged counts, so I'm overruling the objection to that.  I do

9     think that the question is just as informative if the second --

10    I'm sorry, third sentence, if we take out the word child, so

11    that it reads:  Victims and witnesses may testify about their

12    experiences with prostitution, sex trafficking, and may

13    describe their experiences using vulgar or sexually graphic

14    language.  So I would propose taking out -- sustaining their

15    objection and taking out child.

16         Does the government want to be heard?

17         MR. RAPP:  Well, I would just say that five of our

18    witnesses who will testify were under age at the time they were

19    trafficked on Backpage, and so I think it would be important to

20    know if -- if a potential juror would find that to be something

21    they couldn't sit through or make a fair and impartial

22    determination based on that.

23         MR. LINCENBERG:  And, Your Honor --

24         THE COURT:  Yes.

25         MR. LINCENBERG:  Your Honor, Gary Lincenberg.  Both

1   with regard to the word child, as well as the word victim, and

2   I understand that the Court ruled on use of the term victim,

3   which we strongly believe is an erroneous ruling, and I think

4   it's very important for the Court to again consider this,

5   because this is the first opportunity at which this jury pool

6   and these jurors are going to be prejudiced.  Because from this

7   questionnaire they will assume that the Court agrees with the

8   prosecution that customers of Backpage who voluntarily came to

9   Backpage and placed ads are now going to claim to be victims of

10  the fact that Backpage ran an ad.

11          It assumes a conclusion.  It assumes that somebody

12  who -- there is no evidence that any of these people engaged in

13  prostitution because Backpage pushed somebody into it.  There

14  is no evidence that Backpage told some prostitute or pimp to

15  lie or do whatever they did with their ads.  And to come in

16  with questionnaires saying, you're going to be hearing from

17  victims, which basically is saying victims of the crimes of

18  which these defendants are charged, is highly prejudicial, and

19  it's going to set a tone for this entire trial which puts the

20  defendants in a position where they have to prove their

21  innocence.  And it should not be permitted during the trial, it

22  should certainly not be permitted in a jury questionnaire where

23  jurors are -- are from the get-go, basically, told that these

24  people who are going to take the stand are, quote, victims, or

25  assuming -- and it's going to assume as well that Backpage knew

1    that somebody was a child, that they weren't lied to, and that

2    they were somehow involved in child sex trafficking, of which

3    there is no evidence and it assumes a conclusion.  And it

4    really assumes it with the child portion of it, something

5    that's not even relevant to the elements of the offense.  So on

6    behalf of my client, we strongly object to these terms being

7    used in the questionnaire.

8              THE COURT:  Okay.

9              MR. BIENERT:  Your Honor this is Mr. Bienert.  If I

10   could just add.  I think it's implied in what my colleague

11   said, but I didn't hear anybody expressly say it.

12             The biggest issue I have with this is, even assuming

13   the government is right on any or all of their prostitution

14   charges, prostitution -- if someone who purposefully was a

15   prostitute and purposefully placed an ad on Backpage, they're

16   certainly not necessarily a victim.  They're probably a

17   coconspirator, but there are -- you know, it's a bigger social

18   issue, of course, Your Honor, but everyone has different takes

19   on whether a person who is an adult, who knowingly and

20   voluntarily engages in prostitution is a victim or not.  I

21   think under the law they're not.  They're a person who engaged

22   in an illegal act of prostitution.

23             So I think to add to what Ms. Bernstein said and

24   Mr. Lincenberg said, this isn't a case about people who are

25   necessarily victims.  It's a case that's charged about

1    prostitution.  And if these people were prostitutes, then

2    they're coconspirators.  But labeling them victims, as

3    Mr. Lincenberg says, is already telling the jury that everybody

4    here is a victim when, at least facially, they're not at all.

5    So it's just unduly prejudicial.  And it's very hard for us to

6    climb out of that hole if, right out of the box, everyone who

7    supposedly advertised on Backpage, according to the government,

8    is a victim.

9              THE COURT:  Mr. Rapp, do you want to be heard?

10             MR. RAPP:  Well, again, there will be five women that

11   will take the stand.  Most of them were trafficked on Backpage

12   by a pimp, and they were either 14 or 15 years old.  They are

13   victims, sorry, they're not a coconspirator.  And the question

14   is if you are chosen as a juror, you must be able to discuss

15   the evidence and those sexually explicit topics with your

16   fellow jurors as you deliberate on the evidence.

17             I think my -- defense counsel is missing the point of

18   the question.  This is going to be high -- you know, it's going

19   to be difficult testimony for them to hear, and so we should

20   know if they are going to be able to deliberate on these type

21   of topics.  And so, for that reason, we should have -- we

22   should include the question.

23             So, you know, these cases, they're victims, they've

24   been -- most, if not all, of their cases were prosecuted at the

25   state or federal level.  Somebody went to prison, in most

1    cases, for trafficking them and posting their text and images

2    on Backpage so...

3              MR. LINCENBERG:  A more neutral way of stating this,

4    and it would achieve the same purpose that Mr. Rapp wants to

5    achieve, would be to say:  Prostitutes may testify about their

6    experiences with prostitution.

7              MR. FEDER:  Or advertisers.

8              MR. RAPP:  Judge, we don't view child sex trafficking

9    victims as prostitutes.  They are child sex trafficking

10   victims.  They're not prostitutes.

11             MS. BERNSTEIN:  Your Honor, if I may be heard for a

12   quick second?

13             THE COURT:  Yeah.

14             MS. BERNSTEIN:  I do agree with Mr. Rapp that it is

15   important to get the potential jurors, we do need to know if

16   they are okay looking at sexually explicit images, which is

17   what Mr. Rapp said, and that's what this question is designed

18   to achieve.  Whether we label someone a victim or not is really

19   part of what this trial is about and so it does seem overly

20   presumptive to do that at this stage.

21             I also just want to suggest that the third, or fourth

22   sentence, excuse me, the one that reads:  Sexually provocative

23   images of victims and witnesses may be introduced into

24   evidence, I think if we just say sexually provacative images

25   may be introduced into evidence, that that's exactly what we're

1    trying to establish with this question.

2          So I think that -- you know, I understand the Court's

3    ruling on that first phrase, I think the second part there can

4    be struck while we're all getting at what we want with this

5    question.

6          MR. CAMBRIA:  Your Honor, if I might add something.

7    Paul Cambria.

8          I think that by saying that conclusion to the jury,

9    and the Court saying it, it sounds like the Court agrees that

10   the government has already proven that somebody is or was a

11   victim, and that's the part that bothers me.  And I think that

12   the real goal on the part of the government is to have

13   everybody labelled as a victim, and that tells the jury that

14   something has already happened that's violated the law.  And I

15   think that that's unfair to the defendants here.

16         If the government feels that's their truth, then they

17   should prove it, but we shouldn't start right off by telling

18   the jury they're already there.  They've already accomplished

19   demonstrating that somebody has been victimized.  That's a

20   matter of proof at the trial.

21         THE COURT:  Okay.  Anyone else?

22         MR. FEDER:  I join.

23         THE COURT:  Mr. Feder, did you want to say something?

24         MR. FEDER:  I join in those comments.  This is not the

25   typical case where you've got a pretty well understood victim

1    and a pretty well understood defendant.  And what the

2    government's trying to do is create a presumption here that

3    there are victims, when that's really what the case is about.

4         THE COURT:  Okay.  I'm not changing my earlier ruling,

5    however, I will take Ms. Bernstein's suggestion to change that

6    one line to read just:  Sexually provacative images may be

7    introduced into evidence.

8         Okay.  On page 22 there is objections to the word

9    victim again.  I do agree in the context of these questions the

10   goal is to find out whether because someone is an ethnic

11   minority or of a low socioeconomic status or have experienced

12   homelessness, whether those issues would affect a juror's

13   evaluation of them, so the fact that they're a victim wouldn't

14   really be -- or shouldn't be relevant to that issue.  So I'm

15   going to strike question 82.  I'm going to keep 83, 84, and 85,

16   but take out the words victims and, so it will just read:  Some

17   of the witnesses in this case in each of those.

18         Does the government want to be heard on that since it

19   was you who wanted the word victim in?

20         MR. RAPP:  Well, again, victims are going to testify

21   in the trial.  They were underage at the time they were

22   trafficked.  Their cases were prosecuted.  They were viewed in

23   a criminal prosecution as a victim.  They will testify as being

24   victims of a pimp and who posted them on Backpage, and so,

25   obviously, we feel strongly the child sex trafficking victims

1   are victims and should be referred to that in the

2   questionnaire.

3          THE COURT:  Okay.  Thank you.  So those are the only

4   changes or rulings that I had to comment on.

5          Does the government have anything else about the

6   questionnaire that you want me to consider?

7          MR. RAPP:  No, Your Honor.

8          THE COURT:  Ms. Bernstein?

9          MS. BERNSTEIN:  Your Honor, we would like to suggest

10  that in light of the fact that the world has changed

11  dramatically in the past year, and even the past month, there

12  were a couple of additional questions that we had hoped to

13  propose that we think are important to touch on since we are in

14  a different political and social climate than we were a year

15  ago.  We'd like if we could have a couple of days, whatever

16  meets the Court's schedule -- I'm not sure when the Court is

17  sending this out -- a couple of days to put those together,

18  confer with the government, and resubmit that to the Court.

19         THE COURT:  Let's see.  Our final trial management

20  conference is July 16th.  I need to have this to the jury

21  office four weeks before that.  So we're at the 7th, so we have

22  a couple of days.

23         Let me just talk with Elaine for a second.

24         (Off-the-record discussion we held between the Court

25  and the courtroom deputy.)

1          THE COURT:  Okay.  If you can get it to me by the end

2     of the day Thursday, I know that's not a lot of time, but then

3     I have to look at it and try to incorporate it and get it to

4     the jury office.  So I can give you until then.

5          MS. BERNSTEIN:  Thank you, Your Honor.

6          THE COURT:  Okay.  Mr. Lincenberg, anything --

7          MR. LINCENBERG:  No.  I was agreeing.  I was saying

8     thank you as well.  Thank you.

9          THE COURT:  Okay.  And was there anything else you

10    wanted to bring up?

11         MR. LINCENBERG:  No, Your Honor.  I think that

12    Ms. Bernstein covered that point.  That's what we had been

13    discussing beforehand, and I appreciate the Court's indulgence

14    on it.

15         THE COURT:  Okay.  Mr. Feder, anything to add or

16    request?

17         MR. FEDER:  No.  Thanks, Judge.

18         THE COURT:  Ms. Bertrand, anything to add?

19         MS. BERTRAND:  Judge, may I ask the Court to clarify.

20    Is the Court saying it is not going to collect the names of the

21    potential jurors?  Maybe I misunderstood the Court.

22         THE COURT:  I am not collecting the names.

23         MS. BERTRAND:  Okay.  In that -- at that point, Your

24    Honor, I would object.  I would be happy to submit briefing on

25    it.  I don't know that either side has asked for an anonymous

1    jury, and the bar for that is quite high.  And I don't know

2    that we got any notice of that, otherwise I would have been

3    prepared to discuss it today, but I would --

4              THE COURT:  Well, I'm not saying you're not getting

5    their names.  Their names are not going to be on the

6    questionnaire.

7              MS. BERTRAND:  Okay.

8              THE COURT:  Sorry.

9              MS. BERTRAND:  Sorry, Judge.

10             THE COURT:  Once we screen the questionnaires and we

11   get our final random list, it will have the names.

12             MS. BERTRAND:  Okay.  Thank you.  I apologize.  I --

13   my --

14             THE COURT:  No.  That's okay.

15             MS. BERTRAND:  -- I heard that.  Thank you for that

16   clarification.

17             THE COURT:  Mr. Eisenberg.

18             MR. EISENBERG:  Yes, Your Honor.  I assumed that we'd

19   be able to relate the juror -- jury -- juror questionnaire to a

20   number given to each juror, and that way we will be able to

21   tell which juror has filled out -- by name, which juror has

22   filled out that questionnaire.

23             THE COURT:  Yes.

24             MR. EISENBERG:  And, Your Honor, with respect to the

25   mechanics of how this will work, is it going to be the Court's

1    procedure to assemble the responses, disseminate them to all

2    counsel, and then we -- on the final management conference, we

3    will be addressing Your Honor on the basis of strikes for

4    cause, or will the Court hold off on strikes for cause until

5    such time as the venire actually is assembled and is brought

6    into the courtroom?

7            THE COURT:  No.  At the final -- okay.  Here's the

8    process.

9            So the day before the final trial management

10   conference, unless there is an issue, everybody will have

11   available to pick up a flash drive with the responses to the

12   jury questionnaires.  I will get them as well that same day.

13           I will go through them that night, and in the morning

14   I'll have my list of people that I believe should be struck for

15   cause, for financial hardship, or some health reason or

16   whatever.  I'll go through my list and get any objections

17   anyone might have or any agreements.

18           Then once I'm done telling you the people that I

19   thought should be struck right off, I'll ask if you have

20   anybody you want me to consider striking.  I'll hear from both

21   the prosecution and the defense.  And then we'll end up with a

22   number of jurors.

23           And depending on how many are left on the list, when

24   -- we'll let the jury office know who was struck.  And then the

25   morning of in-person jury selection, we will get a random list

1    from the remaining jurors.  And I haven't -- I'm not sure if

2    I've decided how many we actually need to call in that final

3    day, but it's usually around 55 or something --

4              Did we say 60?

5              Elaine just reminded me I said 60.  So maybe

6    potentially we'll have -- so, for instance, if at the final

7    trial management conference after we do our strikes, there is

8    80 people left on the list, only 60 are going to be called back

9    in, and you'll get the random list the morning of.

10             And then when people come in person, I'll have

11   everybody introduce themselves in person.  I know we kind of

12   ask them if they know everybody, but now that they're in the

13   courtroom, I'd like them to actually see your faces and see if

14   they know who you are.  And then I just allow counsel to ask

15   follow-up questions based on the questionnaire.  Because this

16   questionnaire is pretty thorough, so you won't be allowed to

17   ask, like, a general question of the whole panel.  This is for

18   follow-up on the questionnaires.

19             Does that help?

20             MR. EISENBERG:  Yes, it does, Your Honor.  I wonder

21   how many questionnaires will be mailed out to the original

22   venire?

23             THE COURT:  I don't have an answer for that.

24             You do.

25             Hold on.  I know we've talked about it, and Elaine may

1    have gotten an answer from the jury office.  Let me check.

2            Well, let me just tell you, the past two trials that

3    I've just done, the prescreens, we had 114 questionnaires

4    returned the last time.  I think they asked more people, but

5    there is always a couple that just don't fill them out.

6            MR. EISENBERG:  The reason I ask, Your Honor -- I

7    don't mean to cut Your Honor off -- but let's assume there are

8    going to be more than 100 questionnaires returned, if we are to

9    get them the day before, that's pretty tight in terms of each

10   one of us looking them over, and then -- at least with respect

11   to defense -- perhaps sharing our thoughts in order to

12   streamline what would happen the next day.  And that's one

13   question I have -- or observation I have.

14           The other is there is a standard bulletin board type

15   questionnaire that is not sent out to the jurors, it's usually

16   asked during voir dire, and I think a lot of that has been

17   subsumed within this questionnaire, things like:  Are you a

18   member, or a member of your family a member of law enforcement,

19   et cetera.  So when Your Honor says we'll only be able to ask

20   questions based upon the responses to the questionnaire, will

21   that -- is that actually -- we're going to be limited solely to

22   the four corners of the answers of the questionnaire?  Am I

23   hearing that correctly?

24           THE COURT:  Yes.

25           MR. EISENBERG:  And if a juror, for example, offers

1   something in response to such a question that takes it outside

2   of the four corners, I assume that we would still be able to

3   follow-up on our questions?

4           THE COURT:  You mean follow-up with that juror on

5   their answer?

6           MR. EISENBERG:  Correct.

7           THE COURT:  Yes.  And then if -- okay.  So I generally

8   trust the lawyers will not abuse my order, so that's my limit.

9   However, I also have been doing this long enough that I

10  understand there are situations that might come up where -- and

11  I didn't pounce on an attorney for following up by saying, does

12  anyone else feel that way, for instance, which is a general

13  question of the panel, but it's related to some specific

14  answer.  So I don't know if that helps.

15          MR. EISENBERG:  Yeah, it does, Your Honor.

16          And how many strikes for -- not for cause, but

17  strikes, peremptory, are -- are you going to allocate among the

18  defense and the government?

19          THE COURT:  Didn't bring in that piece of paper, but I

20  did do the math the other day.  But I assume we're having 16

21  jurors, just because of the length of the trial I want to have

22  enough alternates, and I believe that meant each side got an

23  extra three peremptory strikes, so I had it at 9 and 13.  Off

24  the top of my head, that's what I'm thinking.

25          MR. EISENBERG:  13 to be divided among all six

1    defendants?

2         THE COURT:  Yes.  But if you have another proposal and

3    you have some authority for that, I'm happy to consider it.

4         MR. EISENBERG:  Right now I don't, Your Honor, but I

5    think that is an issue that comes to my mind, given the fact

6    that we have six different defendants who may have different

7    views, or their counsel may have different views, and their

8    clients, too, may have different views on who should be struck

9    and who shouldn't.

10        THE COURT:  Uh-huh.

11        MR. EISENBERG:  And this is difficult to calibrate

12   because we haven't seen the questionnaires or the answers to

13   the questionnaires.

14        THE COURT:  Okay.  So with respect to the timing, yes,

15   it is difficult to get them the day before and have to go

16   through all of them, but I've done it by myself.  I will see,

17   once we get Thursday to see what additional questions, assuming

18   I can get it edited and to the jury office Friday, I'll ask if

19   we can get it two days in advance, but I think we're getting

20   pretty close to the four-week limit, but I'll talk with them

21   about getting it two days before.

22        MR. EISENBERG:  I think that would be good, Your

23   Honor, if the Court can do that.  I think all defense counsel

24   would appreciate an extra day.

25        THE COURT:  And we'll be doing this at the final trial

1   management conference, so at that time is when I really need to

2   sort of firm up the numbers.  So if you have any information

3   about the peremptory strikes that you want me to consider, if

4   you just get it to me even, you know, a day or two before the

5   final trial management conference, then we can talk about it

6   then.

7          MR. EISENBERG:  Thank you, Your Honor.

8          THE COURT:  Okay.

9          MR. LINCENBERG:  And, Your Honor -- this is Gary

10  Lincenberg.  I -- we can put it -- talk about it then, but I

11  will raise it now as well.  We would request that if the Court

12  is going to be giving the government, I guess, 9 instead of 6

13  or so, that the Court give the defense 15 instead of 10, both

14  in terms of the -- some type of traditional balance, and really

15  also because this is such a lengthy trial, there are six

16  defendants who are going to have some different views on the

17  jurors, so that would be our request.

18         THE COURT:  Okay.  All right.  And we'll firm that up

19  at the final trial management conference.

20         MS. BERNSTEIN:  And, Your Honor, is that conference

21  occurring in person or by Zoom, if you know, because many of us

22  are out of state, so if it's occurring by Zoom, we'll just need

23  to also factor in getting the thumb drive from the Court, or

24  from the jury office.

25         THE COURT:  So I have a note to talk about that,

1   because the special proceedings courtroom is not going to be

2   modified for our purposes on July 16th.  They're not going to

3   start setting it up for our trial until sometime, like, two

4   weeks before.  So I prefer to have it in person, but we would

5   have to be accommodating and not everybody could sit up at one

6   of the nice conference tables.  So, because of that, I'm

7   willing to do it on Zoom -- yeah, I guess that's what I would

8   say.

9        MS. BERNSTEIN:  And that works for us, Your Honor.  I

10  just want to account for the fact that if the thumb drive -- we

11  have to get it somehow, so if it is possible to get it a little

12  sooner from the jury office.

13       Also, if I'm calculating right, I think June 18th,

14  next Friday, would be the four-week limit.  So I think if we

15  get it -- if we get you proposed edits by Thursday, there might

16  be enough wiggle room to get, perhaps, it mailed or just a bit

17  earlier to defense counsel.

18       THE COURT:  I forgot about that.  Yeah, you're going

19  to have to figure out how to get that flash drive, and you're

20  going to have to talk to the jury office about how you're going

21  to get that.  Yeah, you're going to have to make arrangements

22  to take care of that.  I don't know if one person who is local

23  can work with the rest of you to try to get it but --

24       MS. BERNSTEIN:  Okay.  We'll figure that out, but

25  just, of course, the more lead time we have, the better,

1    because there are just logistics with us being out of town, and

2    we are a large group and it is difficult to reach consensus

3    often.

4             THE COURT:  Right.

5             And then I wanted to talk with you all about having an

6    in-person status conference on August 13th at 11:00 for the

7    purpose of going to the special proceedings courtroom, it

8    should be set up by then, so we can discuss the logistics of

9    bench conferences, the witnesses, the jurors, and you can

10   actually see how it's set up.  And I wanted to do it far enough

11   in advance that if something needed to be modified, we had time

12   to do that.

13            Does anyone have any objection to that?  And I'm in

14   trial the following week, so we couldn't really do it the

15   following week anyway.  At least right now I'm in trial.

16            Is there anybody that can't come, or, I guess, if

17   somebody doesn't want to come and you want to leave the

18   responsibility with co-counsel, I don't know.

19            MR. LINCENBERG:  Your Honor, this is Mr. Lincenberg.

20   We don't have an objection to that.  I do want to alert the

21   Court that Mr. Neuman and I were supposed to start a trial last

22   week.  The judge hurt his leg.  He has an operation.  We're now

23   starting the trial in mid July.  We will still be in trial as

24   of August 13th, but I'll make sure somebody from my office is

25   there.

1          THE COURT:  Okay.  All right.  I appreciate that.

2          Ms. Bernstein.

3          MR. FEDER:  Judge, do you have -- unless I missed this

4     -- do you have some kind of diagram or written description of

5     what the modifications are going to be to the ceremonial court?

6          THE COURT:  I don't yet, because I went down there

7     to -- with some people from the Clerk's Office with their

8     drawing, we made some modifications, and then I just never got

9     the modified diagram, but I'll make a note to try to get that.

10          MR. FEDER:  That might be helpful for everybody

11     before -- Mr. Eisenberg and I have been talking about trying to

12     come down to the court to go see.  I haven't been there since

13     one of the swearing ins, I think, so -- and I don't recall it

14     being that much bigger for purposes of the lawyers and

15     auxiliary staff, which is concerning.

16          THE COURT:  It is, they measured it all out, but

17     you're right, maybe with the diagram you don't need to actually

18     physically come in, I just kind of assumed you'd want to.  Plus

19     we need to have you guys try out your electronics to make sure

20     that they function and exhibits can be shown and things like

21     that.  And if we have a set date, then I can have the IT people

22     there.

23          MR. FEDER:  If you could get us a diagram or tell us

24     who to contact to get us a diagram and a description of what

25     they're going to do as soon as possible, then we can start at

```
 1   least talking about that and maybe making suggestions, if
 2   necessary, you know, well before we get that close to trial.
 3            THE COURT:  Okay.  That's a good idea.  Thank you.
 4            MR. FEDER:  I have them every so often.
 5            THE COURT:  All right.  Anyone else?
 6            MS. BERNSTEIN:  Your Honor, as for August 13th, if we
 7   are going to proceed, I would just -- if it's possible to
 8   request that it be, sort of, in the middle of the day so that
 9   out-of-town counsel could fly in and out that same day.
10            THE COURT:  Well, I suggested 11:00 a.m. because I
11   have sentencings in the afternoon and it's later in the
12   morning.
13            MS. BERNSTEIN:  That's perfect.  Thank you.  I'm just
14   selfishly trying to not be away from my daughter too long.
15            THE COURT:  Yes, I can imagine.
16            All right.  Anyone else?  Mr. Cambria, I don't see
17   you, but you're on the line.
18            MR. CAMBRIA:  No, that's fine, Your Honor.  I'll make
19   arrangements to be there.
20            THE COURT:  Okay.  All right.  That's all I had.  So
21   we're at recess and I'll --
22            MR. LINCENBERG:  Your Honor.
23            THE COURT:  Yes.  Who is that?  Mr. Lincenberg.
24            MR. LINCENBERG:  This is Mr. Lincenberg.  I apologize.
25            I did want to ask about one item.  We had a lengthy
```

1    argument on an important motion to dismiss for outrageous

2    government conduct and the Court has yet to rule on that.  I

3    saw that the Court had issued an order on an under seal matter,

4    that's not totally unrelated to it today, but the Court may

5    recall that if the Court finds in our favor on the invasion of

6    the privilege misconduct issues, that there is a variety of

7    remedies.

8            THE COURT:  Hold on one second, because I -- that

9    ruling went out.  I'm having Elaine double check the docket.

10           Has anybody seen it?

11           MS. BERNSTEIN:  No, Your Honor.

12           MR. RAPP:  We have, Your Honor.

13           MR. CAMBRIA:  No.

14           MS. BERNSTEIN:  No, Your Honor.

15           THE COURT:  It was docked under seal, because the

16   motion and the response and the reply were all under seal.

17           It went out June 4th.

18           MR. RAPP:  It's Docket 1168.

19           MR. LINCENBERG:  We have not seen it.

20           MS. BERNSTEIN:  None of defense counsel has received

21   that.

22           THE COURT:  I don't know why you wouldn't be able to

23   see it.

24           MS. BERNSTEIN:  Normally when the Court issues orders

25   or anything under seal, we receive it in the mail, and it does

1    take a pretty significant lag time from when the Court signs or

2    issues something until we can see it.  We're never able to see

3    it on the docket.  I think that is different for the

4    government.

5              THE COURT:  Okay.  I apologize, I didn't know that,

6    but the ruling has gone out and the motion was denied.

7              So, with that, Mr. Lincenberg, does that resolve the

8    questions you were going to ask?

9              MR. LINCENBERG:  Yes, Your Honor.

10             THE COURT:  Okay.  Then we're at recess and we'll talk

11   to everybody on July 16th.  Thank you.

12             MS. BERNSTEIN:  Thank you, Your Honor.

13             MR. LINCENBERG:  Thank you, Your Honor.

14             MR. RAPP:  Thank you, Your Honor.

15             (Proceedings concluded at 5:04 p.m.)

16                      *          *          *

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, CHRISTINE M. COALY, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion of

9   the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12         DATED at Phoenix, Arizona, this 8th day of June,

13  2021.

14

15

16                    /s/ Christine M. Coaly_____
17                    Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25