**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. CR-18-0422-PHX-SMB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | August 9, 2021 |
| Michael Lacey, | ) | 9:02 a.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

BEFORE:   THE HONORABLE SUSAN M. BRNOVICH, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

FINAL PRETRIAL CONFERENCE - CONTINUED FROM 7/16/2021

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                          **A P P E A R A N C E S**

2   For the Government:

3

        U.S. ATTORNEY'S OFFICE
4       By:  **Mr. Peter S. Kozinets**
             **Mr. Kevin M. Rapp**
5            **Ms. Margaret Wu Perlmeter**
             **Mr. Andrew C. Stone**
6       40 North Central Avenue, Suite 1200
        Phoenix, Arizona 85004
7

8       U.S. DEPARTMENT OF JUSTICE
        By:  **Mr. Reginald E. Jones**
9       1400 New York Avenue, NW, Suite 600
        Washington, DC 20530
10

11      U.S. ATTORNEY'S OFFICE
        By:  **Mr. Daniel G. Boyle**
12      312 North Spring Street
        Los Angeles, California 90012
13

14  For the Defendant Lacey:

15
        LIPSITZ GREEN SCIME CAMBRIA
16      By:  **Mr. Paul J. Cambria, Jr.**
             **Ms. Erin E. McCampbell-Paris**
17      42 Delaware Avenue, Suite 120
        Buffalo, NY 14202
18

19  For the Defendant Larkin:

20
        BIENERT KATZMAN
        By:  **Mr. Thomas H. Bienert, Jr.**
21           **Ms. Whitney Z. Bernstein**
        903 Calle Amanecer, Suite 350
22      San Clemente, CA 92673

23

24

25

                    UNITED STATES DISTRICT COURT

1    For the Defendant Spear:

2        FEDER LAW OFFICE
         By:  **Mr. Bruce S. Feder**
3        2930 East Camelback Road, Suite 160
         Phoenix, AZ 85016
4

5    For the Defendant Brunst:

6        BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
         LINCENBERG & RHOW
7        By:  **Mr. Gopi K. Panchapakesan**
         1875 Century Park E, Suite 2300
8        Los Angeles, CA 90067

9

10   For the Defendant Padilla:

         DAVID EISENBERG, PLC
11       By:  **Mr. David S. Eisenberg**
         3550 North Central Avenue, Suite 1155
12       Phoenix, AZ 85012

13

14   For the Defendant Vaught:

         JOY BERTRAND, LLC
15       By:  **Ms. Joy M. Bertrand**
         P.O. Box 2734
16       Scottsdale, AZ 85252

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2      COURTROOM DEPUTY:  On the record in CR-18-422, United

3  States of America versus Michael Lacey and others, before the

4  Court for a final pretrial conference.

5      MR. RAPP:  Good morning.  Kevin Rapp on behalf of the

6  United States, also appearing is Reginald Jones, Margaret

7  Perlmeter, Peter Kozinets, Andrew Stone, and Daniel Boyle, all

8  on behalf of the United States.

9      THE COURT:  Mr. Cambria, we can't hear you.

10     MR. CAMBRIA:  I'm sorry.  Paul Cambria and Erin Paris

11  on behalf of Mr. Lacey who is on the screen.  Good morning,

12  Your Honor.

13     THE COURT:  Good morning.

14     MS. BERNSTEIN:  Good morning, Your Honor.  Whitney

15  Bernstein on behalf of Jim Larkin who is also present, and

16  joining me is Tom Bienert and Toni Thomas as well.  Good

17  morning.

18     THE COURT:  Good morning.

19     MR. FEDER:  Bruce Feder for Scott Spear who I believe

20  is also on.

21     MR. PANCHAPAKESAN:  Good morning, Your Honor.  Gopi

22  Panchapakesan on behalf of John Brunst who is also on the call.

23     MR. EISENBERG:  Good morning, Your Honor.  David

24  Eisenberg on behalf of Andrew Padilla.  We waive Mr. Padilla's

25  presence for this hearing.

1          THE COURT:  Okay.

2          MS. BERTRAND:  Good morning, Your Honor.  Joy Bertrand

3    appears for Joye Vaught.  We waive her appearance for today's

4    hearing.

5          THE COURT:  Okay.  And I have several things to go

6    through with you since the last hearing.

7          The first thing is I received the parties' request to

8    strike other jurors for cause and any objections that were

9    submitted, so I'm just going to go through those with you.

10         Juror 53, I'm granting that.  That juror will be

11   struck.

12         Juror 82 is denied.

13         84, denied.

14         112, granted.

15         119, granted.

16         169, denied.

17         172, denied.

18         185, granted.

19         231, denied.

20         243, grant.

21         306, grant.

22         413, deny.

23         420, deny.

24         507, deny.

25         519, grant.

1              607, grant.

2              885, deny.

3              927 I have, and I checked with Elaine, as already

4      excused.

5              970, granted.

6              1044, granted.

7              1163, granted.

8              1231, granted.

9              1254, granted.

10             1373, granted.

11             1488, granted.

12             1537, granted.

13             1647, granted.

14             1850, denied.

15             And then 1931 I am assuming was 1913.  I didn't have a

16     1931.

17             MS. BERNSTEIN:  Yes, Your Honor.

18             THE COURT:  Is that correct?

19             MS. BERNSTEIN:  That's correct, Your Honor.

20             THE COURT:  Okay.  That is granted.

21             1928, granted.

22             And 1981, granted.

23             I believe that's all of them.  Ms. Bernstein, did you

24     notice that I missed anybody?

25             MS. BERNSTEIN:  I didn't, Your Honor.  I believe that

1    that is all of them, but for the ones that we received on

2    Friday from the Court.

3            THE COURT:  Oh, right.  And I haven't gone over those.

4    Hold on.  Let me see if I brought them in.

5            Okay.  I didn't bring those in, so let me go through a

6    couple other things and then we'll come back to those.

7            Okay.  For just a little more information about the

8    jury selection process.  So as I look at the diagram for the

9    special proceedings courtroom, I believe we can get 36 jurors

10   in there at a time, so we'll do 36 jurors at a time.

11           And, as a reminder, we did -- I allowed you guys a

12   pretty lengthy questionnaire, with the goal that your -- during

13   the in-person voir dire, that will be limited to only follow-up

14   questions based on a juror's questionnaire.  There won't be

15   any -- I'll ask some general questions of the jury just to see

16   if anything has changed and things like that, anything that I

17   think I need to cover, but your questions are limited to

18   follow-up questions.

19           Does anybody have any questions about that?

20           (No response.)

21           THE COURT:  That means that additional staff, other

22   than the attorneys, if you have paralegals that are helping,

23   they'll have to watch from upstairs, because we need to use all

24   of the seats for jurors.

25           With respect to jury selection, I have received the

UNITED STATES DISTRICT COURT

1   defendants' joint motion for additional peremptory challenges

2   and the government's response.  I will note that I think I

3   misspoke last time under -- I anticipate 16 jurors, so that's

4   four additional jurors, four alternates, which means under Rule

5   24, the government would have 8 strikes and defense would have

6   12.  I think I said 9 and 13 at the last hearing.

7        So using those numbers, I am -- well, one, there isn't

8   any really convincing caselaw out there that convinces me that

9   I need to grant additional strikes, however, given the number

10  of defendants, I'm going to grant the request in part.  I'm

11  going to -- sorry, grant an additional three strikes for the

12  defense, for a total of 15.  That allows the defendants to

13  split them up evenly if you choose to do it that way.  And the

14  government will be granted one additional strike and have 9.

15  So the government will have 9 strikes, the defense will have

16  15.

17       Does anybody have any questions about that or

18  comments?

19       MS. BERNSTEIN:  Your Honor, this is Whitney Bernstein.

20  I'm sorry, I'm a little bit sick today.

21       I wanted to ask the Court if the Court would consider

22  having additional alternate jurors, given the duration of the

23  trial, given all of the COVID issues, we're just afraid that

24  it's pretty foreseeable that we might lose more than four

25  jurors over the course of the trial, and to prevent a very

1   foreseeable mistrial, we wanted to know if the Court would

2   consider additional alternates.

3       THE COURT:  I will consider additional alternates.

4   Let me look at the courtroom again when we're there.  The last

5   time I went into the courtroom, I had anticipated 16, so I knew

6   exactly where they were going to sit, and I just can't remember

7   how much room we have on that side.  So when we go in on

8   Friday, we can finalize that.

9       MS. BERNSTEIN:  Thank you.

10      THE COURT:  All right.  The third thing I wanted to

11  talk about is I understand that there were some questions

12  regarding COVID protocols directed at the Clerk of Court, and

13  I'm just telling you that you need to direct those questions to

14  me.  The Clerk of Court can't make decisions about how the

15  trial is going to run or any protocols that I put in place, so

16  you need to direct those questions to me.

17      Then I have reviewed Document 1200, which was the

18  status report requesting some pretrial discussion on jury

19  instructions.  And my thought was that we should discuss that

20  in person on August 13th and move the hearing to 9:30 a.m. so

21  that we have time to do that.

22      Is there anybody that cannot be here at 9:30 a.m. on

23  August 13th?

24      MS. BERNSTEIN:  Your Honor, I believe that works.

25  We'll just need to change our flights, but I believe that's

UNITED STATES DISTRICT COURT

1  fine.  We'll alert the Court if that's a problem.

2          THE COURT:  Okay.

3          MR. FEDER:  Judge, this is Bruce Feder.  I'm trying to

4  get retested likely tomorrow.  If I am positive, I, obviously,

5  can't come in.

6          THE COURT:  Right.  And we'll have to make

7  arrangements for that.  So just let me know as soon as you find

8  out.

9          Let's see, Document 1181, which was entitled a

10  supplement to a previous motion, I had previously denied

11  Document 1171, and so I sort of consider this as a motion to

12  reconsider.  Under the standards for a motion to

13  reconsideration, Doc. 1181 is denied.  I did consider counsel's

14  request for an in camera review of the instructions in

15  Document 1171, and when I denied that motion, that request was

16  also denied.

17          With respect to trial process, we'll have more

18  discussions, but just a couple of general rules that I tell

19  attorneys and their clients in every case.  And the first one

20  is to be on time, especially for the clients.  But we are

21  asking these jurors to give us a lot of time, and there will be

22  delays throughout the trial, so I don't want there to be delays

23  because somebody is late coming back from lunch or late getting

24  here in the morning, so everybody needs to be on time.

25          For the attorneys throughout the trial, one of my

1  biggest pet peeves is when attorneys try to make long, lengthy

2  argument when they're making an objection.  So there should be

3  no speaking objections.  I have been doing this a long time, I

4  know how to rule on objections.  If I have a question, I

5  will -- we're going to figure out a way to -- how to handle

6  those.

7           If you think you need to make an additional record,

8  you can ask to approach.  If I don't let you, I will always let

9  you make the record at the next break.

10          For opening statements, I do want to know if anybody

11  is using a PowerPoint, and I'm inclined to order whoever is

12  using a PowerPoint to provide it to all other counsel 24 hours

13  in advance.

14          Does the government have any objection to that?

15          MR. RAPP:  Well, I think that -- that the -- here's

16  our objection is that whatever the objection the opposing side

17  would have would be to any proposed exhibits that we would be

18  using in the PowerPoint.  And so what I would ask is that we

19  provide the exhibits, we can either provide the exhibit numbers

20  or the actual exhibits themselves to the opposing side, and

21  they can object to what exhibits we intend to show in the

22  PowerPoint.

23          The PowerPoint itself is, though it's an opening

24  statement and not argument, definitely has the theory of the

25  parties.  And so I can't imagine what the objection would be of

1   the exhibit that's going to be used.

2          THE COURT:  I'm sorry, you cut off.  What the

3   objection would be to what?

4          MR. RAPP:  If that's directed at me, the -- it would

5   only -- it would only be the case that the defense, or the

6   prosecution, for that matter, would have an objection to the

7   actual exhibit that is being presented in the opening

8   statement, not to the PowerPoint itself.

9          THE COURT:  Okay.  Ms. Bernstein, do you want to be

10  heard on that?

11         MS. BERNSTEIN:  Yes, Your Honor.  I think that context

12  will matter as well, so it's not simply the exhibit that the

13  government intends to use, but it's also the context in which

14  they intend to use it.  I don't know how we can assess that

15  without some additional information.

16         Further, the government's exhibits -- and I think we

17  addressed this in the status report -- but the government's

18  exhibits are over 2,500 exhibits, and the way they've provided

19  them to us just indicates the Bates number.  Some exhibits have

20  over a hundred Bates pages that comprise one exhibit, and it's

21  taken us hours to pull them.  We're not even close to being

22  done.  We've asked the government to provide those exhibits to

23  us, but certainly as any part of a 24-hour notice that they

24  intend to argue, we also would request that just one exhibit be

25  provided to us.

1        THE COURT:  And as far as you providing any PowerPoint

2   or exhibits that you intend to show in openings, do you have

3   any objection?

4        MS. BERNSTEIN:  Your Honor, would this apply as well

5   if we intend to use the Elmo or just PowerPoint?

6        THE COURT:  Yes, it would.  The idea is that I don't

7   want anything, especially in a case like this, anything shown

8   to the jury that, you know -- because, I mean, the rules allow

9   you to show exhibits, obviously, if you have a good faith basis

10  to believe it's going to be admitted, but there are so many

11  objections in this particular case, that that is why I want the

12  parties to be able to object ahead of time before it's shown to

13  the jury.  So, yes, anything you plan to show to the jury, I

14  want everybody to know about.

15       MS. BERNSTEIN:  So, Your Honor, all I would say is

16  that our opening statements are going to shift and depend on

17  what the government says in its opening.  And so perhaps we can

18  have a break and we can exchange exhibits that we would want to

19  show, but we won't be prepared to do that 24 hours in advance

20  since our opening statements are going to be reactionary to

21  what the government says.

22       THE COURT:  You won't have an anticipated opening

23  statement prepared?

24       MR. BIENERT:  Your Honor, this is Mr. Bienert.  I'm

25  going to jump in.

1          I think I'll be doing the opening, and I do think I'll

2    have an anticipated, but I do -- I have no problem with the

3    exchange 24 hours.  What I would say, Your Honor, is if for

4    some reason something does change, or there is something else I

5    want to say or do because of the government's opening, I would

6    want to alert the Court and the government in the break in

7    between.

8          THE COURT:  Yes.

9          MR. BIENERT:  But we can certainly exchange 24 hours

10   in advance.

11         THE COURT:  And, yes, I think that's fair.  Obviously,

12   you do have some reaction.

13         All right.  Does anyone else want to be heard about

14   the opening disclosure?

15         (No response.)

16         THE COURT:  Okay.

17         MR. RAPP:  Well, can I interject?  I just want a

18   clarification on that.

19         THE COURT:  Well, hold on.  Hold on.  Hold on.

20         Mr. Bienert, I did want to clarify with you.  So the

21   government objects to disclosing PowerPoints but doesn't object

22   to disclosing any exhibits they intend to show.  What's your

23   position on the distinction?

24         MR. BIENERT:  Obviously, I think we should both be

25   doing the same thing, but I think in this case we should

1    probably exchange both.  And the reason I say that is, as Your

2    Honor I think alluded to, I think this case has more dispute as

3    to what is proper to say to the jury or not, and what the --

4    and what we can say to the jury or not than most.  And so to

5    avoid having issues of things being said to the jury that

6    either party thinks shouldn't be said, or ultimately the Court

7    thinks shouldn't be said, I think that we probably should

8    exchange them both.

9              THE COURT:  Okay.  Mr. --

10             MR. BIENERT:  The PowerPoint and the exhibits.

11             THE COURT:  Mr. Rapp, anything final on that?

12             MR. RAPP:  Well, just to re-urge that it really is the

13   exhibits that the opposing side might have an objection to and

14   so that's what should be disclosed.  This would be no different

15   than providing the opposing side the notes or the outline for

16   your opening statement, or your closing argument, for that

17   matter, which would be somewhat unusual.

18             THE COURT:  It would be unusual, but this is an

19   unusual case, so I am going to order that the PowerPoint and

20   the exhibits be disclosed from each side 24 hours in advance.

21   And when I say exhibits, I mean the actual page that you

22   anticipate showing.  So no -- no citing to Exhibit 1, which is

23   50 pages long, give them the actual page that you anticipate

24   showing, or pages.

25             With respect to exhibits during trial, so there are,

1    as the defense has indicated, a lot of exhibits in this case,

2    so what I'm going to order is that 48 hours in advance of any

3    particular day, the government provide the Court and the

4    defense with their anticipated witnesses and the exhibits they

5    intend to use that day.

6          Obviously, I am flexible, because things change during

7    trial, but I know from being a lawyer myself that you have a

8    plan.  So 48 hours in advance you give the -- the Court and the

9    defense the witnesses that will be called that particular day

10   and the exhibits that you intend to introduce.

11         Is there any objection from the government?

12         MR. RAPP:  There is no objection.  You did say

13   prosecution by -- I assume that's a reciprocal obligation on

14   behalf of the defense as well?

15         THE COURT:  Yes, it will be.  I guess I was just

16   anticipating the beginning part, but when we get to the defense

17   case, I will order the same thing.  Actually, I'll just order

18   it right now.

19         Does the defense have any objection to that?

20         MS. BERNSTEIN:  No, Your Honor.

21         THE COURT:  Okay.  And I don't hear it from anybody

22   else.

23         Each day of trial, because there are multiple

24   defendants, I do want to have some idea of who is going to take

25   the primary role of cross on a witness, so -- and from the

1    government.  So each morning I just want the parties to give me

2    the witness list and tell me which prosecutor is going to

3    handle that witness and which defense attorney is handling the

4    main cross, who is starting.

5         Does anybody have any question or objection to that?

6         MR. RAPP:  No objection from the United States.

7         MS. BERNSTEIN:  No, Your Honor.

8         THE COURT:  Okay.  On August 13th, as well, I'll take

9    up some of the issues with the exhibits that the defense

10   brought up, so we'll talk about jury instructions and see what

11   we can do about some of the exhibits on August 13th.

12        I do want to take up Defendant Spear's motion which

13   was filed under seal, so before I -- we seal these proceedings

14   and cut off the public, is there anything else that you guys

15   wanted to discuss that we can't discuss on Friday?

16        MR. RAPP:  Not from the United States.

17        MS. BERNSTEIN:  And, Your Honor, at the conclusion of

18   addressing the under seal motion to continue, will we be

19   revisiting the jury questionnaires or saving that for Friday?

20        THE COURT:  Oh, you know what, let me go grab those

21   and we'll do that before we go under seal, so give me just a

22   minute, I'm going to go back to my office.

23        MR. BIENERT:  And, Your Honor, I have one other issue

24   to raise, whenever it's convenient.

25        THE COURT:  What's that?

1              MR. BIENERT:  This is back on the jury -- and I

2    understand we're only going to ask questions that are

3    follow-up.

4              I did want to raise the issue, we had submitted

5    additional questions that we wanted to ask.  And I know you

6    made your ruling and didn't ask certain on the questionnaire,

7    but the one that I just wanted to revisit was the issue of

8    jurors' reactions, if any, to your spouse.  And the reason I

9    say that is this.

10             I obviously understand Your Honor's position, and I'm

11   not going to retread the issue of whether there is or isn't an

12   appearance of bias in your representations that you can be a

13   neutral judge.  But it's a totally separate issue to me that we

14   should all know, for purposes of peremptories or others, if we

15   have any potential jurors who take a particular -- above and

16   beyond the usual of your husband's policy.

17             THE COURT:  Wait.  I'm sorry, we lost you there.  So

18   just that last sentence.

19             MR. BIENERT:  Yes.  I think that we, the counsel, both

20   government and us, should be able to somehow flag for

21   peremptory or other types of challenges if there are any jurors

22   who say or indicate things that indicate they have a particular

23   focused on view of your husband such that they would have

24   trouble distancing your husband or his views from the trial, et

25   cetera.

1          The reason -- and I certainly don't want to make a big

2     deal of this.  The reason we thought the question we proposed

3     in the questionnaire was a good one is because I think it was

4     pretty neutral and it would only flag jurors who are sort of

5     extreme.  As I recall, it was something like, do you have

6     knowledge of and a position on the attorney general and his

7     policies?  I assume most people are going to say no and that's

8     that.  But if a juror were to write, for example, some extent

9     they do have a position about him and it's rather extreme, it

10    was a good way to flag this where we could then question that

11    juror outside of the presence of everyone else and just see if

12    this is someone who has, for example, a particular affinity for

13    your husband that might make us think we'd rather that person

14    not be on the jury, or, frankly, I would think the government

15    would want to know if they have somebody who says, I don't like

16    him and I would view it as a negative.

17         And so I realize Your Honor did not ask that of the

18    jurors, but it strikes me that it would be appropriate to just

19    have some way to flag any jurors, if there are any like that,

20    we could then question them when other jurors aren't around,

21    and then it would be something that we decide if we use a

22    peremptory because of that or not.  So I wanted to at least

23    address that and say that's why we were trying to do it that

24    way.  And I do think it's something that we should have a right

25    to know about if some juror has a particular bias for or

1    against.

2              THE COURT:  Okay.  Mr. Rapp.

3              MR. RAPP:  We don't take any position on that

4    question.

5              THE COURT:  Okay.  All right.  Well, I'll look --

6    relook at the question.  My -- I did deny that request to put

7    that in there because I don't see any reason to insert my

8    husband into a case that he's not involved in.  But I

9    understand what you've explained to me today, so I will

10   reconsider it before jury selection and we'll talk about it

11   then.

12             Let me make a note to --

13             MR. BIENERT:  Thank you, Your Honor.

14             THE COURT:  Okay.  Give me just a minute.

15             (Court stands in recess, 9:28 a.m. - 9:32 a.m.)

16             COURTROOM DEPUTY:  Come to order.  Court is now in

17   session.

18             Okay.  On Juror 1951, I don't see anything for

19   hardship.  Let me just go to --

20             MS. BERNSTEIN:  Your Honor, question 65 on this juror

21   seems to indicate that this is not the case for this juror to

22   try to sit on -- 66, excuse me.

23             THE COURT:  Oh, what's the government's position?  I

24   tend to agree that's pretty --

25             MR. RAPP:  We don't have an objection.

 1            THE COURT:  Okay.  Juror 1951 will be struck.

 2            I'm sorry, these aren't in order.  The next one is

 3   2025.  I would be inclined to strike this juror for health

 4   issues.

 5            Is there any objection?

 6            MS. BERNSTEIN:  No, Your Honor.

 7            MR. RAPP:  No objection from the United States.

 8            THE COURT:  Okay.  2025 will be struck.

 9            This is 1980.

10            MS. BERNSTEIN:  I'm sorry, Your Honor, what number

11   were you on?

12            THE COURT:  1980.  This --

13            MS. BERNSTEIN:  I don't believe we have a 1980.

14            Does the government?

15            MR. RAPP:  I'm not -- I'm not finding.  I need a

16   second to look in another area.

17            MS. BERNSTEIN:  Your Honor, we don't have a 1980.

18            MR. EISENBERG:  Your Honor.

19            THE COURT:  Yes.

20            MR. EISENBERG:  This is Dave Eisenberg.  I did locate

21   a 1980, and there is a response to one of those questions that

22   said that Your Honor handled this person's parents' divorce,

23   but beyond that there was no other response one way or another.

24            THE COURT:  Well, on --

25            MR. EISENBERG:  And --

1          THE COURT:  -- question one they did answer that it

2    would be a hardship, as he or she is the sole provider of

3    income for the household, but --

4          MR. EISENBERG:  That's correct, Your Honor.

5          THE COURT:  But before I strike that juror, I'm going

6    to have Elaine send this to counsel.

7          Elaine --

8          MS. BERNSTEIN:  Thank you, Your Honor.

9          THE COURT:  -- can you take care of that while I'm

10   doing the other ones?

11         (An off-the-record discussion was held between the

12   courtroom deputy and the Court.)

13         THE COURT:  Okay.  I'm going to move on to 702 and

14   we'll come back.

15         This juror says it would be a financial hardship, as

16   he's the sole provider, and looks like he has three kids.

17         Is there any objection?

18         MS. BERNSTEIN:  No objection, Your Honor.

19         MR. RAPP:  There is an objection from the United

20   States.  He does -- I agree that the juror says he is the sole

21   provider, but doesn't really provide any elaboration on that.

22         I also note that the answer to question 87 indicates a

23   willingness to serve, so, at a minimum, this opens up an area

24   of inquiry for this juror.

25         MS. BERNSTEIN:  And, Your Honor, just to be

1    consistent, Your Honor has struck other people who have

2    indicated that they are the sole provider of income for their

3    household.

4            I hear a lot of feedback.  Can the Court hear me?

5            THE COURT:  Yes.

6            MS. BERNSTEIN:  Your Honor has struck other people

7    that have indicated that they're the sole provider, so we would

8    have no objection, because that's consistent with how we've

9    been dealing with all of these questionnaires.

10           THE COURT:  Okay.  Over objection, 702 will be struck.

11           Let's see, 758.  This juror indicates a lot of

12   concerns about having to stay in a hotel, because apparently

13   they live far away.  They also didn't fill out a lot of the --

14   some of the questions.

15           Let me see.  Yeah, they're just indicating a lot of

16   stress about being away from home for that length of time, so I

17   would be inclined to strike this juror.

18           Is there any objection?

19           MS. BERNSTEIN:  No objection, Your Honor.

20           MR. RAPP:  No objection.

21           THE COURT:  Okay.  758 will be struck.

22           This is a -- from Juror 64, and it's not a

23   questionnaire, it was a, basically, an e-mail asking to be

24   excused for hardship on operations.  I'm not going to strike

25   that juror at this time.  There is not enough information in

1    this e-mail for me to find a hardship.

2           So the next one is 724.  This juror indicates it's a

3    financial hardship as he or she is self-employed and only paid

4    if working, and --

5           MR. EISENBERG:  Your Honor --

6           THE COURT:  -- also has some tie to Mr. Larkin, so I

7    would strike this juror.

8           Is there any objection from the government?

9           MR. RAPP:  No objection.

10           THE COURT:  Any objection from the defense?

11           MS. BERNSTEIN:  No, Your Honor, although I thought

12    Mr. Eisenberg was speaking.

13           THE COURT:  Mr. Eisenberg.

14           MR. EISENBERG:  Your Honor, thank you.  I was just

15    going to point out that this juror's answers to 79 and 80

16    indicate that she couldn't deliberate about matters pertaining

17    to sex, so I think that's another reason why she should be

18    struck.

19           THE COURT:  Okay.  Thank you.  Juror 724 will be

20    struck.

21           The next one is 633.  This juror claims a financial

22    hardship as the sole provider and has scheduled training during

23    trial.  Let me just see what they do.

24           MS. BERNSTEIN:  They're the division chief of the

25    Department of Homeland Security.

1          THE COURT:  The government should provide jury time.

2          MS. BERNSTEIN:  Your Honor, the answer to question 79

3    also very clearly states:  I will not be able to deliberate and

4    discuss openly with fellow jurors.  That's the same for answer

5    80, 81, so the fact that this juror took three times to,

6    knowing their duties, to say that they will not deliberate.

7          THE COURT:  They also, in response to 87, say I cannot

8    be impartial.

9          MR. RAPP:  Says it twice.

10          THE COURT:  All right.  So does the government have

11    any objection?

12          MR. RAPP:  No objection.

13          THE COURT:  633 will be struck.

14          And the last one I have is 1447.  This is a healthcare

15    professional.  I think he's the -- sounds like it might be his

16    own practice.  He claims a financial hardship as well as

17    contact with COVID patients, so I'm inclined to strike this

18    juror.

19          Is there any objection?

20          MS. BERNSTEIN:  No, Your Honor.

21          MR. RAPP:  We object, for the record.  I understand

22    that this is a physician.  It is not as if this is somebody who

23    would likely be in a complete financial hardship that they --

24    they couldn't serve, so we would object.

25          THE COURT:  Yeah, no, I kind of agree with that.  I

```
 1    guess at this particular time I do have some concerns about his

 2    patient for that -- his patients for -- his or her patients for

 3    that long period of time, so for that reason I'm striking him,

 4    or her.

 5              Juror 1447 will be struck.

 6              Okay.  Were you guys able to get to 1980?

 7              MS. BERNSTEIN:  I see the e-mail from Ms. Garcia, but

 8    I'm not able to -- to access it.

 9              THE COURT:  Okay.

10              MR. RAPP:  So you're just asking do we have the

11    questionnaire for 1980?

12              THE COURT:  Yes.

13              MR. RAPP:  Yes, the government has it.

14              MR. EISENBERG:  Your Honor, I have it as well.  And to

15    go back to what the Court was saying, this potential juror

16    indicates that he or she is the sole provider, and indicated a

17    concern about passing -- was concerned about COVID and passing

18    it on to his or her parents who are over 65.

19              And the other thing I mentioned a moment ago is that

20    there is an indication that Judge Brnovich handled her parents'

21    divorce.  I think that was her answer.

22              THE COURT:  And -- I'm sorry.

23              MR. EISENBERG:  There is nothing further beyond -- I'm

24    sorry, Judge -- nothing further beyond that.

25              THE COURT:  Okay.  I will add that under question 87
```

```
1    they ask -- they answer yes that it would -- there is a reason

2    they prefer not to serve.  And this juror said they are

3    financially recovering from COVID and three months without work

4    would destroy their finances, so I'm going to strike Juror 1980

5    for financial hardship.

6            MR. RAPP:  No objection.

7            MS. BERNSTEIN:  No objection, Your Honor, based on

8    those representations.

9            THE COURT:  Okay.  All right.  Oh, and before we seal

10   these proceedings, there was one other thing about lodging your

11   objections.  So, obviously, the parties wanted the objections

12   that we sort of shared through e-mail on the record.  So we can

13   do it one of two ways.  I can simply file the e-mails, or

14   Elaine prepared a chart for me, which I have compared to the

15   e-mails, that outlines what the objections were and the reasons

16   given, and I could file that.  We could show it to you and file

17   that.

18           Mr. Rapp, do you have a preference?

19           MR. RAPP:  No.

20           THE COURT:  Ms. Bernstein, or anybody else?

21           MS. BERNSTEIN:  Your Honor, our slight preference

22   would be to just file the e-mails just to -- for one fewer

23   thing to have to review.

24           THE COURT:  Okay.  Anybody else want to say anything

25   about that?  Given that, I'll just file the e-mails for the
```

1   record.

2           MS. BERNSTEIN:  Thank you, Your Honor.

3           THE COURT:  Okay.

4           MS. BERNSTEIN:  And as for the jurors that are left,

5   is it possible to get a list from Ms. Garcia or the Clerk's

6   Office of who is remaining?  We went a little quickly at the

7   beginning so I think I missed a couple.

8           THE COURT:  Yes, because I'm going to ask her for that

9   same thing to make sure we're on the same page.  So as soon as

10  we coordinate, Elaine and I, we'll send that to you guys to let

11  you know who is remaining.

12          MS. BERNSTEIN:  Thank you.

13          THE COURT:  All right.  Then we're going to go off the

14  record and continue under seal, so we're going to cut off the

15  public line.  Give us just a minute.

16          (Proceedings concluded at 9:49 a.m.)

17                      *           *           *

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           I, CHRISTINE M. COALY, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7           I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 13th day of August,

13   2021.

14

15

16

17                    /s/ Christine M. Coaly_____
                      Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25