GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Michael Lacey, et al.,<br><br>　　　　　Defendants. | No. CR-18-422-PHX-SMB<br><br>**SUPPLEMENTAL MOTION TO CLARIFY EVIDENCE THE UNITED STATES INTENDS TO ADMIT RE VICTIMS ADVERTISED ON BACKPAGE.COM**<br><br>-AND-<br><br>**RESPONSE TO DEFENDANTS' MOTION TO ENFORCE THE COURT'S MAY 7, 2021 ORDERS [Doc. 1254]** |

This motion seeks to supplement and clarify the United States' previous motion to admit evidence of murders implicating Backpage, in light the Court's May 7, 2021 ruling. (Doc. 1155 (the "May 7 Order").) This motion also responds to Defendants' motion to enforce the May 7 Order. (Doc. 1254.) In its May 7 Order, the Court had two primary rulings. First, the Court ruled that the United States will not be allowed to introduce evidence regarding the specific details of third-party murders. (*Id.* at 5.) Second, while the Court denied the United States' request for an order approving evidence of third-party murders, it found that "[s]ome of the evidence, if relevant and properly sanitized, may still be admissible at trial." (*Id.*) This motion discusses *that evidence*—exhibits and testimony that are both relevant and sanitized.

## I. Any Evidence Introduced At Trial Will Be Sanitized

The United States represents that its trial witnesses will not reference any murders. For example, testifying family members who may provide relevant information about a deceased victim's involvement with Backpage will not mention that the victim was murdered. Similarly, testifying law enforcement officers who obtained postings from Backpage during the various investigations will not reference that the investigation involved a murder.[1] These witnesses will only testify that a murder victim went "missing," or may not even reference the victim's status at all. In addition, all exhibits have been redacted in accordance with the May 7 Order to remove any references to the murders or the details of the murders. (These redacted trial exhibits are filed under seal with this motion.)

## II. This Evidence Remains Relevant

Evidence of the prostitution activities underlying these murders involving Backpage is relevant for two independent reasons.

---

[1] Unless the Court determines that fact relevant and not precluded by Rule 403.

### a. Evidence is Relevant to Demonstrate Defendants' Knowledge of Prostitution Activities on Backpage

Defendants' knowledge that Backpage earned nearly all of its revenue through prostitution advertisements is a central issue in this case. (Doc. 1212 at 10 ("the issue of Defendants' knowledge is a 'consequential fact'").) Throughout Defendants' conspiracy they were alerted and aware that prostitutes, as well as child sex trafficking victims, were murdered after posting ads on Backpage. As the Court has made clear, Defendants' knowledge about prostitution advertising occurring on Backpage is highly relevant. (Doc. 1155 at 5.) This knowledge occurred in a number of ways, one of which included lawsuits filed by victims, or relatives of deceased victims. At trial, the United States intends to admit evidence of these lawsuits to demonstrate Defendants' knowledge that Backpage was facilitating prostitution.

### b. Evidence is Relevant to Demonstrate Defendants' Efforts to Conceal the True Nature of Backpage

The evidence is also relevant for the independent reason that it demonstrates Defendants' efforts to conceal Backpage's business practices. For example, Backpage's ex-CEO Carl Ferrer is expected to testify that the pleadings filed by Backpage's attorneys in the lawsuits referenced above were riddled with misrepresentations and omissions. In addition, the evidence will show that when Defendants were confronted by law enforcement, elected officials, lawsuits, or the media, they routinely misled and misrepresented Backpage's true business practices.[2] These misrepresentations and omissions took on a heightened dimension when Defendants were responding to law enforcement and media inquiries regarding murders of prostitutes and child sex trafficking victims posted on Backpage. The evidence will show that Defendants retained public relations firms and attorneys to spin a misleading narrative designed to divert attention

---

[2] These misrepresentations were often conducted through Defendants' agents, including, among others, Edward McNally, Don Bennett Moon, and Elizabeth McDougall.

1 from Backpage's facilitation of prostitution and to lessen the reputational impact and
2 potential liability.

### III. The Specific Evidence To Be Introduced At Trial

The United States provides the following information for how it intends to sanitize both exhibits and testimony consistent with the May 7 Order for the six different murders listed below.[3] Again, the United States does not intend to elicit testimony or admit exhibits that include any details about any of the murders. Rather, the government intends to offer proof that each murder victim solicited prostitution services on Backpage. This evidence will be established through law enforcement agents who investigated the crimes, family members of the deceased victims, and co-conspirator Ferrer. The government anticipates that Ferrer will testify about how he discussed these crimes with Defendants Lacey, Larkin, and Spear, often to formulate a strategy in response, and that Defendants Hyer, Padilla, and Vaught at times took some action to assist in Backpage's response.

#### a. Detroit Crimes

Between December 24-26, 2011, four women were murdered in Detroit after being advertised on Backpage for prostitution. Upon learning about these crimes, Defendants Lacey and Larkin, and others, formulated a strategy to mislead the Detroit Police Department ("DPD") and the public about the event. Specifically, these Defendants pushed the spurious claim that these victims had posted on other prostitution websites, in an attempt to alter the narrative.[4] Ferrer is expected testify that this press strategy was intentionally deceptive for a variety of reasons, including that the other websites were far less popular than Backpage and frequently aggregated their content from Backpage. In fact, Backpage's aggressive response to the Detroit murders became the "blue-print" for

---

[3] The United States will not discuss this evidence during their opening statement and anticipates that the first witness to testify about these murder victims' prostitution activities wouldn't take the stand until mid-September.

[4] *See* Ex. 704, 12/29/11, email between Lacey, Larkin, and McNally (attorney McNally advising that it was beneficial to Backpage if they "mudd[ied] the waters.")

the response to any event that negatively implicated Backpage.[5]  The response included retaining public relations firms to assist in spinning a false narrative.  Defendant Brunst was also involved in Backpage's response strategy and approved the unplanned expenses related to retaining public relation firms and attorneys to address the Detroit crimes.

The United States intends to admit the following exhibits through Ferrer, which demonstrate Defendants' attempts to divert attention from Backpage's involvement with the victims (redactions shown in parenthesis and reflected in attached exhibits filed under seal):

- Exs. 942 and 942A, 12/26/11, email from Ferrer to Padilla regarding Detroit homicides with public safety announcement from DPD.  (Redacted, removing any references to murders.)
- Ex. 943, 12/26/11, email from Ferrer to Larkin telling him about the Detroit homicides.  Larkin advised Ferrer to contact attorney Ed McNally. (Redacted, removing any references to "homicides" and "victims".)
- Ex. 133, 12/27/11, email from producer of CNN, Anderson Cooper 360, requesting a comment on tragic deaths in Detroit. (Redacted, removing references to murder, "tragic" events, crime and criminals.)
- Ex. 961, 12/27/11, email from Carl Ferrer to Sgt. Wilson, DPD.  (Redacted, removing any references to murders.)
- Ex. 961a, 12/27/11,(Redacted, removed references to homicides.)
- Ex. 956, 12/27/11, email from Larkin to Lacey, Ferrer, attorneys and public relations firm. (No redactions.)
- Ex. 134, 12/27/11, email from Lacey in response to CNN.  (Redacted, removing Lacey's reference to "serial killer" and "tragic events" in Detroit.)
- Ex. 702, 12/27/11, email regarding murder of prostitute in Detroit between Lacey, Larkin, Ferrer, attorneys, and public relations staff. (Redacted,

---

[5] Defendant Larkin referred to this response strategy as "seal team six."  Ex. 715 (January 26, 2012 email, Larkin wrote "Carl has created a BP Seal Team Six ready for immediate action which we set up after Detroit.")

removing reference to "tragedy.")

- Ex. 965, email from Ferrer to Larkin. (No redactions)
- Ex. 136, 12/27/11, statement from DDP Chief of Police establishing that three of four murdered women posted on Backpage. Contains a response from Backpage. (Redacted, removing any references to murders, victims, and violent criminals.)
- Ex. 135, 12/27/11, email exchange with statement from Backpage attorneys Suskin and McNally. (Redacted, removing reference to "terrible crimes.")
- Ex. 948, 12/27/11, email from Ferrer to Lacey, Larkin, Backpage attorneys, and public relations strategist Sitrick. Ferrer provides update on providing postings of murdered prostitutes to Backpage owners. (Redacted, removed reference to "victims.")
- Ex. 951, 12/27/11, email exchange between McNally, Lacey, and Larkin regarding providing a list of other sites. (Redacted, removing Lacey's reference to "tragedy.")
- Ex. 972, 12/28/11, Email exchange between Lacey, Larkin, Ferrer, attorneys, public relation firms' representatives. (Redacted, removing reference to murders.)
- Ex. 704, 12/29/11, email exchange between Lacey, Larkin, Ferrer and Backpage attorneys. (Redacted, removing any references to murders and grieving families.)
- Ex. 988, 12/29/11, Email from lacey to Larkin, Ferrer, attorneys, public relations staff. (Redacted, removing Detroit investigations and grieving families.)
- Ex. 137, 12/29/11, transcript of interview between Backpage attorney Ed McNally and Anderson Cooper. (No redactions.)
- Ex. 1053, 12/29/11, CNN broadcast of Anderson Cooper and Ed McNally. (Redacted, removing any references to murders.)

- Ex. 138, 12/30/11, email exchange between Lacey, Larkin, and Ferrer regarding McNally's appearance on CNN.  (Redacted, removing all references to "Detroit murders and violent crimes.")
- Ex. 139, 12/30/11, email exchange between Lacey, Larkin, Ferrer and Backpage attorneys regarding the CNN interview of McNally by Anderson Cooper.  (Redacted, removing all references to "Detroit murders.")
- Ex. 707, 1/6/12, email exchange between Lacey and Larkin.  (No redactions.)
- Ex. 715, 1/26/12, email from Larkin to Lacey, attorneys, public relation firms. (Redacted removed references to Detroit murders.)
- Ex. 823A, 7/10/12, Backpage.com Media and Digital Brand Analysis, p. 2 Police Blotter stories about someone getting busted using BP.  (Redacted, removing all references to "murder" and "Detroit murders.")
- Ex. 247, 12/20/12, Google alert to Spear, Backpage.com escort ads linked to four deaths.  (Redacted, removing reference to "four deaths.")
- Ex. 259, 5/5/12, Google alert to Larkin, Man Charged in Backpage.com murders. Three of the victims had offered escort services. (Redacted, removing any references to murders.)

b.  **Victim 6, C.M.**

On June 22, 2012, a "john" stabbed Victim 6, C.M., to death at an apartment complex in Scottsdale, Arizona. (Doc. 230 ¶ 165.)  On the same day, law enforcement contacted Ferrer, and requested that Backpage "freeze" C.M's ads.  Investigating Detective Scott Carpenter and Ferrer are expected to testify regarding this crime, but neither witness will reference either the actual murder or its details. [6]  In addition, the United States intends to admit the following exhibits with appropriate redactions:

- Ex. 649, 6/25/2012, email from Detective Carpenter to Ferrer requesting that

---

[6] Defendants' claim that the details of this murder were "fed to the reporter by a representative/s of the Government" is baseless.  The undersigned attorneys have not spoken to any members of the media and will not do so for the duration of this trial. (Doc. 1254 at 2.)

        ad from homicide victim C.M. be retained. (Redacted, removing reference to homicide and that Carpenter is a member of gang investigation unit.)

- Ex. 1786, email exchange between Backpage involving C.M homicide and underage trafficking investigation. (Redacted, removing references to homicide.)

### c. Victim 15, J.W., Counts 19 and 20

On June 10, 2015, Victim 15, J.W., was murdered after she fled from her pimp's vehicle and was struck by oncoming traffic. (Doc. 230 at ¶ 174.) J.W. was posted on Backpage shortly before her murder. In addition to the publicity surrounding this murder, Defendants were on notice about the crime, because the investigating Detective subpoenaed J.W.'s ads and a Backpage custodian appeared at trial to authenticate the ads. The United States intends to admit the ads through the investigating agent without referencing the murder or its details.[7] In addition, Ferrer will testify to the retention of J.W.'s ads and the process of providing a custodian of records from Backpage to authenticate the postings at trial.

### d. Victim 14, A.G.

On June 20, 2015, the body of Victim 14, A.G., was found inside a car in northwest Dallas, roughly ten miles from Backpage's corporate headquarters. (*See* Doc. 230 ¶ 173.) The Dallas Morning News publicized the murder. (Doc. 920 at Ex. X.) The victim's father, C.G., is expected to testify that he contacted Backpage by email following the murder and requested that they remove his daughter's postings from the website. (Doc. 230 ¶ 173; Doc. 920 at Ex. Y.) Despite his efforts, Backpage did not immediately comply. In addition, he will testify to the prosecution and conviction of the man who murdered his daughter, but will not reference the fact that it was a murder prosecution, consistent with the Court's May 7 Order.[8] Ferrer will also testify about his knowledge of the case without

---

[7] Exs. 220(a) and (b).

[8] "[F]or the June 20, 2015 murder in Dallas, the Court would likely permit the victim's father to testify regarding the fact that he contacted Backpage to remove his

referencing the murder.

### e. Victim 16, C.W., Count 23

On August 17, 2015, the body of Victim 16, C.W., was found in an alley on Detroit's west side. (Doc. 230, ¶ 175.) It was later determined that the assailant was Jerome Moore who met C.W. through her ad posted on Backpage. (*Id*.) The postings of C.W. will be admitted through investigating Detective Detrick Mott.[9] Detective Mott subpoenaed Backpage for the victim's ads and a custodian testified at Moore's trial. In addition, C.W.'s sister, A.S., will testify about seeing C.W. post on Backpage, use "vanilla" cards to pay for Backpage ads, and engage in prostitution activities without referencing her murder. A.S. is further expected to testify about other women who used her sister's email address to post prostitution ads on Backpage.

### f. Victim D.R.

Victim D.R. was found in a garage beaten to death. (*See* Doc. 920.) A highly publicized investigation and subsequent prosecution established that D.R. was trafficked by a pimp on Backpage. (Exs. 1775, 1775(a)-(c).) D.R.'s family (including family member Y.A.) sued Backpage. On September 19, 2017, Y.A. testified before the Senate subcommittee (the same subcommittee that Lacey, Larkin, Ferrer, and Padilla appeared before) that investigated Backpage. At trial, it is expected that Y.A. will testify about her daughter posting on Backpage, the lawsuit she filed against Backpage, and her Senate testimony without referencing her daughter's murder.

---

daughter's posting from the website, but he would not be permitted to testify regarding the murder or the details of the crime as that evidence's prejudicial value would substantially outweigh any probative value that the evidence might have." (Doc. 1155 at 5.)

[9] Ex. 221.

IV.     **Conclusion**

The United States files this motion to clarify that the evidence it intends to introduce at trial that relates to third-party murders will be relevant and properly sanitized, in accordance with the Court's May 7 Order.

Respectfully submitted this 1st day of September, 2021.

> GLENN B. McCORMICK
> Acting United States Attorney
> District of Arizona
>
> *s/ Kevin M. Rapp*
> KEVIN M. RAPP
> MARGARET PERLMETER
> PETER S. KOZINETS
> ANDREW C. STONE
> Assistant U.S. Attorneys
>
> DAN G. BOYLE
> Special Assistant U.S. Attorney
>
> KENNETH POLITE
> Assistant Attorney General
> U.S. Department of Justice
> Criminal Division, U.S. Department of Justice
>
> REGINALD E. JONES
> Senior Trial Attorney
> U.S. Department of Justice, Criminal Division
> Child Exploitation and Obscenity Section

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Zachry Stoebe*
U.S. Attorney's Office