Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bklwlaw.com
wbernstein@bklwlaw.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL** |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | |

1  Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
   Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
2  Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW PC
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
6  Facsimile: (310) 201-2110
   glincenberg@birdmarella.com
7  aneuman@birdmarella.com
8  gpanchapakesan@birdmarella.com
   *Attorneys for John Brunst*
9
   Bruce Feder (AZ Bar No. 004832)
10 FEDER LAW OFFICE PA
11 2930 E. Camelback Road, Suite 160
   Phoenix, Arizona 85016
12 Telephone: (602) 257-0135
   bf@federlawpa.com
13 *Attorney for Scott Spear*
14
   David Eisenberg (AZ Bar No. 017218)
15 DAVID EISENBERG PLC
16 3550 N. Central Ave., Suite 1155
   Phoenix, Arizona 85012
17 Telephone: (602) 237-5076
   Facsimile: (602) 314-6273
18 david@deisenbergplc.com
19 *Attorney for Andrew Padilla*
20 Joy Malby Bertrand (AZ Bar No. 024181)
   JOY BERTRAND ESQ LLC
21 P.O. Box 2734
22 Scottsdale, Arizona 85252
   Telephone: (602)374-5321
23 Facsimile: (480)361-4694
   joy.bertrand@gmail.com
24 *Attorney for Joye Vaught*
25
26
27
28

The government's opening argument was a parade of horribles about human trafficking destroying the lives of trafficked women and children, with barely any mention of charged counts and zero linkage of any Defendant to any charged count. The opening offended the law, ignored indisputable facts, and consisted of inflammatory, unproven, and unprovable assertions that fail in any event to address what the government must prove to convict any defendant.

This Court repeatedly told the government what it must prove at trial: namely, whether each Defendant performed an act with the specific intent to further the prostitution offenses of the unlawful business enterprise referenced in each count of the indictment. The Court expressly told the parties that the case is not about whether defendants promoted prostitution in general, nor about what Backpage did or did not do, but is about whether each individual defendant had specific knowledge of each charged ad and specifically intended to promote a business of prostitution by that ad. *See* Dkt. 946 at 13 ("*[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.*") (emphasis added); *see also* Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that *this case is not about Backpage*. Backpage was prosecuted in a separate case, entered a plea in a separate case. *This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.*") (emphasis added).

The government's opening argument absolutely ignored the Court's admonitions. During two hours of improper, inflammatory argument, *the government failed to allege that any Defendant had knowledge of a single ad charged in the indictment, much less set forth any facts that could establish the specific intent necessary to convict on any count*. This failure to set forth any evidence that could sustain conviction on the charges warrants a judgment of acquittal. *See* Section III, *infra*.

The government's opening argument was full of improper and unconstitutional issues, including:

a) repeated inflammatory, prejudicial, irrelevant, and impermissible references to child sex

trafficking and human trafficking;

b) unconstitutional burden shifting and commenting on the Defendants' constitutional rights to remain silent;

c) intentional conflating of escorts and prostitutes;

d) an inaccurate and misleading definition of prostitution;

e) repeated conclusory assertions about the alleged extent of prostitution, child sex trafficking, and human trafficking, with no ability or intention to prove such contentions;

f) false suggestions that strict liability or general intent is sufficient to find guilt as to the charged specific intent crimes;

g) false claims that all adult-oriented ads on Backpage, and all of Backpage's "adult" revenues, were from illegal prostitution; and

h) references to unnoticed 404(b) evidence.

If judgment of acquittal is not granted, then alternatively the Court must declare a mistrial (*see* Section V, *infra*), due to the government's multiple improprieties described in Section I, *infra*. Each one of these issues warrants a mistrial, and the egregious multitude of improprieties leaves no doubt that these jurors have been irretrievably tainted. A mistrial would be the only means to protect Defendants' due process rights to a fair trial.

Finally, the Court ordered the government to provide the date of disclosures and copies of disclosures related to (1) an alleged 2011 statement by a Backpage.com representative and (2) an alleged statement by Mr. Lacey. The government has not – and cannot – point to a specific notice of its intent to use the 404(b) evidence and any statement it attributed to any Defendant. As to the first statement, the government disingenuously argued that it evidenced guilt and attributed this alleged statement to Defendants, in violation of this Court's prior order (Dkt. 1162). As to the second statement, the government's filing (Dkt. 1267) indicates that the government blatantly and egregiously mischaracterized the alleged statement during its opening argument. Further, Dkt. 1267 indicates that the relevant few pages of discovery were buried in productions ranging from 174,000+ pages to 6,500+ pages, years after the government had the information, without any explanation of the delay, and with no notice to the Court or the

Defendants about its intent to use the statement.

This motion supplements and incorporates by reference all arguments made by defense counsel to the Court on Friday afternoon. *See* Transcript of September 3, 2021 (Trial, Day 3, P.M. Session) at 58-85 (attached as Exhibit A).

## I. THE GOVERNMENT OPENED ON EXTENSIVE IMPROPER ARGUMENTS, FALSE FACTS, AND INCORRECT STATEMENTS OF LAW THAT DO NOT PREVIEW ANY ADMISSIBLE EVIDENCE.

### A. Repeated inflammatory, prejudicial, irrelevant, and impermissible references to child sex trafficking and human trafficking.

The government's opening argument relied heavily on child sex trafficking and human trafficking, referencing "children" at least 47 different times and "trafficking" at least 13 times. But the government ***never charged any such crimes*** under 18 U.S.C. 1951; it only charged facilitation of state prostitution. The government also ***never provided any notice*** under Federal Rule of Evidence 404(b) during the past three and a half years of litigating this case.[1]

During the past three days of jury selection, it was clear in each panel that child sex trafficking and human trafficking were lightning-rod topics for potential jurors. Indeed, many potential jurors indicated they could fairly assess a prostitution case but might or could not fairly assess a child or human trafficking case. All potential jurors were reassured during four separate panels that ***no charges in this case pertain to child sex trafficking or human trafficking***. Upon seeing the government's opening statement slides depicting two photos of mothers of alleged victims, before opening statements began, defense counsel raised with the Court the concern that the government would improperly emphasize child trafficking in opening. The Court thereafter admonished the government just before opening that it should not emphasize child trafficking. Despite this objection and admonition, the government's opening statement prominently featured child sex trafficking and human trafficking throughout, unequivocally prejudicing the jury.

Mindful of the page limits of briefs, below are just a few of many examples of the

---

[1]  Judge Logan ordered the government to make any disclosures under Federal Rule of Evidence 404(b) by February 4, 2019. Dkt. 131 at 2. The government never provided any notice under Rule 404(b), whether before or after that deadline.

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

government's egregious statements:

- The government's opening began with a detailed emotional, incendiary story about a trafficked child. Ex. A at page 5 ("… the 14-year-old girl's pimp . . ."); *Id.* ("Upon realizing that it is her mom, the 14-year-old girl drops down to her knees - -"). *Critically, neither this mother, nor her daughter, nor her daughter's alleged trafficker, nor any Backpage.com advertisement relating to the daughter or her trafficking, nor the described incidents are the subject of any count in the indictment.* Beginning its opening statement with this example was purely to inflame and incite the jury.

- The government characterized this child sex trafficking example as one of many it will present during trial on the indictment's 100 counts, *none of which includes child sex trafficking or human trafficking*. Ex. A at page 5, lines 14-19 ("Ladies and gentlemen of the jury, what I just shared with you is just one example, one of numerous examples you will hear about by the close of this trial of women and children being sold for sex on the website Backpage.com, a website these six defendants ran with the intent to promote and facilitate prostitution.").

- The government's opening repeatedly used inflammatory and conclusory terms to described alleged child prostitution and human trafficking, *uncharged crimes for which no notice was ever given under Federal Rule of Evidence 404(b)*, such as:

  o Summarily claiming that "countless women and children were sold for sex" on Backpage.com (Ex. A at 6);

  o Decrying "the scourge" and "misery of the women and children who will continue to be victimized by the ads posted on Backpage.com" (Ex. A at 24); and

  o Arguing that "[t]he lives of countless women and children have been forever changed by their running Backpage.com for 14 years." (Ex. A at 44).

- The government ended its opening with another story of a grieving, traumatized mother "on a mission to shut down Backpage" after her daughter had been trafficked. Ex. A at 56 ("Ladies and gentlemen of the jury, I'll end my opening statement like I began when I told you about a mother, Mrs. Pride, that you'll hear from, who had to attempt to buy sex with her daughter in order to rescue her from being sold for sex through ads through Backpage. And I'll end by telling you about another mother that you'll hear from throughout the course of this trial, Nacole Svengard. Nacole will tell you that after her daughter's trafficker had been arrested and convicted for selling her for sex through ads placed on Backpage, Nacole went - - this mother went on a mission to shut down Backpage.")[2]. **Critically,** *neither this mother, nor her daughter, nor her daughter's alleged trafficker, nor any Backpage.com ads*

---

[2] Additionally, the government grossly and unethically mischaracterized Ms. Svengard's recollection of Mr. Lacey's alleged statements, as described more fully below.

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

*relating to the daughter or her trafficking, nor the described incident are the subject of any count in the indictment.* Like the beginning of its opening argument, ending with this example was purely to inflame and incite the jury.

## B. Unconstitutional burden shifting and commenting on the Defendants' constitutional right to remain silent.

In its opening, the government ignored this Court's order precluding the government from offering statements of alleged representatives and attributing such statements to Defendants (*see* Dkt. 1162 at 2-3), unconstitutionally shifted the burden of proof to Defendants, and unconstitutionally commented on a defendant's right to remain silent. On the heels of three days of jury selection, during which all four panels were extensively questioned and educated by attorneys and the Court about the right to remain silent and the burden of proof, these comments also warrant a mistrial.

With a forceful tone and invoking and commanding the authority of the United States government, DOJ attorney Jones argued: "That's right, ladies and gentlemen, *these defendants can't deny that they knew* that the vast majority of the ads on Backpage.com were nothing less than prostitution ads." Ex. A at 40 (emphasis added).

Because of this comment by the government, if Defendants exercise their Fifth Amendment right to remain silent, some jurors may believe that this confirms what the government said – that Defendants are guilty. It is impossible to cure this foundational constitutional issue with the current jury without exacerbating the problem; nothing short of an acquittal or mistrial will effectuate Defendants' due process rights to a fair trial.

When questioned by the Court after its opening, the government defended this blatantly unconstitutional comment by claiming that Professor Paula Selis will testify that this is "what a Backpage representative told her." Ex. A at 70-71. The government's response is problematic for at least two reasons: first, Selis will say no such thing; and second, this purported comment was allegedly made by a Backpage lawyer, and in adherence with the Federal Rules of the Evidence, the Court expressly precluded the government from introducing statements of attorneys before the Court is able to "analyze the admissibility of statements . . . looking at the specific circumstances and context surrounding them." Dkt. 1162 at 2.

As the government's own filing indicates, Selis said that a Backpage attorney allegedly stated simply, "Don't deny the undeniable." Dkt. 1267, Ex. A, Ex. B. The actual alleged statement by a Backpage attorney in 2011 is a far cry from what the government promised in defending this unconstitutional burden shifting and commentary in its opening, namely a witness with "firsthand knowledge" who was told that the six individual Defendants on trial cannot deny that the vast majority of ads on Backpage.com or the charged ads in the indictment are for prostitution. Additionally, in April 2020 when the government moved to admit attorney statements as non-hearsay adopted statements, authorized statements, or agent statements, this Court *denied* the government's motion. Dkt. 1162. With blatant disregard for the Court's order, the government nonetheless opened with an inadmissible, prejudicial statement and perverted this statement to unconstitutionally comment on the Defendants' right to remain silent and unconstitutionally shift the burden of proof to the defense.

### C. Intentional conflating of escorts and prostitutes.

Throughout its opening, the government wrongly (factually and legally) substituted the word "prostitute" or "prostitution" in place of the word "escort," which is a legal activity. The government simply described everything that related to lawful escort services as "so-called escort" businesses (Ex. A at 7, 8, 9, 10) and then repeatedly indicated that all such things were "prostitution." The government's repeated suggestion that escort services are the same as prostitution is grossly incorrect (factually and legally). And the government knows this, as this Court specifically told the government there is a legal distinction in response to AUSA Rapp's statement on June 7, 2021 that the terms "escort" and "prostitute" are synonymous. Dkt. 1171-1. Despite knowing and being instructed by the Court that there is a significant legal distinction between these terms, the government's opening intentionally and improperly conflated the two. The government also improperly referred to all dating ads, massage ads, and other adult ads – which are perfectly lawful – as unlawful prostitution ads.

### D. Inaccurate and misleading definition of prostitution.

The definition of prostitution has been the subject of extensive litigation in this case. *See, e.g.*, Dkt. 1171, 1181, which are Defendants' motions that the superseding indictment is defective

based on the failure to provide the grand jury with proper instructions of the term "prostitution." The government repeated this impropriety in its opening statement, wrongly suggesting that "escort" is the same as "prostitution." Throughout its opening, government counsel repeatedly used the word "prostitution" when discussing ads, practices or documents that actually used the word "escort." The repeated suggestion that the term "prostitution" is synonymous with or encompasses the legal "escort" business or "sexual services" is plainly incorrect, both legally and factually.

The government compounded the issue in opening by giving the jury an inaccurate and incomplete legal definition of "prostitution." Ex. A at 5 ("And when the United States refers to prostitution throughout the course of this trial, we mean sexual services in exchange for money, a crime in all 50 states."). Prostitution, of course, encompasses specific, proscribed acts of sex, usually intercourse or oral sex in exchange for money. There are many "sexual services for money," however, that are perfectly legal, such as stripping, sensual massage, and other activities. The government's inaccurate definition runs afoul of the law that governs this case, as the government well knows from its proposed verdict form listing fifteen different states' prostitution statutes and precise definitions (Dkt. 1216-2). It was completely improper, especially given the extensive litigation about this, of the government to give an inaccurate and incomplete legal definition to the jury for hours in its opening.

**E.** **Repeated conclusory assertions about the alleged extent of prostitution, child sex trafficking, and human trafficking, with no ability or intention to prove such contentions.**

Every single ad the government presented during its opening is a facially legal ad; not a single ad says that a sex act will be performed for the exchange of money. Still, the government's repeatedly made sweeping, conclusory assertions about the alleged extent of prostitution, child sex trafficking, and human trafficking on Backpage.com. Ex. A at 5-6 ("Backpage.com served as a platform where countless women and child were sold for sex.").; *Id.* at 6 ("Backpage.com was the internet's leading hub, leading website for prostitution."). This is particularly notable because the government has *no ability or intention to prove this*. The overwhelming majority of the millions upon millions of ads posted on Backpage.com during its 14-year existence are legal escort ads; the

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

individual intent behind these millions of ads is simply unknowable. And the government doesn't even purport to show that these millions upon millions of ads over 14 years are for prostitution. Yet its opening statement repeatedly makes such false, inaccurate, inadmissible, conclusory assertions. As a few of many examples, in its opening the government asserted:

- "Backpage.com served as a platform where countless women and children were sold for sex" (Ex. A at 5-6);

- the "vast amount of prostitution ads in the Sacramento escort section of Backpage" (Ex. A at 9, 11);

- ads in the adult services section "were nothing less than prostitution ads" (Ex. A at 11);

- Backpage was "the internet's leading forum for prostitution" (Ex. A at 12);

- "prostitution ads were rampant all over the website" (Ex. A at 19);

- all the "prostitution" ads on Craigslist "migrated to posting those same prostitution ads on Backpage" (Ex. A at 23);

- "the vast majority of advertisements on Backpage.com were prostitution" (Ex. A at 27); and

- "Backpage was a hub for prostitution" (Ex. A at 27-28).

These conclusions are unproven hearsay and inadmissible in Court, devoid of any foundation or evidence to assess their accuracy. The government has no ability or intention to prove any of these statements. They were offered merely to improperly "present the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." *United States v. Dinitz,* 424 U.S. 600, 612 (1976) (Burger, J., concurring). This misconduct also is grounds for a mistrial. *See also* Section IV, *infra.*

### F. False suggestions that strict liability or general intent is sufficient to find guilt as to the charged specific intent crimes.

The government's opening was also rife with significant errors regarding its burden of proof. The government wrongly casts this case as the equivalent of a strict liability crime, arguing that because Defendants were "on notice" of supposed past allegations of trafficking or

prostitution, they are thereafter criminally liable for later-in-time ads that turn out to involve criminality, whether they knew about them or not. This distortion of the law would not even satisfy the requirements of a general intent crime. And they are light years from the reality of this case, where this Court has repeatedly recognized (including in the "Preliminary Instructions" to this very jury) that the charged crimes require specific intent.

The Court held that "[t]his case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity." Transcript of December 4, 2020 Hearing. The government committed clear error when it waters down its specific intent requirement by telling the jury it will provide "notice" based on unrelated anecdotal events that have nothing to do with the ad charged in each count. These "notices" include, as just a few examples:

- A CNN "broadcast about children being sold for sex on Backpage.com" (Ex. A at 28);

- Letters from "all 50" state Attorneys General "urging" Backpage to terminate its adult section ("You'll also hear that these defendants met with - - continued to meet with states attorney generals who put them on notice that they were promoting prostitution by running Backpage.com.") (Ex. A at 40);

- "Auburn Theological Seminary, a faith-based organization" that told Backpage they were "selling sex," including "children as young as 12 being sold for sex" (Ex. A at 42-43), which is also improper for injecting religion into the proceedings (*See Sandoval v. Calderon*, 241 F.3d 765, 777 (9th Cir. 2000) (collecting cases) ("Religious arguments have been condemned by virtually every federal and state court to consider their challenge."));

- The conclusory statement, "That's right, ladies and gentlemen, it wasn't just crimes against children organizations, the public, and law enforcement, but news media outlet also put these defendants on notice, as one letter told them pointblank, that Backpage was a hub for prostitution." (Ex. A at 28-29).

These hearsay conclusions are totally lacking in foundation. There is no evidentiary basis as to their accuracy. The government has not analyzed all the ads on Backpage.com to verify these claims. The government is not offering these hearsay conclusions as mere "notice" evidence (which is also problematic); the government is actually offering these statements for their truth. This violates Federal Rules of Evidence 401 and 403 and the rule against hearsay. These allegations are clearly no proxy for actual evidence, much less credible evidence, of specific intent.

**G.      False claim that all of the "adult" revenue was from illegal prostitution.**

The government's opening also repeatedly made the false claim that all of the "adult" content is for illegal prostitution. Furthering this theme, the government argued that over 94% of Backpage.com's revenue came from ads purportedly associated with unlawful conduct. Ex. A at 48. As the government well knows, Backpage.com had many other categories besides "adult services," as well as many "adult" categories that government does not even contend are illegal, such as massage and erotic dancing. The government's false proclamation also fails to account for the fact that the purported offending ads are facially lawful escort ads, massage ads, and dating ads. They are legal on their face, and the government can only claim funds are illegal that came from ads **proven** to be prostitution. This staggering misrepresentation is yet another statement that "will not or cannot be supported by proof" and is therefore grounds for a mistrial. *Dinitz*, 424 U.S. at 612; *see also* Section IV, *infra*.

**H.      References to unnoticed 404(b) evidence.**

The government never noticed a single act under Federal Rule of Evidence 404(b), despite a February 4, 2019 deadline to do so. Dkt. 131 at 2. Not only did the government never notice a single act, but it also never stated any theory under which these acts were admissible or give defense counsel an opportunity to object. Nonetheless, the government's opening statement only indirectly touched upon a handful of the 100 counts in the indictment and was otherwise a parade of horribles allegedly committed by Backpage.com, which the government never connected to the Defendants and which the government never noticed under 404(b). Every uncharged ad that the government contends is for illegal prostitution is inadmissible as unnoticed 404(b) evidence. A failure to notice other bad acts evidence that the government then opens on is grounds for a mistrial. *See United States v. Vega*, 188 F.3d 1150, 1155 (9th Cir. 1999) (finding the government's failure to give notice of 404(b) evidence was not harmless error as it prejudiced defendants' trial strategy because she did not know the unnoticed 404(b) evidence would be introduced); *see also* Section IV, *infra*.

After its inflammatory, prejudicial opening, bookended with heart wrenching stories about child sex trafficking and human trafficking, unconstitutional burden shifting and commenting on

Defendants' right to remain silent;  intentional conflating of escorts and prostitutes;  inaccurate definition of prostitution;  repeated conclusory assertions about the alleged extent of prostitution;  child sex trafficking;  and human trafficking without any ability or intention to prove such contentions, and false suggestions that strict liability or general intent is sufficient to find the guilt, the government concluded its opening not with reference to guilt beyond a reasonable doubt as to the charged crimes, but instead by imploring the jury to "hold these defendants accountable for their criminal conduct in running this website for nearly 14 years." Ex. A at 57.  Repeated mischaracterizations of the law of the case, from a Department of Justice Attorney "with the standing and prestige inherent in being an officer of the court" is grossly inappropriate and grounds for a mistrial.  *Dinitz*, 424 U.S. 612 (Burger, J., concurring);  *see also* Section IV, *infra*.

## II.  THE GOVERNMENT'S OPENING LACKED ANY ACTUAL EVIDENCE OF GUILT AS TO ANY OF THE CHARGES.

The government's opening argument is also remarkable for the many things it did not say or do at all, that it must proffer to prove guilt of any of the counts charged:

- The government did not cite a single ad in its entire presentation that was on its face a prostitution ad; namely, one that offered a proscribed sex act[3] in exchange for money. Instead, all of the ads it showed were facially legal escort ads;[4]

---

[3]    Each state makes its own prostitution laws; the common thread is that "prostitution" involves payment of money or compensation in exchange for vaginal, anal intercourse, or oral sex with the other person.

[4]    Every single slide in the government's opening PowerPoint presentation is a facially legal ad presumptively protected by the First Amendment.  *See* Exhibit B, a hard copy of the government's opening slides, given to defense counsel by the government on September 1, 2021, in advance of its opening statement. The government argued against a preliminary instruction about First Amendment presumptive protection on the grounds that it would establish that each Defendant engaged in criminal conduct outside the scope of the protections of the First Amendment, yet the government's opening said nothing about the conduct of any Defendant with respect to the publication of any of the charged ads, knowledge of any of the charged ads, knowledge of the purported unlawful business enterprises associated with the charged ads, or intent to facilitate the crimes of those purportedly unlawful business enterprises. The government's opening was devoid of any allegations that would eliminate the presumption of First Amendment protection that the Constitution requires.  Further, the government defended its opening by claiming that defense counsel did not object to the slides, but that is not true, as the defense made numerous objections to some of the government's slides.  And of course, the slides did not presage the many improper things the prosecutor orally told the jurors.  The government is not free to engage in misconduct even if the defense does not anticipate misconduct and object in advance.

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

- Although the government's opening only included passing mention to portions of five of the alleged "prostitution ads" charged in the indictment, and the government failed to discuss any of those ads in the context of the elements of the crimes charged in the indictment:

  o Three of them were ads the government mentioned as having the term "GFE," which the government said means a person who is willing to French kiss (something that is not prostitution) (Ex. A at 10);

  o The fourth ad mentioned involved "Naomi" who will "tell you her traffickers told her point blank they were using prepaid card" (Ex. A at 45-46) – clearly inadmissible hearsay;

  o The fifth ad the government mentioned involved "Destiny" who will explain that Backpage's website would not allow someone to post an ad if the age listed was under 18 but would allow the person to post the ad if they listed an age over 18 (Ex. A at 46)– a statement that sheds no light on prostitution;

- The government did not mention at all any of the other 45 alleged prostitution ads in the indictment;

- Significantly, the government did not assert that any of the Defendants knew of the existence of any of the ads charged in the indictment or mentioned in its opening statement;

- The government did not assert that any of the Defendants knew of the existence of the purportedly unlawful business enterprise associated with any charged ad;

- It did not assert that any of the Defendants performed an act with the specific intent to further the prostitution offenses of an unlawful business enterprise associated with any charged ad; and

- It did not assert that any of the Defendants had knowledge of any of the ads it displayed in its PowerPoint (most of which did not relate to counts in the indictment).

The government's opening was long, loud, inflammatory, and prejudicial. But its complete and utter failure to assert any allegation that could arguably help prove a count in the indictment was even more deafening. This failure reveals the flaw in this entire prosecution: *the government has no evidence tying any Defendant to any charge in the indictment. It cannot prove specific intent*.

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

### III. THE GOVERNMENT'S OPENING REQUIRES A JUDGMENT OF ACQUITTAL.

A motion for acquittal following the government's opening should be granted "when the statement clearly shows that the charge against defendant cannot be sustained under any view of the evidence consistent with the statement." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996) (quoting *McGuire v. United States*, 152 F.2d 577, 580 (8th Cir. 1945) (citing *United States v. Oliver*, 570 F.2d 397, 400 (1st Cir.1978); *United States v. Capocci*, 433 F.2d 155, 158 (1st Cir.1970).

This Court has not only the power but also the *duty* to direct a verdict for the defense upon opening statement of plaintiff's counsel, where the statement establishes that the plaintiff has no right to recover. *Best v. District of Columbia*, 291 U.S. 411, 415 (1934) ("There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover. The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced."). The Ninth Circuit has also followed this directive from the Supreme Court, allowing a court to terminate a case after the plaintiff's opening statement when the statement affirmatively shows the plaintiff has no right to recover and when the plaintiff is given an opportunity to correct. *Rose v. United States*, 149 F.2d 755, 758 (9th Cir. 1945).

As described above and to the Court on Friday afternoon, the government's opening argument was riddled with misleading statements that are entirely irrelevant to the indictment and should be precluded. If the Court assumes, *arguendo*, that every single thing the government said in its opening is admissible and true, the government has still not proffered anything more than a general dislike and distrust of Backpage.com, various facially legal ads that appeared on Backpage.com, and the fact that revenue was gained from Backpage.com. The government *never once even pretended to connect any of the charged Defendants to any ad referenced in the case or charged in the indictment*. That is because the government has no evidence to connect Defendants to the crimes in the indictment. Accordingly, the Court has the power, authority, and duty to terminate the case and enter a judgment of acquittal.

## IV. ALTERNATIVELY, THE COURT MUST DECLARE A MISTRIAL.

An improper opening statement is sufficient grounds to declare a mistrial. *United States v. Millan*, 817 F. Supp. 1086, 1088 (S.D.N.Y. 1993) (citing *Arizona v. Washington*, 434 U.S. 497 (1978); *United States v. Peng*, 602 F.Supp. 298 (S.D.N.Y.), *aff'd*, 766 F.2d 82 (2d Cir.1985)). The government's obligation during opening arguments is quite clear. *Millan*, 817 F. Supp at 1088. Although the opening statement should be an objective summary of the evidence reasonably expected to be produced, *see United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988), the prosecutor *may not refer to evidence which will be inadmissible or unsupported at trial*. *United States v. Novak*, 918 F.2d 107, 109 (10th Cir.1990) (emphasis added). "To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, prosecutorial misconduct. *Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.*" *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, J., concurring) (emphasis added); *see also Arizona v. Washington*, 434 U.S. 497, 512 (1978) ("An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal."). "A trial judge is under a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop such professional misconduct." *Dinitz*, 424 U.S. at 612 (1976) (Burger, J., concurring).

Each of these many government improprieties discussed on September 3 and above warrants a mistrial. *See* Ex. A at 58-85. The government's opening argument was based on evidence that will be inadmissible or unsupported at trial and was strategically presented to inflame and influence the jury to reach a verdict against Defendants (e.g., child sex trafficking and human trafficking references; the government's erroneous definition of prostitution and intentional conflating of escorts and prostitution; repeated conclusory assertions about the alleged parade of horribles on Backpage.com without any ability or intention to prove such contentions; false suggestions that strict liability or general intent is sufficient to find guilt as to the charged crimes; and patently false claims that *all* of the "adult" revenue was from illegal prostitution).

The opening's egregious combination of the multitude of improprieties, and the deafening lack of actual evidence of the indicted crimes, leaves no doubt that these jurors have been irretrievably tainted. Other than issuing a judgment of acquittal, a mistrial is the only means to protect Defendants' due process rights to a fair trial.

## V. THE GOVERNMENT'S FILINGS SUPPORT DEFENDANTS' POSITION THAT A JUDGMENT OF ACQUITTAL OR MISTRIAL IS NECESSARY.

The government's opening ended by recounting a crass and inhumane purported statement from Mr. Lacey to Nacole Svengard that *does not track what Svengard told the government as reported in her 302*. The government argued that Mr. Lacey "pointblank" threatened a grieving mother, when in reality, the purported statement was simply a random comment supposedly overhead that was expressed to reporters. Ex. A at 57 ("Nacole will also tell you that outside of the chambers of the U.S. Senate, *she crossed paths with defendant Michael Lacey. And defendant Lacey told her, pointblank*, that if these yahoos would keep their fucking mouth shut, we wouldn't have all these issues. Ladies and gentlemen of the jury, thankfully, these mothers, NCMEC, Auburn Theological Seminary, the U.S. Senate, these entities and individuals didn't keep their mouth shut, and because of it, Backpage.com is shut down." (emphasis added)).[5]

When defense counsel challenged the government's use of this purported threat from Mr. Lacey to Svengard, the government told this Court that Svengard's statement "where she relates to running into Mr. Lacey at the Senate Subcommittee and making that - - him making that statement to her" was in a previously disclosed 302. Ex. A at 72. The government's representation is inaccurate. Fortunately, the Court asked the government to provide documents in support of its position. Ex. A at 83. The 302s related to Svengard that the government filed at Dkt. 1267-3 and 1267-4 (under seal at Dkt. 1269) confirm that the government is misrepresenting what purportedly happened.

---

[5] This summary statement is a telling concession that the government's entire misguided prosecution is based, not on any particular evidence connecting any Defendant to any illegal Travel Act crime requiring specific intent, but instead based on this collection of conclusory, hearsay opinions of parties who simply do not like the protected speech at issue. None of these opinions have any place in a court of law.

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

The government's own memos related to Svengard were created in February and June of 2020, but *inexplicably withheld from production to defense counsel for 16 months*. When the government finally did produce these three pages, it buried them in 6500+ documents dumped on defense counsel just before trial. Dkt. 1267-7. More importantly, these 302s confirm that the government distorted its purported evidence and presented to the jury a highly inflammatory statement. The government told the jury that Mr. Lacey essentially callously verbally assaulted a mother grieving her child's trafficking (Ex. A at 57), when Svengard actually told the government that she overhead Lacey speaking to reporters (none of whom has ever reported on the alleged statement). In February 2020, FBI agents Amy Fryberger and Desirae Tolhurst reported that:

> During the meeting with Svendgard in December 2017 (Serial 135) she stated that James Larkin made a comment calling them "a bunch of yahoos and they should keep their f'ing mouths shut." Svendgard was shown pictures of Larkin and Michael Lacey. She corrected her previous statement to identify, by picture, Lacey as the one *to have made this comment to reporters* outside of the U.S. Senate Hearing.

Dkt. 1269 at Ex. C. In June 2020, FBI agent Desirae Tolhurst reported that Svengard "reviewed a digital copy (official record) of the FD-302 documenting her interview on February 19, 2020. Nacole did not make any corrections other than the [last name of the] person who trafficked J.S." Dkt. 1269 at Ex. D.

The Court also ordered the government to provide information about its burden shifting statement. Ex. A at 83. In response, the government filed a 302 of Paula Selis from an April 12, 2017 interview as well as Selis' June 27, 2012 declaration from *Backpage.com, LLC v. Robert M. McKenna, et al.*, Case No. 12-cv-00954-RSM (W.D. Wash.). Dkt. 1269 at Ex. A; Dkt. 1267 at Ex. B. Contrary to the government's burden shifting statement in opening (Ex. A at 40) and justifications for this egregiously unconstitutional statement when questioned by the Court (Ex. A at 70-71), the government's own filings demonstrate that Selis *never* said that the six individual Defendants on trial admitted or failed to deny "that they knew the vast majority of the ads on Backpage.com were nothing less than prostitution ads." Ex. A at 40; *see* Dkt. 1269 at Ex. B & Dkt. 1267 at Ex. A (where this comment never appears). Further, as discussed *infra* at 5-6, the

Court expressly precluded the government from getting into statements of a Backpage attorney. The government ignored this order.

## VI. CONCLUSION

The government's opening was far from an objective summary of the evidence reasonably expected to be elicited at trial. Instead, it was full of references to purported evidence that is inadmissible and unsupported. The government's opening and its brazen disregard for this Court's prior orders warrant a judgment of acquittal, or alternatively, at a minimum, a mistrial. Nothing else will correct the extreme prejudice and constitutional violations the government intentionally caused.

RESPECTFULLY SUBMITTED this 6th day of September 2021,

BIENERT KATZMAN LITTRELL
WILLIAMS LLP
*s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
Whitney Z. Bernstein
Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Oct. 2020) § II(C)(3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT
NESSIM DROOKS LINCENBERG AND
RHOW PC
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE, A MISTRIAL

FEDER LAW OFFICE PA
_s/ Bruce Feder_
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
_s/ David Eisenberg_
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
_s/ Joy Bertrand_
Joy Bertrand
Attorneys for Joye Vaught

DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITAL, OR, IN THE ALTERNATIVE,
A MISTRIAL

# CERTIFICATE OF SERVICE

   I hereby certify that on September 6, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.


                    */s/ Toni Thomas*
                    Toni Thomas

3739131.1