# EXHIBIT INDEX TO MOTION TO DISMISS

### *United State of America v. Michael Lacey, et al.*
### 2:18-cr-00422-PHX-DJH

| Exhibit | Description |
|---------|-------------|
| A | *Woodhull Freedom Found'n v. United States,* Case No. 22-5105, at 28-30 (D.C. Cir., Nov. 2, 2022) |
| B | January 11, 2023 Transcript of Oral Argument Before the D.C. Circuit |

# EXHIBIT A

## ORAL ARGUMENT NOT SCHEDULED

## No. 22-5105

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

WOODHULL FREEDOM FOUNDATION, et al,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA and MERRICK B. GARLAND, in his
official capacity as Attorney General of the United States,

Defendants-Appellees.

—————————————

On Appeal from the United States District Court
for the District of Columbia

—————————————

## BRIEF FOR APPELLEES

—————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK B. STERN
JOSEPH F. BUSA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

Plaintiffs in district court, and appellants here, are the Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley (also known as Alex Andrews), and the Internet Archive.

Defendants in district court, and appellees here, are the United States of America and Merrick B. Garland, in his official capacity as Attorney General of the United States. (William P. Barr and Jefferson B. Sessions, III, were formerly defendants in district court in their then-official capacities as Attorneys General of the United States. When they left office, their successors were automatically substituted under Federal Rule of Civil Procedure 25(d) and Federal Rule of Appellate Procedure 43(c)(2).)

There were no amici or intervenors in district court. At the time of filing, amici supporting plaintiffs-appellants included: Call Off Your Old Tired Ethics of Rhode Island (COYOTE-RI); Black and Pink MA; The Community United for Safety and Protection; DeCrim PA; The Erotic

Service Providers Legal, Education and Research Project; Helping

Individual Prostitutes Survive (HIPS); International Sex Worker

Foundation for Art, Culture, and Education; The Ishtar Collective; The

National Council for Incarcerated and Formerly Incarcerated Women

and Girls; The Sex Workers Outreach Project (SWOP) Behind Bars;

SWOP Sacramento; SWOP Tucson; Valued Existence of Northeastern

and Ubiquitous Sex Workers (VENUS); Transgender Law Center;

Center for Democracy & Technology; Decriminalize Sex Work; The Sex

Workers Project (SWP) of the Urban Justice Center; Freedom Network;

Brooklyn Defender Services; Erotic Laborers Alliance Of New England

(ELA-ONE); Old Pros; National Coalition for Sexual Freedom (NCSF);

New York Transgender Advocacy Group (NYTAG); Free Speech

Coalition; SWOP Brooklyn; Gays and Lesbians Living in a Transgender

Society (GLITS); and St. James Infirmary.

### B.    Rulings Under Review

Plaintiffs-Appellants seek review of the March 29, 2022, Order

and Memorandum Opinion in *Woodhull Freedom Foundation v. United*

*States*, No. 1:18-cv-01552, 2022 WL 910600 (D.D.C.) (Leon, J.). The

order is reproduced at page 745 of the Joint Appendix (JA), and the

memorandum opinion is reproduced at pages 717 to 744.

## C.   Related Cases

This case has previously been before this Court. *See* No. 18-5298.

There are no related cases involving substantially the same parties and

the same or similar issues currently pending in this Court, any other

United States court of appeals, or any other court (whether federal or

local) in the District of Columbia.

*/s/ Joseph F. Busa*
JOSEPH F. BUSA
Counsel for Defendants-Appellees

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................vi

GLOSSARY ............................................................................xiv

INTRODUCTION.......................................................................1

STATEMENT OF JURISDICTION...................................................2

STATEMENT OF THE ISSUES.....................................................3

PERTINENT STATUTES AND REGULATIONS ...................................3

STATEMENT OF THE CASE .......................................................3

    A.    Statutory Background..............................................3

        1.    Federal criminal statutes addressing sex
                trafficking and prostitution .............................3

        2.    The Communications Decency Act of 1996 and
                the protections of Section 230.........................5

        3.    Section 230 thwarts state criminal prosecutions
                of, and victims' civil suits against, Backpage.com ........6

        4.    The Allow States and Victims to Fight Online Sex
                Trafficking Act of 2017 (FOSTA) ..................10

    B.    Plaintiffs' First Amendment, Fifth Amendment, and Ex
        Post Facto Challenges...........................................13

    C.    Prior Proceedings ................................................15

        1.    Dismissal for lack of standing; first appeal................15

        2.    Summary judgment in the government's favor on
                remand ...................................................18

SUMMARY OF ARGUMENT ................................................................20

STANDARD OF REVIEW .................................................................23

ARGUMENT ...........................................................................23

I.   FOSTA Is Consistent With The First Amendment. ......................23

     A.   To Act With The "Intent To Promote Or Facilitate The
          Prostitution Of Another Person" Is To Aid Or Abet A
          Crime. ....................................................................23

          1.   The phrase "promote or facilitate" as used in
               criminal statutes is equivalent to "aid or abet."..........24

          2.   FOSTA uses that term of art. .....................................29

          3.   Plaintiffs' arguments to the contrary are
               unavailing...................................................................37

     B.   The First Amendment Does Not Provide Immunity For
          Those Who Intentionally Aid And Abet The Crimes At
          Issue Here Under Traditional Principles Of Criminal
          Law. ........................................................................48

II.  FOSTA Is Consistent With The Fifth Amendment In
     Providing Adequate Notice Of What Is Unlawful. ......................56

III. Plaintiffs' Pre-Enforcement Ex Post Facto Challenge Also
     Fails. ...........................................................................64

CONCLUSION ........................................................................67

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Abuelhawa v. United States,*
556 U.S. 816 (2009) ...................................................................... 27, 40

*Ashcroft v. Free Speech Coal.,*
535 U.S. 234 (2002) .......................................................................... 40

*Azar v. Allina Health Servs.,*
139 S. Ct. 1804 (2019) ....................................................................... 34

*Bennett v. Google, LLC,*
882 F.3d 1163 (D.C. Cir. 2018) ...................................................... 6, 55

*California v. Texas,*
141 S. Ct. 2104 (2021) ....................................................................... 65

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
142 S. Ct. 1464 (2022) ....................................................................... 51

*Doe ex rel. Roe v. Backpage.com, LLC,*
104 F. Supp. 3d 149 (D. Mass. 2015) ................................................. 9

*Elonis v. United States,*
575 U.S. 723 (2015) ........................................................................... 62

*FAA v. Cooper,*
566 U.S. 284 (2012) ........................................................................... 41

*Farmer v. Brennan,*
511 U.S. 825 (1994) ........................................................................... 62

*Garrison v. Louisiana,*
379 U.S. 64 (1964) ............................................................................. 63

*Geiss v. Weinstein Co. Holdings LLC,*
383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................ 34

*George v. McDonough,*
142 S. Ct. 1953 (2022) ....................................................................... 29

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949) ............................................... 48, 49, 51

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................ 59

*Grimes v. District of Columbia*,
    794 F.3d 83 (D.C. Cir. 2015) ............................................ 23

*Hall v. Hall*,
    138 S. Ct. 1118 (2018) ........................................ 29

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ............................................ 58

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ........................................ 9, 10

*Johnson v. United States*,
    576 U.S. 591 (2015) ........................................ 61

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011) ................................. 9

*Marshall v. United States*,
    355 F.2d 999 (9th Cir. 1966) ........................................ 28

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
    559 U.S. 229 (2010) ........................................ 32

*National Ass'n of Mfrs. v. Taylor*,
    582 F.3d 1 (D.C. Cir. 2009) ........................................ 59, 60

*New York v. Ferber*,
    458 U.S. 747 (1982) ........................................ 38

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
    413 U.S. 376 (1973) ............................................. 49

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ........................................... 51

*Reno v. Koray*,

515 U.S. 50 (1995) ............................................................... 61

*Rice v. Paladin Enters.,*
128 F.3d 233 (4th Cir. 1997) ............................................. 48

*Rosemond v. United States,*
572 U.S. 65 (2014) ............................................................. 26

*State v. White,*
484 A.2d 691 (N.J. 1984) .................................................... 24

*Stogner v. California,*
539 U.S. 607 (2003) ........................................................... 66

*Stokeling v. United States,*
139 S. Ct. 544 (2019) ......................................................... 41

*Sturgeon v. Frost,*
577 U.S. 424 (2016) ........................................................... 41

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ........................................................... 16

*United States v. Baker,*
611 F.2d 961 (4th Cir. 1979) ............................................. 28

*United States v. Bennett,*
95 F.3d 1158 (9th Cir. 1996) ............................................. 28

*United States v. Bronstein,*
849 F.3d 1101 (D.C. Cir. 2017) .................................. 56, 57

*United States v. Hansen,*
25 F.4th 1103 (9th Cir. 2022) ............................................ 45

*United States v. Heilmann,*
235 F.3d 1146 (8th Cir. 2001) ........................................... 28

*United States v. Hernandez-Calvillo,*
39 F.4th 1297 (10th Cir. 2022) .......................................... 45

*United States v. Manzo,*
712 F.3d 805 (3d Cir. 2013) .............................................. 28

*United States v. Miselis*,
    972 F.3d 518 (4th Cir. 2020) ..................................................... 46, 47

*United States v. Nino*,
    967 F.2d 1508 (11th Cir. 1992) ......................................................... 28

*United States v. Riquelmy*,
    572 F.2d 947 (2d Cir. 1978) .............................................................. 28

*United States v. Ruiz*,
    386 F. App'x 530 (6th Cir. 2010) ...................................................... 28

*United States v. Rundo*,
    990 F.3d 709 (9th Cir. 2021) ..................................................... 46, 47

*United States v. Salerno*,
    481 U.S. 739 (1987) ......................................................................... 65

*United States v. Sineneng-Smith*,
    910 F.3d 461 (9th Cir. 2018), *vacated on other grounds*,
    140 S. Ct. 1575 (2020) ..................................................................... 45

*United States v. Stevens*,
    559 U.S. 460 (2010) ......................................................................... 49

*United States v. Taylor*,
    44 F.4th 779 (8th Cir. 2022) ............................................................ 34

*United States v. Wahl*,
    290 F.3d 370 (D.C. Cir. 2002) ......................................................... 27

*United States v. Welch*,
    327 F.3d 1081 (10th Cir. 2003) ........................................................ 28

*United States v. Williams*,
    553 U.S. 285 (2008).........................39, 40, 47, 49, 50, 56, 57, 58, 59, 61

*Urena-Ramirez v. Ashcroft*,
    341 F.3d 51 (1st Cir. 2003) ........................................................ 28, 29

*Virginia v. Black*,
    538 U.S. 343 (2003) ......................................................................... 52

ix

*Waddington v. Sarausad,*
   555 U.S. 179 (2009) ........................................................... 26

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ....................................................... 51, 57

*Woodhull Freedom Found. v. United States*:
   334 F. Supp. 3d 185 (D.D.C. 2018) ................................... 15
   948 F.3d 363 (D.C. Cir. 2020) ................................. 15, 16, 17, 18, 23,
                                                              24, 30, 31, 38, 39, 43

## U.S. Constitution:

Art. I, § 9, cl. 3 ....................................................................... 63

## Federal Statutes:

Allow States and Victims to Fight Online Sex Trafficking Act of 2017,
   Pub. L. No. 115-164, 132 Stat. 1253 (2018)........................ 10
      § 2, 132 Stat. at 1253................................................... 10
      § 3(a), 132 Stat. at 1253-54 ....................................... 10-11
      § 4(a), 132 Stat. at 1254 (codified at 47 U.S.C. § 230(e)(5))............ 11
      § 4(b), 132 Stat. at 1254-55 ..................................... 12, 63
      § 5, 132 Stat. at 1255 (codified at 18 U.S.C. § 1591(e)(4) .............. 13,

Communications Decency Act of 1996:
   47 U.S.C. § 230 ................................................................ 1, 5
   47 U.S.C. § 230(c)(1) ......................................................... 5
   47 U.S.C. § 230(c)(2) .................................................. 6, 53, 55
   47 U.S.C. § 230(e)(1) .................................................... 6, 52
   47 U.S.C. § 230(e)(3) ......................................................... 6
   47 U.S.C. § 230(e)(5) ................................................ 12, 53, 63, 64
   47 U.S.C. § 230(e)(5)(A) .................................................. 60
   47 U.S.C. § 230(f)(2) ........................................................ 11

Travel Act:
   18 U.S.C. § 1952 ............................................................ 3-4
   18 U.S.C. § 1952(a) ......................................................... 28
   18 U.S.C. § 1952(a)(3) .................................................. 4, 53
   18 U.S.C. § 1952(b) .................................................... 4, 53

Model Penal Code § 2.02(c) ...................................................... 63

Model Penal Code § 2.06(3)(a) .................................................. 25

8 U.S.C. § 1324 (a)(1)(A)(iv) .................................................... 44

8 U.S.C. § 1324 (a)(1)(A)(v)(II) ................................................ 45

18 U.S.C. § 2 (a) ....................................................................... 43

18 U.S.C. § 924(c)(1) ............................................................... 27

18 U.S.C. § 982(a)(8)(A) ......................................................... 26

18 U.S.C. § 1591 ........................................... 4, 5, 9, 12, 33, 52

18 U.S.C. § 1591(a) .................................................................. 11

18 U.S.C. § 1591(a)(1) ............................................................... 4

18 U.S.C. § 1591(a)(2) ....................................... 5, 13, 33, 34

18 U.S.C. § 1591(e)(4) ...................................................... 33, 60

18 U.S.C. § 1595 ............................................................. 5, 9, 11

18 U.S.C. § 2101(a) .................................................................. 46

18 U.S.C. § 2252A .................................................................... 47

18 U.S.C. § 2421A .............................................................. 10, 12

18 U.S.C. § 2421A(a) ............................. 1, 11, 14, 17, 19, 20,
                                                            23, 30, 31, 50, 59

18 U.S.C. § 2421A(b) ........................................................ 11, 59

18 U.S.C. § 2421A(b)(1) ........................................................... 31

18 U.S.C. § 2421A(b)(2) ................................................ 59, 61-62, 6

18 U.S.C. § 2421A(c) ........................................................ 11, 32

18 U.S.C. § 2421A(e) ..................................................... 11, 30, 32

19 U.S.C. § 1401(k)(1) ...................................................... 26

19 U.S.C. § 1586 .................................................................. 25

19 U.S.C. § 1587(a) ............................................................. 25

19 U.S.C. § 1703 .................................................................. 25

19 U.S.C. § 1709 .................................................................. 26

21 U.S.C. § 843(b) ............................................................... 27

28 U.S.C. § 1291 .................................................................... 3

28 U.S.C. § 1331 .................................................................... 2

**State Statutes:**

Alaska Stat. § 11.16.110(2)(B) ...................................... 25

Ariz. Rev. Stat. Ann. § 13-1002 .................................... 25

Colo. Rev. Stat. § 18-1-603 ............................................ 25

Del. Code Ann. tit. 11, § 271 ......................................... 25

720 Ill. Comp. Stat. 5/5-2 .............................................. 25

N.J. Stat. Ann. § 2C:2-6 (West) .................................... 25

18 Pa. Cons. Stat. § 306 ................................................. 25

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ............................................... 2

**Legislative Materials:**

164 Cong. Rec. H1293 (daily ed. Feb. 27, 2018)
    (statement of Rep. Wagner) .................................. 9, 12, 36, 37

164 Cong. Rec. H1302 (daily ed. Feb. 27, 2018)
(statement of Rep. Walters) ........................................ 35, 36

164 Cong. Rec. S1851 (daily ed. Mar. 21, 2018) ...................... 12, 36, 37

164 Cong. Rec. S1860 (daily ed. Mar. 21, 2018)
(statement of Sen. Durbin) ........................................ 35, 37

H. Rep. No. 115-572, pt. 1 (2018) .................................... 35, 36

Staff of S. Permanent Subcomm. on Investigations,
Comm. on Homeland Sec. & Governmental Affairs,
114th Cong., *Backpage.com's Knowing Facilitation
of Online Sex Trafficking* (2017),
https://perma.cc/XQ44-C52V ........................................ 7, 8

## Other Authorities:

*Aid and Abet*, Black's Law Dictionary (11th ed. 2019)................... 24, 44

Richard Burn, *A New Law Dictionary* 4 (1792) .................................. 24

Felix Frankfurter, *Some Reflections on the Reading of Statutes*,
47 Colum. L. Rev. 527 (1947).............................................. 41

Wayne R. LaFave, 2 *Substantive Criminal Law* § 13.2
(3d ed.), Westlaw (database updated Oct. 2022) ........................ 25, 26

*Pandering*, Black's Law Dictionary (11th ed. 2019) .............................. 31

Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3d ed. 1982)...... 44

Antonin Scalia & Bryan A. Garner, *Reading Law:
The Interpretation of Legal Texts* (2012) ............................. 42

U.S. Dep't of Justice, *The National Strategy for Child
Exploitation Prevention and Interdiction* (Apr. 2016),
https://perma.cc/RN5J-3WT2 ........................................ 6, 7

## GLOSSARY

| | |
|---|---|
| JA | Joint Appendix |
| FOSTA | The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 |

## INTRODUCTION

Plaintiffs bring this pre-enforcement First and Fifth Amendment challenge to a statute that prohibits aiding and abetting a crime. The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA) proscribes managing certain computer services "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a). FOSTA also removes any impediment under 47 U.S.C. § 230 to state criminal prosecutions of such crimes and the related crime of aiding and abetting sex trafficking. The district court correctly interpreted the statute to encompass only conduct in aid of a criminal transaction and granted the government summary judgment on that basis.

Plaintiffs contend that the statute sweeps beyond traditional principles of aiding and abetting a crime and impermissibly prohibits protected speech, such as advocacy for the decriminalization of prostitution, or efforts to provide sex workers with information about housing or avoiding abusive clients. That interpretation is at odds with the text of the statute, which invokes a canonical formulation of aiding-and-abetting liability—acting with the "intent to promote or facilitate" a

crime—and prohibits certain actions taken with the specific intent to bring about a specific type of crime.

Rejecting plaintiffs' statutory interpretation makes quick work of their constitutional claims. There is no First Amendment right to engage in a course of criminal conduct that, under traditional principles of accomplice liability, intentionally aids and abets the commission of the crimes at issue here, even if that conduct involves speech. The statute's invocation of aiding-and-abetting liability draws on settled legal concepts that provide adequate notice of what the statute prohibits, consistent with the Fifth Amendment. And plaintiffs cannot bring a facial Ex Post Facto challenge to a statute that is plainly capable of being applied prospectively. The judgment should be affirmed.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's federal-question jurisdiction under 28 U.S.C. § 1331. JA20 (complaint). The district court granted the government's motion for summary judgment on March 29, 2022. JA745 (order); JA717-44 (opinion). Plaintiffs filed a timely notice of appeal on April 25, 2022. JA746; *see* Fed. R. App. P. 4(a)(1)(B). This

Court has jurisdiction over this appeal from a final decision of the

district court under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The questions presented are:

1. Whether FOSTA encompasses only criminal aiding and

abetting and is thus consistent with the First Amendment.

2. Whether FOSTA provides adequate notice of what is unlawful

and is thus consistent with the Fifth Amendment.

3. Whether plaintiffs have standing to bring their Ex Post Facto

challenge to FOSTA and whether FOSTA, on its face, violates the Ex

Post Facto clause.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the

addendum to this brief.

## STATEMENT OF THE CASE

**A.   Statutory Background**

**1.   Federal criminal statutes addressing sex trafficking and prostitution**

Several federal criminal statutes can be used to prosecute sex

trafficking and prostitution in certain circumstances. The Travel Act, 18

3

U.S.C. § 1952, for example, makes it a federal crime to use a "facility in interstate or foreign commerce"—including the mail and, today, the internet—"with intent to," among other things, "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." *Id.* § 1952(a)(3). The "unlawful activity" included within the Travel Act's prohibition includes "prostitution offenses in violation of the laws of the State in which they are committed or of the United States." *Id.* § 1952(b).

Congress has also created a more specific crime of the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. That provision of the federal criminal code, 18 U.S.C. § 1591, proscribes "knowingly" performing certain actions, such as "provid[ing], obtain[ing], … or solicit[ing] by any means a person," "knowing" that force, fraud, or coercion "will be used to cause the person to engage in a commercial sex act" or that the person was a minor "and will be caused to engage in a commercial sex act." *Id.* § 1591(a)(1). The statute also prohibits "advertis[ing]" a person for a commercial sex act "in reckless disregard of the fact" that force, fraud, or coercion will be used or that the person is a minor. *Id.* And the statute prohibits

4

"knowingly" benefitting financially from "participation in a venture" that engages in such prohibited acts. *Id.* § 1591(a)(2).

A related provision, 18 U.S.C. § 1595, allows victims to bring civil actions against, and recover damages from, perpetrators for violations of, among other things, 18 U.S.C. § 1591, the criminal prohibition on sex trafficking of children and sex trafficking of adults by force, fraud, or coercion.

### 2. The Communications Decency Act of 1996 and the protections of Section 230

In a portion of the Communications Decency Act of 1996 codified at 47 U.S.C. § 230, and commonly known as Section 230, Congress provided for certain limitations on the liability of interactive computer services, such as certain websites, that allow other people to post information online. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Congress further provided that liability may also not be based on "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be

obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2). That provision allows service providers "to establish standards of decency without risking liability for doing so." *Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) (quotation marks omitted).

Congress also provided that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). And Congress provided that Section 230 does not "impair the enforcement" of any "Federal criminal statute." *Id.* § 230(e)(1).

**3.   Section 230 thwarts state criminal prosecutions of, and victims' civil suits against, Backpage.com**

In the decades since Section 230 was enacted, the internet has grown and changed. One extremely disturbing feature of that growth is that certain "[w]ebsites … emerged as a primary vehicle for the advertisement of children to engage in prostitution." U.S. Dep't of Justice, *The National Strategy for Child Exploitation Prevention and Interdiction* 10, 76 (Apr. 2016), https://perma.cc/RN5J-3WT2.

Backpage.com was prominent among those websites, *id.*, until it was brought down by federal prosecutors.

As an in-depth Senate investigation found in 2017, Backpage was "the leading online marketplace for commercial sex" and a "hub" for "human trafficking, especially the trafficking of minors." Staff of S. Permanent Subcomm. on Investigations, Comm. on Homeland Sec. & Governmental Affairs, 114th Cong., *Backpage.com's Knowing Facilitation of Online Sex Trafficking* 1 (2017), https://perma.cc/XQ44-C52V (Senate Report) (quotation marks omitted). Indeed, Backpage "reportedly net[ted] more than 80% of all revenue from online commercial sex advertising in the United States" and was "involved in 73% of all child trafficking reports that the National Center for Missing and Exploited Children … receive[d] from the general public." *Id.* at 1, 6.

The Senate's investigation found that Backpage "kn[ew] that it facilitate[d] prostitution and child sex trafficking." Senate Report 3. Indeed, Backpage had taken intentional measures to help sex traffickers avoid detection when posting advertisements online for commercial sex. *See id.* at 23-41. Backpage, for example, would remove

"terms indicative of criminality," such as "lolita" and "little girl," from
online ads for commercial sex transactions before publishing them, thus
making those ads look "clean[]" without changing "the true nature of
the advertised transaction or the real age of the person being sold for
sex." *Id.* at 2 (quotation marks omitted). Backpage took such steps to
"put[] lipstick on a pig, because when it came down to it, it was what
the business was about": "moderating ads for prostitution." *Id.* at 37
(quotation marks omitted).

   Nevertheless, when state prosecutors and victims sought to hold
Backpage accountable, courts held that Section 230 shielded Backpage
from liability. To thwart state criminal prosecution, "Backpage …
successfully invoked Section 230 in federal-preemption challenges to
state laws in Washington, Tennessee, and New Jersey criminalizing the
advertisement of minors for sex." Senate Report 9. A California state
court also "dismissed felony pimping and conspiracy charges against
Backpage" executives and founders as inconsistent with Section 230. *Id.*
In response to these losses in court, in 2017, "50 State attorneys general
called on Congress to untie their hands to allow them to bring justice to

the websites that sell our children." 164 Cong. Rec. H1293 (daily ed.
Feb. 27, 2018) (statement of Rep. Wagner).

Civil suits brought by child sex-trafficking victims against
Backpage faced similar hurdles. Victims brought such suits under
various state and federal laws, including 18 U.S.C. § 1595, the provision
of the criminal code that allows victims to bring civil actions for
violating 18 U.S.C. § 1591's prohibition on the sex trafficking of children
and the sex trafficking of adults by force, fraud, or coercion. *See, e.g.*,
*Doe ex rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149 (D. Mass.
2015); *see also M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011). Courts dismissed these
claims, reasoning that they sought to hold Backpage liable as the
publisher of the unlawful advertisements and were thus barred by
Section 230. The courts further concluded that civil suits brought under
18 U.S.C. § 1595 for violation of the criminal prohibitions on sex
trafficking in Section 1591 did not fall within the exception in Section
230(e)(1) for actions to enforce a federal criminal statute. *See, e.g.*, *Jane
Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18-24 (1st Cir. 2016). In
affirming the dismissal of such a suit, the First Circuit explained that,

9

to the extent that child victims of sex trafficking wished to bring civil suits against internet publishers such as Backpage that "engaged in a course of conduct designed to facilitate sex traffickers' efforts to advertise their victims on the website," their "remedy is through legislation" to amend Section 230, "not through litigation." *Id.* at 16, 29.

### 4. The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA)

Congress responded to the obstacles faced by state prosecutors and victims in seeking to hold Backpage and websites like it accountable by enacting the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) (FOSTA). FOSTA sets forth "the sense of Congress that" Section 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims" and that "clarification" of Section 230 was "warranted to ensure that such section does not provide such protection to such websites." FOSTA § 2, 132 Stat. at 1253.

FOSTA made two primary statutory changes. First, it added 18 U.S.C. § 2421A to the criminal code. *See* FOSTA § 3(a), 132 Stat. at

10

1253-54. Section 2421A(a) proscribes "own[ing], manag[ing], or operat[ing] an interactive computer service," as defined in Section 230 (47 U.S.C. § 230(f)(2)), "with the intent to promote or facilitate the prostitution of another person" (or attempting or conspiring to do so). 18 U.S.C. § 2421A(a). Section 2421A(b) provides a longer punishment if someone commits a violation of the base offense and also either (1) "promotes or facilitates the prostitution of 5 or more persons"; or (2) "acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of [18 U.S.C. §] 1591(a)." *Id.* § 2421A(b). A person injured by an aggravated violation may recover civilly. *Id.* § 2421A(c). Section 2421A(e) sets forth an affirmative defense: a person is not criminally or civilly liable under the statute if "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." *Id.* § 2421A(e).

Second, FOSTA established that Section 230 does not bar certain cases involving conduct that violates certain federal criminal laws. *See* FOSTA § 4(a), 132 Stat. at 1254 (codified at 47 U.S.C. § 230(e)(5)). It clarified that Section 230 does not bar: (1) "any claim in a civil action brought under" 18 U.S.C. § 1595, "if the conduct underlying the claim

11

constitutes a violation of section 1591," the federal criminal prohibition on sex trafficking a child or sex trafficking an adult by force, fraud, or coercion; (2) "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of" the federal criminal prohibition on sex trafficking in 18 U.S.C. § 1591; or (3) "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of" 18 U.S.C. § 2421A, the new criminal prohibition added by FOSTA. 47 U.S.C. § 230(e)(5).

FOSTA provided that these amendments to Section 230 "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment." FOSTA § 4(b), 132 Stat. at 1254-55. While FOSTA was being considered by Congress, the Department of Justice sent a letter to Congress stating that this provision "raises a serious constitutional concern" under "the Constitution's Ex Post Facto Clause." 164 Cong. Rec. H1297. *But see* 164 Cong. Rec. S1856-57 (daily ed. Mar. 21, 2018) (providing analysis by the American Law Division of the Congressional Research Service concluding the bill would not violate the Ex Post Facto Clause).

The statute also added a new definition to the federal criminal prohibition on sex trafficking. That pre-existing statute, among other things, made it a crime to knowingly benefit from "participation in a venture" that violates the prohibition on sex trafficking in Section 1591(a)(1). 18 U.S.C. § 1591(a)(2). FOSTA defined the phrase "participation in a venture" to mean "knowingly assisting, supporting, or facilitating a violation" of Section 1591(a)(1). FOSTA § 5, 132 Stat. at 1255 (codified at 18 U.S.C. § 1591(e)(4)).

## B.  Plaintiffs' First Amendment, Fifth Amendment, and Ex Post Facto Challenges

Plaintiffs are the Woodhull Freedom Foundation, an organization that advocates for sexual freedom; Human Rights Watch, an organization that advocates for human rights; and the Internet Archive, an organization that archives webpages. JA18-19 (complaint). Plaintiffs also include two individuals. Eric Koszyk is a massage therapist who allegedly lost business when Craigslist, subsequent to FOSTA's enactment, stopped allowing a certain type of classified ad that he had previously used to find clients. JA19. Alex Andrews runs a website dedicated to advocating for sex workers' health, safety, and human rights. JA19. Their suit against the Attorney General and the United

13

States seeks a declaratory judgment and injunction preventing the
government from enforcing FOSTA against them or anyone else in any
circumstances. JA19, 62.

Plaintiffs contend that they "advocate for the legalization of sex
work, both domestically and internationally, provide education, health
and safety resources, and more broadly work to support sex workers."
JA13. They are "concerned that continuing their advocacy and
assistance efforts will be considered 'promoting or facilitating'
prostitution" within the meaning of the new criminal prohibition
created by FOSTA, 18 U.S.C. § 2421A(a). JA13. Plaintiffs contend that
FOSTA's criminal prohibition is a content-based restriction on protected
speech that fails strict scrutiny and is facially overbroad in violation of
the First Amendment. JA47-54. They also contend that the First
Amendment prohibits Congress from modifying Section 230 to allow
state prosecution and victims' suits against those who violate certain
federal criminal statutes. They contend that the scope of FOSTA's
restrictions is impermissibly vague in violation of the Fifth
Amendment. JA54-56. And they argue that FOSTA is impermissibly
retroactive under the Ex Post Facto Clause. JA60-62.

14

## C.   Prior Proceedings

### 1.   Dismissal for lack of standing; first appeal

The district court initially dismissed the complaint, concluding that plaintiffs lacked Article III standing because FOSTA did not reach the advocacy and archival activities in which some plaintiffs engage. The court also concluded that the massage therapist's loss of the ability to post on an online classified ad service was not remediable by a court order insofar as it depended on the actions of third parties not before the Court. *See Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 198-204 (D.D.C. 2018).

On appeal, this Court reversed and remanded, concluding that at least the two individual plaintiffs had standing. *See Woodhull Freedom Found. v. United States*, 948 F.3d 363 (D.C. Cir. 2020). Judge Rogers, joined by Judge Griffith, explained that, to separate the standing inquiry from the merits, "in a pre-enforcement challenge," such as this one, a plaintiff can establish the injury requirement for Article III standing by demonstrating, among other things, an "'imminent threat' that a statute will be enforced against the plaintiff" where the plaintiff's conduct is "'*arguably* … proscribed by a statute.'" *Id.* at 371

15

(alteration in original) (emphasis added) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

The majority concluded that FOSTA "arguably" proscribed some of plaintiff Alex Andrews' conduct in running a website on which sex workers can rate and review rescue and harm-reduction resources for sex workers. 948 F.3d at 372-74. The majority noted that the statutory terms "promote" and "facilitate" were "susceptible of multiple and wide-ranging meanings," including "to make easier," in general, or "as a synonym for terms like 'aid,' 'abet,' and 'assist,' in which case the term's meaning would be limited by the background law of aiding and abetting." *Id.* at 372 (quotation marks omitted). The majority concluded that it "need not read FOSTA to encompass advocacy or educational activities to hold that Andrews has standing" because her website "allows sex workers to share information about online payment processors like PayPal," which the majority concluded could arguably be proscribed by FOSTA under at least one of its arguable interpretations. *Id.* at 373. The majority also concluded that plaintiff Eric Koszyk, the masseuse, had injuries that would be redressable if he were to prevail because Craigslist stated publicly that it had removed the relevant

16

section of its website "in response to FOSTA's passage" and that it hoped to "bring [it] back some day." *Id.* at 374.

Judge Katsas concurred in part and in the judgment. *See* 948 F.3d at 374-76. He agreed with the majority's reasoning regarding plaintiff Koszyk's standing. *Id.* at 376. And he agreed with the conclusion that plaintiff Andrews had standing. *Id.* at 375-76. He wrote separately to reject the notion that the statutory phrase "promote or facilitate the prostitution of another," as used in FOSTA, could even arguably cover "advocating for decriminalization; educating prostitutes about rights and risks; helping prostitutes obtain housing, medical attention, child care, or other essential services; and even internet archiving that incidentally sweeps up content related to prostitution." *Id.* at 375 (quoting 18 U.S.C. § 2421A(a)). Judge Katsas noted that his colleagues in the majority, in concluding that this was "at least one possible reading of FOSTA," did not actually "adopt this construction of FOSTA." *Id.* And he explained that he would "reject the plaintiffs' proposed construction." *Id.*

Judge Katsas explained that "FOSTA focuses not on prostitution as an abstract legal or policy matter, but on 'the prostitution of another

17

person'—a widely criminalized act involving the exchange of sex for money." 948 F.3d at 375. In the criminal-law context, he explained, "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution … track[s] almost verbatim the canonical formulation for the offense of aiding and abetting." *Id*. In Judge Katsas' view, FOSTA thus "require[s] that the defendant own, manage, or operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Id*. He agreed with the majority's conclusion that plaintiff Alex Andrews had standing because her website "provides prostitutes with information about online payment processors like PayPal, which directly assists the exchange of sex for money" and which "might support an inference that Andrews has the requisite intent to 'promote or facilitate the prostitution' of someone besides herself." *Id*. at 376 (citation omitted) (quotation marks omitted).

## 2. Summary judgment in the government's favor on remand

On remand, the district court granted the government's motion for summary judgment. JA717-44 (opinion). The court adopted the construction of the statute that Judge Katsas set forth in his

concurrence and which the majority left open in the first appeal. The court concluded that the criminal prohibition on operating an interactive computer service with the intent to "promote or facilitate the prostitution of another person," 18 U.S.C. § 2421A(a), is "narrowly tailored" to cover only such operation "with the intent to aid, abet, or assist specific instances of prostitution," JA731. The court explained that "FOSTA's scope is limited to legitimately criminal activity" and that there was thus no basis for plaintiffs' First Amendment overbreadth argument. JA731. The court rejected plaintiffs' argument that the court's interpretation was precluded by this Court's decision in the first appeal, noting that the panel majority concluded only that a broader construction was "arguably" possible, not that the statute *must* be construed more broadly. JA733.

The court noted that many of plaintiffs' other claims "depend in large part on the same overbroad reading of FOSTA" and rejected those claims on similar grounds. JA735. The court explained that FOSTA is not a content-based regulation of speech and is instead "narrowly targeted at a band of conduct that materially advances specific instances of illegal prostitution." JA739 & n.10. The court held that

19

plaintiffs' Fifth Amendment vagueness claim fails for similar reasons because, "[p]roperly construed," FOSTA "provides clear notice of the type of conduct prohibited." JA735-36. The court observed that "plaintiffs' vagueness concerns are further undercut by the presence of the heightened scienter requirements throughout FOSTA's prohibitions," such as the specific-intent requirement of the new crime codified at Section 2421A. JA736; *see also* JA740-41. The court rejected plaintiffs' Ex Post Facto challenge to the retroactive clarification of Section 230's scope because any state criminal prosecutions based on conduct occurring before FOSTA's passage "would be undertaken by parties not before the Court." JA743.

## SUMMARY OF ARGUMENT

In enacting FOSTA, Congress made it a crime to operate certain computer services "with the intent to promote or facilitate" a criminal transaction: "the prostitution of another person" in a jurisdiction in which such conduct is unlawful. 18 U.S.C. § 2421A(a). Congress sought to hold accountable operators of certain computer services that, like Backpage, knowingly take actions specifically intended to aid in the commission of certain statutory violations, such as the illegal sale of sex

20

for money—a quintessentially transactional crime. The statute's terms "promote or facilitate" are longstanding terms of art in criminal law, often used interchangeably with "aiding or abetting."

Plaintiffs do not dispute that Congress may permissibly draw on traditional notions of accomplice liability and punish those who aid and abet the crimes at issue here, even if that criminal course of conduct involves speech. And their First and Fifth Amendment arguments depend entirely on the assertion that the statute extends far more broadly than aiding or abetting the conduct of a criminal offense. Plaintiffs insist that the terms "facilitate" and "promote" should not be read in accordance with their traditional meaning in criminal law and that they should instead be understood to encompass any activity that endorses the prohibited conduct or in some attenuated way makes that conduct easier. The district court correctly rejected that interpretation, and plaintiffs' arguments to the contrary are at odds with the established meaning of the terms employed by Congress, as well as with the legislative history that confirms that the statute is concerned only with traditional aiding-and-abetting accomplice liability for the

criminal transactions at issue here. Plaintiffs' pre-enforcement, facial challenge seeks to create constitutional infirmities that do not exist.

Plaintiffs' arguments depend on their mistaken reading of the statute and collapse when that reading is corrected. If the statute covers only conduct or speech so integral to criminal conduct that it falls within traditional principles of accomplice liability, it does not violate the First Amendment. Nor is there a First Amendment obstacle to removing any preexisting statutory protection from state prosecution or civil liability from anyone, like Backpage, who aids and abets such crimes. Congress's reliance on well-known legal principles governing the scope of aiding-and-abetting liability ensures that the statute gives proper notice of what is prohibited, as required by the Fifth Amendment. And plaintiffs' Ex Post Facto challenge fails as well. Plaintiffs cannot obtain judicial relief against state prosecutors or trafficking victims because those people are not parties to this case. There is no indication that plaintiffs face any imminent prosecution for aiding and abetting prostitution before FOSTA was enacted. And the statute does not violate the Ex Post Facto clause on its face because it can be applied prospectively. The judgment should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's grant of a motion

for summary judgment." *Grimes v. District of Columbia*, 794 F.3d 83,

88-89 (D.C. Cir. 2015).

## ARGUMENT

### I.    FOSTA Is Consistent With The First Amendment.

### A.    To Act With The "Intent To Promote Or Facilitate The Prostitution Of Another Person" Is To Aid Or Abet A Crime.

In the key portion of FOSTA at issue here, Congress created a

criminal prohibition on "own[ing], manag[ing], or operat[ing] an

interactive computer service," such as certain types of websites, "with

the intent to promote or facilitate the prostitution of another person." 18

U.S.C. § 2421A(a). FOSTA thus "focuses not on prostitution as an

abstract legal or policy matter, but on 'the prostitution of another

person'—a widely criminalized act involving the exchange of sex for

money." *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 375

(D.C. Cir. 2020) (Katsas, J., concurring in part and in the judgment).

And, in that criminal-law context, "FOSTA's requirement of action with

an 'intent to promote or facilitate' prostitution … track[s] almost

verbatim the canonical formulation for the offense of aiding and abetting." *Id.*

### 1. The phrase "promote or facilitate" as used in criminal statutes is equivalent to "aid or abet."

The terms "aid or abet" and "promote or facilitate" have been understood to have the same meaning since at least the 17th century. *Aid and Abet*, Black's Law Dictionary (11th ed. 2019). To "aid and abet" is "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." *Id.*; *see also* Richard Burn, *A New Law Dictionary* 4 (1792) (defining "abettor" as "one who promotes or procures a crime"). Consistent with that longstanding definition, case law and statutes routinely refer to the "intent to promote or facilitate the commission of a crime" as incorporating the concept of aiding-and-abetting liability. Indeed, that is one of the most common definitions of an accomplice in American law: "By definition an accomplice [is] a person who acts with the purpose of promoting or facilitating the commission of the substantive offense for which he is charged as an accomplice." *State v. White*, 484 A.2d 691, 694 (N.J. 1984) (emphases omitted).

24

The Model Penal Code, for example, defines an accomplice, in relevant part, as a person who takes certain actions "with the purpose of promoting or facilitating the commission of" an offense by another person. Model Penal Code § 2.06(3)(a). Numerous states do the same. *See, e.g.*, Alaska Stat. § 11.16.110(2)(B); Ariz. Rev. Stat. Ann. § 13-1002; Colo. Rev. Stat. § 18-1-603; Del. Code Ann. tit. 11, § 271; 720 Ill. Comp. Stat. 5/5-2; N.J. Stat. Ann. § 2C:2-6 (West); 18 Pa. Cons. Stat. § 306. The influential LaFave treatise similarly defines accomplice liability as "giv[ing] assistance or encouragement … with the intent thereby to promote or facilitate commission of the crime" by another person. Wayne R. LaFave, 2 *Substantive Criminal Law* § 13.2 (3d ed.), Westlaw (database updated Oct. 2022).

Consistent with that understanding, federal statutes also employ the phrase to "promote or facilitate" to denote the aiding or abetting of a criminal act. The federal customs statutes, for example, provide that a "hovering vessel" may be boarded, its cargo seized and forfeited, and its master subjected to penalties, *see* 19 U.S.C. §§ 1586, 1587(a), 1703, where such vessel is used to "introduce or promote or facilitate the introduction … of merchandise into the United States in violation of the

laws of the United States," *id.* §§ 1401(k)(1), 1709. A criminal forfeiture statute similarly requires that a court sentencing a defendant for the commission of certain offenses must order forfeiture of any property used "to commit, to facilitate, or to promote the commission of such offense." 18 U.S.C. § 982(a)(8)(A).

The Supreme Court expressly relied on the promote-or-facilitate definition of aiding and abetting in the LaFave treatise to explain the scope of aiding-and-abetting liability at common law and in state statutes in *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (explaining that "an accomplice is liable as a principal when he gives 'assistance or encouragement … with the intent thereby to promote or facilitate commission of the crime'" (alteration in original) (quoting LaFave, *supra* § 13.2)); *see also Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (discussing a jury instruction that "requir[ed] that an accomplice in the commission of the crime take action with knowledge that it will promote or facilitate the commission of the crime" (emphases omitted) (quotation marks omitted)).

The Supreme Court also expressly relied on the promote-or-facilitate definition of aiding and abetting from *Black's Law Dictionary*

26

to reject an expansive reading of "facilitate" in another federal criminal statute in *Abuelhawa v. United States*, 556 U.S. 816 (2009). In that case, the Court interpreted the scope of a federal statute that prohibits the intentional use of a communication facility in committing or "facilitating the commission" of a controlled-substance offense. 21 U.S.C. § 843(b). The Court refused to adopt an interpretation of "facilitate" that would have encompassed any act that would make the offense easier to commit. *Abuelhawa*, 556 U.S. at 819. Instead, relying in part on the same definition of "aid and abet" in *Black's Law Dictionary* quoted above, the Court held that "the term 'facilitate'" as used in that criminal statute had an "equivalent meaning" to specialized "terms like 'aid,' 'abet,' and 'assist'" and thus included some "traditional judicial limitation[s]" on aiding-and-abetting liability that come along with those legal terms of art. *Id.* at 821. And this Court has similarly interpreted the criminal prohibition in 18 U.S.C. § 924(c)(1) on the possession of a firearm "in furtherance of" certain crimes to require proof that the firearm "promote[s] or facilitate[s] the crime." *United States v. Wahl*, 290 F.3d 370, 376 (D.C. Cir. 2002) (quotation marks omitted).

27

Courts have also frequently had occasion to interpret the terms "promote" or "facilitate" with regard to criminal acts in decisions involving the Travel Act, which makes it a crime for anyone to "travel[]" or use "any facility in interstate or foreign commerce, with intent to … promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity" specified by the statute. 18 U.S.C. § 1952(a). In discussing the statute, courts often compress the litany of words to "promote or facilitate" the commission of an unlawful act. *Marshall v. United States*, 355 F.2d 999, 1002 (9th Cir. 1966); *see also, e.g.*, *United States v. Manzo*, 712 F.3d 805, 808 (3d Cir. 2013); *United States v. Ruiz*, 386 F. App'x 530, 531, 532, 534 (6th Cir. 2010) (unpublished); *United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003); *United States v. Heilmann*, 235 F.3d 1146, 1147 (8th Cir. 2001); *United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996) (unpublished); *United States v. Nino*, 967 F.2d 1508, 1509 (11th Cir. 1992); *United States v. Baker*, 611 F.2d 961, 963 (4th Cir. 1979); *United States v. Riquelmy*, 572 F.2d 947, 948 (2d Cir. 1978). The First Circuit observed in *Urena-Ramirez v. Ashcroft*, 341 F.3d 51, 54 (1st Cir. 2003), that the phrase "promote or facilitate," as used in the Travel Act,

28

is equivalent to "aid or abet." Addressing the drug-related offense at issue in that case, the First Circuit explained that "the promotion of" a business enterprise involving cocaine was "tantamount to aiding and abetting the distribution of narcotics." *Id.*

In sum, whatever meaning "promote" or "facilitate" might have in everyday speech, their meaning as terms of art in criminal statutes, invoking traditional principles of accomplice liability, is established.

### 2.   FOSTA uses that term of art.

FOSTA uses the phrase "promote or facilitate" in the same way as the other authorities discussed above: to denote aiding-and-abetting liability under traditional principles of criminal law. By selecting a term of art in criminal law "with a legal lineage stretching back" centuries, *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018), Congress also "adop[ted] the cluster of ideas that were attached to each borrowed word," *George v. McDonough*, 142 S. Ct. 1953, 1963 (2022) (quotation marks omitted). The phrase "promote or facilitate," as used in FOSTA, thus extends no further than the traditional understanding of accomplice liability developed in the criminal law context.

29

As Judge Katsas correctly explained in the first appeal in this case, the offense specified in Section 2421A(a) thus applies only where "the defendant own[s], manage[s], or operate[s] a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Woodhull*, 948 F.3d at 375 (Katsas, J., concurring in part and in the judgment). "This is not to suggest that FOSTA requires proof of a specific, completed act of prostitution, as would the offense of aiding and abetting prostitution." *Id.* But it does limit the sweep of the phrase "promote or facilitate" to the kinds of intentional acts that would make an accomplice criminally liable for the prostitution of another person.

**a.** That is the best reading of Section 2421A's text and structure. FOSTA uses the phrase "promote or facilitate" to describe the specific "intent" the criminal defendant must have with respect to the commission of a specific underlying criminal act: "the prostitution of another person," in a jurisdiction in which such prostitution is "[il]legal." 18 U.S.C. § 2421A(a), (e). FOSTA thus "focuses not on prostitution as an abstract legal or policy matter, but on 'the

30

prostitution of another person'—a widely criminalized act involving the exchange of sex for money," and "promote or facilitate" is properly construed in the context of that criminal transaction. *Woodhull*, 948 F.3d at 375 (Katsas, J.). And, in that context, the statute thus "track[s] almost verbatim the canonical formulation for the offense of aiding and abetting" the commission of a crime by another person, *id.*, paralleling the definition of aiding and abetting in legal dictionaries, treatises, the Model Penal Code, numerous state statutes, and several federal statutes, including the Travel Act. Indeed, the term "promoting prostitution" itself has a longstanding, specific meaning: "[t]he act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute." *Pandering*, Black's Law Dictionary (11th ed. 2019) (noting that "pandering" is "[a]lso termed *promoting prostitution*").

That Congress used "facilitate" and "promote" with their usual meaning in the criminal law context is underscored by the inclusion in Section 2421A not only of the base offense of promoting or facilitating "the prostitution of another person" but of the aggravated offense of promoting or facilitating "the prostitution of 5 or more persons." 18

31

U.S.C. § 2421A(a), (b)(1). The statute distinguishes between aiding and abetting in the prostitution of one and several persons; it is not concerned with generic advocacy or information about housing services or harm-reduction strategies. That is also clear from the statute's provision that individuals "injured" as a result of a violation of the statute may "recover damages." *Id.* § 2421A(c). Plaintiffs identify no theory by which someone could be "injured" by abstract advocacy or the provision of harm-reduction information. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 245 (2010) (interpreting bankruptcy provision that prohibits certain means of causing harm to debtors as not covering "prudent advice" that "should cause no harm").

The anomaly of plaintiffs' position is further underscored by the affirmative defense in Section 2421A(e), which applies where "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." 18 U.S.C. § 2421A(e). Plaintiffs' reading posits that Congress sought to criminalize a spectrum of otherwise legal activities, including advocacy, in Section 2421A(a) and (b), only to then exclude such otherwise legal activities from liability in Section 2421A(e). No canon of construction or exercise

32

of common sense permits reading the statute as pitting one provision against the other.

**b.** Plaintiffs are on no firmer ground in attempting to ascribe a sweeping meaning to FOSTA's amendment to 18 U.S.C. § 1591, the federal criminal prohibition on sex trafficking. Section 1591(a)(1) sets out the principal offense of trafficking a child for a commercial sex act or trafficking an adult for a commercial sex act by means of force, fraud, or coercion. In addition to that principal offense, Section 1591(a)(2) provides for criminal liability for those who "knowingly … benefit[] … from participation in a venture which has engaged in an act described in" the paragraph setting out the principal offense. 18 U.S.C. § 1591(a)(2).

FOSTA defined "participation in a venture" (which was previously undefined) to mean "knowingly assisting, supporting, or facilitating a violation of" the principal offense. 18 U.S.C. § 1591(e)(4). Like the phrase "promote or facilitate" in Section 2421A, the phrase "knowingly assisting, supporting, or facilitating" in Section 1591 has a transactional meaning. It defines the scope of criminal liability for those who financially benefit from their own knowing participation in a

33

venture that makes money by engaging in sex trafficking. In urging that this phrase should encompass abstract advocacy or providing information about social services or harm-reduction, plaintiffs would interpret "participation in a venture" without regard to the proscribed sex-trafficking "venture" in which the defendant "participat[es]" and thereby "knowingly … benefits." *Id.* § 1591(a)(2). Plaintiffs' broad interpretation is thus foreclosed by the statute's transactional text. And it ignores the precept that where "Congress uses a term in multiple places within a single statute," as with the term "facilitate" in Section 2421A(a) and (b) and "facilitating" in Section 1591(e)(4), "the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019).

Courts applying the amended version of Section 1591 have thus correctly recognized that the definition of "participation in a venture" added by FOSTA encompasses conduct that makes criminal defendants "aiders and abettors of sex trafficking." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *see United States v. Taylor*, 44 F.4th 779, 789 (8th Cir. 2022) (affirming conviction of a defendant who "provided lingerie," "drove" the victims "to his house for

34

the purpose of performing 'happy-ending' massages," "set the rates for the massages, and received a portion of the clients' payments").

 **c.** FOSTA's legislative history confirms that the statute was "narrowly crafted" to target "websites like Backpage that knowingly facilitate sex trafficking," to hold them "accountable for their exploitative, criminal actions." 164 Cong. Rec. S1860 (daily ed. Mar. 21, 2018) (statement of Sen. Durbin during floor debates). The purpose of the statute was to enable increased enforcement against "[w]ebsites like Backpage, which are essentially storefronts for the facilitation of sex trafficking." 164 Cong. Rec. H1302 (daily ed. Feb. 27, 2018) (statement of Rep. Walters). Accordingly, FOSTA targets "criminal actor websites" that "have gone beyond merely hosting advertisements" and have "purposely created platforms designed to facilitate prostitution and sex trafficking." H. Rep. No. 115-572, pt. 1, at 3 (2018). That is the type of conduct that falls within the statutory prohibition on "facilitation." The fact that "Backpage had knowingly concealed evidence of criminality by systematically editing" ads for sex with children demonstrated that "Backpage knew it facilitated prostitution and child sex trafficking." *Id.* at 5. Under existing law, Backpage had not faced state criminal

consequences for "actively engag[ing] in content creation and purposely concealing illegality in order to profit off of advertisements." *Id.* FOSTA "aim[ed] to remedy" that situation. *Id.*

That remedy, as the bill's sponsors explained, would permit state prosecution of accomplices to the underlying crimes of prostitution and sex trafficking. Senator Blumenthal noted that FOSTA would make sure that certain websites would not have "a free pass to aid and abet sex trafficking," 164 Cong. Rec. S1851, and Senator Heitkamp similarly observed that the new prohibitions were directed at persons who "were complicit and, in fact, abetted these crimes," *id.* at S1853. Emphasizing that "[a]nyone who aids, assists, facilitates or promotes such behavior must be held accountable," 164 Cong. Rec. H1303, Representative Jackson Lee explained that FOSTA would permit enforcement against "bad actor[s] who participate[] in, facilitate[], contribute[] to, or profit[] from this modern-day form of slavery," *id.* at H1293. Representative Smith likewise stressed that permitting prosecution of the operators of interactive computer services who intend to promote or facilitate the prostitution would bring justice to "traffickers and their accomplices,"

36

*id.* at H1294, including "the middleman who facilitated and profited from their slavery," *id.* at H1295.

The legislative history thus confirms that FOSTA does not criminalize plaintiffs' advocacy**,** harm-reduction, or archival work. Indeed, Senator Blumenthal addressed that point explicitly. He explained that FOSTA "would not criminalize the so-called harm reduction communication—information designed to ensure that women and men wrapped up in commercial sex trade can avoid violence, prevent HIV, and access community and support services." 164 Cong. Rec. S1852. Senator Schumer observed that he had "heard concerns that this legislation could be misused or abused to penalize websites that promote important health and safety information … and provide access to community and peer support services." *Id.* at S1860. He emphasized that these concerns were unfounded: "the use of this legislation to create any liability for this important work would be an impermissible misreading of the statutory language." *Id.*

### 3.   Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs urge the Court to adopt a construction of FOSTA that would create constitutional concerns where none exist. Even if

plaintiffs' interpretation were plausible, it is axiomatic that "[w]hen a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction." *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982).

**a.** Plaintiffs first invite the Court to conclude that its prior decision in the first appeal established that Section 2421A(a) reaches all actions by interactive computer services that could be said to make prostitution easier in any way or to encourage prostitution as a general concept and that "FOSTA is not susceptible" to a narrower aiding-and-abetting reading. Br. 28-29.

The district court correctly rejected that contention. JA733. The issue before this Court in the first appeal was whether plaintiffs had standing to bring a pre-enforcement challenge to the statute. The Court stated that the relevant inquiry for this purpose was whether plaintiffs' conduct would "arguably" be proscribed by FOSTA. *Woodhull*, 948 F.3d at 371. The panel did not purport to resolve the merits of plaintiffs' arguments, and it did not suggest that FOSTA, as properly construed, would actually proscribe such conduct. Instead, the panel majority

38

noted that "[t]he terms 'promote' and 'facilitate,' when considered in isolation, 'are susceptible of multiple and wide-ranging meanings.'" *Id.* at 372 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)). *One* such meaning might include generic advocacy and educational activities. *Another* such meaning, "limited by the background law of aiding and abetting," would not. *Id.* And the majority held that it "need not read FOSTA" as broadly as plaintiffs urged. *Id.* at 373.

The majority also concluded that plaintiff Andrews had standing because her conduct was "arguably" proscribed by FOSTA. "Even reading the term 'facilitate' narrowly" to encompass only aiding-and-abetting accomplice liability, 948 F.3d at 372, plaintiff Andrews had alleged facts that could arguably fall within the narrow scope of such liability because she allegedly operated a website that "allows sex workers to share information about online payment processors," *id.* at 373; *accord id.* at 376 (Katsas, J., concurring in part and in the judgment). Here, too, the panel did not purport to determine whether Andrews' conduct actually fell within the statute's prohibition.

In a similar vein, plaintiffs urge that the Court should apply the same standards appropriate to a standing analysis in evaluating the

39

merits, an argument based on a fundamental misunderstanding of the relevant standards in addressing a facial overbreadth claim. Plaintiffs declare that the relevant question is only what the words in a statute "*could*" mean and not what they *actually* mean in context. Br. 28; *see also* Br. 29 ("[T]he district court's narrowed construction of FOSTA makes sense *only* if the terms 'promote' and 'facilitate' can be interpreted as aiding and abetting in the criminal law sense and no other way.").

Plaintiffs get matters backwards. "The first step in overbreadth analysis is to construe the challenged statute," *Williams*, 553 U.S. at 293, by applying all the normal tools of statutory construction to arrive at the statute's meaning, *see id.* at 293-97. Courts thus decide what a statute "prohibits," *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002)—not what it *could* prohibit.

In engaging in that inquiry, courts adhere to the "rule" that "statutes are not read as a collection of isolated phrases." *Abuelhawa*, 556 U.S. at 819-20. "[A] word in a statute," read in isolation, "may or may not extend to the outer limits of its definitional possibilities." *Id.* at 820 (quotation marks omitted). To decide which meaning Congress

40

actually used, "the words of a statute must be read in their context,"
*Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation marks omitted),
and with attention to Congress's frequent practice, as here, of
"transplant[ing]" a word with an established legal meaning into a
statute and, thereby, "bring[ing] the old soil with it," *Stokeling v. United
States*, 139 S. Ct. 544, 551 (2019) (quoting Felix Frankfurter, *Some
Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537
(1947)).

**b.** Plaintiffs' attempt to defend their reading of the statute
disregards the pertinent tools of construction. They assert first that
"facilitate" and "promote," as used in FOSTA, must invoke the broadest
possible definitions of those terms found in non-legal dictionaries
because those definitions are assertedly the "ordinary meaning" of those
terms. Br. 29-30. But, as explained above, "promote and facilitate" is a
longstanding and well-established legal term of art in American
criminal law. And "when Congress employs a term of art, it presumably
knows and adopts the cluster of ideas" associated with that term of art,
not the definition offered by "standard general-purpose dictionaries."
*FAA v. Cooper*, 566 U.S. 284, 291-92 (2012) (quotation marks omitted).

41

"[W]hen the law is the subject" of interpretation, "ordinary legal meaning is to be expected, which often differs from common meaning" and includes legal "terms of art." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012).

Plaintiffs also err in suggesting that the scope of FOSTA's criminal prohibitions cannot be read in light of "criminal law concepts" like aiding and abetting because the statute provides for civil remedies for violations of those criminal prohibitions. Br. 30. The scope of conduct that is covered by a criminal provision is not enlarged by the inclusion of a civil remedy, and the decisions on which plaintiffs rely do not suggest otherwise. Those cases did not involve civil remedies for criminal prohibitions. And the courts in those cases did not avoid giving criminal law terms their established criminal law meanings in a criminal provision by, as plaintiffs urge here, merely noting the availability of a civil remedy. Rather, those cases involved conduct that was itself only "*civilly* unlawful." Br. 30 (quotation marks omitted). The underlying conduct at issue here, by contrast—the prostitution of another and sex trafficking—is criminal.

42

Nor does the aiding-and-abetting construction of the statute "violate[] the canon against superfluity." Br. 31. Plaintiffs note that Section 2421A(a) is disjunctive: it applies where a defendant engages in certain conduct with the intent to facilitate "or" promote the prostitution of another. Plaintiffs contend that the district court interpreted "facilitate" to mean "aiding and abetting" and that, on that understanding, "promote" would either be surplusage or mean "something more than 'aiding and abetting.'" *Id.* But the district court did not interpret "facilitate," standing alone, to mean "aid and abet"; it interpreted the entire phrase "promote or facilitate" as duplicating "the canonical formulation for the offense of aiding and abetting." JA730 (quoting 948 F.3d at 375 (Katsas, J.)).

In any event, "promote" is not surplusage any more than "abet" is, or any of the other many words typically used to invoke aiding-and-abetting liability. *See* 18 U.S.C. § 2(a) (providing for general accomplice liability for anyone who "aids, abets, counsels, commands, induces or procures" the commission of a crime); Br. 39 n.9 (noting, in contradiction of the surplusage argument made just pages earlier in the same brief, that legal sources often use "many more verbs and gerunds"

43

to describe aiding-and-abetting liability). The phrase "aid and abet" is sometimes thought to be "unnecessarily verbose" to the extent that "[a]ny aid given with mens rea is abetment." *Aid and Abet*, Black's Law Dictionary (11th ed. 2019) (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 724-25 (3d ed. 1982)). But any such overlap would never cause a court to conclude that "abet" in the phrase "aid and abet" must therefore be read according to a more general dictionary definition to sweep beyond the criminal law concept of aiding-and-abetting accomplice liability. The same is true with "promote or facilitate" as an established term of art.

**c.** The Immigration and Naturalization Act and the Anti-Riot Act cases that plaintiffs cite (Br. 29-33, 35-36) offer no support for their reading of FOSTA. The immigration cases addressed 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a crime to "encourage[] or induce[] an alien" to come to or remain in the United States, knowing that the alien would thereby violate federal law. In holding that statute overbroad under the First Amendment, the Ninth and Tenth Circuits have declined to read the terms "encourage[] or induce[]" as invoking traditional criminal-law concepts of facilitating or soliciting unlawful

44

activity. *See United States v. Hansen*, 25 F.4th 1103, 1108-09 (9th Cir. 2022); *United States v. Hernandez-Calvillo*, 39 F.4th 1297, 1303-07 (10th Cir. 2022). Those decisions are incorrect, and the government is seeking Supreme Court review in *Hansen*. *See* No. 22-179 (docketed Aug. 29, 2022). The Supreme Court previously granted certiorari to review a decision of the Ninth Circuit adopting the same incorrect construction of Section 1324(a)(1)(A)(iv), and the Court vacated that decision, on other grounds. *United States v. Sineneng-Smith*, 910 F.3d 461, 481-83 (9th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 1575 (2020). Even taking the recent Ninth and Tenth Circuit decisions at face value, those courts construed the term "encourage[]" in Section 1324(a)(1)(A)(iv) expansively for reasons that do not apply here, including because a neighboring provision in Section 1324 expressly prohibits some forms of "aid[ing] or abet[ting]." 8 U.S.C. 1324(a)(1)(A)(v)(II); *Hernandez-Calvillo*, 39 F.4th at 1305 (identifying the existence of that separate "aid[] or abet[]" provision as "crucial[]" to that court's broader interpretation of "encourage[]"); *Hansen*, 25 F.4th at 1108-09 (same).

45

The cases addressing the Anti-Riot Act are similarly inapposite. That statute criminalizes, among other things, interstate travel with intent to "incite a riot," to "organize, promote, encourage, participate in, or carry on a riot," or to "aid or abet any person in inciting or participating in or carrying on a riot." 18 U.S.C. § 2101(a). The Fourth and Ninth Circuits, in the course of determining that the Anti-Riot Act was overbroad in part, have concluded that to "promote" or "encourage" a riot, within the meaning of that statute, includes "abstract advocacy" in favor of rioting. *United States v. Miselis*, 972 F.3d 518, 536-37 (4th Cir. 2020); *United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021) (per curiam). In so holding, those courts emphasized that a definitional provision of the same Act, as they interpreted it, expressly provided that "promoting" and "encouraging" a riot in the underlying criminal offense "shall … be deemed to mean the mere … advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." *Miselis*, 972 F.3d at 539 (alterations in original) (emphases omitted) (quoting 18 U.S.C. § 2102(b)); *Rundo*, 990 F.3d at 718. FOSTA contains no similar provision, and the Anti-Riot Act cases are readily distinguishable on that basis alone.

46

The courts interpreting the Anti-Riot Act also recognized that "promote" can bear different meanings in different contexts, and they further recognized that the Supreme Court had construed "promote" in another criminal statute, 18 U.S.C. § 2252A, to have a narrow, "transactional connotation" of "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer." *Miselis*, 972 F.3d at 537 (quoting *Williams*, 553 U.S. at 294, 299-300). The courts concluded that such a limiting construction was not available for the Anti-Riot Act because, in their view, a riot is "wholly non-transactional" and "can't materialize until a sufficient number of people are persuaded to show up." *Id.* "In *this* statutory context," the courts concluded, "'promote' refers to abstract advocacy." *Id.*; *see also Rundo*, 990 F.3d at 717. FOSTA, by contrast, addresses promoting and facilitating a quintessentially transactional crime—the exchange of sex for money in jurisdictions where that is prohibited. The district court here thus correctly concluded that, regardless of whether the out-of-circuit Anti-Riot Act cases were correctly decided, the reasoning of those cases, on their own terms, would not apply here, where "[a] limiting

47

construction" encompassing "only such aiding and abetting of specified instances of criminal conduct" is "readily available." JA732-33.

### B. The First Amendment Does Not Provide Immunity For Those Who Intentionally Aid And Abet The Crimes At Issue Here Under Traditional Principles Of Criminal Law.

Plaintiffs recognize that the kind of speech that they filed this lawsuit to protect—*e.g.*, answering prostitutes' health questions or sharing information about abusive clients—"cannot be said to be 'aiding or abetting' the crime of prostitution." Br. 33. And they offer no argument as to why the statute should be held to violate the First Amendment if it reaches only traditional aiding-and-abetting accomplice liability.

"[L]ong-established caselaw provides that speech … that constitutes criminal aiding and abetting" under traditional principles of accomplice liability "does not enjoy the protection of the First Amendment." *Rice v. Paladin Enters.*, 128 F.3d 233, 242-43 (4th Cir. 1997). Plaintiffs do not dispute that point. And rightly so. It "has never been deemed an abridgement of freedom of speech … to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written,

48

or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502

(1949). "[T]he constitutional freedom for speech" does not "extend[] its

immunity to speech or writing used as an integral part of conduct in

violation of a valid criminal statute." *Id.* at 498. "Many long established

criminal proscriptions—such as laws against conspiracy, incitement,

and solicitation—criminalize speech (commercial or not) that is

intended to induce or commence illegal activities." *Williams*, 553 U.S. at

298. Such "'prevention and punishment'" of "speech integral to criminal

conduct" has "'never been thought to raise any Constitutional

problem.'" *United States v. Stevens*, 559 U.S. 460, 468-69 (2010)

(citation omitted). There is thus "no doubt that a newspaper

constitutionally could be forbidden to publish a want ad proposing a

sale of narcotics or soliciting prostitutes," or that it could be forbidden to

publish sex-segregated job ads that "aid" employers in indicating illegal

sex preferences in hiring. *Pittsburgh Press Co. v. Pittsburgh Comm'n on

Human Relations*, 413 U.S. 376, 388-89 (1973).

**1.** Plaintiffs' facial overbreadth claim thus fails on the merits.

"[I]nvalidating a law that in some of its applications is perfectly

constitutional—particularly a law directed at conduct so antisocial that

49

it has been made criminal—has obvious harmful effects." *Williams*, 553 U.S. at 292. For that reason, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id*.

FOSTA is not overbroad at all, much less substantially so. Indeed, plaintiffs offer no argument that the statute would be substantially overbroad if "promote or facilitate" were read consistent with traditional criminal law concepts. The district court thus correctly concluded that FOSTA's "legitimate sweep, encompassing only conduct or unprotected speech integral to criminal activity, predominates any sweep into protected speech." JA734. "[I]ndeed," the court concluded, in the circumstances presented here, FOSTA does not "prohibit *any* such protected speech, much less a sufficient amount so as to render the Act overbroad." JA734.

**2.** Plaintiffs' argument that FOSTA is a content-based or viewpoint-based regulation of speech that is subject to strict scrutiny is similarly without merit. "FOSTA, on its face, is not a direct regulation of speech." JA738. It prohibits owning, managing, or operating an

50

interactive computer service with a specific intent to aid or abet a

specific crime under traditional principles of accomplice liability. 18

U.S.C. § 2421A(a). That the government has permissibly rendered this

"course of conduct" a criminal act, even if it may in some circumstances

be "carried out by means of language," does not render the statute a

content-based regulation of speech subject to any First Amendment

scrutiny. *Giboney*, 336 U.S. at 502.

As the district court correctly noted, "[p]laintiffs' contention to the

contrary rests, again, primarily on their overreading of" FOSTA as

regulating "the use of the internet to host the generalized 'promotion' of

prostitution as a concept." JA739. Because the statute does not regulate

generalized advocacy, "FOSTA does not enact a government regulation

of speech that takes a 'pro-prostitution' stance." JA739. It does not

"target[] speech based on its communicative content"—that is, based on

"the topic discussed or the idea or message expressed." *City of Austin v.*

*Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022)

(quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Moreover,

FOSTA's prohibition on criminal aiding and abetting in the

circumstances presented here is "clearly justified by purposes wholly

51

[un]related to any expressive content" of language used to effectuate that criminal course of conduct. JA739; *see Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Congress enacted FOSTA to ensure that criminal facilitators like Backpage could no longer attempt to invoke Section 230 to escape justice for their crimes. And "[t]he First Amendment permits" the government to outlaw that "particularly virulent form" of criminal conduct. *Virginia v. Black*, 538 U.S. 343, 363 (2003).[1]

**3.** Plaintiffs' contention that FOSTA violates the First Amendment by "selective[ly] remov[ing]" Section 230's protections (Br. 2) is similarly without basis. Just as there is no First Amendment right to aid and abet a crime, there is no First Amendment right to retain a statutory protection against being held accountable for aiding and abetting a crime.

Even before FOSTA was enacted, Section 230 allowed the federal government to enforce any "Federal criminal statute." 47 U.S.C. § 230(e)(1). The federal government could thus, before the enactment of

---

[1] Plaintiffs forfeited in district court any argument that FOSTA would be subject to or fail any form of First Amendment scrutiny below strict scrutiny. JA739 n.10.

FOSTA and notwithstanding any other provision of Section 230, criminally prosecute anyone who sexually trafficked a child or an adult by force, fraud, or coercion in violation of 18 U.S.C. § 1591. And the federal government could also already prosecute anyone who used a facility in interstate commerce, such as the internet, "with intent to … promote" or "facilitate" the "unlawful activity" of "prostitution" in violation of the Travel Act, 18 U.S.C. § 1952(a)(3), (b). Moreover, Section 230 allowed for such federal criminal prosecutions while, at the same time, protecting under Section 230(c)(2) any service provider against liability predicated on actions voluntarily taken in good faith to restrict access to material that the provider considers to be "objectionable." 47 U.S.C. § 230(c)(2). Plaintiffs recognize this pre-existing state of the law before FOSTA and correctly raise no argument that it violated anyone's First Amendment rights.

FOSTA did not alter Section 230 in any way relevant to the First Amendment. FOSTA only amended Section 230 so that it would no longer stand in the way of state criminal enforcement of state laws for conduct that would also violate the same federal criminal laws discussed above (sex trafficking in violation of Section 1591 and

promoting or facilitating prostitution under the Travel Act) that the federal government could already enforce, or thwart the ability of victims to recover civilly for sex trafficking. *See* 47 U.S.C. § 230(e)(5). In this way, Section 2421A serves as a convenient way for Congress to cross-reference in Section 230 a subset of conduct that was already subject to federal criminal prosecution under the Travel Act in order to ensure that such conduct (and only such conduct, not all other conduct covered by the Travel Act) could be the basis for state criminal enforcement alongside preexisting federal criminal enforcement.

That is far from the "sweeping" change that plaintiffs suggest, Br. 54, and it poses no First Amendment concerns. Congress was not compelled by the First Amendment to enact Section 230 in the first place. And, when it enacted Section 230, Congress was not forbidden by the First Amendment from carving out certain things, such as federal prosecution of certain crimes, from Section 230's protections, while also maintaining protections for service providers who, in good faith, establish and police their own standards of decency. That much is common ground between the parties. *See, e.g.*, JA12 (challenging

54

FOSTA, not Section 230 as originally enacted in the Communications
Decency Act).

Congress is also not forbidden from amending Section 230 to
further clarify or expand the set of prosecutors and victims who may
bring a narrow set of specified actions against criminal actors such as
Backpage. As the district court correctly noted, "plaintiffs cannot point
to a First Amendment principle" that would prevent Congress from
doing so. JA737. Allowing states to apply traditional principles to
punish criminal accomplices and allowing victims to recover damages
from sex traffickers and their accomplices does not create a "heckler's
veto," Br. 55, or "threaten lifestyle choices," Br. 40. And allowing such
legal actions, while keeping in place the protections for those service
providers who take actions in good faith to restrict material they deem
"objectionable," 47 U.S.C. § 230(c)(2), does not incentivize
"unconstitutional collateral censorship," Br. 55. As this Court has
already explained, the good-faith protections of Section 230(c)(2) merely
allow a service provider to permissibly "establish" its own "standards of
decency." *Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018)
(quotation marks omitted). And no First Amendment principle compels

a service provider to keep material on its service that aids and abets a crime. Indeed, plaintiffs do not argue that FOSTA's modification of Section 230, construed in the manner that the government and district court interpret it, would violate the First Amendment.

Plaintiffs' claim instead turns entirely on plaintiffs' other arguments that FOSTA is an impermissibly overbroad and vague regulation of protected speech. *See* Br. 2 (arguing that FOSTA's "broad and poorly defined restrictions on Internet speech and selective removal of immunity" violate the First Amendment); Br. 52 (arguing that FOSTA's amendments to Section 230 "combined with its other provisions" violate the First Amendment (initial capitalizations omitted)); Br. 54 (arguing that a constitutional infirmity arises from "the intersection of FOSTA's amendments to Section 230 and its sweeping new liability provisions"). As plaintiffs concede, this claim will thus "collapse" if the Court affirms the district court's judgment as to plaintiffs' other First and Fifth Amendment claims. Br. 54 n.13.

## II.   FOSTA Is Consistent With The Fifth Amendment In Providing Adequate Notice Of What Is Unlawful.

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Williams*, 553

U.S. at 304. It requires that a statute "provide a person of ordinary intelligence fair notice of what is prohibited." *Id.* Determining whether a statute provides fair notice depends on "the application of traditional rules for statutory interpretation." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017). In conducting that analysis, it does not present a constitutional problem that "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* at 1107 (quotation marks omitted). A statute is thus not unconstitutionally vague where, as here, terms that may be potentially ambiguous in isolation come with "narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306.

**1.** FOSTA provides adequate notice of what it prohibits. All of the conduct prohibited by FOSTA was already unlawful before FOSTA, and plaintiffs correctly do not contend that the Travel Act or the prohibition on sex trafficking in Section 1591, before FOSTA, were impermissibly vague. Neither is FOSTA. As explained above, applying the usual tools of statutory construction demonstrates that FOSTA prohibits operating an interactive computer service with the specific intent of aiding and

57

abetting the crime of prostitution of another, or knowingly benefiting from participating in a venture by knowingly aiding and abetting sex trafficking. That the statute does not set out exhaustively all the specific conduct that would constitute aiding and abetting crimes is not a constitutional defect. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. The "settled legal meaning[]," *Williams*, 553 U.S. at 306, of aiding and abetting liability in criminal law, combined with the criminal law of the relevant jurisdictions that makes the prostitution of another person unlawful, and the other elements of the sex trafficking offense in Section 1591, provide more than enough guidance to allow ordinary people to avoid becoming, like Backpage, criminally complicit.

Indeed, plaintiffs do not even contend that the statute, interpreted narrowly as the district court did, would be unconstitutionally vague. Plaintiffs' vagueness challenge instead rests on their incorrectly broad reading of the statutory phrases "promote or facilitate" and "assisting, supporting, or facilitating." Br. 37-38. By focusing on the alleged breadth of FOSTA rather than its clarity, plaintiffs attempt to

58

improperly "merge[]" their "vagueness challenge with their First Amendment claims." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). Plaintiffs' vagueness challenge fails because FOSTA's invocation of terms with settled legal meanings provides adequate notice.

Plaintiffs further contend that FOSTA is impermissibly vague in providing for an aggravated offense in Section 2421A(b)(2) where a service provider's intentional aiding and abetting of the prostitution of another person also "contributes to sex trafficking." Br. 38 (quoting 18 U.S.C. § 2421A(b)(2)). But the statute does not end where plaintiffs stop quoting. It provides for enhanced criminal punishment where aiding and abetting the prostitution of another person also "contribute[s] to sex trafficking, *in violation of [Section] 1591(a)*." 18 U.S.C. § 2421A(b)(2) (emphasis added). The aggravated offense thus applies where the commission of the base offense also helped cause a violation of another well-defined criminal prohibition on aiding and abetting sex trafficking. Plaintiffs cite no authority for the proposition that such a provision fails to provide adequate notice of what is prohibited.

59

**2.** The statute's *mens rea* requirements further "dispel[]" any remaining vagueness concerns. *Grayned v. City of Rockford*, 408 U.S. 104, 113 (1972). The base and aggravated offenses in Section 2421A both require that the defendant specifically "inten[d]" to aid and abet the prostitution of another person. 18 U.S.C. § 2421A(a), (b). And "the 'every day' task of assessing intent" is not "inherently vague." *National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27 (D.C. Cir. 2009) (quoting *Williams*, 553 U.S. at 306). The definition that FOSTA added for "participation in a [sex-trafficking] venture," as used in Section 1591, requires that the criminal defendant "knowingly" assist, support, or facilitate a violation of the prohibitions on sex trafficking in Section 1591(a). 18 U.S.C. § 1591(e)(4). And "the Supreme Court has found a 'knowing' requirement sufficient to ameliorate vagueness concerns." *National Ass'n of Mfrs.*, 582 F.3d at 28.

Plaintiffs note (Br. 42) that there is disagreement among some courts about the standards that apply to certain types of civil suits brought under Section 1595 against interactive computer services. That disagreement centers on whether such suits must satisfy the "knowingly assisting, supporting, or facilitating" sex trafficking

standard that FOSTA added to Section 1591 (but not to Section 1595) in order to fall within FOSTA's amendments to Section 230. As amended by FOSTA, Section 230 allows Section 1595 civil suits "if the conduct underlying the claim constitutes a violation of section 1591." 47 U.S.C. § 230(e)(5)(A).

Regardless of which side of that dispute is ultimately determined to be correct, plaintiffs' vagueness challenge fails. Deciding which side of that dispute is correct does not turn on an impermissibly vague "subjective judgment," *Williams*, 553 U.S. at 306, but on the proper application of the traditional tools of statutory construction. Plaintiffs identify no authority for their implicit proposition that a statute is unconstitutionally vague simply because some lower courts so far have disagreed as to its meaning. *See Johnson v. United States*, 576 U.S. 591, 600-01 (2015) (finding a statute impermissibly vague, not because of numerous "division[s]" among courts about whether the statute applied in certain circumstances, but because "pervasive disagreement about the nature of the inquiry" made application of the statute no more than "guesswork"); *cf. Reno v. Koray*, 515 U.S. 50, 64 (1995) (holding that a "statute is not ambiguous for purposes of lenity merely because there is

61

a division of judicial authority over its proper construction" and that
"[t]he rule of lenity applies only if, after seizing everything from which
aid can be derived, we can make no more than a guess as to what
Congress intended" (quotation marks and citations omitted)).

Plaintiffs are also mistaken in arguing that Section 2421A(b)(2)'s
aggravated offense imposes liability based only on "a generalized
notion" that some speech "may be construed to 'promote or facilitate'
prostitution or to 'contribute to sex trafficking.'" Br. 41 (quoting 18
U.S.C. § 2421A(b)(2)). To the contrary, Section 2421A(b)(2) requires
that the defendant (i) operate an interactive computer service with the
specific "inten[t]" to thereby aid and abet the prostitution of another in
violation of Section 2421A(a), and (ii) do so in "reckless disregard" that
such intentionally criminal conduct also "contributed to sex trafficking,
in violation of [Section] 1591(a)." 18 U.S.C. § 2421A(b)(2). The first
requirement supplies "the crucial element separating legal innocence
from wrongful conduct." *Elonis v. United States*, 575 U.S. 723, 737
(2015) (quotation marks omitted).

The second requirement adds an *additional mens rea* element that
further separates criminal conduct from aggravated criminal conduct.

62

Liability for that aggravated offense does not turn on any "generalized notion" of how speech "may be construed." Br. 41. It turns on the defendant himself knowing the facts necessary to realize, and actually realizing, that—like Backpage deleting "Lolita" when posting ads for sex in exchange for money—the defendant's conduct in aiding and abetting the prostitution of another person has also created a substantial and unjustifiable risk of criminal sex trafficking. *See Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994) (noting that criminal recklessness requires that "a person disregard[] a risk of harm of which he is aware"); Model Penal Code § 2.02(c). Plaintiffs identify no authority for the extraordinary proposition that, where a criminal defendant knows the facts of his intentionally aiding and abetting prostitution *and* realizes that those criminal actions also created a substantial and unjustifiable risk of enabling sex trafficking as prohibited by another well-defined statute, he cannot be held criminally liable without some greater degree of culpability. *Cf. Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (allowing criminal punishment for defamation where public official knew a statement was false or acted "in reckless disregard" of its falsity).

## III.   Plaintiffs' Pre-Enforcement Ex Post Facto Challenge Also Fails.

Plaintiffs note that the amendments to Section 230 brought about by FOSTA Section 4(a) (codified at 47 U.S.C. § 230(e)(5)) "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after" FOSTA was enacted. FOSTA § 4(b), 132 Stat. at 1254-55. Plaintiffs contend that FOSTA thereby violates the Ex Post Facto Clause, which provides that no "ex post facto Law shall be passed." U.S. Const, art. I, § 9, cl. 3. The district court correctly held that, regardless of whether applying FOSTA's changes to Section 230 to conduct occurring before the date of FOSTA's enactment would violate the Ex Post Facto Clause, the court could not "provide the plaintiffs with any relief" because plaintiffs had not brought suit against anyone who "could even hypothetically undertake enforcement of FOSTA in a manner that would violate the Ex Post Facto Clause." JA743.

FOSTA Section 4(a) amended Section 230 to permit state prosecutors to bring certain criminal charges under state law (where the underlying conduct would also constitute a violation of specified federal criminal laws) and to permit the victims of sex trafficking to bring civil suits against perpetrators for violations of the federal

64

criminal prohibition on sex trafficking. 47 U.S.C. § 230(e)(5). But

plaintiffs did not name as defendants the people who could bring such

actions: state prosecutors or victims of sex trafficking. They named as

defendants only the United States and the Attorney General. JA19.

Accordingly, even if plaintiffs had violated the prohibition on sex

trafficking or aiding and abetting the prostitution of another before

FOSTA had passed, plaintiffs' asserted injury would not be remediable

in this suit. Judicial remedies "do not simply operate on legal rules in

the abstract"; they "operate with respect to specific parties." *California

v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quotation marks omitted). That

is true even for declaratory judgments, which, just like injunctions,

cannot be issued in the absence of a remediable and concrete case or

controversy between the relevant parties. *Id.*

In any event, plaintiffs' facial Ex Post Facto challenge fails on the

merits. Plaintiffs would have to show that "no set of circumstances

exists under which the Act would be valid." *United States v. Salerno*,

481 U.S. 739, 745 (1987). Yet FOSTA's modification of Section 230 has

numerous applications that would not, in plaintiffs' view, violate the Ex

Post Facto clause, such as state prosecutions for conduct occurring after

the enactment of FOSTA. No authority supports plaintiffs' bare assertion (Br. 56-57) that facial Ex Post Facto Clause challenges receive the relaxed "overbreadth" treatment available for facial claims brought under the First Amendment.

Nor do plaintiffs say that, if FOSTA is construed in the narrow way in which the district court interpreted it, they will be imminently subject to criminal prosecution for sex trafficking or aiding and abetting the prostitution of another based on conduct occurring before FOSTA was enacted. Plaintiffs identify no such attempted prosecution since FOSTA was enacted in April 2018, and such hypotheticals become increasingly unlikely over time. If a state prosecutor were to bring criminal charges against plaintiffs or anyone else for violating specific state laws against sex trafficking or aiding and abetting the prostitution of another for conduct pre-dating FOSTA, the defendant in such a criminal proceeding would have every incentive and opportunity to fully litigate an Ex Post Facto Clause argument in that as-applied setting. *E.g. Stogner v. California*, 539 U.S. 607 (2003).

66

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
   *Attorney General*

MARK B. STERN
 /s/ ***Joseph F. Busa***
JOSEPH F. BUSA
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*
   *Joseph.F.Busa@usdoj.gov*

NOVEMBER 2, 2022

67

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of
Appellate Procedure 32(a)(7)(B) because it contains 12,686 words. This
brief also complies with the typeface and type-style requirements of
Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was
prepared using Microsoft Word 2016 in Century Schoolbook 14-point
font, a proportionally spaced typeface.


*/s/ Joseph F. Busa*
JOSEPH F.BUSA
Counsel for Defendants-Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court

of Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system. Service will be accomplished by the appellate CM/ECF

system.

*/s/ Joseph F. Busa*
JOSEPH F.BUSA
Counsel for Defendants-Appellees

**ADDENDUM**

# TABLE OF CONTENTS

18 U.S.C. § 1591 ......................................................................... A1

18 U.S.C. § 1595 ......................................................................... A3

18 U.S.C. § 1952 ......................................................................... A4

18 U.S.C. § 2421A ....................................................................... A5

47 U.S.C. § 230 ........................................................................... A6

## 18 U.S.C. § 1591. Sex trafficking of children or by force, fraud, or coercion

**(a)** Whoever knowingly—

> **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

> **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is—

> **(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

> **(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or

A1

recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)** In this section:

> **(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

> **(2)** The term "coercion" means—

>> **(A)** threats of serious harm to or physical restraint against any person;

>> **(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

>> **(C)** the abuse or threatened abuse of law or the legal process.

> **(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

> **(4)** **[Added by FOSTA]** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

> **(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

> **(6)** The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

A2

## 18 U.S.C. § 1595. Civil remedy

**(a)** An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

**(b)**

**(1)** Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

**(2)** In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

**(c)** No action may be maintained under subsection (a) unless it is commenced not later than the later of—

**(1)** 10 years after the cause of action arose; or

**(2)** 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

**(d) [Added by FOSTA]** In any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who violates section 1591, the attorney general of the State, as parens patriae, may bring a civil action against such person on behalf of the residents of the State in an appropriate district court of the United States to obtain appropriate relief.

A3

## 18 U.S.C. § 1952 [Travel Act]. Interstate and foreign travel or transportation in aid of racketeering enterprises

**(a)** Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

> **(1)** distribute the proceeds of any unlawful activity; or

> **(2)** commit any crime of violence to further any unlawful activity; or

> **(3)** otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform—

> **(A)** an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or

> **(B)** an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

**(b)** As used in this section (i) "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title and (ii) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

**...**

A4

## 18 U.S.C. § 2421A. [Added by FOSTA] Promotion or facilitation of prostitution and reckless disregard of sex trafficking

**(a) In General.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

**(b) Aggravated Violation.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person and—

  **(1)** promotes or facilitates the prostitution of 5 or more persons; or

  **(2)** acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of [18 U.S.C.] 1591(a),

shall be fined under this title, imprisoned for not more than 25 years, or both.

**(c) Civil Recovery.**—Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court.

**(d) Mandatory Restitution.**—Notwithstanding sections 3663 or 3663A [of title 18 of the U.S. Code] and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any violation of subsection (b)(2). The scope and nature of such restitution shall be consistent with section 2327(b).

**(e) Affirmative Defense.**—It shall be an affirmative defense to a charge of violating subsection (a), or subsection (b)(1) where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted.

## 47 U.S.C. § 230. Protection for private blocking and screening of offensive material

**(a) Findings.** The Congress finds the following:

**(1)** The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

**(2)** These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

**(3)** The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

**(4)** The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.

**(5)** Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

**(b) Policy.** It is the policy of the United States—

**(1)** to promote the continued development of the Internet and other interactive computer services and other interactive media;

**(2)** to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

**(3)** to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

**(4)** to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict

their children's access to objectionable or inappropriate online material; and

**(5)** to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

**(c) Protection for "Good Samaritan" blocking and screening of offensive material**

**(1) Treatment of publisher or speaker.** No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

**(2) Civil liability.** No provider or user of an interactive computer service shall be held liable on account of—

**(A)** any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

**(B)** any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

...

**(e) Effect on other laws.**

**(1) No effect on criminal law.** Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal statute.

...

**(3) State law.** Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be

A7

imposed under any State or local law that is inconsistent with this section.

...

**(5) [added by FOSTA] No effect on sex trafficking law.**
Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit—

> **(A)** any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title;

> **(B)** any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of title 18; or

> **(C)** any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

**(f) Definitions**. As used in this section:

...

**(2) [cross-referenced by FOSTA] Interactive computer service**. The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

**(3) Information content provider.** The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.

...

# EXHIBIT B

```
                    UNITED STATES COURT OF APPEALS
 1               FOR THE DISTRICT OF COLUMBIA CIRCUIT

 2
    - - - - - - - - - - - - - - X
 3                             :
    WOODHULL FREEDOM FOUNDATION, :
 4  et al.,                     :
                               :
 5          Appellants,         :
                               :
 6      v.                      :    No. 22-5105
                               :
 7  UNITED STATES OF AMERICA AND :
 8  MERRICK B. GARLAND, in his  :
    official capacity as Attorney :
 9  General of the United States, :
                               :
10          Appellees.          :
                               :
11  - - - - - - - - - - - - - - X
                                    Wednesday, January 11, 2023
12
                                    Washington, D.C.
13

14
         The above-entitled matter came on for oral
15  argument pursuant to notice.

16      BEFORE:

17          CIRCUIT JUDGES MILLETT AND WALKER, AND SENIOR
            CIRCUIT JUDGE EDWARDS
18
        APPEARANCES:
19
            ON BEHALF OF THE APPELLANTS:
20
            ROBERT CORN-REVERE, ESQ.
21
            ON BEHALF OF THE APPELLEES:
22
            JOSEPH F. BUSA, ESQ.
23

24

25
```

**Deposition Services, Inc.**
P.O. Box 1040
Burtonsville, MD 20886
Tel: (301) 881-3344 Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

C O N T E N T S

ORAL ARGUMENT OF:                                          PAGE

     ROBERT CORN-REVERE, Esq.
     On Behalf of the Appellants                      3; 70

     JOSEPH F. BUSA, Esq.
     On Behalf of the Appellees                          24

WC

1                    P R O C E E D I N G S

2            THE CLERK:  Case No. 22-5105, Woodhull Freedom

3    Foundation et al., appellants, versus United States of

4    America and Merrick B. Garland, in his official capacity as

5    Attorney General of the United States.  Mr. Corn-Revere for

6    the appellants.  Mr. Busa for the appellees.

7            ORAL ARGUMENT OF ROBERT CORN-REVERE, ESQ.

8               ON BEHALF OF THE APPELLANTS

9            MR. CORN-REVERE:  Good morning, Your Honors, and

10   may it please the Court.  When it comes to regulating

11   speech, courts don't uphold laws simply because the

12   Government promises to apply them --

13           JUDGE EDWARDS:  Can you pull that microphone a

14   little --

15           MR. CORN-REVERE:  Yes.  Would you like me to --

16           JUDGE EDWARDS:  That's better.

17           MR. CORN-REVERE:  Okay.

18           JUDGE EDWARDS:  That's better.  Thank you.

19           MR. CORN-REVERE:  When it comes to regulating

20   speech, courts don't uphold laws simply because the

21   Government has promised to apply them responsibly.  As the

22   Supreme Court made clear in United States v. Stevens, the

23   First Amendment protects against the Government; it does not

24   leave us at the mercy of noblesse oblige.

25               This principle was implemented in a couple of

WC

4

1  ways:  first, laws regulating speech must be drafted with

2  narrow specificity; and, second, courts exercise extreme

3  caution when examining laws regulating what the Supreme

4  Court has called the vast democratic forums of the Internet.

5  Various laws intended to regulate online speech have been

6  invalidated facially, applying these principles.  These

7  include the Communications Decency Act, the Child Online

8  Protection Act, and the Child Pornography Prevention Act.

9        It also represents the latest attempt to regulate

10  Internet speech since these seminal cases, and yet,

11  remarkably, with one minor exception I hope to get to later,

12  neither the Government nor the district court even cites

13  these cases.  Instead, the Government treats FOSTA as a

14  garden-variety aiding and abetting law without regard to

15  whether or not it regulates speech.  Now, there are a couple

16  of problems with this:  first, FOSTA is not a garden-variety

17  aiding and abetting law and the Government tries to defend

18  the statute principally by rewriting it; and, secondly, even

19  if FOSTA could be so characterized, it is nonetheless

20  constitutionally deficient because its terms are overly

21  broad, undefined, and chill a vast amount of protected

22  speech, and that's the other remarkable thing about this

23  case.

24        FOSTA chilling effects were protected, they were

25  immediate, and they were widespread across the Internet, and

WC

5

1   this impact has never been disputed by the Government.  In

2   fact, the district court agreed that appellants' claims

3   encapsulate the incentives created by this section of

4   FOSTA --

5           JUDGE MILLETT:  Well, how do we know -- your

6   briefs and amicus briefs talk about a lot of speech that is

7   stopped in reaction to the statute, but how do we know how

8   much of that speech is in fact covered by the statute as

9   opposed to, you know, risk averseness on the part of a lot

10  of these businesses, because if it is -- if the statute is

11  read as an, essentially, aiding and abetting provision, then

12  I assume you would say your clients' conduct doesn't fall --

13  the PayPal account, the massage business ads do not fall

14  under this statute.

15          Does -- has Craigslist said that all of its speech

16  that it shut down did fall within the statute, because

17  that's part of the question here, is whether, for

18  overbreadth at least, whether there's substantial

19  overbreadth, and I'm not sure we can equate substantial

20  overbreadth with substantial reactions to a statute without

21  more, and that's where I'm really struggling to understand

22  what is -- what is covered.  If it's read as an aiding and

23  abetting provision, what is covered that shouldn't be

24  covered?

25          MR. CORN-REVERE:  Right, and that's the problem

WC

6

1  with using broad and expansive language that relates to

2  speech but then doesn't define what speech is covered, and

3  there are three reasons why trying to interpret FOSTA as an

4  aiding and abetting law --

5           JUDGE MILLETT:  Can we just get more to the

6  practical question of -- is it your view that you had two

7  individuals here, the one who does the date and the one with

8  a massage business, is it your position that their speech is

9  perfectly lawful under the First Amendment yet is covered by

10 this statute or they're afraid is covered by the statute?

11          MR. CORN-REVERE:  I think that because of the

12 indeterminate language, they can't be sure that their speech

13 isn't covered.

14          JUDGE MILLETT:  And if it's read as an aiding and

15 abetting statute, criminal aiding and abetting, would their

16 conduct be covered?

17          MR. CORN-REVERE:  I believe they would be

18 acquitted, but that's part of the problem with FOSTA.

19          JUDGE MILLETT:  No, no, no, not acquitted.  Would

20 they --

21          MR. CORN-REVERE:  Yes, but you --

22          JUDGE MILLETT:  -- as a matter of law -- not

23 acquitted.  Would it be, you know, you dismiss the

24 indictment on its face right away, Judge, because this is

25 not aiding and abetting?

WC

7

1          MR. CORN-REVERE:  I do not believe their conduct

2     amounts to aiding and abetting, but because of the way FOSTA

3     is structured, both by using expansive language for what

4     could be covered as well as removing protection for

5     intermediaries, that their speech nonetheless gets censored,

6     because people rationally react to an overly broad

7     regulation of speech by censoring that speech, and that's

8     what the platforms have done in response to the modification

9     of section 230 --

10          JUDGE MILLETT:  I know, but to demonstrate --

11          MR. CORN-REVERE:  -- combined.

12          JUDGE MILLETT:  -- substantial overbreadth, so

13     just --

14          MR. CORN-REVERE:  That's right.

15          JUDGE MILLETT:  -- we'll have discussions about

16     whether it should be read this way -- but let's just assume

17     it is read narrowly as all sort of aiding and abetting

18     conduct consistent with sort of traditional criminal law

19     definitions of that, and to decide that it's overbroad, we

20     can't go, well, you had big words that you've narrowed down

21     to aid and abet.  You'd have to go -- to establish that it's

22     overbroad, you would have to show that even as an aiding and

23     abetting statute, it would capture substantial amounts of

24     lawful protected speech.

25          So if we're in that world, where it's treated as

WC

1   an aiding and abetting statute, how do I know that this

2   statute would nonetheless --

3          MR. CORN-REVERE:  Okay.

4          JUDGE MILLETT:  -- be overbroad because it would

5   nonetheless capture protected speech?

6          MR. CORN-REVERE:  Well, Your Honor, let me

7   respectfully push back on the notion of assuming that it can

8   be interpreted as an aiding and abetting statute.  Therein

9   lies the problem because --

10         JUDGE MILLETT:  No, no, but I -- I know you want

11   to push back on that, but then you're not going to answer my

12   question, which is, I really do want to know that if we're

13   in that world --

14         MR. CORN-REVERE:  Because --

15         JUDGE MILLETT:  -- is it still substantially

16   overbroad or is it only substantially overbroad because of

17   the indeterminacy of whether this is in fact an aiding and

18   abetting statute?

19         MR. CORN-REVERE:  The way in which statutes are

20   interpreted gives latitude to apply beyond what is the

21   criminal concept of aiding and abetting, and that's what's

22   true of FOSTA, and as you compare it to all of the other

23   statutes that have been cited by -- actually, both sides,

24   frankly, that this is substantially different from an aiding

25   and abetting statute, and that's clear from even the

WC

9

1  language of FOSTA in section 2421A when you compare it to

2  that section of the Criminal Code into which it was

3  inserted.

4        It was part of Chapter 117 of the Criminal Code,

5  covering transportation of illegal activity or related --

6  the Mann Act, which has been on the books since 1910, and in

7  every other provision you have language that expresses what

8  the crime is that is being prosecuted.  So, for example,

9  section 2422(b) criminalizes using the mail or facility or

10 means of interstate commerce in a way that knowingly

11 persuades, induces, entices, or coerces any individual.

12 Similarly, section 2422(a) applies to anyone who knowingly

13 persuades, induces, entices, or coerces any individual to

14 travel in interstate commerce.

15       What's missing from FOSTA in section 2421A is that

16 language of what the crime is that puts people on notice of

17 what they would be aiding and abetting.  The way the statute

18 reads is to say that anyone who owns, operates, or manages

19 or even attempts to own, operate, or manage an interactive

20 computer service with bad intent, with the intent to promote

21 or facilitate prostitution, is guilty of a federal felony,

22 and you know, it doesn't define what speech, what actions by

23 that interactive computer service would violate the law.

24 It's that indeterminacy which says that this can't be

25 treated like the aiding and abetting laws that the

WC

1    Government cites and that, frankly, we cite.

2            We give seven examples of aiding and abetting laws

3    at footnote 9 in our brief.  Every one of them includes that

4    language that defines what the crime is, and here it's

5    basically speaking with bad intent, and for that reason this

6    isn't a garden-variety aiding and abetting law.  It simply

7    makes no sense to interpret it in that way.

8            That's also true of the laws that the Government

9    cites under the Model Penal Code.  If you look at any of

10   those laws, they include the description of what it is that

11   constitutes a violation, and that's the problem with overly

12   broad or indeterminate laws that purport to regulate speech,

13   and it's the reason why the Supreme Court has always

14   required that those laws be drafted with narrow specificity,

15   and that's absolutely what's lacking here.

16           The Government suggests that we should interpret

17   these laws using the rules of statutory construction, and

18   we've done that, and when you apply the particular rules of

19   statutory construction, none of those support the

20   Government's reading of FOSTA.  The plain-meaning rule --

21   the plain meaning of FOSTA in case law and in legal

22   dictionaries means to make easier, not the aiding and

23   abetting.

24           And getting back to, I believe, your original

25   question of why this is substantially overbroad, the

WC

1  Government has defined what FOSTA's, quote, plainly

2  legitimate sweep is by constantly talking about classified

3  ad websites and talking about Backpage.com, but as

4  apparently this Court made clear the last time this case was

5  before it, FOSTA is not limited to classified advertising

6  and it's not limited to bad-actor websites.  Congress

7  specifically chose broader language that applies to a broad

8  range of protected speech --

9          JUDGE WALKER:  How would you -- this is not a

10  rhetorical question; I'm curious -- how would you write a

11  law that does what you just said?  To say we're going to

12  outlaw bad-actor websites sounds awfully vague.  So maybe

13  we'll start with this:  Do you think it's possible for

14  Congress to ban Backpage.com, constitutionally possible?

15          MR. CORN-REVERE:  I think it is possible to write

16  a constitutional statute, and Judge Walker, let me say, not

17  my job to do Congress's work, and the Supreme Court made

18  that clear in United States v. Playboy --

19          JUDGE WALKER:  There was a footnote in your brief

20  where you seemed awfully sympathetic to Backpage.com, which

21  was a pretty nefarious website, and so I'm -- I guess I'm

22  glad to hear you say that you think Congress can ban

23  Backpage.com, and I wonder how that law would read -- would

24  read different than this law.

25          MR. CORN-REVERE:  Right, and I think it would come

WC

1   closer to a constitutional enactment if Congress had

2   employed the language of, say, the Travel Act or the PROTECT

3   Act, where it includes these transactional verbs that were

4   expressly missing from FOSTA.  So, for example, the Travel

5   Act applies to acts that promote, manage, establish, carry

6   on, or facilitate the promotion of unlawful activity.

7   Those --

8           JUDGE MILLETT:  Sorry.  So if they amended 2421A,

9   capital A, that way, that --

10           MR. CORN-REVERE:  I'm sorry.  I misunderstood your

11   question.

12           JUDGE MILLETT:  If you -- if they had a longer

13   list of verbs and the sort of act-type language that they

14   have in the companion provisions in this section, then it

15   would be constitutional?  It's simply because we've only got

16   promote or facilitate, that is the constitutional problem?

17           MR. CORN-REVERE:  Well, again, we'd have to -- we

18   would have to look at the final product that Congress came

19   up with, but that was the analysis that the Supreme Court

20   did in Williams when it looked at the PROTECT Act and it --

21           JUDGE WALKER:  I know you just said we'd have to

22   look at the language they came up with, but Judge Millett

23   gave you -- Judge Millett gave you the language.

24           MR. CORN-REVERE:  There's an echo.

25           JUDGE WALKER:  No problem, and I think I might

WC

1   (indiscernible).  I don't know.  If Congress wrote the same

2   language that Judge Millett mentioned, which I think is the

3   same language that's in the other statutes you were

4   mentioning, would that --

5           MR. CORN-REVERE:  I think --

6           JUDGE WALKER:  -- be constitutional?

7           MR. CORN-REVERE:  I think that would come closer,

8   because it would at least serve to narrow those terms, and

9   the Supreme Court said, if you look at those --

10          JUDGE MILLETT:  Coming closer isn't

11  constitutionally --

12          MR. CORN-REVERE:  The ones that were -- the

13  PROTECT Act was held to be constitutional --

14          JUDGE MILLETT:  Yes.

15          MR. CORN-REVERE:  -- and it was held to be

16  constitutional because of those additional verbs.  It didn't

17  -- it went beyond promote and facilitate.

18          JUDGE WALKER:  So if we were to read this statute

19  as no broader -- in terms of the verbs -- than that statute,

20  then I guess there would be no constitutional problem here.

21          MR. CORN-REVERE:  Well, there would be the problem

22  that the Court would be rewriting the statute.

23          JUDGE WALKER:  I know, but assume that -- I know

24  you don't agree with the Government's statutory

25  interpretation argument, but if we were to interpret the

1  statute that way, then there would be no First Amendment

2  problem, correct?

3          MR. CORN-REVERE:  No, I don't believe so, Your

4  Honor, because again, for prosecutions going forward, you

5  would still have that statutory language that courts would

6  have to interpret and --

7          JUDGE WALKER:  Then I'm back to my original

8  question, which is, is it possible to write law that does

9  not violate the First Amendment but does ban Backpage.com?

10          MR. CORN-REVERE:  Well, again, Congress did have

11  the option, when it adopted this law -- the Government has

12  spent a lot of time talking about how we have to read the

13  law in light of -- read the statute in light of the

14  background law, and here what Congress adopted was adopting

15  FOSTA.  It was reading it with a background of law under

16  Williams that said the terms promote and facilitate stand

17  alone, in isolation, are capable of widespread meanings.

18  They then adopted to leave out those words --

19          JUDGE WALKER:  I know.  I -- this is a

20  hypothetical, but I want to be sure we're fair to you,

21  whoever writes -- whoever writes the opinion.  I think right

22  now the opinion could say that the plaintiffs concede that

23  Congress can ban Backpage.com without violating the First

24  Amendment but the plaintiffs cannot explain how Congress can

25  do that.

WC

1      MR. CORN-REVERE:  I think if you wrote a statute

2 that said it violates the law to operate an interactive

3 computer service to conduct a prostitution business online,

4 that would be a constitutional law.

5      JUDGE WALKER:  That --

6      JUDGE MILLETT:  You're going to put an intent

7 requirement in there too, aren't you?

8      MR. CORN-REVERE:  With intent, yes --

9      JUDGE MILLETT:  Thank you.

10      MR. CORN-REVERE:  -- but I assumed that --

11      JUDGE WALKER:  But Backpage.com wasn't running the

12 prostitution business.  It was a board.  It was the

13 equivalent of a bulletin board for sex traffickers to

14 advertise.

15      MR. CORN-REVERE:  That is the allegation that has

16 yet to be proven at trial.  The allegations that are

17 contained in the Government's brief contain all sorts of

18 allegations about trafficking that Backpage was not charged

19 with, but that -- apart from that, the question is whether

20 or not a law could be drafted, and I think it could.

21      The transactional terms in the Travel Act talk

22 about basically getting involved in the business or, for

23 purposes of the First Amendment, for speech that is integral

24 to that criminal activity, but that's not what Congress

25 adopted in FOSTA.

WC

1    JUDGE WALKER:  I understand your argument there.

2 Let me pivot to the ex post facto claim and the question of

3 standing.

4    MR. CORN-REVERE:  And after I answer that

5 question, I see that I'm sort of -- I'm intruding on my time

6 for rebuttal.

7    JUDGE MILLETT:  We'll give you time for rebuttal.

8 So you can --

9    MR. CORN-REVERE:  Oh, okay.

10    JUDGE MILLETT:  -- keep answering questions.

11    MR. CORN-REVERE:  Happy to answer all your

12 questions.

13    JUDGE WALKER:  The only defendants in this suit

14 are federal defendants, and the only parties that can bring

15 a prosecution or a civil suit against your clients, using

16 the ex post facto language -- in other words, for the

17 conduct that your clients engaged in before FOSTA, the only

18 people who can hold them accountable for that are state

19 prosecutors and private civil litigants.  Since the federal

20 defendants are the only defendants in this case, how do you

21 -- how could issuing an injunction against the federal

22 defendants help you in this area?

23    MR. CORN-REVERE:  Well, and that's the point that

24 we tried to make in the brief, and that is, the district

25 court dismissed that claim simply by focusing on the

WC

1   injunctive relief portion but we, in our complaint, sought

2   both declaratory and injunctive relief.

3         JUDGE WALKER:  Aha.  So then that leads us to the

4   California v. Texas case that the Supreme Court somewhat

5   recently decided, and it was pretty clear.  It said that --

6   let's see.  The court cannot -- okay.  It said, no standing

7   if the only relief requested is a declaration that the

8   statutory provisions the plaintiffs attack is

9   unconstitutional.  How do you get around that?

10        MR. CORN-REVERE:  I think under Stogner v.

11  California, which says that ex post facto laws shall not be

12  passed, and that is the express provision of the

13  Constitution, Article I, section 9, and combined with the

14  language of the Declaratory Judgment Act that says that any

15  court in the United States may declare the rights and other

16  legal relations of any interested party seeking such

17  declaration, whether or not such further relief is or could

18  be sought, still leaves the court latitude to grant

19  declaratory relief with respect to the ex post facto claim.

20        JUDGE WALKER:  Imagine that -- I mean, it's almost

21  a truism that an ex post facto law can't be passed, that the

22  Constitution says it can't be passed, but the question is,

23  who can you sue and have standing to sue to challenge an

24  ex post facto law?  And, you know, if you picked a random

25  name in the phone book and then sued them and then argued in

WC

1    court correctly that you've been injured by the ex post

2    facto law, you wouldn't have standing, because the random

3    name in the phone book that you've chosen to sue, relief

4    against that defendant can't redress the injury that we

5    would all concede you have from the ex post facto law.

6          MR. CORN-REVERE:  By the same token, Congress

7    adopted a law that simply said that states can now pass

8    ex post facto criminal laws, and you know, you had to wait

9    for a state then to adopt an ex post facto law.  You have

10   simply allowed Congress to adopt a law that is expressly

11   forbidden by Congress.

12         JUDGE MILLETT:  I don't know that that law is

13   expressly forbidden, because it's not an ex post facto law,

14   and what is the harm in waiting for someone to actually do

15   something to hurt you?

16         MR. CORN-REVERE:  Because of the chilling effect

17   that this has had on platforms across the Internet.  FOSTA

18   doesn't operate just in isolation.  It's got three different

19   provisions that create new criminal penalties that activate

20   the ability to impose existing state laws on behavior that

21   existed before or took place before the law was adopted, and

22   you can impose those, all of those conditions on

23   intermediaries for the maximum chilling effect.

24         So the very existence of the law has created the

25   chilling effect.  You don't have to wait for a prosecution,

1    and civil cases have already gone forward alleging

2    violations of FOSTA under actions that took place before the

3    law was adopted.  So --

4           JUDGE MILLETT:  Have any -- have any -- because I

5    know one of the amicus briefs said there's only been one

6    federal prosecution under FOSTA.  I see --

7           MR. CORN-REVERE:  That's right.

8           JUDGE MILLETT:  -- what you mean by that 2421A, or

9    do you even mean 1591 or 1519?  Is it -- do you mean --

10          MR. CORN-REVERE:  The Martono case.

11          JUDGE MILLETT:  Sorry?  When there's only one

12   prosecution under FOSTA, does that mean one prosecution

13   under 2421A or does that include no prosecutions under the

14   amendments to, you know, 1591?

15          MR. CORN-REVERE:  I don't recall the facts of the

16   other prosecution.

17          JUDGE MILLETT:  Okay.  Have there been any state

18   prosecutions under FOSTA that you're aware of?

19          MR. CORN-REVERE:  Not that I'm aware of --

20          JUDGE MILLETT:  Okay.

21          MR. CORN-REVERE:  -- which actually speaks to

22   whether or not this law is either necessary or even the

23   least restrictive means of addressing the issues that

24   Congress sought to address, both under the strict scrutiny

25   analysis, which requires it to be the least restrictive

1  means, and the question of whether or not it is

2  substantially overbroad, because it is more broad than

3  necessary, the fact that those other laws preexisted.

4          JUDGE MILLETT:  And more broad than necessary gets

5  us back to the how -- what Congress could write, and there I

6  just want to make sure I'm clear.  The main complaint with

7  2421A is that by using the verbs promote or facilitate

8  prostitution, those do not have the same narrowing language

9  as something like, you know, 2422 with the, you know,

10  persuades, induces, entices, coerces, those types of verbs,

11  or more transactional verbs like Williams?  That's the

12  problem?

13          MR. CORN-REVERE:  That's the problem with 2421A.

14  It lacks those transactional verbs, and we've identified the

15  overbreadth and vagueness of the other provisions as well,

16  and then on top of that, by simultaneously stripping away

17  immunities from intermediaries --

18          JUDGE MILLETT:  Yes.

19          MR. CORN-REVERE:  -- that carry third-party

20  speech --

21          JUDGE MILLETT:  Right.

22          MR. CORN-REVERE:  -- then it broadens the chilling

23  effect.

24          JUDGE MILLETT:  So for 2421A, I just want to make

25  clear, the objection is just to, you would say, the breadth

WC

1  of the verbs promote or facilitate and it's not an objection

2  that there -- that the only actus reus is operating an

3  interactive computer service?

4        MR. CORN-REVERE:  Well, that's right, and it's

5  basically, the law constitutes operating an online computer

6  service with bad intent, and --

7        JUDGE MILLETT:  Right.  That's why I thought your

8  -- that's why I thought your response would have been, no,

9  we want more verbs and we actually would like a criminal

10 actus reus.

11       MR. CORN-REVERE:  Well, we want the actus reus to

12 be defined --

13       JUDGE MILLETT:  Yes.

14       MR. CORN-REVERE:  -- certainly, and --

15       JUDGE MILLETT:  Well, it's defined here in 2421A.

16 It's defined as own, manage, or operate an interactive

17 computer service or attempting or conspiring to do that.  So

18 there is a defined actus reus.  It's just like, as you

19 said --

20       MR. CORN-REVERE:  And --

21       JUDGE MILLETT:  -- it's operating a computer with

22 a bad intent.

23       MR. CORN-REVERE:  And, Your Honor, this is -- this

24 is why the Supreme Court has always required statutes that

25 regulate speech to be defined with precision, because

WC

1  essentially this is -- amounts to saying that you are

2  speaking online with bad intent, and the intent is defined

3  by using the words --

4           JUDGE MILLETT:  You might not even be speaking.

5  You might just be owning a computer service with bad intent

6  under this statute.

7           MR. CORN-REVERE:  And thereby getting even further

8  from the intent element if all it is, is owning or, in the

9  words of section 2421A, attempting to own, operate, or

10 manage an interactive computer service.  All of that gets it

11 further and further removed from actually defining what kind

12 of speech is being regulated here, and that is the vice in

13 these kinds of laws, particularly when you are regulating a

14 medium as widespread, with as many participants as the

15 Internet.

16          Both those vague terms, both in terms of direct

17 action and their impact on the intermediaries, make for a

18 vast chilling effect, which has occurred, and it's not just

19 people overreacting or hallucinating that they are at risk.

20 You have all kinds of mainline intermediaries and you have

21 small operators, all restricting their speech because of the

22 rational calculation that they face nuclear-option criminal

23 penalties for what they may allow to be posted online or for

24 their own speech, and that's the problem of a law that

25 attempts to regulate speech with the breadth and imprecision

WC

1   of a law like FOSTA.

2           JUDGE MILLETT:  And I want to make sure, because I

3   had interrupted you, did you get to say what you wanted to

4   say about your response to the Government's argument that

5   this should be read as an aiding and abetting statute?  I

6   wanted to make sure you had a chance to do that.

7           MR. CORN-REVERE:  I apologize again, Your Honor.

8   There's an echo.  So I --

9           JUDGE MILLETT:  Oh, I wanted to make sure you got

10  the opportunity, because you had said you wanted to address

11  the Government's argument that this should be read as aiding

12  and abetting language or what are traditional criminal

13  understandings of promote prostitution or facilitate, I just

14  wanted to make sure you got a chance to because I had cut

15  you off trying to get another question -- answer in.

16          MR. CORN-REVERE:  I think at this point I said

17  what I wanted to say in response to your questions and in

18  addition to what we've said in the briefs, and I look

19  forward to seeing what Mr. Busa has to say, because I'm sure

20  I'll have a few words to add at that point.

21          JUDGE MILLETT:  Any questions?  Thank you very

22  much.  We will give you some time for rebuttal.

23          MR. CORN-REVERE:  Thank you.

24              ORAL ARGUMENT OF JOSEPH F. BUSA, ESQ.

25                  ON BEHALF OF THE APPELLEES

WC

24

1          MR. BUSA:  Good morning and may it please the

2   Court.  Joe Busa on behalf of the Government.  As the case

3   is now narrowed, there is agreement between all the parties

4   that there's no constitutional problem with a statute that

5   prohibits aiding and abetting the underlying transactional

6   crime of prostitution --

7          JUDGE MILLETT:  Yes.

8          MR. BUSA:  -- where that is a crime in the

9   jurisdiction in which it takes place.  So the only question

10  for this Court --

11         JUDGE WALKER:  Where did you get that concession,

12  because I will say, I read the plaintiffs' brief to sort of

13  imply that but, when the plaintiff was pushed today, I think

14  he refused to concede that and said, even if it's an aiding

15  and abetting law, it still chills too much.

16         MR. BUSA:  I guess I'm sorry, Your Honor.  I took

17  the opposite meaning from the colloquy this morning.  I

18  thought he had said if it was aiding and abetting, then it

19  can permissibly be prohibited by a statute.  You know, we

20  cite a number of cases in which the Supreme Court says that

21  speech in aid of a crime is categorically exempted from the

22  First Amendment.  He's provided no argument saying why that

23  line of cases wouldn't resolve the case if the statute

24  covers only --

25         JUDGE WALKER:  I'll ask him on rebuttal.

WC

1          MR. BUSA:  No, of course.

2          JUDGE EDWARDS:  I don't know what you mean when

3  you say even if it's an aiding and abetting law.  Isn't that

4  the question?

5          MR. BUSA:  I completely agree.

6          JUDGE EDWARDS:  To my mind, it's not an aiding and

7  abetting law.  We know how to write them when we want to.

8  This doesn't look like anything that I understand to be an

9  aiding and abetting law.  So when I'm preparing this, that

10  immediately tells me the Government's got great concerns

11  that the statute as actually written has problems, so let's

12  make it something that it's not, let's call it aiding and

13  abetting and maybe we can cause the Court to believe that

14  the reach of the statute is limited because we've called it

15  something that it's not.

16          There's nothing to suggest that it's aiding and

17  abetting.  It doesn't look like an aiding and abetting law.

18  There's no legislative history that says it's an aiding and

19  abetting law, and so my view, as someone preparing the case,

20  is you just made something up, which would work for you if

21  you could convince me that you're right, but it's not what

22  the statute says.

23          MR. BUSA:  Respectfully, Your Honor, we do

24  disagree and for several reasons.

25          JUDGE EDWARDS:  With what?  That that's what the

1   statute says, or you disagree --

2           MR. BUSA:  We disagree that -- so, yes, we

3   disagree with the position you just laid out that this is

4   not an aiding and abetting statute, and so if I can just lay

5   out the key features that we think show that this statute is

6   limited to traditional principles of accomplice liability.

7           So first, if you just take the canonical

8   definitions of aiding and abetting from Black's Law

9   Dictionary, it's to facilitate the commission of a crime or

10  to promote its accomplishment, the same with LaFave and the

11  Model Penal Code, and the Supreme Court in Abuelhawa said

12  that the term facilitate has an equivalent meaning to terms

13  like aid and abet.

14          So first, just starting from the definitions of

15  those words --

16          JUDGE EDWARDS:  What did the Supreme Court say

17  about promote in Williams?  Had a real --

18          MR. BUSA:  So in Williams --

19          JUDGE EDWARDS:  -- problem, the Supreme Court

20  said, right?

21          MR. BUSA:  Right.  So in Williams the Supreme

22  Court says --

23          JUDGE EDWARDS:  So already we're falling away from

24  where you'd like to be in aiding and abetting.  The Supreme

25  Court has flatly said promoting is, if that's what you've

1    got -- and that's all we essentially have here, promote and

2    facilitate -- the Supreme Court has said that's not enough,

3    that's a problem.

4              MR. BUSA:  Well, the Supreme Court said --

5              JUDGE EDWARDS:  That's all you've got.

6              MR. BUSA:  I'm sorry, Your Honor.  The Supreme

7    Court said in Williams that promote on its own, in a vacuum

8    could be thought to have a very broad definition or a narrow

9    definition focused on traditional principles of accomplice

10   liability.  The Supreme Court there said look to the statute

11   in context, quote, unquote.  There the context was a string

12   of verbs --

13             JUDGE EDWARDS:  No.  They looked at the context in

14   whole --

15             MR. BUSA:  I agree, you would have to look at the

16   entire statute.

17             JUDGE EDWARDS:  -- and that is, are there other

18   words that limit the scope of the offense?

19             MR. BUSA:  Oh, there --

20             JUDGE EDWARDS:  The Supreme Court said in Williams

21   there are other limiting words, and so therefore, even

22   though promote would be a problem if that's all was there,

23   it's not a problem here because we can -- in context means

24   there are other words which limit the sweep of the statute.

25             MR. BUSA:  So, Your Honor, the Supreme Court in

1  Williams didn't say the only contextual feature that could

2  limit a word like promote to its narrow definition would

3  bear the noscitur a sociis canon, didn't say only that

4  context would limit the word, just said it looks at context,

5  and that was the relevant context there.

6         Here we do have important textual and contextual

7  indications that we're talking about transactional crimes,

8  not general, you know, advocacy in favor of prostitution.

9  So first I start with the idea that we're talking about a

10  criminal statute; we're talking about criminal intent.  Then

11  I turn to the phrase in the statute promote the prostitution

12  of another person, not promoting the concept of

13  prostitution.  Then there's the aggravated offense of

14  promoting the prostitution of five or more persons.  That's

15  clearly transactional, and lastly --

16         JUDGE EDWARDS:  Of what?  What did you just say?

17  I'm sorry.

18         MR. BUSA:  I'm sorry.  In the -- in the aggravated

19  offense, in 2421A, paragraph (b), the statute speaks of

20  promoting the prostitution of five or more persons.  That

21  just further underlines that we're talking about underlying

22  criminal transactions, not the concept of prostitution as a

23  whole.

24         And lastly -- and I don't think the plaintiffs

25  have ever given a response to this -- is the --

1          JUDGE MILLETT:  Sorry --

2          MR. BUSA:  -- affirmative defense in paragraph

3    (e).

4          JUDGE MILLETT:  -- before you -- sorry, please

5    hold that.  I do want you -- I'm sorry, but I just --

6          JUDGE EDWARDS:  No.  Go ahead.

7          JUDGE MILLETT:  -- want to make sure I understand

8    something here.  General promotion of prostitution is not

9    here, but if someone actively promotes on their website the

10   legalization of prostitution for the State of California --

11         MR. BUSA:  Yes.

12         JUDGE MILLETT:  -- how is that not promoting the

13   prostitution of five or more persons in California?

14         JUDGE EDWARDS:  Right.

15         MR. BUSA:  Because it's just promoting

16   prostitution in general as a concept.  It's not --

17         JUDGE MILLETT:  No, it's not.  It says, I want --

18   here's all my friends who are prostitutes in California,

19   here's 20 of them, I want to make it legal for them to

20   engage in prostitution, so I'm advocating for this law.  How

21   does that not promote the prostitution lawfully --

22         JUDGE EDWARDS:  And I'm going to list --

23         JUDGE MILLETT:  -- of five or more people?

24         JUDGE EDWARDS:  -- all hundred of my friends who

25   are prostitutes.

WC

1    JUDGE MILLETT:  Yes, here's the list of their

2 names.  How is that not -- just a straightforward reading of

3 the text.

4    JUDGE EDWARDS:  I feel very strongly they should

5 have a right to prostitute if they want to.

6    JUDGE MILLETT:  They want to do it more.  They'll

7 be able to do it more if it's lawful.

8    MR. BUSA:  So under a traditional dictionary

9 definition, where promote could just, you know, be

10 encouragement in the least or sort of any degree of

11 promotion, maybe one could consider that being promotion of

12 the prostitution of a large number of people, but it's not

13 focused --

14    JUDGE MILLETT:  Okay.  I don't think you need to

15 stretch it to say that under a dictionary definition --

16    MR. BUSA:  But --

17    JUDGE MILLETT:  -- that means promote.  It's not a

18 maybe.  It does.

19    MR. BUSA:  No, but I guess my core point, though,

20 is that --

21    JUDGE MILLETT:  You want the super-narrow Black's

22 Law Dictionary.

23    MR. BUSA:  Well, it's not that I want that.  I

24 think it's pretty clearly what Congress was intending, but

25 even if you disagree with me about that --

WC

31

1          JUDGE MILLETT:  Wait.  How do we know Congress

2  intended the Black's Law Dictionary definition?

3          MR. BUSA:  Oh, because contrary to some discussion

4  I was having with Judge Edwards, there actually is

5  legislative history saying that we're invoking traditional

6  notions of accomplice liability, and we lay --

7          JUDGE MILLETT:  Who's we?  What was that

8  legislative history?

9          MR. BUSA:  So we lay that out in our brief --

10          JUDGE MILLETT:  Yes.

11          MR. BUSA:  -- and we quote the specific pages

12  where they talk about, if you use words --

13          JUDGE MILLETT:  Who's they?  Are we talking about

14  a House report?  Are you talking about members of Congress?

15          MR. BUSA:  Floor debates during --

16          JUDGE MILLETT:  Floor debates.

17          MR. BUSA:  -- the passage of the bill --

18          JUDGE MILLETT:  Okay.

19          MR. BUSA:  -- where key sponsors of the bill say

20  this covers aiding and abetting, we're talking about

21  accomplice liability, and specifically, Senators Blumenthal

22  and Schumer say, we are not talking about general promotion

23  of prostitution or legalization advocacy --

24          JUDGE EDWARDS:  Is there some conference report

25  that says this?

WC

1          MR. BUSA:  I'm sorry, Your Honor?

2          JUDGE EDWARDS:  Is there some conference report

3   that says this?

4          MR. BUSA:  I don't believe there's a conference

5   report that gets into that issue --

6          JUDGE MILLETT:  Is there a House or Senate report,

7   committee report that says that?

8          MR. BUSA:  I don't think any of the committee

9   reports get into --

10          JUDGE EDWARDS:  So you're in the land in which

11   most courts now are loathed to say, legislative history,

12   that works --

13          MR. BUSA:  We're --

14          JUDGE EDWARDS:  -- no question.

15          MR. BUSA:  So, Your Honor, I want to be clear, we

16   are not saying you should resolve this case on the basis of

17   legislative history.

18          JUDGE EDWARDS:  Okay.

19          MR. BUSA:  I'm just trying to respond to the point

20   that, is there any indication of what Congress was doing

21   here?  Yes, there is.

22          JUDGE WALKER:  Is there any indication in the

23   text, structure, context, precedents, canons of

24   construction?

25          MR. BUSA:  That's exactly where I want to focus,

WC

1   Your Honor, and so if I can keep going through the text of

2   the statute and the context of the statute that we think

3   provides the narrowing features for a word like promote

4   here.

5           JUDGE MILLETT:  Okay.  Then we have to put aside

6   the first canon, which is that plain language means -- a

7   couple canons -- plain language means Congress means what it

8   says for promotes instead of the narrower meaning; and two,

9   when Congress has used -- when Congress knows how to say it

10  and uses different words in another section, we assume

11  there's different -- that they intended a different meaning.

12          I mean, when they -- they have a statute that

13  defines aid and abet and uses none of these verbs:  aids,

14  abets, counsels, commands, induces, or procures -- none of

15  which are in here, none of which -- promote or facilitate

16  isn't in there, and we don't have the string of

17  transactional verbs.  I also -- I just think promote is

18  different from facilitate.  I mean, they just naturally have

19  different meanings.  I understand why they used two words.

20          So this is -- I understand your point, and this is

21  the criminal statute, so it makes sense, let's look at what

22  these criminal meanings are, but then where I'm struggling

23  is because Congress in criminal laws knows how to say aid

24  and abet and didn't use a single one of those verbs, knew

25  after Williams that, if it meant sort of transactional

WC

1  meanings, to have sort of a related string of verbs and,

2  again, didn't choose a string of verbs that suggests

3  transactionalism; in fact, promote doesn't suggest

4  transactionalism.

5         And so that's, to be -- I mean, I understand your

6  job and what you're doing.  I'm just struggling with what to

7  do with those two canons, and even if we can debate whether

8  Black's Law Dictionary trumps ordinary meaning in a

9  plain-language analysis, what do I do with that Congress

10  knows how to say it and it didn't do it here?

11         MR. BUSA:  So on ordinary legal meaning, the

12  Supreme Court has said that the ordinary legal -- the

13  ordinary meaning should be taken to be the ordinary legal

14  meaning.  And so we're discussing a criminal statute; you

15  might look first to the ordinary meaning of that word as

16  using criminal law.

17         To address the question of what Congress said

18  in 18 --

19         JUDGE MILLETT:  Wait.  Before you -- that's great.

20  That's great.  So can you assure me that everywhere else

21  that the word promote is used in 18 U.S.C. or in criminal

22  provisions 21 U.S.C. it only means -- well, it surely can't

23  mean promote prostitution.  So it only means what?

24         MR. BUSA:  I think, in general, we would start

25  from the presumption that it's using the word promote as

1  it's used in any number of states' accomplice liability

2  statutes, Model Penal Code --

3          JUDGE MILLETT:  Oh, wait.  I thought we were going

4  to assume -- we don't assume -- do we know how often promote

5  appears elsewhere in --

6          MR. BUSA:  So --

7          JUDGE MILLETT: -- the Criminal Code?

8          MR. BUSA:  -- I don't have that for you, and I

9  also don't want to take a firm position that literally every

10 single time it's used that's what it's going to mean.

11 Here's how you can resolve this narrowly --

12         JUDGE MILLETT:  Or even multiple times, multiple

13 times that it's -- I mean, are there other places in the

14 Criminal Code -- I keep wanting to say 18 U.S.C., but I know

15 it's broader than that --

16         MR. BUSA:  Right.

17         JUDGE MILLETT:  -- where promote has that meaning?

18         MR. BUSA:  I'm sorry, Your Honor.  I just --

19         JUDGE MILLETT:  Okay.

20         MR. BUSA:  -- I don't have that information for

21 you.  I wish I did, but here's how I think you can resolve

22 the case narrowly:  Promoting prostitution is its own

23 special legal term of art, as noted the first time this case

24 came on appeal and as defined in Black's Law Dictionary.

25 Promoting prostitution is pandering, has a very specific

WC

1   legal meaning in this context, and we think that's the legal

2   meaning you should ascribe to the statute.

3           And if I could just turn to the affirmative

4   defense in paragraph (e) of 2421A --

5           JUDGE MILLETT:  Yes.  I'm sorry.  I cut you off.

6           MR. BUSA:  -- because I think this is a very

7   strong contextual and structural indication that we have the

8   right construction of the statute.  If plaintiffs were right

9   that promoting prostitution of another person included

10  general advocacy in favor of prostitution, then Congress

11  would be speaking out of both sides of its mouth.

12          On the one hand, in paragraph (a), it would have

13  criminalized that conduct despite the constitutional

14  concerns that might arise, but then paragraph (e), it would

15  have provided an affirmative defense because, to our

16  knowledge, there is no jurisdiction in the United States

17  that purports to make it criminal to generally advocate for

18  decriminalization of prostitution.  Plaintiffs have

19  certainly identified no such jurisdiction.  That would be an

20  exceedingly odd --

21          JUDGE MILLETT:  Well, hang on a second.  So if

22  Congress passed a statute that says it's unlawful to promote

23  prostitution, (b) it's an affirmative defense to show that

24  your promotion of constitution -- of prostitution was

25  lawful, under that theory that would be perfectly fine.  So

1  Congress can ban speech as long as it makes an affirmative

2  defense to show that this is constitutionally protected

3  speech.

4          MR. BUSA:  I am not making that argument, Your

5  Honor, to be clear.

6          JUDGE MILLETT:  I thought that -- you just -- it's

7  unlawful to promote prostitution, affirmative defense,

8  unless you can show promoting prostitution was lawful in

9  that state.  How is that different from this statute?

10          MR. BUSA:  I must have misunderstood your

11  question, Your Honor.  I'm not sure what you're driving at.

12  I --

13          JUDGE MILLETT:  The statute -- my -- it's just,

14  it's more concise.

15          MR. BUSA:  Okay.

16          JUDGE MILLETT:  Okay.  It is unlawful to promote

17  prostitution.  If you want me to add computer -- it's

18  unlawful to use a computer service to promote prostitution,

19  one --

20          MR. BUSA:  Can I just clear up that question?

21          JUDGE MILLETT:  Yes.

22          MR. BUSA:  Do you intend the hypo to include

23  promotion to mean general advocacy, not as limited by

24  traditional notions of accomplice liability?  I'm trying to

25  get the hypo correct in my mind.

WC

1          JUDGE MILLETT:  I'm Congress.  Who knows what I

2     intend?

3          MR. BUSA:  Okay.

4          JUDGE MILLETT:  All right?  So -- right?  There'll

5     be a couple floor statements that say that, though.

6          MR. BUSA:  Okay.

7          JUDGE MILLETT:  All right?  So it is unlawful --

8          MR. BUSA:  Yes.

9          JUDGE MILLETT:  -- to use a computer service to

10    promote prostitution --

11         MR. BUSA:  Yes.

12         JUDGE MILLETT:  -- it is an affirmative defense to

13    demonstrate that promoting prostitution is lawful where you

14    did it --

15         MR. BUSA:  Yes.

16         JUDGE MILLETT:  -- that's constitutional?

17         MR. BUSA:  Well, yes, of course --

18         JUDGE WALKER:  Oh, no.

19         MR. BUSA:  -- I mean, provided that promotion

20    there would be limited to aiding and abetting the

21    transactional crime.

22         JUDGE MILLETT:  Just said promoting prostitution?

23    Okay.

24         MR. BUSA:  And so we know that --

25         JUDGE MILLETT:  Judge Walker has a different

WC

39

1   answer here.

2          MR. BUSA:  I'm sorry, Your Honor, please.

3          JUDGE WALKER:  The statute just says it's illegal

4   to promote prostitution.

5          MR. BUSA:  Of another person --

6          JUDGE WALKER:  No, it's not that.

7          MR. BUSA:  -- against prostitution.

8          JUDGE WALKER:  I think --

9          MR. BUSA:  Oh, I had missed --

10          JUDGE WALKER:  -- the hypothetical is just that

11   it's illegal to promote prostitution, period, full stop.

12   That would ban someone from running a website that says, I

13   think -- I think this -- I think the State of Maryland

14   should decriminalize prostitution.  You would have made that

15   a federal felony --

16          MR. BUSA:  I am not here saying that it's

17   constitutional, no, of course not.

18          JUDGE MILLETT:  Okay.  So now if I change it to

19   say is illegal to use a computer system to promote

20   prostitution of another person, no further definition of

21   promote --

22          MR. BUSA:  Yes.

23          JUDGE MILLETT:  -- and then had your affirmative

24   defense, you think that's perfectly fine?

25          MR. BUSA:  It's just --

WC

1          JUDGE MILLETT:  There's no other verbs.

2          MR. BUSA:  And facilitate is not in there?  It's

3  just the promoting?

4          JUDGE MILLETT:  I've -- no.  I've given you the

5  full text.

6          MR. BUSA:  I think we'd say, look, it's certainly

7  a permissible construction to say promoting prostitution has

8  a specific meaning, a long-standing meaning going back

9  centuries, meaning pandering; and, if you limit it to that,

10  it would clearly be constitutional and, because it can be so

11  limited, it must be.

12          JUDGE MILLETT:  Just want to make sure.

13          JUDGE WALKER:  What does facilitate and promote

14  add to your argument that your argument lacks in the last

15  hypothetical?

16          MR. BUSA:  So we already know from the Supreme

17  Court in Abuelhawa that facilitate has an equivalent meaning

18  to aid and abet, and then you'd start thinking, well, if

19  that has the equivalent meaning, maybe Congress would have

20  had to chose the narrower definition of promote.

21          Secondly, facilitate and promote frequently go

22  together in defining what accomplice liability is -- I mean,

23  again, Black's Law Dictionary, facilitate the commission of

24  a crime or promote its accomplishment; the Model Penal Code,

25  you know, aiding the commission of a crime with the purpose

WC

1  of promoting or facilitating the commission of the offense;

2  LaFave, to give assistance or encouragement with the intent

3  to thereby promote or facilitate the commission of the

4  crime.

5          JUDGE WALKER:  And all that reads, promote and

6  facilitate, the same way we might read the phrase rise and

7  shine --

8          MR. BUSA:  Exactly.  I just can't remember the

9  specific vernacular.

10         JUDGE WALKER:  -- it's one thing.

11         MR. BUSA:  Yes, and maybe it's a diptych, might be

12  the right --

13         JUDGE WALKER:  (Indiscernible.)

14         MR. BUSA:  -- I don't know what the technical term

15  is, but that's exactly right, Your Honor, and it carries

16  with it the old soil --

17         JUDGE MILLETT:  Well, the difference here --

18  here's what I'm worried about, too, with -- I'm talking

19  about 2421 capital A.  If Congress passed a statute that

20  says it's illegal in interstate commerce to own, manage, or

21  operate a library with the intent to promote the

22  prostitution of another person, that's okay?

23         MR. BUSA:  Of another person is in there?

24         JUDGE MILLETT:  With the intent to promote -- yes,

25  it's --

1          MR. BUSA:  And facilitate or promote?

2          JUDGE MILLETT:  No.  I'm not --

3          MR. BUSA:  I'm sorry.  I must have missed it.

4          JUDGE MILLETT:  -- let me try it one more time.

5   Mine is very -- okay.

6          MR. BUSA:  I'm sorry.  I must have missed the --

7          JUDGE MILLETT:  Sorry.  Well, it sounds like our

8   sound system is not working so well today.  So --

9          MR. BUSA:  No, and I'm sure it's my fault.

10          JUDGE MILLETT:  Okay.  I'm giving you the

11   interstate commerce def.  So it is illegal to own, manage,

12   or operate a library --

13          MR. BUSA:  Yes.

14          JUDGE MILLETT:  -- with the intent to promote the

15   prostitution of another person, and you can have affirmative

16   defense.

17          MR. BUSA:  Sure.  Sure.  I guess if we read

18   promote as carrying the traditional notion of pandering,

19   that specific meaning in that context, then yes, it's been

20   widely prohibited.

21          JUDGE MILLETT:  So the only actus reus that's

22   needed is owning a -- owning, managing, or operating a

23   library, and if you do it with a bad intent, Congress can

24   ban that --

25          MR. BUSA:  That --

WC

1    JUDGE MILLETT:  -- no action has happened, no

2  actual promote -- this is what the statute says:  It is

3  illegal to own, operate, or manage a library with the intent

4  to promote the prostitution of another person.  It doesn't

5  say, and some step is taken towards the prostitution of

6  another person.  It says it is illegal to own the library

7  with a bad intent, or manage.  You're just hired as the lead

8  librarian, and you have a bad intent, but you don't do

9  anything, and you say the First Amendment says that's fine?

10    MR. BUSA:  So, Your Honor, if I set up a

11  collection of information, whether it's online or in my

12  house, and I do it specifically to aid and abet the crime of

13  another person --

14    JUDGE MILLETT:  This -- no, no.  That --

15    MR. BUSA:  -- like pandering --

16    JUDGE MILLETT:  No, no, no.  Your -- see, the

17  problem is, the aid and abet --

18    JUDGE EDWARDS:  Right.

19    JUDGE MILLETT:  -- definition you want to use is

20  all a -- is the actus reus --

21    JUDGE EDWARDS:  Yes.

22    JUDGE MILLETT:  -- of aiding and abetting.

23    JUDGE EDWARDS:  That makes it a narrower case.

24  You'd love to be there.

25    JUDGE MILLETT:  Right.  You'd love to have that

WC

1   actus reus, but the only --

2           JUDGE EDWARDS:  It's not there.

3           JUDGE MILLETT:  -- actus reus in 2421A is owning a

4   computer system, and I don't know why it would change, and

5   I'm going to change it to -- or, sorry, own, manage, or

6   operate -- own, manage, or operate a library with a bad

7   intent, and that bad intent is, I intend or I would attempt

8   to intend or whatever, conspire to intend to do this bad

9   thing, that's why I'm here, but in fact, it's all legitimate

10  library stuff --

11          MR. BUSA:  So it's not --

12          JUDGE MILLETT:  -- it is the Fairfax County

13  Library content, but I have a bad intent, I'm just really

14  inept or really stupid, but I have owned, operated, or

15  managed a library with this criminalized intent.  Congress

16  can't do that, can it?

17          MR. BUSA:  Your Honor, my apologies.  I've always

18  read this statute with the actus reus being --

19          JUDGE MILLETT:  Can Congress do what I said?

20          JUDGE EDWARDS:  Yes, let's get that one --

21          JUDGE MILLETT:  Just answer that.

22          JUDGE EDWARDS:  -- behind us.

23          JUDGE MILLETT:  Right, and then I'll -- you can --

24  if I'm misreading the statute, I definitely want to hear.

25          JUDGE EDWARDS:  I know counsel don't always like

1   our hypotheticals, but I'm curious to your answer.  Can

2   Congress do that, yes or no, in your view?  I'm not saying,

3   in my mind, that ends the case, but can -- I'm curious to

4   hear your answer.

5           MR. BUSA:  And so just to be clear, the actus reus

6   in the hypothetical is owning, managing, or operating --

7           JUDGE MILLETT:  A library.

8           MR. BUSA:  -- a library --

9           JUDGE MILLETT:  In interstate commerce.

10          JUDGE EDWARDS:  With the intent.

11          MR. BUSA:  -- in interstate commerce with the

12  intent to --

13          JUDGE MILLETT:  Promote --

14          MR. BUSA:  -- pander?

15          JUDGE MILLETT:  -- to promote -- with the intent

16  -- you can make the intent as bad as you want --

17          MR. BUSA:  Sure.

18          JUDGE MILLETT:  -- with the intent to murder a

19  prostitute --

20          MR. BUSA:  Sure.

21          JUDGE MILLETT:  -- give me your bad intent.  All

22  right?

23          MR. BUSA:  Yes.

24          JUDGE MILLETT:  That's my intent --

25          MR. BUSA:  Yes.

WC

1          JUDGE MILLETT:  -- but all I've done is own,

2    operate, or manage an interactive computer service, and

3    there is -- or a library -- and there is no other

4    requirement that anything about that operation have anything

5    to do with what's in my head.

6          MR. BUSA:  And so in this hypothetical, just to be

7    very clear, nothing about the library service is actually

8    pandering?  It's just the intent?

9          JUDGE MILLETT:  I'm owning, managing, or operating

10   a library with a really bad intent but no other actus reus.

11         MR. BUSA:  I have to apologize, Your Honor.  That

12   is not a question I've considered before.  I don't think

13   it's something I'm prepared to take a definitive stance on

14   in the absence of briefing or research on that --

15         JUDGE MILLETT:  It's worrisome, isn't it?  Can we

16   at least agree it's worrisome?

17         MR. BUSA:  Well, it's confusing at the least,

18   because --

19         JUDGE MILLETT:  Just confusing?

20         JUDGE EDWARDS:  Why is it confusing?

21         MR. BUSA:  Because I've always --

22         JUDGE EDWARDS:  I don't know why you wouldn't have

23   thought about it.

24         MR. BUSA:  Because plaintiffs have raised --

25         JUDGE EDWARDS:  This is your opportunity.  Those

 1  are the kinds of questions in this First Amendment arena.

 2  You came in very confidently saying this is only aid and

 3  abet.  Well, you might assume a judge would push back with

 4  exactly the kind of question that my colleague is raising,

 5  and I would have supposed that you would have an answer for

 6  it.

 7          MR. BUSA:  So, Your Honor, I have always read the

 8  statute, when it says the actus reus being owning and

 9  managing and operating an interactive computer service with

10  the intent to promote -- or facilitate or promote the

11  prostitution of another purpose -- of another person, I've

12  always read the owning, management, and operation as

13  promoting and facilitating the prostitution of another

14  purpose.

15          JUDGE MILLETT:  Well, but that's not -- wait.

16  Then it just says with the intent to --

17          MR. BUSA:  Yes.

18          JUDGE MILLETT:  -- and then there's nothing after

19  it.

20          JUDGE WALKER:  What --

21          JUDGE MILLETT:  -- I mean, just grammatically help

22  -- this is something I've -- I don't mean to cut you off.

23  I'm sorry.

24          JUDGE WALKER:  No, please.

25          JUDGE MILLETT:  I've just been -- I've been

WC

1  struggling with this, but it uses with the intent to promote

2  or facilitate the prostitution of another person as the

3  mens rea, just like it's used --

4          JUDGE EDWARDS:  Right.

5          JUDGE MILLETT:  -- in the Travel Act.  That's just

6  a mens rea --

7          MR. BUSA:  So --

8          JUDGE MILLETT:  -- the same thing in the Travel

9  Act, but then the Travel Act, of course, has bad actus reus

10  too --

11          MR. BUSA:  But here the statute also covers

12  attempt and conspiracy, and I would assume that because --

13          JUDGE MILLETT:  Those all come before the intent

14  statement.

15          MR. BUSA:  Right, but if attempt itself or if

16  conspiracy would require some sort of action towards the

17  commission of the crime --

18          JUDGE MILLETT:  The action is owning, managing --

19          MR. BUSA:  -- then I would assume the base would

20  have also then had a potential --

21          JUDGE MILLETT:  Can we pull up the statute and

22  look at it together, because --

23          MR. BUSA:  Yes.

24          JUDGE MILLETT:  -- the problem here is, it begins

25  whoever and then it has the actus reus:  owns, manage, or

WC

1    operates, or conspires or attempts to do so.  So that refers

2    back to owns, manages, or operates.

3                JUDGE EDWARDS:  Right.

4                JUDGE MILLETT:  It's operating on -- the conspires

5    or attempts is on those verbs, and then we have a comma, and

6    then we have an intent language -- which is much like the

7    intent language in the Travel Act; it's just the intent

8    language -- shall be fined.  That's what I'm worried about

9    with this statute.  It doesn't -- the only actus reus, as I

10   read it -- and I can't figure out how I can read it

11   otherwise; I've tried -- is to own, manage, or operate, or

12   attempt or conspire to own, manage, or operate, an

13   interactive computer service.

14               MR. BUSA:  Your Honor, I don't think the

15   plaintiffs here had brought this suit to cover the fanciful

16   hypothetical in which someone does their best to aid and

17   abet the prostitution of another person but somehow fails --

18               JUDGE MILLETT:  I think they have brought this

19   suit to say that a statute that has an actus reus only of

20   owning, managing -- they'll tell me if I'm wrong -- of only

21   owning, operating, or managing an interactive computer

22   service with a bad intent -- he said this during his opening

23   argument -- that that violates the First Amendment.  I don't

24   -- fanciful?  It's what Congress wrote here unless you can

25   tell me how to diagram this sentence to move part of the

WC

1   intent up into -- two or three lines up into the actus reus.

2          MR. BUSA:  I think I would start from the fact

3   that Congress here is writing a criminal statute that's

4   targeted at the prostitution of another person.  It's using

5   words that invoke core concepts of aiding and abetting

6   liability, and one of those core concepts, of course, is

7   taking an actus reus that would in fact facilitate or

8   promote the commission of the crime.  So if it's inartful

9   drafting --

10          JUDGE MILLETT:  I guess if you tell me Backpage --

11   they wanted to get Backpage, and what Backpage did, as you

12   allege and describe -- and I'm not obviously making any

13   definitive --

14          MR. BUSA:  Of course.

15          JUDGE MILLETT:  -- determinations on this -- is

16   set up, own, manage, or operate an interactive computer

17   service --

18          MR. BUSA:  So, Your Honor, the way they were --

19          JUDGE MILLETT:  -- designed it in their heads,

20   planning for it to promote prostitution.  That's at least

21   the allegations you're making in your brief.

22          MR. BUSA:  And, in fact, taking steps --

23          JUDGE MILLETT:  And, in fact, doing it.  Tell me

24   where --

25          MR. BUSA:  Yes.

1          JUDGE MILLETT:  -- 2421A says, and in fact, they

2    do it.

3          MR. BUSA:  Right.  Obviously the statute doesn't

4    say that, Your Honor.  I guess what I would say, just to

5    continue, is, you start with the core concepts of aiding and

6    abetting liability and you think Congress is acting

7    reasonably in importing those concepts here.

8          Secondly, I would focus on the affirmative

9    defense, where it says that it's an affirmative defense if

10   the promotion or facilitation of prostitution is legal.

11   They're talking about the actual promotion or facilitation,

12   not just acting with an intent to do something, but in fact,

13   doing enough of to promote or facilitate.

14         If the affirmative defense goes to an action that

15   in fact promotes or facilitates, I would think it would be

16   reasonable to read the offense, as described in paragraph

17   (a), as doing the same, and more to the point --

18         JUDGE MILLETT:  Sorry, I'm just -- I'm still just

19   struggling grammatically.  So tell me how you read this

20   sentence:  conspires or -- so owns, operate, or manage with

21   attempt to do so, comma, with the intent -- is to promote --

22   with the intent to promote or facilitate part of that intent

23   language?

24         JUDGE EDWARDS:  You would have had a great case --

25         MR. BUSA:  I'm sorry.  The question was whether --

1          JUDGE EDWARDS:  -- you would have had a great case
2    if the heading in the statute that you're pushing, instead
3    of saying promoting or facilitating, said aiding and
4    abetting.
5          MR. BUSA:  So, Your Honor --
6          JUDGE EDWARDS:  It doesn't say that --
7          MR. BUSA:  -- many, many --
8          JUDGE EDWARDS:  -- and the problem is, we've seen
9    so many of these cases and aiding and abetting is a
10   well-understood notion and the words are used when Congress
11   means to use them.
12         MR. BUSA:  So, Your Honor, many state statutes
13   provide for accomplice liability, aiding and abetting,
14   without using that phrase.  We cite them in our brief.  They
15   say anyone who aids the commission of a crime with the
16   intent to promote or facilitate the commission of that crime
17   shall be held liable.  They don't use the word, magic words
18   of aiding and abetting.
19         JUDGE MILLETT:  States might, but Congress has a
20   definition of aiding and abetting, and sometimes they will
21   still put aiding and abetting language in a substantive
22   statute as well.  I give you that.  Are you aware -- does
23   Congress commonly, when creating a new substantive crime and
24   wanting to have wrapped aiding and abetting into that, not
25   just rely on the existing 18 U.S.C. definition, do they

WC

53

1  commonly use words that have no relationship to the

2  statutory definition of aiding and abetting already in 18

3  U.S.C.?  Like, do they pull at least one of them out most of

4  the time?

5      MR. BUSA:  I can't give you an intelligent answer

6  to that, as to, like, a fair characterization of, in the

7  broad statement Congress does this, what sorts of words does

8  it use?  All I know is the words they've used here are in

9  the canonical definitions of aiding and abetting

10  liability --

11      JUDGE MILLETT:  Well, promote is not.  Promote is

12  not.  You're relying --

13      MR. BUSA:  No --

14      JUDGE MILLETT:  -- on the promote prostitution.

15      MR. BUSA:  Yes, of course it is, Your Honor.

16  No --

17      JUDGE MILLETT:  Yes.

18      MR. BUSA:  -- to be clear, facilitate and promote

19  are both in Black's Law Dictionary, the Model Penal Code --

20      JUDGE MILLETT:  Well, this is promote or

21  facilitate --

22      MR. BUSA:  -- LaFave.

23      JUDGE MILLETT:  -- not and.  This is or.  So

24  they're --

25      MR. BUSA:  And --

WC

54

1      JUDGE MILLETT:  -- doesn't that mean they have

2   different meanings?

3      MR. BUSA:  So Black's Law Dictionary actually says

4   that -- here's the definition of aid or abet -- by the way,

5   there's a separate definition for aid and abet that says,

6   see aid or abet --

7      JUDGE MILLETT:  Yes.

8      MR. BUSA:  -- and then Black's Law Dictionary also

9   talks about how the terms aid and abet are often thought as

10  having overlapping meanings --

11     JUDGE MILLETT:  Yes.

12     MR. BUSA:  -- although sometimes they can have

13  slightly different sentences, but they all invoke core

14  concepts --

15     JUDGE MILLETT:  Yes.

16     MR. BUSA:  -- of criminal law.  The key point is

17  that all of those core concepts of criminal law limit the

18  statute so that it presents no constitutional defects, and

19  you know, we think we have the best reading of the statute,

20  but you don't have to agree with us on that to rule in our

21  favor.  All you have to conclude is that we have a

22  permissible understanding of this statute that would avoid

23  the need to resolve any First Amendment questions in this

24  case.  That's -- and I think that would be the simplest

25  grounds on which to resolve this case.

WC

1          And the last parting thought I want to leave you

2   with --

3          JUDGE MILLETT:  Wait a minute.  So does Black's

4   Law Dictionary -- actually has promoter.  I'm not seeing

5   promote.

6          MR. BUSA:  Well, it says --

7          JUDGE MILLETT:  Promoter, a person who encourages

8   or incites, encourages --

9          MR. BUSA:  So, Your Honor, I --

10          JUDGE MILLETT:  -- I'd like to make prostitution

11   lawful in California for my friends, and then it has

12   promoting prostitution, and then we go over to pandering.

13   Well, pander is one who engages in pandering, and then you

14   have the pandering definition that I think you probably

15   want, like recruiting a prostitute, right, or the act or

16   offense of distributing or selling textual or visual

17   materials openly advertised to appeal to the recipient's

18   sexual interest.  That's another definition of pandering.

19          MR. BUSA:  So, Your Honor, the definition I'm

20   working with here is the Black's Law Dictionary

21   definition --

22          JUDGE MILLETT:  That's a First Amendment --

23          MR. BUSA:  -- available on the online Westlaw

24   version, where it says -- I can quote from it --

25          JUDGE MILLETT:  Okay.  All right.

WC

56

1          MR. BUSA:  -- because I don't -- I don't know what
2    version you're -- and I apologize.  There might be different
3    versions.  Here's the exact quote --
4          JUDGE MILLETT:  Well, it's the same one that was
5    in effect at the time they passed the statute.
6          MR. BUSA:  So here's the exact quote that I
7    have --
8          JUDGE MILLETT:  That was in effect at the time
9    they passed the statute, the one you're quoting from?
10         MR. BUSA:  It would have been extremely close.  It
11   was the 2018 statute.  I think this is the most recent
12   version of Black's Law.  So it might be off by a couple of
13   years.  I can't imagine the definition has evolved radically
14   in that time, but here's the exact definition, quote:
15   aiding and abetting is, quote, to assist or facilitate the
16   commission of a crime or to promote its accomplishment --
17         JUDGE MILLETT:  Yes.
18         MR. BUSA:  -- and that's the exact definition in
19   the Model Penal Code, promote and facilitate, both there
20   together --
21         JUDGE MILLETT:  Yes.
22         MR. BUSA:  -- LaFave, both there together; the
23   Supreme Court citing, I believe it's the Black's Law
24   Dictionary case --
25         JUDGE MILLETT:  Yes.

WC

1          MR. BUSA:  -- authority in that case says, yes,

2   facilitate, just relying on that, has an equivalent meaning

3   to words like aid and abet.  The exact same reasoning would

4   apply to the word promote, especially when we know that

5   pandering is also known as promoting prostitution in many

6   state statutes around the country, as defined in Black's Law

7   Dictionary.

8          JUDGE MILLETT:  Are they talking there about the

9   action verb?

10          MR. BUSA:  So I believe that sometimes accomplice

11   liability statutes will use promote and facilitate in the

12   verb component or the actions necessary and sometimes

13   they'll use it in the intent component and frequently have

14   used it, both together.

15          JUDGE MILLETT:  Yes.

16          MR. BUSA:  The last thought I want to leave you

17   with -- unless, of course, there's any questions, which I'm

18   happy to take -- is that if, as is true, general accomplice

19   liability statutes throughout United States say it is a

20   crime to promote the crime of another person and if

21   prostitution is widely criminalized throughout the United

22   States, then if promote had the widest possible meaning and

23   -- that plaintiffs want to ascribe to it, it would seem by

24   their logic that all of those statutes would have been

25   constitutional in the First Amendment.  They've cited no

WC

1   cases at all of any court ever saying so, and by the way,

2   the general statutes are all about, you know, general, like,

3   aiding the commission of a crime.  Here we're talking about

4   a much more specific thing:  operating an interactive

5   computer service.

6           We think that we have the best interpretation of

7   the statute, but at a minimum, it is feasible, and for that

8   reason --

9           JUDGE MILLETT:  So they're aiding or abetting --

10  they're aiding -- they're not aiding or abetting the owning,

11  managing, or operating.  That's not what they're doing.

12  They're --

13          MR. BUSA:  It's --

14          JUDGE MILLETT:  -- intending to aid or abet the

15  own, manage, or operate.  I bet you there aren't still a lot

16  of state statutes like that.

17          MR. BUSA:  I guess I would -- I'm sorry, Your

18  Honor?

19          JUDGE MILLETT:  I bet you there aren't a lot of

20  state statutes like that that --

21          MR. BUSA:  Well, no.  The state statutes are much

22  more broad.  They actually cover this already.

23          JUDGE MILLETT:  Wait.  Wait.  They don't -- they

24  don't -- they have -- the only actus reus is owning or

25  operating a computer system with a bad intent?

WC

1          MR. BUSA:  In those -- in those -- in those

2    general statutes, so general accomplice liability statute,

3    and it prohibits aiding --

4          JUDGE MILLETT:  Oh, I see.

5          MR. BUSA:  -- the commission of a crime --

6          JUDGE MILLETT:  Okay.  You're not --

7          MR. BUSA:  -- which covers, of course, this plus

8    anything else under the sun that falls within traditional

9    notions of aiding and abetting liability.  This statute

10   doesn't criminalize anything new.  It's already criminal

11   under state statutes --

12         JUDGE MILLETT:  So if I --

13         MR. BUSA:  -- and --

14         JUDGE MILLETT:  -- if I have a, what do they call

15   it, Computer Geeks business --

16         MR. BUSA:  A what, Your Honor?

17         JUDGE MILLETT:  Like a Computer Geeks, the people

18   that help repair computers --

19         MR. BUSA:  Okay.

20         JUDGE MILLETT:  -- and I have a contract with

21   someone who owns a computer, interactive computer system,

22   and I repair it -- you know, it breaks often; I'm sort of --

23   I'm on call, I'm on contract, and sort of --

24         MR. BUSA:  Yes.

25         JUDGE MILLETT:  -- every week I'm in there,

WC

1   something's broken, I got to fix it up, it's a very popular

2   interactive computer --

3            MR. BUSA:  Yes.

4            JUDGE MILLETT:  -- system -- and the owner of that

5   interactive computer system has a really bad intent -- that

6   its interactive computer system be used to promote or

7   facilitate the prostitution of another person -- in fact,

8   nothing on the computer system does that but the owner has

9   this really bad intent --

10           MR. BUSA:  Yes.

11           JUDGE MILLETT:  -- and I know it, I'm the owner of

12  the computer -- I'm the Computer Geek tech --

13           MR. BUSA:  Okay.

14           JUDGE MILLETT:  -- I know it, but I've checked,

15  there's nothing on this computer system that looks at all

16  like promoting prostitution, have I aided and abetted that

17  crime because I'm constantly repairing this interactive

18  computer system that is operated with this intent to promote

19  or facilitate the prostitution of another person?

20           MR. BUSA:  I'm not sure, Your Honor.  I'd want to

21  consult, you know, hundreds of years of case law about

22  aiding and abetting liability under the specific facts of

23  that case to see if repairing that computer system with the

24  right mens rea would fall within traditional notions of

25  accomplice liability.

WC

1          JUDGE MILLETT:  Well, I know he's got the bad

2    intent -- or I know I've got the -- he knows I've got the

3    bad intent.  I forget who I am, but --

4          MR. BUSA:  Sure.

5          JUDGE MILLETT:  -- let's say I'm running it now

6    because I can't really compare -- I can't hardly turn a

7    computer on.  So -- I certainly can't be the repair person.

8    Now, if we change the hypothetical and in fact the person

9    with the bad intent has -- it's what you would allege

10   Backpage has done, or let's -- since there's, I guess,

11   litigation about that, we'll just call it Badwebsite.com --

12         MR. BUSA:  Sure.

13         JUDGE MILLETT:  -- Badpromotingandfacilitating-

14   prostitution.com.  Okay?  And so not only does -- I have

15   that terrible intent but, in fact, the content of the

16   website -- or interactive computer system is pretty bad, it

17   looks -- it looks like a bulletin board to match people up,

18   and it even has, here's how to get fake passports if you're

19   interested in transporting girls, and I'm the tech and I

20   come in and I'm -- and I know the intent and I know the

21   content, and I come in and operate and manage and work on

22   and repair that system every week.  That would be aiding and

23   abetting with that knowledge, would it not?

24         MR. BUSA:  It sounds like it's in the zone.

25   Again, before I can give a definitive answer, I of course

WC

1  want to consult case law about how aiding and abetting

2  applies in that circumstance.

3          JUDGE MILLETT:  I thought aiding and abetting --

4  so you're not clear whether helping to keep the computer

5  system going is, with knowledge --

6          MR. BUSA:  I would think so, Your Honor --

7          JUDGE MILLETT:  -- aiding and abetting?

8          MR. BUSA:  -- but again, I just -- I have to

9  admit, I have not thought out that --

10         JUDGE MILLETT:  If aiding and abetting is getting

11  to be this ambiguous, then we've got another problem, I

12  think.  I should have thought that would be --

13         MR. BUSA:  No.  So I don't think so, Your Honor.

14  You know, the Supreme Court in <u>Humanitarian Law Project</u>

15  says, look, the fact that there can be close cases, it

16  doesn't mean that there's a facial constitutional problem

17  with the statute.  That's what as-applied challenges are

18  for, and of course --

19         JUDGE MILLETT:  I didn't think the tech repairing

20  the computer system with full knowledge of what it was doing

21  and what it was intending to do was a close case, but --

22         MR. BUSA:  No, it could be well within.  I just

23  don't happen to know --

24         JUDGE MILLETT:  Okay.

25         MR. BUSA:  -- I apologize, Your Honor, because I

WC

1    haven't consulted the facts of -- I haven't consulted the

2    case law with those facts in mind.

3         JUDGE MILLETT:  What is an example of aiding and

4    abetting, then?

5         MR. BUSA:  I apologize, Your Honor?

6         JUDGE MILLETT:  What is -- well, you're pretty

7    confident that promoting or facilitating -- are you

8    confident what counts as aiding and abetting the

9    prostitution of another person?

10        MR. BUSA:  I am confident that what Backpage did

11   and things like Backpage would count.  I can also imagine

12   hypotheticals --

13        JUDGE MILLETT:  Okay.  But that doesn't help us

14   interpret a general statute.  So, I mean, can you tell me --

15        MR. BUSA:  Sure.  So --

16        JUDGE MILLETT:  -- golly, I had thought your whole

17   argument was that aiding or abetting added clarity, but

18   now --

19        MR. BUSA:  Of course it does.

20        JUDGE MILLETT:  -- I don't understand why -- I

21   thought my tech hypo was easy.

22        MR. BUSA:  So of course it adds clarity, Your

23   Honor.  There's hundreds of years of case law to help figure

24   out what counts as aiding and abetting and what doesn't, and

25   of course, on those specific facts, in any given case, you

 1   would consult that case law and come to a determination.

 2           The only issue for this Court is whether this

 3   actually covers aiding and abetting or not, not what

 4   specific things actually constitute aiding and abetting or

 5   not.  That can be handled in as-applied cases.  This is

 6   really just about statutory interpretation:  Does this

 7   statute cover aiding and abetting, an underlying crime of

 8   exchanging sex for money?  And we've provided you all the

 9   reasons on both, just off the definitions of the words

10   themselves and also textual and contextual indications, as

11   to why we think that's true, but again, all you have to

12   conclude is that's a permissible interpretation, and then

13   under the canon of constitutional avoidance, we would win

14   this case.

15           JUDGE MILLETT:  I've asked you a lot of questions.

16   Do my colleagues have --

17           JUDGE EDWARDS:  No more.

18           JUDGE MILLETT:  Do you have any more?

19           JUDGE WALKER:  No.  Thank you.

20           JUDGE MILLETT:  Do you mind if I ask you, sorry --

21           MR. BUSA:  No, of course.

22           JUDGE MILLETT:  -- one more?  No, it was on

23   this --

24           MR. BUSA:  My train is not until 1:00.

25           JUDGE MILLETT:  Yes.  This -- oh, good, we have

1    lots of time -- this -- the argument they make about the

2    change to the scope of section 230, immunity --

3            MR. BUSA:  Yes.

4            JUDGE MILLETT:  -- and they have the sort of

5    selective withdrawal --

6            MR. BUSA:  Yes.

7            JUDGE MILLETT:  -- argument, and what I'm a little

8    confused about is that the prior immunity, by its terms,

9    didn't apply if it was a violation of federal law --

10           MR. BUSA:  Correct.

11           JUDGE MILLETT:  -- right, and promoting or

12   facilitating -- well, aiding or abetting the prostitution in

13   interstate -- the interstate commerce component was unlawful

14   even before this FOSTA was enacted --

15           MR. BUSA:  Correct.

16           JUDGE MILLETT:  -- in fact, and you say in your

17   brief and they say -- I keep getting confused about this --

18   that FOSTA didn't change what was illegal, it just sort of

19   changed, I guess, who can prosecute or civil remedies.

20           MR. BUSA:  That's absolutely correct, Your Honor,

21   yes.  Everything that's prosecutable, I believe, under 2421A

22   was already prosecutable under the Travel Act.  The main

23   reason for enacting 2421A as a separate section is as an

24   easy cross-reference to exempt only certain state crimes

25   from section 230(c)'s protections, not everything under the

WC

1  Travel Act, but of course, it does more than just that, and

2  I don't want to, you know, discount that.  Of course, it

3  provides for civil liability.  It provides for, I believe,

4  higher punishments than were available in the Travel Act

5  itself.

6          JUDGE MILLETT:  And put aside the civil remedy.

7  Then the same thing could have been accomplished by just

8  amending 230 -- just as to the immunity withdrawal --

9          MR. BUSA:  Yes.

10         JUDGE MILLETT:  -- amending it to say it doesn't

11 extend to anything contrary to federal or state law or

12 violation -- I think it's violation of federal law or state

13 law.  That's effectively what's happened as to allowing --

14         MR. BUSA:  As to this --

15         JUDGE MILLETT:  -- 230 was an immunity, was --

16 before this was an immunity, not just civil suits, but

17 criminal prosecutions by states.

18         MR. BUSA:  That's correct with the qualification

19 that it depends on the scope of 230(c), which of course is

20 an active litigation in the U.S. Supreme Court.

21         JUDGE MILLETT:  Right.  Right.

22         MR. BUSA:  Right.  But what Congress was doing was

23 clarifying that the First Circuit in the Backpage case had

24 misunderstood the scope of 230(c) and it fixed that in

25 230(e) to allow state prosecutions of state crimes, where

WC

1 that constitutes --

2           JUDGE MILLETT:  Well, I don't think they

3 misunderstood.  It does say federal law in here.  So I think

4 -- but if Congress decided it wanted to change that.  So --

5           MR. BUSA:  Well, Congress said it was clarifying,

6 but I understand that that can be --

7           JUDGE MILLETT:  That's a lot of clarifying, but --

8 and so that -- so certainly, then, as to federal law, there

9 was no giving and then taking back of immunity --

10           MR. BUSA:  No.

11           JUDGE MILLETT:  -- and then what I'm -- what I --

12 I guess to be up front, what I'm worried about is sort of

13 constitutionalizing the concept of granting immunity and

14 then Congress can never amend it.  Right?  That's a big

15 thing to do, but they do raise a sort of selectivity

16 argument.  What am I to do with -- you know, Congress can't

17 sort of pick on somebody.  Like, it couldn't, I assume, have

18 amended it to say, and Backpage doesn't get it --

19           MR. BUSA:  Right.

20           JUDGE MILLETT:  -- or maybe it -- I don't know.

21 Maybe I'll say it could.

22           MR. BUSA:  I'm not here to defend -- I'm not here

23 to defend --

24           JUDGE MILLETT:  Right.

25           MR. BUSA:  -- that proposition, no.

WC

68

1        JUDGE MILLETT:  Right, but isn't that -- so how

2   would you answer an argument that says, effectively,

3   Backpage and its relatives can't do this anymore, as to

4   state, as to --

5        MR. BUSA:  Sure.

6        JUDGE MILLETT:  -- state criminal prosecution?

7        MR. BUSA:  Congress is entitled to make the

8   determination that there are certain crimes that are so

9   troubling that, you know, we need to get all our law

10  enforcement partners on board; we can't just have federal

11  prosecution.  This is the purpose behind the statute.  I

12  mean, I think all 50 state attorneys general sent a letter

13  to Congress saying, please untie our hands, we need to go

14  after these people that are sex trafficking children.

15       I think Congress is perfectly entitled to make a

16  determination that, you know, in addition to federal

17  prosecution, state prosecution for such things should be

18  allowed.  I don't know of any precedents that would call

19  into question that judgment.

20       JUDGE MILLETT:  Thank you.

21       JUDGE WALKER:  Well, now I do have a question.

22       JUDGE MILLETT:  Sorry.

23       JUDGE WALKER:  Just out of curiosity, the

24  plaintiff mentioned that there haven't been any state

25  prosecutions.  Is that your sense as well?

WC

1        MR. BUSA:  I have no sense of that, Your Honor.  I

2   mean, it would depend on -- I just don't have that

3   information at my fingertips.  To my knowledge, there's no

4   reporting requirement that the states, when they prosecute

5   somebody and invoke the succession to 230(c)'s immunity,

6   that they then report it to us.  So I just do not have

7   information about that.  I apologize.

8        JUDGE MILLETT:  May not know this either, but do

9   you know if the civil remedies provision has been able to be

10  used?  I mean, this statute -- it's a little odd because

11  this statute has been around since 2018 and it's -- usually,

12  these First Amendment challenges happen pretty fast.

13       MR. BUSA:  Right.

14       JUDGE MILLETT:  I'm just curious as to, we're four

15  years in, and do know if there's been civil remedy actions?

16       MR. BUSA:  I cannot recall coming across a

17  reported case in which I've read about that being invoked.

18       JUDGE MILLETT:  Yes.  Doesn't mean it hasn't

19  happened, obviously.

20       MR. BUSA:  It does not mean that it hasn't

21  happened.

22       JUDGE MILLETT:  Right.  For sure.  For sure.

23  Okay.  Thank you very much.

24       MR. BUSA:  Thank you very much, Your Honors.  We

25  ask that you affirm.

WC

70

1    JUDGE MILLETT:  We'll give you four minutes for

2    rebuttal.

3    ORAL REBUTTAL OF ROBERT CORN-REVERE, ESQ.

4    ON BEHALF OF THE APPELLANTS

5    MR. CORN-REVERE:  Thank you, Your Honor.  I'll try

6    to be brief.  I mentioned at the outset of my argument that

7    it was remarkable that neither the district court nor the

8    Government cited any of the First Amendment cases involving

9    regulation of the Internet, but I also noted that there was

10   one small exception to that that I would hope to get back

11   to, and that's what I want to talk about just for a minute

12   now.

13        The only reference to any of those cases that I

14   alluded to is at page 40 of the Government's brief where it

15   cites Ashcroft v. Free Speech Coalition for the proposition

16   that courts thus decide what a statute prohibits, not what

17   it could prohibit.  Now, leave aside for a minute that

18   that's not what Ashcroft v. Free Speech Coalition says.  I

19   think it's important to recognize what that case did.  It

20   said that that law is a stark example of why we allow facial

21   challenges to speech regulations, and then it went on to

22   hold that that law could apply to even a Hollywood

23   production of Romeo and Juliet, and on that basis it found

24   the law to be overly broad.

25        The way that ties into this case specifically is

1   that the statute that was upheld in <u>Williams</u> was passed in

2   reaction to <u>Free Speech Coalition v. Ashcroft</u>, and the

3   language in <u>Williams</u> that was upheld was especially that

4   string of verbs that explained what the crime was.  So the

5   backdrop for adopting FOSTA is that Congress, after FOSTA

6   and after the Supreme -- I'm sorry, Congress, after <u>Williams</u>

7   and after the Supreme Court had said that the terms promote

8   and facilitate, when used in isolation, are capable of

9   multiple and wide range of meanings, Congress had adopted a

10  statute regulating Internet speech that simply uses those

11  terms in isolation, which means it specifically undid what

12  Congress had tried to do in saving the PROTECT Act.

13          Congress then added a provision to the Mann Act,

14  which chose to exclude the verbs that had existed in that

15  law, narrowing its scope, since 1910, and -- you know, in

16  the midst of Supreme Court law that is unchallenged, that

17  says that laws regulating speech must be drafted with

18  precision, and on top of all of that, Congress focused on,

19  in FOSTA, not only adopting these more harsh penalties but,

20  doing so now, it increases risks for online intermediaries,

21  creating a heckler's veto or, worse, a prosecutor's veto.

22          In the words of Professor Eric Goldman, FOSTA

23  represents the worst of both worlds, and as a result, it's

24  unconstitutional and should be enjoined.

25          JUDGE WALKER:  Let me ask a couple questions.  One

1   is, you set aside your ex post facto argument and if you set

2   aside your 230 immunity being required argument -- so just

3   put those aside for a second -- if we adopt the Government's

4   narrow aiding and abetting reading of FOSTA, do you concede

5   that there's no constitutional problem with the statute?

6         MR. CORN-REVERE:  Well, there's a constitutional

7   problem in that there has to be the language in the statute

8   to get to that understanding, and that was -- that was what

9   the Supreme Court said in --

10         JUDGE WALKER:  But don't fight -- don't -- if we

11   read -- I know you think we shouldn't read that language in,

12   maybe we won't read that language in, but if we read the

13   statute, if we read it narrowly to only include aiding and

14   abetting, do you concede that there's no constitutional

15   problem?

16         JUDGE MILLETT:  You're asking about -- I'm sorry.

17   Just so I understand, are you asking about the mens rea or

18   an actus reus?

19         MR. CORN-REVERE:  Well, and --

20         JUDGE WALKER:  I guess it would be --

21         JUDGE MILLETT:  2421A.

22         JUDGE WALKER:  -- mainly the mens rea, but the

23   whole -- actually, both, I guess.

24         JUDGE MILLETT:  Right.  Right.

25         MR. CORN-REVERE:  That gets to --

WC

1          JUDGE MILLETT:  1591.

2          JUDGE WALKER:  I mean, the Government started his

3    argument -- you heard him -- the Government started his

4    argument, and he said, if we're right about how to interpret

5    the statute, the plaintiffs concede the First Amendment has

6    not been violated, and do you agree?

7          MR. CORN-REVERE:  Well, what I'm struggling with

8    -- I'm not trying to evade your question, Your Honor -- is

9    that it seems like the question is, if we assume the law is

10   constitutional, then it's constitutional.

11         JUDGE WALKER:  No, no, no, if we assume that it's

12   limited to aiding and abetting.

13         MR. CORN-REVERE:  And that's where the disconnect

14   that Judge Millett was focusing on between actus reus and

15   mens rea becomes critical, because it doesn't define a

16   criminal actus reus other than owning, operating, or

17   managing an online -- an interactive computer service, and

18   so trying to say it then constitutes aiding and abetting

19   makes no sense because it's simply saying we are, in the

20   hypothetical posed by Judge Millett, owning, managing, or

21   operating a library with really bad intent.

22         JUDGE WALKER:  Okay.  Let me -- let me --

23         JUDGE MILLETT:  Or aiding and abetting intent.

24         JUDGE WALKER:  -- the -- I'm going to read the

25   Mann Act or the key part of the Mann Act.  I think this is

WC

1   the text, and I'm going to stop when it gets to the

2   mens rea.  Okay?  I'm going to stop when it gets to the

3   intent:  Whoever knowingly transports any individual in

4   interstate or foreign commerce or in any territory or

5   possession in the United States with intent, and then it

6   defines the intent.  So leaving out the interstate commerce

7   hook, whoever knowingly transports any individual, that's

8   the actus reus.  Is that right?

9            MR. CORN-REVERE:  I'm not sure which section

10  you're reading from.  I was looking at the section of

11  2422(a), which applies to anyone who knowingly persuades,

12  induces, entices, or coerces any individual to travel in

13  interstate commerce to engage in prostitution.  Again, it's

14  an example of where the law includes in the actus reus a

15  more precise definition.

16           JUDGE WALKER:  So I think this is --

17           JUDGE MILLETT:  You're at 2421.

18           JUDGE WALKER:  Yes.  So --

19           JUDGE EDWARDS:  Which are you referring to now?

20           JUDGE MILLETT:  2421.

21           JUDGE WALKER:  18 U.S.C. --

22           JUDGE EDWARDS:  That's not what it said.

23           JUDGE WALKER:  -- 2421, the general provision --

24           JUDGE EDWARDS:  Yes.

25           JUDGE WALKER:  -- whoever knowingly transports any

1   individual --

2                   JUDGE EDWARDS:  Oh, that's not what it --

3                   JUDGE WALKER:  -- then there's the interstate

4   commerce --

5                   JUDGE EDWARDS:  -- 2421A, small (a)?

6                   JUDGE WALKER:  Yes.

7                   JUDGE MILLETT:  No, no.

8                   JUDGE EDWARDS:  Okay.

9                   JUDGE WALKER:  Whoever knowingly transports any

10  individual, then there's the interstate commerce hook and

11  followed by the mens rea.  So whoever knowingly transports

12  any individual is the actus reus.  Is that right?

13                  MR. CORN-REVERE:  It is.

14                  JUDGE WALKER:  And you have a constitutional right

15  to travel, the Supreme Court has said, right?

16                  MR. CORN-REVERE:  Yes.

17                  JUDGE WALKER:  How is -- is the Mann Act

18  constitutional?

19                  JUDGE MILLETT:  Do you have a constitutional right

20  to transport -- or First Amendment right or constitutional

21  right to transport someone else?

22                  MR. CORN-REVERE:  I think that's where the focus

23  on whether or not this is a regulation of speech becomes

24  important.  Because of the imprecision around speech,

25  knowing whether or not your speech falls within that

WC

76

1   category is a much more difficult and nuanced question than

2   whether or not you have physically transported someone

3   across state lines.

4           JUDGE WALKER:  Okay.  I appreciate that.

5           JUDGE MILLETT:  Any other questions?

6           JUDGE EDWARDS:  No.  We're fine.

7           JUDGE MILLETT:  Thanks to both counsel.

8           MR. CORN-REVERE:  Thank you very much.

9           JUDGE MILLETT:  We kept you much longer than we

10  anticipated, but we appreciate your help working through

11  this complicated statute, and the case is submitted.

12          (Whereupon, the proceedings were concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

WC

77

### DIGITALLY SIGNED CERTIFICATE

I certify that the foregoing is a correct transcription of the electronic sound recording of the proceedings in the above-entitled matter.


_____

WENDY CAMPOS

DEPOSITION SERVICES, INC.

_January 16, 2023_