# EXHIBIT A

# SUPREME COURT
# OF THE UNITED STATES

---

```
            IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

UNITED STATES,                     )

            Petitioner,            )

            v.                     ) No. 22-179

HELAMAN HANSEN,                    )

            Respondent.            )

- - - - - - - - - - - - - - - - - -
```

```
Pages:  1 through 97

Place:  Washington, D.C.

Date:   March 27, 2023
```

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
www.hrccourtreporters.com

1

```
 1        IN THE SUPREME COURT OF THE UNITED STATES
 2   - - - - - - - - - - - - - - - - - -
 3   UNITED STATES,                       )
 4                Petitioner,             )
 5                v.                      ) No. 22-179
 6   HELAMAN HANSEN,                      )
 7                Respondent.             )
 8   - - - - - - - - - - - - - - - - - -
 9
10                  Washington, D.C.
11               Monday, March 27, 2023
12
13        The above-entitled matter came on for
14   oral argument before the Supreme Court of the
15   United States at 11:46 a.m.
16
17   APPEARANCES:
18   BRIAN H. FLETCHER, Principal Deputy Solicitor General,
19        Department of Justice, Washington, D.C.; on behalf
20        of the Petitioner.
21   ESHA BHANDARI, ESQUIRE, New York, New York; on behalf
22        of the Respondent.
23
24
25
```

2

1                    C O N T E N T S

2    ORAL ARGUMENT OF:                      PAGE:

3    BRIAN H. FLETCHER, ESQ.

4         On behalf of the Petitioner         3

5    ORAL ARGUMENT OF:

6    ESHA BHANDARI, ESQ.

7         On behalf of the Respondent        56

8    REBUTTAL ARGUMENT OF:

9    BRIAN H. FLETCHER, ESQ.

10         On behalf of the Petitioner        92

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

622 Detail  Subject 1  Final Review

3

```
 1                P R O C E E D I N G S
 2                              (11:46 a.m.)
 3           CHIEF JUSTICE ROBERTS:  We'll hear
 4      argument next in Case 22-179, United States
 5      versus Hansen.
 6           Mr. Fletcher.
 7           ORAL ARGUMENT OF BRIAN H. FLETCHER
 8              ON BEHALF OF THE PETITIONER
 9           MR. FLETCHER:  Thank you, Mr. Chief
10      Justice, and may it please the Court:
11           For more than a century, Congress has
12      made it a crime to encourage or induce certain
13      immigration offenses.  Mr. Hansen violated that
14      statute by inducing noncitizens to reside in the
15      United States illegally so that he could take
16      their money in a fraudulent citizenship scheme.
17           No one suggests that that conduct was
18      protected by the First Amendment.  But the Ninth
19      Circuit invoked the overbreadth doctrine to
20      facially invalidate this longstanding statute by
21      giving the words "encourage" and "induce" their
22      broadest possible meaning and sweeping in wide
23      swaths of protected speech.
24           Now we haven't argued that the statute
25      would be constitutional if it swept that
```

1    broadly.  Our position here is that the statute

2    need not and should not be read that way.

3            Everyone agrees that in criminal law,

4    the terms "encourage" and "induce" are terms of

5    art that can refer narrowly to soliciting or

6    aiding and abetting unlawful activity.  And as

7    nine dissenting judges explained below, text,

8    context, and history confirm that the words

9    carry that traditional meaning in the context of

10   Section 1324.

11           At the very least, that's a plausible

12   reading of the statute that ought to be adopted

13   under the canon of constitutional avoidance

14   because it would eliminate any overbreadth

15   concern.

16           Prohibitions on soliciting or

17   facilitating both criminal and civil violations

18   have long been common and have never been

19   thought to raise a First Amendment problem

20   because, as the Court held in Williams, the

21   First Amendment does not protect speech that is

22   intended to induce or commence specific illegal

23   activities.

24           Now I acknowledge that it will

25   sometimes be hard to draw the line between

1    protected advocacy and unprotected solicitation,

2    but that problem is not unique to Section 1324.

3    Exactly the same issue can arise under any

4    solicitation or aiding-and-abetting statute.

5              And, more importantly here, that is

6    not an overbreadth problem.  As with other

7    solicitation and aiding-and-abetting statutes,

8    the possibility that some applications of

9    Section 1324 might raise First Amendment

10   questions may provide a basis for future

11   as-applied challenges, but it does not justify

12   facially invalidating the statute and preventing

13   its application to plainly unprotected schemes

14   like Mr. Hansen's.

15             I welcome the Court's questions.

16             JUSTICE THOMAS:  Are you aware of any

17   instance in which the -- this section has been

18   applied in the way that the Ninth Circuit

19   hypothesized?

20             MR. FLETCHER:  I'm not.  And I really

21   do think that's significant, Justice Thomas.  We

22   are, after all, here on an overbreadth case, and

23   this Court has emphasized, most recently, the

24   last time it heard this issue in Sineneng-Smith,

25   that overbreadth is strong medicine that ought

Oral Argument Subject to Final Review

6

1    to be applied only as a last resort, and it said

2    you have to vigorously enforce the limits on

3    that doctrine.  One of the limits --

4              JUSTICE SOTOMAYOR:  Sorry.  There's a

5    district court case involving the woman who

6    encouraged her housekeeper that -- or told her,

7    if you leave, you can't come back, which is --

8    was an accurate statement of the law, and she

9    was prosecuted in that case.

10             MR. FLETCHER:  Justice Sotomayor,

11   you're referring to the Henderson case --

12             JUSTICE SOTOMAYOR:  Yes.

13             MR. FLETCHER:  -- out of the District

14   of Massachusetts, which is the case that the

15   amicus briefs focus almost entirely on.  I

16   think, even if you were troubled by that case,

17   that would be one district court prosecution --

18             JUSTICE SOTOMAYOR:  Well, I -- I --

19             MR. FLETCHER:  -- we -- we don't think

20   found for --

21             JUSTICE SOTOMAYOR:  What I find

22   interesting is that the government there also

23   hypothesized that a lawyer who told his client

24   that if he -- that -- what the consequences were

25   of leaving, that you would prosecute the lawyer

622 Detail   Subject 581   Final Review

7

```
 1    too.  And the lawyer there is earning money for
 2    that statement.  He's giving advice.
 3              MR. FLETCHER:  I'm not sure whether
 4    that's what the government said there.  It's
 5    certainly not what we're saying now, as we
 6    explain --
 7              JUSTICE SOTOMAYOR:  Well, I know you
 8    aren't.  But could you tell me exactly how you
 9    want us to rewrite the statute?  I think, if
10    you're going to call it aiding and abetting or
11    soliciting, that you have to write in a specific
12    intent, don't you?
13              MR. FLETCHER:  I wouldn't -- I'd just
14    dispute the premise.  I don't think we're asking
15    you to rewrite it.  I think we're saying these
16    are words that connote aiding --
17              JUSTICE SOTOMAYOR:  All right.
18              MR. FLETCHER:  -- and abetting.
19    They're terms of art.  They bring the old
20    soil with them.
21              JUSTICE SOTOMAYOR:  With it, and
22    that's an intent requirement?
23              MR. FLETCHER:  Correct, which is --
24              JUSTICE SOTOMAYOR:  And, here, the
25    defendant asked for an intent statute to come
```

1    in.

2              MR. FLETCHER:  Not quite.  The intent

3    requirement that's required for aiding and

4    abetting and the one that we accept here is the

5    one the Court referred to in Rosemond.  That's

6    the intent of facilitating, making the offense

7    succeed.  What the defendant asked for here --

8              JUSTICE SOTOMAYOR:  Well, with aiding

9    and abetting, you have to intend to make it

10   succeed.  And I'm wondering what you're making

11   succeed, meaning nothing -- you haven't proven

12   that these aliens were going to leave anyway.

13             MR. FLETCHER:  I actually think we

14   have here.  There was testimony that -- there

15   are two noncitizens at issue.

16             JUSTICE SOTOMAYOR:  I -- well --

17             MR. FLETCHER:  Both of them said their

18   visas were expiring, they would have left, but

19   Mr. Hansen said --

20             JUSTICE SOTOMAYOR:  Yeah.  That's --

21             MR. FLETCHER:  -- you can stay because

22   I'm going to make you a citizen.

23             JUSTICE SOTOMAYOR:  Right.  But -- so

24   we have to write in an intent.  We have to take

25   the words and define the words "encourage" or

```
 1    "inducing" to mean aiding and abetting or
 2    soliciting.
 3           What do we do with our Elonis point,
 4    where we said, if we're going to define a
 5    statute, we shouldn't define it to put in words
 6    that Congress took out?  And Congress, previous
 7    to this statute, had the words "aiding and
 8    abetting" and "soliciting" and took them out.
 9    So now we're putting back in what Congress took
10    out?
11           MR. FLETCHER:  I disagree, Justice
12    Sotomayor.  I think this is an area of the law
13    where commentators and the Court have long
14    recognized there are lots of different words
15    that have overlapping meanings that legislatures
16    and courts use to capture these -- these
17    concepts of "solicitation" and "aiding and
18    abetting."
19           The LaFave treatise cites about a
20    dozen of each species.  "Induce" and "encourage"
21    are among them both.  And I don't think that the
22    fact that Congress took out "assist" and
23    "solicit" in 1952 suggests that it intended to
24    change the meaning of this words.  It was, in
25    fact, adopting the shorthand that this Court had
```

1    just five years earlier in the Hoy case given to

2    the predecessor statute.  When the other words

3    were in there, this Court shorthanded it as

4    "encouraging or inducing."

5              JUSTICE KAVANAUGH:  You agree --

6              JUSTICE SOTOMAYOR:  And --

7              JUSTICE KAVANAUGH:  Go -- go ahead.

8              JUSTICE SOTOMAYOR:  Go ahead.  No, go

9    ahead.

10             CHIEF JUSTICE ROBERTS:  Justice --

11             JUSTICE KAVANAUGH:  You agree, though,

12   that the intent requirement that's traditionally

13   associated with aiding and abetting and

14   solicitation should be part of the statute,

15   correct?

16             MR. FLETCHER:  We do.  And we just

17   don't think that's rewriting.  You know, if you

18   look at 18 U.S.C. 2, the statute at issue in

19   Rosemond, the traditional aiding-and-abetting

20   statute, it doesn't have any explicit intent

21   requirement.  Judge Hand and then this Court

22   found it implicit in words like "induce."  And

23   we're saying the same old soil comes with those

24   same words where they appear here.

25             JUSTICE KAVANAUGH:  And then I think

1    you probably do have a problem on the jury

2    instructions.  Do you want us to remand and let

3    the Ninth Circuit sort that out, or what's --

4    what's your suggestion for how to deal with

5    that?

6              MR. FLETCHER:  We do.  We think that's

7    appropriate.  You know, we don't think the jury

8    instructions are before you.  What's before you

9    is an overbreadth challenge, and part of that,

10   of course, is figuring out what the statute

11   means.  Once you do that, we don't have any

12   objection at all to sending it back to the Ninth

13   Circuit.

14             JUSTICE KAGAN:  Mr. Fletcher, suppose

15   we take your view of what "encourage" and

16   "induce" means here and we take your view of the

17   correct mens rea requirement, and suppose we say

18   that's the statute.  And is there a world of

19   cases where -- I mean, what happens to all the

20   cases where it could be a lawyer, it could be a

21   doctor, it could be a neighbor, it could be a

22   friend, it could be a teacher, it could be

23   anybody says to a noncitizen, I really think you

24   should stay?  What happens to that world of

25   cases?

1          MR. FLETCHER:  So I think our view is

2    those cases get analyzed the same way that you'd

3    analyze any other aiding-and-abetting question

4    or solicitation question under any other

5    statute.  And I'll talk about how we think those

6    principles cash out as applied to all of the

7    different hypotheticals that have been bandied

8    about.

9          But I think, at the end of the day,

10   the most important thing for this Court's

11   purposes is, once you go -- you take the two

12   steps that you just described of saying that the

13   words mean what we say they mean and that the

14   intent requirement applies, I think you've taken

15   care of any arguable overbreadth problem.

16         JUSTICE KAGAN:  Well, maybe or maybe

17   not.  I mean, I would think that there are a

18   world of communications that take place every

19   day which are something along those lines, with

20   somebody saying to a noncitizen, I know you're

21   thinking of what you should do now, I really

22   think you should stay.

23         MR. FLETCHER:  So, just to fight the

24   premise and then I'll talk about how we think

25   the principles would apply in those

Official - Subject to Final Review

1    circumstances, you know, the traditional

2    aiding-and-abetting and solicitation statutes

3    apply to tax avoidance, to the use of marijuana,

4    to avoiding the draft back when that was an

5    issue.  In all of those circumstances, you

6    likewise have to draw the line.  There's a lot

7    of abstract advocacy on those things.  People

8    talk with their friends and acquaintances and

9    family about those things.

10         JUSTICE KAGAN:  So where -- where --

11   where do we draw the line?  You're -- you're not

12   giving me much.

13         MR. FLETCHER:  I -- I -- sorry.  I

14   promised I would get there, and I will.

15         I think you -- you apply the

16   traditional principles of aiding and abetting.

17   So one of them is specific intent that the --

18   the -- the violation occur.  We think that's

19   going to weed out a lot of cases.

20         JUSTICE KAGAN:  Yeah.  I really think

21   you should stay, somebody says to a friend.

22         MR. FLETCHER:  Right.

23         JUSTICE KAGAN:  I mean, that's a

24   specific intent, I guess.

25         MR. FLETCHER:  Right.  Another one is

1    sort of full knowledge of the circumstances, and

2    that in this statute includes additionally some

3    knowledge of the law, knowledge or reckless

4    disregard of whether or not staying is going to

5    violate the law.  We think that's going to take

6    care of another category of cases.

7          There's also a requirement that's

8    always been understood to be implicit in

9    solicitation and aiding and abetting that they

10   don't cover general advocacy, you know, a

11   newspaper editorial, general advocacy public

12   speeches.  We're talking about specific conduct

13   with specific people.  I think that takes care

14   of another slice of cases.

15         And then you're left with the cases

16   that the law candidly acknowledge are the

17   hardest hypotheticals where somebody says to a

18   family member, I know it would be unlawful for

19   you to stay, but I think you should stay.

20         Those are a hard problem under

21   aiding-and-abetting statutes.  There's not a lot

22   of law on how you end up cashing out

23   aiding-and-abetting principles there.  The

24   closest we find is in Footnote 55 of Section

25   13.2 of the LaFave treatise which we cite in our

15

1    opening brief.

2              And, there, the Court has said, look,

3    when you're talking about aid and the form takes

4    material -- of aiding and abetting takes

5    material aid, as you said for the Court in

6    Rosemond, any amount of aid is enough, you've

7    associated with a venture, you've sought to

8    facilitate it, and that's good enough.

9              When what you're talking about is just

10   sort of moral suasion or a request, that can

11   sometimes be aiding and abetting.  Recruiting

12   someone to commit a murder is a classic case of

13   aiding and abetting, but we want to demand a

14   little bit more to make sure that you really did

15   associate yourself with the venture, you really

16   did seek to facilitate it with your request.

17             JUSTICE KAGAN:  So do -- do I

18   understand you to be drawing a line between a

19   friend who says, I know exactly what the law is

20   on this and I really think you should stay,

21   which would be in violation of the law, that's

22   on one side of the line, and saying that exact

23   same thing and saying also, I'm going to provide

24   you support when you stay?  Is that -- is that

25   the line you're drawing?  And --

Official - Subject to Final Review

```
 1              MR. FLETCHER:  Not -- not precisely.
 2     I think saying, you know, I'm going to provide
 3     you support, I'm going to tell you how to do it,
 4     you know, here's how to -- to work without being
 5     on the books, I think those things start to move
 6     you much more into assistance.
 7              JUSTICE KAGAN:  But -- but -- but, on
 8     the first one, where there's not that, do I take
 9     you to be saying, well, this is very hard, but,
10     in the end, we don't think that that's covered
11     by the statute --
12              MR. FLETCHER:  So I think --
13              JUSTICE KAGAN:  -- or we do think that
14     that's covered by the statute?
15              MR. FLETCHER:  -- I think it's hard to
16     say that that's covered.  I've read a lot of
17     aiding-and-abetting cases to get ready for this
18     argument.  I haven't seen one that looks like
19     that, you know, the mother who says to the son,
20     gee, I don't want you to go to war.
21              JUSTICE GORSUCH:  Mr. Fletcher, that's
22     because I think that in aiding and abetting, you
23     not only need a mens rea purpose, you know, we
24     talked about that, you conceded that, but you
25     also have to have an actus reus of some step to
```

1    associate yourself with a venture.  But

2    "encourage" and "induce" or "incite," whatever

3    it is, "encourage" and "induce," does that --

4    does that import that actus reus requirement

5    too?

6              MR. FLETCHER:  I think it does.  And

7    I -- I -- I think the actus reus for aiding and

8    abetting can be speech, it can be a request, you

9    know, would you rob this bank and I'll give

10   you -- we'll split the proceeds or, you know, I

11   really would like you to kill this business

12   associate of mine and I'll pay you if you do it.

13   All of those things are speech in some sense.

14             JUSTICE GORSUCH:  Well, but it's

15   commitment to do something in the world, and --

16   and, you know, it's obviously an inchoate

17   offense, but it's still I'm going to take some

18   step to associate myself with the completion of

19   this venture.

20             MR. FLETCHER:  Right.

21             JUSTICE GORSUCH:  And are you saying

22   that comes along -- that soil comes along too?

23             MR. FLETCHER:  We're saying the soil

24   of aiding and abetting comes along, Your Honor.

25             JUSTICE GORSUCH:  The full soil, all

1    of it?

2              MR. FLETCHER:  Yes.

3              JUSTICE JACKSON:  And I'm sorry,

4    why -- why does the full soil come along?  I --

5    I'd like to go back to Justice Sotomayor's

6    point.  If we have evidence, or we think we do,

7    in the amendment history of the statute that

8    Congress actually took out of the statute

9    similar concepts, the idea of, you know, aiding,

10   the idea -- I -- I don't have the exact language

11   in front of me -- but soliciting.

12             MR. FLETCHER:  Right.

13             JUSTICE JACKSON:  Soliciting was

14   there.

15             MR. FLETCHER:  Right.

16             JUSTICE JACKSON:  And Congress took it

17   out.  So I think you have -- are struggling at

18   least in my mind a little bit to have us read

19   what remains to include the kinds of things that

20   Congress actually excluded.

21             MR. FLETCHER:  So let me give you two

22   answers, one that's about this area of law in

23   general and one that's specific to the 1952

24   amendment that you're talking about.

25             As to this area of the law in general,

1   this is a space where courts and legislatures

2   have often used different words as synonyms for

3   the same basic concept.  In 18 U.S.C. 2, it's

4   not just aids and abets.  It's aids, abets,

5   induces, commands.  There's about seven

6   different words.  No one parses them out and

7   asks which exactly is it.  We all understand

8   them to bring along the concept, the general

9   category.

10          JUSTICE JACKSON:  Right, but what

11   about -- what about the fact that someone in

12   Congress thought that they needed to take out

13   those other words?  So you might be right that

14   there are all kinds of synonyms floating out

15   there, and if this statute had all of them, I

16   might be persuaded, I think, to agree with you.

17          But I guess I'm worried about an

18   active, conscious effort on Congress's part to

19   exclude certain words that I now hear you

20   wanting us to read back into this statute.

21          MR. FLETCHER:  So I think maybe if

22   there was any reason to think in the legislative

23   history in the context that Congress intended to

24   do that, that the reason why they wanted to do

25   that was that they wanted to not make it a

```
1    solicitation or aiding-and-abetting statute,
2    which I think we all basically agree it was
3    before, and they wanted to turn it into
4    something else --
5                  JUSTICE JACKSON:  So do you have a
6    theory of why they took out "solicits"?
7                  MR. FLETCHER:  Yeah, I do.  I think
8    one of them is just economy.  As I said earlier,
9    this Court just five years earlier in Hoy had
10   described the prior statute as "induces" or
11   "encourages."  So Congress was just using a more
12   concise formulation that mirrored what this
13   Court had used for the prior statute.
14                  And I guess the other thing I'd say
15   is, you know, I think the -- the context I think
16   matters here too.  This is the -- the -- what
17   Respondents and the Ninth Circuit are positing
18   Congress did in 1952 was really something
19   extraordinary.  They took the statute that had
20   always been focused on soliciting and -- and
21   aiding and abetting and transformed it into a
22   really very broad ban on speech that would be
23   obviously unconstitutional in many of its
24   applications.
25                  And I don't think the Court should
```

Official - Subject to Final Review

21

1    lightly attribute that intent to Congress.  And
2    I think also it's significant that after 1952 we
3    have decades more of history.  Congress
4    revisited the statute again in 1986 and kept the
5    "induces" or "encourages" language but otherwise
6    tweaked the statute and then revisited it again
7    in 1996 and changed the penalty provisions.
8                 JUSTICE JACKSON:  What about the --
9                 JUSTICE BARRETT:  Mr. Fletcher --
10               JUSTICE JACKSON:  Go ahead.
11               JUSTICE BARRETT:  -- I have two
12    questions.  One is kind of focusing on a
13    different part of the statutory language.  Is
14    there a difference between "resides" and
15    "remains?"  Because they appear in different
16    sections, and it seems to me like "resides"
17    could mean take up residence in, which might be
18    different than "remains."
19               MR. FLETCHER:  So I think -- I puzzled
20    over this too.  You know, I think I'm not sure
21    if there's any difference in them.  I think, if
22    by "take up residence in" you're referring to
23    the interpretation that Judge Collins floated in
24    his dissent, where it suggested encouraging
25    someone to reside in might mean take up

22

```
 1    residence for the first time and not continue
 2    unlawful residence, the reason why I don't think
 3    that works is because of the description the
 4    statute has of the mens rea.  It says knowing
 5    that the person's coming to or residing in the
 6    United States is or will be unlawful, and I
 7    think that suggests that Congress understood
 8    that you could violate the statute by
 9    encouraging someone to continue residence that
10    is already unlawful.
11              JUSTICE SOTOMAYOR:  And that's the --
12              JUSTICE BARRETT:  Okay.
13              JUSTICE SOTOMAYOR:  I'm sorry.  Go
14    ahead.  No, no, no.  I'm sorry.
15              JUSTICE BARRETT:  And my second
16    question is about the effect of the enhancement.
17    So a jury has to find the elements of the
18    enhancement.
19              MR. FLETCHER:  Correct.
20              JUSTICE BARRETT:  Okay.  So, in
21    thinking about this as an overbreadth challenge,
22    I mean, obviously, the substance of offense
23    itself could, standing alone, in a situation
24    where the penalty or the enhancement wasn't
25    applicable, let's just posit that maybe that
```

```
1    violates the First Amendment and fails in an
2    overbreadth challenge.
3           You say there's no evidence for
4    someone bringing an overbreadth challenge in a
5    situation like this where you can combine it
6    with the the enhancement that requires the
7    financial gain, so I just want to be sure that's
8    right.
9           MR. FLETCHER:  That's right.
10          JUSTICE BARRETT:  That's right?
11          MR. FLETCHER:  Right.  We don't
12   have -- we haven't seen any precedent for an
13   overbreadth challenge like that, and we don't
14   think allowing the extension of overbreadth to
15   that sort of challenge is consistent with the
16   principles of overbreadth, which include that if
17   there's a way to sever invalid parts of the
18   statute and leave the rest, courts ought to do
19   that.
20          And we think that's exactly what's
21   true here.  Even if you thought, as your
22   question posits, that the general offense is
23   potentially overbroad, I don't think that would
24   mean that the enhanced offense is overbroad.
25   It's a severable class of offenses.
```

Official - Subject to Final Review

                                                          24

         1              JUSTICE SOTOMAYOR:  Wait a minute.
         2    Here, the enhanced offense includes the first
         3    part.
         4              MR. FLETCHER:  That's right.
         5              JUSTICE SOTOMAYOR:  How can you say
         6    the first part is invalid and still keep a
         7    second part?  The second part says you did
         8    the -- the second part says you did the first
         9    part for money.
        10              MR. FLETCHER:  Correct.
        11              JUSTICE SOTOMAYOR:  So you have to
        12    define what the first part permits or doesn't
        13    permit, correct?  You always have to go to the
        14    first part and define it.
        15              MR. FLETCHER:  Correct.  And what I'm
        16    positing is that even if you thought -- and we
        17    obviously disagree, but even if you thought that
        18    the general offense is unconstitutionally
        19    overbroad and therefore potentially invalid, the
        20    subset of that offense that is defined by the
        21    enhanced offense, you could invalidate other
        22    applications of the general provision, but there
        23    would be no reason to invalidate the subset of
        24    applications of the general provision that also
        25    carry this enhancement, which has to be found by

1      the jury.

2                 JUSTICE SOTOMAYOR:  Well, you still

3      have to prove that what the lawyer did was

4      aiding and abetting or solicitation, correct?

5                 MR. FLETCHER:  That's our view of what

6      we would have to prove under any of the

7      provisions we have.

8                 JUSTICE ALITO:  Mr. Fletcher, an

9      unusual feature of this statute is that the

10     underlying conduct, remaining in the

11     United States, is not itself a crime.

12                And I can certainly understand that

13     there are situations in which urging someone to

14     engage in certain conduct is more blameworthy

15     than engaging in the conduct itself because the

16     person who engages in the conduct may be in a

17     particularly vulnerable position or may be less

18     blameworthy for some other purpose.

19                But is there some limitation on --

20     that provide -- does the First Amendment in any

21     way limit the ability of Congress to criminalize

22     the solicitation of conduct that is not itself

23     criminal?  We could think of conduct that --

24     regulatory violations, for example, of speech

25     requirements, speech requirements -- regulatory

1    provisions that limit speech in some way.  Would

2    the First Amendment allow Congress to make all

3    of -- urging somebody to engage in that conduct

4    a crime under all circumstances?

5            MR. FLETCHER:  I think there'd be a

6    couple of principles that would come into play.

7    I'll tell you first candidly I don't think the

8    Court has ever spoken to that.  To the extent

9    the Court has spoken to this issue, it's done it

10   in cases like Williams and Pittsburgh Press,

11   where it said that offers to engage in or

12   attempts to solicit or induce illegal

13   transactions, even if they're only civilly

14   prohibited, are just outside the protection of

15   the First Amendment.  And I think -- so to say

16   anything beyond that would be new.

17           I think the things that -- principles

18   that might come into play, you know, I can

19   conceive of, if you had a law that targeted just

20   speech that didn't target assistive or

21   soliciting conduct, there might be different

22   issues that would come into play.  That's not a

23   concern here because everyone agrees that the

24   statute gets at encouraging and inducing,

25   whether that happens through speech or conduct.

1          And I can imagine, although I'm not so
2    sure so much that this is in the First Amendment
3    that this limitation inheres, but you can posit
4    really absurd hypotheticals about very, very
5    draconian penalties for soliciting things that
6    aren't criminal or are perfectly lawful.  I
7    think, if that happened, you'd have some sort of
8    rationality limit.
9          But I just want to underscore I don't
10   think that's what's going on here because this
11   is, as you said, a circumstance where
12   legislatures might decide that the people being
13   solicited to do the underlying conduct are less
14   blameworthy and more vulnerable, as I think this
15   case well illustrates.
16         And, also, this is a very special
17   circumstance.  It's true that remaining in the
18   country unlawfully is only a civil violation,
19   absent sort of special circumstances.  But it's
20   a civil violation that's subject to a very, very
21   serious civil penalty, deportation and removal.
22   And I think that indicates that this really is
23   conduct that Congress has taken seriously and
24   has made an appropriate determination --
25              JUSTICE KAVANAUGH:  What do you --

28

```
1              MR. FLETCHER:  -- that soliciting or
2    facilitating it is deserving of punishment.
3              JUSTICE KAVANAUGH:  What -- what --
4              JUSTICE SOTOMAYOR:  It's -- I'm sorry.
5    Go ahead.
6              JUSTICE KAVANAUGH:  What do you say to
7    the charitable organizations that say, even
8    under your narrowing construction, there's still
9    going to be a chill or a threat of prosecution
10   for them for providing food and shelter and aid
11   and recommending people for scholarships and --
12   and all the rest?  You're familiar with all the
13   hypotheticals.  But they seem to have a sincere
14   concern about that and that it will deter their
15   kind of everyday activities.  That's what a lot
16   of charities do as part of their day-to-day
17   activities with noncitizens who are not in the
18   in the country lawfully.
19             MR. FLETCHER:  I think a couple
20   observations.  One is a lot of what they talk
21   about and you just recited isn't speech at all.
22   It's definitely conduct.  So it doesn't raise
23   First Amendment questions at all.
24             You know, I understand the concern,
25   though, that goes to both about are these
```

29

 1    activities being chilled, and I'd say that on
 2    our view of the statute, you know, the vast --
 3    that activity is not going to be covered because
 4    we think it has to meet the sort of very high
 5    bar of aiding and abetting liability as
 6    traditionally understood with all of the old
 7    soil.  And it's --
 8              JUSTICE KAVANAUGH:  And explain that.
 9    Why wouldn't it be covered?
10              MR. FLETCHER:  Yeah, because I think
11    there are -- there are a bunch of different
12    examples, and I think there are sort of
13    different requirements that would weed out
14    different versions of them.  I think the one
15    that's most relevant to --
16              JUSTICE KAVANAUGH:  Well, I gave you
17    the food and shelter one.  You know, I want to
18    --
19              MR. FLETCHER:  Yeah.
20              JUSTICE KAVANAUGH:  -- I want you to
21    stay here and I'm going to help you, and
22    here's -- which I think is a pretty common part
23    of the conversations and -- and happens all the
24    time.  So is that enough?
25              MR. FLETCHER:  I don't think so.  You

1    know, I think there's a difference between

2    assuming, taking for granted that people are

3    going to be in the country unlawfully and

4    providing some assistance to them while they are

5    here and taking steps that -- where you

6    associate yourself with the venture and seek by

7    your action to make it succeed.  That's the

8    canonical formulation of aiding and abetting

9    liability.

10           And I just think it's hard to say that

11    a charity that provides assistance to people,

12    including people who are in the country

13    unlawfully, is meeting the requisites of aiding

14    and abetting liability.

15           JUSTICE JACKSON:  But I don't know why

16    you say that.  I mean, if the venture is -- if

17    the civil violation or the criminal violation is

18    to have the person stay here and remaining here

19    is unlawful, why wouldn't giving them food and

20    shelter that facilitates their ability to stay

21    here violate the statute?

22           MR. FLETCHER:  Because, Justice

23    Jackson, I don't think -- a couple of different

24    reasons.  You know, one is I don't think it's

25    going to have the requisite intent at least in

1    the vast majority of the cases.  I think all of

2    these organizations are describing themselves as

3    wanting to provide food and shelter for people

4    who need -- who are in need, who need food and

5    shelter.

6             JUSTICE JACKSON:  What if they -- what

7    if they limited their mission?  If they limit --

8             MR. FLETCHER:  To just people who are

9    here unlawfully?

10            JUSTICE JACKSON:  Yes.  Yes.

11            MR. FLETCHER:  Yes.

12            JUSTICE JACKSON:  We are limiting our

13   mission.  We see a bunch of people in our

14   community who are here -- we know they're here

15   unlawfully, but they're also starving, and what

16   we've decided to do is make sure that they're

17   not on the streets, they're not exposed to the

18   elements.  We're giving them food and shelter.

19            MR. FLETCHER:  Yeah.  I think I'd give

20   the same -- a version of the same answer but

21   just to say that even then, I don't think that's

22   acting with the purpose of keeping those people

23   in the country when they would otherwise leave.

24            CHIEF JUSTICE ROBERTS:  Are there any

25   --

```
1              MR. FLETCHER:  I think it would be
2    accepting --
3              CHIEF JUSTICE ROBERTS:  -- any
4    examples of prosecutions in those cases?
5              MR. FLETCHER:  No, absolutely not, Mr.
6    Chief Justice.  And, you know, likewise, you
7    could imagine, I think, as I -- one of the
8    things I said earlier is that we would take
9    cases under this statute the same way you take
10   cases under other aiding-and-abetting statutes.
11   You know, you can imagine there are a lot of
12   social services organizations that provide
13   services and counseling to people who are
14   engaged in unlawful activity, and I'm not aware
15   of cases that suggest that the provision of
16   those services to someone who happens to be
17   engaged in unlawful activity aids and abets
18   those activities.
19             JUSTICE SOTOMAYOR:  Well, we do know
20   that the Customs Department made a list of all
21   of the people, religious entities, the lawyers,
22   and others who were providing services to
23   immigrants at the border and was saying that
24   they intended to rely on this statute to
25   prosecute them.  You're saying to me it didn't
```

1    happen.  Congress issued a subpoena to many of

2    these organizations, did a lot of investigation

3    as to what was said.

4         So how do we tell all those people not

5    to chill speech because the only thing being

6    punished under this statute, unless you want me

7    to add that it has to say that the statute

8    requires something more than just words, we're

9    criminalizing words related to immigration.

10        And I thought there were only certain

11   statutes that were immune to First Amendment

12   challenges, obscenity, fighting words.

13   Otherwise, everything else is subject to the

14   First Amendment and strict scrutiny.  So why

15   should we uphold a statute that criminalizes

16   words, makes the punishment five years, which is

17   rather significant?  I know of no other statute

18   where aiding-and-abetting punishment or

19   solicitation punishment is greater than the

20   punishment we're giving the person who's going

21   to commit the crime.  But that's what we're

22   doing with this statute.  It's a first of a

23   kind.

24        MR. FLETCHER:  A couple thoughts,

25   Justice Sotomayor.  I think one of the

34

```
1      traditional categories of speech that is outside
2      the First Amendment is speech that -- this is
3      straight from Williams -- is speech that seeks
4      to induce or commence illegal activities.
5                Our view is that that's --
6                JUSTICE SOTOMAYOR:  If something -- if
7      something is going to be illegal, but people
8      enter the United States illegally all of the
9      time and they're here, they're remaining, but
10     you would have to prove that they're remaining
11     because of those words?  Are you -- are you
12     willing to take that part of the element?
13     Because that would make sense to me.
14               MR. FLETCHER:  We're willing to take
15     all of the soil that comes with the idea of --
16               JUSTICE SOTOMAYOR:  So do you believe
17     --
18               MR. FLETCHER:  -- aiding and abetting
19     and solicitation.
20               JUSTICE SOTOMAYOR:  -- that the soil
21     includes that the government has to prove that
22     the words actually is what caused that person to
23     remain?
24               MR. FLETCHER:  No, I don't think
25     that's a requirement of traditional aiding and
```

1   abetting.

2           JUSTICE SOTOMAYOR:  So why not?

3   Because that's what I think words that have to

4   do with inducing a crime is, that you want the

5   crime to succeed and that you have to make

6   yourself a part of the principle of succeeding

7   in that crime.

8           MR. FLETCHER:  So, if that's what you

9   think aiding and abetting connotes, then

10  we're -- that's actually a further reason not to

11  hold this statute invalid as overbroad.  It

12  means the statute has an even narrower reach.

13          JUSTICE SOTOMAYOR:  Well, no, no, you

14  tell me because I think we're going to talk to

15  the grandmother who lives with her family who's

16  illegal or who are noncitizens.  The grandmother

17  tells her son she's worried about the burden

18  she's putting on the family, and the son says,

19  Abuelita, you are never a burden to us.  If you

20  want to live here -- continue living here with

21  us, your grandchildren love having you.

22          Are you -- can you prosecute this?

23  And, if not, why not?  So what do you tell the

24  grandmother?

25          MR. FLETCHER:  I think not, Justice

     1    Sotomayor.  I think it's very hard to make out
     2    --
     3            JUSTICE SOTOMAYOR:  Don't -- stop
     4    qualifying with "think," because the minute you
     5    start qualifying with "think," then you're
     6    rendering asunder the First Amendment.
     7            MR. FLETCHER:  Justice Sotomayor --
     8            JUSTICE SOTOMAYOR:  People have to
     9    know what they can talk about.
    10            MR. FLETCHER:  Justice Sotomayor --
    11            JUSTICE SOTOMAYOR:  Once you create a
    12    lack of clarity in the law, then we're not
    13    writing to clarify it.
    14            MR. FLETCHER:  Justice Sotomayor, I
    15    don't think it's possible for me or for this
    16    Court to define how these principles will apply
    17    in all of the different factual circumstances
    18    that we can imagine, and I think the fact that
    19    we're trying to engage in that exercise is one
    20    of the problems with overbreadth analysis.
    21            What we would do is have this Court
    22    say, not the government say but this Court say,
    23    and write into law --
    24            JUSTICE SOTOMAYOR:  No --
    25            MR. FLETCHER:  -- the idea --

```
 1          JUSTICE SOTOMAYOR:  -- you could
 2   ask -- you could ask to criminalize actions, not
 3   words.  You've chosen to read a statute that
 4   criminalizes words.  Shouldn't we be careful
 5   before we uphold that kind of statute?
 6          MR. FLETCHER:  We're asking you to go
 7   only so far as every aiding-and-abetting and
 8   solicitation statute goes.  And to criminalize
 9   words --
10          JUSTICE SOTOMAYOR:  Well, generally
11   with aiding and abetting, the person has to do
12   something to make that act come about?
13          MR. FLETCHER:  I think generally yes.
14   I think there are some circumstances where
15   soliciting someone to commit a crime with words
16   would count, and I'm not willing to give that up
17   here because our position is the same aiding and
18   abetting principles ought to apply in both
19   contexts.
20          But if you have a narrower conception
21   of aiding and abetting that is all the more
22   reason to conclude that this is a narrow statute
23   that doesn't trench on the First Amendment.
24          CHIEF JUSTICE ROBERTS:  Justice --
25          JUSTICE SOTOMAYOR:  Can I ask -- I'm
```

1    sorry.  Go ahead.

2              CHIEF JUSTICE ROBERTS:  Go ahead.

3              JUSTICE SOTOMAYOR:  There was an

4    intent requirement asked for here.  You say it

5    was broader than you think it should have been

6    given, but we've had a number of cases this

7    term, Ciminelli, Percoco, Dubin, now this case,

8    where the government is conceding that the

9    statute read by its plain terms is too broad.

10   And you come back to us and say read it more

11   narrowly, but you won at a jury trial on a

12   broader charge.

13             If we keep doing, as you ask us to,

14   which is to rewriting statutes, are we

15   encouraging the government to continue this

16   practice?

17             MR. FLETCHER:  I don't think so,

18   Justice Sotomayor.  And, again, we're not asking

19   you to rewrite the statute.  We're asking you to

20   give these words the same meaning they have --

21             JUSTICE SOTOMAYOR:  Well, you said the

22   jury instruction wasn't consistent with this.

23             MR. FLETCHER:  So that -- that's

24   right, Justice Sotomayor.  This, in fairness --

25             JUSTICE SOTOMAYOR:  And in those other

1    four cases it wasn't consistent with this.  We

2    keep -- you keep coming here and admitting that

3    statutes have to be read in a different way when

4    you argue the opposite below.

5              MR. FLETCHER:  So let me put this case

6    in context, Justice Sotomayor.  This case was

7    tried before Sineneng-Smith came up, before the

8    Ninth Circuit called for supplemental briefing

9    on overbreadth, and it really injected this

10   whole constellation of issues and concerns about

11   a broad reading of the statute that didn't

12   really exist before.

13             And at the time I think it was

14   reasonable for the government to support the

15   model jury instruction, especially because no

16   one seriously argues that the speech at issue,

17   the conduct really at issue here was protected

18   by the First Amendment.

19             So I acknowledge we didn't write the

20   instructions at the time of the trial the way

21   that we would write them now with the benefit of

22   five or six years of experience and a lot more

23   airing out of the arguments --

24             JUSTICE SOTOMAYOR:  Well --

25             MR. FLETCHER:  -- and I acknowledge

1    you should send the case back to the Ninth

2    Circuit and let the Ninth Circuit decide what's

3    appropriate in light of that.

4              CHIEF JUSTICE ROBERTS:   Justice

5    Thomas, anything further?

6              Justice Alito?   Anything further?

7              Justice Kagan?

8              JUSTICE KAGAN:   So, Mr. Fletcher, so,

9    again, I want to assume your version of the

10   statute as to encourage and as to the mens rea.

11   Now I want to make two further assumptions,

12   okay.  We can come back to those assumptions,

13   but I just want you to assume them.

14             The first is that the statute, even as

15   interpreted by you would, in fact, encompass the

16   wealth of examples of people of various kinds,

17   friends, neighbors, doctors, whatever, saying to

18   people, I really think you should stay, and

19   saying that knowing that they are in the country

20   unlawfully, having all the intent that --

21             So my first assumption is that all of

22   those communications are within the statute.  My

23   second assumption is that for one or another

24   reason, maybe it's what Justice Alito said about

25   the fact that this is civil conduct, maybe it's

Official Transcript Subject to Final Review

41

1    for another reason, my second assumption is that
2    this statute as applied to those people would be
3    unconstitutional.
4            And now I want you to tell me how to
5    do the overbreadth analysis on this, because I
6    think I might say to you, I can imagine that
7    there's like a whole -- a huge number of such
8    communications taking place every day, because
9    for every person who's in this country
10   unlawfully, there are probably some number of
11   people who want that person to stay, family
12   members, you know, whatever.
13           So how do we think about the
14   overbreadth on those two assumptions?
15           MR. FLETCHER:  So taking those
16   assumptions, you know, the Court has never said
17   explicitly you can't reduce overbreadth to math,
18   it has to substantial and it has to be
19   substantial both absolutely and in relation to
20   the statute's plainly legitimate sweep.
21           I take it based on those assumptions
22   that you would say that's substantial.  That's a
23   substantial number of --
24           JUSTICE KAGAN:  Well, I'm asking you
25   sort of.

```
 1              MR. FLETHCER:  No, no --
 2              JUSTICE KAGAN:  How do we even go
 3     about thinking about that question?
 4              MR. FLETCHER:  So I guess I'd say
 5     maybe that's substantial in the absolute sense.
 6     I guess I would say, though, that the Court has
 7     also emphasized the real costs of overbreadth in
 8     terms of invalidating permissible applications
 9     of the statute, and that that's something that
10     has to be borne in line in the relative
11     analysis.
12              And at least -- I can't purport to
13     have read every one of the Court's overbreadth
14     cases, but in the vast majority of them the
15     Court says over -- you know, the vast majority
16     of the applications of the statute are
17     unconstitutional or there's just no core of
18     constitutional applications.
19              I don't think either of those things
20     -- even granting you're assumptions, I don't
21     think either of those would be true here.  And
22     the other thing that the Court has said is it
23     can't just be theoretical.  We want some
24     realistic demonstration of chill.
25              Because this is ultimately --
```

1      overbreadth is sort of a prudential, judicial

2      decision that we're concerned about chilling in

3      the real world, understandably, and so we're

4      going to depart from traditional principles by

5      letting people whose conduct isn't protected

6      assert the rights of others, in essence, and

7      there may be reason to do that, but we should do

8      it very carefully.

9              And I guess, I think, you have almost

10     a textbook case here for whether we know there

11     is not a chill because this statute was on the

12     books in basically the same form for 70 years

13     and it was only used --

14             JUSTICE KAGAN:  And how is that

15     argument -- because it's a strong argument --

16     how is it different -- sometimes the government

17     comes in and says, essentially, don't worry,

18     we're never going to apply the statute in these

19     circumstances.

20             And we always say back, it's like,

21     well, that's very nice, you can stand up there

22     and say it, but we're not taking your word from

23     it.

24             How is this different from that?

25             MR. FLETCHER:  So in a couple of ways.

44

1    I mean, one is that to the extent that we're

2    saying that here, mostly what we're saying, and

3    I guess this is maybe fighting your premise a

4    little bit, but we're not just saying take our

5    word for it.  We're asking you to write into the

6    -- your decision that the statute has the limits

7    that we say it has in ways that we won't be able

8    to get around in the future.

9         I understand you might think we're

10   pushing it here, that that doesn't fully solve

11   the problem and what to do --

12        JUSTICE KAGAN:  Right.

13        MR. FLETCHER:  -- about it then.  And

14   then I guess I would say then we're in this

15   special world of overbreadth, right, which is a

16   departure from usual standards.  You're not just

17   interpreting the statute.  You're not just

18   asking is it constitutional as applied in a

19   particular case where you sometimes say we're

20   not willing to take the government's word for

21   it.

22        You're saying are we going to do this

23   extraordinary thing and depart from ordinary

24   principles of adjudication.  And there I

25   actually do think it's fair to say, yeah, we're

```
 1    going to demand a real showing of chill, and I
 2    think here this is not some newly-passed statute
 3    where we're all just sort of guessing about what
 4    might happen.  We have a lot of history.
 5              And the thing that raised concerns,
 6    the thing that got the amici to write the briefs
 7    and to raise all the hypotheticals that we have
 8    spent all this time debating, was the Ninth
 9    Circuit's invitation to imagine broad
10    interpretations of the statute in order to
11    strike it down.  There really wasn't a concern
12    about it during all of the many decades it was
13    on the books before that.
14              JUSTICE KAGAN:  Thank you.
15              CHIEF JUSTICE ROBERTS:  Justice
16    Gorsuch?
17              Justice Kavanaugh?
18              JUSTICE KAVANAUGH:  You've reassured
19    us with your narrowing construction, just take
20    aiding and abetting law, solicitation law and
21    bring that old soil here.  And that is a good
22    answer, but I think it still raises questions,
23    because the underlying offense is so different
24    from bank robbery or carjacking or securities
25    fraud.
```

```
 1              It's just existing here as the
 2    underlying offense.  And I don't know if that
 3    should affect how we think about it.  I just
 4    wanted to get your response to that, because
 5    that makes it seem a lot broader.  You wouldn't
 6    say providing food to the bank robber
 7    necessarily is, you know, a meal, is -- is
 8    aiding and assisting the -- aiding and abetting
 9    the bank robbery, but if the underlying offense
10    is just being here, that -- that seems a little
11    different.
12              Should that affect how we think about
13    it or how do you just answer that concern?
14              MR. FLETCHER:  Yeah, so it's a fair
15    concern.  I'd say a couple things.  You know,
16    one is there are other offenses that may not get
17    the just being here concept, but there are
18    aiding and abetting concerns about other
19    relatively minor offenses, you know, the tax
20    things, the sort of draft evasion, drug use,
21    things like that.
22              The law is capable of dealing with
23    this, you know, aiding and abetting minor
24    offenses that happen a fair amount.  So I think
25    that helps with one set of concerns.
```

```
 1          The -- the being here concern, I guess
 2   I do think you could take into account the
 3   nature of the offense in deciding sort of are
 4   the requisites of aiding and abetting liability
 5   met?  One part of that answer might be what I
 6   said to Justice Jackson, that having the intent
 7   to help someone, assuming they are going to be
 8   here, isn't necessarily the intent that they
 9   remain here.
10          Another thing might be, you know, the
11   -- the aiding and abetting doctrine demands that
12   you associate yourself with a venture and seek
13   by your action to make it succeed.  And I
14   suppose you could take account of what the
15   venture here is in deciding sort of what level
16   of words or action are necessary to constitute
17   facilitation in that context.
18          So I guess I do think that traditional
19   aiding and abetting principles would allow those
20   sorts of things to be taken into account.
21          JUSTICE KAVANAUGH:  Thank you.
22          CHIEF JUSTICE ROBERTS:  Justice
23   Barrett?
24          JUSTICE BARRETT:  Mr. Fletcher, so
25   you've pointed out, and I agree with you that
```

1    it's interesting, kind of odd, it strikes me as

2    unusual, but I haven't done a study to see, to

3    have an overbreadth challenge to a statute

4    that's older, because all of these overbreadth

5    challenges invite a string of hypotheticals,

6    but, as you say, we have a track record.

7              Can you think, have you looked at it?

8    Are there overbreadth challenges that have

9    succeeded in the past where we have this much

10   data?

11             MR. FLETCHER:  So I don't know,

12   candidly.  I can't -- I'm not aware of one of

13   the Court's recent cases where this has come up,

14   Stevens, Alvarez, those sorts of cases are

15   relatively newer laws.

16             But the reason I don't want to say

17   definitively that there isn't one is that I

18   think some of the earlier laws involved state

19   statutes.  And I just haven't traced back

20   exactly how old they are.  But I'm -- I'm

21   certainly not aware of anything where you have

22   sort of the track record going the other way.

23             Not only is it old but also we have

24   such a strong empirical track record against the

25   very broad interpretation.  And, you know, I

1    think that's relevant not just to overbreadth,

2    but also to what the statute means because

3    Congress has been coming back and amending the

4    statute and revisiting it against the backdrop

5    of that narrow application of the statute.

6             JUSTICE BARRETT:  Well, and speaking

7    of state statutes, so we have some amicus briefs

8    saying that lots of states have language like

9    this.  It's possible that lots of statutes would

10   then succumb to First Amendment challenges of

11   this sort.

12            Have there been similar

13   overbreadth-type concerns litigated, especially

14   since Sineneng-Smith, about other solicitation

15   statutes or other induce-and-encourage statutes?

16            MR. FLETCHER:  It comes up

17   occasionally.  They don't get a lot of traction.

18   You know, one example that we cite in our brief

19   is the Ford versus State case out of Nevada,

20   which is about solicitation of prostitution.

21            JUSTICE BARRETT:  Prostitution.

22            MR. FLETCHER:  A Very similar statute.

23   You know, it's induce, encourage, or persuade,

24   coerce to -- to --

25            JUSTICE BARRETT:  Yeah.

50

```
 1           MR. FLETCHER:  -- enter into
 2    prosecution, and the defendant tried an
 3    overbreadth challenge there.  I think we also
 4    cite a Minnesota case.  So there are examples
 5    out there, but, frankly, courts have not had
 6    much difficulty dismissing them, either because
 7    you can't imagine circumstances where the aiding
 8    and abetting or solicitation would actually be
 9    protected, or because, even if you could, that's
10    such a sort of edge case that it doesn't call
11    for the application of overbreadth.
12           JUSTICE BARRETT:  Thank you.
13           CHIEF JUSTICE ROBERTS:  Justice
14    Jackson?
15           JUSTICE JACKSON:  So I guess I'm
16    trying to figure out, looking at all the other
17    provisions in this statute, what -- what is the
18    core constitutional application of this?  I
19    mean, you sort of responded to Justice Kagan's
20    question in saying that if we can identify that
21    and we understand that it's there, that would be
22    a reason not to strike it down.
23           But I am struggling, especially, for
24    example, with the part of 1324 here that is, you
25    know, small division (v)(II) that itself has an
```

```
1   aiding-or-abetting piece to it.  So it sounds
2   like Congress was covering aiding and abetting
3   to some extent in another part of this same
4   statute.  So, if we read this one to be aiding
5   and abetting too, what are we really -- what is
6   it really covering?
7           MR. FLETCHER:  It's a different kind
8   of aiding and abetting.  So the Romanette (v) --
9           JUSTICE JACKSON:  Yes.
10          MR. FLETCHER:  -- aiding and abetting
11  is aiding and abetting violations of the
12  preceding clauses of 1324(a)(1)(A).  So aiding
13  and abetting, bringing someone to the border in
14  violation of clause (i) or harboring or
15  transporting someone within the country in
16  violation of clauses (ii) or (iii), that sort of
17  aiding and abetting is covered by (v).
18          JUSTICE JACKSON:  All right.  And what
19  -- what is the aiding and abetting in (iv) that
20  could be aided and abetted per (v)?
21          MR. FLETCHER:  So the aiding and
22  abetting that is covered in (iv) is assisting
23  someone to enter or remain in the country
24  unlawfully.  That's the core constitutional
25  application of (iv).  That's what it does.  And
```

Official Subject to Review

```
 1    if you -- the way you would violate (v) is if
 2    you aided and abetted someone who was soliciting
 3    or facilitating people to enter into the country
 4    unlawfully --
 5              JUSTICE JACKSON:  I see.  So you're --
 6    you're helping the person who's doing it --
 7              MR. FLETCHER:  Mr. Hansen's helpers --
 8              JUSTICE JACKSON:  -- in (v).  Okay.
 9              MR. FLETCHER:  -- for instance.  Yeah.
10              JUSTICE JACKSON:  All right.  So, in
11    the (iv), you say it's aiding and abetting or
12    soliciting is the -- is the constitutional
13    application of (iv), and we're to look at aiding
14    and abetting and the old soil that comes with
15    it.  And Justice Kavanaugh raises an interesting
16    point, which is, wouldn't providing provisions
17    to a bank robber who you knew to have committed
18    this crime and is here, wouldn't that be
19    considered aiding and abetting?  And, if so, why
20    isn't the nonprofits who are providing these
21    kinds of provisions to people who are remaining
22    in this case -- in the United States in
23    violation of the law also a violation of this?
24              MR. FLETCHER:  So, yes, providing
25    tools, you know, a gun, a mask to a bank robber
```

```
 1      knowing that he's going to use them to rob the
 2      bank and intending that he use them to rob the
 3      bank, that's aiding and abetting the bank
 4      robbery.
 5              I think the reason why I don't think
 6      the provision of food or something like that to
 7      a noncitizen who happens to be here unlawfully
 8      qualifies as aiding and abetting --
 9              JUSTICE JACKSON:  What about aiding
10      and abetting after the fact?  He bank -- he's
11      robbed the bank already and he comes and he
12      knocks on the door and you know he's a bank
13      robber and you let him in, you let him stay.
14      And maybe that's harboring, I don't know, but --
15              MR. FLETCHER:  That -- that's not
16      aiding and abetting at all.
17              JUSTICE JACKSON:  I see.
18              MR. FLETCHER:  That's accessory after
19      the fact at best.
20              JUSTICE JACKSON:  Okay.
21              MR. FLETCHER:  And 18 U.S.C. 2 covers
22      only accessory before the fact and aid during
23      the crime but not aid after the crime.
24              JUSTICE JACKSON:  Not aid after.  All
25      right.  One more.
```

54

1            The point that Justice Alito brought

2     up with the civil violation, are you asking us

3     to decide that here, or could the Ninth Circuit

4     be tasked with looking into that when we return

5     the case, if we return the case?

6            MR. FLETCHER:  I guess I have

7     understood Respondent, Mr. Hansen, to be

8     making -- relying on the civil/criminal

9     distinction in service of his overbreadth

10    argument and to suggest that to the extent that

11    section -- clause (iv) would reach aiding and

12    abetting or soliciting conduct that is only a

13    civil violation, that's a First Amendment

14    problem and that that is part of his overbreadth

15    argument.

16           JUSTICE JACKSON:  But the Ninth

17    Circuit didn't rule on that, right?  The Ninth

18    Circuit didn't reach the question of how civil

19    liability interacts with any of this.

20           MR. FLETCHER:  That's correct because

21    the Ninth Circuit held it overbroad, you know,

22    on a much broader theory.  So I suppose you

23    could -- if you didn't want to reach that

24    question, you know, you could decline to do it,

25    say that the Ninth Circuit's reasoning was

1    wrong, that there may be alternative arguments

2    for overbreadth, and send it back for that

3    purpose.  I guess I view this more as a sub-

4    issue of the overbreadth argument on which the

5    Court granted cert and not as the sort of really

6    distinct issue that the Court usually remands

7    for consideration of.

8              JUSTICE JACKSON:  Well, we would have

9    to sort of sort it out.  Isn't it complicated to

10   sort of determine the extent to which the speech

11   incident to criminal conduct scenario, which is

12   what I understand you to be relying on, reaches

13   civil conduct as well?

14             MR. FLETCHER:  I don't think so.  I

15   think the Court crossed that bridge in Gazzam

16   the year after Giboney, which we cite in our

17   reply brief.  It did it again in Pittsburgh

18   Paper.  And then, in Williams, it described,

19   relying on Pittsburgh Paper, a civil case, the

20   unprotected category of speech that seeks to

21   induce or commence illegal transactions.  So we

22   think you've crossed that bridge already.

23             Now I'm sensitive to the idea that

24   these are hard questions of aiding-and-abetting

25   law and First Amendment law, and this is an

Official - Subject to Final Review

56

1   awkward posture to try to nail all of them down
2   in.  And so I do want to emphasize that all we
3   think you have to decide today is that the
4   statute is not overbroad.  And if you want to
5   reserve questions that might arise in an
6   as-applied posture, I think it's perfectly fine
7   to do that.
8            CHIEF JUSTICE ROBERTS:  Thank you,
9   counsel.
10           Ms. Bhandari.
11            ORAL ARGUMENT OF ESHA BHANDARI
12             ON BEHALF OF THE RESPONDENT
13           MS. BHANDARI:  Mr. Chief Justice, and
14   may it please the Court:
15           Mr. Hansen should prevail here for
16   three reasons.  The government concedes that the
17   statute is unconstitutional under its plain
18   meaning.  Instead, it asks this Court to rewrite
19   the statute to prohibit only solicitation and
20   aiding and abetting.
21           But that is Congress's job, and
22   Congress in 1952 took out the very words the
23   government now asks this Court to write in:
24   "solicit" and "assist."  And in 1986, Congress
25   took out the required intent.  The government

57

1    has cited no case in which Congress has used the

2    terms "encourage" and "induce" alone to stand

3    for solicitation or aiding and abetting.

4         Second, even if you construe the

5    statute as limited to solicitation or aiding and

6    abetting, this Court should not create a new

7    category of unprotected speech, namely, criminal

8    solicitation of civil law violations.  The

9    historical roots of that exception are limited

10    to solicitation of crimes and for good reason.

11    If the justification for treating speech as

12    categorically unprotected is that it is integral

13    to conduct that the government can punish, then

14    the speech cannot be punished more harshly than

15    that conduct.

16         This Court has consistently resisted

17    prior invitations to expand categories of

18    unprotected speech and should do the same here.

19    Otherwise, Congress and the states will be free,

20    without any First Amendment scrutiny, to

21    criminalize speech soliciting violations of the

22    vast range of administrative and regulatory laws

23    that govern us today, from mask and vaccine

24    mandates to parking ordinances.

25         To deny the government's requested

1    expansion would only mean that it would have to

2    satisfy ordinary First Amendment scrutiny when

3    it regulates such speech.

4            And, finally, even if the Court were

5    to adopt the government's narrowing

6    construction, Mr. Hansen's convictions must be

7    vacated because the jury was not instructed to

8    apply the government's narrowing construction,

9    and the government argued that the plain meaning

10   of the statute should control.

11           I welcome the Court's questions.

12           JUSTICE THOMAS:  Is speech the only

13   component of the First Amendment subject to

14   overbreadth?

15           MS. BHANDARI:  Justice Thomas, I -- I

16   think that speech is the realm in which this

17   Court has applied overbreadth analysis.

18           JUSTICE THOMAS:  Has it ever applied

19   it in any other aspect of the First Amendment?

20           MS. BHANDARI:  I'm not aware of any

21   context in which it has applied overbreadth to

22   other aspects of the First Amendment, no,

23   Justice Thomas.

24           CHIEF JUSTICE ROBERTS:  Counsel, you

25   focused on the amendment, what was it, '52 or

1      '56?

2              MS. BHANDARI:  1952.

3              CHIEF JUSTICE ROBERTS:  '52.

4      Suggesting there was a purpose to take out the

5      two provisions that were -- the two words that

6      were taken out and the two left in.

7              What -- what was that purpose?  What

8      is -- in other words, what is the distinction

9      you see between the words that were left in and

10     the words that were taken out?

11             MS. BHANDARI:  I think we can go by

12     what Congress actually did.  Congress removed

13     the narrower verbs, "solicit" and "assist," and

14     left in the broader verbs, "encourage" and

15     "induce."  That was a deliberate choice.  If

16     Congress wanted to write a solicitation law, it

17     could have left in the verb "solicit."

18             And I note that in 1984, which was two

19     years prior to the 1986 amendment to the

20     statute, Congress drafted 18 U.S.C. 373, which

21     is the general prohibition on soliciting a crime

22     of violence, and Congress took a very different

23     approach in writing that solicitation statute.

24     It required specific intent to solicit a

25     particular felony, and it required circumstances

1    strongly corroborative of that intent.

2              And the Senate committee report noted

3    that mere encouragement is not enough and that

4    the specific intent requirement was especially

5    important not to trench on First Amendment

6    concerns.

7              CHIEF JUSTICE ROBERTS:  So we would

8    have to see a distinction along the lines you

9    suggest between "solicit" and "assist" and

10   "encourage" and "induce" to the extent that the

11   -- the former are broader or narrower?

12             MS. BHANDARI:  Encourage and induce

13   are narrower -- are broader terms.  Solicit and

14   assist are the narrower terms.

15             And I also think that you can look at

16   the pattern of amendment to see that Congress

17   over time has broadened the statute from its

18   initial roots.

19             Initially it was tied to prohibiting

20   the entry of -- of -- assisting the entry of

21   contract laborers.  Then Congress took away the

22   limitation on contract labor.  It was assisting

23   anyone's entry.  But still in 1952 it used the

24   verb solicit and assist and it required the

25   willful or knowingly standard.

```
 1          Then Congress removed the mens rea
 2    requirement and required only knowledge or
 3    reckless disregard, again, an expansion.  And
 4    Congress removed the verb solicit and assist to
 5    leave only the broader terms encourage and
 6    induce, and expanded to remaining in the country
 7    unlawfully in 1986.  That was its final
 8    expansion.
 9          So over time, Congress has
10    consistently shown its intent as evidenced by
11    the plain text to cover much more than
12    solicitation or aiding and abetting.
13          JUSTICE BARRETT:  Counsel let's assume
14    --
15          JUSTICE ALITO:  May I -- go ahead.
16          JUSTICE BARRETT:  I just want to
17    follow up on mine quickly, and let's just assume
18    that you're wrong about Congress's intent.
19    Would you concede that if we accept the
20    government's narrowing construction, let's
21    assume the underlying offense is criminal, not
22    civil, would you concede that you would lose --
23    your overbreadth challenge if the government is
24    right about the narrower solicitation?
25          MS. BHANDARI:  If you are limiting it
```

Official - Subject to Final Review

62

```
 1    just to crimes and only to solicitation and
 2    aiding and abetting with the requisite intent,
 3    then, yes, but I don't understand the government
 4    to be limiting its argument only to crimes.  And
 5    --
 6              JUSTICE ALITO:  Well what -- go ahead.
 7              JUSTICE BARRETT:  No, my hypothetical
 8    changed that.
 9              MS. BHANDARI:  Yes, yes.
10              JUSTICE ALITO:  Well, that's what I
11    wanted to ask you about.  I understood your
12    second point to be that the First Amendment
13    prohibits the criminalization of the
14    solicitation of conduct that is unlawful but not
15    criminal.
16              Is that your second point?
17              MS. BHANDARI:  That is correct.
18              JUSTICE ALITO:  And -- and that you
19    think that's true across the board in all
20    circumstances?
21              MS. BHANDARI:  Yes, Justice Alito,
22    because we're talking about whether speech is
23    categorically beyond the protection of the First
24    Amendment.
25              So anytime you have a law-targeting
```

63

1    speech, which would cover a solicitation law,

2    the first step is, of course, it's a law

3    targeting speech, you, you know, trigger First

4    Amendment scrutiny.

5           Now, if the law fits within a narrow

6    category of historical exception, like obscenity

7    and so forth, then it doesn't have to

8    satisfy scrutiny.

9           JUSTICE ALITO:  Yeah, okay.  So

10   solicitation -- soliciting someone to engage in

11   prostitution, that's unconstitutional,

12   criminalizing the solicitation of someone to

13   engage in prostitution, that's -- that's

14   unconstitutional.

15          MS. BHANDARI:  No, Justice Alito.

16   That can be regulated as a transaction.  And

17   this Court in Williams made clear that you

18   can -- you can render certain transactions

19   illegal.  So speech that effectuates those

20   transactions, for example, if I say to you I

21   want to buy drugs, that is proposing an illegal

22   transaction.  That speech can be regulated.  And

23   that was the case with Williams where it was

24   speech about a transaction involving child

25   pornography.

```
1              JUSTICE ALITO:  All right.  Not
2   soliciting a prostitute but encouraging someone
3   to engage in prostitution, that cannot be
4   criminalized?
5              MS. BHANDARI:  If prostitution is not
6   a crime --
7              JUSTICE ALITO:  Yes.
8              MS. BHANDARI:  -- then such speech is
9   not categorically unprotected.  It would just be
10  subject to First Amendment scrutiny, which means
11  that if the government had a compelling interest
12  and narrowly tailored that law, they could do
13  so.  But -- but that is the key difference,
14  Justice Alito, between solicitation as used in
15  the sense of transactions versus solicitation of
16  a third person to do something.
17             JUSTICE ALITO:  So encouraging someone
18  to engage in prostitution is not necessarily
19  criminalizing, that is not necessarily
20  unconstitutional, it just has to satisfy strict
21  scrutiny, and you would apply the same thing
22  here?
23             MS. BHANDARI:  That is correct,
24  Justice Alito.  Any law burdening speech where
25  it makes the speech a crime and it's soliciting
```

65

1     underlying civil violations would be subject

2     to -- if it's content based, it would be

3     subject to strict scrutiny.

4            JUSTICE ALITO:  Encouraging someone to

5     commit suicide?

6            MS. BHANDARI:  I think --

7            JUSTICE ALITO:  Same thing?

8            MS. BHANDARI:  Same thing.  If it's

9     not a crime, you just subject it to ordinary

10    First Amendment scrutiny, which the Minnesota

11    Supreme Court did in Melchert-Dinkel it applied

12    strict scrutiny to a law encouraging suicide.

13           In that case, the law did not satisfy

14    strict scrutiny but a narrowly tailored law very

15    well might.

16           JUSTICE ALITO:  What if the person who

17    is encouraged to commit suicide is

18    intellectually disabled, particularly vulnerable

19    to that encouragement?

20           MS. BHANDARI:  Again, I think if a

21    state or Congress passed a law that was directed

22    specifically at encouraging someone in that

23    vulnerable state and narrowly tailored it, it

24    very well might pass strict scrutiny, but --

25           JUSTICE ALITO:  And why would that be,

Official - Subject to Review

66

1    because that's an important interest, protecting

2    those people is an important interest?

3              MS. BHANDARI:  That's correct.  I

4    think the strict scrutiny analysis builds into

5    it the interest that the government has in

6    criminalizing speech.

7              JUSTICE ALITO:  And then why wouldn't

8    that be satisfied here?

9              MS. BHANDARI:  In this case, there --

10             JUSTICE ALITO:  The government has

11   a -- now, people disagree about this, but the

12   law expresses a strong interest in regulating

13   who is allowed to remain in the United States.

14             MS. BHANDARI:  I think that that

15   standard would not be satisfied here even if you

16   read this as a narrow solicitation law, because

17   it would reach solicitation of civil law

18   violations that Congress itself has incentivized

19   people to engage in.

20             So, for example, when Congress has

21   provided under the Violence Against Women Act, a

22   pathway to lawful status for women who have been

23   battered or a pathway to lawful status for

24   victims of trafficking or a pathway to lawful

25   status to people who overstayed their visas but

1    married a U.S. citizen.

2              In all of those cases, lawyers,

3    community members who provide know your rights

4    training and materials are entitled to tell

5    people about those paths to lawful status if

6    they remain even unlawfully.

7              JUSTICE GORSUCH:  Counsel, I'm --

8              MS. BHANDARI:  And I don't think the

9    government could claim a compelling interest.

10             JUSTICE GORSUCH:  I'm -- I'm sorry to

11   interrupt.  Are you finished?

12             MS. BHANDARI:  Yes.

13             JUSTICE GORSUCH:  So I -- I just want

14   to follow up on Justice Alito's line of

15   questioning with you because I think I heard you

16   say there could be some examples where you could

17   criminalize the act of soliciting or aiding and

18   abetting an underlying civil offense, whether

19   it's prostitution or assisting a suicide of a

20   vulnerable person.

21             And once -- once -- you said there

22   could be circumstances at least possibly where

23   such a law would be narrowly tailored and would

24   survive.  How does that affect our overbreadth

25   analysis?

68

1          Because now we're saying that
2     civil/criminal distinction isn't what matters,
3     there are some categories of cases, even -- even
4     with respect to underlying civil offenses where
5     the government can regulate aiding and abetting
6     or soliciting more -- more specifically and
7     dramatically than the underlying offense.
8          So now we've -- we've narrowed the
9     category dispute.  How does that affect the
10    overbreadth analysis?
11         MS. BHANDARI:  I think if you are
12    talking about a world in which you've narrowed
13    the statute to solicitation only, so leaving
14    aside the -- just pure encouragement and
15    inducement --
16         JUSTICE GORSUCH:  Yeah.
17         MS. BHANDARI:  -- and you've narrowed
18    it in that way, I think the statute would still
19    be substantially overbroad because it reaches
20    solicitation of civil violations that I don't
21    think even the government would claim an
22    interest in criminalizing.
23         And, again, I point to the example of
24    lawyers advising people about a pathway to
25    lawful status that Congress itself has

69

1    incentivized.  And I think it would raise major

2    First Amendment concerns for the government to

3    be able to criminalize lawyers and others

4    providing truthful information about legal

5    options.

6          JUSTICE GORSUCH:  I would certainly

7    imagine that there would be a -- a very strong

8    as-applied challenge in those kinds of cases,

9    but an overbreadth analysis, we're supposed to

10   ask -- I -- I don't know what we're supposed to

11   ask, but something like, is it impossible to

12   apply the statute constitutionally or is it

13   really, really almost unlikely it will ever be

14   applied constitutionally.

15         And you're -- you're positing a narrow

16   set of cases in which it would be a good First

17   Amendment challenge, might exist, but, again,

18   how does -- how do we -- how do we struggle with

19   this overbreadth?  What -- when is enough

20   enough?

21         MS. BHANDARI:  I would point you to

22   the -- the approach the Court took in Free

23   Speech Coalition and in Stevens where the

24   inquiry is simply does the statute -- even if

25   you narrowly construe it, does the statute reach

1    protective speech that people engage in.  Is it
2    realistic speech that they engage in every day
3    frequently?

4          In Stevens, the Court didn't do an
5    empirical analysis.  It looked at the fact that
6    many people engaged in hunting videos actually
7    as a strength of the overbreadth challenge,
8    because it said, you don't need to look at who's
9    not speaking.  The fact that people do violate
10   the statute, as the government construes it, is
11   a reason for us to apply the overbreadth remedy.

12         Similarly, in Free Speech Coalition,
13   the Court looked at the fact that mainstream
14   movies such as Romeo and Juliet or American
15   Beauty might fall within the terms of the
16   statute.  And it didn't attempt to quantify
17   examples of mainstream movies vis-à-vis actual
18   child pornography.

19         JUSTICE KAGAN:  Mr. Fletcher points
20   out that this statute has been with us a long
21   time and we've just never seen such prosecutions
22   or at most just a handful of cases.

23         So in that circumstance, isn't our
24   task made easier with respect to overbreadth, if
25   you can just say look at the history?

Official - Subject to Final Review

71

```
 1          MS. BHANDARI:  Two responses, Justice
 2    Kagan.  First, prosecutions are not necessary,
 3    and Stevens and in Free Speech Coalition this
 4    Court didn't require actual prosecutions of
 5    protected speech.
 6          And in Stevens, this Court invalidated
 7    that law eleven years after it had been passed.
 8    So that law had been on the books for a while
 9    and Free Speech Coalition, it had been at least
10    five years.  In Virginia v. Black, the plurality
11    opinion holding that statute overbroad, that law
12    had been on the books for 35 years.
13          So the length of time and the lack of
14    prosecutions isn't the inquiry, because on a
15    facial challenge, the facial validity of a law
16    does not depend on the government's
17    prosecutorial choices.
18          JUSTICE KAGAN:  Well, doesn't the
19    prosecutorial choice have something to do with
20    what kinds of activity the law chose?
21          MS. BHANDARI:  Even if you look at the
22    prosecutorial activities relevant to that, I
23    think there's realistic danger of chill here,
24    just from the fact that the government in recent
25    years has invoked Section 1324 in investigative
```

```
 1    activities, as the amicus brief from the
 2    Reporters Committee for Freedom of the Press
 3    noted.  The government doesn't treat Section
 4    1324 as a dead letter.  It's still available to
 5    open investigations even if they never charge
 6    someone.  The City and States' amicus brief
 7    notes that they have to certify compliance with
 8    1324 to receive funding in certain instances.
 9          But, finally, I would just point to
10    the government's ever-changing positions on what
11    the statute means as presenting a chilling
12    effect to the public.
13          JUSTICE BARRETT:  But -- but, in
14    addition, just to follow up on Justice Kagan's
15    point, in addition to prosecutions we also have
16    a record of activity not being chilled.  I mean,
17    no one's pointed out there are charitable
18    organizations, to use Justice Kavanaugh's
19    hypothetical, that are not giving food and
20    shelter and resources or that lawyers are afraid
21    to give advice.  I mean, the statute's been on
22    the books for a long time.  And there might --
23    there's an absence of prosecutions.  There is
24    also an absence of demonstrated chilling effect.
25          MS. BHANDARI:  This Court has never
```

1    required a demonstrated chilling effect.  Again,

2    in Stevens and Free Speech Coalition, this Court

3    didn't say the fact that mainstream movies were

4    out there, the fact that hunting videos were out

5    there was proof that nobody was chilled, because

6    the -- the overbreadth doctrine is concerned

7    with two main things.  One, the chill on people

8    who would conform their behavior to the letter

9    of the law, and that behavior isn't visible to

10   this Court, the people who are not speaking.

11           And, second, it gives an incentive to

12   Congress to craft narrow laws.  So, for example,

13   if Congress made it a felony to criticize the

14   president and only ever prosecuted people who

15   engaged in constitutionally unprotected true

16   threats, that law could then be immunized from

17   challenge if -- if the government could come in

18   and say, no, no, no, this person engaged in true

19   threats, even though all the jury had to find

20   was did you criticize the president --

21           JUSTICE GORSUCH:  Well --

22           MS. BHANDARI:  -- yes or no.

23           JUSTICE GORSUCH:  -- it is a little

24   awkward, tough, that this case comes up in a

25   posture with Mr. Hansen, who I don't think

1    anybody could say he's been chilled from

2    speaking.  I mean, he's had no problem

3    soliciting people here in this country and --

4    and defrauding them to the tune of lots and lots

5    of money.  I mean -- I mean, he is -- he has

6    victimized these people, and it may be a poster

7    child for a situation in which the underlying

8    offense might be modest, but you might want to

9    criminalize it because he's taking advantage of

10   very vulnerable people.  And -- and it just

11   seems awkward that we're in -- in a posture

12   where we're asserting third-party rights of

13   really hypothetical situations without an

14   example.

15          MS. BHANDARI:  In this case,

16   Mr. Hansen is asserting his own legal rights.  I

17   want to be very clear.

18          JUSTICE GORSUCH:  Is he -- how is he

19   being affected?  How are his speech rights being

20   affected?

21          MS. BHANDARI:  Mr. Hansen, as a

22   defendant, he is entitled to have the government

23   prove facts or elements that would make out

24   speech that is constitutionally unprotected, and

25   that did not happen here.

Official Subject to Review

75

```
1              So we -- we don't disagree that he
2    victimized many people and, for that, he was
3    convicted under fraud counts and -- and received
4    20 years.  And none of those will be disturbed
5    here.
6              But under the encouragement provision,
7    the government did not have to prove that he
8    lied to anyone, that he deceived anyone, that he
9    engaged in any false speech.  All they had to
10   show was that he encouraged or induced people.
11   No mens rea requirement.  No intent.
12             JUSTICE GORSUCH:  Well, that's going
13   to be -- the government concedes that that has
14   to be resolved on remand, and it seems highly
15   unlikely that he's going to prevail under that
16   standard on remand.  I think we'd agree on that.
17   I mean, he -- he had every intent in the world
18   to keep these people here to -- to -- to take
19   their money with no prospect they'd ever
20   actually see -- obtain any kind of relief.  And
21   that's what -- those are the facts.
22             And I guess, again, it's just a little
23   awkward that we're worried about chilling other
24   people's speech and it has nothing to do with
25   the case before us.
```

1            MS. BHANDARI:  I would argue that if

2      you were reconsidering overbreadth doctrine,

3      this wouldn't be the case in which to do this

4      because the government secures convictions under

5      the broad terms of the statute.  That goes to

6      the chilling effect.

7            The broad terms of the statute that

8      are on the books, which the government uses to

9      secure convictions, that, in and of itself, is

10     enough to tell the public that, if I engage in

11     any conduct that the government doesn't like,

12     even if it doesn't amount to solicitation or

13     aiding and abetting with all of the many

14     requirements that the government says should be

15     read in, it won't matter, because I could be

16     convicted by this jury.

17            JUSTICE JACKSON:  And in fact, that

18     happened in this very case, right?  I mean,

19     didn't the government object to narrow

20     instructions that would have tailored this to

21     the kinds of things the government is saying

22     right now?

23            MS. BHANDARI:  That is correct.  The

24     government --

25            JUSTICE JACKSON:  So, in open court,

77

1    with respect to this particular defendant, the

2    government said no, no, the statute is really

3    broad and it covers all this kind of conduct,

4    did they not?

5              MS. BHANDARI:  That is correct.  The

6    government objected to those very elements in

7    this case, in Sineneng-Smith in the district

8    court, and the Tenth Circuit case of --

9              CHIEF JUSTICE ROBERTS:  Do you

10   disagree -- do you disagree with Mr. Fletcher

11   that they have never brought such a prosecution?

12             MS. BHANDARI:  I don't disagree that

13   they haven't brought such a prosecution.  What I

14   submit is that that's not relevant to the

15   overbreadth analysis because the government, you

16   know, has many other tools to threaten

17   invocation of Section 1324 as it has done, as

18   the amici have pointed out.  And mainly because

19   in a facial challenge, the government's choice

20   not to prosecute to the full extent is not

21   relevant.  Just as in Stevens, it was not

22   relevant that the government essentially had

23   promised never use -- to use the statute that

24   way.

25             I do want to go back to Justice

1    Gorsuch, your question about this particular
2    defendant and his conduct.
3            In R.A.V. v. St. Paul, the -- the
4    opinion for the Court noted that, just because
5    someone engages in conduct that could be
6    regulated in one way doesn't mean that the
7    government can regulate it in another way that
8    violates the First Amendment.
9            So there you had a defendant who
10   burned a cross in a family's yard, and Justice
11   Scalia's opinion for the Court noted that arson
12   laws, property damage laws could have gotten
13   that defendant's behavior, but that didn't mean
14   the application of a viewpoint discriminatory
15   law was permissible with respect to him.
16           JUSTICE GORSUCH:  I -- I -- I totally
17   accept that, and I totally accept as well your
18   -- your point, your good point, that if -- even
19   under the government's view remand is going to
20   be required, and you'll have an opportunity to
21   make arguments.  How successful they will be is
22   an interesting question.  But in an overbreadth
23   challenge, isn't it surely relevant that your
24   client is not likely to benefit from whatever we
25   do?  And, as the Chief Justice just pointed out,

1    there has never been a prosecution of some of

2    these hypotheticals we've been discussing, and

3    the book -- the -- the law has been on the books

4    for 70 years.

5            I mean, it is an extraordinary thing

6    for this Court to grant third-party standing,

7    which is effectively what we're being asked to

8    do here.  Why would we do it in this -- under --

9    under those circumstances, when an as-applied

10   challenge would always be available should the

11   government -- because I don't take them at their

12   word either, okay?  But should they ever go

13   after somebody who actually meets one of these

14   hypotheticals that have been very interesting

15   this morning, they would have a good First

16   Amendment defense.

17           MS. BHANDARI:  Justice Gorsuch, I -- I

18   would note the law in its current form has only

19   been on the books since 1986, absent the mens

20   rea requirement.  And the government secures

21   convictions, as it did in this case, without

22   showing any of the elements that would make

23   someone's speech unprotected.

24           So I understand that, you know,

25   Mr. Hansen's behavior was not commendable here,

1    but the government didn't have to prove any of

2    the narrowing elements that would make the

3    statute permissible.

4           And so I think that is one reason that

5    this Court should make sure that this law

6    doesn't in the future chill those, you know, who

7    have engaged in the type of speech that Justice

8    Kagan --

9           JUSTICE JACKSON:  Isn't it possible to

10   really figure out how many people have been

11   chilled?  I mean, I guess I'm trying to

12   understand how it would work if we didn't have

13   some sort of an overbreadth argument, because on

14   the one hand, you can look at the situation and

15   you can say the government has never charged any

16   of these people who are actually doing this, but

17   we don't know -- by "this," I mean, for example,

18   Justice Kavanaugh's example of, you know,

19   helping -- helping noncitizens by giving them

20   food and water.  Fine.  The government has never

21   charged any, but we don't know how many other

22   people would have engaged in that kind of, you

23   know, speech and -- and action if it weren't for

24   this law.

25           So it's really hard to know, I think,

1    by looking only at what the government has done,

2    who is being prevented from engaging in First

3    Amendment activity.

4            MS. BHANDARI:  That is correct.  And

5    that is one of the overriding concerns of

6    overbreadth doctrine.  Again, is the concern

7    with people who are silent and whose silence is

8    not visible to the Court.  But I --

9            JUSTICE GORSUCH:  And we --

10           MS. BHANDARI:  -- don't --

11           JUSTICE GORSUCH:  And we have no

12   record of that here either.  We're just -- we

13   just coming up with hypotheticals, right?

14           MS. BHANDARI:  Well, what we have

15   is --

16           JUSTICE GORSUCH:  There's no record of

17   people coming into court and a factual finding

18   in district court on -- on who has been chilled

19   and how.  I mean, that could have happened, but

20   we don't have that here.

21           MS. BHANDARI:  Justice Gorsuch, I

22   don't think that would be likely to happen in a

23   criminal case like this.  Perhaps in a

24   pre-enforcement challenge.  But I also note the

25   amici -- the AL amicus brief noting lawyers have

82

1    said that lawyers, immigration lawyers, are

2    watching this case very closely and already

3    starting to advise each other on how they may

4    have to curtail the advice that they give to

5    their clients.

6          I also want to emphasize that the

7    government hasn't made very clear the

8    distinction between solicitation and aiding and

9    abetting.  It seemed to conflate those points.

10         Aiding and abetting requires that the

11   principal complete the underlying act.  I'm not

12   sure if the government is saying that that is

13   required here, because solicitation does not

14   require that.

15         The government's also has not

16   explained whether "encourage" means solicitation

17   and "induce" means aiding and abetting, or

18   vice versa, which of these words apply to which

19   concept.

20         Solicitation and aiding and abetting

21   aren't the same.  They have different elements.

22   And the government hasn't explained how this

23   Court could clearly write in those elements in a

24   way that would tell the lawyer or the community

25   activists advising people what their rights are

1    under the law whether they can remain in the

2    country.

3           And when the stakes of getting it

4    wrong are felony prosecution and five years

5    imprisonment, people are not going to go

6    anywhere close to the line --

7           JUSTICE KAVANAUGH:  I thought the --

8           MS. BHANDARI:  -- if they can help it.

9           JUSTICE KAVANAUGH:  -- I thought the

10   government was saying that both solicitation and

11   aiding and abetting were coming in and that the

12   elements of the two offenses would be the

13   traditional elements, both of which require

14   intent.

15          MS. BHANDARI:  I agree that both of

16   them require intent, but the government has at

17   various times suggested that you need an act,

18   which I agree is true for aiding and abetting

19   but for solicitation isn't necessarily true.

20          So you're reaching pure speech on the

21   hypothetical of someone simply saying come to my

22   food pantry.  Not engaging in the conduct of

23   actually giving food, just saying come to my

24   food pantry, it's open to anyone who's

25   undocumented, would that constitute solicitation

84

```
 1      to remain in the country, or someone who runs a
 2      domestic violence shelter, for example, telling
 3      people who come, knowing that they're
 4      undocumented, stay here, it's a safe place,
 5      you're welcome here, and we don't want you to
 6      leave here where you're safe.
 7              It -- it's critical that a statute
 8      that hits on speech draw clear lines when felony
 9      prosecution is at stake.  Congress did not do
10      that here.  And Congress could do so if this
11      Court were to hold that this law simply doesn't
12      say what the government says, and Congress then
13      remains free to draft the narrow
14      aiding-and-abetting or solicitation law if it
15      wishes to.
16              CHIEF JUSTICE ROBERTS:  Thank you,
17      counsel.
18              Justice Thomas?
19              Justice Alito, anything further?
20              Justice Sotomayor?
21              JUSTICE SOTOMAYOR:  Yes.  I -- I think
22      you maybe gave up a little bit too much when you
23      were talking about answering Justice Alito's
24      questions and Justice Gorsuch, that there might
25      be cases where Congress could criminalize a
```

1    civil violation.

2            Did I understand you to say, once you

3    give that up, then this is okay because they can

4    criminalize all civil violations?

5            MS. BHANDARI:  Not at all.  In the

6    circumstances in which there is a --

7            JUSTICE SOTOMAYOR:  I -- I would like

8    to know where to draw that line.

9            MS. BHANDARI:  It --

10           JUSTICE SOTOMAYOR:  I -- I find it

11   hard to borrow concepts of aiding and abetting

12   or solicitation because, by definition, both of

13   those concepts, as we have traditionally had

14   them in the criminal law, require a criminal act

15   by the perpetrator.  There has to be an act done

16   by the perpetrator.  You have to solicit a

17   crime.

18           We've never had a crime defining

19   solicitation of a civil violation, correct?

20           MS. BHANDARI:  That's correct.  This

21   Court has never upheld a criminal solicitation

22   law directed at a civil crime.

23           JUSTICE SOTOMAYOR:  Now too much,

24   never done it, and, in fact, all of the

25   solicitation and aiding-and-abetting crimes,

1      generally, the punishment is less than the

2      completed act, correct?

3              MS. BHANDARI:  That's correct.

4              JUSTICE SOTOMAYOR:  Perpetrators are

5      treated more -- the perpetrators of the crime

6      are treated more harshly, and solicitation, it's

7      still not -- the punishment has never been as

8      great as the completed crime.  You don't get

9      punished for solicitating -- soliciting arson

10     and get treated as harshly as the arsonist.

11             MS. BHANDARI:  I -- I think -- yes.  I

12     want to be very clear about our position, which

13     is that solicitation, criminal solicitation

14     laws, when they are directed at civil conduct,

15     are not categorically unprotected under the

16     First Amendment.

17             JUSTICE SOTOMAYOR:  All right.  So

18     let's go, because -- let's go there, because

19     when are they not categorically protected?  When

20     are they categorically protected?  I want to

21     know what the difference is, why this one is not

22     protected and others might be.

23             MS. BHANDARI:  I think that if you had

24     a law criminalizing solicitation of certain

25     civil violations, you would subject it to strict

87

1    scrutiny and it would then be a case-by-case
2    analysis.
3            I don't think the government has even
4    attempted to argue in this case that this law
5    would satisfy strict scrutiny with respect to
6    civil violations.  That -- that argument has not
7    been on the table.
8            But I -- I say that only to show that
9    when it comes --
10           JUSTICE SOTOMAYOR:  But what would
11   qualify?  What -- you -- you admitted that a --
12   inducing a person of lesser mental ability to
13   prostitution would probably fall into it.
14           MS. BHANDARI:  Yes.  I think you could
15   see a spectrum of laws.  Again, it's the normal
16   First Amendment scrutiny.  So where the
17   government has a compelling interest and, of
18   course, narrowly tailors its law and has no
19   alternative to get at that conduct other than
20   criminalizing speech, it might satisfy it.
21           But, on the other end of the spectrum,
22   if a municipality decided to make it a crime to
23   solicit parking violations because everyone in
24   town is just violating the parking violations
25   and paying the fee and so it's decided to make

88

```
 1    it a crime to solicit that, I don't think that
 2    that speech is categorically unprotected under
 3    the First Amendment and probably wouldn't
 4    satisfy heightened First Amendment scrutiny.
 5              JUSTICE SOTOMAYOR:  So now let's go to
 6    why not having an example of a generalized --
 7    more examples of prosecutions, the Henderson
 8    everybody keeps forgetting, but there's at least
 9    one prosecution in -- under the 1986 statute.
10              Why do you think the history from '86
11    to currently shouldn't be viewed as important?
12              MS. BHANDARI:  It's not relevant that
13    the government has chosen not to file actual
14    prosecutions of protected speech.  That's never
15    been required by this Court for First Amendment
16    overbreadth analysis, again, for good reason,
17    because a law, if it's facially reaching
18    protected speech, does not become more or less
19    constitutional depending on the government's
20    prosecutorial choices.
21              It's also relevant, however, that the
22    government has ways of chilling speech simply by
23    having the law on the books without filing
24    actual prosecutions.
25              So, for example, when it opens
```

1    investigations into people and invokes Section

2    1324, as has happened with journalists, perhaps

3    it might be --

4              JUSTICE SOTOMAYOR:  What happened with

5    Customs patrol.

6              MS. BHANDARI:  With -- with the U.S.

7    Customs and Border Protection, yes.

8              JUSTICE SOTOMAYOR:  And Congress did

9    subpoenas too.

10             MS. BHANDARI:  That is correct.  And

11   also when it asks cities and states to certify

12   compliance with Section 1324 to receive federal

13   funding, which, of course, could chill those

14   city and state officials from even coming close

15   to the line of violating the encouragement

16   provision for fear of losing that funding.

17             So there are many aspects beyond

18   simple prosecutions that can chill speech, and

19   -- and the government has certainly used some of

20   those tools in the last five years even.

21             JUSTICE SOTOMAYOR:  Thank you.

22             CHIEF JUSTICE ROBERTS:  Justice Kagan?

23             Justice Gorsuch?

24             Justice Barrett?

25             Justice Jackson?

1            JUSTICE JACKSON:  If I can just ask

2    you, one thing you said was curious to me, that

3    aid and abet and solicitation have different

4    elements, and so what is then the implication of

5    the government saying, we look at the statute,

6    it says encourage or induce, you should read

7    that to mean aid or abet -- aid and abet or

8    solicitation, I guess that carries with it the

9    elements, but is your point that the person who

10   is being convicted or prosecuted under this

11   statute is not going to really know what it is

12   that the government needs to prove in order to

13   establish their liability?

14         MS. BHANDARI:  That is correct,

15   Justice Jackson.  The government hasn't

16   specifically delineated which one would apply in

17   any particular case.  It simply says both.  But

18   there are different elements to them.

19           That's why Congress has two separate

20   provisions, 18 U.S.C. 373, which is a

21   solicitation provision, and 18 U.S.C.,

22   subsection 2, which is an aiding-and-abetting

23   provision.

24           In this --

25         JUSTICE JACKSON:  This is not a First

91

     1    Amendment argument, but it still could -- it's

     2    something problematic, I think, perhaps about

     3    the government's intention of importing both of

     4    those concepts wordlessly, silently, into this

     5    statute.

     6            MS. BHANDARI:  It goes to

     7    congressional intent and what the text says.

     8            So Congress has at various times used

     9    induce along with solicit, as it did in 373.  At

    10    other times, it used induce along with aid and

    11    abet, as it did in subsection 2.

    12            Now the government doesn't explain

    13    here why Congress would not have used aiding and

    14    abetting and solicitation along with induce when

    15    it previously has used induce with those other

    16    verbs, and it also doesn't explain why Congress

    17    would have mashed up both concepts of

    18    solicitation and aiding and abetting in one

    19    statute when they have different elements.

    20            JUSTICE JACKSON:  Thank you.

    21            CHIEF JUSTICE ROBERTS:  Thank you,

    22    counsel.

    23            Rebuttal, Mr. Fletcher?

    24

    25

Official - Subject to Final Review

92

```
 1              REBUTTAL ARGUMENT OF BRIAN H. FLETCHER
 2                  ON BEHALF OF THE PETITIONER
 3              MR. FLETCHER:  Thank you, Mr. Chief
 4    Justice.
 5              I'd just like to say a word about what
 6    the statute means, a word about the
 7    criminal/civil distinction, and then close with
 8    a word or two about overbreadth.
 9              So, first of all, about what the
10    statute means.  I understand their position to
11    be that until 1952, this was a permissible
12    statute because it had other words in it, but in
13    1952, Congress turned it into a prohibition on
14    speech.  And I think that's a pretty
15    extraordinary thing for Congress to have done,
16    and the Court should demand a pretty
17    extraordinary showing before assuming that
18    Congress did it, and I just haven't heard such a
19    showing made.
20              What I've heard is Congress took out
21    some words.  And that's true, but the words it
22    left in had the same meaning and the words it
23    left in were the words this Court had just used
24    to summarize the previous statute.
25              I heard that it took out the mens rea
```

1    requirement in 1986.  But that's not quite

2    right.  It tailored the mens rea that the

3    offender has to know about the noncitizen's

4    status, knowing or in reckless disregard, but it

5    left in the words induce or encourage.  And

6    those are words that we think inherently carry a

7    mens rea requirement.

8           That's what Judge Hand said in Peoni

9    when he was interpreting the words of 18 U.S.C.

10   2, words like induce, aid, and abet carry an

11   implication of purpose.  We think they still

12   carry that implication here.

13          And, finally, I heard that there's no

14   other statute that looks like this.  And that's

15   just not quite right.  You know, the provision

16   of the National Labor Relations Act that was at

17   issue in the electrical workers case that we

18   cite at page 32 of our brief prohibited inducing

19   and encouraging a secondary boycott.  And this

20   Court upheld that against a constitutional

21   challenge.

22          The Mann Act, 18 U.S.C. 2422(a)

23   prohibits persuading, inducing, enticing or

24   coercing an individual to travel in interstate

25   commerce to engage in prostitution.  These

1    are -- this is not an unusual way to convey

2    these ideas.

3            Now, I'd like to turn to the civil or

4    criminal distinction, which I understand to be

5    their fallback argument, essentially to say that

6    even if you construe the statute the way we

7    construe it, they still think it's overbroad

8    because it covers soliciting or facilitating

9    civil violations.

10           As Justice Gorsuch said, I think

11   there's a real question whether even if they're

12   right that there's constitutional questions

13   about soliciting or facilitating civil conduct,

14   whether that meets the high threshold for

15   overbreadth.

16           But I think more fundamentally they're

17   not right about that.  This Court has said in

18   cases like Pittsburgh Press, and Gazzam, and

19   Williams that soliciting or inducing illegal

20   activities, even if they are only civilly

21   illegal, are not protected by the First

22   Amendment.

23           And I don't really hear them to be

24   contesting that.  Instead, they don't want a

25   special rule.  They want to say it's okay to

1      civilly regulate that kind of solicitation but
2      facilitation but you can't criminally punish it.
3              And that sort of mish-mash is just not
4      something that I know of any analog in this
5      Court's First Amendment jurisprudence, but what
6      this Court has always said before is that there
7      are certain categories of speech that are
8      unprotected.  And we think this is one of them.
9              Now, I take the point that it's
10     unusual to punish the speech or the conduct that
11     solicitates or facilitates underlying actively
12     more stiffly than the activity, but that's not a
13     First Amendment rule.  That's a legislative
14     judgment about culpability.
15             Usually we think people that who
16     solicit or facilitate unlawful activity share
17     the same culpability as the person who commits
18     that activity.  But not always, as Justice Alito
19     and I discussed, and not here.
20             And the judgment that Congress made
21     here is that, when someone solicits or
22     facilitates immigration violations, they are
23     deserving of more punishment than the
24     noncitizens who are already subject to removal.
25             We think that's a reasonable judgment.

1    And within the contours of that judgment, I

2    think it's important to emphasize that Congress

3    treated speech and conduct exactly the same.

4    Whether solicitation or facilitation takes the

5    form of speech or takes the form of conduct,

6    this statute treats it identically, and so I

7    don't think it has the effect of treating speech

8    worse than conduct that my colleague describes.

9              Finally, just to say a word about

10   overbreadth.  You know, we've talked about the

11   difficulties of overbreadth analysis, what an

12   extraordinary thing it is, how cautious the

13   Court has been about it.  And I think it's just

14   worth underscoring all of the different ways in

15   which Respondent and the Ninth Circuit are

16   trying to stretch overbreadth doctrine.

17             This Court has said that limiting

18   constructions are especially important in

19   overbreadth cases, but they ask you to bypass a

20   limiting construction.

21             The Court has said that we are in

22   realistic danger of prosecution, but they are

23   asking you to find the statute overbroad, even

24   though we don't have any history of either

25   prosecution or of chilling.

1           And the Court said in Hicks, that

2    rarely if ever will a statute be overbroad, when

3    it aims at conduct and not primarily at speech

4    or at inherently expressive conduct.  But this

5    is a statute that we know from 70 years aims

6    primarily at conduct, even if you thought it

7    also may sweep in some speech.

8           It would really be extraordinary, I

9    think, to say that the statute can't be used to

10   prosecute schemes, like Mr. Hansen's and all of

11   the other schemes that it has been used to

12   prosecute over the last 70 years.

13          We'd ask the Court to reverse.

14          CHIEF JUSTICE ROBERTS:  Thank you,

15   counsel.  The case is submitted.

16          (Whereupon, at 1:08 p.m., the case was

17   submitted.)

18

19

20

21

22

23

24

25

**1**

1:08 [1] 97:16
11:46 [2] 1:15 3:2
13.2 [1] 14:25
1324 [10] 4:10 5:2,9 50:24
71:25 72:4,8 77:17 89:2,
11
1324(a)(1)(A [1] 51:12
18 [8] 10:18 19:3 53:21 59:
20 90:20,21 93:9,22
1952 [9] 9:23 18:23 20:18
21:2 56:22 59:2 60:23 92:
11,13
1984 [1] 59:18
1986 [7] 21:4 56:24 59:19
61:7 79:19 88:9 93:1
1996 [1] 21:7

**2**

2 [6] 10:18 19:3 53:21 90:
22 91:11 93:10
20 [1] 75:4
2023 [1] 1:11
22-179 [1] 3:4
2422(a [1] 93:22
27 [1] 1:11

**3**

3 [1] 2:4
32 [1] 93:18
35 [1] 71:12
373 [3] 59:20 90:20 91:9

**5**

52 [2] 58:25 59:3
55 [1] 14:24
56 [2] 2:7 59:1

**7**

70 [2] 43:12 79:4 97:5,12

**8**

86 [1] 88:10

**9**

92 [1] 2:10

**A**

a.m [2] 1:15 3:2
abet [5] 90:3,7,7 91:11 93:
10
abets [3] 19:4,4 32:17
abetted [2] 51:20 52:2
abetting [70] 4:6 7:10,18 8:
4,9 9:1,8,18 10:13 13:16
14:9 15:4,11,13 16:22 17:
8,24 20:21 25:4 29:5 30:8,
14 34:18 35:1,9 37:11,18,
21 45:20 46:8,18,23 47:4,
11,19 50:8 51:2,5,8,10,11,
13,17,19,22 52:11,14,19
53:3,8,10,16 54:12 56:20
57:3,6 61:12 62:2 67:18
68:5 76:13 82:9,10,17,20
83:11,18 85:11 91:14,18
abetted [2] 74:19,20
afraid [1] 72:20

ability [3] 25:21 30:20 87:
12
able [2] 44:7 69:3
above-entitled [1] 1:13
absence [2] 72:23,24
absent [2] 27:19 79:19
absolute [1] 42:5
absolutely [2] 32:5 41:19
abstract [1] 13:7
absurd [1] 27:4
Abuelita [1] 35:19
accept [4] 8:4 61:19 78:17,
17
accepting [1] 32:2
accessory [2] 53:18,22
account [3] 47:2,14,20
accurate [1] 6:8
acknowledge [4] 4:24 14:
16 39:19,25
acquaintances [1] 13:8
across [1] 62:19
act [10] 37:12 66:21 67:17
82:11 83:17 85:14,16 86:2
93:16,22
acting [1] 31:22
action [4] 30:7 47:13,16 80:
23
actions [1] 37:2
active [1] 19:18
actively [1] 95:11
activists [1] 82:25
activities [9] 4:23 28:15,17
29:1 32:18 34:4 71:22 72:
1 94:20
activity [10] 4:6 29:3 32:14,
17 71:20 72:16 81:3 95:12,
16,18
actual [4] 70:17 71:4 88:13,
24
actually [13] 8:13 18:8,20
34:22 35:10 44:25 50:8 59:
12 70:6 75:20 79:13 80:16
83:23
actus [3] 16:25 17:4,7
add [1] 33:7
addition [2] 72:14,15
additionally [1] 14:2
adjudication [1] 44:24
administrative [1] 57:22
admitted [1] 87:11
admitting [1] 39:2
adopt [1] 58:5
adopted [1] 4:12
adopting [1] 9:25
advantage [1] 74:9
advice [3] 7:2 72:21 82:4
advise [1] 82:3
advising [2] 68:24 82:25
advocacy [4] 5:1 13:7 14:
10,11
affect [4] 46:3,12 67:24 68:
9
affected [2] 74:19,20

agree [4] 10:5,11 19:16 20:
2 47:25 75:16 83:15,18
agrees [2] 4:3 26:23
ahead [10] 10:7,8,9 21:10
22:14 28:5 38:1,2 61:15
62:6
aid [12] 15:3,5,6 28:10 53:
22,23,24 90:3,7,7 91:10 93:
10
aided [2] 51:20 52:2
aiding [72] 4:6 7:10,16 8:3,
8 9:1,7,17 10:13 13:16 14:
9 15:4,11,13 16:22 17:7,24
18:9 20:21 25:4 29:5 30:8,
13 34:18,25 35:1 37:11,17,
21 45:20 46:8,8,18,23 47:4,
11,19 50:7 51:2,4,8,10,11,
12,17,19,21 52:11,13,19
53:3,8,9,16 54:11 56:20
57:3,5 61:12 62:2 67:17
68:5 76:13 82:8,10,17,20
83:11,18 85:11 91:13,18
aiding-and-abetting [16]
5:4,7 10:19 12:3 13:2 14:
21,23 16:17 20:1 32:10 33:
18 37:7 55:24 84:14 85:25
90:22
aiding-or-abetting [4] 51:
1
aids [3] 19:4,4 32:17
aims [2] 97:3,5
airing [1] 39:23
AL [1] 81:25
aliens [1] 8:12
ALITO [24] 25:8 40:6,24 54:
1 61:15 62:6,10,18,21 63:9,
15 64:1,7,14,17,24 65:4,7,
16,25 66:7,10 84:19 95:18
Alito's [2] 67:14 84:23
allow [2] 26:2 47:19
allowed [1] 66:13
allowing [1] 23:14
almost [3] 6:15 43:9 69:13
alone [2] 22:23 57:2
already [5] 22:10 53:11 55:
22 82:2 95:24
alternative [2] 55:1 87:19
although [1] 27:1
Alvarez [1] 48:14
amending [1] 49:3
Amendment [49] 3:18 4:
19,21 5:9 18:7,24 23:1 25:
20 26:2,15 27:2 28:23 33:
11,14 34:2 36:6 37:23 39:
18 49:10 54:13 55:25 57:
20 58:2,13,19,22,25 59:19
60:5,16 62:12,24 63:4 64:
10 65:1 69:2,17 78:8 79:
16 81:3 86:16 87:16 88:3,
4,15 91:1 94:22 95:5,13
American [1] 70:14
amici [3] 45:6 77:18 81:25
amicus [5] 6:15 49:7 72:1,
6 81:25

among [1] 9:21
amount [3] 15:6 46:24 76:
12
analog [1] 95:4
analysis [13] 36:20 41:5 42:
11 58:17 66:4 67:25 68:10
69:9 70:5 77:15 87:2 88:
16 96:11
analyze [1] 12:3
analyzed [1] 12:2
Another [8] 13:25 14:6,14
40:23 41:1 47:10 51:3 78:
7
answer [4] 31:20 45:22 46:
13 47:5
answering [1] 84:23
answers [1] 18:22
anybody [2] 11:23 74:1
anyone's [1] 60:23
anytime [1] 62:25
anyway [1] 8:12
appear [2] 10:24 21:15
APPEARANCES [1] 1:17
applicable [1] 22:25
application [5] 13 49:5
50:11,18 51:25 52:13 78:
14
applications [7] 5:8 20:24
24:22,24 42:8,16,18
applied [10] 5:18 6:1 12:6
41:2 44:18 58:17,18,21 65:
11 69:14
applies [1] 12:14
apply [12] 12:25 13:3,15 36:
16 37:18 43:10 58:8 64:21
69:12 70:11 82:18 90:16
approach [2] 59:23 69:22
appropriate [3] 11:7 27:24
40:3
area [3] 9:12 18:22,25
aren't [3] 7:8 27:6 82:21
arguable [1] 12:15
argue [3] 39:4 76:1 87:4
argued [2] 3:24 58:9
argues [1] 39:16
argument [19] 1:14 2:2,5,8
3:4,7 16:18 43:15,15 54:
10,15 55:4 56:11 62:4 80:
13 87:6 91:1 92:1 94:5
arguments [3] 39:23 55:1
78:21
arise [2] 5:3 56:5
around [1] 44:8
arson [2] 78:11 86:9
arsonist [1] 86:10
art [2] 4:5 7:19
as-applied [4] 5:11 56:6
69:8 79:9
aside [1] 68:14
asks [4] 19:7 56:18,23 89:
11
aspect [1] 58:19
aspects [2] 58:22 89:17
assert [1] 43:6

asserting [2] 74:12,16
assist [7] 9:22 56:24 59:13
60:9,14,24 61:4
assistance [3] 16:6 30:4,
11
assisting [5] 46:8 51:22
60:20,22 67:19
assistive [1] 26:20
associate [6] 15:15 17:1,
12,18 30:6 47:12
associated [2] 10:13 15:7
assume [5] 40:9,13 61:13,
17,21
assuming [3] 30:2 47:7 92:
17
assumption [3] 40:21,23
41:1
assumptions [6] 40:11,12
41:14,16,21 42:20
asunder [1] 36:6
attempt [1] 70:16
attempted [1] 87:4
attempts [1] 26:12
attribute [1] 21:1
available [2] 72:4 79:10
avoidance [2] 4:13 13:3
avoiding [1] 13:4
aware [5] 5:16 32:14 48:12,
21 58:20
away [1] 60:21
awkward [4] 56:1 73:24 74:
11 75:23

**B**

back [14] 6:7 9:9 11:12 13:
4 18:5 19:20 38:10 40:1,
12 43:20 48:19 49:3 55:2
77:25
backdrop [1] 49:4
ban [1] 20:22
bandied [1] 12:7
bank [12] 17:9 45:24 46:6,9
52:17,25 53:2,3,3,10,11,12
bar [1] 29:5
BARRETT [17] 21:9,11 22:
12,15,20,23 23:10 47:23,24
49:6,21,25 50:12 61:13,16
62:7 72:13 89:24
based [2] 41:21 65:2
basic [1] 19:3
basically [2] 20:2 43:12
basis [1] 5:10
battered [1] 66:23
Beauty [1] 70:15
become [1] 88:18
behalf [8] 1:19,21 2:4,7,10
3:8 56:12 92:2
behavior [4] 73:8,9 78:13
79:25
believe [1] 34:16
below [2] 4:7 39:4
benefit [3] 39:21 78:24
best [1] 53:19
between [8] 4:25 15:18 21:

14 **30:**1 59:9 60:9 64:14
82:8

**beyond** [3] **26:**16 62:23 89:
17

**BHANDARI** [58] 1:21 2:6
**56:**10,11,13 58:15,20 59:2,
11 **60:**12 61:25 62:9,17,21
**63:**15 64:5,8,23 65:6,8,20
**66:**3,9,14 67:8,12 68:11,17
**69:**21 71:1,21 72:25 73:22
**74:**15,21 76:1,23 77:5,12
**79:**17 81:4,10,14,21 83:8,
15 **85:**5,9,20 86:3,11,23 87:
14 **88:**12 89:6,10 90:14 91:
6

**bit** [4] 15:14 18:18 44:4 84:
22

**Black** [1] 71:10

**blameworthy** [3] **25:**14,18
27:14

**board** [1] 62:19

**book** [1] 79:3

**books** [10] 16:5 43:12 45:
13 71:8,12 72:22 76:8 79:
3,19 88:23

**border** [3] 32:23 51:13 89:
7

**borne** [1] 42:10

**borrow** [1] 85:11

**both** [13] 4:17 8:17 9:21 28:
25 37:18 41:19 83:10,13,
15 85:12 90:17 91:3,17

**boycott** [1] 93:19

**BRIAN** [5] 1:18 2:3,9 3:7
92:1

**bridge** [2] 55:15,22

**brief** [7] 15:1 49:18 55:17
72:1,6 81:25 93:18

**briefing** [1] 39:8

**briefs** [6] 15:5 45:6 49:7

**bring** [3] 7:19 19:8 45:21

**bringing** [2] 23:4 51:13

**broad** [8] 20:22 38:9 39:11
45:9 48:25 76:5,7 77:3

**broadened** [1] 60:17

**broader** [8] 38:5,12 46:5
54:22 59:14 60:11,13 61:5

**broadest** [1] 3:22

**broadly** [1] 4:1

**brought** [3] 54:1 77:11,13

**builds** [1] 66:4

**bunch** [2] 29:11 31:13

**burden** [2] 35:17,19

**burdening** [1] 64:24

**burned** [1] 78:10

**business** [1] 17:11

**buy** [1] 63:21

**bypass** [1] 96:19

---

**C**

**call** [2] 7:10 50:10

**called** [1] 39:8

**came** [2] 1:13 39:7

**candidly** [3] 14:16 26:7 48:

---

12

**cannot** [2] 57:14 64:3

**canon** [1] 4:13

**canonical** [1] 30:8

**capable** [1] 46:22

**capture** [1] 9:16

**care** [2] 12:15 14:6,13

**careful** [1] 37:4

**carefully** [1] 43:8

**carjacking** [1] 45:24

**carries** [1] 90:8

**carry** [5] 4:9 24:25 93:6,10,
12

**Case** [42] 3:4 5:22 6:5,9,11,
14,16 10:1 15:12 27:15 38:
7 39:5,6 40:1 43:10 44:19
49:19 50:4,10 52:22 54:5,
5 55:19 57:1 63:23 65:13
**66:**9 73:24 74:15 75:25 76:
3,18 77:7,8 79:21 81:23
82:2 87:4 90:17 93:17 97:
15,16

**case-by-case** [1] 87:1

**cases** [28] 11:19,20,25 12:
2 13:19 14:6,14,15 16:17
**26:**10 31:1 32:4,9,10,15
38:6 39:1 42:14 48:13,14
67:2 68:3 69:8,16 70:22
84:25 94:18 96:19

**cash** [1] 12:6

**cashing** [1] 14:22

**categorically** [1] 57:12 62:
23 64:9 86:15,19,20 88:2

**categories** [4] 34:1 57:17
68:3 95:7

**category** [6] 14:6 19:9 55:
20 57:7 63:6 68:9

**caused** [1] 34:22

**cautious** [1] 96:12

**century** [1] 3:11

**cert** [1] 55:5

**certain** [8] 3:12 19:19 25:
14 33:10 63:18 72:8 86:24
95:7

**certainly** [5] 7:5 25:12 48:
21 69:6 89:19

**certify** [2] 72:7 89:11

**challenge** [19] 11:9 22:21
23:2,4,13,15 48:3 50:3 61:
23 69:8,17 70:7 71:15 73:
17 77:19 78:23 79:10 81:
24 93:21

**challenges** [5] 5:11 33:12
48:5,8 49:10

**change** [1] 9:24

**changed** [2] 21:7 62:8

**charge** [2] 38:12 72:5

**charged** [2] 80:15,21

**charitable** [2] 28:7 72:17

**charities** [1] 28:16

**charity** [1] 30:11

**CHIEF** [24] 3:3,9 10:10 31:
24 32:3,6 37:24 38:2 40:4
45:15 47:22 50:13 56:8,13

---

58:24 59:3 60:7 77:9 78:
25 84:16 89:22 91:21 92:3
97:14

**child** [3] 63:24 70:18 74:7

**chill** [10] 28:9 33:5 42:24
43:11 45:1 71:23 73:7 80:
6 89:13,18

**chilled** [6] 29:1 72:16 73:5
74:1 80:11 81:18

**chilling** [8] 43:2 72:11,24
73:1 75:23 76:6 88:22 96:
25

**choice** [2] 59:15 71:19 77:
19

**choices** [2] 71:17 88:20

**chose** [1] 71:20

**chosen** [2] 37:3 88:13

**Ciminelli** [1] 38:7

**Circuit** [14] 3:19 5:18 11:3,
13 20:17 39:8 40:2,2 54:3,
17,18,21 77:8 96:15

**Circuit's** [2] 45:9 54:25

**circumstance** [3] 27:11,
17 70:23

**circumstances** [14] 13:1,
5 14:1 26:4 27:19 36:17
37:14 43:19 50:7 59:25 62:
20 67:22 79:9 85:6

**cite** [5] 14:25 49:18 50:4 55:
16 93:18

**cited** [1] 57:1

**cites** [1] 9:19

**cities** [1] 89:11

**citizen** [2] 8:22 67:1

**citizenship** [1] 3:16

**City** [2] 72:6 89:14

**civil** [28] 4:17 27:18,20,21
30:17 40:25 54:2,13,18 55:
13,19 57:8 61:22 65:1 66:
17 67:18 68:4,20 85:1,4,19,
22 86:14,25 87:6 94:3,9,13

**civil/criminal** [2] 54:6 67:2

**civilly** [3] 26:13 94:20 95:1

**claim** [2] 67:9 68:21

**clarify** [1] 36:13

**clarity** [1] 36:12

**class** [1] 23:25

**classic** [1] 15:12

**clause** [2] 51:14 54:11

**clauses** [2] 51:12,16

**clear** [5] 63:17 74:17 82:7
84:8 86:12

**clearly** [1] 82:23

**client** [2] 6:23 78:24

**clients** [1] 82:5

**close** [3] 83:6 89:14 92:7

**closely** [1] 82:2

**closest** [1] 14:24

**Coalition** [5] 69:23 70:12
71:3,9 73:2

**coerce** [1] 49:24

**coercing** [1] 93:24

**colleague** [1] 96:8

**Collins** [1] 21:23

---

**combine** [1] 23:5

**come** [14] 6:7 7:25 18:4 26:
6,18,22 37:12 38:10 40:12
48:13 73:17 83:21,23 84:3

**comes** [11] 10:23 17:22,22,
24 34:15 43:17 49:16 52:
14 53:11 73:24 87:9

**coming** [7] 22:5 39:2 49:3
81:13,17 83:11 89:14

**commands** [1] 19:5

**commence** [1] 4:22 34:4
55:21

**commendable** [1] 79:25

**commentators** [1] 9:13

**commerce** [1] 93:25

**commit** [5] 15:12 33:21 37:
15 65:5,17

**commitment** [1] 17:15

**commits** [1] 95:17

**committed** [1] 52:17

**committee** [2] 60:2 72:2

**common** [2] 4:18 29:22

**communications** [3] 12:
18 40:22 41:8

**community** [3] 31:14 67:3
82:24

**compelling** [3] 64:11 67:9
87:17

**complete** [1] 82:11

**completed** [2] 86:2,8

**completion** [1] 17:18

**compliance** [2] 72:7 89:12

**complicated** [1] 55:9

**component** [1] 58:13

**concede** [2] 61:19,22

**conceded** [1] 16:24

**concedes** [2] 56:16 75:13

**conceding** [1] 38:8

**conceive** [1] 26:19

**concept** [4] 19:3,8 46:17
82:19

**conception** [1] 37:20

**concepts** [6] 9:17 18:9 85:
11,13 91:4,17

**concern** [9] 4:15 26:23 28:
14,24 45:11 46:13,15 47:1
81:6

**concerned** [2] 43:2 73:6

**concerns** [8] 39:10 45:5
46:18,25 49:13 60:6 69:2
81:5

**concise** [1] 20:12

**conclude** [1] 37:22

**conduct** [38] 3:17 14:12 25:
10,14,15,16,22,23 26:3,21,
25 27:13,23 28:22 39:17
40:25 43:5 54:12 55:11,13
57:13,15 62:14 76:11 77:3
78:2,5 83:22 86:19 87:19
94:13 95:10 96:3,5,8 97:3,
4,6

**confirm** [1] 4:8

**conflate** [1] 82:9

**conform** [1] 73:8

---

**Congress** [56] 3:11 9:6,6,9,
22 18:8,16,20 19:12,23 20:
11,21 21:1,3 22:7 25:21
**26:**2 27:23 33:1 49:3 51:2
**56:**22,24 57:1,19 59:12,12,
16,20,22 60:16,21 61:1,4,9
**65:**21 66:18,20 68:25 73:
12,13 84:9,10,12,25 89:8
**90:**19 91:8,13,16 92:13,15,
18,20 95:20 96:2

**Congress's** [3] 19:18 56:
21 61:18

**congressional** [1] 91:7

**connote** [1] 7:16

**connotes** [1] 35:9

**conscious** [1] 19:18

**consequences** [1] 6:24

**consideration** [1] 55:7

**considered** [1] 52:19

**consistent** [3] 23:15 38:22
39:1

**consistently** [2] 57:16 61:
10

**constellation** [1] 39:10

**constitute** [2] 47:16 83:25

**constitutional** [10] 3:25 4:
13 42:18 44:18 50:18 51:
24 52:12 88:19 93:20 94:
12

**constitutionally** [4] 69:12,
14 73:15 74:24

**construction** [6] 28:8 45:
19 58:6,8 61:20 96:20

**constructions** [1] 96:18

**construe** [4] 57:4 69:25 94:
6,7

**construes** [1] 70:10

**content** [1] 65:2

**contesting** [1] 94:24

**context** [7] 4:8,9 19:23 20:
15 39:6 47:17 58:21

**contexts** [1] 37:19

**continue** [4] 22:1,9 35:20
38:15

**contours** [1] 96:1

**contract** [2] 60:21,22

**control** [1] 58:10

**conversations** [1] 29:23

**convey** [1] 94:1

**convicted** [2] 75:3 76:16
90:10

**convictions** [4] 58:6 76:4,
9 79:21

**core** [3] 42:17 50:18 51:24

**Correct** [21] 7:23 10:15 11:
17 22:19 24:10,13,15 25:4
54:20 62:17 64:23 66:3 76:
23 77:5 81:4 85:19,20 86:
2,3 89:10 90:14

**corroborative** [1] 60:1

**costs** [1] 42:7

**counsel** [7] 56:9 58:24 61:
13 67:7 84:17 91:22 97:15

**counseling** [1] 32:13

**count** [1] 37:16
**country** [14] 27:18 28:18 30:3,12 31:23 40:19 41:9 51:15,23 52:3 61:6 74:3 83:2 84:1
**counts** [1] 75:3
**couple** [6] 26:6 28:19 30:23 33:24 43:25 46:15
**course** [4] 11:10 63:2 87:18 89:13
**COURT** [69] 1:1,14 3:10 4:20 5:23 6:5,17 8:5 9:13,25 10:3,21 15:2,5 20:9,13,25 26:8,9 36:16,21,22 41:16 42:6,15,22 55:5,6,15 56:14,18,23 57:6,16 58:4,17 63:17 65:11 69:22 70:4,13 71:4,6 72:25 73:2,10 76:25 77:8 78:4,11 79:6 80:5 81:8,17,18 82:23 84:11 85:21 88:15 92:16,23 93:20 94:17 95:6 96:13,17,21 97:1,13
**Court's** [6] 5:15 12:10 42:13 48:13 58:11 95:5
**courts** [4] 9:16 19:1 23:18 50:5
**cover** [3] 14:10 61:11 63:1
**covered** [7] 16:10,14,16 29:3,9 51:17,22
**covering** [2] 51:2,6
**covers** [3] 53:21 77:3 94:8
**craft** [1] 73:12
**create** [2] 36:11 57:6
**crime** [22] 3:12 25:11 26:4 33:21 35:4,5,7 37:15 52:18 53:23,23 59:21 64:6,25 65:9 85:17,18,22 86:5,8 87:22 88:1
**crimes** [4] 57:10 62:1,4 85:25
**criminal** [15] 4:3,17 25:23 27:6 30:17 55:11 57:7 61:21 62:15 81:23 85:14,14,21 86:13 94:4
**criminal/civil** [1] 92:7
**criminalization** [1] 62:10
**criminalize** [9] 25:21 37:2,8 57:21 67:17 69:3 74:9 84:25 85:4
**criminalized** [1] 64:4
**criminalizes** [2] 33:15 37:4
**criminalizing** [7] 33:9 63:12 64:19 66:6 68:22 86:24 87:20
**criminally** [1] 95:2
**critical** [1] 84:7
**criticize** [2] 73:13,20
**cross** [1] 78:10
**crossed** [2] 55:15,22
**culpability** [2] 95:14,17
**curious** [1] 90:2
**current** [1] 79:18

**currently** [1] 88:11
**curtail** [1] 82:4
**Customs** [3] 32:20 89:5,7

**D**

**D.C** [2] 1:10,19
**damage** [1] 78:12
**danger** [2] 71:23 96:22
**data** [1] 48:10
**day** [4] 12:9,19 41:8 70:2
**day-to-day** [1] 28:16
**dead** [1] 72:4
**deal** [1] 11:4
**dealing** [1] 46:22
**debating** [1] 45:8
**decades** [2] 21:3 45:12
**deceived** [1] 75:8
**decide** [4] 27:12 40:2 54:3 56:3
**decided** [3] 31:16 87:22,25
**deciding** [2] 47:3,15
**decision** [2] 43:2 44:6
**decline** [1] 54:24
**defendant** [7] 7:25 8:7 50:2 74:22 77:1 78:2,9
**defendant's** [1] 78:13
**defense** [1] 79:16
**define** [6] 8:25 9:4,5 24:12,14 36:16
**defined** [1] 14:20
**defining** [1] 85:18
**definitely** [1] 28:22
**definition** [1] 85:12
**definitively** [1] 48:17
**defrauding** [1] 74:4
**deliberate** [1] 59:15
**delineated** [1] 90:16
**demand** [3] 15:13 45:1 92:16
**demands** [1] 47:11
**demonstrated** [2] 72:24 73:1
**demonstration** [1] 42:24
**deny** [1] 57:25
**depart** [2] 43:4 44:23
**Department** [2] 1:19 32:20
**departure** [1] 44:16
**depend** [1] 71:16
**depending** [1] 88:19
**deportation** [1] 27:21
**Deputy** [1] 1:18
**described** [3] 12:12 20:10 55:18
**describes** [1] 96:8
**describing** [1] 31:2
**description** [1] 22:3
**deserving** [2] 28:2 95:23
**deter** [1] 28:14
**determination** [1] 27:24
**determine** [1] 55:10
**difference** [5] 21:14,21 30:1 64:13 86:21
**different** [25] 9:14 12:7 19:2,6 21:13,15,18 26:21 29:

11,13,14 30:23 36:17 39:3 43:16,24 45:23 46:11 51:7 59:22 82:21 90:3,18 91:19 96:14
**difficulties** [1] 96:11
**difficulty** [1] 50:6
**directed** [3] 65:21 85:22 86:14
**disabled** [1] 65:18
**disagree** [7] 9:11 24:17 66:11 75:1 77:10,10,12
**discriminatory** [1] 78:14
**discussed** [1] 95:19
**discussing** [1] 79:2
**dismissing** [1] 50:6
**dispute** [2] 7:1 14 68:9
**disregard** [3] 14:4 61:3 93:4
**dissent** [1] 21:24
**dissenting** [1] 4:7
**distinct** [1] 55:6
**distinction** [7] 54:9 59:8 60:8 68:2 82:8 92:7 94:4
**district** [5] 6:5,13,17 77:7 81:18
**disturbed** [1] 75:4
**division** [1] 50:25
**doctor** [1] 11:21
**doctors** [1] 40:17
**doctrine** [3] 3:19 6:3 47:11 73:6 76:2 81:6 96:16
**doing** [4] 33:22 38:13 52:6 80:16
**domestic** [1] 84:2
**done** [7] 26:9 48:2 77:17 81:1 85:15,24 92:15
**door** [1] 53:12
**down** [3] 45:11 50:22 56:1
**dozen** [1] 9:20
**draconian** [1] 27:5
**draft** [3] 13:4 46:20 84:13
**drafted** [1] 59:20
**dramatically** [1] 68:7
**draw** [4] 4:25 13:6,11 84:8 85:8
**drawing** [2] 15:18,25
**drug** [1] 63:21
**drugs** [1] 63:21
**Dubin** [1] 38:7
**during** [2] 45:12 53:22

**E**

**each** [2] 9:20 82:3
**earlier** [5] 10:1 20:8,9 32:8 48:18
**earning** [1] 7:1
**easier** [1] 70:24
**economy** [1] 20:8
**edge** [1] 50:10
**editorial** [1] 14:11
**effect** [6] 22:16 72:12,24 73:1 76:6 96:7
**effectively** [1] 79:7
**effectuates** [1] 63:19

**effort** [1] 19:18
**either** [6] 42:19,21 50:6 79:12 81:12 96:24
**electrical** [1] 93:17
**element** [1] 34:12
**elements** [12] 22:17 31:18 74:23 77:6 79:22 80:2 82:21,23 83:12,13 90:4,9,18 91:19
**eleven** [1] 71:7
**eliminate** [1] 4:14
**Elonis** [1] 9:3
**emphasize** [3] 56:2 82:6 96:2
**emphasized** [2] 5:23 42:7
**empirical** [2] 48:24 70:5
**encompass** [1] 40:15
**encourage** [18] 3:12,21 4:4 8:25 9:20 11:15 17:2,3 40:10 49:23 57:2 59:14 60:10,12 61:5 82:16 90:6 93:5
**encouraged** [2] 6:6 65:17 75:10
**encouragement** [5] 60:3 65:19 68:14 75:6 89:15
**encourages** [2] 20:11 21:5
**encouraging** [11] 10:4 21:24 22:9 26:24 38:15 64:2,17 65:4,12,22 93:19
**end** [4] 12:9 14:22 16:10 87:21
**enforce** [1] 6:2
**engage** [5] 23:14 26:3,11 36:19 63:10,13 64:3,18 66:19 70:1,2 76:10 93:25
**engaged** [8] 32:14,17 70:6 73:15,18 75:9 80:7,22
**engages** [2] 25:16 78:5
**engaging** [3] 25:15 81:2 83:22
**enhanced** [3] 23:24 24:2,21
**enhancement** [5] 22:16,18,24 23:6 24:25
**enough** [7] 15:6,8 29:24 60:3 69:19,20 76:10
**enter** [4] 34:8 50:1 51:23 52:3
**enticing** [1] 93:23
**entirely** [1] 6:15
**entities** [1] 32:21
**entitled** [2] 67:4 74:22
**entry** [3] 60:20,20,23
**ESHA** [3] 1:21 2:6 56:11
**especially** [5] 39:15 49:13 50:23 60:4 96:18
**ESQ** [2] 2:3,6,9
**ESQUIRE** [1] 1:21
**essence** [1] 43:6
**essentially** [3] 43:17 77:22 94:5
**establish** [1] 90:13

**evasion** [1] 46:20
**even** [33] 6:16 23:21 24:16,17 26:13 28:7 31:21 35:12 40:14 42:2,20 50:9 57:4 58:4 66:15 67:6 68:3,3,21 69:24 71:21 72:5 73:19 76:12 78:18 87:3 89:14,20 94:6,11,20 96:23 97:6
**ever-changing** [1] 72:10
**everybody** [1] 88:8
**everyday** [1] 28:15
**Everyone** [3] 4:3 26:23 87:23
**everything** [1] 33:13
**evidence** [2] 18:6 23:3
**evidenced** [1] 61:10
**exact** [2] 15:22 18:10
**Exactly** [5] 5:3 7:8 15:19 19:7 23:20 48:20 96:3
**example** [13] 25:24 49:18 50:24 63:20 66:20 68:23 73:12 74:14 80:17,18 84:2 88:6,25
**examples** [7] 29:12 32:4 40:16 50:4 67:16 70:17 88:7
**exception** [2] 57:9 63:6
**exclude** [1] 19:19
**excluded** [1] 18:20
**exercise** [1] 36:19
**exist** [2] 39:12 69:17
**existing** [1] 46:1
**expand** [1] 57:17
**expanded** [1] 61:6
**expansion** [3] 58:1 61:3,8
**experience** [1] 39:22
**expiring** [1] 8:18
**explain** [4] 7:6 29:8 91:12,16
**explained** [4] 4:7 82:16,22
**explicit** [1] 10:20
**explicitly** [1] 41:17
**exposed** [1] 31:17
**expresses** [1] 66:12
**expressive** [1] 97:4
**extension** [1] 23:14
**extent** [7] 26:8 44:1 51:3 54:10 55:10 60:10 77:20
**extraordinary** [7] 20:19 44:23 79:5 92:15,17 96:12 97:8

**F**

**facial** [3] 71:15,15 77:19
**facially** [3] 3:20 5:12 88:17
**facilitate** [3] 15:8,16 95:16
**facilitates** [3] 30:20 95:11,22
**facilitating** [6] 4:17 8:6 28:2 52:3 94:8,13
**facilitation** [3] 47:17 95:2 96:4
**fact** [17] 9:22,25 19:11 36:18 40:15,25 53:10,19,22

Official - Subject to Final Review

**70:**5,9,13 **71:**24 **73:**3,4 **76:** 17 **85:**24
**facts** [2] **74:**23 **75:**21
**factual** [2] **36:**17 **81:**17
**fails** [1] **23:**1
**fair** [4] **44:**25 **46:**14,24
**fairness** [1] **38:**24
**fall** [2] **70:**15 **87:**13
**fallback** [1] **94:**5
**false** [1] **75:**9
**familiar** [1] **28:**12
**family** [5] **13:**9 **14:**18 **35:**15, 18 **41:**11
**family's** [1] **78:**10
**far** [1] **37:**7
**fear** [1] **89:**16
**feature** [1] **25:**9
**federal** [1] **89:**12
**fee** [1] **87:**25
**felony** [4] **59:**25 **73:**13 **83:**4 **84:**8
**fight** [1] **12:**23
**fighting** [2] **33:**12 **44:**3
**figure** [2] **50:**16 **80:**10
**figuring** [1] **11:**10
**file** [1] **88:**13
**filing** [1] **88:**23
**final** [1] **61:**7
**finally** [4] **58:**4 **72:**9 **93:**13 **96:**9
**financial** [1] **23:**7
**find** [6] **6:**21 **14:**24 **22:**17 **73:**19 **85:**10 **96:**23
**finding** [1] **81:**17
**fine** [2] **56:**6 **80:**20
**finished** [1] **67:**11
**First** [58] **3:**18 **4:**19,21 **5:**9 **16:**8 **22:**1 **23:**1 **24:**2,6,8,12, 14 **25:**20 **26:**2,7,11 **27:**2 **28:**23 **33:**11,14,22 **34:**2 **36:** 6 **37:**23 **39:**18 **40:**14,21 **49:** 10 **54:**13 **55:**25 **57:**20 **58:**2, 13,19,22 **60:**5 **62:**12,23 **63:** 2,3 **64:**10 **65:**10 **69:**2,16 **71:**2 **78:**8 **79:**15 **81:**2 **86:** 16 **87:**16 **88:**3,4,15 **90:**25 **92:**9 **94:**21 **95:**5,13
**fits** [1] **63:**5
**five** [7] **10:**1 **20:**9 **33:**16 **39:** 22 **71:**10 **83:**4 **89:**20
**FLETCHER** [106] **1:**18 **2:**3, 9 **3:**6,7,9 **5:**20 **6:**10,13,19 **7:**3,13,18,23 **8:**2,13,17,21 **9:**11 **10:**16 **11:**6,14 **12:**1, 23 **13:**13,22,25 **16:**1,12,15, 21 **17:**6,20,23 **18:**2,12,15, 21 **19:**21 **20:**7 **21:**9,19 **22:** 19 **23:**9,11 **24:**4,10,15 **25:**5, 8 **26:**5 **28:**11,19 **29:**10,19,25 **30:**22 **31:**8,11,19 **32:**1,5 **33:**24 **34:**14,18,24 **35:**8,25 **36:**7,10,14,25 **37:**6,13 **38:** 17,23 **39:**5,25 **40:**8 **41:**15 **42:**4 **43:**25 **44:**13 **46:**14 **47:**

---

24 **48:**11 **49:**16,22 **50:**1 **51:** 7,10,21 **52:**7,9,24 **53:**15,18, 21 **54:**6,20 **55:**14 **70:**19 **77:** 10 **91:**23 **92:**1,3
**FLETHCER** [1] **42:**1
**floated** [1] **21:**23
**floating** [1] **19:**14
**focus** [1] **6:**15
**focused** [2] **20:**20 **58:**25
**focusing** [1] **21:**12
**follow** [3] **61:**17 **67:**14 **72:** 14
**food** [13] **28:**10 **29:**17 **30:**19 **31:**3,4,18 **46:**6 **53:**6 **72:**19 **80:**20 **83:**22,23,24
**Footnote** [1] **14:**24
**Ford** [1] **49:**19
**forgetting** [1] **88:**8
**form** [5] **15:**3 **43:**12 **79:**18 **96:**5,5
**former** [1] **60:**11
**formulation** [2] **20:**12 **30:**8
**forth** [1] **63:**7
**found** [3] **6:**20 **10:**22 **24:**25
**four** [1] **39:**1
**frankly** [1] **50:**5
**fraud** [2] **45:**25 **75:**3
**fraudulent** [1] **3:**16
**free** [7] **57:**19 **69:**22 **70:**12 **71:**3,9 **73:**2 **84:**13
**Freedom** [1] **72:**2
**frequently** [1] **70:**3
**friend** [3] **11:**22 **13:**21 **15:** 19
**friends** [2] **13:**8 **40:**17
**front** [1] **18:**11
**full** [4] **14:**1 **17:**25 **18:**4 **77:** 20
**fully** [1] **44:**10
**fundamentally** [1] **94:**16
**funding** [3] **72:**8 **89:**13,16
**further** [5] **35:**10 **40:**5,6,11 **84:**19
**future** [3] **5:**10 **44:**8 **80:**6

---

**G**

**gain** [1] **23:**7
**gave** [2] **29:**16 **84:**22
**Gazzam** [2] **55:**15 **94:**18
**gee** [1] **16:**20
**General** [7] **1:**18 **14:**10,11 **18:**23,25 **19:**8 **23:**22 **24:**18, 22,24 **59:**21
**generalized** [1] **88:**6
**generally** [3] **37:**10,13 **86:**1
**gets** [1] **26:**24
**getting** [1] **83:**3
**Giboney** [1] **55:**16
**give** [8] **17:**9 **18:**21 **31:**19 **37:**16 **38:**20 **72:**21 **82:**4 **85:** 3
**given** [2] **10:**1 **38:**6
**gives** [1] **73:**11
**giving** [3] **3:**21 **7:**2 **13:**12

---

**30:**19 **31:**18 **33:**20 **72:**19 **80:**19 **83:**23
**GORSUCH** [24] **16:**21 **17:** 14,21,25 **45:**16 **67:**7,10,13 **68:**16 **69:**6 **73:**21,23 **74:**18 **75:**12 **78:**1,16 **79:**17 **81:**9, 11,16,21 **84:**24 **89:**23 **94:** 10
**got** [1] **45:**6
**gotten** [1] **78:**12
**govern** [1] **57:**23
**government** [62] **6:**22 **7:**4 **34:**21 **36:**22 **38:**8,15 **39:**14 **43:**16 **56:**16,23,25 **57:**13 **58:**9 **61:**23 **62:**3 **64:**11 **66:** 5,10 **67:**9 **68:**5,21 **69:**2 **70:** 10 **71:**24 **72:**3 **73:**17 **74:**22 **75:**7,13 **76:**4,8,11,14,19,21, 24 **77:**2,6,15,22 **78:**7 **79:**11, 20 **80:**1,15,20 **81:**1 **82:**7,12, 22 **83:**10,16 **84:**12 **87:**3,17 **88:**13,22 **89:**19 **90:**5,12,15 **91:**12
**government's** [12] **44:**20 **57:**25 **58:**5,8 **61:**20 **71:**16 **72:**10 **77:**19 **78:**19 **82:**15 **88:**19 **91:**3
**grandchildren** [1] **35:**21
**grandmother** [3] **35:**15,16, 24
**grant** [1] **79:**6
**granted** [2] **30:**2 **55:**5
**granting** [1] **42:**20
**great** [1] **86:**8
**greater** [1] **33:**19
**guess** [6] **13:**24 **19:**17 **20:** 14 **42:**4,6 **43:**9 **44:**3,14 **47:** 1,18 **50:**15 **54:**6 **55:**3 **75:** 22 **80:**11 **90:**8
**guessing** [1] **45:**3
**gun** [1] **52:**25

---

**H**

**Hand** [3] **10:**21 **80:**14 **93:**8
**handful** [1] **70:**22
**HANSEN** [9] **1:**6 **3:**5,13 **8:** 19 **54:**7 **56:**15 **73:**25 **74:**16, 21
**Hansen's** [5] **5:**14 **52:**7 **58:** 6 **79:**25 **97:**10
**happen** [5] **33:**1 **45:**4 **46:**24 **74:**25 **81:**22
**happened** [5] **27:**7 **76:**18 **81:**19 **89:**2,4
**happens** [6] **11:**19,24 **26:** 25 **29:**23 **32:**16 **53:**7
**harboring** [2] **51:**14 **53:**14
**hard** [4] **4:**25 **14:**20 **16:**9,15 **30:**10 **36:**1 **55:**24 **80:**25 **85:** 11
**hardest** [1] **14:**17
**harshly** [1] **57:**14 **86:**6,10
**hear** [3] **3:**3 **19:**19 **94:**23
**heard** [6] **5:**24 **67:**15 **92:**18,

---

20,25 **93:**13
**heightened** [1] **88:**4
**HELAMAN** [1] **1:**6
**held** [2] **4:**20 **54:**21
**help** [3] **29:**21 **47:**7 **83:**8
**helpers** [1] **52:**7
**helping** [3] **52:**6 **80:**19,19
**helps** [1] **46:**25
**Henderson** [2] **6:**11 **88:**7
**Hicks** [1] **97:**1
**high** [2] **29:**4 **94:**14
**highly** [1] **75:**14
**historical** [2] **57:**9 **63:**6
**history** [8] **4:**8 **18:**7 **19:**23 **21:**3 **45:**4 **70:**25 **88:**10 **96:** 24
**hits** [1] **84:**8
**hold** [2] **35:**11 **84:**11
**holding** [1] **71:**11
**Honor** [1] **17:**24
**housekeeper** [1] **6:**6
**however** [1] **88:**21
**Hoy** [2] **10:**1 **20:**9
**huge** [1] **41:**7
**hunting** [2] **70:**6 **73:**4
**hypothesized** [2] **5:**19 **6:** 23
**hypothetical** [4] **62:**7 **72:** 19 **74:**13 **83:**21
**hypotheticals** [9] **12:**7 **14:** 17 **27:**4 **28:**13 **45:**7 **48:**5 **79:**2,14 **81:**13

---

**I**

**idea** [5] **18:**9,10 **34:**15 **36:** 25 **55:**23
**ideas** [1] **94:**2
**identically** [1] **96:**6
**identify** [1] **50:**20
**ii** [1] **51:**16
**iii** [1] **51:**16
**illegal** [10] **4:**22 **26:**12 **34:**4, 7 **35:**16 **55:**21 **63:**19,21 **94:** 19,21
**illegally** [2] **3:**15 **34:**8
**illustrates** [1] **27:**15
**imagine** [8] **27:**1 **32:**7,11 **36:**18 **41:**6 **45:**9 **50:**7 **69:**7
**immigrants** [1] **32:**23
**immigration** [4] **3:**13 **33:**9 **82:**1 **95:**22
**immune** [1] **33:**11
**immunized** [1] **73:**16
**implication** [3] **90:**4 **93:**11, 12
**implicit** [2] **10:**22 **14:**8
**import** [1] **17:**4
**important** [7] **12:**10 **60:**5 **66:**1,2 **88:**11 **96:**2,18
**importantly** [1] **5:**5
**importing** [1] **91:**3
**impossible** [1] **69:**11
**imprisonment** [1] **83:**5
**incentive** [1] **73:**11

---

**incentivized** [2] **66:**18 **69:** 1
**inchoate** [1] **17:**16
**incident** [1] **55:**11
**incite** [1] **17:**2
**include** [2] **18:**19 **23:**16
**includes** [3] **14:**2 **24:**2 **34:** 21
**including** [1] **30:**12
**indicates** [1] **27:**22
**individual** [1] **93:**24
**induce** [26] **3:**12,21 **4:**4,22 **9:**20 **10:**22 **11:**16 **17:**2,3 **26:**12 **34:**4 **49:**23 **55:**21 **57:** 2 **59:**15 **60:**10,12 **61:**6 **82:** 17 **90:**6 **91:**9,10,14,15 **93:**5, 10
**induce-and-encourage** [1] **49:**15
**induced** [1] **75:**10
**inducement** [1] **68:**15
**induces** [3] **19:**5 **20:**10 **21:** 5
**inducing** [9] **3:**14 **9:**1 **10:**4 **26:**24 **35:**4 **87:**12 **93:**18,23 **94:**19
**information** [1] **96:**4
**inherently** [2] **93:**6 **97:**4
**inheres** [1] **27:**3
**initial** [1] **60:**18
**Initially** [1] **60:**19
**injected** [1] **39:**9
**inquiry** [2] **69:**24 **71:**14
**instance** [2] **5:**17 **52:**9
**instances** [1] **72:**8
**Instead** [2] **56:**18 **94:**24
**instructed** [1] **58:**7
**instruction** [2] **38:**22 **39:** 15
**instructions** [4] **11:**2,8 **39:** 20 **76:**20
**integral** [1] **57:**12
**intellectually** [1] **65:**18
**intend** [1] **8:**9
**intended** [4] **4:**22 **9:**23 **19:** 23 **32:**24
**intending** [1] **53:**2
**intent** [29] **7:**12,22,25 **8:**2,6, 24 **10:**12,20 **12:**14 **13:**17, 24 **21:**1 **30:**25 **38:**4 **40:**20 **47:**6,8 **56:**25 **59:**24 **60:**1,4 **61:**10,18 **62:**2 **75:**11,17 **83:** 14,16 **91:**7
**intention** [1] **91:**3
**interacts** [1] **54:**19
**interest** [8] **64:**11 **66:**1,2,5, 12 **67:**9 **68:**22 **87:**17
**interesting** [5] **6:**22 **48:**1 **52:**15 **78:**22 **79:**14
**interpretation** [2] **21:**23 **48:**25
**interpretations** [1] **45:**10
**interpreted** [1] **40:**15
**interpreting** [2] **44:**17 **93:**9

interrupt [1] 67:11
interstate [1] 93:24
invalid [4] 23:17 24:6,19
35:11
invalidate [3] 3:20 24:21,
23
invalidated [1] 71:6
invalidating [2] 5:12 42:8
investigation [1] 33:2
investigations [2] 72:5 89:
1
investigative [1] 71:25
invitation [1] 45:9
invitations [1] 57:17
invite [1] 48:5
invocation [1] 77:17
invoked [2] 3:19 71:25
invokes [1] 89:1
involved [1] 48:18
involving [2] 6:5 63:24
isn't [13] 28:21 43:5 47:8
48:17 52:20 55:9 68:2 70:
23 71:14 73:9 78:23 80:9
83:19
issue [11] 5:3,24 8:15 10:
18 13:5 26:9 39:16,17 55:
4,6 93:17
issued [1] 33:1
issues [2] 26:22 39:10
itself [8] 22:23 25:11,15,22
50:25 66:18 68:25 76:9
iv [6] 51:19,22,25 52:11,13
54:11

**J**

JACKSON [34] 18:3,13,16
19:10 20:5 21:8,10 30:15,
23 31:6,10,12 47:6 50:14,
15 51:9,18 52:5,8,10 53:9,
17,20,24 54:16 55:8 56:17,
25 80:9 89:25 90:1,15,25
91:20
job [1] 56:21
journalists [1] 89:2
Judge [3] 10:21 21:23 93:8
judges [1] 4:7
judgment [4] 95:14,20,25
96:1
judicial [1] 43:1
Juliet [1] 70:14
jurisprudence [1] 95:5
jury [10] 11:1,7 22:17 25:1
38:11,22 39:15 58:7 73:19
76:16
Justice [238] 1:19 3:3,10 5:
16,21 6:4,10,12,18,21 7:7,
17,21,24 8:8,16,20,23 9:11
10:5,6,7,8,10,10,11,25 11:
14 12:16 13:10,20,23 15:
17 16:7,13,21 17:14,21,25
18:3,5,13,16 19:10 20:5
21:8,9,10,11 22:11,12,13,
15,20 23:10 24:1,5,11 25:2,
8 27:25 28:3,4,6 29:8,16,

20 30:15,22 31:6,10,12,24
32:3,6,19 33:25 34:6,16,20
35:2,13,25 36:3,7,8,10,11,
14,24 37:1,10,24,24,25 38:
2,3,18,21,24,25 39:6,24 40:
4,4,6,7,8,24 41:24 42:2 43:
14 44:12 45:14,15,15,17,
18 47:6,21,22,22,24 49:6,
21,25 50:12,13,13,15,19
51:9,18 52:5,8,10,15 53:9,
17,20,24 54:1,16 55:8 56:8,
13 58:12,15,18,23,24 59:3
60:7 61:13,15,16 62:6,7,10,
18,21 63:9,15 64:1,7,14,17,
24 65:4,7,16,25 66:7,10 67:
7,10,13,14 68:16 69:6 70:
19 71:1,18 72:13,14,18 73:
21,23 74:18 75:12 76:17,
25 77:9,25 78:10,16,25 79:
17 80:7,9,18 81:9,11,16,21
83:7,9 84:16,18,19,20,21,
23,24 85:7,10,23 86:4,17
87:10 88:5 89:4,8,21,22,22,
23,24,25 90:1,15,25 91:20,
21 92:4 94:10 95:18 97:14
justification [1] 57:11
justify [1] 5:11

**K**

KAGAN [20] 11:14 12:16
13:10,20,23 15:17 16:7,13
40:7,8 41:24 42:2 43:14
44:12 45:14 50:19 71:2,18
80:8 89:22
Kagan's [2] 50:19 72:14
KAVANAUGH [16] 10:5,7,
11,25 27:25 28:3,6 29:8,16,
20 45:17,18 47:21 52:15
83:7,9
Kavanaugh's [2] 72:18 80:
18
keep [3] 24:6 38:13 39:2,2
75:18
keeping [1] 31:22
keeps [1] 88:8
kept [1] 21:4
key [1] 64:13
kill [1] 17:11
kind [10] 21:12 28:15 33:23
37:5 48:1 51:7 75:20 77:3
80:22 95:1
kinds [7] 18:19 19:14 40:
16 52:21 69:8 71:20 76:21
knocks [1] 53:12
knowing [5] 22:4 40:19 53:
1 84:3 93:4
knowingly [1] 60:25
knowledge [4] 14:1,3,3 61:
2

**L**

labor [2] 60:22 93:16
laborers [1] 60:21
lack [2] 36:12 71:13

LaFave [1] 9:19 14:25
language [4] 18:10 21:5,
13 49:8
last [4] 5:24 6:1 89:20 97:
12
law [37] 4:3 6:8 9:12 14:3,5,
16,22 15:19,21 18:22,25
26:19 36:12,23 45:20,20
46:22 52:23 55:25,25 57:8
59:16 63:1,2,5 64:12,24
65:12,13,14,21 66:12,16,
17 67:23 71:7,8,11,15,20
73:9,16 78:15 79:3,18 80:
5,24 83:1 84:11,14 85:14,
22 86:24 87:4,18 88:17,23
law-targeting [1] 62:25
lawful [6] 27:6 66:22,23,24
67:5 68:25
lawfully [1] 28:18
laws [8] 48:15,18 57:22 73:
12 78:12,12 86:14 87:15
lawyer [6] 6:23,25 7:1 11:
20 25:3 82:24
lawyers [8] 32:21 67:2 68:
24 69:3 72:20 81:25 82:1,
1
least [7] 4:11 18:18 30:25
42:12 67:22 71:9 88:8
leave [6] 6:7 8:12 23:18 31:
23 61:5 84:6
leaving [2] 6:25 68:13
left [9] 8:18 14:15 59:6,9,14,
17 92:22,23 93:5
legal [2] 69:4 74:16
legislative [2] 19:22 95:13
legislatures [3] 9:15 19:1
27:12
legitimate [1] 41:20
length [1] 71:13
less [4] 25:17 27:13 86:1
88:18
lesser [1] 87:12
letter [2] 72:4 73:8
letting [1] 43:5
level [1] 47:15
liability [6] 29:5 30:9,14 47:
4 54:19 90:13
lied [1] 75:8
light [1] 40:3
lightly [1] 21:1
likely [2] 78:24 81:22
likewise [2] 13:6 32:6
limit [4] 25:21 26:1 27:8 31:
7
limitation [3] 25:19 27:3
60:22
limited [3] 31:7 57:5,9
limiting [5] 31:12 61:25 62:
4 96:17,20
limits [3] 6:2,3 44:6
line [11] 4:25 13:6,11 15:18,
22,25 42:10 67:14 83:6 85:
8 89:15
lines [3] 12:19 60:8 84:8

list [1] 32:20
litigated [1] 49:13
little [7] 15:14 18:18 44:4
46:10 73:23 75:22 84:22
live [1] 35:20
lives [1] 35:15
living [1] 35:20
long [4] 4:18 9:13 70:20 72:
22
longstanding [1] 3:20
look [9] 10:18 15:2 52:13
60:15 70:8,25 71:21 80:14
90:5
looked [4] 48:7 70:5,13
looking [3] 50:16 54:4 81:1
looks [2] 16:18 93:14
lose [1] 61:22
losing [1] 89:16
lot [12] 13:6,19 14:21 16:16
17,25 22:18,21 33:3 39:22
45:4 46:5 49:17
lots [5] 9:14 49:8,9 74:4,4
love [1] 35:21

**M**

made [9] 3:12 27:24 32:20
63:17 70:24 73:13 82:7 92:
19 95:20
main [1] 73:7
mainly [1] 77:18
mainstream [3] 70:13,17
73:3
major [1] 69:1
majority [3] 31:1 42:14,15
mandates [1] 57:24
Mann [1] 93:22
many [10] 20:23 33:1 45:12
70:6 75:2 76:13 77:16 80:
10,21 89:17
March [1] 1:11
marijuana [1] 13:3
married [1] 67:1
mashed [1] 91:17
mask [2] 52:25 57:23
Massachusetts [1] 6:14
material [2] 15:4,5
materials [1] 67:4
math [1] 41:17
matter [2] 1:13 76:15
matters [2] 20:16 68:2
meal [1] 46:7
mean [28] 9:1 11:19 12:13,
13,17 13:23 21:17,25 22:
22 23:24 30:16 44:1 50:19
58:1 72:16,21 74:2,5,5 75:
17 76:18 78:6,13 79:5 80:
11,17 81:19 90:7
meaning [8] 3:22 4:9 8:11
9:24 38:20 56:18 58:9 92:
22
meanings [1] 9:15
means [10] 11:11,16 35:12
49:2 64:10 72:11 82:16,17
92:6,10

medicine [1] 5:25
meet [1] 29:4
meeting [1] 30:13
meets [2] 79:13 94:14
Melchert-Dinkel [1] 65:11
member [1] 14:18
members [2] 41:12 67:3
mens [10] 11:17 16:23 22:4
40:10 61:1 75:11 79:19 92:
25 93:2,7
mental [1] 87:12
mere [1] 60:3
met [1] 47:5
might [25] 5:9 19:13,16 21:
16,18,21 27:12 41:6
44:9 45:4 47:5,10 56:5 65:
15,24 69:17 70:15 72:22
74:8,8 84:24 86:22 87:20
89:3
mind [1] 18:18
mine [2] 17:12 61:17
Minnesota [2] 50:4 65:10
minute [2] 24:1 36:4
mirrored [1] 20:12
mish-mash [1] 95:3
mission [2] 31:7,13
model [1] 39:15
modest [1] 74:8
Monday [1] 1:11
money [5] 3:16 7:1 24:9 74:
5 75:19
moral [1] 15:10
morning [1] 79:15
most [4] 5:23 12:10 29:15
70:22
mostly [1] 44:2
mother [1] 16:19
move [1] 16:5
movies [3] 70:14,17 73:3
Ms [55] 56:10,13 58:15,20
59:2,11 60:12 61:25 62:9,
17,21 63:15 64:5,8,23 65:6,
8,20 66:3,9,14 67:8,12 68:
11,17 69:21 71:1,21 72:25
73:22 74:15,21 76:1,23 77:
5,12 79:17 81:4,10,14,21
83:8,15 85:5,9,20 86:3,11,
23 87:14 88:12 89:6,10 90:
14 91:6
much [6] 13:12 16:6 27:2
48:9 50:6 54:22 61:11 84:
22 85:23
municipality [1] 87:22
murder [1] 15:12
must [1] 58:6
myself [1] 17:18

**N**

nail [1] 56:1
namely [1] 57:7
narrow [8] 37:22 49:5 63:5
66:16 69:15 73:12 76:19
84:13

Official - Subject to Final Review

narrowed [3] 68:8,12,17
narrower [7] 35:12 37:20
59:13 60:11,13,14 61:24
narrowing [4] 28:8 45:19
58:5,8 61:20 80:2
narrowly [4] 4:5 38:11 64:
12 65:14,23 67:23 69:25
87:18
National [1] 93:16
nature [1] 47:3
necessarily [5] 46:7 47:8
64:18,19 83:19
necessary [2] 47:16 71:2
need [7] 4:2 16:23 31:4,4,4
70:8 83:17
needed [1] 19:12
needs [1] 90:12
neighbor [1] 11:21
neighbors [1] 40:17
Nevada [1] 49:19
never [7] 4:18 35:19 41:16
43:18 70:21 72:5,25 77:11,
23 79:1 80:15,20 85:18,21,
24 86:7 88:14
New [4] 1:21,21 26:16 57:6
newer [1] 48:15
newly-passed [1] 45:2
newspaper [1] 14:11
next [1] 3:4
nice [1] 43:21
nine [1] 4:7
Ninth [5] 3:18 5:18 11:3,
12 20:17 39:8 40:1,2 45:8
54:3,16,17,21,25 96:15
nobody [1] 73:5
noncitizen [3] 11:23 12:20
53:7
noncitizen's [1] 93:3
noncitizens [6] 3:14 8:15
28:17 35:16 80:19 95:24
none [1] 75:4
nonprofits [1] 52:20
normal [1] 87:15
note [3] 59:18 79:18 81:24
noted [4] 60:2 72:3 78:4,11
notes [1] 72:7
nothing [2] 8:11 75:24
noting [1] 81:25
number [4] 38:6 41:7,10,
23

## O

object [1] 76:19
objected [1] 77:6
objection [1] 11:12
obscenity [2] 33:12 63:6
observations [1] 28:20
obtain [1] 75:20
obviously [4] 17:16 20:23
22:22 24:17
occasionally [1] 49:17
occur [1] 13:18
odd [1] 48:1
offender [1] 93:3

offense [17] 8:6 17:17 22:
22 23:22,24 24:2,18,20,21
45:23 46:2,9 47:3 61:21
67:18 68:7 74:8
offenses [7] 3:13 23:25 46:
16,19,24 68:4 83:12
offers [1] 26:11
officials [1] 89:14
often [1] 19:2
Okay [9] 22:12,20 40:12 52:
8 53:20 63:9 79:12 85:3
94:25
old [7] 7:19 10:23 29:6 45:
21 48:20,23 52:14
older [1] 48:4
Once [6] 11:11 12:11 36:11
67:21,21 85:2
one [46] 3:17 6:3,17 8:4,5
13:17,25 15:22 16:8,18 18:
22,23 19:6 20:8 21:12 28:
20 29:14,17 30:24 32:7 33:
25 36:19 39:16 40:23 42:
13 44:1 46:16,25 47:5 48:
12,17 49:18 51:4 53:25 73:
7 78:6 79:13 80:4,14 81:5
86:21 88:9 90:2,16 91:18
95:8
one's [1] 72:17
only [24] 6:1 16:23 26:13
27:18 33:5,10 37:7 43:13
48:23 53:22 54:12 56:19
58:1,12 61:2,5 62:1,4 68:
13 73:14 79:18 81:1 87:8
94:20
open [3] 72:5 76:25 83:24
opening [1] 15:1
opens [1] 88:25
opinion [3] 71:11 78:4,11
opportunity [1] 78:20
opposite [1] 39:4
options [1] 69:5
oral [5] 1:14 2:2,5 3:7 56:
11
order [2] 45:10 90:12
ordinances [1] 57:24
ordinary [3] 44:23 58:2 65:
9
organizations [5] 28:7 31:
2 32:12 33:2 72:18
other [32] 5:6 10:2 12:3,4
19:13 20:14 24:21 25:18
32:10 33:17 38:25 42:22
46:16,18 48:22 49:14,15
50:16 58:19,22 59:8 75:23
77:16 80:21 82:3 87:19,21
91:10,15 92:12 93:14 97:
11
others [4] 32:22 43:6 69:3
86:22
otherwise [4] 21:5 31:23
33:13 57:19
ought [4] 4:12 5:25 23:18
37:18
out [39] 6:13 9:6,8,10,22 11:

3,10 12:6 13:19 14:22 18:
8,17 19:6,12,14 20:6 29:13
36:1 39:23 47:25 49:19 50:
5,16 55:9 56:22,25 59:4,6,
10 70:20 72:17 73:4,4 74:
23 77:18 78:20 80:1 92:
20,25
outside [2] 26:14 34:1
over [5] 21:20 42:15 60:17
61:9 97:12
overbreadth [56] 3:19 4:
14 5:6,22,25 11:9 12:15
22:21 23:2,4,13,14,16 36:
20 39:9 41:5,14,17 42:7,13
43:1 44:15 48:3,4,8 49:1
50:3,11 54:9,14 55:2,4 58:
14,17,21 61:23 67:24 68:
10 69:9,19 70:7,11,24 73:6
76:2 77:15 78:22 80:13 81:
6 88:16 92:8 94:15 96:10,
11,16,19
overbreadth-type [1] 49:
13
overbroad [1] 23:23,24
24:19 35:11 54:21 56:4 68:
19 71:11 94:7 96:23 97:2
overlapping [1] 9:15
overriding [1] 81:5
overstayed [1] 66:25
own [1] 74:16

## P

p.m [1] 97:16
PAGE [2] 2:2 93:18
pantry [1] 83:22,24
Paper [2] 55:18,19
parking [3] 57:24 87:23,24
parses [1] 19:6
part [20] 10:14 11:9 19:18
21:13 24:3,6,7,7,8,9,12,14
28:16 29:22 34:12 35:6 47:
5 50:24 51:3 54:14
particular [5] 44:19 59:25
77:1 78:1 90:17
particularly [2] 25:17 65:
18
parts [1] 23:17
pass [1] 65:24
passed [2] 65:21 71:7
past [1] 48:9
paths [1] 67:5
pathway [4] 66:22,23,24
68:24
patrol [1] 89:5
pattern [1] 60:16
Paul [1] 78:3
pay [1] 17:12
paying [1] 87:25
penalties [1] 27:5
penalty [3] 21:7 22:24 27:
21
Peoni [1] 93:8
People [51] 13:7 14:13 27:
12 28:11 30:2,11,12 31:3,8,

13,22 32:13,21 33:4 34:7
36:8 40:16,18 41:2,11 43:
5 52:3,21 66:2,11,19,25 67:
5 68:24 70:1,6,9 73:7,10,
14 74:3,6,10 75:2,10,18 80:
10,16,22 81:7,17 82:25 83:
5 84:3 89:1 95:15
people's [1] 75:24
per [1] 51:20
Percoco [1] 38:7
perfectly [2] 27:6 56:6
Perhaps [3] 81:23 89:2 91:
2
permissible [4] 42:8 78:15
80:3 92:11
permit [1] 24:13
permits [1] 24:12
perpetrator [2] 85:15,16
Perpetrators [2] 86:4,5
person [15] 25:16 30:18 33:
20 34:22 37:11 41:9,11 52:
6 64:16 65:16 67:20 73:18
87:12 90:9 95:17
person's [1] 22:5
persuade [1] 49:23
persuaded [1] 19:16
persuading [1] 93:23
Petitioner [6] 1:4,20 2:4,
10 3:8 92:2
piece [1] 51:1
Pittsburgh [2] 26:10 55:17,
19 94:18
place [3] 12:18 41:8 84:4
plain [4] 38:9 56:17 58:9
61:11
plainly [2] 5:13 41:20
plausible [1] 4:11
play [3] 26:6,18,22
please [2] 3:10 56:14
plurality [1] 71:10
point [14] 9:3 18:6 52:16
54:1 62:12,16 68:23 69:21
72:9,15 78:18,18 90:9 95:
9
pointed [4] 47:25 72:17 77:
18 78:25
points [2] 70:19 82:9
pornography [2] 63:25 70:
18
posit [2] 22:25 27:3
positing [3] 20:17 24:16
69:15
position [5] 4:1 25:17 37:
17 86:12 92:10
positions [1] 72:10
posits [1] 23:22
possibility [1] 5:8
possible [4] 3:22 36:15 49:
9 80:9
possibly [1] 67:22
poster [1] 74:6
posture [4] 56:1,6 73:25
74:11
potentially [2] 23:23 24:19

practice [1] 38:16
pre-enforcement [1] 81:
24
precedent [1] 23:12
preceding [1] 51:12
precisely [1] 16:1
predecessor [1] 10:2
premise [3] 7:14 12:24 44:
3
presenting [1] 72:11
president [3] 73:14,20
Press [3] 26:10 72:2 94:18
pretty [3] 29:22 92:14,16
prevail [2] 56:15 75:15
prevented [1] 81:2
preventing [1] 5:12
previous [2] 9:6 92:24
previously [1] 91:15
primarily [1] 97:3,6
Principal [2] 1:18 82:11
principle [1] 35:6
principles [12] 6:25 13:
16 14:23 23:16 26:6,17 36:
16 37:18 43:4 44:24 47:19
prior [4] 20:10,13 57:17 59:
19
probably [4] 11:1 41:10 87:
13 88:3
problem [9] 4:19 5:2,6 11:
1 12:15 14:20 44:11 54:14
74:2
problematic [1] 91:2
problems [1] 36:20
proceeds [1] 17:10
prohibit [1] 56:19
prohibited [2] 26:14 93:18
prohibiting [1] 60:19
prohibition [2] 59:21 92:
13
Prohibitions [1] 4:16
prohibits [2] 62:13 93:23
promised [2] 13:14 77:23
proof [1] 73:5
property [1] 78:12
proposing [1] 63:21
prosecute [6] 6:25 32:25
35:22 77:20 97:10,12
prosecuted [3] 6:9 73:14
90:10
prosecution [6] 6:17 28:
9 50:2 77:11,13 79:1 83:4
84:9 88:9 96:22,25
prosecutions [11] 32:4 70:
21 71:2,4,14 72:15,23 88:7,
14,24 89:18
prosecutorial [4] 71:17,19,
22 88:20
prospect [1] 75:19
prostitute [1] 64:2
prostitution [10] 49:20,21
63:11,13 64:3,5,18 67:19
87:13 93:25
protect [1] 4:21
protected [13] 3:18,23 5:1

Official - Subject to Final Review

39:17 43:5 50:9 71:5 86:
19,20,22 88:14,18 94:21
**protecting** [1] 66:1
**protection** [3] 26:14 62:23
89:7
**protective** [1] 70:1
**prove** [8] 25:3,6 34:10,21
74:23 75:7 80:1 90:12
**proven** [1] 8:11
**provide** [7] 5:10 15:23 16:
2 25:20 31:3 32:12 67:3
**provided** [1] 66:21
**provides** [1] 30:11
**providing** [8] 28:10 30:4
32:22 46:6 52:16,20,24 69:
4
**provision** [9] 24:22,24 32:
15 53:6 75:6 89:16 90:21,
23 93:15
**provisions** [8] 21:7 25:7
26:1 50:17 52:16,21 59:5
90:20
**prudential** [1] 43:1
**public** [8] 14:11 72:12 76:
10
**punish** [1] 57:13 95:2,10
**punished** [3] 33:6 57:14
86:9
**punishment** [8] 28:2 33:
16,18,19,20 86:1,7 95:23
**pure** [2] 68:14 83:20
**purport** [1] 42:12
**purpose** [7] 16:23 25:18
31:22 55:3 59:4,7 93:11
**purposes** [1] 12:11
**pushing** [1] 44:10
**put** [2] 9:5 39:5
**putting** [2] 9:9 35:18
**puzzled** [1] 21:19

## Q

**qualifies** [1] 53:8
**qualify** [1] 87:11
**qualifying** [2] 36:4,5
**quantify** [1] 70:16
**question** [11] 12:3,4 22:16
23:22 42:3 50:20 54:18,24
78:1,22 94:11
**questioning** [1] 67:15
**questions** [10] 5:10,15 21:
12 28:23 45:22 55:24 56:5
58:11 84:24 94:12
**quickly** [1] 61:17
**quite** [3] 8:2 93:1,15

## R

**R.A.V** [1] 78:3
**raise** [5] 4:19 5:9 28:22 45:
7 69:1
**raised** [1] 45:5
**raises** [2] 45:22 52:15
**range** [1] 57:22
**rarely** [1] 97:2
**rather** [1] 33:17

**rationality** [1] 27:8
**rea** [10] 11:17 16:23 22:4
40:10 61:1 75:11 79:20 92:
25 93:2,7
**reach** [6] 35:12 54:11,18,
23 66:17 69:25
**reaches** [2] 55:12 68:19
**reaching** [2] 83:20 88:17
**read** [13] 4:2 16:16 18:18
19:20 37:3 38:9,10 39:3
42:13 51:4 66:16 76:15 90:
6
**reading** [2] 4:12 39:11
**ready** [1] 16:17
**real** [4] 42:7 43:3 45:1 94:
11
**realistic** [1] 42:24 70:2 71:
23 96:22
**really** [29] 5:20 11:23 12:21
13:20 15:14,15,20 17:11
20:18,22 27:4,22 39:9,12,
17 40:18 45:11 51:5,6 55:
5 69:13,13 74:13 77:2 80:
10,25 90:11 94:23 97:8
**realm** [1] 58:16
**reason** [16] 19:22,24 22:2
24:23 35:10 37:22 40:24
41:1 43:7 48:16 50:22 53:
5 57:10 70:11 80:4 88:16
**reasonable** [2] 39:14 95:
25
**reasoning** [1] 54:25
**reasons** [2] 30:24 56:16
**reassured** [1] 45:18
**REBUTTAL** [3] 2:8 91:23
92:1
**receive** [2] 72:8 89:12
**received** [1] 75:3
**recent** [2] 48:13 71:24
**recently** [1] 5:23
**recited** [1] 28:21
**reckless** [3] 14:3 61:3 93:4
**recognized** [1] 9:14
**recommending** [1] 28:11
**reconsidering** [1] 76:2
**record** [6] 48:6,22,24 72:16
81:12,16
**Recruiting** [1] 15:11
**reduce** [1] 41:17
**refer** [1] 4:5
**referred** [1] 8:5
**referring** [2] 6:11 21:22
**regulate** [2] 68:5 78:7 95:1
**regulated** [3] 63:16,22 78:
6
**regulates** [1] 58:3
**regulating** [1] 66:12
**regulatory** [2] 25:24,25 57:
22
**related** [1] 33:9
**relation** [1] 41:19
**Relations** [1] 93:16
**relative** [1] 42:10
**relatively** [2] 46:19 48:15

**relevant** [9] 29:15 49:1 71:
22 77:14,21,22 78:23 88:
12,21
**relief** [1] 75:20
**religious** [1] 32:21
**rely** [1] 32:24
**relying** [3] 54:8 55:12,19
**remain** [7] 34:23 47:9 51:
23 66:13 67:6 83:1 84:1
**remaining** [7] 25:10 27:17
30:18 34:9,10 52:21 61:6
**remains** [4] 18:19 21:15,18
84:13
**remand** [4] 11:2 75:14,16
78:19
**remands** [1] 55:6
**remedy** [1] 70:11
**removal** [2] 27:21 95:24
**removed** [3] 59:12 61:1,4
**render** [1] 63:18
**rendering** [1] 36:6
**reply** [1] 55:17
**report** [1] 60:2
**Reporters** [1] 72:2
**request** [2] 15:10,16 17:8
**requested** [1] 57:25
**require** [5] 71:4 82:14 83:
13,16 85:14
**required** [10] 8:3 56:25 59:
24,25 60:24 61:2 73:1 78:
20 82:13 88:15
**requirement** [16] 7:22 8:3
10:12,21 11:17 12:14 14:7
17:4 34:25 38:4 60:4 61:2
75:11 79:20 93:1,7
**requirements** [4] 25:25,25
29:13 76:14
**requires** [3] 23:6 33:8 82:
10
**requisite** [2] 30:25 62:2
**requisites** [2] 30:13 47:4
**reserve** [1] 56:5
**reside** [2] 3:14 21:25
**residence** [5] 21:17,22 22:
1,2,9
**resides** [2] 21:14,16
**residing** [1] 22:5
**resisted** [1] 57:16
**resolved** [1] 75:14
**resort** [1] 6:1
**resources** [1] 72:20
**respect** [5] 68:4 70:24 77:1
78:15 87:5
**responded** [1] 50:19
**Respondent** [6] 1:7,22 2:7
54:7 56:12 96:15
**Respondents** [1] 20:17
**response** [1] 46:4
**responses** [1] 71:1
**rest** [2] 23:18 28:12
**return** [2] 54:4,5
**reus** [3] 16:25 17:4,7
**reverse** [1] 97:13
**revisited** [2] 21:4,6

**revisiting** [1] 49:4
**rewrite** [4] 7:9,15 38:19 56:
18
**rewriting** [2] 10:17 38:14
**rights** [6] 43:6 67:3 74:12,
16,19 82:25
**rob** [1] 17:9 53:1,2
**robbed** [1] 53:11
**robber** [4] 46:6 52:17,25
53:13
**robbery** [3] 45:24 46:9 53:
4
**ROBERTS** [19] 3:3 10:10
31:24 32:3 37:24 38:2 40:
4 45:15 47:22 50:13 56:8
58:24 59:3 60:7 77:9 84:
16 89:22 91:21 97:14
**Romanette** [1] 51:8
**Romeo** [1] 70:14
**roots** [2] 57:9 60:18
**Rosemond** [3] 8:5 10:19
15:6
**rule** [5] 54:17 94:25 95:13
**runs** [1] 84:1

## S

**safe** [2] 84:4,6
**same** [21] 5:3 10:23,24 12:
2 15:23 19:3 31:20,20 32:
9 37:17 38:20 43:12 51:3
57:18 64:21 65:7,8 82:21
92:22 95:17 96:3
**satisfied** [2] 66:8,15
**satisfy** [7] 58:2 63:8 64:20
65:13 87:5,20 88:4
**saying** [28] 7:5,15 10:23 12:
12,20 15:22,23 16:4,7 17:
21,23 32:23,25 40:17,19
44:2,2,4,22 49:8 50:20 68:
1 76:21 82:12 83:10,21,23
90:5
**says** [16] 11:23 13:21 14:17
15:19 16:19 22:4 24:7,8
35:18 42:15 43:17 76:14
84:12 90:6,17 91:7
**Scalia's** [1] 78:11
**scenario** [1] 55:11
**scheme** [1] 3:16
**schemes** [5] 5:13 97:10,11
**scholarships** [1] 28:11
**scrutiny** [17] 33:14 57:20
58:2 63:4,8 64:10,21 65:3,
10,12,14,24 66:4 87:1,5,16
88:4
**second** [10] 22:15 24:7,7,8
40:23 41:1 57:4 62:12,16
73:11
**secondary** [1] 93:19
**Section** [11] 4:10 5:2,9,17
14:24 54:11 71:25 72:3 77:
17 89:1,12
**sections** [1] 21:16
**secure** [1] 76:9
**secures** [2] 76:4 79:20

**securities** [1] 45:24
**see** [9] 31:13 48:2 52:5 53:
17 59:9 60:8,16 75:20 87:
15
**seek** [3] 15:16 30:6 47:12
**seeks** [2] 34:3 55:20
**seem** [2] 28:13 46:5
**seemed** [1] 82:9
**seems** [4] 21:16 46:10 74:
11 75:14
**seen** [3] 16:18 23:12 70:21
**Senate** [1] 60:2
**send** [2] 40:1 55:2
**sending** [1] 11:12
**sense** [4] 17:13 34:13 42:5
64:15
**sensitive** [1] 55:23
**separate** [1] 90:19
**serious** [1] 27:21
**seriously** [2] 27:23 39:16
**service** [1] 54:9
**services** [4] 32:12,13,16,
22
**set** [2] 46:25 69:16
**seven** [1] 19:5
**sever** [1] 23:17
**severable** [3] 23:25
**share** [1] 95:16
**she's** [2] 35:17,18
**shelter** [8] 28:10 29:17 30:
20 31:3,5,18 72:20 84:2
**shorthand** [1] 9:25
**shorthanded** [1] 10:3
**shouldn't** [3] 9:5 37:4 88:
11
**show** [2] 75:10 87:8
**showing** [4] 45:1 79:22 92:
17,19
**shown** [1] 61:10
**side** [1] 15:22
**significant** [3] 5:21 21:2
33:17
**silence** [1] 81:7
**silent** [1] 81:7
**silently** [1] 91:4
**similar** [3] 18:9 49:12,22
**Similarly** [1] 70:12
**simple** [1] 89:18
**simply** [6] 69:24 83:21 84:
11 88:22 90:17
**since** [2] 49:14 79:19
**sincere** [1] 28:13
**Sineneng-Smith** [4] 5:24
39:7 49:14 77:7
**situation** [4] 22:23 23:5 74:
7 80:14
**situations** [2] 25:13 74:13
**six** [1] 39:22
**slice** [1] 14:14
**small** [1] 50:25
**social** [1] 32:12
**soil** [11] 7:20 10:23 17:22,
23,25 18:4 29:7 34:15,20
45:21 52:14

Heritage Reporting Corporation

Official - Subject to Final Review

solicit [15] 9:23 26:12 56:
24 59:13,17,24 60:9,13,24
61:4 85:16 87:23 88:1 91:
9 95:16
solicitates [1] 95:11
soliciting [1] 86:9
solicitation [62] 5:1,4,7 9:
17 10:14 12:4 13:2 14:9
20:1 25:4,22 33:19 34:19
37:8 45:20 49:14,20 50:8
56:19 57:3,5,8,10 59:16,23
61:12,24 62:1,14 63:1,10,
12 64:14,15 66:16,17 68:
13,20 76:12 82:8,13,16,20
83:10,19,25 84:14 85:12,
19,21,25 86:6,13,13,24 90:
3,8,21 91:14,18 95:1 96:4
solicited [1] 27:13
soliciting [27] 4:5,16 7:11
9:2,8 18:11,13 20:20 26:
21 27:5 28:1 37:15 52:2,
12 54:12 57:21 59:21 63:
10 64:2,25 67:17 68:6 74:
3 86:9 94:8,13,19
Solicitor [1] 1:18
solicits [2] 20:6 95:21
solve [1] 44:10
somebody [5] 12:20 13:21
14:17 26:3 79:13
someone [24] 15:12 19:11
21:25 22:9 23:4 25:13 32:
16 37:15 47:7 51:13,15,23
52:2 63:10,12 64:2,17 65:
4,22 72:6 78:5 83:21 84:1
95:21
someone's [1] 79:23
sometimes [4] 4:25 15:11
43:16 44:19
son [3] 16:19 35:17,18
Sorry [8] 6:4 13:13 18:3 22:
13,14 28:4 38:1 67:10
sort [25] 11:3 14:1 15:10 23:
15 27:7,19 29:4,12 41:25
43:1 45:3 46:20 47:3,15
48:22 49:11 50:10,19 51:
16 55:5,9,9,10 80:13 95:3
sorts [2] 47:20 48:14
SOTOMAYOR [60] 6:4,10,
12,18,21 7:7,17,21,24 8:8,
16,20,23 9:12 10:6,8 22:11,
13 24:1,5,11 25:2 28:4 32:
19 33:25 34:6,16,20 35:2,
13 36:1,3,7,8,10,11,14,24
37:1,10,25 38:3,18,21,24,
25 39:6,24 84:20,21 85:7,
10,23 86:4,17 87:10 88:5
89:4,8,21
Sotomayor's [1] 18:5
sought [1] 15:7
sounds [1] 51:1
space [1] 19:1
speaking [4] 49:6 70:9 73:
10 74:2
special [4] 27:16,19 44:15

94:25
species [1] 9:20
specific [9] 4:22 7:11 13:
17,24 14:12,13 18:23 59:
24 60:4
specifically [3] 65:22 68:6
90:16
spectrum [2] 87:15,21
speech [67] 3:23 4:21 17:8,
13 20:22 25:24,25 26:1,20,
25 28:21 33:5 34:1,2,3 39:
16 55:10,20 57:7,11,14,18,
21 58:3,12,16 62:22 63:1,3,
19,22,24 64:8,24,25 66:6
69:23 70:1,2,12 71:3,5,9
73:2 74:19,24 75:9,24 79:
23 80:7,23 83:20 84:8 87:
20 88:2,14,18,22 89:18 92:
14 95:7,10 96:3,5,7 97:3,7
speeches [1] 14:12
spent [1] 45:8
split [1] 17:10
spoken [2] 26:8,9
St [1] 78:3
stake [1] 84:9
stakes [1] 83:3
stand [2] 43:21 57:2
standard [3] 60:25 66:15
75:16
standards [1] 44:16
standing [3] 22:23 79:6
start [2] 16:5 36:5
starting [1] 82:3
starving [1] 31:15
state [6] 48:18 49:7,19 65:
21,23 89:14
statement [2] 6:8 7:2
STATES [13] 1:1,3,15 3:4,
15 22:6 25:11 34:8 49:8
52:22 57:19 66:13 89:11
States' [1] 72:6
status [6] 66:22,23,25 67:5
68:25 93:4
statute [113] 3:14,20,24 4:1,
12 5:4,12 7:9,25 9:5,7 10:
2,14,18,20 11:10,18 12:5
14:2 16:11,14 18:7,8 19:
15,20 20:1,10,13,19 21:4,6
22:4,8 23:18 25:9 26:24
29:2 30:21 32:9,24 33:6,7,
15,17,22 35:11,12 37:3,5,8,
22 38:9,19 39:11 40:10,14,
22 41:2 42:9,16 43:11,18
44:6,17 45:2,10 48:3 49:2,
4,5,22 50:17 51:4 56:4,17,
19 57:5 58:10 59:20,23 60:
17 68:13,18 69:12,24,25
70:10,16,20 71:11 72:11
76:5,7 77:2,23 80:3 84:7
88:9 90:5,11 91:5,19 92:6,
10,12,24 93:14 94:6 96:6,
23 97:2,5,9
statute's [2] 41:20 72:21
statutes [12] 5:7 13:2 14:

21 32:10 33:11 38:14 39:3
48:19 49:7,9,15,15
statutory [1] 21:13
stay [15] 8:21 11:24 12:22
13:21 14:19,19 15:20,24
29:21 30:18,20 40:18 41:
11 53:13 84:4
staying [1] 14:4
step [3] 16:25 17:18 63:2
steps [2] 12:12 30:5
Stevens [4] 48:14 69:23
70:4 71:3,6 73:2 77:21
stiffly [1] 95:12
still [12] 17:17 24:6 25:2 28:
8 45:22 60:23 68:18 72:4
86:7 91:1 93:11 94:7
stop [1] 36:3
straight [1] 34:3
streets [1] 31:17
strength [1] 70:7
stretch [1] 96:16
strict [5] 33:14 64:20 65:3,
12,14,24 66:4 86:25 87:5
strike [2] 45:11 50:22
strikes [1] 48:1
string [1] 48:5
strong [5] 5:25 43:15 48:
24 66:12 69:7
strongly [1] 60:1
struggle [1] 69:18
struggling [2] 18:17 50:23
study [1] 48:2
suasion [1] 15:10
sub [1] 55:3
subject [9] 27:20 33:13 58:
13 64:10 65:1,3,9 86:25
95:24
submit [1] 77:14
submitted [2] 97:15,17
subpoena [1] 33:1
subpoenas [1] 89:9
subsection [2] 90:22 91:
11
subset [2] 24:20,23
substance [1] 22:22
substantial [5] 41:18,19,
22,23 42:5
substantially [1] 68:19
succeed [6] 8:7,10,11 30:7
35:5 47:13
succeeded [1] 48:9
succeeding [1] 35:6
successful [1] 78:21
succumb [1] 49:10
suggest [3] 32:15 54:10
60:9
suggested [2] 21:24 83:17
Suggesting [1] 59:4
suggestion [1] 11:4
suggests [3] 3:17 9:23 22:
7
suicide [4] 65:5,12,17 67:
19
summarize [1] 92:24

supplemental [1] 39:8
support [3] 15:24 16:3 39:
14
suppose [4] 11:14,17 47:
14 54:22
supposed [2] 69:9,10
SUPREME [3] 1:1,14 65:
11
surely [1] 78:23
survive [1] 67:24
swaths [1] 3:23
sweep [2] 41:20 97:7
sweeping [1] 3:22
swept [1] 3:25
synonyms [2] 19:2,14

## T

table [1] 87:7
tailored [6] 64:12 65:14,23
67:23 76:20 93:2
tailors [1] 87:18
talked [2] 16:24 96:10
target [1] 26:20
targeted [1] 26:19
targeting [1] 63:3
task [1] 70:24
tasked [1] 54:4
tax [2] 13:3 46:19
teacher [1] 11:22
tells [1] 35:17
Tenth [1] 77:8
term [1] 38:7
terms [12] 4:4,4 7:19 38:9
42:8 57:2 60:13,14 61:5
70:15 76:5,7
testimony [1] 8:14
text [3] 4:7 61:11 91:7
textbook [1] 43:10
themselves [1] 31:2
theoretical [1] 42:23
theory [2] 20:6 54:22
there'd [1] 26:5
There's [20] 6:4 13:6 14:7,
21 16:8 19:5 21:21 23:3,
17 28:8 30:1 41:7 42:17
71:23 72:23 81:16 88:8 93:
13 94:11,12
therefore [1] 24:19
thinking [3] 12:21 22:21
42:3
third [1] 64:16
third-party [2] 74:12 79:6
THOMAS [8] 5:16,21 40:5
58:12,15,18,23 84:18
though [5] 10:11 28:25 42:
6 73:19 96:24
thoughts [1] 33:24
threat [1] 28:9
threaten [1] 77:16
threats [2] 73:16,19
three [1] 56:16
threshold [1] 94:14
tied [1] 60:19
today [2] 56:3 57:23

took [15] 9:6,8,9,22 18:8,16
20:6,19 56:22,25 59:22 60:
21 69:22 92:20,25
tools [3] 52:25 77:16 89:20
totally [2] 78:16,17
tough [1] 73:24
town [1] 87:24
traced [1] 48:9
track [3] 48:6,22,24
traction [1] 49:17
traditional [4] 4:9 10:19
13:1,16 34:1,25 43:4 47:
18 83:13
traditionally [3] 10:12 29:
6 85:13
trafficking [1] 66:24
training [1] 67:4
transaction [3] 63:16,22,
24
transactions [5] 26:13 55:
21 63:18,20 64:15
transformed [1] 20:21
transporting [1] 51:15
travel [1] 93:24
treat [1] 72:3
treated [4] 86:5,6,10 96:3
treating [2] 57:11 96:7
treatise [2] 19:14 25
treats [1] 96:6
trench [2] 37:23 60:5
trial [2] 38:11 39:20
tried [2] 39:7 50:2
trigger [1] 63:3
troubled [1] 6:16
true [9] 23:21 27:17 42:21
62:19 73:15,18 83:18,19
92:21
truthful [1] 69:4
try [1] 56:1
trying [4] 36:19 50:16 80:
11 96:16
tune [1] 74:4
turn [2] 20:3 94:3
turned [1] 92:13
tweaked [1] 21:6
two [15] 8:15 12:11 18:21
21:11 40:11 41:14 59:5,5,
6,18 71:1 73:7 83:8 90:
19 92:8
type [1] 80:7

## U

U.S [2] 67:1 89:6
U.S.C [8] 10:18 19:3 53:21
59:20 90:20,21 93:9,22
ultimately [1] 42:25
unconstitutional [7] 20:
23 41:3 42:17 56:17 63:11,
14 64:20
unconstitutionally [1] 24:
18
under [24] 4:13 5:3 12:4 14:
20 25:6 26:4 28:8 32:9,10
33:6 56:17 66:21 75:3,6,

Official - Subject to Final Review

15 **76**:4 **78**:19 **79**:8,9 **83**:1 **86**:15 **88**:2,9 **90**:10
**underlying** [13] **25**:10 **27**: 13 **45**:23 **46**:2,9 **61**:21 **65**: 1 **67**:18 **68**:4,7 **74**:7 **82**:11 **95**:11
**underscore** [1] **27**:9
**underscoring** [1] **96**:14
**understand** [13] **15**:18 **19**: 7 **25**:12 **28**:24 **44**:9 **50**:21 **55**:12 **62**:3 **79**:24 **80**:12 **85**: 2 **92**:10 **94**:4
**understandably** [1] **43**:3
**understood** [5] **14**:8 **22**:7 **29**:6 **54**:7 **62**:11
**undocumented** [2] **83**:25 **84**:4
**unique** [1] **5**:2
**UNITED** [10] **1**:1,3,15 **3**:4, 15 **22**:6 **25**:11 **34**:8 **52**:22 **66**:13
**unlawful** [10] **4**:6 **14**:18 **22**: 2,6,10 **30**:19 **32**:14,17 **62**: 14 **95**:16
**unlawfully** [12] **27**:18 **30**:3, 13 **31**:9,15 **40**:20 **41**:10 **51**: 24 **52**:4 **53**:7 **61**:7 **67**:6
**unless** [1] **33**:6
**unlikely** [2] **69**:13 **75**:15
**unprotected** [13] **5**:1,13 **55**:20 **57**:7,12,18 **64**:9 **73**: 15 **74**:24 **79**:23 **86**:15 **88**:2 **95**:8
**until** [1] **92**:11
**unusual** [4] **25**:9 **48**:2 **94**:1 **95**:10
**up** [18] **14**:22 **21**:17,22,25 **37**:16 **39**:7 **43**:21 **48**:13 **49**: 16 **54**:2 **61**:17 **67**:14 **72**:14 **73**:24 **81**:13 **84**:22 **85**:3 **91**: 17
**upheld** [2] **85**:21 **93**:20
**uphold** [2] **33**:15 **37**:5
**urging** [2] **25**:13 **26**:3
**uses** [1] **76**:8
**using** [1] **20**:11
**usual** [1] **44**:16

### V

**v)(II** [1] **50**:25
**vacated** [1] **58**:7
**vaccine** [1] **57**:23
**validity** [1] **71**:15
**various** [3] **40**:16 **83**:17 **91**: 8
**vast** [5] **29**:2 **31**:1 **42**:14,15 **57**:22
**venture** [8] **15**:7,15 **17**:1,19 **30**:6,16 **47**:12,15
**verb** [3] **59**:17 **60**:24 **61**:4
**verbs** [3] **59**:13,14 **91**:16
**versa** [1] **82**:18
**version** [2] **31**:20 **40**:9
**versions** [1] **29**:14

**versus** [3] **3**:5 **49**:19 **64**:15
**vice** [1] **82**:18
**victimized** [2] **74**:6 **75**:2
**victims** [1] **66**:24
**videos** [2] **70**:6 **73**:4
**view** [8] **11**:15,16 **12**:1 **25**:5 **29**:2 **34**:5 **55**:3 **78**:19
**viewed** [1] **88**:11
**viewpoint** [1] **78**:14
**vigorously** [1] **6**:2
**violate** [5] **14**:5 **22**:8 **30**:21 **52**:1 **70**:9
**violated** [1] **3**:13
**violates** [2] **23**:1 **78**:8
**violating** [2] **87**:24 **89**:15
**violation** [14] **13**:18 **15**:21 **27**:18,20 **30**:17,17 **51**:14, 16 **52**:23,23 **54**:2,13 **85**:1, 19
**violations** [15] **4**:17 **25**:24 **51**:11 **57**:8,21 **65**:1 **66**:18 **68**:20 **85**:4 **86**:25 **87**:6,23, 24 **94**:9 **95**:22
**violence** [3] **59**:22 **66**:21 **84**:2
**Virginia** [1] **71**:10
**vis-à-vis** [1] **70**:17
**visas** [2] **8**:18 **66**:25
**visible** [2] **73**:9 **81**:8
**vulnerable** [6] **25**:17 **27**:14 **65**:18,23 **67**:20 **74**:10

### W

**Wait** [1] **24**:1
**wanted** [6] **19**:24,25 **20**:3 **46**:4 **59**:16 **62**:11
**wanting** [2] **19**:20 **31**:3
**war** [1] **16**:20
**Washington** [2] **1**:10,19
**watching** [1] **82**:2
**water** [1] **80**:20
**way** [18] **4**:2 **5**:18 **12**:2 **23**: 17 **25**:21 **26**:1 **32**:9 **39**:3, 20 **48**:22 **52**:1 **68**:18 **77**:24 **78**:6,7 **82**:24 **94**:1,6
**ways** [4] **43**:25 **44**:7 **88**:22 **96**:14
**wealth** [1] **40**:16
**weed** [2] **13**:19 **29**:13
**welcome** [3] **5**:15 **58**:11 **84**: 5
**whatever** [4] **17**:2 **40**:17 **41**:12 **78**:24
**Whereupon** [1] **97**:16
**whether** [11] **7**:3 **14**:4 **26**: 25 **43**:10 **62**:22 **67**:18 **82**: 16 **83**:1 **94**:11,14 **96**:4
**who's** [6] **33**:20 **35**:15 **41**:9 **52**:6 **70**:8 **83**:24
**whole** [2] **39**:10 **41**:7
**wide** [1] **3**:22
**will** [10] **4**:24 **13**:14 **22**:6 **28**: 14 **36**:16 **57**:19 **69**:13 **75**:4 **78**:21 **97**:2

**willful** [1] **60**:25
**Williams** [7] **4**:20 **26**:10 **34**: 3 **55**:18 **63**:17,23 **94**:19
**willing** [4] **34**:12,14 **37**:16 **44**:20
**wishes** [1] **84**:15
**within** [5] **40**:22 **51**:15 **63**:5 **70**:15 **96**:1
**without** [5] **16**:4 **57**:20 **74**: 13 **79**:21 **88**:23
**woman** [1] **6**:5
**Women** [2] **66**:21,22
**won** [1] **38**:11
**wondering** [1] **8**:10
**word** [8] **43**:22 **44**:5,20 **79**: 12 **92**:5,6,8 **96**:9
**wordlessly** [1] **91**:4
**words** [45] **3**:21 **4**:8 **7**:16 **8**: 25,25 **9**:5,7,14,24 **10**:2,22, 24 **12**:13 **19**:2,6,13,19 **33**:8, 9,12,16 **34**:11,22 **35**:3 **37**:3, 4,9,15 **38**:20 **47**:16 **56**:22 **59**:5,8,9,10 **82**:18 **92**:12,21, 21,22,23 **93**:5,6,9,10
**work** [2] **16**:4 **80**:12
**workers** [1] **93**:17
**works** [1] **22**:3
**world** [8] **11**:18,24 **12**:18 **17**:15 **43**:3 **44**:15 **68**:12 **75**: 17
**worried** [3] **19**:17 **35**:17 **75**: 23
**worry** [1] **43**:17
**worse** [1] **96**:8
**worth** [1] **96**:14
**write** [10] **7**:11 **8**:24 **36**:23 **39**:19,21 **44**:5 **45**:6 **56**:23 **59**:16 **82**:23
**writing** [2] **36**:13 **59**:23

### Y

**yard** [1] **78**:10
**year** [1] **55**:16
**years** [16] **10**:1 **20**:9 **33**:16 **39**:22 **43**:12 **59**:19 **71**:7,10, 12,25 **75**:4 **79**:4 **83**:4 **89**: 20 **97**:5,12
**York** [2] **1**:21,21
**yourself** [5] **15**:15 **17**:1 **30**: 6 **35**:6 **47**:12

Heritage Reporting Corporation