DAVID EISENBERG
**DAVID EISENBERG, P.L.C.**
3550 N. Central Avenue, Ste. 1155
Phoenix, Arizona 85012
Arizona State Bar No. 017218
Telephone: 602.237.5076
Email: david@deisenbergplc.com
Attorney for Defendant Andrew Padilla

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>                Defendants. | NO. CR-18-00422-PHX-DJH<br><br>**DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENSE FROM ARGUING LEGALITY OF ADS (Doc. 1592)**<br><br>(Oral argument requested) |

The Court should deny the government's request to preclude Defendants from characterizing "any advertisement, charged or uncharged" as being legal or illegal, or eliciting such testimony from witnesses, for several reasons. First, the government is wrong that the jury will never assess whether any of the charged ads are "legal" or "illegal," as the jury will need to determine whether each of the charged ads, on its face, proposes a transaction that *necessarily* would constitute an illegal act. The government's characterization of the issues to be decided by the jury ignores the fact that the government cannot prosecute Defendants, under the Travel Act or otherwise, for publishing the charged ads if the publication of those ads was protected by the First Amendment. The Travel Act is a statute of general application that does not directly target speech, but that does *not* mean that the government's proposed application of the statute escapes First Amendment scrutiny. To the contrary, the government:

> may not harness generally applicable laws to abridge speech without first ensuring the First Amendment would allow it.…Laws cast in broad terms can restrict speech as much as laws that single it out.…General or not, the First Amendment applies when [a law] is used to silence protected speech.

*People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 827-28 (4th Cir. 2023). Further, the question of whether the First Amendment protected Backpage's publication of each charged ad will not depend on whether the government can prove an ad was "associated with unlawful activity," but whether it can prove the ad on its face "propose[d] an illegal transaction." *Valle Del Sol Inc. v. Whiting*, 709 F3d 808, 822 (9th Cir 2013). And that means proving the "consummation of th[e] transaction" proposed in an ad "would *necessarily* constitute an illegal act." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 114 (2d Cir. 2017) (emphasis in original). For this reason, the government's discussion of ads for firearms and billiards widely misses the mark, as whether such ads would be protected by the First Amendment turns not on the definition of a machine gun or whether a billiards ad is "indicative of illegal activity," but whether the ads proposed necessarily unlawful transactions—and they plainly did not.[1]

---

[1] Additionally, as the government contends Defendants violated the Travel Act, the government must prove, for each charged ad, that each Defendant specifically intended to

Second, in its indictment, throughout its opening statement, and through testimony elicited from its witnesses at the first trial, the *government* repeatedly characterized ads on Backpage.com as being "legal" or "illegal," whether directly or indirectly. During its opening statement, the government claimed:

> "How could these defendants create and run this website for nearly 14 years knowing that they were facilitating this **illegal conduct**?" Doc. 1341 at 6:3-5.
>
> "[B]ecause of the vast array of **prostitution ads** on Backpage, individuals could pay extra to have their ads moved to the top." *Id.* at 9:11-13.
>
> "Backpage generated a large amount of their revenue based on charging these individuals to post their **prostitution ads**…" *Id.* at 9:24-10:1.
>
> "You looked at the vast amount of **prostitution ads** in the Sacramento escort section of Backpage." *Id.* at 11:4-6.
>
> "[A] moderator was [] a former Backpage employee whose job was supposed to be preventing **illegal ads**, preventing **prostitution ads** from being posted on Backpage.com…" *Id.* at 20:20-23.
>
> "But while they were asserting to NCMEC and others that they were doing all they could to prevent the **illegal ads** from being posted on the website, evidence will show that these defendants' main concern was making money." *Id.* at 30:9-12.
>
> "And the evidence will show that these defendants…sent CNN a quote that Backpage is steadfast in its opposition of its website being used for **criminal activity**, and they also included…safety measures that they had implemented to ensure or attempt to prevent **illegal ads** from being posted on the website…" *Id.* at 31:16-21.
>
> "[T]he ads on Backpage.com were nothing less than **prostitution ads**. And knowing this, they took steps to facilitate the **prostitution crimes** being committed by folks who were posting these ads on the website…" *Id.* at 40:19-24.

---

promote or facilitate the "business enterprise" allegedly associated with the ad and allegedly involved in "prostitution offenses in violation of the laws of the State in which they [we]re committed." 18. U.S.C. § 1952(b). As the government does not allege, nor could it prove, that any Defendant knew about any charged ad, or knew anything about the persons associated with any ad or their activities, the jury will have only the ads themselves to assess, so whether the ads propose facially lawful or facially unlawful transactions plainly will be relevant. *See IMDB.com Inc. v. Becerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) (rejecting interpretation of "*Pittsburgh Press* [that] would require this court to permit the restriction not only of speech that proposes an illegal activity but also facially inoffensive speech that a third-party might use to facilitate its own illegal conduct…[N]othing in the First Amendment nor our precedent permits th[at] drastic step…").

Calling ads "prostitution ads" is, of course, tantamount to calling them "illegal ads." Moreover, during the examination of its first witness, Special Agent Supervisor Fichtner, the government and Fichtner continued to characterize Backpage.com ads as legal or illegal:

> Q. And what did you do next?  A. Then I placed a phone call to Carl Ferrer… And he said he also identified another **advertisement** that was linked to that escort ad, but it ***didn't appear to be illegal because it was a sofa for sale.***  Doc. 1334. at 46:2-3; 46:20-22.
>
> Q. Did you again raise the issue of **prostitution ads** with her during your call?  A. I did. I pointed out that, you know, a number of, gosh, almost all these advertisements just looked like **blatant prostitution ads**. *Id.* at 48:23-49:2.
>
> Q. [] Did Ms. McDougall ever call you to alert you to any **prostitution ads** on Backpage?
> A. She did not.  *Id.* at 49:12-14.
>
> Q. Did anybody from Backpage ever call you to alert you to any **prostitution ads** on Backpage?  A. No.  *Id.* at 49:17-19.

The government's motion ignores that its opening and, indeed, its entire case, hinges on the government and its witnesses characterizing Backpage.com ads that propose facially lawful transactions (dating, massage, or escorts) as "illegal ads" or "prostitution ads" (despite the absence of sex for money language).  As such, the portions of Defendants' opening statements to which the government now objects simply were rebutting the government's contrary claims. If the government is permitted to characterize the ads as it did, Defendants certainly must be permitted to defend by asserting the opposite.

Third, although the government complains about defense references to legal or illegal ads during opening statements, the government fails to mention it *never* objected to those references during the openings.  Moreover, when the government later objected to questions posed to Special Agent Supervisor Fichtner on cross-examination regarding the Backpage.com ads he reviewed, the Court overruled its objections to questions about whether those ads were legal or illegal.  Doc. 1335. at 117:16-25; Doc. 1345 at 67:19-68:11.  The government presents no new facts or law to justify the Court reversing course and barring references to ads as being legal or illegal.

Finally, *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988) addresses the scope of expert testimony and is inapposite to the issues posed by the government's motion.

RESPECTFULLY SUBMITTED this 15th day of June, 2023,

David Eisenberg.
David Eisenberg, PLC

By:   /s/ David Eisenberg
      David Eisenberg
      Attorneys for Andrew Padilla

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (May 2018) § II (C) (3), Paul J. Cambria, Jr. hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

**LIPSITZ GREEN SCIME CAMBRIA LLP**

Paul J. Cambria, Jr.
Erin McCampbell Paris
LIPSITZ GREEN SCIME CAMBRIA LLP

By:   /s/ Paul J. Cambria, Jr.
      Paul J. Cambria, Jr.

*Attorneys for Michael Lacey*

**OSBORN MALEDON, P.A.**

By   s/ Joseph N. Roth
     Timothy J. Eckstein
     Joseph N. Roth
     Sarah P. Lawson
     2929 North Central, 20th Floor
     Phoenix, Arizona  85012-2794

*Attorneys for James Larkin*

**FEDER LAW OFFICE PA**

By   s/ Bruce S. Feder (w/permission)
     Bruce S. Feder

2930 E. Camelback Road, Suite 160
Phoenix, Arizona  85016

**KESSLER LAW OFFICE**

By   s/ Eric W. Kessler (w/permission)
     Eric W. Kessler
     6720 N. Scottsdale Rd., Suite 210
     Scottsdale, Arizona  85253

*Attorneys for Scott Spear*

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW P.C.**

By   s/ Gary S. Lincenberg (w/permission)
     Gary S. Lincenberg
     Gopi K. Panchapakesan
     Ariel A. Neuman
     1875 Century Park E., Suite 2300
     Los Angeles, California  90067

*Attorneys for John Brunst*

**JOY BERTRAND LAW**

By   s/ Joy M. Bertrand (w/permission)
     Joy M. Bertrand
     P.O. Box 2734
     Scottsdale, Arizona  85252

*Attorneys for Joye Vaught*

| | |
|---|---|
| 1 | On June 15, 2023, a PDF version |
| 2 | of this document was filed with |
| 3 | Clerk of the Court using the CM/ECF |
|   | System for filing and for Transmittal |
| 4 | Of a Notice of Electronic Filing to the |
| 5 | Following CM/ECF registrants: |
| 6 | |
|   | Kevin Rapp, kevin.rapp@usdoj.gov |
| 7 | Peter Kozinets, peter.kozinets@usdoj.gov |
| 8 | Margaret Perlmeter, margaret.perlmeter@usdoj.gov |
|   | Andrew Stone, andrew.stone@usdoj.gov |
| 9 | Daniel Boyle, Daniel.boyle2@usdoj.gov |
| 10 | Austin Berry, austin.berry2@usdoj.gov |