1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF ARIZONA

8

9   United States of America,                    CR-18-00422-PHX-DJH

10                              Plaintiff,

11        vs.                                     **JOINT PROPOSED JURY
                                                  INSTRUCTIONS**

12   Michael Lacey, et al.,

13
                                  Defendants.
14

15

16         In accordance with the Court's Orders (Docs. 1524 & 1546), the parties submit their

17   joint proposed jury instructions.  The parties—consistent with the Court's guidance—have

18   not included the text of the model instruction, except when the instructions have been

19   specifically tailored for this case.  Those tailored instructions are noted below with an

20   asterisk.  Bracketed material remaining in the attached instructions indicates areas needing

21   clarification or input from the Court.

22         Section I contains model instructions.  If the instruction is stipulated to by the parties

23   then it is preceded by "ST."  If only one party requests the instruction, then the instruction

24   is preceded by either "PL" (Plaintiff) or "DF" (Defendant), along with any objections.

25   Section II contains non-model instructions to which the parties have stipulated.  Section III

26   contains the non-model instructions requested by the United States and Defendants'

27   objections.  Section IV contains non-model instructions requested by Defendants and the

28   United States' objections.

1    I.      **MODEL INSTRUCTIONS**

2    1.      Preliminary Instructions

3            ST    1.1    Duty of Jury

4            PL    1.2    The Charge – Presumption of Innocence*

5            DF    1.2    The Charge – Presumption of Innocence*

6            ST    1.3    What Is Evidence

7            ST    1.4    What Is Not Evidence

8            ST    1.5    Direct and Circumstantial Evidence

9            ST    1.6    Ruling on Objections

10           ST    1.7    Credibility of Witnesses

11           ST    1.8    Conduct of the Jury

12           ST    1.9    No Transcript Available to Jury

13           ST    1.10   Taking Notes

14           ST    1.11   Outline of Trial

15           PL    1.13   Separate Consideration for Each Defendant

16           DF    1.13   Separate Consideration for Each Defendant*

17           ST    1.16   Bench Conferences and Recesses

18   2.      Instructions In The Course Of Trial

19           ST    2.1    Cautionary Instruction – First Recess

20           ST    2.2    Stipulated Testimony [if necessary]

21           ST    2.3    Stipulations of Fact [if necessary]

22           ST    2.12   Evidence for Limited Purpose [if necessary]

23   3.      Consideration of Particular Evidence

24           ST    3.9    Testimony of Witnesses Involving Special Circumstances—Immunity,

25                        Benefits, Accomplice, Plea

26           ST    3.14   Opinion Evidence, Expert Witness

27           ST    3.15   Dual Role Testimony

28           ST    3.16   Charts and Summaries Not Admitted into Evidence [if necessary]

| | | | |
|---|---|---|---|
| ST | 3.17 | Charts and Summaries Admitted into Evidence |
| 4. | Responsibility | | |
| PL | 4.8 | Knowingly |
| PL | 4.9 | Deliberate Ignorance* |
| DF | 4.11 | Advice of Counsel* |
| 5. | Specific Defenses | | |
| DF | 5.12 | Mere Presence* |
| 6. | Jury Deliberations | | |
| ST | 6.1 | Duties of Jury to Find Facts and Follow Law |
| PL | 6.2 | Charge Against Defendant Not Evidence—Presumption of Innocence—Burden of Proof |
| DF | 6.2 | Charge Against Defendant Not Evidence—Presumption of Innocence—Burden of Proof* |
| ST | 6.3 | Defendant's Decision Not to Testify [if necessary] |
| ST | 6.4 | Defendant's Decision to Testify [if necessary] |
| PL | 6.5 | Reasonable Doubt—Defined |
| DF | 6.5 | Reasonable Doubt—Defined* |
| ST | 6.6 | What Is Evidence |
| ST | 6.7 | What Is Not Evidence |
| ST | 6.8 | Direct and Circumstantial Evidence |
| ST | 6.9 | Credibility of Witnesses |
| ST | 6.10 | Activities Not Charged |
| PL | 6.13 | Separate Consideration of Multiple Counts—Multiple Defendants |
| DF | 6.13 | Separate Consideration of Multiple Counts—Multiple Defendants* |
| ST | 6.18 | On or About—Defined |
| ST | 6.19 | Duty to Deliberate |
| ST | 6.20 | Consideration of Evidence—Conduct of the Jury |
| ST | 6.21 | Use of Notes |

| | | | |
|---|---|---|---|
| 1 | ST | 6.22 | Jury Consideration of Punishment |
| 2 | ST | 6.23 | Verdict Form |
| 3 | ST | 6.24 | Communication with Court |

11. <u>Conspiracy</u>

| | | | |
|---|---|---|---|
| 5 | PL | 11.1 | Conspiracy—Elements (Count 1)* |
| 6 | DF | 11.1 | Conspiracy—Elements (Count 1)* |
| 7 | DF | 11.3 | Multiple Conspiracies (Count 1)* |
| 8 | DF | 11.3 | Multiple Conspiracies (Count 52)* |
| 9 | PL | 11.4 | Conspiracy—Knowledge of and Association with Other Conspirators |
| 10 | DF | 11.4 | Conspiracy—Knowledge of and Association with Other Conspirators* |
| 12 | PL | 11.6 | Conspiracy—Liability for Travel Act Violations Committed by Co-Conspirator (*Pinkerton* Charge)* |
| 14 | DF | 11.6 | Conspiracy—Liability for Travel Act Violations Committed by Co-Conspirator (*Pinkerton* Charge)* |
| 16 | PL | 11.6 | Conspiracy—Liability for Concealment Money Laundering Committed by Co-Conspirator (*Pinkerton* Charge)* |
| 18 | DF | 11.6 | Conspiracy—Liability for Concealment Money Laundering Committed by Co-Conspirator (*Pinkerton* Charge)* |
| 20 | PL | 11.6 | Conspiracy—Liability for International Promotional Money Laundering Committed by Co-Conspirator (*Pinkerton* Charge)* |
| 22 | DF | 11.6 | Conspiracy—Liability for International Promotional Money Laundering Committed by Co-Conspirator (*Pinkerton* Charge)* |

18. <u>Money Laundering and Racketeering Offenses</u>

| | | | |
|---|---|---|---|
| 25 | PL | 18.1 | Travel Act—Interstate or Foreign Travel in Aid of Racketeering Enterprises* |
| 27 | DF | 18.1 | Travel Act—Interstate or Foreign Travel in Aid of Racketeering Enterprises* |

|   | PL | 18.4 | Laundering Monetary Instruments* |
|---|----|------|----------------------------------|
|   | DF | 18.4 | Laundering Monetary Instruments* |
|   | PL | 18.5 | Transporting or Attempting to Transport Funds to Promote Unlawful Activity* |
|   | DF | 18.5 | Transporting or Attempting to Transport Funds to Promote Unlawful Activity* |
|   | PL | 18.6 | Transporting or Attempting to Transport Monetary Instruments for the Purpose of Laundering* |
|   | DF | 18.6 | Transporting or Attempting to Transport Monetary Instruments for the Purpose of Laundering* |
|   | PL | 18.7 | Money Laundering* |
|   | DF | 18.7 | Money Laundering* |
|   | PL | 18.7A | Money Laundering Conspiracy* |
|   | DF | 18.7A | Money Laundering Conspiracy* |

II.   **NON-MODEL STIPULATED INSTRUCTIONS**

III.   **NON-MODEL INSTRUCTIONS REQUESTED BY THE UNITED STATES**

|   | PL | 1. | State Law Need Not Be Violated for Defendants to Be Found Guilty Under the Travel Act |
|---|----|-----|--------------------------------------------------------------------------------------|
|   | PL | 2. | "Business Enterprise" Defined |
|   | PL | 3. | "Uses Any Facility in Interstate Commerce" Defined |
|   | PL | 4. | "Facilitate" Defined |
|   | PL | 5. | Specific Intent Defined |
|   | PL | 6. | Proof of Knowledge or Intent |

IV.   **NON-MODEL INSTRUCTIONS REQUESTED BY DEFENDANTS WITH THE UNITED STATES' OBJECTIONS**

|   | DF | 1. | Specific Intent |
|---|----|-----|-----------------|
|   | DF | 2. | Defendant's Good Faith |

| | | | |
|---|---|---|---|
| 1 | DF | 3. | Defense Theory of the Case |
| 2 | DF | 4. | Conspiracy – Willfulness Defined |
| 3 | DF | 5. | Business Enterprise Explained |
| 4 | DF | 6. | Business Enterprise Defined |
| 5 | DF | 7. | First Amendment Protection—Speech Presumed Protected |
| 6 | DF | 8. | First Amendment Protection—Speech Presumed Protected |
| 7 | DF | 9. | First Amendment Protection—Offensive and Sexual Speech |
| 8 | DF | 10. | First Amendment Protection—Protected Free Speech |
| 9 | DF | 11. | First Amendment Protection—Ads Presumed Protected |
| 10 | DF | 12. | First Amendment Protection—Coded Advertisement Language |
| 11 | DF | 13. | First Amendment Protection—Examples of Legal "Adult" Services |
| 12 | DF | 14. | First Amendment Protection—Ads Presumed Protected |
| 13 | DF | 15. | First Amendment Protection—Government's Burden to Overcome |
| 14 | | | Presumption |
| 15 | DF | 16. | First Amendment Protection—Ads Presumed Protected |
| 16 | DF | 17. | First Amendment Protection—No Requirement to Investigate |
| 17 | DF | 18. | First Amendment Protection—No Requirement to Shut Down |
| 18 | DF | 19. | First Amendment Protection—Website has the Right to Exercise |
| 19 | | | Editorial Control and Judgment |
| 20 | DF | 20. | First Amendment Protection—Government's Burden of Proof |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

## UNITED STATES' PROPOSED INSTRUCTION 1.2 THE CHARGE—
## PRESUMPTION OF INNOCENCE

This is a criminal case brought by the United States government. The United States charges Defendants with conspiracy, violations of the Travel Act, and money laundering. The charges against Defendants are contained in the indictment. The indictment[1] simply describes the charges the United States brings against each defendant. The indictment is not evidence and does not prove anything.

Each defendant has pleaded not guilty to the charges and is presumed innocent unless and until the United States proves that defendant guilty beyond a reasonable doubt. In addition, each Defendant has the right to remain silent and never has to prove innocence or present any evidence.

In order to help you follow the evidence, I will now give you a brief summary of the elements of the crimes that the United States must prove to make its case against each charged defendant:

Count 1 is conspiracy—the three elements of conspiracy are as follows:

First, beginning in or around 2004, and ending on or about April 2018, there was an agreement between two or more persons to commit at least one Travel Act offense as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects, and intending to help accomplish it; and

Third, on or after March 28, 2013, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Counts 2-51 are Travel Act counts—the two elements to support a Travel Act conviction are as follows:

First, the defendant used the used the mail or any facility in interstate commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management,

---

[1] All references to "indictment" in these instructions refer to the United States' superseding indictment (Doc. 230).

establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed; and

Second, after doing so the defendant performed an act that did promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed.

Further, you may find a given defendant guilty of the Travel Act as charged in Counts 2-51 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a member of the conspiracy committed the Travel Act offense as alleged in that count;

Second, the person was a member of the conspiracy charged in Count 1 of the indictment;

Third, the person committed the Travel Act offense alleged in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offense charged in Counts 2-51 was committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

Count 52 is conspiracy to commit money laundering—the two elements of money laundering conspiracy are as follows:

First, there was an agreement to commit money laundering;

Second, the defendant knew the objective of the agreement; and

Third, the defendant joined the agreement with the intent to further its unlawful purpose.

Counts 53-62 are concealment money laundering—the three elements of concealment money laundering are as follows:

First, the defendant conducted a financial transaction involving property that represented the proceeds of promoting, managing, establishing, carrying on, or facilitating the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed.

Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

Counts 63-68 are international promotional money laundering—the two elements of international promotional money laundering are as follows:

First, the defendant transported money from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States; and

Second, the defendant acted with the intent to promote the carrying on of the specified criminal activity in the indictment.

Counts 69-99 are transactional money laundering—the five elements of transactional money laundering are as follows:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from specified unlawful activity, that is promoting or facilitating the promotion of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed; and

Fifth, the transaction occurred in the United States.

Count 100 is international concealment money laundering—the three elements of

international concealment money laundering are as follows:

First, the defendant transported money from a place in the United States to or through a place outside the United States;

Second, the defendant knew that the money represented the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses; and

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses.

## DEFENDANTS' OBJECTION

Defendants' and the government's proposed modified instructions 1.2 are similar in many respects but defendants object to the following portions of the government's version:

First, as to the description of the elements of Count 1, the government's instruction states that the conspiracy began "around 2004, and end[ed] on or about April 2018." This improperly assumes that evidence related to Backpage business practices in place prior to September 10, 2013 (the earliest publication date of one of the fifty charged ads) is relevant to the conspiracy charge. As explained in defendants' Motion in Limine at Doc. 1591, evidence related to Backpage's pre-2013 alleged prostitution marketing practices should be excluded because those practices all ceased before 2013. As the Court has held, the conspiracy charge is not a "boundless conspiracy to facilitate prostitution in general" or the "amorphous notion of 'prostitution,'" but rather is for "facilitating (via publishing ads) on fifty distinct occasions" between 2013 and 2018. Doc. 946 at 13. The government contends that the pre-2013 business practices are relevant to prove up defendants' specific intent. Whatever the outcome of the MIL, it remains that defendants will contest the admissibility of such evidence during trial. The preliminary jury instructions should not prejudice defendants by pre-judging the pertinence of pre-2013 business practices in this jury instruction.

Second, the government omits the word "illegal" before "objects" in the second

element of Count 1.  But mere association with members of a conspiracy, "without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator."  *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (citing *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980)).  Given that indictment says "the object of the conspiracy was to obtain money" (Doc. 230, ¶ 197)—a patently *lawful* object—it is critical that the jury understand that the object of a conspiracy must be unlawful.

### DEFENDANTS' PROPOSED INSTRUCTION
### 1.2 THE CHARGE—PRESUMPTION OF INNOCENCE

This is a criminal case brought by the United States government. The United States charges Defendants with conspiracy, violations of the Travel Act, and money laundering. The charges against Defendants are contained in the indictment. The indictment[2] simply describes the charges the United States brings against Defendants. The indictment is not evidence and does not prove anything.

Defendants have pleaded not guilty to the charges and are presumed innocent unless and until the United States proves Defendants guilty beyond a reasonable doubt. In addition, Defendants have the right to remain silent and never have to prove innocence or present any evidence.

In order to help you follow the evidence, I will now give you a brief summary of the elements of the crimes that the United States must prove to make its case against each charged defendant:

Count 1 is conspiracy—the three elements of conspiracy are as follows:

First, there was an agreement between two or more persons to commit at least one Travel Act offense as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its unlawful objects, and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Counts 2-51 are Travel Act counts—the two elements to support a Travel Act conviction are as follows:

First, the defendant used the mail or any facility in interstate commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management,

---

[2] All references to "indictment" in these instructions refer to the United States' superseding indictment (Doc. 230).

- 12 -

establishment, or carrying on, of a business enterprise involving prostitution offenses in violation of the laws of the State in which they were committed or of the United States; and

Second, after doing so the defendant performed or attempted to perform an act that did promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of that business enterprise involving prostitution offenses.

Further, you may find the defendants guilty of the Travel Act as charged in Counts 2-51 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a person committed the Travel Act offense as alleged in Counts 2-51 of the indictment;

Second, the person committing the Travel Act offense was a member of the conspiracy charged in Count 1 of the indictment;

Third, the person committing the Travel Act offense committed the offense alleged in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the Travel Act offense charged in Counts 2-51 was committed; and

Fifth, the Travel Act offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

Count 52 is conspiracy to commit money laundering—the three elements of money laundering conspiracy are as follows:

First, there was an agreement between two or more persons to commit at least one crimes alleged in the money laundering conspiracy, and

Second, that the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

- 13 -

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Counts 53-62 are concealment money laundering—the three elements of concealment money laundering are as follows:

First, the defendant conducted a financial transaction involving property that represented the proceeds of promoting, managing, establishing, carrying on, or facilitating the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses.

Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

Counts 63-68 are international promotional money laundering—the two elements of international promotional money laundering are as follows:

First, the defendant transported money from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States; and

Second, the defendant acted with the intent to promote the carrying on of the specified criminal activity in the indictment.

Counts 69-99 are transactional money laundering—the five elements of transactional money laundering are as follows:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from specified unlawful activity, that is promoting or facilitating the promotion of any business enterprise involving prostitution offenses; and

Fifth, the transaction occurred in the United States.

Count 100 is international concealment money laundering—the three elements of international concealment money laundering are as follows:

First, the defendant transported money from a place in the United States to or through a place outside the United States;

Second, the defendant knew that the money represented the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses; and

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses.

**Supporting Authorities**

Ninth Circuit Model Crim. J. Instructions 1.2 (modified to reflect charges in the indictment).

**UNITED STATES' OBJECTIONS**

The Court has already issued this preliminary instruction, after carefully considering the parties' arguments and submissions.  Doc. 1311 at 3-6; Doc. 1340 at 25, 47-52.  The Court's preliminary instruction should be deemed law of the case.  *See* Doc. 1524 at 4 & n.2.

In the Court's preliminary instruction, the first element of Count 1 and Count 52 reads: "First, beginning in or around 2004, and ending on or about April 2018 . . ."  Doc. 1311 at 3, 4.  This is consistent with how the Count 1 and Count 52 conspiracies are charged in the Superseding Indictment, Doc. 230, SI ¶¶196, 203.  The United States objects to Defendants' elimination of this date range, which conflicts with the SI.

In addition, Defendants removed the "March 28, 2013" date in the third element of Count 1, without explanation.  Yet that date reflects the statute of limitations period for the SI's Travel Act-related counts, and should remain.

And, Defendants erroneously added an overt act requirement to the Count 52 conspiracy when that isn't required.  *Whitfield v. United States*, 543 U.S. 209, 210-11 (2005) ("These cases present the question whether conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), requires proof of an overt act in furtherance of the conspiracy.  We hold that it does not."); *id.* at 214 ("Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction.").

The instruction should remain substantively the same as the preliminary instruction issued by the Court during the first trial.  The United States' only substantive proposed change is in the section for Count 52.  The United States replaced the Court's language (Doc. 1311 at 4-5) with the language in Model Instruction 18.7A, which provides updated language for a Money Laundering Conspiracy charge.  In all other respects, the instruction issued by the Court previously should remain the instruction given at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES' PROPOSED 1.13 INSTRUCTION**

**SEPARATE CONSIDERATION FOR EACH DEFENDANT**

**DEFENDANTS' OBJECTION**

The government's proposed instruction is misleading. As the Court has emphasized: "[T]his case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case." Tr. of Dec. 4, 2020 Hearing. Although evidence relating to Backpage.com will necessarily be introduced, an additional paragraph explaining who is on trial will focus the juror's attention on what all parties agree: "Backpage.com isn't on trial." Doc. 1216-003 at 34.

**DEFENDANTS' PROPOSED INSTRUCTION**

**1.13 SEPARATE CONSIDERATION FOR EACH DEFENDANT**

Although the defendants are being tried together, you must give separate consideration to each defendant.  In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendant[s].  The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendant.

Only the defendants are on trial.  Backpage.com is not on trial.  You must evaluate the evidence as to each individual defendant, and not as to Backpage.com or any other person.

**Supporting Authorities**

Ninth Circuit Manual of Model Criminal Jury Instructions 1.13; *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

**UNITED STATES' OBJECTIONS**

Defendants add an extra paragraph at the end of the Model Instruction.  The United States objects.

First, this extra language is unnecessary.  The Model instruction aptly sets forth the law as it should be applied by the jury.  Second, the added language is confusing.  While it's true that Backpage is not a defendant at trial (because it already pleaded guilty),[3] it is also true that the six Defendants created, and at relevant times owned, controlled, managed, and oversaw the website's operations.  As the Superseding Indictment alleges:

---

[3] *United States v. Backpage.com, LLC*, CR-18-465-PHX-DJH at Doc. 8-2.

"The website www.backpage.com ('Backpage') was, until being shut down by federal law enforcement authorities in April 2018, notorious for being the internet's leading source of prostitution advertisements."  SI ¶1.

"Backpage was created in 2004 by defendant Michael Lacey ("LACEY"), defendant James Larkin ("LARKIN"), and third individual, C.F.  From 2004-15, LACEY and LARKIN oversaw the website's policies and strategic direction.  Additionally, LACEY and LARKIN retained significant control over the website (and continued receiving tens of millions of dollars of Backpage-related distributions) after purportedly selling their interests in Backpage in 2015."  SI ¶2.

"Defendant SCOTT SPEAR served as the Executive Vice President of one of Backpage's parent companies and held, at times, an ownership interest in Backpage of approximately 4%."  SI ¶3.

"Defendant JOHN "JED" BRUNST ("BRUNST") served as the Chief Financial Officer of Backpage and several of Backpage's parent companies and held, at times, an ownership interest in Backpage of approximately 6%."  SI ¶4.

"Defendant ANDREW PADILLA ("PADILLA") served as Backpage's Operations Manager."  SI ¶5.

"Defendant JOYE VAUGHT ("VAUGHT") served as Backpage's assistant Operations Manager."  SI¶ 6.

In short, while Backpage isn't on trial, the remaining Defendants owned, managed, or operated the website, and they were largely responsible for the website's strategic business decisions.  The jury should be permitted to evaluate the evidence and make a determination about whether each individual Defendant is guilty of crimes alleged against them in the SI.  Part of that evaluation will be determining each individual Defendant's culpability in managing, owning, or operating Backpage.

**UNITED STATES' PROPOSED INSTRUCTION 4.8 KNOWINGLY—DEFINED**

An act is done knowingly if the defendant is aware of the act, and does not act or fail to act through ignorance, mistake, or accident.  You may consider evidence of the defendants' words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

**DEFENDANTS' OBJECTIONS**

The Travel Act and money laundering charges are specific intent crimes.  Therefore, it would be reversible error to provide a "Knowingly" instruction here.  *See United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (Travel Act violation is a specific intent crime); *United States v. Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986) (same); *United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000) (same); *see* Ninth Circuit Model Criminal Jury Instructions at 18.3 cmt. ("Because it is a specific intent crime, it is reversible error to give Instruction 4.8 (Knowingly–Defined) in a money laundering case.") (citing *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994); *United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997)).

Defendants propose a specific intent instruction to accurately advise the jury of the required mens rea for the charged offenses.  *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB,Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

1

## UNITED STATES' RESPONSE

2          Knowledge is an important element of several of the crimes charged in the SI.

3   Critically, knowledge is a *sine qua non* of intent, as the Court recognized in its May 4, 2020

4   Order:

5              "To establish Defendants' violation of the Travel Act, the Government must
              prove, among other things, that Defendants acted with a culpable state of
6              mind." *United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003). "In
              other words, the Travel Act requires a defendant act *not only with knowledge
7              of what he is doing*, but also with the objective of promoting some unlawful
              activity." *Id.* As a result, there must be allegations that each Defendant had a
8              "specific intent to promote, manage, establish, carry on or facilitate one of
              the prohibited activities." *United States v. Gibson Specialty Co.*, 507 F.2d
9              446, 449 (9th Cir. 1974) (citing *United States v. Gebhard*, 441 F.2d 1261 (6th
              Cir. 1971)); *see also United States v. Polizzi*, 500 F.2d 856, 876–77 (9th Cir.
10             1974) (describing this element as a "specific intent to facilitate an activity
              which the accused knew to be unlawful").
11
    Doc. 946 at 14 (emphasis added).
12
13          The Court went on to emphasize that Defendants' alleged awareness—*i.e.*,

14   *knowledge*—that the vast majority of adult and escort ads on Backpage were for

15   prostitution, combined with other allegations, further supported the SI's allegations of

16   intent:

17             First, the SI alleges Defendants "used the mail and any facility in interstate
              and foreign commerce *with intent* to otherwise promote, manage, establish,
18             carry on, and facilitate the promotion, management, establishment, and
              carrying on of an unlawful activity, to wit: prostitution offenses . . . ." (SI ¶
19             201 (emphasis added)). It also alleges "Defendants were aware that the vast
              majority of the 'adult' and 'escort' ads appearing on Backpage were actually
20             ads for prostitution and took steps to intentionally facilitate that illegal
              activity." (*Id.* ¶ 9; *see also id.* ¶¶ 10-11.) Only by ignoring these allegations
21             can it seriously be argued that Defendants' intent to facilitate unlawful
              activity is not alleged.

22   Doc. 946 at 15; *see also id.* at 16 (the SI additionally alleges Defendants "received notice

23   by various third parties that a majority of their 'adult services' ads were being used to

24   support these prostitution ventures").

25          In the preliminary instructions, the Court provided a "specific intent" instruction

26   (Doc. 1311 at 7), so the jury will not be not be confused as to the requisite *mens rea*. But,

27   because specific intent can be inferred from knowledge, this instruction is appropriate. In

28   addition, knowledge is included in the jury instructions for several money laundering

crimes alleged in the SI.   Ninth Cir. Manual of Model Crim. J. Instr. 18.4, 18.6, & 18.7.

Additional authorities underscore that intent can be inferred from knowledge in a variety of circumstances—including several that fit comfortably within the allegations of the SI.  In *People v. Lauria*, 59 Cal. Rptr. 628, 635 (Cal. Ct. App. 1967), for example, the court reversed a conspiracy conviction of a defendant who operated a telephone messaging service knowing that some of his customers were using his services to further their prostitution businesses.  After detailed legal analysis, the court found that the supplier's specific intent to facilitate unlawful activity may be inferred from knowledge in any one of several circumstances (none of which was present in *Lauria*), including:

- "[P]roof . . . of inflated charges" for goods or services used for illegal activities (the United States anticipates introducing evidence that Backpage charged much higher fees for its "adult" and "escort" ads than for ads in its non-adult sections);

- "[E]vidence of any unusual volume of business with prostitutes," such as where "sales for illegal use amount to a high proportion of the seller's total business" (the United States anticipates introducing evidence that Backpage derived the lion's share of its revenues from prostitution ads); or

- Selling goods or services that "serve no other purpose than to advertise the professional services of the prostitutes" (the United States anticipates introducing evidence that the vast majority of Backpage's "adult" and "escort" ads were prostitution ads).

*Lauria*, 59 Cal. Rptr. at 632-33.  *See also* Wayne R. LaFave, 2 *Substantive Criminal Law* (SUBCRL) § 12.2(c)(3), Providing goods or services, (3d ed., Oct. 2020 update) ("Intent may also be inferred from the fact that the seller has made inflated charges, that he has supplied goods or services which have no legitimate use, or that the sales to the illegal operation have become the dominant proportion of the seller's business."); *id*. (courts have also focused on "the quantity of the sales; the continuity of the relationship between seller and buyer; the seller's initiative or encouragement; and the nature of the goods," and on deceptive or "secretive" tactics used by the seller).

- 22 -

Moreover, *Lauria* found that no inference would be needed in cases involving "[d]irect evidence of participation, such as advice from the supplier of legal goods or services to the user of those goods or services on their use for illegal purposes. . . . When the intent to further and promote the criminal enterprise comes from the lips of the supplier himself, ambiguities of inference from circumstance need not trouble us." *Id*. at 632.  The United States anticipates introducing evidence showing, *inter alia*, that Backpage managers and employees helped customers craft their ads to reduce the risk of law enforcement detection without changing the underlying message (moderation), created ads for prostitutes and pimps and offered to publish them for a trial period for no or reduced fees (aggregation), entered into affiliation agreements with bulk prostitution advertisers like Dollar Bill (who received discounts, commissions or other fees from Backpage), and paid thousands of dollars to The Erotic Review, a Yelp-like website for buyers and sellers of commercial sex, in a cross-referral/cross-linkage business arrangement.

In yet another example of the interplay between Travel Act violations and "knowledge," Senior District Judge David Campbell—during grand jury proceedings in this case—recognized that federal law "criminalize[s] the knowing publication of an advertisement for illegal prostitution or other illegal activity."  Doc. 194-1 at 66.  Even Defendants' attorney agreed with Judge Campbell about when Defendants could be held criminally liable.  Doc. 446-1 at 39 ("[I]f there is actual knowledge, say through participation in a venture, you're conspiring with somebody, you know they posted an ad, you know the person involved is underage, that's a prosecutable crime, Your Honor.").

Model Instruction 4.8 "Knowingly—Defined" should be given.

**UNITED STATES' PROPOSED INSTRUCTION**

**4.9 DELIBERATE IGNORANCE**

You may find that the defendant acted knowingly if you find beyond a reasonable doubt that:

First, the defendant was aware of a high probability that the vast majority of the "adult" and "escort" ads appearing on Backpage.com were actually ads for prostitution, and

Second, the defendant deliberately avoided learning the truth.

You may not find such knowledge, however, if you find that the defendant actually believed that the vast majority of the "adult" and "escort" ads appearing on Backpage.com were not ads for prostitution, or if you find that the defendant was simply negligent, careless, or foolish.

**DEFENDANTS' OBJECTION**

The government's proposed *Jewell* instruction, one that typically is used in drug smuggling cases, is inappropriate here.  *See* Ninth Circuit Model Criminal Jury Instructions at 5.8 (providing the example of a defendant being aware of a high probability that "drugs were in the defendant's automobile"); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir. 1976) (involving drugs sealed in a secret compartment of a car).

The Travel Act and money laundering charges are specific intent crimes; it would therefore be reversible error to provide a "Deliberate Ignorance" instruction to the jurors here.  *See Jewell*, 532 F.2d at 700-701 (such an instruction is only appropriate where the underlying crime requires mere knowledge).  S*ee also United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (evidence that would establish that manufacturers of gambling paraphernalia repeatedly sold punchboards and pulltabs to distributors in Montana, despite knowing that the mere possession of punchboards and pulltabs violated Montana's gambling laws, was insufficient to establish a violation of the Travel Act, because the Travel Act is a specific intent crime, "intent to facilitate a criminal venture is expressly made part of the offense," and, therefore, "the prosecutor must show that the

manufacturer in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement"). The Ninth Circuit expressly rejected the government's contention that the "presumption that one intends the natural and probable consequences of his actions" was sufficient "to establish intent to facilitate criminal activity" because it was "as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser." *Id*. at 450 fn.8. *See also United States v. Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986) (a "defendant is entitled to an instruction as to the elements of the offense charged" and "[o]ne element of a Travel Act violation is proof of specific intent to promote 'unlawful activity.'"); *United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000) (same); *see* Ninth Circuit Model Criminal Jury Instructions at 18.3 cmt. ("Because it is a specific intent crime, it is reversible error to give Instruction 4.8 (Knowingly–Defined) in a money laundering case.") (citing *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994). *Cf. United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997)).

Further, such an instruction is only appropriate "if the jury rejects the government's case as to actual knowledge." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) ("In deciding whether to give a willful blindness instruction, in addition to an actual knowledge instruction, the district court must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge. If so, the court may also give a *Jewell* instruction."). And "[e]ven if the factual predicates of the instruction are present, the district judge has discretion to refuse it." *Id.*

Further, even if such an instruction were appropriate, whether a given defendant "was aware of a high probability that the vast majority of the 'adult' and 'escort' ads appearing on Backpage.com were actually ads for prostitution" is not a substitute for the government having to prove beyond a reasonable doubt that each defendant specifically intended to facilitate the prostitution offenses committed by the particular business enterprise associated with one or more of the fifty advertisements at issue in Counts 2-51 through publishing the ad(s). *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-

CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").  Willful blindness therefore cannot meet the elements of the offenses.

Additionally, even if a *Jewell* instruction was appropriate in this case, the government's proposed instruction ignores the language of *Jewell* restricting the instruction to circumstances where a defendant's ignorance "was solely and entirely a result of . . . a conscious purpose to avoid learning the truth."  *United States v. Jewell*, 532 F.2d 697, 704 (9th Cir. 1976).

Finally, the government's proposed *Jewell* instruction also is inconsistent with the First Amendment.  The government's proposed instruction would suggest to the jury that the government can prosecute the publisher of speech that is presumptively protected by the First Amendment because the speech looked like it might be associated with unlawful activity or because various parties claim that it was associated with unlawful activity.  The government, in effect, claims that it can do indirectly through the Travel Act what three federal courts previously have held that the government cannot do directly—criminalize the publication of third-party speech because it looks like speech associated with criminal activity.  *Backpage.com, LLC v. Hoffman*, Case No. 13–cv–03952 (DMC)(JAD), 2013 WL 4502097 (D.N.J. Aug. 20, 2013) (striking down, under First Amendment, state statute criminalizing advertisements "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor" and rejecting state's claim that the statute "regulates illegal advertisements…not protected by

the First Amendment" because, among other things, "[d]escribing criminal conduct as anything that is 'implicit' is inherently vague, because it means '[n]ot directly expressed [and] existing [only] inferentially' and 'fails to clearly mark the boundary between what is permissible and impermissible'"); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013) (striking down, under First Amendment, state statute criminalizing advertisements "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor" and rejecting state's claim that the statute did not "not implicate First Amendment scrutiny because it criminalize[d] only offers to engage in illegal transactions" because, among other things, "the statute as written does not 'criminalize only offers to engage in illegal transactions' because—as discussed above—the statute's potential reach extends to notices related to legal, consensual activity by adults"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1268, 1277 (W.D. Wash. 2012) (striking down, under First Amendment, state statute criminalizing "'directly or indirectly' caus[ing] content to be published, disseminated or displayed if it contains a 'depiction of a minor' and any 'explicit or implicit offer' of sex for 'something of value'" because, among other things, the statute was unconstitutionally vague: "'[A] speaker may not be put at complete peril in distinguishing between protected and unprotected speech. Otherwise, he could only be certain of avoiding liability by holding his tongue, causing him 'to make only statements which 'steer far wide [ ] of the unlawful zone.''").

The Court should not permit the government to suggest to the jury either that defendants had an obligation to stop publishing facially lawful third-party speech on Backpage.com because some of that speech might be associated with unlawful activity or that the jury can find that defendants intended to violate the law because Backpage.com did not stop publishing speech presumptively protected by the First Amendment. *Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 142 & fn.170 (3d Cir. 2020) (rejecting city's argument that speech "concern[ed] unlawful activity" where the speech *might* relate to unlawful activity because "commercial speech should not lose the protection of the First Amendment simply because a legislature has prohibited one of

many uses of the regulated speech," unlike restricting "advertising of the sale of cocaine, for example, [which] would present a speech restriction that *always* and *only* related to illegal activity because there are no other legal uses/purposes behind the sale of cocaine") (emphasis in original); *IMDB.com Inc. v. Bacerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) ("*Pittsburgh Press* implicates only those instances when the state restricts *speech that itself proposes an illegal transaction…*SAG's interpretation of *Pittsburgh Press* would require this court to permit the restriction not only of speech that proposes an illegal activity but also facially inoffensive speech that a third-party might use to facilitate its own illegal conduct.   But as the Supreme Court has noted, 'it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.' *Bartnicki v. Vopper*, 532 U.S. 514, 529–30, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001)…Rather than restrict truthful speech, the typical 'method of deterring unlawful conduct is to  impose an appropriate punishment on the person who engages in it.' *Bartnicki*, 532 U.S. at 529, 121 S.Ct. 1753.") (emphasis added); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F3d 104, 114 (2d Cir. 2017) ("[T]he First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would *necessarily* constitute an illegal act.   However, if, as here, there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.") (emphasis in original); *Valle Del Sol Inc. v. Whiting*, 709 F3d 808, 822 (9th Cir. 2013) ("*Central Hudson*'s legality requirement [] has traditionally focused *on the content of affected speech—i.e.*, *whether the speech proposes an illegal transaction—*instead of whether the speech is *associated with unlawful activity*.") (emphasis added)); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 fn.7 (9th Cir. 2009) ("Central Hudson asks if the commercial speech is 'related to unlawful activity.' Thus, *in the context of advertising, one must ask whether the goods or services the party advertises are illegal*.") (emphasis added, citation omitted); *Pruett v. Harris Cty. Bail Bond Bd.*, 499 U.S. 403, 414 (5th Cir. 2007) (the "threshold inquiry" asks whether "the product

or service spoken about is illegal," not whether a commercial solicitation might lead to a violation of the law); *Eimann v. Soldier of Fortune Mag., Inc.*, 880 F.2d 830, 837-38 (5th Cir. 1989) (publishers are not required to reject "any suspicious, ambiguous ad that might cause serious harm," because "in the constitutional arena we have noted that the possibility of illegal results does not necessarily strip an ad of its commercial speech protection"); *Dunagin v. City of Oxford*, 718 F.2d 738, 743 (5th Cir. 1983) (*en banc*) ("The commercial speech doctrine would disappear if its protection ceased whenever the advertised product might be used illegally."); *Art & Antique Dealers League of Am., Inc. v. Seggos*, 394 F. Supp. 3d 447, 459 (S.D.N.Y. 2019) ("Although the First Amendment does not protect speech proposing a transaction that 'necessarily constitute[s] an illegal act,' if 'there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.'"); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 128 F. Supp. 3d 597, 615 (E.D.N.Y. 2015) ("When the legality of a proposed commercial transaction depends on circumstances outside the content of the speech, the activity is lawful and the speech is entitled to protection under *Central Hudson*."), *aff'd*, 868 F.3d 104 (2d Cir. 2017).

## UNITED STATES' RESPONSE

Defendants are wrong that a *Jewell* instruction can't be given when the alleged crimes require specific intent. As the Ninth Circuit recently recognized:

> We have repeatedly held that a *Jewell* instruction is proper in specific-intent cases (including conspiracy cases). *See United States v. Ramos-Atondo*, 732 F.3d 1113, 1120 (9th Cir. 2013) (rejecting appellants' argument that "it is impossible to conspire to be deliberately ignorant" and holding that "the *Jewell* standard eliminates the need to establish such positive knowledge to obtain a conspiracy conviction"); *United States v. Heredia*, 483 F.3d 913, 922 & n.13 (9th Cir. 2007) (en banc) (approving of *Jewell* instruction in possession-with-intent-to-distribute prosecution, and observing that "willful blindness is tantamount to knowledge"); *United States v. Nosal*, 844 F.3d 1024, 1039–40 (9th Cir. 2016) (approving *Jewell* instruction in aiding-and-abetting case).... [T]he district court did not err in instructing the jury.

*United States v. Asefi*, 788 F. App'x 449, 452 (9th Cir. 2019).

The "theory of deliberate ignorance need not be exclusive, it may be an argument alternative to actual knowledge." *Ramos-Atondo*, 732 F.3d 1113, 1120.  The instruction does not "risk[] lessening the state of mind that a jury must find" and is appropriately given when a jury could rationally find willful blindness.  *Heredia*, 483 F.3d at 922 & 924.

Defendants' comment that the charges are based on "presumptively protected and lawful speech" is misplaced in this case, which concerns prostitution advertising (a form of commercial speech that is categorically excluded from First Amendment protection), as more fully explained in the United States' objections to Defendants' case-specific instructions in Part IV, *infra*.  The SI clearly alleges that Defendants had ample notice that prostitution advertising was rampant on Backpage, and that Defendants took numerous steps to expand and capitalize on Backpage's role as the internet's primary source of prostitution advertising.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION
## 4.11 ADVICE OF COUNSEL

One element that the government must prove beyond a reasonable doubt is that each defendant had the unlawful intent to violate the Travel Act by promoting or facilitating prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed.  Evidence that a defendant in good faith followed the advice of counsel would be inconsistent with such an unlawful intent. Unlawful intent has not been proved if a defendant, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's recommended course of conduct or advice in good faith.

### Supporting Authorities

Ninth Circuit Manual of Model Criminal Jury Instructions 4.11.  *See United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987) (defendant entitled to an advice of counsel instruction if it has some foundation in the evidence); *United States v. DeFries*, 129 F.3d 1293, 1296 (D.C. Cir. 1997) (holding instruction required when there is even minimal foundation in the evidence, and defense applies to advice given about how to implement a business plan in a legally acceptable manner).

### UNITED STATES' OBJECTIONS

Defendants aren't entitled to an advice of counsel defense.  As the United States articulated in its recent motion (Doc. 1599), there are certain prerequisites that Defendants need to establish before an advice of counsel defense may be invoked.  *Id.* at 3 (citing *United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2044470, at *51 (N.D. Cal. May 22, 2021).  The most critical piece of an advice of counsel defense is demonstrating that the defendants told their attorneys all relevant and material facts.  Defendants agree with this point.  Doc. 1250 at 10.  Defendants have failed to do so.  To establish this point, Defendants need to waive the privilege. *Holmes*, 2021 WL 2044470, at *51.  They haven't. And at this point, more than five years after the case has been charged, they should be

precluded from doing so.  To permit Defendants to waive the privilege now, would lead to a voluminous disclosure that would either (a) unfairly prejudice the United States, or (b) have the effect of delaying trial while the United States (and potentially the Court) reviewed the communications to determine if Defendants told their attorneys all relevant and material facts.

1

**DEFENDANTS' PROPOSED INSTRUCTION**

2

**5.12 MERE PRESENCE**

3      Mere presence at the scene of a crime or mere knowledge that a crime is being

4   committed is not sufficient to establish that a defendant committed the crime of violating

5   the Travel Act by promoting, or facilitating the promotion of, prostitution offenses

6   committed by a particular business enterprise in violation of the laws of the State in which

7   they were committed or the crime of money laundering.   The defendant must be a

8   participant and not merely a knowing spectator.   If a defendant was present, that

9   defendant's presence may be considered by the jury along with other evidence in the case.

10

**Supporting Authorities**

11      Ninth Circuit Manual of Model Criminal Jury Instructions 5.12, 18.1 (modified to

12   reflect charges); *Woodhull Freedom Foundation v. United States*, 334 F. Supp. 3d 185,

13   199-201 (D.D.C. 2018), rev'd. 948 F.3d 363 (D.C. Cir. 2020); *see United States v. Lacey,*

14   *et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying

15   motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion

16   of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct

17   occasions where prostitutes, prostitution-related businesses, or other groups were involved

18   in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-

19   CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the

20   key things in my reason for denying the recusal is that this case is not about Backpage.

21   Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is

22   about these individual defendants and whether they had specific knowledge of these ads as

23   facilitating illegal activity.").

24

**UNITED STATES' OBJECTIONS**

25      The Comment to this Model Criminal Jury Instruction demonstrates why this

26   instruction is unnecessary for this case.   "Such a 'mere presence' instruction is unnecessary

27   if the government's case is not solely based on the defendant's presence and the jury has

28   been instructed on the elements of the crime."  *See United States v. Tucker*, 641 F.3d 1110,

1123 (9th Cir. 2011); *see also United States v. Gooch*, 506 F.3d 1156, 1160 (9th Cir. 2007). The evidence at trial will demonstrate that each defendant was more than "merely present" for the alleged crimes.  *See United States v. Howell*, 231 F.3d 615, 629 (9th Cir. 2000).

**UNITED STATES' PROPOSED 6.2 INSTRUCTION**

**CHARGE AGAINST DEFENDANT NOT EVIDENCE—**

**PRESUMPTION OF INNOCENCE—BURDEN OF PROOF**

**DEFENDANTS' OBJECTION**

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). The government's proposed instruction fails to capture the intricacy of this matter. The Superseding Indictment is 92 pages long and contains 100 counts. Doc. 230. Given the complexity of this matter, the jury may be likely to ascribe undue weight to the indictment, or get confused as to the burden of proof of each party.

**DEFENDANTS' PROPOSED INSTRUCTION**

**6.2 CHARGE AGAINST DEFENDANT NOT EVIDENCE—**

**PRESUMPTION OF INNOCENCE—BURDEN OF PROOF**

You must presume each defendant to be innocent of the crimes charged.  The indictment is not evidence.  Each defendant has pleaded not guilty to the charges.  Each defendant is presumed to be innocent unless the government proves him or her guilty beyond a reasonable doubt.  The defendants do not have to testify or present any evidence.  The defendants do not have to prove innocence.  Thus, each defendant, although accused of crimes in the indictment, begins the trial with a "clean slate"—with no evidence against him or her.

The indictment, as you already know, is not evidence of any kind.   The defendants are, of course, not on trial for any act or crime not contained in the indictment.  The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against a defendant.  The presumption of innocence alone, therefore, is sufficient to acquit each defendant.

The government has the burden of proving every element of each charge beyond a reasonable doubt for each defendant.  The burden is always upon the prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.  The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

**Supporting Authorities**

Ninth Circuit Manual of Model Criminal Jury Instructions 6.2; 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.), 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.).

**UNITED STATES' OBJECTIONS**

Defendants propose an alternative 6.2 Instruction.  The United States believes the Model Instruction is sufficient.

**UNITED STATES' PROPOSED 6.5 INSTRUCTION**

**REASONABLE DOUBT—DEFINED**

**DEFENDANTS' OBJECTION**

The government's proposed instruction omits critical information: if the jury finds that the evidence could reasonably support either a guilty verdict or innocent verdict, the jury must return a verdict of innocent.  A jury must be instructed "as to their duty in the event they conclude[] that the evidence reasonably permit[s] a finding of either guilt or innocence."  *U.S. v. James*, 576 F.2d 223, 227 (9th Cir. 1978) (approving a reasonable doubt jury instruction that included language similar to defendants' proposed instruction).

## DEFENDANTS' PROPOSED INSTRUCTION
## 6.5 REASONABLE DOUBT—DEFINED

Proof beyond a reasonable doubt is proof that leaves you firmly convinced a defendant is guilty.  It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act—and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

Unless the government proves, beyond a reasonable doubt, that a defendant has committed each and every element of the offenses charged in the indictment, and that a defendant acted with criminal intent and lacked good faith, you must find that defendant not guilty of the offenses.  If you view the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury must, of course, adopt the conclusion of innocence.

### Supporting Authorities

Ninth Circuit Manual of Model Criminal Jury Instructions 6.5; 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.), 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.).

### UNITED STATES' OBJECTIONS

Defendants propose an alternative 6.5 Instruction that provides additional language beyond the Model Instruction.  This added language to the instruction is unnecessary based on the additional instructions the Court will provide on the elements of the charged crimes.  The Model Instruction is appropriate.

- 38 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES' PROPOSED 6.13 INSTRUCTION

## SEPARATE CONSIDERATION OF MULTIPLE COUNTS—MULTIPLE DEFENDANTS

## DEFENDANTS' OBJECTION

Defendants object for the same reasons as set forth in their objection to the government's proposed instruction 6.2.

**DEFENDANTS' PROPOSED INSTRUCTION**

**6.13 SEPARATE CONSIDERATION OF MULTIPLE COUNTS—MULTIPLE DEFENDANTS**

A separate crime is charged against one or more of the defendants in each count. The charges have been joined for trial. You must decide the case of each defendant on each crime charged against that defendant separately. Your verdict on any count as to any defendant should not control your verdict on any other count or as to any other defendant.

All the instructions apply to each defendant and to each count unless a specific instruction states that it applies only to a specific defendant or count.

Only the defendants are on trial. Backpage.com is not on trial. You must evaluate the evidence as to each individual defendant, not as to Backpage.com or any other person.

**Supporting Authorities**

Ninth Circuit Manual of Model Criminal Jury Instructions 6.13; *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

**UNITED STATES' OBJECTIONS**

Defendants propose the same 6.13 instruction as the United States, but add an extra paragraph at the end. The United States objects for the same reasons set forth in its objection to Defendants' proposed instruction 1.13.

# UNITED STATES' PROPOSED INSTRUCTION
## 11.1 CONSPIRACY—ELEMENTS

The defendants are charged in Count 1 of the indictment with conspiring to violate the Travel Act in violation of Section 1952(a)(3)(A) of Title 18 of the United States Code. In order for each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, beginning in or around 2004, and ending on or about April 2018, there was an agreement between two or more persons to commit at least one Travel Act crime as charged in the indictment, namely promoting or facilitating the promotion of any business enterprise involving prostitution offenses in violation of 18 U.S.C. § 1952(a)(3)(A) and § 1952(b)(i)(1);

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after March 28, 2013, for the purpose of carrying out the conspiracy.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime, *i.e.*, Travel Act violations, which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy.

Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The United States is not required to prove that the defendant personally did one of the overt acts.

## DEFENDANTS' OBJECTION

The government's instruction misstates the relevant dates.  Here, "[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.'  They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."  Doc. 946 at 13.  Accordingly, the earliest date which the government may allege a conspiracy to commit a violation of the Travel Act is September 2013—the date the oldest charged ad was posted.  SI ¶ 201.

Moreover, the government's proposed instruction misstates or fails to capture the nuance of the charges at issue.

First, the government omits the word "illegal" before "objects" in the second element.  But mere association with members of a conspiracy, "without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (citing *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980)).  Given that indictment says "the object of the conspiracy was to obtain money" (Doc. 230, ¶ 197)—a patently *lawful* object—it is critical that the jury understand that the object of a conspiracy must be unlawful.

Second, the government omits the specific intent required to commit a violation of the Travel Act. To prove its conspiracy charge, the government must prove the "requisite intent for the substantive crime." *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016). And violation of the Travel Act is a specific intent crime. *See* Doc. 946 at 14 (the government must allege that Defendants had the "specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities") (quoting *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (evidence that would establish that manufacturers of gambling paraphernalia repeatedly sold punchboards and pulltabs to distributors in Montana, despite knowing that the mere possession of punchboards and pulltabs violated Montana's gambling laws, was insufficient to establish a violation of the Travel Act, because the Travel Act is a specific intent crime, "intent to facilitate a criminal venture is expressly made part of the offense," and, therefore, "the prosecutor must show that the manufacturer in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement")).

Third, the government's proposed instruction fails to adequately instruct the jury on the requirement that the "existence of a state law violation is an element of the violation of the Travel Act." *Hiatt*, 527 F.2d at 1049, 1051. To "conspire or agree to" facilitate the prostitution offenses of a business enterprise – the Travel Act offense defendants are alleged to have conspired to commit—there must be proof of "the occurrence of the underlying crime" as "an essential element." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 178-80 (6th Cir. 1992). Without the underlying crime, a conspiracy to facilitate that crime is merely a conspiracy to facilitate (or "aid and abet") a "'possibility,' or a 'criminal wish'[,] which simply isn't a crime." *Id.* at 178.

Finally, the instruction fails to include unanimity instructions—an invitation for the Court to err. "When the evidence [may] establish multiple conspiracies, failure to give a specific unanimity instruction may be plain error." Ninth Cir. Manual of Model Crim. J. Instr. 11.1 cmt.; *see also* Ninth Cir. Manual of Model Crim. J. Instr. 6.27 cmt; *United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015) (failure to give specific unanimity

instruction was plain error because half of jury could have found defendant guilty of joining one conspiracy while the other half of jury could have found defendant guilty of joining second conspiracy).

**DEFENDANTS' PROPOSED INSTRUCTION**

**11.1 CONSPIRACY—ELEMENTS**

**(Conspiracy to Violate the Travel Act – Elements)**

The defendants are charged in Count 1 of the indictment with conspiring to violate the Travel Act in violation of Section 1952(a)(3)(A) of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt for that defendant:

First, beginning in or around 2013, and ending in April 2018, a particular business enterprise committed a prostitution offense in violation of the laws of the State in which they were committed, as charged in Count 1 of the indictment;

Second, that defendant became a member of the conspiracy knowing of at least one of its illegal objects and with the specific intent of helping facilitate the prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed;

Third, that a member of the conspiracy knew that a particular business enterprise committed prostitution offenses in violation of the laws of the State in which they were committed, and

Fourth, one of the members of the conspiracy performed at least one overt act on or after September 10, 2013, for the purpose of carrying out the conspiracy.  Without at least one defendant's overt act to specifically promote, or facilitate the promotion of, prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed, you cannot find a conspiracy.

**What Is a Conspiracy, and How Does One Become a Member?**

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is not enough, however, that they simply met, discussed matters of common interest, acted in similar

ways, or perhaps helped one another.  You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an illegal object of the conspiracy with all of you agreeing as to the particular crime, *i.e.*, the publication of a specific ad in violation of the Travel Act, which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some illegal object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some illegal object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.  To become a co-conspirator, a person must have an intention and agreement to accomplish the same, specific criminal objective as his or her co-conspirators.

An overt act does not itself have to be unlawful.  A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the unlawful conspiracy.  The government is not required to prove that a Defendant personally did one of the overt acts.

Proof of an underlying substantive crime does not, without more, prove the existence of a conspiracy to commit that crime.

### What Is "Travel Act—Facilitate Prostitution"?

The elements of the Travel Act are not satisfied if a defendant merely did an act that promoted, or facilitated the promotion of, prostitution offenses committed by a particular business enterprise.  The elements are not satisfied unless a defendant specifically intended his or her act to facilitate the prostitution offenses committed by a particular business enterprise.

The government cannot meet its burden to prove that a defendant had the specific intent to participate in and further the prostitution offenses committed by a particular business enterprise associated with the ad by proving:

- 46 -

- the defendant learned, after an ad had run advertised on Backpage.com, that the ad had been associated with prostitution offenses (or learned after the fact that many past ads on Backpage.com had been associated with prostitution offenses);

- the defendant knew, in the abstract, that some ads that third parties posted on Backpage.com might facilitate, or did facilitate, prostitution;

- the defendant was indifferent to the actions of the purchasers of classified ads on Backpage.com; or

- the defendant knew that a particular advertiser might, at times, engage in prostitution offenses unless the defendant in a significant manner associated himself or herself with the particular business enterprise associated with the advertiser.

Rather, to satisfy the specific intent requirements of the Travel Act, the government must prove beyond a reasonable doubt, for each Count, that each defendant in some significant manner associated himself or herself with a particular business enterprise associated with the ad charged in that Count with the intent to promote, or facilitate the promotion of, the prostitution offenses committed by that business enterprise. As such, to find a defendant guilty of conspiring to violate the Travel Act, you must find that the government proved beyond a reasonable doubt that the defendant joined a conspiracy with the specific intent to associate himself or herself with a particular criminal venture for the purpose of advancing its prostitution offenses. A defendant cannot intend to promote or facilitate a business enterprise he or she does not know exists.

**Unanimity Requirements**

For a defendant to be found guilty of Count 1 (Conspiracy to Violate the Travel Act), you must find beyond a reasonable doubt that the defendant joined in a plan to commit at least one illegal object of the alleged conspiracy – specifically intending to promote, or facilitate the promotion of, prostitution offenses committed by a particular business enterprise upon which you all agree.

1

**Supporting Authorities**

2     Ninth Circuit Manual of Model Criminal Jury Instructions 6.27, 11.1, 18.1; Barry

3  Tarlow, *Defense of a Federal Conspiracy Prosecution,* 4 J.Crim.Defense 183, 201-02

4  (1978) (explaining that the object of the conspiracy must be unlawful); *United States v.*

5  *Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) ("Proof of the underlying substantive crime,

6  however, does not, without more, prove the existence of a conspiracy."); *United States v.*

7  *Lapier*, 796 F.3d 1090 (9th Cir. 2015) (failure to give specific unanimity instruction was

8  plain error because half of jury could have found defendant guilty of joining one conspiracy

9  while other half of jury could have found defendant guilty of joining second conspiracy);

10  *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (willfulness is the "intentional violation

11  of a known legal duty").

12     The second element in the requested instruction is required because a conspiracy to

13  violate the Travel Act requires proof of specific intent to commit the substantive violation.

14  In *Woodhull Freedom Foundation v. United States*, the government argued that for

15  prosecutions under the Travel Act, the prosecutor must prove "not simply that the

16  defendant was aware of a potential result of the criminal offense, but instead that the

17  defendant intended to 'explicitly further[]' a specified unlawful act."  334 F. Supp. 3d 185,

18  199-201 (D.D.C. 2018), rev'd. 948 F.3d 363 (D.C. Cir. 2020).  The court agreed with the

19  government and held that the law applies only to "specific unlawful acts with respect to a

20  particular individual, not the broad subject-matter of prostitution." *Id*.

21     The government's position in *Woodhull* (in contrast to its position in this case) is

22  consistent with controlling law in the Ninth Circuit.  *See United States v. Hansen*, 599 U.S.

23  __, 2023WL4138994, at *6 (June 23, 2023) (confirming that when a federal criminal

24  statute uses the word "facilitation," it means "aiding and abetting" and explaining that the

25  elements of facilitation as including proof (1) "that a wrongful act be carried out" and proof

26  of (2) "an intent to bring about a particular unlawful act").  *See also United States v.*

27  *Encarnacion-Ruiz*, 787 F.3d 581, 588 (1st Cir. 2015) ("Under *Rosemond*, to establish the

28  mens rea required to aid and abet a crime, the government must prove that the defendant

participated with advance knowledge of the elements that constitute the charged offense.  *See* 134 S.Ct. at 1248–49; *see also id.* (stating that an aider and abettor must have 'full awareness of [the crime's] scope,' 'full knowledge of the circumstances constituting the charged offense,' and 'participate[ ] in a criminal scheme knowing its extent and character')…").

To prove a conspiracy charge, the government must prove the "requisite intent for the substantive crime."  *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016).  *See also United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

*United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000) ("The elements of a Travel Act charge are: 1) that the defendant traveled in interstate commerce on or about the time, and between the places, charged in the indictment; 2) that the defendant engaged in that travel with the specific intent to promote, manage, establish or carry on an unlawful activity, as defined; and 3) that the defendant thereafter knowingly and willfully committed an act to promote, manage, establish or carry on such unlawful activity."); *United States v. Hagmann*, 950 F.2d 175, 182 (5th Cir. 1991) ("The essential elements of the Travel Act . . . are: (i) *travel* in interstate or foreign commerce, or use of the mail (or any facility) in interstate or foreign commerce; (ii) with the specific *intent* to promote, manage, establish, or carry on—or distribute the proceeds of—unlawful activity; and (iii) knowing and willful *commission of an act* in furtherance of that intent subsequent to the act of travel.")

(emphasis in original); *United States v. Echeverri-Jaramillo*, 777 F.2d 933, 937 (4th Cir. 1985) ("in order to prove such a violation, under 18 U.S.C. § 1952(a) it must be shown that 1) the defendant traveled in interstate commerce on or about the time and between the places noted in the indictment; 2) that the defendant engaged in such travel with the specific intent to promote, manage, establish or carry on an unlawful activity and that 3) the defendant did thereafter knowingly and willfully commit an act to promote, manage, establish or carry on such an unlawful activity."); *United States v. Stagman*, 446 F.2d 489, 491 (6th Cir. 1971) ("the majority of the Courts of Appeals which have directly addressed this question . . . have stated that knowing and wilful [sic] intent to violate state laws is an element of the crime proscribed by the Travel Act") (citing decisions of the 4th, 7th, 8th, and 9th Circuits).

The third element is required because a person may not be convicted of a conspiracy to facilitate a business enterprise's prostitution offenses without knowledge that the business enterprise is committing the substantive offense. For two people to unlawfully "conspire or agree to assist" a third party in committing another offense, the conspirators "have to know" that the third party is committing the offense. "Otherwise, all [the conspirators] are agreeing to is to aid and abet a 'possibility,' or a 'criminal wish[,]' which simply isn't a crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 178-80 (6th Cir. 1992). In *Superior Growers*, the Sixth Circuit dismissed an indictment for conspiracy to aid and abet—i.e., to facilitate a third party's offense—because the indictment did not allege "the occurrence of the underlying crime," which "has to be an essential element of such a charge because otherwise the requisite knowledge and intent to further the substantive offense cannot exist." *Id.* That is, a conspiracy to facilitate a hypothetical—as opposed to actual—offense is not a crime.

This principal applies with full force to the charge here of conspiracy to violate the Travel Act by facilitating prostitution. As the government recently confirmed in the *Woodhull* litigation, Travel Act liability for "promoting" or "facilitating" a prostitution offense is "equivalent to" aiding and abetting liability. Br. of United States in *Woodhull*

*Freedom Found'n v United States*, Case No. 22-5105, at 28-30 (D.C. Cir., Nov. 2, 2022) (asserting that "[t]he phrase 'promote or facilitate,' as used in the Travel Act, is equivalent to 'aid or abet'"), *available at* Doc. 1557-1 at 45-46.

### UNITED STATES' OBJECTIONS

The Court previously approved the appropriate instruction for conspiracy. Doc. 1311 at 3. That's the law of the case and should be the instruction that's given. Defendants, instead, propose a much lengthier conspiracy instruction that contains misstatements of the law and adds extra unnecessary elements to the crime. The Court should provide the Model Instruction on conspiracy, which besides representing the law of the case, provides a much clearer explanation of the applicable law than Defendants' proposed instruction.

Here are some of the problems with Defendants' proposed instruction.

- In the first element, Defendants limit the time of the conspiracy to 2013, when the Court has already ruled that the conspiracy began in 2004. Doc. 1311 at 3; Doc. 1444 at 7; *see also* SI ¶¶196, 203. That's law of the case.

- In the first element, Defendants insist that the United States must prove that "a particular business enterprise committed a prostitution offense[.]" But that isn't an element of a Travel Act offense (*see* Part III, United States' Proposed Instruction No. 1, *infra*), and it certainly isn't required to prove conspiracy—an inchoate offense. *See United States v. Castillo*, 69 F.4th 648, 652 (9th Cir. 2023) ("Conspiracy is an inchoate offense that is separate and independent from the crime that is the subject of the conspiracy."); *United States v. Iribe*, 564 F.3d 1155, 1160 (9th Cir. 2009) ("Conspiracy to commit a crime is not equivalent to the completion of that crime.").

- Also, Defendants insist that a Travel Act violation must involve "promoting, or facilitating the promotion of, prostitution offenses committed by a *particular* business enterprise." (emphasis added). The word "particular" is unnecessary and confusing. The statute states that "unlawful activity" under the Travel Act is defined as "*any* business enterprise involving . . . prostitution offenses in

- 51 -

violation of the laws of the State in which they are committed or of the United States."   18 U.S.C. § 1952(b)(i)(1).   This Court has recognized this fact previously: "Instead of alleging formal labels, what must be alleged for the 'unlawful activity' element under Section 1952(b)(i) are allegations showing 'a continuous course of criminal conduct.'" Doc. 946 at 10 (citations omitted); Doc. 1311 at 3-4.  The Court also suggested that each ad is evidence of a business enterprise: "each ad identified [in the SI] carries an indicia of a commercial or business enterprise because each one invites multiple commercial transactions by soliciting the public to engage in prostitution."  Doc. 946 at 12, n.7 (citing *Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012) (noting that advertisements "propose a commercial transaction").     Further, unlike Defendants' proposed instruction, the United States' instruction tracks the statutory definition of "unlawful activity."

- In the second element, Defendants graft on a scienter requirement that doesn't comport with the Model Instruction.  The Model Instruction's second element states that "the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it."  Defendants add the word "illegal," which is redundant and not part of the Model Instruction.  The first element in the Model Instruction states, in pertinent part, "there was an agreement between two or more persons to commit at least one crime as charged in the indictment," while the second element makes clear the crime requires that "the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it."  The word "illegal" doesn't clarify any aspect of this crime and shouldn't be part of the instruction.  This is also law of the case.  Doc. 1311 at 3.

- In the second element, Defendants also discuss a "specific intent" requirement that isn't applicable—namely, "the specific intent of helping facilitate the prostitution offenses committed by a particular business enterprise. . . ."  This

creates a brand new element, requiring that a member of the conspiracy knew that a particular business enterprise committed prostitution offenses.  It's inappropriate for at least three reasons.  First, the Court has already ruled this instruction is inappropriate, so it's the law of the case.  Doc. 1311 at 3.  Second, it's not an element recognized by the Model Instruction.  Third, the United States doesn't need to prove that the prostitution offense was actually committed. *United States v. Polizzi*, 500 F.2d 856, 876-77 (9th Cir. 1974) (Government does not need to prove that defendants had specific intent to violate the underlying state law, only "specific intent to facilitate an activity which the accused knew to be unlawful under state law."); Doc. 1587 at 3 ("The Ninth Circuit has clarified that the Travel Act does not require the commission of the predicate offense; rather, only an attempt to promote the unlawful activity with a subsequent overt act in furtherance of that unlawful activity.") (cleaned up).

- Defendants' second element also reads "promote" out of the Travel Act—"a result we typically try to avoid."  *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017).  *See also Williams v. Taylor,* 529 U.S. 362, 404 (2000) ("[W]e must give effect, if possible, to every clause and word of a statute.").  The Travel Act criminalizes using any facility in interstate commerce "with intent to--. . . promote, . . . or facilitate the promotion, of . . . any business enterprise   . . . involving prostitution offenses in violation of the laws of the State in which they are committed[.]"  18 U.S.C. § 1952(a)(3), (b)(i)(1).  The Act uses the verbs "promote" and "facilitate" disjunctively—it requires intent to "promote," *or* to "facilitate the promotion" of, businesses involved in the type of unlawful activity at issue (here, prostitution).  Again, the Court has already ruled on this issue. Doc. 1311 at 3.

- For similar reasons, Defendants' justification for including its second element doesn't square with applicable case law.  While it's true the United States must demonstrate each Defendant acted with the requisite intent to prove the

1   conspiracy charge, that doesn't support Defendants' proposed element.   The

2   United States needs to demonstrate that each Defendant had specific intent to

3   violate the Travel Act, *i.e.*, to promote, manage, establish, carry on, or facilitate

4   the promotion, management, establishment, or carrying on, of any business

5   enterprise involving prostitution offenses.   The Court has already recognized this

6   fact and declined to follow Defendants' proposed instruction.   Doc. 1311 at 3.

7   -   The term "promote"—when used in the context of prostitution—is often

8   associated with the act or offense of solicitation.   *See* PANDERING, Black's

9   Law Dictionary (11th ed. 2019) (associating pandering with soliciting and

10  "*promoting prostitution*").   It is also a key part of the definition of "advertising."

11  ADVERTISING, Black's Law Dictionary (11th ed. 2019) (advertising is "[t]he

12  action of drawing the public's attention to something to *promote* its sale")

13  (emphasis added).   Defendants' second element ignores this term.

14  -   Defendants' instruction presses the notion that because the Travel Act includes

15  the verb "facilitate," the United States must prove all elements of a traditional

16  aiding-and-abetting crime.   But the elements of aiding-and-abetting do not neatly

17  map onto the elements of a Travel Act (or Travel Act conspiracy) charge.   For

18  example, on Defendants' view, the Travel Act creates a federal offense requiring

19  proof of (1) a facilitator's aiding-and-abetting of (2) another person's promotion

20  of (3) a separate business enterprise (4) involving state law prostitution offenses

21  committed by someone.   This is needlessly complex, and adds elements that the

22  Act does not contain.   For example, the Act requires proof of a subsequent act

23  of promotion or facilitation—not proof of a completed separate crime (as

24  traditional aiding and abetting requires).   *See* United States' Proposed Instruction

25  No. 1, *infra*.

26  -   Defendants' third element repeats most of these same errors.

27  -   In Defendants' fourth element, they again add language to the Model Instruction

28  that is unnecessary.   The final sentence in this element is redundant and restates

- 54 -

the language in the first element.  Moreover, Defendants erroneously state that the overt act must be performed by one of the Defendants.  Under established law, any person who is a member of the conspiracy—a category of persons not limited to Defendants—may perform the overt act.  *See* Model Instruction 11.1. This fact is also law of the case.  Doc. 1311 at 3.  Finally, Defendants list the incorrect date and as the Court has already ruled, the appropriate date is March 28, 2013.  *Id.*; SI ¶¶196, 203.

- The remainder of Defendants' proposed instruction is not needed and contains Defendants' arguments for why the jury should find them not guilty.  (*E.g.*, "[a] defendant cannot intend to promote or facilitate a business enterprise he or she does not know exists.").  Instructions are not the place for arguments.

- Defendants add a section titled "unanimity requirements" to their proposed instruction.  A specific unanimity instruction may be required when there are multiple conspiracies at issue.  *See United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983).  Here, however, the United States has only alleged one conspiracy—conspiracy to violate 18 U.S.C. § 1952(a)(3)(A).  Doc. 230 at 49. This instruction isn't needed.

- Defendants' intent and knowledge assertions are further addressed in separate sections of these instructions that discuss these elements.

Defendants' reference to *Woodhull Freedom Found. v. United States*, No. 22-5105 (D.C. Cir.), does not support the proposed instruction.  *Woodhull* involves a facial challenge by sex worker advocacy groups to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA), which created a new federal offense for operating "an interactive computer service…with the intent to promote or facilitate *the prostitution of another person*." 18 U.S.C. § 2421(A)(a) (emphasis added).  The Court has repeatedly rejected Defendants' *Woodhull*-based arguments, which "concern[ ] [a] different statute[]," "are not binding on this Court, not relevant to this prosecution, and, in any case, not

inconsistent with the Government's current theory regarding the Travel Act." Doc. 793 at 17-18; *see also* Doc. 946 at 4-16; Doc. 1587 at 13-16.

Moreover, the *Woodhull* litigation largely involves whether pure speech or advocacy can count as "promot[ing] or facilitat[ing] the prostitution of another person" under 18 U.S.C. § 2421(A)(a). That issue is absent in this case, which involves prostitution solicitations—offers categorically excluded from First Amendment protection. Doc. 793 at 14 ("Prostitution ads are ads for illegal transactions. . . . The First Amendment does not protect 'offers to engage in illegal transactions.'") (citations omitted).

Moreover, the United States never argued in *Woodhull* that a violation of § 2421(A)(a) requires establishing every element of a traditional claim for aiding-and-abetting prostitution, including proof of a completed act of prostitution. Rather, the United States anchored its arguments in Judge Katsas's concurrence from an earlier appeal in that case, which reversed the district court's dismissal for lack of standing. *Woodhull Freedom Found v. United States*, 948 F.3d 363 (D.C. Cir. 2020).

Addressing the disjunctive terms "promote or facilitate" in 18 U.S.C. § 2421A(a), Judge Katsas wrote that "in the criminal law, to 'promote' prostitution means to pander"—an offense that covers "soliciting prospective customers" and that involves speech widely recognized as falling outside the First Amendment. *Id*. at 375. Judge Katsas then discussed that the statute's other operative verb, "[f]acilitate," may be taken as a synonym for terms like aid, abet, and assist, "limited by the background law of aiding and abetting." *Id*. But Judge Katsas clarified that "[t]his is *not* to suggest that FOSTA requires proof of a specific, completed act of prostitution, as would the offense of aiding and abetting prostitution." *Id*. (emphasis added). As Judge Katsas's concurrence reflects, crimes like promoting or soliciting are "inchoate crimes—acts looking toward the commission of another crime." *United States v. Williams*, 553 U.S. 285, 300 (2008). These inchoate crimes are unlawful whether or not the proposed illegal conduct ever occurs. *Id.*

Defendants' instruction should not be given.

**DEFENDANTS' PROPOSED INSTRUCTION**

**11.3 MULTIPLE CONSPIRACIES**

**(Count 1 – Multiple Conspiracies)**

Count 1 of the indictment alleges a single conspiracy to commit a violation of the Travel Act by promoting, or facilitating the promotion of, prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed.  You must decide whether the single conspiracy to violate the Travel Act as charged in Count 1 of the indictment existed, and, if it did, who at least some of its members were.  If you find that the single conspiracy to violate the Travel Act charged in Count 1 did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy or conspiracies existed.  For example, if you find that Count 1 concerns two or more conspiracies, you must find each defendant not guilty of the single conspiracy alleged in Count 1.  Similarly, if you find that any defendant was not a member of the conspiracy to violate the Travel Act charged in Count 1, then you must find that defendant not guilty, even though that Defendant may have been a member of some other conspiracy or conspiracies.

**Supporting Authorities**

Model Crim. Jury Instr. 9th Cir. 11.3 (modified to reflect the charges in the indictment); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

1

**UNITED STATES' OBJECTIONS**

2      This instruction should only be given when Defendants raise a multiple conspiracy

3 defense.  *United States v. Job*, 871 F.3d 852, 867 (9th Cir. 2017).  To support such an

4 instruction, evidence would need to be presented at trial in which a jury could reasonably

5 conclude that some of the defendants were only involved in separate conspiracies unrelated

6 to the overall conspiracy charged in the indictment.  *Id.*  That's not the case here.  The

7 conspiracy charged in Count One would not give rise to a reasonable juror believing that

8 multiple conspiracies occurred.  *Id.* at 868 ("Although a single conspiracy can include

9 'several subagreements or subgroups of conspirators,' that does not mean there are separate

10 conspiracies.")  "A single conspiracy exists, as compared with multiple conspiracies, where

11 there is 'one overall agreement' to perform various functions to achieve the objectives of

12 the conspiracy."  *United States v. Bauer,* 84 F.3d 1549, 1560 (9th Cir. 1996).

13      Defendants' instruction also incorrectly states that Count One "alleges a single

14 conspiracy to commit *a violation* of the Travel Act by promoting, or facilitating the

15 promotion of, prostitution offenses *committed by a particular business enterprise* in

16 violation of the laws of the State in which they were committed." (Emphasis added.)  But

17 Count One is not limited to a conspiracy to commit a single Travel Act violation,

18 committed by a particular business enterprise.   Indeed, the indictment alleges that

19 Defendants engaged in a conspiracy to promote, or facilitate the promotion of *many*

20 *different* business enterprises.  Doc. 230 at ¶¶ 1, 9, 160-176.  Even though the United States

21 has alleged that Defendants' criminal conspiracy involved a vast number of business

22 enterprises, the underlying conspiracy remains the same—to violate the Travel Act.  The

23 evidence at trial will not show that Defendants engaged in any subagreements that are

24 "separate" from and "unrelated" to the overall charged conspiracy.  *Job*, 871 F.3d at 868.

25 This instruction is not necessary and should be not given.  The United States' conspiracy

26 charge contemplates Defendants conspiring with many different business enterprises to

27 violate the Travel Act.

28

**DEFENDANTS' PROPOSED INSTRUCTION**

**11.3 MULTIPLE CONSPIRACIES**

**(Count 52 – Multiple Conspiracies)**

Count 52 of the indictment alleges a single conspiracy to commit concealment money laundering in violation of Section 1956(a)(1)(B)(i), international promotional money laundering in violation of Section 1956(a)(2)(A), transactional money laundering in violation of Section 1957(a), and international concealment money laundering in violation of Section 1956(a)(2)(B)(i).  You must decide whether the single conspiracy to commit concealment, international promotional, transactional, and international concealment money laundering as charged in Count 52 of the indictment existed, and, if it did, who at least some of its members were.  If you find that the single conspiracy to commit concealment, international promotional, transactional, and international concealment money laundering as charged in Count 52 of the indictment did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed.  For example, if you find that Count 52 concerns two or more conspiracies, you must find the Defendants not guilty of the single conspiracy alleged in Count 52.  Similarly, if you find that any Defendant was not a member of the conspiracy to commit concealment, international promotional, transactional, and international concealment money laundering as charged in Count 52, then you must find that Defendant not guilty, even though that Defendant may have been a member of some other conspiracy.

**Supporting Authorities**

Model Crim. Jury Instr. 9th Cir. 11.3 (modified to reflect the charges in the indictment).

**UNITED STATES' OBJECTIONS**

"A defendant is entitled to a multiple conspiracies instruction only if the defendant's theory of multiple conspiracies is supported by law and has some foundation in the evidence." *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989) (internal citations and quotations omitted).  As discussed above, "[a] single conspiracy exists, as

compared with multiple conspiracies, where there is 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." *United States v. Bauer,* 84 F.3d 1549, 1560 (9th Cir. 1996).

This instruction should be evaluated after the evidence has been presented in order to better understand "Defendants' theory of multiple conspiracies."

### DEFENDANTS' PROPOSED INSTRUCTION

### 11.4 CONSPIRACY – KNOWLEDGE OF AND ASSOCIATION WITH OTHER CONSPIRATORS

### (Conspiracy – Knowledge of and Association With Other Conspirators)

A conspiracy may continue for a long period of time and may include the performance of many transactions. It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

Even though a defendant did not directly conspire with every other defendant or every other conspirator in the overall scheme, that defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt:

First, that a defendant directly conspired with one or more conspirators to carry out at least one of the illegal objects of the conspiracy by specifically intending to promote, or facilitate the promotion of, prostitution offenses committed by a particular business enterprise upon which you all agree;

Second, that a defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

Third, that a defendant had reason to believe that whatever benefits he or she might get from the conspiracy probably were dependent upon the success of the entire enterprise.

It is not a defense that a person's participation in a conspiracy was minor or for a short period of time.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 11.4.

### UNITED STATES' OBJECTIONS

Defendants' proposed 11.4 instruction adds unnecessary language to the Model Instruction's first element. The elements of the Travel Act are instructed on below and this

- 61 -

additional language adds nothing but wordiness to the overall instructions.  There isn't a valid reason to alter the language provided by the Model Instruction.  The Model Instruction should be given.

# UNITED STATES' PROPOSED INSTRUCTION

## 11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE (TRAVEL ACT) COMMITTED BY CO-CONSPIRATOR (*PINKERTON* CHARGE)

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of committing a Travel Act crime as charged in Counts 2-51 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a member of the conspiracy committed the Travel Act offense alleged in that count;[4]

Second, the person was a member of the conspiracy charged in Count 1 of the indictment;

Third, the person committed the Travel Act offense in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offenses

---

[4] The United States proposes a slightly different first element than the Model Instructions. This is consistent with the preliminary jury instructions given at the first trial (Doc. 1311 at 4) and applicable law.  For a defendant to be found guilty at trial under a *Pinkerton* theory, the co-conspirator need not be named in the indictment.  *United States v. Carpenter*, 961 F.2d 824, 828 n.3 (9th Cir. 1992) ("As an unindicted co-conspirator, Shahabian's acts and statements in furtherance of the conspiracy may be attributed to Carpenter.") (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)).  Here, the Court has already recognized that *Pinkerton* liability extends to individuals not named in the Superseding Indictment.  Doc. 1311 at 4; Doc. 793 at 19 (discussing *Pinkerton* and fact that "C.F" was a co-conspirator of Defendants).  *See also United States v. Long*, 301 F.3d 1095, 1103 (9th Cir 2002) ("The *Pinkerton* doctrine is a judicially-created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy.").  The law of the case, in addition to the applicable caselaw and facts, support the Court instructing the jury using this proposed instruction.

1   charged in Counts 2-51 were committed; and

2         Fifth, the offense fell within the scope of the unlawful agreement and could

3   reasonably have been foreseen to be a necessary or natural consequence of the unlawful

4   agreement.

5                            **DEFENDANTS' OBJECTION**

6         The government's deletion of critical language from the model instruction renders

7   its proposed instruction legally incorrect.   The model instruction requires that the first

8   element specify that "a person named in [Count __] of the indictment committed the

9   crime."  9th Cir. Model Crim. J. Instr. 11.6.   The government's instruction, once again,

10  attempts to criminalize facilitating the amorphous notion of prostitution.   Facilitating

11  "prostitution" is not prescribed by the Travel Act; rather, the Travel Act prescribes only

12  facilitating a business enterprise involved in prostitution offenses.   Moreover, the Court

13  has already limited the conspiracy to the fifty specific ads charged in the indictment. *See*

14  Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted

15  for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating

16  (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related

17  businesses, or other groups were involved in the business of prostitution.").

18        The government's proposed language is misleading in that it suggests any person

19  who posted on Backpage.com could be a "member of the conspiracy" as required in the

20  first element.   Such a boundless conspiracy also would be a classic hub and spoke

21  conspiracy lacking a rim, which the Supreme Court held impermissible in *Kotteakos v.*

22  *United States*, 328 U.S. 750, 754–55 (1946) ("[T]he pattern was 'that of separate spokes

23  meeting at a common center,' though we may add without the rim of the wheel to enclose

24  the spokes."); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) ("A rimless

25  wheel conspiracy is one in which various defendants enter into separate agreements with a

26  common defendant, but where the defendants have no connection with one another, other

27  than the common defendant's involvement in each transaction . . . . In *Kotteakos*, the

28  Supreme Court made clear that a rimless wheel conspiracy is not a single, general

- 64 -

conspiracy but instead amounts to multiple conspiracies between the common defendant and each of the other defendants.").

**DEFENDANTS' PROPOSED INSTRUCTION**

**11.6 CONSPIRACY—LIABILITY FOR TRAVEL ACT VIOLATIONS**

**COMMITTED BY CO-CONSPIRATOR (*PINKERTON* CHARGE)**

**(Co-Conspirator Liability)**

Each member of a conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find a defendant guilty of a violation of the Travel Act under Section 1952(a)(3)(A) of Title 18 of the United States Code as charged in Counts 2-51 of the indictment if the government has proved each of the following elements beyond a reasonable doubt:

First, a person named in Count 1 of the indictment committed the crime of violating the Travel Act by promoting, or facilitating the promotion of, prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed;

Second, the person named in Count 1 was a member of the conspiracy as charged in Count 1 of the indictment;

Third, the violation of the Travel Act in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offenses charged in Counts 2-51 were committed;

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

To prove a conspiracy, the government must prove beyond a reasonable doubt the requisite intent to commit the substantive crime, here the promotion, or the facilitation of the promotion, of prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed. The elements of the Travel

Act are not satisfied if a defendant merely did an act that promoted, or facilitated the promotion of, the prostitution offenses committed by a particular business enterprise.  The elements of the Travel Act are only established if the government proves beyond a reasonable doubt that a defendant knowingly and willfully intended his or her act to facilitate the prostitution offenses committed by a particular business enterprise associated with that ad.

The government has the burden to prove that a defendant had the specific intent required to commit the offense beyond a reasonable doubt, as explained in Instruction No. 11.1.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 11.6 (modified to reflect the charges in the indictment).

To prove a conspiracy charge, the government must prove the "requisite intent for the substantive crime." *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016).  A violation of the Travel Act is a specific intent crime.  In *Woodhull Freedom Foundation v. United States*, the government argued that for prosecutions under the Travel Act, the prosecutor must prove beyond a reasonable doubt "not simply that the defendant was aware of a potential result of the criminal offense, but instead that the defendant intended to 'explicitly further[]' a specified unlawful act."   334 F. Supp. 3d 185, 199-201 (D.D.C. 2018), rev'd. 948 F.3d 363 (D.C. Cir. 2020).  The court agreed with the government and held that the law applies only to "specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution." *Id*.  Most recently, in defending the district court decision in that case, DOJ repeated its position that, in a prosecution under the Travel Act, the government must allege that the Defendant acted to intentionally promote or facilitate a "specific, unlawful instance of prostitution."  Brief for the United States in *Woodhull Freedom Found. v. United States*, No. 18-5298 (D.C. Cir. Apr. 15, 2019) (Doc. No. 1782997) at 21-22.

*See also Backpage.com v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("'[A]n intermediary . . . normally is indifferent to the content of what it transmits.  Even entities that know the information's content do not become liable for the sponsor's deeds.  Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity?' *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) . . . Backpage is an intermediary between the advertisers of adult services and visitors to Backpage's website."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 651 (7th Cir. 2003) ("A retailer of slinky dresses is not guilty of aiding and abetting prostitution even if he knows that some of his customers are prostitutes….").

*United States v Gibson Specialty Co.*, 507 F.2d 446, 450 fn. 8 (9th Cir. 1974) ("The presumption that one intends the natural and probable consequences of his actions is insufficient in this context to establish intent to facilitate criminal activity.  It is as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser.").

*See United States v. Rundo*, 990 F.3d 709, 719-720 (9th Cir. 2021) ("'the intent to engage in one of the prohibited acts is a personal prerequisite to punishment under [the Anti-Riot Act] . . . Simply put, knowing that some might choose to become violent is not at all the same as intending that they do so.").

*Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) ("The third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech' that fall outside of First Amendment protection.") (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)).

*See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United*

*States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

*United States v. Jones*, 909 F.2d 533, 539 (D.C.Cir.1990) (a proper Travel Act jury instruction "would inform the jury that the defendant must have performed or attempted to perform an act in furtherance of the business, with the intent that each element of the underlying state crime be completed"); *Deptula v. Attorney General of U.S.*, 642 Fed. Appx. 184 (3rd Cir. 2016) ("to obtain a Travel Act conviction, the government must prove . . . that the defendant had the specific intent to facilitate each element of the relevant offense."); *United States v. Bertman*, 686 F.2d 772, 774 (9th Cir. 1982) ("When the unlawful activity charged in the indictment is the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense.").

## UNITED STATES' OBJECTIONS

Everything after the fifth element in Defendants' proposed instruction should not be read to the jury for the same reasons the United States articulated in its objection to the Travel Act instruction *infra*. With that language eliminated, the parties' instructions are similar, with two key differences. First, Defendants' proposed instruction includes the statement "a person named in Count 1" in the first two elements. This instruction is too restrictive and does not appropriately convey *Pinkerton* liability. It also violates the law of the case as the Court previously found that the member of the conspiracy doesn't need to be a person named in the indictment. Doc. 1311 at 4.

For a defendant to be found guilty at trial under a *Pinkerton* theory, the co-conspirator need not be named in the indictment. *United States v. Carpenter*, 961 F.2d 824, 828 n.3 (9th Cir. 1992) ("As an unindicted co-conspirator, Shahabian's acts and statements in furtherance of the conspiracy may be attributed to Carpenter.") (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)). Here, the Court has already

recognized that *Pinkerton* liability extends to individuals not named in the Superseding Indictment.  Doc. 1311 at 4; Doc. 793 at 19 (discussing *Pinkerton* and fact that "C.F" was a co-conspirator of Defendants).  *See also United States v. Long*, 301 F.3d 1095, 1103 (9th Cir 2002) ("The *Pinkerton* doctrine is a judicially-created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy.").

Second, Defendants again refer to offenses "prostitution offenses committed by a particular business enterprise[.]"  But the Travel Act does not require proof of the actual commission of separate prostitution offenses.  *See, e.g.*, Part III, United States' Proposed Instruction No. 1, *infra*.

In addition, the authorities cited by Defendants do not support their requested instructions.  *See* Part IV, United States' Objections to Defendants Proposed Instructions Nos. 7-20.

Both the applicable law and facts support the Court instructing the jury using the United States' proposed instruction.

**UNITED STATES' PROPOSED INSTRUCTION**

**11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE**

**(CONCEALMENT MONEY LAUNDERING) COMMITTED BY CO-**

**CONSPIRATOR (*PINKERTON* CHARGE)**

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of Concealment Money Laundering as charged in Counts 53-62 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a member of the conspiracy committed Concealment Money Laundering alleged in that count;[5]

Second, the person was a member of the conspiracy charged in Count 52 of the indictment;

Third, the person committed Concealment Money Laundering in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offenses charged in 53-62 were committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

**DEFENDANTS' OBJECTION**

Once again, the government's deletion of critical language from the model instruction renders its proposed instruction legally incorrect.  The model instruction requires that the first element specify that "a person named in [Count ___] of the indictment

---

[5] *See* footnote 4.

committed the crime." 9th Cir. Model Crim. J. Instr. 11.6. The government's instruction, once again, attempts to criminalize facilitating the amorphous notion of prostitution. Facilitating "prostitution" is not prescribed by the Travel Act; rather, the Travel Act prescribes only facilitating a business enterprise involved in prostitution offenses. Moreover, the Court has already limited the conspiracy to the fifty specific ads charged in the indictment. *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.").

The government's proposed language is misleading in that it suggests any person who posted on Backpage.com could be a "member of the conspiracy" as required in the first element. Such a boundless conspiracy also would be a classic hub and spoke conspiracy lacking a rim, which the Supreme Court held impermissible in *Kotteakos v. United States*, 328 U.S. 750, 754–55 (1946) ("[T]he pattern was 'that of separate spokes meeting at a common center,' though we may add without the rim of the wheel to enclose the spokes."); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) ("A rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction . . . . In *Kotteakos*, the Supreme Court made clear that a rimless wheel conspiracy is not a single, general conspiracy but instead amounts to multiple conspiracies between the common defendant and each of the other defendants.").

**DEFENDANTS' PROPOSED INSTRUCTION**

**11.6 CONSPIRACY—LIABILITY FOR CONCEALMENT MONEY**

**LAUNDERING VIOLATIONS COMMITTED BY CO-CONSPIRATOR**

**(*PINKERTON* CHARGE)**

**(Co-Conspirator Liability)**

Each member of a conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find a Defendant guilty of a committing concealment money laundering in violation of Section 1956(a)(1)(B) of Title 18 of the United States Code as charged in Counts 53-62 of the indictment if the government has proved each of the following elements beyond a reasonable doubt:

First, a person named in Count 52 of the indictment committed the crime of concealment money laundering as alleged in Counts 53-62;

Second, the person was a member of the conspiracy as charged in Count 52 of the indictment;

Third, the person committed the crime of concealment money laundering in furtherance of the conspiracy;

Fourth, the Defendant was a member of the same conspiracy at the time the offenses charged in Counts 53-62 were committed;

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

To prove a conspiracy, the government must prove beyond a reasonable doubt the requisite intent to commit the substantive crime, here concealment money laundering.

Concealment money laundering is a specific intent crime. See the Specific Intent jury instruction.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 11.6 (modified to reflect the charges in the indictment). As this Court previously held, the "specified unlawful activity" ("SUA") here is not the general facilitation or promotion of "any business enterprise involving prostitution offenses" in violation of the Travel Act. *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity."). Therefore, the SUA referenced in each of the proposed jury instructions regarding the Indictment's money laundering charges must reference the "fifty distinct" advertisements at issue in Counts 2 - 51. *Id.*

To prove a conspiracy charge, the government must prove the "requisite intent for the substantive crime." *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016). Concealment money laundering is a specific intent crime.

### UNITED STATES' OBJECTIONS

Defendants' proposed instruction, which is largely similar to the United States' proposed instruction, includes the statement "a person named in Count 52" in the first element.  This instruction is too restrictive and does not appropriately convey *Pinkerton* liability and also violates the law of the case established by the Court.  Doc. 1311 at 4.

For a defendant to be found guilty at trial under a *Pinkerton* theory, the co-conspirator need not be named in the indictment. *United States v. Carpenter*, 961 F.2d 824, 828 n.3 (9th Cir. 1992) ("As an unindicted co-conspirator, Shahabian's acts and statements in furtherance of the conspiracy may be attributed to Carpenter.") (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)).  Here, the Court has already recognized that *Pinkerton* liability extends to individuals not named in the Superseding Indictment.  Doc. 1311 at 4; Doc. 793 at 19 (discussing *Pinkerton* and fact that "C.F" was a co-conspirator of Defendants).  *See also United States v. Long*, 301 F.3d 1095, 1103 (9th Cir 2002) ("The *Pinkerton* doctrine is a judicially-created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy.").  Both the applicable law and facts support the Court instructing the jury using the United States' proposed instruction.

1

2

3

4

## UNITED STATES' PROPOSED INSTRUCTION

## 11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE

## (INTERNATIONAL PROMOTIONAL MONEY LAUNDERING) COMMITTED

## BY CO-CONSPIRATOR (*PINKERTON* CHARGE)

5      Each member of the conspiracy is responsible for the actions of the other

6  conspirators performed during the course and in furtherance of the conspiracy. If one

7  member of a conspiracy commits a crime in furtherance of a conspiracy, the other members

8  have also, under the law, committed that crime.

9      Therefore, you may find the defendant guilty of International Promotional Money

10 Laundering as charged in Counts 63-68 of the indictment if the United States has proved

11 each of the following elements beyond a reasonable doubt:

12     First, a member of the conspiracy committed International Promotional Money

13 Laundering alleged in that count;[6]

14     Second, the person was a member of the conspiracy charged in Count 52 of the

15 indictment;

16     Third, the person committed International Promotional Money Laundering in

17 furtherance of the conspiracy;

18     Fourth, the defendant was a member of the same conspiracy at the time the offenses

19 charged in 63-68 were committed; and

20     Fifth, the offense fell within the scope of the unlawful agreement and could

21 reasonably have been foreseen to be a necessary or natural consequence of the unlawful

22 agreement.

23                    **DEFENDANTS' OBJECTION**

24     The government's deletion of critical language from the model instruction renders

25 its proposed instruction legally incorrect.  The model instruction requires that the first

26 element specify that "a person named in [Count ___] of the indictment committed the

27 _____

28 [6] *See* footnote 4.

- 76 -

crime." 9th Cir. Model Crim. J. Instr. 11.6.  The government's instruction, once again, attempts to criminalize facilitating the amorphous notion of prostitution.  Facilitating "prostitution" is not prescribed by the Travel Act; rather, the Travel Act prescribes only facilitating a business enterprise involved in prostitution offenses in violation of the laws of the State in which they were committed.  Moreover, the Court has already limited the conspiracy to the fifty specific ads charged in the indictment.  *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.").

The government's proposed language is misleading in that it suggests any person who posted on Backpage.com could be a "member of the conspiracy" as required in the first element.  Such a boundless conspiracy also would be a classic hub and spoke conspiracy lacking a rim, which the Supreme Court held impermissible in *Kotteakos v. United States*, 328 U.S. 750, 754–55 (1946) ("[T]he pattern was 'that of separate spokes meeting at a common center,' though we may add without the rim of the wheel to enclose the spokes."); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) ("A rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction . . . . In *Kotteakos*, the Supreme Court made clear that a rimless wheel conspiracy is not a single, general conspiracy but instead amounts to multiple conspiracies between the common defendant and each of the other defendants.").

## DEFENDANTS' PROPOSED INSTRUCTION

## 11.6 CONSPIRACY—LIABILITY FOR INTERNATIONAL PROMOTIONAL MONEY LAUNDERING VIOLATIONS COMMITTED BY CO-CONSPIRATOR (*PINKERTON* CHARGE)

Each member of a conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find a Defendant guilty of a committing international promotional money laundering in violation of Section 1956(a)(2)(A) of Title 18 of the United States Code as charged in Counts 63-68 of the indictment if the government has proved each of the following elements beyond a reasonable doubt:

First, a person named in Count 52 of the indictment committed the crime of international promotional money laundering as alleged in Counts 63-68;

Second, the person was a member of the conspiracy as charged in Count 52 of the indictment;

Third, the person committed the crime of international promotional money laundering in furtherance of the conspiracy;

Fourth, the Defendant was a member of the same conspiracy at the time the offenses charged in Counts 63-68 were committed;

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

To prove a conspiracy, the government must prove beyond a reasonable doubt the requisite intent to commit the substantive crime, here international promotional money laundering. International promotional money laundering is a specific intent crime. See the Specific Intent jury instruction.

- 78 -

**Supporting Authorities**

Model Crim. Jury Instr. 9th Cir. 11.6 (modified to reflect the charges in the indictment). As this Court previously held, the "specified unlawful activity" ("SUA") here is not the general facilitation or promotion of "any business enterprise involving prostitution offenses" in violation of the Travel Act. *See United States v. Lacey, et al*. (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al*. (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity."). Therefore, the SUA referenced in each of the proposed jury instructions regarding the Indictment's money laundering charges must reference the "fifty distinct" advertisements at issue in Counts 2 - 51. *Id*.

To prove a conspiracy charge, the government must prove the "requisite intent for the substantive crime." *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016). International promotional money laundering is a specific intent crime.

**UNITED STATES' OBJECTIONS**

Defendants' proposed instruction, which is largely similar to the United States' proposed instruction, includes the statement "a person named in Count 52" in the first element.  This instruction is too restrictive and does not appropriately convey *Pinkerton* liability and also violates the law of the case established by the Court.  Doc. 1311 at 4.

For a defendant to be found guilty at trial under a *Pinkerton* theory, the co-conspirator need not be named in the indictment.  *United States v. Carpenter*, 961 F.2d

824, 828 n.3 (9th Cir. 1992) ("As an unindicted co-conspirator, Shahabian's acts and statements in furtherance of the conspiracy may be attributed to Carpenter.") (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)).  Here, the Court has already recognized that *Pinkerton* liability extends to individuals not named in the Superseding Indictment.  Doc. 1311 at 4; Doc. 793 at 19 (discussing *Pinkerton* and fact that "C.F" was a co-conspirator of Defendants).  *See also United States v. Long*, 301 F.3d 1095, 1103 (9th Cir 2002) ("The *Pinkerton* doctrine is a judicially-created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy.").  Both the applicable law and facts support the Court instructing the jury using the United States' proposed instruction.

**UNITED STATES' PROPOSED INSTRUCTION**

**18.1 TRAVEL ACT—INTERSTATE OR FOREIGN TRAVEL IN AID OF**

**RACKETEERING ENTERPRISE**

**(18 U.S.C. § 1952(a)(3))**

The defendants are charged in Counts 2-51 of the indictment with violating Section 1952(a)(3) of Title 18 of the United States Code, a statute also referred to as "the Travel Act." In order for the defendants to be found guilty of Counts 2-51, the United States must prove, for each count, the following elements beyond a reasonable doubt:

First, the defendant used any facility in interstate commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed (as specified below), and

Second, after doing so the defendant performed or attempted to perform an act that did promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses, specifically, by publishing on Backpage.com the ads listed in Counts 2-51 of the indictment.

Counts 2, 4, 27, 29-30, 33, 35, 37, 40 and 43 concern prostitution offenses in violation of the laws of the State of Massachusetts. A prostitution offense in Massachusetts occurs when:

(1) A person engaged, agreed to engage, or offered to engage, in sexual conduct with another person; and

(2) The sexual conduct was, or was to be, done in return for a fee.

The term "sexual conduct" includes sexual intercourse; anal intercourse; fellatio, or oral sex involving contact between the mouth of one person and the penis of another person; cunnilingus, or oral sex involving contact between the mouth of one person and the female sex organs—the vagina, vulva or labia—of another person; masturbation of

- 81 -

another person; or any intrusion of a part of one person's body or some other object into the genital or anal opening of another person's body.

Counts 3, 6-11, 18, 25-26, and 28 concern prostitution offenses in violation of the laws of the State of Washington.  A prostitution offense in Washington  occurs when:

> (1) A person engaged, agreed to engage, or offered to engage in sexual conduct with another person; and
>
> (2) The sexual conduct, agreement, or offer was in return for a fee.

"Sexual conduct" means sexual contact or sexual intercourse.  "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.  "Sexual intercourse" means that the sexual organ of the male entered and penetrated the sexual organ of the female and occurs upon any penetration, however slight, or any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, or any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

Counts 14-15, 21-22, and 31 concern prostitution offenses in violation of the laws of the State of Arizona. A prostitution offense in Arizona occurs when:

A person knowingly engaged, agreed, or offered to engage in sexual conduct with another person under a fee arrangement with any person for money or any other valuable consideration.

"Sexual conduct" means sexual contact, sexual intercourse, oral sexual contact, or sadomasochistic abuse.

"Sexual contact" means any direct or indirect fondling or manipulating of any part of the genitals, anus or female breast.

"Sexual intercourse" means penetration into the penis, vulva or anus by any part of

the body or by an object.

"Oral sexual contact" means oral contact with the penis, vulva or anus.

"Sadomasochistic abuse" means flagellation or torture by or on a person who is nude or clad in undergarments or in revealing or bizarre costume or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

Counts 12-13, 23, and 34 concern prostitution offenses in violation of the laws of the State of California.  A prostitution offense in California occurs when:

An individual solicits, or agrees to engage in, or engages in, any act of prostitution with the intent to receive compensation, money, or anything of value from another person.

An act of prostitution occurs when a person has sexual intercourse or does a lewd act with someone else in exchange for money or other compensation.  A lewd act means touching the genitals, buttocks, or female breast of either the prostitute or customer with some part of the other person's body for the purpose of sexual arousal or gratification.

Counts 45-47 and 51 concern prostitution offenses in violation of the laws of the State of New York.  A prostitution offense in New York occurs when:

A person engaged, agreed, or offered to engage, in sexual conduct with another person for a fee.

Counts 19-20 and 50 concern prostitution offenses in violation of the laws of the State of Texas.  A prostitution offense in Texas occurs when:

A person knowingly offers or agrees to receive a fee from another to engage in sexual conduct.

"Sexual conduct" includes deviate sexual intercourse, sexual contact, and sexual intercourse.

"Sexual intercourse" means any penetration of the female sex organ by the male sex organ.

"Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person.

"Fee" means the payment or offer of payment in the form of money, goods, services, or other benefit.

"Deviate sexual intercourse" means any contact between the genitals of one person and the mouth or anus of another person.

A person acts knowingly, or with knowledge, with respect to the nature of his/her conduct or to circumstances surrounding his/her conduct when he/she is aware of the nature of his/her conduct or that the circumstances exist.

Counts 16-17 concern prostitution offenses in violation of the laws of the State of Colorado.  A prostitution offense occurs in Colorado when:

A person performed, offered, or agreed to perform, any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse, with any person who was not his or her spouse, in exchange for money or other thing of value.

Or when:

A person solicited another for the purpose of prostitution.

Colorado law provides the following definitions:

"Anal intercourse" means contact between human beings of the genital organs of one and the anus of another.

"Fellatio" means any act of oral stimulation of the penis.

"Cunnilingus" means any act of oral stimulation of the vulva or clitoris.

"Masturbation" means stimulation of the genital organs by manual or other bodily contact exclusive of sexual intercourse.

"Thing of value" includes real property, tangible and intangible personal property, contract rights, choses in action, services, confidential information, medical records information, and any rights of use or enjoyment connected therewith.

<u>Counts 38 and 42</u> concern prostitution offenses in violation of the laws of the State of Ohio.  A prostitution offense occurs in Ohio when:

A person engaged in sexual activity for hire.

Or when:

A person recklessly induces, entices, or procures another to engage in sexual activity for hire in exchange for the person giving anything of value to the other person.

Ohio law provides the following definitions:

"Sexual activity" means sexual conduct or sexual contact, or both.

"Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

"Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

"For hire" means for pay or compensation.


<u>Counts 36 and 49</u> concern prostitution offenses in violation of the laws of the State of Nevada.   A prostitution offense in Nevada occurs when:

A person engaged in prostitution or solicitation therefor, except in a licensed house of prostitution.

"Prostitution" means engaging in sexual conduct with another person in return for a fee, monetary consideration or other thing of value.

"Sexual conduct" means sexual intercourse, oral-genital contact or any touching of the sexual organs or other intimate parts of a person for the purpose of arousing or gratifying the sexual desire of either person.

Counts 24 and 44 concern prostitution offenses in violation of the laws of the State of Michigan.  A prostitution offense in Michigan occurs when:

A person engaged or offered to engage the services of another person, not his or her spouse, for the purpose of prostitution, lewdness, or assignation, by the payment in money or other forms of consideration.

Count 32 concerns prostitution offenses in violation of the laws of the State of Louisiana.  A prostitution offense in Louisiana occurs when:

A person engaged in indiscriminate sexual intercourse for compensation, or solicited another with the intent to engage in indiscriminate sexual intercourse for compensation.

"Sexual intercourse" means anal, oral, or vaginal sexual intercourse.

Count 48 concerns prostitution offenses in violation of the laws of the State of Florida.  A prostitution offense in Florida occurs when:

A person offered to commit, committed, or engaged in prostitution, lewdness, or assignation.

-OR-

A person solicited, induced, enticed, or procured another to commit prostitution, lewdness, or assignation.

"Prostitution" is the giving or receiving of the body for sexual activity for hire but excludes sexual activity between spouses.

"Lewdness" is any indecent or obscene act. "Indecent" means wicked, lustful, unchaste, licentious, or sensual intention on the part of the person doing the act.

"Sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; anal or vaginal penetration of another by any other object; or the handling or fondling of the sexual organ of another for the purpose of masturbation; however, the term does not include acts done for bona fide medical purposes.

"Assignation" includes the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.

To "solicit" means to command, encourage, hire, or request another person to engage in specific conduct.

To "procure" means to persuade, induce, prevail upon or cause a person to do something.

Count 39 concerns prostitution offenses in violation of the laws of the State of Alabama.  A prostitution offense in Alabama occurs under any of the following:

(1)     A person commits an act of prostitution, which is .  any natural or unnatural sexual act, sodomy, or sexual contact for monetary consideration or other thing of value.

(2)     A person solicited, compelled, or coerced any person to have sexual intercourse or participate in any natural or unnatural sexual act, deviant sexual intercourse, or sexual contact for monetary consideration or other thing of marketable value.

(3)     A person agreed to engage in sexual intercourse, deviant sexual intercourse, or sexual contact with another or participate in the act for monetary consideration or other thing of marketable value and give or accept monetary consideration or other thing of value in furtherance of the agreement.

(4)     A person knowingly did any of the following:

    a)  Caused or aided a person to commit or engage in prostitution.

    b)  Procured or solicited patrons for prostitution.

    c)  Provided persons or premises for prostitution purposes.

    d)  Received or accepted money or other thing of value pursuant to a prior agreement with any person whereby he or she participated or is to participate in the proceeds of any prostitution activity.

    e)  Operated or assisted in the operation of a house of prostitution or a prostitution enterprise.

Count 41 concerns prostitution offenses in violation of the laws of the State of Arkansas.  A prostitution offense in Arkansas occurs when:

A person engaged in, agreed, or offered to engage in sexual activity with any other person in return for or in expectation of a fee.

"Sexual activity" means sexual intercourse, deviate sexual activity, or sexual contact.

"Sexual intercourse" means penetration, however slight, of the labia majora by a penis.

"Deviate sexual activity" means any act of sexual gratification involving: (A) the penetration, however slight, of the anus or mouth of a person by the penis of another person; or (B) the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person.

"Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female.

Count 5 concerns prostitution offenses in violation of the laws of the State of Maine. A prostitution offense in Maine occurs when:

A person engages in, or agrees to engage in, or offers to engage in a sexual act or sexual contact in return for a pecuniary benefit to be received by the person engaging in prostitution or a 3rd person.

"Sexual act" means: (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; (2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or (3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by

another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

"Sexual contact" means any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

**Supporting Authorities**

Massachusetts General Laws Ch. 272 § 53A(a); Massachusetts Criminal Model Jury Instruction 7.480—Sexual Conduct for a Fee.

Revised Code of Washington § 9A.88.030; Washington Pattern Jury Instructions—Criminal § 48.02 Prostitution-Elements; § 48.12 Sexual Conduct—Definition (April 2021 update).

Arizona Revised Statute §§ 13-3211; 13-3214; Revised Arizona Jury Instructions (Criminal) §§ 32.11; 32.14.

California Penal Code § 647(b)(1); Judicial Council of California Criminal Jury Instructions (2020 Edition) CALCRIM §§ 1153-55.

New York Penal Law Article 230.00; New York Criminal Jury Instructions and Model Colloquies for Article 230 Prostitution Offenses (there is no statutory definition of the term "sexual conduct" that is expressly applicable to the statutes contained in Penal Law article 230; *See Prus v. Holder*, 660 F.3d 144 (2d Cir. 2011) ("Although 'sexual conduct' is not defined in Article 230, the plain language of the statute makes clear that prostitution in New York encompasses accepting payment for sexual acts beyond . . . "'sexual intercourse'").

Texas Penal Code §§ 43.01, 43.02(a), 6.03; Texas Criminal Jury Charges § 10:391A.

Colorado Revised Statutes, §§ 18-7-201 and 18-7-202; Colorado Jury Instructions Criminal 2018, §§ 7-2:01 Prostitution and 7-2:03 Soliciting Another for Prostitution;

1   Instruction F:16 (defining "anal intercourse"); F:81 (defining "cunnilingus"); F:147

2   (defining "fellatio"); F:217 (defining "masturbation"); F:371 (defining "thing of value");

3   (the term "sexual intercourse" is not defined in section 18-7-201).

4        Ohio Revised Code §§ 2907.01, 2907.25, 2907.231; 2 Ohio Jury Instructions

5   Criminal § 507.25.

6        Nevada Revised Statutes §§ 201.354, 201.295.

7        Michigan Penal Code § 750.449a.

8        Louisiana Revised Statutes §14:82.

9        Florida Statutes § 796.07; 1 FL Standard Jury Instructions in Criminal Cases 23.5

10  and 23.6.

11       Alabama Criminal Code §§ 13A-12-120, 13A-12-121.

12       Arkansas Code §§ 5-70-102, 5-70-101, 5-14-101.

13       Maine Revised Statutes 17-A §§ 853-A, 851, 251.

14                          **DEFENDANTS' OBJECTION**

15       First, Defendants do not object to the inclusion of the relevant statutes defining state

16  law prostitution offenses.  But the instruction does not adequately instruct the jury on what

17  is required to prove that a defendant "promoted" or "facilitated" unlawful activity in

18  violation of the Travel Act.  Facilitation is the same thing as aiding and abetting, *see* Doc.

19  1557 at 10-13.  Mere days ago, the United States Supreme Court confirmed that when a

20  federal criminal statute uses the word "facilitation" it means "aiding and abetting." *United*

21  *States v. Hansen*, 599 U.S. __, 2023WL4138994, at *6 (June 23, 2023).  *See* also Doc.

22  1557-1 at 45-46 (USA arguing in *Woodhull* litigation that "promote" and "facilitate" "as

23  used in the Travel Act, is equivalent to 'aid or abet'").  Accordingly, the inclusion of the

24  pertinent state statutes is helpful but not sufficient in instructing the jury that it must find

25  that defendants facilitated—i.e., aided and abetted—a particular business enterprise's

26  violations of those statutes.  As set forth in Defendants' competing proposed instruction

27  18.1, a proper instruction would also instruct the jury on the elements of facilitation of a

28  business enterprise's prostitution offenses, namely that: (1) a particular business enterprise

committed prostitution offenses in violation of state law; (2) the defendant aided that business enterprise with respect to an element of the prostitution offense; (3) the defendant acted with specific intent that the prostitution offense be committed; (4) the defendant acted before the crime was completed. *See also Hansen*, 599 U.S. at __, 2023WL4138994, at *6 (describing elements of facilitation as including proof (1) "that a wrongful act be carried out" and proof of (2) "an intent to bring about a particular unlawful act").

Moreover, although the government need not prove that each defendant him or herself violated state law for the jury to convict on a given Travel Act count, "[a] proper instruction would make it clear to the jury that in order to convict, they must find that the defendant specifically intended to promote (et cetera) an activity that involves all of the elements of the relevant state offense." *United States v. Jones*, 909 F.2d 533, 539 (D.C. Cir. 1990); *see United States v. Hiatt*, 527 F.2d 1048, 1051 (9th Cir. 1975) ("It is correct that the existence of a state law violation is an element of the violation of the Travel Act and that the court must make a determination of whether the underlying state law has been or could have been violated.").

Second, the proposed instruction improperly groups all of the Travel Act counts, failing to treat each individually. As to each Travel Act count, the government must prove the existence of a business enterprise involving prostitution offenses, that Backpage.com's publication of the charged ad facilitated that business enterprise's prostitution offenses, the specific intent of each defendant to facilitate the unlawful activities of that business enterprise by publishing the charged ad, and a subsequent overt act in furtherance of that business enterprise. As written, the instruction could lead the jury to mistakenly believe that it can mix and match the elements among all the Travel Act counts. For example, this instruction could lead the jury to mistakenly believe that finding the existence of "any" business enterprise, whether or not it is related to a specific count, nevertheless allows it to convict as to that count.

Third, the proposed instruction improperly groups all defendants, rather than treating each defendant as an individual as to whom the government must separately prove its charges.

Fourth, the term "unlawful activity" should be defined with reference to the business enterprise requirement (as "unlawful activity" is defined in the Travel Act statute). The simultaneous use of the term "unlawful activity" likely would signal to the jury that this term means something other than a business enterprise involving prostitution offenses in violation of state law.

Fifth, as drafted, the government's proposed instruction would imply to the jury that the instruction is self-contained, including all the elements of a Travel Act offense, when it completely omits the requirement of the use of a facility in interstate commerce.

**DEFENDANTS' PROPOSED INSTRUCTION**

**18.1 TRAVEL ACT—INTERSTATE OR FOREIGN TRAVEL**

**IN AID OF RACKETEERING ENTERPRISE**

**(18 U.S.C. § 1952(a)(3))**

**(Counts 2-51 – Travel Act)**

Each defendant is charged in Counts 2-51 of the indictment with violating Section 1952(a)(3) of Title 18 of the United States Code.  For a defendant to be found guilty of those charges, the government must prove both of the following elements beyond a reasonable doubt for each defendant as to each of the fifty charged advertisements:

First, the defendant used a facility in interstate commerce with the specific intent to promote or facilitate a prostitution offense, committed by the business enterprise that posted the ad, in violation of the laws of the State in which the prostitution offense was committed; and

Second, after doing so, that defendant performed an act to promote or facilitate the prostitution offenses committed by the business enterprise that posted the ad for each Count.

"Promote" and "facilitate" under the Travel Act require either proof that the defendant personally committed the underlying state law criminal offense or aided and abetted someone else in its commission.  To "aid and abet" means to intentionally help someone else commit a crime.  To prove a defendant guilty of violating the Travel Act by promoting or facilitating prostitution offenses committed by a particular business enterprise not directly involving defendants in violation of the laws of the State in which they were committed, the government must prove each of the following beyond a reasonable doubt:

First, a particular business enterprise committed prostitution offenses in violation of the laws of the State in which they were committed;

Second, the defendant aided, counseled, commanded, induced, or procured that some person with respect to at least one element of that specific prostitution offense

committed by a particular business enterprise in violation of the laws of the State in which it was committed;

Third, the defendant acted with the specific intent to promote or facilitate a prostitution offense committed by a particular business enterprise in violation of the laws of the State in which it was committed; and

Fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit a violation of the Travel Act by promoting or facilitating a prostitution offense committed by a particular business enterprise in violation of the laws of the State in which it was committed.

A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime.

The elements of the Travel Act are not satisfied if a defendant merely did an act that promoted or facilitated prostitution offenses committed by a particular business enterprise. The elements of the Travel Act are only established if the government proves beyond a reasonable doubt that a defendant knowingly and willfully intended his or her act to facilitate the specific prostitution offense committed by the business enterprise associated with the charged advertisement.

The government has the burden to prove that a defendant had the specific intent required to commit the offense beyond a reasonable doubt, as explained in Instruction No. 11.1.

**First Amendment Application**

In addition to the requirements of the Travel Act, under the First Amendment, the

jury cannot find a defendant guilty of a crime based on the publication of a presumptively protected third-party classified ad, unless the government proves beyond a reasonable doubt that:

(i)      the defendant had actual knowledge of the particular ad,

(ii)     the defendant had actual knowledge that the particular ad related to unlawful activity, *and*

(iii)    the defendant personally took an action causing the particular ad to be published on, or to continue to be published on, Backpage.com with the aim of furthering the illegal activity.

It is not enough for the government to show that a defendant knew that some adult ads might lead to others committing crimes.  If this is all the government demonstrates, you must find the defendant not guilty.  To find a defendant guilty, the government must prove beyond a reasonable doubt that the defendant specifically intended that the prostitution offenses committed by a particular business enterprises be committed. Specific intent is defined in the following instruction.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 18.1 (modified to reflect the charges in the indictment); Ninth Circuit Manual of Model Criminal Jury Instructions 4.1.  *See United States v. Hansen*, 599 U.S. __, 2023WL4138994, at *6 (June 23, 2023) (confirming that when a federal criminal statute uses the word "facilitation," it means "aiding and abetting" and explaining that the elements of facilitation as including proof (1) "that a wrongful act be carried out" and proof of (2) "an intent to bring about a particular unlawful act").  Doc. 1557-1, Br. of United States in *Woodhull Freedom Found'n v. United States*, Case No. 22-5105, at 28-30 (D.C. Cir., Nov. 2, 2022) (asserting that "[t]he phrase 'promote or facilitate,' as used in the Travel Act, is equivalent to 'aid or abet'").  *See* 18 U.S.C. § 1952 (tracking the aiding and abetting elements in Model Instruction 4.1).  *Rosemond*, 572 U.S. at 76 (The "settled legal concepts" of "aiding and abetting" and the "traditional principles of

accomplice liability" definitively require, as elements of the charge, proof of (1) commission of an offense by someone and (2) a state of mind extending "to the specific and entire crime").  *See also United States v. Encarnacion-Ruiz*, 787 F.3d 581, 588 (1st Cir. 2015) ("Under *Rosemond*, to establish the mens rea required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged offense.  *See* 134 S.Ct. at 1248–49; *see also id*. (stating that an aider and abettor must have 'full awareness of [the crime's] scope,' 'full knowledge of the circumstances constituting the charged offense,' and 'participate[ ] in a criminal scheme knowing its extent and character')…").

 *See Backpage.com v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("'[A]n intermediary . . . normally is indifferent to the content of what it transmits.  Even entities that know the information's content do not become liable for the sponsor's deeds.  Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity?' *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) . . . Backpage is an intermediary between the advertisers of adult services and visitors to Backpage's website."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 651 (7th Cir. 2003) ("A retailer of slinky dresses is not guilty of aiding and abetting prostitution even if he knows that some of his customers are prostitutes….").

 *United States v Gibson Specialty Co.*, 507 F.2d 446, 450 fn. 8 (9th Cir. 1974) ("The presumption that one intends the natural and probable consequences of his actions is insufficient in this context to establish intent to facilitate criminal activity.  It is as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser.")

 *See United States v. Rundo*, 990 F.3d 709, 719-720 (9th Cir. 2021) ("'the intent to engage in one of the prohibited acts is a personal prerequisite to punishment under [the Anti-Riot Act] . . . Simply put, knowing that some might choose to become violent is not

at all the same as intending that they do so.").

*Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) ("The third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech' that fall outside of First Amendment protection.") (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)).

*See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

*United States v. Jones*, 909 F.2d 533, 539 (D.C.Cir.1990) (a proper Travel Act jury instruction "would inform the jury that the defendant must have performed or attempted to perform an act in furtherance of the business, with the intent that each element of the underlying state crime be completed"); *Deptula v. Attorney General of U.S.*, 642 Fed. Appx. 184 (3rd Cir. 2016) ("to obtain a Travel Act conviction, the government must prove . . . that the defendant had the specific intent to facilitate each element of the relevant offense."); *United States v. Bertman*, 686 F.2d 772, 774 (9th Cir. 1982) ("When the unlawful activity charged in the indictment is the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense.").

### UNITED STATES' OBJECTIONS

The Court should give the Travel Act instructions proposed by the United States instead of this proposed instruction by Defendants.  First, the Court has already ruled on

the appropriate instruction for Travel Act violations and that language tracks the United States' proposed instruction.  Doc. 1311 at 3-4.  Second, the United States doesn't need to prove that the prostitution offense was actually committed.  *United States v. Polizzi*, 500 F.2d 856, 876-77 (9th Cir. 1974) (Government does not need to prove that defendants had specific intent to violate the underlying state law, only "specific intent to facilitate an activity which the accused knew to be unlawful under state law."); Doc. 1587 at 3 ("The Ninth Circuit has clarified that the Travel Act does not require the commission of the predicate offense; rather, only an attempt to promote the unlawful activity with a subsequent overt act in furtherance of that unlawful activity.") (cleaned up).  For that reason, Defendants' attempt to analogize the Travel Act instruction to an aid and abet instruction fails.

Third, Defendants' instructions are not supported by *United States v. Hansen*, 599 U.S. __, 2023 WL 4138994, at *6 (June 23, 2023).[7]  Defendants' claim that "promote" and "facilitate" under the Travel Act "require either proof that the defendant personally committed the underlying state law criminal offense or aided and abetted someone else in its commission."  But that claim assumes that "facilitate," in the context of the Travel Act, necessarily carries over all of the elements of a traditional aiding-and-abetting offense.  And it assumes that the term "promote" has no independent meaning.  Both assumptions are mistaken.

"Facilitate" in the Travel Act does not require proof of the independent commission of a separate crime.  *See* Part III, *infra*, United States' Proposed Instruction No. 1.  Nor does it require proof of intent to bring about the commission of a particular unlawful act.  *United States v. Polizzi*, 500 F.2d 856, 876-77 (9th Cir. 1974) (Government does not need to prove that defendants had specific intent to violate the underlying state law, only

---

[7] The United States will provide a fuller response to Defendants' *Hansen*-based claims in its Response to Defendants' Motion for Reconsideration (Doc. 1622).  Suffice to say, *Hansen*—which addresses a different federal statute with different statutory language, and does not discuss the term "promote" at all—is not "clearly irreconcilable" with the Ninth Circuit cases that support the United States' instructions and objections.  Those cases remain binding here.  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

1    "specific intent to facilitate an activity which the accused knew to be unlawful under state

2    law."); Doc. 1587 at 3 ("The Ninth Circuit has clarified that the Travel Act does not require

3    the commission of the predicate offense; rather, only an attempt to promote the unlawful

4    activity with a subsequent overt act in furtherance of that unlawful activity.") (cleaned up).

5          Defendants' instruction also renders superfluous the term "promote" in the Travel

6    Act—"a result we typically try to avoid." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941

7    (2017). *See also Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("[W]e must give effect, if

8    possible, to every clause and word of a statute."). The Travel Act criminalizes using any

9    facility in interstate commerce "with intent to--. . . promote, . . . or facilitate the promotion,

10   of . . . any business enterprise    . . . involving prostitution offenses in violation of the laws

11   of the State in which they are committed[.]"  18 U.S.C. § 1952(a)(3), (b)(i)(1).  The Act

12   uses the verbs "promote" and "facilitate" disjunctively—it requires intent to "promote," or

13   to "facilitate the promotion" of, businesses involved in the type of unlawful activity at issue

14   (here, prostitution).  And "promote"—when used in the context of prostitution—is often

15   associated with solicitation.  *See* PANDERING, Black's Law Dictionary (11th ed. 2019)

16   (associating pandering with soliciting and "promoting prostitution").  It is also a key part

17   of the definition of "advertising." ADVERTISING, Black's Law Dictionary (11th ed.

18   2019) (advertising is "[t]he action of drawing the public's attention to something to

19   promote its sale") (emphasis added).  Defendants' instruction ignores the meaning and

20   effect of this term.

21          The United States' instruction tracks the Model Jury Instruction and the Court's

22   previous ruling.  Doc. 1311 at 3-4.  Defendants' proposed instruction provides a host of

23   extraneous material.

24          Defendants' "First Amendment Application" is—as discussed by the United States

25   in Part IV *infra*—contrary to law and the facts in this case.  All of the instruction following

26   the second element, which is where the Model Instruction ends, is unnecessary and

27   represents Defendants' legal arguments that are unsupported by law, as this Court has

28   recognized in previous Orders.  *See* Doc. 793 at 15 ("Defendants argue the First

Amendment requires the Government or prove that each Defendant was aware of each ad that make up the fifty Travel Act counts and knew that each ad proposed illegal transactions.  The Court is not persuaded that the First Amendment demands such a standard."); Doc. 946 at 13-14 ("[T]he allegations certainly describe a course of conduct where Defendants facilitated 'unlawful activity,' including numerous pimps, prostitutes and traffickers in violation of the Travel Act.  They also certainly describe how these various groups continuously engaged in prostitution, which plausibly fits within the definition of a 'business enterprise.'").

Defendants' reliance on *United States v. Bertman*, for the proposition that Defendants needed the intent to violate the state prostitution offense before being found guilty is misplaced.  *Bertman* involved a claim under 18 U.S.C. § 1952(b)(2) that the defendant violated the Travel Act by bribing a public official in Hawaii in direct violation of the Hawaii Penal Code.  686 F.2d at 773-74.  The Ninth Circuit held that "[w]hen the unlawful activity charged in the indictment *is* the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense," the government "must prove . . . that the defendant has or could have violated the underlying state law, and the defendant may assert any relevant substantive state law defense."  *Id*. at 774 (emphasis added).  Here, the unlawful activity at issue is not Defendants' direct *violation* of a state "extortion, bribery, or arson" statute under 18 U.S.C. § 1952(b)(2) (as in *Bertman*), but rather Defendants' *promotion* or *facilitation of the promotion* of unlawful activity under 18 U.S.C. § 1952(a)(3) and (b)(1).  *See, e.g.*, SI¶¶9-11, 34.   In these circumstances, it would make no sense to require that the United States prove Defendants did or could have directly committed the underlying state law offenses.  "Promotion" or "facilitation," not commission, is all that is required.  *See* 18 U.S.C. § 1952(a)(3).

Defendants' contrary reading would render superfluous the terms "promote" and "facilitate" in 18 U.S.C. § 1952(a)(3)—"a result we typically try to avoid."  *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017).  *See also Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("[W]e must give effect, if possible, to every clause and word of a statute.").  For

that very reason, the Ninth Circuit has recognized that the Travel Act does not require proof that defendants intended to violate state law themselves; proof that defendants intended to *promote* or *facilitate* violation of state law suffices.  *Polizzi*, 500 F.2d at 876-77 ("[T]o the extent that [a Sixth Circuit case] requires proof that an accused under § 1952 intended to violate state law himself, we find that it conflicts with the clear meaning of the language used in § 1952.").  These include cases decided post-*Bertman*.  *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992) ("Section 1952(a)(3) requires the government to prove only that a defendant committed 'a subsequent overt act in furtherance of the unlawful activity.'"); *United States v. Stafford*, 831 F.2d 1479, 1482 (9th Cir. 1987) ("The Travel Act does not require the commission of the predicate offense; rather, only an 'attempt to promote' the unlawful activity . . . with a 'subsequent overt act in furtherance of that unlawful activity.'"); *see also United States v. Jones*, 642 F.2d 909, 913 (5th Cir. 1981) (subsequent facilitating act required by Travel Act need only make the unlawful activity easier and need not itself be unlawful).  This Court's prior Orders discussing the adequacy of the SI are to the same effect.  *See* Doc. 793, Order at 15 (quoting *Polizzi* and describing *mens rea* required by Travel Act); *see also* Doc. 840, Order at 10-12 (discussing elements of Travel Act); Doc. 946, Order at 7-8, 11, 14-16 (same).

The Court should instruct the jury based on the United States' proposed jury instructions describing Counts 2-51.

1
2
3

**UNITED STATES' PROPOSED INSTRUCTION**

**18.4 LAUNDERING MONETARY INSTRUMENTS**

**(18 U.S.C. § 1956(a)(1)(B))**

4    Defendants Lacey, Larkin, Spear, and Brunst are charged in Counts 53-62 of the

5    indictment with Concealment Money Laundering in violation of Section 1956(a)(1)(B)(i)

6    of Title 18 of the United States Code.  In order for a defendant to be found guilty of that

7    charge, the United States must prove each of the following elements beyond a reasonable

8    doubt:

9    First, the defendant conducted a financial transaction involving property that

10   represented the proceeds of promoting, managing, establishing, carrying on, or facilitating

11   the promotion, management, establishment, or carrying on, of any business enterprise

12   involving prostitution offenses in violation of the laws of the State in which they are

13   committed;

14   Second, the defendant knew that the property represented the proceeds of some form

15   of unlawful activity; and

16   Third, the defendant knew that the transaction was designed in whole or in part to

17   conceal and disguise the nature, the location, the source, the ownership, or the control of

18   the proceeds of the specified unlawful activity.

19   A financial transaction is a transaction involving the movement of funds by wire or

20   other means that affects interstate or foreign commerce in any way.

21   The phrase "knew that the property represented the proceeds of some form of

22   unlawful activity" means that the defendant knew that the property involved in the

23   transaction represented proceeds from some form, though not necessarily which form, of

24   activity that constitutes a felony.  I instruct you that violating the Travel Act is a felony.

25   **DEFENDANTS' OBJECTION**

26   Defendants object to the instruction on the basis that the government seeks to put at

27   issue alleged violations of the Travel Act beyond the scope of the fifty advertisements

28   (Counts 2-51) alleged in the Superseding Indictment in violation of this Court's prior

- 102 -

orders.  *See* Doc. No. 946 at 13 (Order denying motion to dismiss) ("Defendants' suggestion that the SI improperly indicts a '***boundless conspiracy*** to facilitate prostitution in general,' (Reply at 4), however, mischaracterizes the charges against them. Such a claim is simply untrue. ***They were not indicted for facilitating the amorphous notion of 'prostitution.'*** They were indicted for facilitating (via publishing ads) ***on fifty distinct occasions*** where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.") (emphasis added); Doc. No. 1099 (December 4, 2020 Hr'g Tr.) at 38 ("[T]his case is not about Backpage . . . .  This case is about these individuals and whether they had specific knowledge of these ads as facilitating illegal activity.").  The Court should therefore define "specified unlawful activity" as relating to the fifty charged advertisements, consistent with its prior orders.

Further, the Superseding Indictment does not define what the "specified unlawful activity" is. Doc. 230 at ¶¶ 207, 209, 211.  Instead, the indictment incorporates by reference the preceding paragraphs of the indictment.  *Id.* at ¶¶ 204, 206, 208.  The only "specified unlawful activity" that could be incorporated by reference into the money laundering charges are Counts 2-51, which charge Travel Act violations tied to fifty specific advertisements. *See United States v. Hirmer*, No. 3:08CR79/MCR, 2009 WL 10726280, at *4 (N.D. Fla. July 14, 2009) ("The indictment may identify the specified unlawful activity by incorporating allegations from other counts.").  Nor does the indictment's conspiracy charge regarding the Travel Act (Count 1) expand the scope of the specified unlawful activity beyond Counts 2-51 (the fifty advertisements) given the Court's prior rulings discussed above.  And in any event, a Travel Act conspiracy charge does not constitute "specified unlawful activity."  *See* 18 USC § (c)(7)(D); 18 U.S.C. § 1957(f)(3); 18 U.S.C. § 1961(1) (making no reference to 18 U.S.C. § 371 or a conspiracy to violate the Travel Act).

Tethering the money laundering charges to the fifty Travel Act counts not only is consistent with the Court's prior orders and the Superseding Indictment's allegations, but it avoids the very real possibility that the jury infers that prostitution generally – rather than

1   the indictment's Travel Act charges – constitutes specified unlawful activity.

**DEFENDANTS' PROPOSED INSTRUCTION**

**18.4 LAUNDERING MONETARY INSTRUMENTS**

**(Counts 53-62—Concealment Money Laundering)**

Defendants Lacey, Larkin, Spear, and Brunst are charged in Counts 53-62 of the indictment with Concealment Money Laundering in violation of Section 1956(a)(1)(B)(i) of Title 18 of the United States Code.  In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant conducted a financial transaction involving property that represented the proceeds of the knowing and willful promotion, or facilitation of the promotion of, the prostitution offenses committed by a particular business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A), specifically (i) a business enterprise involved in at least one of the fifty advertisements that is the subject of Counts 2 – 51 and (ii) a business enterprise for which you found that defendant guilty of promoting or facilitating the promotion of;

Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

A financial transaction is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way.

The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony.  I instruct you that knowingly and willfully promoting, or facilitating the promotion of, the prostitution offenses committed by any business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A) is a felony.

**Supporting Authorities**

Model Crim. Jury Instr. 9th Cir. 18.4 (modified to reflect the charges in the indictment).  As this Court previously held, the "specified unlawful activity" ("SUA") here is not the general facilitation or promotion of "any business enterprise involving prostitution offenses" in violation of the Travel Act.  *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.'  They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage.  Backpage was prosecuted in a separate case, entered a plea in a separate case.  This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").  Therefore, the SUA referenced in each of the proposed jury instructions regarding the Indictment's money laundering charges must reference the "fifty distinct" advertisements at issue in Counts 2 - 51.  *Id*.

**UNITED STATES' OBJECTIONS**

The parties' proposed instructions are similar except for the first element and the final paragraph.  Defendants' instruction is contrary to the law of the case, as the Court has already determined the appropriate instruction for laundering monetary instruments.  Doc. 1311 at 5.  The United States' instruction tracks the Court's ruling.  Defendants propose a much more stringent definition of the specified unlawful activity.  As this Court has previously recognized, that instruction is contrary to governing law.

> For instance, the first money laundering statute that Defendants are indicted under does not require the Government to allege or prove the underlying offenses. *See* 18 U.S.C. § 1956(c)(1) ("the term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, *though not necessarily*

- 106 -

*which form*, of activity that constitutes a felony." (emphasis added)).
Doc. 946 at 17.

Contrary to Defendants' proposed instruction, a defendant can be found guilty of money laundering even if he was found not guilty under any of the Travel Act counts. Doc. 946 at 17, n.11 ("[A] defendant may be convicted of a money laundering offense even if he did not commit the underlying offense."); Doc. 1587 at 17 ("Defendants can be convicted for money laundering without being found guilty for the activity that generated the laundered money[.]"). The instruction proposed by the United States should be given.

**UNITED STATES' PROPOSED INSTRUCTION**

**18.5 TRANSPORTING FUNDS TO PROMOTE**

**UNLAWFUL ACTIVITY**

**(18 U.S.C. § 1956(a)(2)(A))**

Defendants Lacey, Larkin, Spear, and Brunst are charged in Counts 63-68 of the indictment with transporting funds to promote unlawful activity in violation of Section 1956(a)(2)(A) of Title 18 of the United States Code. In order for a defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States; and

Second, the defendant acted with the intent to promote the carrying on of violations of the Travel Act.

**DEFENDANTS' OBJECTION**

Defendants object to the instruction on the basis that the government seeks to put at issue alleged violations of the Travel Act beyond the scope of the fifty advertisements (Counts 2-51) alleged in the Superseding Indictment in violation of this Court's prior orders. *See* Doc. No. 946 at 13 (Order denying motion to dismiss) ("Defendants' suggestion that the SI improperly indicts a '***boundless conspiracy*** to facilitate prostitution in general,' (Reply at 4), however, mischaracterizes the charges against them. Such a claim is simply untrue. ***They were not indicted for facilitating the amorphous notion of 'prostitution.'*** They were indicted for facilitating (via publishing ads) ***on fifty distinct occasions*** where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.") (emphasis added); Doc. No. 1099 (December 4, 2020 Hr'g Tr.) at 38 ("[T]his case is not about Backpage . . . .  This case is about these individuals and whether they had specific knowledge of these ads as facilitating illegal activity.").

1       Further, the Superseding Indictment does not define what the "specified unlawful

2   activity" is. Doc. 230 at ¶¶ 207, 209, 211. Instead, the indictment incorporates by reference

3   the preceding paragraphs of the indictment. *Id*. at ¶¶ 204, 206, 208. The only "specified

4   unlawful activity" that could be incorporated by reference into the money laundering

5   charges are Counts 2-51, which charge Travel Act violations tied to fifty specific

6   advertisements. *See United States v. Hirmer*, No. 3:08CR79/MCR, 2009 WL 10726280,

7   at *4 (N.D. Fla. July 14, 2009) ("The indictment may identify the specified unlawful

8   activity by incorporating allegations from other counts."). Indeed, the Ninth Circuit Model

9   Instruction notes in brackets as to the second element: "*specify criminal activity **charged**

10  **in the indictment**.*" Nor does the indictment's conspiracy charge regarding the Travel Act

11  (Count 1) expand the scope of the specified unlawful activity beyond Counts 2-51 (the fifty

12  advertisements) given the Court's prior rulings discussed above. And in any event, a

13  Travel Act conspiracy charge does not constitute "specified unlawful activity." *See* 18

14  USC § (c)(7)(D); 18 U.S.C. § 1957(f)(3); 18 U.S.C. § 1961(1) (making no reference to 18

15  U.S.C. § 371 or a conspiracy to violate the Travel Act).

16      Tethering the money laundering charges to the fifty Travel Act counts not only is

17  consistent with the Court's prior orders and the Superseding Indictment's allegations, but

18  it avoids the very real possibility that the jury infers that prostitution generally – rather than

19  the indictment's Travel Act charges – constitutes specified unlawful activity.

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION**

**18.5 TRANSPORTING FUNDS TO PROMOTE UNLAWFUL ACTIVITY**

**(Counts 63-68—International Promotional Money Laundering)**

Defendants Lacey, Larkin, Spear, and Brunst are charged in Counts 63-68 of the indictment with transporting funds to promote unlawful activity in violation of Section 1956(a)(2)(A) of Title 18 of the United States Code. In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States; and

Second, the defendant acted with the intent to promote, or facilitate the promotion of, the prostitution offenses committed by a particular business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A), specifically (i) a business enterprise involved in at least one of the fifty advertisements that is the subject of Counts 2 – 51 and (ii) a business enterprise for which you found that defendant guilty of promoting or facilitating the promotion of.

**Supporting Authorities**

Model Crim. Jury Instr. 9th Cir. 18.5 (modified to reflect the charges in the indictment). As this Court previously held, the "specified unlawful activity" ("SUA") here is not the general facilitation or promotion of "any business enterprise involving prostitution offenses" in violation of the Travel Act. *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage.

- 110 -

Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").  Therefore, the SUA referenced in each of the proposed jury instructions regarding the Indictment's money laundering charges must reference the "fifty distinct" advertisements at issue in Counts 2 - 51.  *Id.*

### UNITED STATES' OBJECTIONS

The parties' proposed instructions are similar except for the second element.  The United States' instruction tracks the Court's instruction for transporting funds to promote unlawful activity.  Doc. 1311 at 5.  Defendants propose a much more stringent definition of the specified unlawful activity.  As this Court has previously recognized, that instruction is contrary to governing law.

> For instance, the first money laundering statute that Defendants are indicted under does not require the Government to allege or prove the underlying offenses. *See* 18 U.S.C. § 1956(c)(1) ("the term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, *though not necessarily which form*, of activity that constitutes a felony." (emphasis added)).

Doc. 946 at 17; *see* Doc. 1311 at 5.

Contrary to Defendants' proposed instruction, a defendant can be found guilty of money laundering even if he was found not guilty under any of the Travel Act counts.  Doc. 946 at 17, n.11 ("[A] defendant may be convicted of a money laundering offense even if he did not commit the underlying offense."); Doc. 1587 at 3 ("The Ninth Circuit has clarified that the Travel Act does not require the commission of the predicate offense; rather, only an attempt to promote the unlawful activity with a subsequent overt act in furtherance of that unlawful activity.") (cleaned up).

**UNITED STATES' PROPOSED INSTRUCTION**

**18.6 TRANSPORTING MONETARY INSTRUMENTS FOR THE**

**PURPOSE OF LAUNDERING**

**(18 U.S.C. § 1956(a)(2)(B))**

Defendant Lacey is charged in Count 100 of the indictment with transporting money for the purpose of laundering in violation of Section 1956(a)(2)(B) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States;

Second, the defendant knew that the money represented the proceeds of some form of unlawful activity; and

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses.

**DEFENDANTS' OBJECTION**

Defendants object to the instruction on the basis that the government seeks to put at issue alleged violations of the Travel Act beyond the scope of the fifty advertisements (Counts 2-51) alleged in the Superseding Indictment in violation of this Court's prior orders.  *See* Doc. No. 946 at 13 (Order denying motion to dismiss) ("Defendants' suggestion that the SI improperly indicts a '***boundless conspiracy*** to facilitate prostitution in general,' (Reply at 4), however, mischaracterizes the charges against them. Such a claim is simply untrue. ***They were not indicted for facilitating the amorphous notion of 'prostitution.'*** They were indicted for facilitating (via publishing ads) ***on fifty distinct occasions*** where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.") (emphasis added); Doc No. 1099 (December 4, 2020 Hr'g Tr.) at 38 ("[T]his case is not about Backpage . . . .  This case is about these individuals

- 112 -

and whether they had specific knowledge of these ads as facilitating illegal activity."). Further, the Superseding Indictment does not define what the "specified unlawful activity" is.  Doc. 230 at ¶¶ 207, 209, 211.  Instead, the indictment incorporates by reference the preceding paragraphs of the indictment.  *Id*. at ¶¶ 204, 206, 208.  The only "specified unlawful activity" that could be incorporated by reference into the money laundering charges are Counts 2-51, which charge Travel Act violations tied to fifty specific advertisements.  *See United States v. Hirmer*, No. 3:08CR79/MCR, 2009 WL 10726280, at *4 (N.D. Fla. July 14, 2009) ("The indictment may identify the specified unlawful activity by incorporating allegations from other counts.").  Indeed, the Ninth Circuit Model Instruction notes in brackets as to the third element: "*specify criminal activity **charged in the indictment***."  Nor does the indictment's conspiracy charge regarding the Travel Act (Count 1) expand the scope of the specified unlawful activity beyond Counts 2-51 (the fifty advertisements) given the Court's prior rulings discussed above.  And in any event, a Travel Act conspiracy charge does not constitute "specified unlawful activity."  *See* 18 USC § (c)(7)(D); 18 U.S.C. § 1957(f)(3); 18 U.S.C. § 1961(1) (making no reference to 18 U.S.C. § 371 or a conspiracy to violate the Travel Act).

Tethering the money laundering charges to the fifty Travel Act counts not only is consistent with the Court's prior orders and the Superseding Indictment's allegations, but it avoids the very real possibility that the jury infers that prostitution generally – rather than the indictment's Travel Act charges – constitutes specified unlawful activity.

**DEFENDANTS' PROPOSED INSTRUCTION**

**18.6 TRANSPORTING MONETARY INSTRUMENTS FOR THE PURPOSES OF LAUNDERING**

**(Count 100 – International Concealment Money Laundering)**

Defendant Lacey is charged in Count 100 of the indictment with transporting money for the purpose of laundering in violation of Section 1956(a)(2)(B) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States;

Second, the defendant knew that the money represented the proceeds of the knowing and willful promotion, or facilitation of the promotion of, the prostitution offenses committed by a particular business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A), specifically (i) a business enterprise involved in at least one of the fifty advertisements that is the subject of Counts 2 – 51 and (ii) a business enterprise for which you found that defendant guilty of promoting or facilitating the promotion of; and

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the knowing and willful promotion, or facilitation of the promotion of, the prostitution offenses committed by any business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A).

**Supporting Authorities**

Model Crim. Jury Instr. 9th Cir. 18.6 (modified to reflect the charges in the indictment). As this Court previously held, the "specified unlawful activity" ("SUA") here is not the general facilitation or promotion of "any business enterprise involving prostitution offenses" in violation of the Travel Act. *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct

occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").  Therefore, the SUA referenced in each of the proposed jury instructions regarding the Indictment's money laundering charges must reference the "fifty distinct" advertisements at issue in Counts 2 - 51.  *Id.*

### UNITED STATES' OBJECTIONS

The United States objects to Defendants' proposed second element, which improperly expands the elements of the crime and violates the law of the case.  Doc. 1311 at 6; *see also* 18 U.S.C. § 1956(c)(1) ("the term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony.")  The Court should follow the law of the case and issue the same instruction it did previously.  Doc. 1311 at 6.

**UNITED STATES' PROPOSED INSTRUCTION**

**18.7 MONEY LAUNDERING**

**(18 U.S.C. § 1957)**

Defendant Lacey is charged in Counts 69-70, 81, 83-84, 86, 88-92, and 94-99; Defendant Larkin is charged in Counts 80 and 87; Defendant Spear is charged in Counts 71-78, 85, and 93; and Defendant Brunst is charged in Counts 69-70, 78-84, and 86-93, of the indictment with transactional money laundering in violation of Section 1957 of Title 18 of the United States Code.  For a defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from violations of the Travel Act; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means an insured bank, commercial bank, or credit union.

The term "criminally derived property" means any property constituting, or derived from, the proceeds of a criminal offense. The United States must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The United States does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses.

Although the United States must prove that, of the property at issue more than

1   $10,000 was criminally derived, the United States does not have to prove that all of the
2   property at issue was criminally derived.

3   **DEFENDANTS' OBJECTION**

4           Defendants object to the instruction on the basis that the government seeks to put at
5   issue alleged violations of the Travel Act beyond the scope of the fifty advertisements
6   (Counts 2-51) alleged in the Superseding Indictment in violation of this Court's prior
7   orders.   *See* Doc. No. 946 at 13 (Order denying motion to dismiss) ("Defendants'
8   suggestion that the SI improperly indicts a '***boundless conspiracy*** to facilitate prostitution
9   in general,' (Reply at 4), however, mischaracterizes the charges against them. Such a claim
10  is simply untrue. ***They were not indicted for facilitating the amorphous notion of***
11  ***'prostitution.'*** They were indicted for facilitating (via publishing ads) ***on fifty distinct***
12  ***occasions*** where prostitutes, prostitution-related businesses, or other groups were involved
13  in the business of prostitution.") (emphasis added); Doc No. 1099 (December 4, 2020 Hr'g
14  Tr.) at 38 ("[T]his case is not about Backpage . . . .   This case is about these individuals
15  and whether they had specific knowledge of these ads as facilitating illegal activity.").

16          Further, the Superseding Indictment does not define what the "specified unlawful
17  activity" is.  Doc. 230 at ¶¶ 207, 209, 211.  Instead, the indictment incorporates by reference
18  the preceding paragraphs of the indictment.  *Id*. at ¶¶ 204, 206, 208.  The only "specified
19  unlawful activity" that could be incorporated by reference into the money laundering
20  charges are Counts 2-51, which charge Travel Act violations tied to fifty specific
21  advertisements. *See United States v. Hirmer*, No. 3:08CR79/MCR, 2009 WL 10726280,
22  at *4 (N.D. Fla. July 14, 2009) ("The indictment may identify the specified unlawful
23  activity by incorporating allegations from other counts.").  Indeed, the Ninth Circuit Model
24  Instruction notes in brackets as to the fourth element and the definition of "criminally
25  derived property" that the instruction must "*specify criminal activity* ***charged in the***
26  ***indictment*."  Nor does the indictment's conspiracy charge regarding the Travel Act (Count
27  1) expand the scope of the specified unlawful activity beyond Counts 2-51 (the fifty
28  advertisements) given the Court's prior rulings discussed above.  And in any event, a

- 117 -

Travel Act conspiracy charge does not constitute "specified unlawful activity." *See* 18 USC § (c)(7)(D); 18 U.S.C. § 1957(f)(3); 18 U.S.C. § 1961(1) (making no reference to 18 U.S.C. § 371 or a conspiracy to violate the Travel Act).

Tethering the money laundering charges to the fifty Travel Act counts not only is consistent with the Court's prior orders and the Superseding Indictment's allegations, but it avoids the very real possibility that the jury infers that prostitution generally – rather than the indictment's Travel Act charges – constitutes specified unlawful activity.

**DEFENDANTS' PROPOSED INSTRUCTION**

**18.7 MONEY LAUNDERING**

**(Transactional Money Laundering)**

Defendant Lacey is charged in Counts 69-70, 81, 83-84, 86, 88-92, and 94-99; Defendant Larkin is charged in Counts 80 and 87; Defendant Spear is charged in Counts 71-78, 85, and 93; and Defendant Brunst is charged in Counts 69-70, 78-84, and 86-93, of the indictment with money laundering in violation of Section 1957 of Title 18 of the United States Code.  In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the specific transaction charged in the indictment involved specific criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from the knowing and willful promotion, or facilitation of the promotion of, the prostitution offenses committed by a particular business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A), specifically (i) a business enterprise involved in at least one of the fifty advertisements that is the subject of Counts 2 – 51 and (ii) a business enterprise for which you found that Defendant guilty of promoting or facilitating the promotion of; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means an insured bank, commercial bank, or credit union.

The term "criminally derived property" means any property constituting, or derived from, the proceeds of a criminal offense. The government must prove beyond a reasonable

doubt that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The statute only encompasses transactions in which a defendant first knowingly obtains "criminally derived property," and *then engages* in a monetary transaction with that property.

The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of promoting, or facilitating the promotion of, the prostitution offenses committed by a particular business enterprise in violation of 18 U.S.C. § 1952(a)(3)(A). But the government must prove beyond a reasonable doubt that the defendant knew the specific transaction charged in the indictment involved specific criminally derived property—it is not enough that the defendant knew the proceeds derived from advertisements for prostitution offenses.

Although the government must prove that more than $10,000 of the property at issue was criminally derived, the government does not have to prove that all of the property at issue was criminally derived.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 18.7 (modified to reflect the charges in the indictment). As this Court previously held, the "specified unlawful activity" ("SUA") here is not the general facilitation or promotion of "any business enterprise involving prostitution offenses" in violation of the Travel Act. *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is

- 120 -

about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").  Therefore, the SUA referenced in each of the proposed jury instructions regarding the Indictment's money laundering charges must reference the "fifty distinct" advertisements at issue in Counts 2 - 51.  *Id.*

*See United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994) (government agreeing to vacate conviction and not disputing that "the language of the statute only encompasses transactions in which a defendant first obtains 'criminally derived property,' and then engages in a monetary transaction with that property."); *United States v. Johnson*, 971 F.2d 562, 570 (10th Cir. 1992) (reversing conviction, noting that "Section 1957 appears to be drafted to proscribe certain transactions in proceeds that have already been obtained by an individual from an underlying criminal offense.").

## UNITED STATES' OBJECTIONS

Defendants' proposed instruction materially differs from the instruction the Court has already given for transactional money laundering.  Doc. 1311 at 5-6.  The instruction previously given is the law of the case, tracks the Model Instruction, and is appropriate. Defendants add language to the second element and provide an incorrect statement of law in the fourth element.  Doc. 1311 at 5-6.  As the Court has already made clear, "In a prosecution for an offense under [18 U.S.C. § 1957], the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity."  18 U.S.C. § 1957; *see also* Doc. 946 at 17; Doc. 1311 at 5-6.

Further, Defendants have modified the Model Instruction's definition of "criminally derived property."  Defendants' proposed language in the last sentence of the penultimate paragraph is inappropriate.  If the defendant knew "the transaction involved criminally derived property" that's sufficient to satisfy the second element.  Model Instruction 18.7. The Court should issue the United States' proposed instruction, which is the law of the case.  Doc. 1311 at 5-6.

**UNITED STATES' PROPOSED INSTRUCTION**
**18.7A MONEY LAUNDERING CONSPIRACY**
**(18 U.S.C. § 1956(h))**

Defendants Lacey, Larkin, Spear, and Brunst are charged in Count 52 the indictment with money laundering conspiracy in violation of Section 1956(h) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, there was an agreement to commit money laundering;

Second, the defendant knew the objective of the agreement;

Third, the defendant joined the agreement with the intent to further its unlawful purpose.

**DEFENDANTS' OBJECTION**

The Defendants have proposed an alternative version of the 18.7A instruction that more accurately and completely describes the offense and the required elements.

First, the government's proposed instruction fails to recite the specific money laundering offenses at issue in the first element. Using the generic term "money laundering" without reference to the specific offenses could prejudice defendants by confusing the jury and suggesting to the jurors that they may mix and match elements among different offenses.

Second, the government omits the word "illegal" before "objective" from the second element. But mere association with members of a conspiracy, "without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (citing *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980)). *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) ("mere association with members of a conspiracy or knowledge of the conspiracy, 'without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator'"); *United States v. Merino*, 846 F. App'x 494, 495 (9th Cir. 2021) (same). Given that the indictment says that the

1    "object of the conspiracy was to obtain money," Doc. 230, ¶ 197—a patently lawful

2    object—it is critical that the jury understand that the object of a conspiracy must be

3    unlawful.

4          Third, this instruction should include an instruction regarding unanimity to

5    accurately describe the offense to the jury.   *United States v. Lapier*, 796 F.3d 1090 (9th

6    Cir. 2015) (failure to give specific unanimity instruction was plain error because half of

7    jury could have found defendant guilty of joining one conspiracy while other half of jury

8    could have found defendant guilty of joining second conspiracy); *Salinas v. United States*,

9    522 U.S. 52, 63 (1997) (the government must prove a defendant agreed to pursue the "same

10   criminal objective" as his or her coconspirators).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION**

**18.7A CONSPIRACY—ELEMENTS**

**(Conspiracy to Commit Money Laundering – Elements)**

Defendants Lacey, Larkin, Spear, and Brunst are charged in Count 52 of the indictment with money laundering conspiracy in violation of Section 1956(h) of Title 18 of the United States Code. For a Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, there was an agreement to commit concealment money laundering in violation of Section 1956(a)(1)(B)(i), international promotional money laundering in violation of Section 1956(a)(2)(A), transactional money laundering in violation of Section 1957(a), or international concealment money laundering in violation of Section 1956(a)(2)(B)(i);

Second, the defendant knew the illegal objective of the agreement; and

Third, the defendant joined the agreement with the specific intent to further its unlawful purpose.

**What Is a Conspiracy, and How Does One Become a Member?**

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an illegal object of the conspiracy with all of you agreeing as to the particular crime – *i.e.*, concealment, international promotional, transactional, and international concealment money laundering – which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some illegal object or purpose of the conspiracy,

- 124 -

even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some illegal object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.  To become a co-conspirator a person must have an intention and agreement to accomplish the same, specific criminal objective as his or her co-conspirators.

Proof of an underlying substantive crime does not, without more, prove the existence of a conspiracy to commit that crime.

### Unanimity Requirements

For a Defendant to be found guilty of Count 52 (Conspiracy to Commit Money Laundering), you must find beyond a reasonable doubt that there was a plan to commit at least one illegal object of the alleged conspiracy – specifically intending to commit concealment money laundering, international promotion money laundering, transactional money laundering, and international concealment money laundering – with all of you agreeing beyond a reasonable doubt as to which illegal object – which specific act(s) of concealment money laundering, international promotion money laundering, transactional money laundering, and international concealment money laundering – and all of you agreeing beyond a reasonable doubt that the Defendant knowingly and willfully joined the conspiracy to accomplish such object(s).

### Supporting Authorities

Ninth Circuit Manual of Model Criminal Jury Instructions 18.7A, 18.4, 18.5, 18.6, 18.7 (modified to reflect criminal objects charged in Count 52); Barry Tarlow, *Defense of a Federal Conspiracy Prosecution,* 4 J.Crim.Defense 183, 201-02 (1978) (explaining that the object of the conspiracy must be unlawful); *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) ("Proof of the underlying substantive crime, however, does not, without more, prove the existence of a conspiracy."); *United States v. Lapier*, 796 F.3d 1090 (9th

Cir. 2015) (failure to give specific unanimity instruction was plain error because half of jury could have found defendant guilty of joining one conspiracy while other half of jury could have found defendant guilty of joining second conspiracy); *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (willfulness is the "intentional violation of a known legal duty").

*Salinas v. United States*, 522 U.S. 52, 63 (1997) (the government must prove a defendant agreed to pursue the "same criminal objective" as his or her coconspirators); *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) ("mere association with members of a conspiracy or knowledge of the conspiracy, 'without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator'"); *United States v. Merino*, 846 F. App'x 494, 495 (9th Cir. 2021) (same).

## UNITED STATES' OBJECTIONS

Defendants inappropriately expand the crime beyond what is required. The Model Instruction provides the required elements the United States must prove to convict Defendants. Defendants add the word "illegal" to the second element and the word "specific" to the third element. The Court, previously, recognized this and chose to use the Model Instruction for the Preliminary Instructions. Doc. 1311 at 4-5. The Court should follow the law of the case and give the Model Instruction; Defendants' additions do not properly explain the law. Model Instruction 18.7A; Doc. 1311 at 4-5.

## II.   STIPULATED NON-MODEL INSTRUCTIONS

N/A

## III.   NON-MODEL INSTRUCTIONS REQUESTED BY THE UNITED STATES

# UNITED STATES' PROPOSED INSTRUCTION NO. 1
## STATE LAW NEED NOT BE VIOLATED FOR DEFENDANTS TO BE FOUND GUILTY UNDER THE TRAVEL ACT

The United States does not have to prove that the referenced states' laws were actually violated, only that each defendant had intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of state law, and committed a subsequent overt act in furtherance of the unlawful activity.

### Supporting Authorities

18 U.S.C. § 1952(a)(3); *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992) ("Section 1952(a)(3) requires the government to prove only that a defendant committed a subsequent overt act in furtherance of the unlawful activity. . . . Unlike the crime of attempt, the Travel Act does not require that the government establish that the accused took a substantial step in furtherance of the intended unlawful activity.") (internal quotations and citations omitted); *United States v. Polizzi*, 500 F.2d 856, 876-77 (9th Cir. 1974) (Government does not need to prove that defendants had specific intent to violate the underlying state law, only "specific intent to facilitate an activity which the accused knew to be unlawful under state law."); Doc. 1587 at 3 ("The Ninth Circuit has clarified that the Travel Act does not require the commission of the predicate offense; rather, only an attempt to promote the unlawful activity with a subsequent overt act in furtherance of that unlawful activity.") (cleaned up).

### DEFENDANTS' OBJECTION

The government has alleged that Defendants "facilitated" unlawful activity under the travel act; facilitation is the same thing as aiding and abetting, *see* Doc. 1557 at 10-13. Mere days ago, the United States Supreme Court confirmed that when a federal criminal

statute uses the word "facilitation" it means "aiding and abetting." *United States v. Hansen*, 599 U.S. __, 2023WL4138994, at *6 (June 23, 2023). *See* also Doc. 1557-1 at 45-46 (USA arguing in *Woodhull* litigation that "promote" and "facilitate" "as used in the Travel Act, is equivalent to 'aid or abet'"). Accordingly, unlike other cases involving principal offenders, when the government alleges a Travel Act violation based on only "promotion" or "facilitation" of unlawful activity, it must prove the elements of aiding and abetting. At a minimum, this requires proof that someone committed an offense and that the defendant "intend[ed] to facilitate that offense's commission." *Rosemond v. United States*, 572 U.S. 65, 76 (2014); *Hansen*, 599 U.S. at __, 2023WL4138994, at *6 (describing elements of facilitation as including proof (1) "that a wrongful act be carried out" and proof of (2) "an intent to bring about a particular unlawful act"). As the Court explained in *Rosemond*, "

> To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and "seek by his action to make it succeed.'…We have previously found that intent requirement satisfied when a person ***actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense***…. What matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, ***with full knowledge***, to participate in the illegal scheme… Under these principles, the District Court erred in instructing the jury, because it did not explain that Rosemond needed ***advance knowledge*** of [each element of the charged offense].

572 U.S. 76-77, 81 (emphasis added). *See also United States v. Encarnacion-Ruiz*, 787 F.3d 581, 588 (1st Cir. 2015) ("Under *Rosemond*, to establish the mens rea required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged offense. *See* 134 S.Ct. at 1248–49; *see also id*. (stating that an aider and abettor must have 'full awareness of [the crime's] scope,' 'full knowledge of the circumstances constituting the charged offense,' and 'participate[ ] in a criminal scheme knowing its extent and character')…").

Consistent with these recent decisions, the Ninth Circuit "require[s] that the specific elements of the underlying law that constitute the unlawful activity be found as elements of the Travel Act offense." *Myers v. Sessions*, 904 F.3d 1101, 1110 (9th Cir. 2018); *see also United States v. Hiatt*, 527 F.2d 1048, 1051 (9th Cir. 1975) ("It is correct that the

existence of a state law violation is an element of the violation of the Travel Act and that the court must make a determination of whether the underlying state law has been or could have been violated.").  The government's authorities do not speak to the situation here, where only non-principals are charged.  Moreover, to the extent the Court considered this issue in deciding Defendants' motion to dismiss (Doc. 1587), that Order concerns the sufficiency of the indictment rather than the instructions that should guide the jury's consideration of the evidence.  The Court should consider the issue anew, especially in light of the Supreme Court's unequivocal statement last week in *Hansen* that "facilitation [is] also called aiding and abetting," and is a term that "transplants" the "old soil" of the traditional criminal law meaning of aiding and abetting. *Hansen*, 599 U.S. at __, 2023WL4138994, at *6

**UNITED STATES' PROPOSED INSTRUCTION NO. 2**

**"BUSINESS ENTERPRISE" IN THE TRAVEL ACT DEFINED**

"Business enterprise," as used in the Travel Act, 18 U.S.C. 1952(b), means a continuous course of criminal conduct, that is, engaging or planning to engage in two or more violations of law, rather than a sporadic, casual, individual or isolated violation.  An advertisement that invites multiple commercial transactions (like a car wash ad that informs the public of prices charged for each wash, even if only for a limited time) refers to a continuous course of conduct.

**Supporting Authorities**

18 U.S.C. § 1952(b)(i)(1).  *See* Doc. 946 at 10-14; *United States v. Kaiser*, 660 F.2d 724, 731 (9th Cir. 1981) ("The words 'business enterprise' refer to a continuous course of criminal conduct rather than sporadic or casual involvement in a proscribed activity."); *United States v. Donaway*, 447 F.2d 940, 94 (1971) (same); *United States v. Roselli*, 432 F.2d 879, 886 (9th Cir. 1970) ("Congress limited Section 1952 to any 'business enterprise' because the requirement of a continuous course of conduct for profit would ordinarily include the gambling operations of organized crime.").

In alleging a continuous course of criminal conduct, "[n]either [allegations] of large-scale operations nor long-term duration is required[.] . . . Instead, what must be [alleged] is evidence of a continuous enterprise."  *United States v. Tavelman*, 650 F.2d 1133, 1140 (9th Cir. 1981).  *See also* Doc. 946 at 12-13 n.7 ("[E]ach ad identified [in the SI] carries an indicia of a commercial or business enterprise because each one invites multiple commercial transactions by soliciting the public to engage in prostitution.").

**DEFENDANTS' OBJECTION**

Defendants do not object to this portion of the proposed instruction: "'Business enterprise,' as used in the Travel Act, 18 U.S.C. 1952(b), means a continuous course of criminal conduct . . . rather than a sporadic, casual, individual or isolated violation." But the balance of the proposed instruction (including the following language in the first

1   sentence of the proposed instruction: "that is, engaging or planning to engage in two or
2   more violations of law") is an attempt by the government to circumvent the Travel Act's
3   "business enterprise" requirement.

4       First, there is no support for the government's naked assertion that a "continuous
5   course of criminal conduct" is satisfied where the underlying business enterprise has
6   engaged or plans to engage "in two or more violations of law." Even an act resulting in two
7   violations of law tends to indicate "sporadic" activity, not a business enterprise engaged in
8   "continuous" criminal activity.

9       Second, the instruction would have the jury presume that the mere existence of an
10  advertisement satisfies the business enterprise requirement. In advancing this plainly
11  erroneous instruction, the government misguidedly relies on the Court's order denying
12  Defendant Brunst's Motion to Dismiss based on the government's failure to allege
13  necessary elements under the Travel Act. *See* Doc. 946 at 12 n.7 ("[E]ach ad identified
14  carries an indicia of a commercial or business enterprise because each one invites multiple
15  commercial transactions by soliciting the public to engage in prostitution."). The
16  government takes the Court's statement too far. The Court was merely addressing in a
17  footnote "Defendants' concern that each ad is not in fact connected to a business enterprise"
18  *at the pleading stage*, noting that Defendants' concern was "premature." Doc. 946 at 12-
19  13. In other words, the Court observed that, at the pleading stage, an advertisement is a
20  sufficient indicia of a potential business enterprise, thereby fairly putting Defendants on
21  notice of the charges against them, *not* that an advertisement by itself *proves at trial beyond*
22  *a reasonable doubt* the existence of a corresponding business enterprise.

23      Taking the government's example, an ad for a car wash does not prove the existence
24  of a car wash, nor does it prove that a car wash has engaged in a continuous course of
25  washing cars.  The government's inapt comparison of a criminal enterprise to a car wash
26  invites the jury to ignore the government's burden to prove not just a business enterprise,
27  but a *criminal* business enterprise engaged in a continuous course of *illegal* conduct.

28      The government has conceded that the "business enterprise" here is not Backpage

- 131 -

itself or the advertisements that are the subject of Counts 2-51. *See* Doc. 649 at 32 n.17 (in opposing Defendants' motion to dismiss, the government claimed that "Defendants' actions facilitated or promoted ***the ongoing prostitution enterprises of Backpage's customers***.") (emphasis added). At trial, therefore, the government must prove, for each Travel Act count, the existence of a particular business enterprise or enterprises tied to that count. *See United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019) (the Travel Act "targets activities taken in connection with organizations involving . . . prostitution"); *see United States v. Nader*, 542 F.3d 713, 716 (9th Cir. 2008) (affirming Travel Act conviction where defendants operated massage studios, holding "[i]t is undisputed that the businesses involved prostitution."); *United States v. Baker*, 611 F.2d 961, 962 (4th Cir. 1979) (affirming Travel Act conviction where defendant operated a truck stop and "arranged to have it operated as a house of prostitution."); *see also United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions ***where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution***.") (emphasis added). The government's proposed instruction therefore misconstrues both the law and this Court's prior orders.

# UNITED STATES' PROPOSED INSTRUCTION NO. 3
## "USES ANY FACILITY IN INTERSTATE COMMERCE" DEFINED

The phrase "uses any facility in interstate commerce" as used in the Travel Act, 18 U.S.C. § 1952(a), means employing or utilizing any method of communication or transportation between one state and another, and includes, for example, the use of telephones, mails, and the Internet.

In order to meet its burden of proof on this issue, it is not necessary for the United States to prove that the defendant(s) used an interstate facility.  This section also applies to a person who causes another person to use an interstate facility.  Therefore, if the United States has proven beyond a reasonable doubt that the defendant(s) caused another person to use an interstate facility, *e.g.,* the Internet, then you may find that the United States has proven this element.

### Supporting Authorities

*United States v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) ("The Internet is an international network of interconnected computers, similar to—and often using—our national network of telephone lines.  We have previously agreed that it cannot be questioned that the nation's vast network of telephone lines constitutes interstate commerce.") (internal citations and quotations omitted); *United States v. Roselli*, 432 F.2d 879, 890-91 (9th Cir. 1970) ("If the wire employed is an interstate wire the requirements for federal jurisdiction are satisfied.  It is wholly irrelevant to any purpose of the statute that the perpetrator of the fraud knows about the use of interstate communication."); *United States v. Villano*, 529 F.2d 1046, 1054-55 (10th Cir. 1976) (upholding Travel Act convictions based on "repeated use of the interstate communications facilities by defendants' agents").

### DEFENDANTS' OBJECTION

Defendants object to the entire second paragraph of the proposed jury instruction as an unsupported and erroneous statement of law. The government cannot be permitted to shirk its burden of proof by proposing incorrect jury instructions. None of the cases cited

by the government (nor the text of the Travel Act itself)[8] supports the government's view that a defendant can be found guilty under the Travel Act if he or she does not actually use "the mail or any facility in interstate commerce." Further, there is no charge that one of the defendants aided and abetted another defendant's alleged misconduct under 18 U.S.C. § 2.[9] *See United States v. Abadie*, 879 F.2d 1260, 1266 (5th Cir. 1989) ("Conceding that the record contains no evidence that Palazzolo traveled interstate, the government contends that he aided and abetted Abadie's interstate travel.") (citing 18 U.S.C. § 2). To the extent the government seeks to import its conspiracy charge into this instruction, that issue is more appropriately dealt with in a separate conspiracy instruction where it is clear that the instruction applies only to the conspiracy count and not the fifty individual Travel Act counts.

If the Court allows any part of the second paragraph of the proposed instruction, the terms "the defendant(s)" should be modified to "each defendant," so the instruction does not improperly group all defendants.

---

[8] 18 U.S.C. § 1952(a) provides: "Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to . . . ." The Ninth Circuit model instruction mirrors this language.

[9] That statute provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The indictment does not charge Defendants under this statute.

**UNITED STATES' PROPOSED INSTRUCTION NO. 4**

**"FACILITATE" DEFINED**

In the context of the Travel Act, the term "facilitate" means "to make easy or less difficult."

**<u>Supporting Authorities</u>**

*See* Doc. 793 at 21 ("'Facilitate' is given its 'ordinary meaning: to make easy or less difficult.'") (citing *United States v. Gibson Specialty Co.*, 507 F.2d 446, 450 (9th Cir. 1974); *see also United States v. Foreman*, 926 F.2d 792, 796 (9th Cir. 1990) ("'Facilitate' is defined as 'to make easier or less difficult.'"); *United States v. Adler*, 879 F.2d 491, 495 (9th Cir. 1988) ("'Facilitation' is established by showing that use of a communications facility . . . made easier or less difficult . . . the narcotics offense.").

**DEFENDANTS' OBJECTION**

The government's proposed instruction is incomplete.  A correct instruction would inform the jury that facilitation means "aiding and abetting," and would list the elements of aiding and abetting.

Facilitation requires much more than deciding whether a defendant's actions helped or aided another person commit a criminal offense.  Mere days ago, the United States Supreme Court confirmed that when a federal criminal statute uses the word "facilitation" it means "aiding and abetting."  *United States v. Hansen*, 599 U.S. __, 2023 WL 4138994, at *6 (June 23, 2023).  *See* also Doc. 1557-1 at 45-46 (USA arguing in *Woodhull* litigation that "promote" and "facilitate" "as used in the Travel Act, is equivalent to 'aid or abet'"); *See* Doc. 1557 at 10-13 (arguing that "promoting" and "facilitating" under the Travel Act requires proof of aiding and abetting).  Accordingly, unlike other cases involving principal offenders, when the government alleges a Travel Act violation based on "facilitation" of unlawful activity, it must prove the elements of aiding and abetting.  The government's proposed definition only goes to one of the elements of aiding and abetting: that the defendant aided at least one element of the offense.  Ninth Circuit Model Criminal Jury

Instructions § 4.1 (2022).  This leaves out critical elements that separate legal and illegal acts: namely that the defendant acted with an intent to further the criminal act.  *See Rosemond v. United States*, 572 U.S. 65, 76 (2014) (describing elements); *Hansen*, 599 U.S. at __, 2023WL4138994, at *6 (describing elements of facilitation as including proof (1) "that a wrongful act be carried out" and proof of (2) "an intent to bring about a particular unlawful act").  As the Court explained in *Rosemond*,

> To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about" and "seek by his action to make it succeed.'…We have previously found that intent requirement satisfied when a person ***actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense***….  What matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, ***with full knowledge***, to participate in the illegal scheme… Under these principles, the District Court erred in instructing the jury, because it did not explain that Rosemond needed ***advance knowledge*** of [each element of the charged offense].

572 U.S. 76-77, 81 (emphasis added).  *See also United States v. Encarnacion-Ruiz*, 787 F.3d 581, 588 (1st Cir. 2015) ("Under *Rosemond*, to establish the mens rea required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged offense.  *See* 134 S.Ct. at 1248–49; *see also id*. (stating that an aider and abettor must have 'full awareness of [the crime's] scope,' 'full knowledge of the circumstances constituting the charged offense,' and 'participate[ ] in a criminal scheme knowing its extent and character')…").

The government's proposed instruction is prejudicial because it may deceive the jury into believing that it can convict for "facilitation" based only on a finding that a defendant merely made some other person's criminal act easier.  That would impermissibly lower the government's burden to prove *unlawful* facilitation.

The Ninth Circuit's opinion in *Gibson Specialty Co.*, 507 F.2d 446 (9th Cir. 1974) highlights the problem.  There, four manufacturers of gambling paraphernalia were charged under the Travel Act for intentionally facilitating gambling businesses by selling punchboards and pulltabs to distributors in Montana.  *Id*. at 448.  Assuming that defendants

"knew the text of the pertinent Montana statutes" and that the government was correct that mere possession was a crime," the Ninth Circuit held that it could not "find that the defendants by selling to Montanans intended, within the meaning of the travel act, to facilitate a violation of state law." *Id.* at 450 & n.7. Rather—echoing the elements of aiding and abetting—the Court held that unlawful facilitation required the government to "show that the manufacturer **in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement**." *Id.* at 449-50 (emphasis added). Plainly, merely making gambling easier or "less difficult" for the gambling business was not enough to qualify as "facilitation" under the Travel Act.

## UNITED STATES' PROPOSED INSTRUCTION NO. 5
## "SPECIFIC INTENT" DEFINED

The Travel Act is a specific intent crime and that means for each defendant to be found guilty, the United States needs to prove that each defendant specifically intended to promote or facilitate the promotion of an activity which the defendant knew to be unlawful under state law, specifically, promoting or facilitating the promotion of any business enterprise involved in prostitution.

### Supporting Authorities

Doc. 1311 at 7; Doc. 1432 at 31-36; Doc. 793 at 15 ("Required intent under the Travel Act is 'specific intent to facilitate an activity which the accused knew to be unlawful under state law.'") (citing *United States v. Polizzi*, 500 F.2d 856, 876-877 (9th Cir. 1974) (instructions on specific intent need to "reasonably inform[] the jury that they had to find that [defendants] knew that what they were facilitating was an unlawful activity under state law")). *See also* Doc. 793 at 18 ("The Government's proposed *mens rea* standard, specific intent to promote or facilitate prostitution, is consistent with *Gibson, Tavelman*, and *Polizzi*—the Ninth Circuit cases discussing intent requirements of the Travel Act."). The Court has already ruled on this issue after the parties' stipulated to the instruction. The United States has only modified the instruction to more accurately capture the Travel Act's statutory language.

### DEFENDANTS' OBJECTION

While defendants generally agree that a non-model instruction should be given, it should modified to more accurately describe the specific intent proof required in this case and to avoid confusion.

The government's proposed version uses the words "specifically" and "facilitate" in multiple times with different and unclear meanings. In addition, the proposal's grammar implies that the government had to prove that the defendant knew it was "unlawful under state law" to "promot[e] or facilitate[e] the promotion of any business enterprise involved

in prostitution."  That is incorrect, as that clause does not describe a state law offense nor does it accurately describe the Travel Act offenses charged.  Rather, the government must prove that defendants had a specific intent to facilitate what they knew was "unlawful activity" under the Travel Act – i.e., "any business enterprise involved in prostitution offenses in violation of the laws of the State in which they are committed."  18 U.S.C. § 1952(b)(3).  Defendants' proposed instruction is faithful to the text of the Travel Act.

Moreover, to prove "facilitation"—like aiding and abetting— the government must prove an "intent to bring about a particular unlawful act." *Hansen* 599 U.S. __ (2023), slip op. at 6 (describing requirements for proof of "[f]acilitation—also called aiding and abetting").  Accordingly, proving a defendant's state of mind should require proof of knowledge of the "particular unlawful act."  The government's proposal could be read to merely require knowledge of "any business enterprise involved in prostitution" in general, rather than involvement in (as the Travel Act requires) specific "prostitution offenses" that "are committed."  18 U.S.C. § 1952(b)(i).

## UNITED STATES' PROPOSED INSTRUCTION NO. 6
## PROOF OF KNOWLEDGE OR INTENT

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind.  In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

### Supporting Authorities

1A O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 17:07 (6th ed. 2008).

### DEFENDANTS' OBJECTION

The government again intentionally conflates "general intent" with "specific intent" in an effort to reduce its burden of proof at trial. The second paragraph of the proposed instruction – which seeks to impute to a given defendant the "natural and probable consequences" of his or her actions – plainly conflicts with what courts (including this Court) consistently hold the government must prove in connection with a Travel Act charge. *See United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003) (holding that the Travel Act "require[s] the Government prove Defendants acted with a higher level of culpability than mere knowledge. The Travel Act requires a specific 'intent to ... promote[.]' In other words, the Travel Act requires a defendant act ***not only with knowledge of what he is doing, but also with the objective of promoting some unlawful activity***.") (emphasis added) (citing *United States v. James,* 210 F.3d 1342, 1345 (11th Cir. 2000) (Travel Act violation is a specific intent crime); *United States v. Hall,* 536 F.2d 313,

1    329–30 (10th Cir.1976) (approving a specific intent instruction on a Travel Act charge))

2    (cited by this Court at Doc. 946, p. 14).

3         By contrast, "[a] person acts knowingly or with a 'general intent' if he is aware that

4    the result is practically certain to follow from his conduct, whatever his desire may be as

5    to that result." *United States v. Welch*, 327 F.3d 1081, 1096 (10th Cir. 2003); *see also*

6    *United States v. Gibson Specialty Co.*, 507 F.2d 446, 450 (9th Cir. 1974) ("The

7    presumption that one intends the natural and probable consequences of his actions ***is***

8    ***insufficient in this context to establish intent to facilitate criminal activity***.") (emphasis

9    added) (cited by the Court at Doc. 946, p. 14). That is why Defendants' proposed "specific

10   intent" instruction (Doc. 1216 at 152), quoted from *United States v. Seymour*, 576 F.2d

11   1345, 1347 (9th Cir. 1978), recognizes the important distinction between "specific intent"

12   and "general intent." The government grasps at straws in objecting to Defendants'

13   proposed "specific intent" instruction, illogically asserting that the Ninth Circuit's

14   explication of "specific intent" in *Seymour* is somehow inapplicable here because *Seymour*

15   was not a Travel Act case. Doc. 1216 at 152-53. But as the above cases make clear,

16   "specific intent" in the context of the Travel Act means the same thing as it does in

17   connection with other federal crimes. Rather, it is the government's proposed "specific

18   intent" instruction that ignores black letter law.

19

20

21

22

23

24

25

26

27

28

1  **IV.    NON-MODEL INSTRUCTIONS REQUESTED BY DEFENDANTS WITH**
2  **THE UNITED STATES' OBJECTIONS**

3  **DEFENDANTS' PROPOSED INSTRUCTION NO. 1**

4  **SPECIFIC INTENT**

5        The Travel Act is a specific intent crime and that means for each defendant to be

6  found guilty, the government needs to prove that each defendant specifically intended to

7  facilitate the promotion of a business enterprise that the defendant knew was involved in

8  prostitution offenses that violated the laws of the state in which they were committed.

9

10  **Supporting Authorities**

11        *United States v. Seymour*, 576 F.2d 1345, 1347 (9th Cir. 1978) (verbatim quote);

12  *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No.

13  946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for

14  facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via

15  publishing ads) on fifty distinct occasions where prostitutes, prostitution-related

16  businesses, or other groups were involved in the business of prostitution."); *see United*

17  *States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of

18  December 4, 2020 Hearing ("And I think one of the key things in my reason for denying

19  the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate

20  case, entered a plea in a separate case. This case is about these individual defendants and

21  whether they had specific knowledge of these ads as facilitating illegal activity.").

22  **UNITED STATES' OBJECTIONS**

23        The parties have stipulated to the appropriate "specific intent" instruction and the

24  Court has already issued it. Doc. 1311 at 7; Doc. 1432 at 31-36.  It is the law of the case.

25  That stipulation is reflected in the United States' proposed non-model instruction No. 5.  It

26  should be given.

27

28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 2
## DEFENDANT'S GOOD FAITH

The government has the burden to prove to you, beyond a reasonable doubt, that a defendant acted with criminal intent and lacked good faith. The burden of proving good faith does not rest with a defendant because a defendant does not have any obligation to prove anything in this case. If the government fails to meet its burden to prove a defendant lacked good faith, its failure to do so is a complete and absolute defense to the charges in this case and you must return a not guilty verdict.

If a defendant carried out his or her actions in good faith, there was no criminal intent.

A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under the charges in the indictment merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct.

While the term "good faith" has no precise definition, it encompasses, among other things, a belief or opinion honestly held and an absence of malice or ill will.

If the evidence in the case leaves the jury with a reasonable doubt as to whether a defendant acted with criminal intent and lacked good faith, the jury must acquit that defendant.

### Supporting Authorities

*See* 1A Fed. Jury Prac. & Instr. § 19:06 (6th ed.), 1A Fed. Jury Prac. & Instr. § 19:06 (6th ed.).

### UNITED STATES' OBJECTIONS

"A defendant is not entitled to a separate good faith instruction when the court adequately instructs on specific intent." *United States. v. Bonanno*, 852 F.2d 434, 439–40 (9th Cir. 1988) (citing *United States v. Green,* 745 F.2d 1205, 1209 (9th Cir. 1984), and *United States v. Cusino,* 694 F.2d 185, 188 (9th Cir. 1982)); *see also United States v. Dees,* 34 F.3d 838, 842 (9th Cir. 1994) (same); *United States v. Rushton,* 963 F.2d

272, 274 (9th Cir. 1992) (same).  Here, the parties have already stipulated to the appropriate "specific intent" instruction.  Doc. 1311 at 7; Doc. 1432 at 31-36.  Because the parties have stipulated to specific intent instruction, a "good faith" instruction should not be given.

The instruction also should not be given to the extent Defendants are attempting to use it to circumvent invoking an "advice of counsel" defense.  If Defendants claim that their asserted "good faith" is based in any way on legal advice, then they should be required to comply with the requirements of the "advice of counsel" defense, and the jury should receive an appropriate "advice of counsel" instruction instead of the proposed "good faith" instruction.[10]

---

[10] *See* Ninth Circuit Model Criminal Jury Instruction 4.11.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 3
### DEFENSE THEORY OF THE CASE

Defendants intend to request instructions on the defense's theories of the case. Defendants reserve their right to submit that request at the close of the trial.

### Supporting Authorities

*See* Fed. R. Crim. P. 30; *United States v. Cortes*, 757 F.3d 850, 857 (9th Cir. 2014) ("A criminal defendant is entitled to jury instructions related to a defense theory so long as there is any foundation in the evidence and the instruction is supported by law." (internal quotation marks omitted)); *United States v. Burt*, 410 F.3d 1100, 1103 (9th Cir. 2005) ("A defendant is entitled to instructions relating to a defense theory for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.").

### UNITED STATES' OBJECTIONS

As discussed below, Defendants' "First Amendment" instructions are not supported by law or evidence, and therefore should not be given. *See, e.g., United States v. Freeman*, 761 F.2d 549, 551-52 (9th Cir. 1985) (where the speech at issue falls outside of the First Amendment's protection, a First Amendment jury instruction should not be given).

### DEFENDANTS' PROPOSED INSTRUCTION NO. 4
### (Conspiracy – Willfulness Defined)

To find a defendant guilty of conspiracy as charged in the indictment, you must be satisfied that the government has proven beyond a reasonable doubt that the defendant knowingly and willfully entered into the conspiracy, that is, that the defendant agreed to take part in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective. You must also find that the government has proven beyond a reasonable doubt that the defendant acted with criminal intent and lacked good faith. If the defendant carried out his or her actions in good faith, there was no criminal intent. While the term "good faith" has no precise definition, it encompasses, among other things, a belief or opinion honestly held and an absence of malice or ill will. To act willfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the specific purpose to disobey or disregard the law.

### Supporting Authorities

*United States v. Pomponio*, 429 U.S. 10, 12 (1976) (willfulness is the "intentional violation of a known legal duty"); see 1A Fed. Jury Prac. & Instr. § 19:06 (6th ed.), 1A Fed. Jury Prac. & Instr. § 19:06 (6th ed.); *United States v. Stagman*, 446 F.2d 489, 491 (6th Cir. 1971) ("the majority of the Courts of Appeals which have directly addressed this question . . . have stated that knowing and wilful [sic] intent to violate state laws is an element of the crime proscribed by the Travel Act") (citing decisions of the 4th, 7th, 8th, and 9th Circuits).

### UNITED STATES' OBJECTIONS

This proposed instruction is not supported by law and is unnecessary. As discussed above, "A defendant is not entitled to a separate good faith instruction when the court adequately instructs on specific intent." *United States. v. Bonanno*, 852 F.2d 434, 439–40 (9th Cir. 1988).

Defendants' reliance on *Pomponio* is inapposite. In that case, the Supreme Court

reversed the court of appeals, after that court had remanded for a new trial based on an improper jury instruction. 429 U.S. at 10. The Supreme Court found no error in the trial court's jury instructions and held that "[a]n additional instruction on good faith was unnecessary." *Id.* at 13. *Pomponio* clarified that an instruction stating that "good motive alone is never a defense where the act done or omitted is a crime" was proper. *Id.* at 11. In addition, the "willful" instruction approved in *Pomponio* looks nothing like Defendants' proposed instruction. "A willful act was defined in the instructions as one done 'voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with the bad purpose either to disobey or to disregard the law.'" *Id.*

Further, Defendants' reliance on *United States v. Stagman* is misplaced. The Ninth Circuit in *Polizzi* made clear that *Stagman* is not applicable in this circuit.

> In claiming error in the court's instructions on specific intent, appellants urge us to follow *United States v. Stagman* . . . and hold that specific intent to violate state law is an element of the offense under § 1952. This Court however, has previously approved an instruction similar to the one given in this case. . . . Moreover, to the extent that *Stagman* requires proof that an accused under § 1952 intended to violate state law himself, we find that it conflicts with the clear meaning of the language used in § 1952. . . . [The statute's required intent is] specific intent to facilitate an activity which the accused knew to be unlawful under state law.

*Polizzi*, 500 F.2d at 876-77.

The instruction should not be given.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 5**

**BUSINESS ENTERPRISE EXPLAINED**

The existence of a "business enterprise" is an element of a Travel Act violation and, unless the government has proven to you beyond a reasonable doubt the existence of a "business enterprise" as to each count, you must return a verdict of not guilty. A defendant cannot intend to promote or facilitate a business enterprise he or she does not know exists. The government also must prove beyond a reasonable doubt that the act each defendant performed in furtherance of the business enterprise was done with the specific intent to facilitate each element of the underlying state crime.

**Supporting Authorities**

*United States v. Jones*, 909 F.2d 533, 539 (D.C.Cir.1990) (a proper Travel Act jury instruction "would inform the jury that the defendant must have performed or attempted to perform an act in furtherance of the business, with the intent that each element of the underlying state crime be completed"); *Deptula v. Attorney General of U.S.*, 642 Fed. Appx. 184 (3rd Cir. 2016) ("to obtain a Travel Act conviction, the government must prove . . . that the defendant had the specific intent to facilitate each element of the relevant offense."); *United States v. Bertman*, 686 F.2d 772, 774 (9th Cir. 1982) ("When the unlawful activity charged in the indictment is the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense.").

*See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); see *United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and

- 148 -

1   whether they had specific knowledge of these ads as facilitating illegal activity.")

2                       **UNITED STATES' OBJECTIONS**

3          This proposed instruction misstates the applicable law.   Defendants' final sentence

4   discuss a "specific intent" requirement that isn't applicable—namely, "the specific intent

5   to facilitate each element of the underlying state crime."   As discussed previously, the

6   United States doesn't need to prove that Defendants had specific intent to violate the

7   underlying state law. *Polizzi*, 500 F.2d at 876-77 (Government does not need to prove that

8   defendants had specific intent to violate the underlying state law, only "specific intent to

9   facilitate an activity which the accused knew to be unlawful under state law."); Doc. 1587

10  at 3 ("The Ninth Circuit has clarified that the Travel Act does not require the commission

11  of the predicate offense; rather, only an attempt to promote the unlawful activity with a

12  subsequent overt act in furtherance of that unlawful activity.") (cleaned up).

13         Defendants' proposed instruction also contains Defendants' arguments for why the

14  jury should find them not guilty.  (*E.g.*, "[a] defendant cannot intend to promote or facilitate

15  a business enterprise he or she does not know exists.").  Instructions are not the place for

16  arguments.  Further, there's no statutory or case law support for Defendants' argument.

17         The Court should use the United States' instruction on business enterprises.

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 6
## BUSINESS ENTERPRISE DEFINED

"Business enterprise," as used in the Travel Act, 18 U.S.C. 1952(b), means a continuous course of criminal conduct, that is, engaging or planning to engage in two or more violations of law, rather than a sporadic, casual, individual or isolated violation.  The government must prove beyond a reasonable doubt that a business enterprise existed for each of the fifty charged advertisements.  Moreover, the jury must unanimously agree on the existence and nature of each business enterprise.

### Supporting Authorities

18 U.S.C. § 1952(b)(i)(1); (See Doc. 946 at 10-14); *United States v. Kaiser*, 660 F.2d 724, 731 (9th Cir. 1981) ("The words 'business enterprise' refer to a continuous course of criminal conduct rather than sporadic or casual involvement in a proscribed activity."); *see also United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions ***where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution***.") (emphasis added).

### UNITED STATES' OBJECTIONS

The United States agrees with Defendants' first sentence of the instruction, which is consistent with its proposed instruction.  The final two sentences are unnecessary as the appropriate elements governing the Travel Act are properly laid out above.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 7**

**FIRST AMENDMENT PROTECTION—SPEECH PRESUMED PROTECTED**

All speech is presumptively protected by the First Amendment to the United States Constitution.  The First Amendment does not permit the government, or the jury, to presume that speech is unprotected by the First Amendment.  Rather, the government has the burden to establish that the particular expressions of speech at issue are not protected by the First Amendment—and the government cannot meet its burden to prove that speech is unprotected through mere conjecture.

**Supporting Authorities**

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *id.* at 818 ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion … must rest with the Government, not with the citizen."); *Bursey v. United States*, 466 F.2d 1059, 1081–82 (9th Cir. 1972) ("The Government responds that (1) the information sought is not protected by the First Amendment…  The Government first argues that threats to the President and incitements to insubordination in the armed forces are not 'speech' protected by the First Amendment…  The Government's argument takes as its premise the conclusion to be proved: The expressions and associational relationships in issue are not protected by the First Amendment.  This argument implies that there is a presumption of nonprotection applied to the expressions and associations involved in this case and that the witnesses are obliged to overcome it before they can rely on the First Amendment.  The Government has it backwards.  All speech, press, and associational relationships are presumptively protected by the First Amendment; the burden rests on the Government to establish that the particular expressions or relationships are outside its reach."); *In re Grand Jury Investigation, John Doe 1078*, 690 F. Supp. 489, 490-91 & n.3 (E.D. Va. 1988) ("The Court starts with the proposition that the materials sought are presumptively protected by the First Amendment.  Sexually explicit material is not stripped of constitutional protection unless

and until a factfinder at trial concludes that the work, taken as a whole, meets the three-pronged test set forth in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973).")

*See Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 392 (2000) ("We have never accepted mere conjecture as adequate to carry a First Amendment burden …")

## UNITED STATES' OBJECTION

The instruction is unnecessary, confusing, misleading, and does not fit the facts or the law.

First, Defendants' proposal to provide 14 separate instructions on the First Amendment poses a substantial risk of confusing or misleading the jury about what it must determine.  The jury must decide, *inter alia*, whether Defendants: (1) used the mail or any facility in interstate commerce with *intent* to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any business enterprise involved in prostitution offenses; and (2) thereafter *performed or attempted to perform an act* that did promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any such enterprises.  *See* Doc. 1340 at 48:11-24; Doc. 1311 at 2-3.  Defendants' Proposed Instructions Nos. 7-20 misleadingly suggest that the jury cannot answer these questions affirmatively because the First Amendment somehow immunizes Defendants from all liability—especially where ads did not contain, on their face, express offers to exchange sex for money.

But the SI alleges that Defendants made their customers' prostitution ads less overt *on purpose*—to promote, or facilitate the promotion of, their customers' ventures.  *E.g.*, SI ¶¶ 9-11, 34.  The SI alleges, *inter alia*, that Defendants employed automated filters and human "moderators" to wash Backpage's "adult" and "escort" ads of their most obvious sex-for-money references.  SI ¶¶9, 11, 13, 34.  This created a veneer of deniability—and reduced risks of law enforcement scrutiny—for Backpage's customers, while still allowing them to advertise prostitution to an audience of willing buyers.  *Id.*   Defendants'

instructions pose a substantial risk of confusing or misleading the jury on this important point.

Second, the cumulative impact of hearing 14 separate First Amendment instructions risks eliciting a verdict based on nullification, rather than careful consideration of the evidence and the law.

Third, Defendants' Proposed Instruction Nos. 7-20 give the misleading impression that all speech is protected by the First Amendment. This case concerns commercial speech (advertising), that is, speech "which does no more than propose a commercial transaction." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 818 (9th Cir. 2013) (internal quotations and citations omitted). As recognized in caselaw decided after *Bursey v. United States*, 466 F.2d 1059, 1082 (9th Cir. 1972), commercial speech is subject to less protection than other types of speech—and "commercial speech related to illegal activity" has no First Amendment protection at all. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Commn. of New York*, 447 U.S. 557, 563-64 (1980). *See Erotic Service Provider Legal Ed. and Research Project v. Gascon*, 880 F.3d 450, *amended*, 881 F.3d 792, 792 (9th Cir. 2018) ("For commercial speech to receive First Amendment protection[,] the speech must concern lawful activity and not be misleading."); Rodney A. Smolla, 2 Rights and Liabilities in Media Content: Internet, Broadcast, and Print § 11:10 (2d ed.) ("[C]ommercial speech is not protected at all if the speaker is advertising an illegal product or activity. There is no constitutional right to advertise crime.").

For these reasons, prostitution advertising is categorically excluded from the First Amendment. *See* Doc. 793 at 14; *United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388 (1973) ("a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes"); *Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 600-04 (9th Cir. 2010) (explaining that prostitution is illegal in 49 dates and most of Nevada; upholding ban on prostitution advertising); *Erotic Service Provider*, 880 F.3d at 459-60 (rejecting

First Amendment challenge to ordinance outlawing prostitution solicitations).

Fourth, Defendants' instructions are unnecessary because if the United States proves Defendants' guilt on any of Counts 1-51 (the conspiracy and substantive offenses involving the Travel Act), then it will necessarily have established that Defendants conspired to, and/or did, promote, or facilitate the promotion of, prostitution business enterprises. In other words, the United States will have established that the conduct (and speech) at issue here related to illegal activity—rendering any First Amendment instruction "duplicative and unnecessary." *United States v. Rowlee*, 899 F.2d 1275, 1280 (2d Cir. 1990) (if the government meets its burden of proving defendants engaged in the charged offenses (counseling or assisting in filing false tax returns), then no First Amendment protection applies—and no First Amendment jury instruction is required; conversely, if the government does not meet its burden of proving guilt, the defendants will be acquitted regardless of any First Amendment defense). *See also United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985) (where the trial evidence "disclose[s] no grounds for a legitimate free speech defense," there is no requirement to instruct on that defense); *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010) (recognizing that any "potential First Amendment concern is addressed by the requirement of proof beyond a reasonable doubt at trial").

Defendants' authorities are not to the contrary. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000), for example, did not involve commercial speech (advertising), let alone prostitution advertisements or solicitations that are categorically excluded from the First Amendment. Rather, *Playboy* concerned a content-based restriction on video disseminated by a cable channel—a situation far removed from this case. 529 U.S. at 811-12. *Bursey* predates *Pittsburgh Press*, *Central Hudson*, *Williams*, and the other decisions cited above—all of which recognize that commercial speech is judged by standards much different than those for news reporting and political advocacy (the speech involved in *Bursey, see* 466 F.2d at 1065-66). In *In re Grand Jury Investigation, John Doe 1078*, 690 F. Supp. 489, 493 (E.D. Va. 1988), the court overruled the defendants' First Amendment objections to a subpoena issued in an obscenity

investigation. The instant case involves commercial speech, which isn't subject to the "*Miller*" obscenity test.

The instruction should not be given.

1

2

## DEFENDANTS' PROPOSED INSTRUCTION NO. 8

## FIRST AMENDMENT PROTECTION—SPEECH PRESUMED PROTECTED

3

4

5

The First Amendment to the United States Constitution does not permit the government, or the jury, to presume that speech is unprotected merely because it resembles unprotected speech.

6

### Supporting Authorities

7

8

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002) ("Protected speech does not become unprotected merely because it resembles the latter.").

9

10

### UNITED STATES' OBJECTIONS

11

12

The United States incorporates its objections to Defendants' Proposed Instruction No. 7. In addition, this instruction is cumulative of Instruction No. 7.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION NO. 9**

**FIRST AMENDMENT PROTECTION—OFFENSIVE AND SEXUAL SPEECH**

The First Amendment to the United States Constitution prohibits the government from restricting speech because some find it offensive.  The First Amendment also prohibits the government from restricting adult sexual expression that is indecent, but not obscene.

**Supporting Authorities**

*Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("speech cannot be restricted simply because it is upsetting or arouses contempt"); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) ("It is also well established that speech may not be prohibited because it concerns subjects offending our sensibilities. . . . In evaluating the free speech rights of adults, we have made it perfectly clear that '[s]exual expression which is indecent but not obscene is protected by the First Amendment'") (citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997).

**UNITED STATES' OBJECTION**

The United States incorporates its objections to Defendants' Proposed Instruction No. 7.  Also, this instruction is cumulative of Defendants' Proposed Instructions Nos. 7-8.

In addition, this instruction is irrelevant, confusing, misleading, and not supported by the record or the law in the context of this case.  This is not an "obscenity" prosecution, or one that seeks to restrict or enjoin the distribution of any allegedly obscene materials (*e.g.*, videos, magazines, books).  *See Miller v. California*, 413 U.S. 15, 24 (1973) (government may restrict dissemination of a work that, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value); *cf. Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) (invalidating statute banning "virtual child pornography").

Nor is this a case that seeks to restrict "offensive" speech, or "adult sexual expression that is indecent, but not obscene."  This case involves a different category of

speech—commercial speech, or speech that does no more than propose a commercial transaction (*i.e.*, advertising).   *Central Hudson*, 447 U.S. at 563-64 (1980).   The First Amendment confers no protection at all on speech proposing illegal transactions, including prostitution advertising and soliciting.   Doc. 793 at 14 (collecting cases).

**DEFENDANTS' PROPOSED INSTRUCTION NO. 10**

**FIRST AMENDMENT PROTECTION—PROTECTED FREE SPEECH**

Advertisements, including adult-oriented classified advertisements, are presumptively protected speech under the First Amendment to the United States Constitution. Advertisers have the First Amendment right to post advertisements and websites have their own First Amendment rights to publish those advertisements.

### Supporting Authorities

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561, (1980) ("The First Amendment . . . protects commercial speech from unwarranted governmental regulation. . . . Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all."); *Reno v. ACLU*, 521 U.S. 844, 868-70 (1997) ("[O]ur cases provide no basis for qualifying the level of First amendment scrutiny that should be applied to [the Internet].").

### UNITED STATES' OBJECTIONS

The United States incorporates its objections to Defendants' Proposed Instruction No. 7, and also objects because this instruction is cumulative of Defendants' Proposed Instructions Nos. 7-9.

Moreover, the instruction's first sentence is not supported by the law or the evidence. Advertisements must concern lawful activity to receive any First Amendment protection. *Central Hudson*, 447 U.S. at 563-64; *Erotic Service Provider*, 881 F.3d at 792. The United States anticipates that trial evidence will show that the vast majority of "adult" and "escort" ads on Defendants' website were for prostitution. There is no First Amendment right to publish such ads. *Pittsburg Press*, 413 U.S. at 388; Doc. 793 at 14.

Defendants also provide no applicable legal authority for the second sentence of their instruction—particularly for the notion that websites have an independent First

Amendment right to publish such ads.  The sole case Defendants cite, *Reno v. ACLU*, 521 U.S. 844 (1997), invalidated on First Amendment overbreadth grounds part of the Communications Decency Act (CDA) that prohibited the transmission to minors of "obscene" or "indecent" materials over the internet.  That statute was "not limited to commercial speech"; rather, its "breadth . . . [was] wholly unprecedented."  *Id*. at 877. *Reno* nowhere discussed *Central Hudson*'s rule that commercial speech relating to unlawful activity is excluded from First Amendment protection.  *Reno* provides no license for disseminating over the internet commercial offers to sell humans for sex any more than it permits website operators to sell illegal drugs, computer hacking or murder-for-hire services.  *See, e.g., United States v. Ulbricht*, 31 F. Supp. 3d 540, 568 (S.D.N.Y. 2014) (rejecting website operator's argument that his site's online marketplace for illegal narcotics involved speech protected by First Amendment).

**DEFENDANTS' PROPOSED INSTRUCTION NO. 11**

**FIRST AMENDMENT PROTECTION—ADS PRESUMED PROTECTED**

A website's publication of a classified ad posted by a third party is presumptively protected by the First Amendment to the United States Constitution unless the transaction proposed in the ad *necessarily* would be an illegal act (like an ad proposing a sale of cocaine, which always is illegal).  Where the legality of a transaction proposed in a classified ad depends on circumstances outside the content of the ad (or, said differently, if the content of a classified ad would not provide the website with actual knowledge that the transaction proposed in the ad necessarily would be unlawful), a website's publication of the ad is presumptively protected by the First Amendment.

**Supporting Authorities**

*Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 142 & fn.170 (3d Cir. 2020) (rejecting city's argument that speech "concern[ed] unlawful activity" where the speech *might* relate to unlawful activity because "commercial speech should not lose the protection of the First Amendment simply because a legislature has prohibited one of many uses of the regulated speech," unlike restricting "advertising of the sale of cocaine, for example, [which] would present a speech restriction that *always* and *only* related to illegal activity because there are no other legal uses/purposes behind the sale of cocaine") (emphasis in original); *IMDB.com Inc. v. Bacerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) ("*Pittsburgh Press* implicates only those instances when the state restricts *speech that itself proposes an illegal transaction…*SAG's interpretation of *Pittsburgh Press* would require this court to permit the restriction not only of speech that proposes an illegal activity but also facially inoffensive speech that a third-party might use to facilitate its own illegal conduct.   But as the Supreme Court has noted, 'it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.'  *Bartnicki v. Vopper*, 532 U.S. 514, 529–30, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001)…Rather than restrict truthful speech, the typical 'method of deterring unlawful conduct is to  impose an appropriate punishment on

the person who engages in it.' *Bartnicki*, 532 U.S. at 529, 121 S.Ct. 1753.") (emphasis added); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F3d 104, 114 (2d Cir. 2017) ("[T]he First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would *necessarily* constitute an illegal act. However, if, as here, there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.") (emphasis in original); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822 (9th Cir. 2013) ("*Central Hudson's* legality requirement [] has traditionally focused *on the content of affected speech—i.e.*, *whether the speech proposes an illegal transaction*—instead of whether the speech is *associated with unlawful activity*.") (emphasis added)); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 fn.7 (9th Cir. 2009) ("Central Hudson asks if the commercial speech is 'related to unlawful activity.' Thus, *in the context of advertising, one must ask whether the goods or services the party advertises are illegal*.") (emphasis added, citation omitted); *Pruett v. Harris Cty. Bail Bond Bd.*, 499 F.3d 403, 414 (5th Cir. 2007) (the "threshold inquiry" asks whether "the product or service spoken about is illegal," not whether a commercial solicitation might lead to a violation of the law); *Eimann v. Soldier of Fortune Mag., Inc.*, 880 F.2d 830, 837-38 (5th Cir. 1989) (publishers are not required to reject "any suspicious, ambiguous ad that might cause serious harm," because "in the constitutional arena we have noted that the possibility of illegal results does not necessarily strip an ad of its commercial speech protection"); *Dunagin v. City of Oxford*, 718 F.2d 738, 743 (5th Cir. 1983) (*en banc*) ("The commercial speech doctrine would disappear if its protection ceased whenever the advertised product might be used illegally."); *Art & Antique Dealers League of Am., Inc. v. Seggos*, 394 F. Supp. 3d 447, 459 (S.D.N.Y. 2019) ("Although the First Amendment does not protect speech proposing a transaction that 'necessarily constitute[s] an illegal act,' if 'there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.'"); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,

- 162 -

128 F. Supp. 3d 597, 615 (E.D.N.Y. 2015) ("When the legality of a proposed commercial transaction depends on circumstances outside the content of the speech, the activity is lawful and the speech is entitled to protection under *Central Hudson*."), *aff'd*, 868 F.3d 104 (2d Cir. 2017).

*See also Backpage.com, LLC v. Hoffman*, Case No. 13–cv–03952 (DMC)(JAD), 2013 WL 4502097 (D.N.J. Aug. 20, 2013) (striking down under First Amendment state statute criminalizing advertisements "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor" and rejecting state's claim that the statute "regulates illegal advertisements…not protected by the First Amendment" because, among other things, "[d]escribing criminal conduct as anything that is 'implicit' is inherently vague, because it means '[n]ot directly expressed [and] existing [only] inferentially' and 'fails to clearly mark the boundary between what is permissible and impermissible'"); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013) (striking down, under First Amendment, state statute criminalizing advertisements "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor" and rejecting state's claim that the statute did not "not implicate First Amendment scrutiny because it criminalize[d] only offers to engage in illegal transactions" because, among other things, "the statute as written does not 'criminalize only offers to engage in illegal transactions' because—as discussed above—the statute's potential reach extends to notices related to legal, consensual activity by adults"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012) ("It is true that '[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection.' … [But] SB 6251 does not fall within the exception for offers to engage in illegal activity because SB 6251 prohibits not only 'offers' to engage in commercial sex acts, but also the direct and indirect publication, dissemination, and display of such offers.  The third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech' that fall outside of First Amendment protection.  *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571–

572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)."); *id*. at 1279-80 (striking down, under First Amendment, state statute criminalizing "'directly or indirectly' caus[ing] content to be published, disseminated or displayed if it contains a 'depiction of a minor' and any 'explicit or implicit offer' of sex for 'something of value'" because, among other things, the statute was unconstitutionally vague: "'[A] speaker may not be put at complete peril in distinguishing between protected and unprotected speech. Otherwise, he could only be certain of avoiding liability by holding his tongue, causing him 'to make only statements which 'steer far wide [ ] of the unlawful zone.''… The pimp that publishes the advertisement certainly 'knows' whether his offer is for sex, whether explicitly or implicitly. However, what does it mean for the website operator to 'know' that an advertisement 'implicitly' offers sex? In Washington, 'a person acts knowingly or with knowledge when ... he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.' Wash. Rev. Code Ann. § 9A.08.010(b)(ii). However, where an online service provider publishes advertisements that employ coded language, a reasonable person could believe that facts exist that do not in fact exist: an advertisement for escort services may be just that. Similarly, Defendants contend that 'offer' is used 'to make clear that a transaction does not have to be consummated for SB 6251 to apply.' However, if the offer is implicit, how can a third party ascertain that which is being offered before the transaction is consummated?") (internal citations omitted).

## UNITED STATES' OBJECTIONS

The United States incorporates its objections to Defendants' Proposed Instructions Nos. 7 and 10, and also objects to this instruction as cumulative of Defendants' Proposed Instructions Nos. 7-10.

In addition, the instruction is not supported by the law or the record, and is confusing and misleading. There is no requirement that an advertisement "necessarily" or explicitly propose an illegal transaction on its face to fall outside of the First Amendment's

protection.  Rather, the law is clear that jurors may consider both text and context in assessing these ads and Defendants' intent to facilitate prostitution. The jury may properly consider the ads' use of coded prostitution terms (*e.g.*, "GFE," "quickie, "incall/outcall," "independent," "no pimps," "roses"), cross-references to reviews on prostitution websites, prices tied to 15-, 30-, or 60-minute increments, explicit photos or videos, disclaimers that customers must agree they are not affiliated with law enforcement, and any other evidence—including the placement of the ad in categories (such as "Escorts") that became synonymous with prostitution, and other textual or contextual facts that convey information about the ad.  *See* Doc. 793 at 9-11 (discussing similar indicia of prostitution ads); *Pittsburgh Press*, 413 U.S. at 388 (determining that employment ads were unlawful based on the context of their placement in gender-specific categories; "We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes.  Nor would the result be different if the nature of the transaction were indicated by placement under columns captioned 'Narcotics for Sale' and 'Prostitutes Wanted' rather than stated within the four corners of the advertisement."); *White*, 610 F.3d at 960 ("that a request for criminal action is coded or implicit does not change its character as [unprotected] solicitation").

The jury is also entitled to consider Defendants' prostitution marketing strategies, including "moderation" practices that were calculated to sanitize particularly obvious prostitution ads—without changing their underlying unlawful message. *See, e.g.*, SI ¶¶9, 11, 13, 34.  Moreover, the jury may consider Defendants' numerous internal admissions about their prostitution advertising business, which matched the steady drumbeat of notice Defendants received about the prevalence of prostitution ads on Backpage. *See* SI, *passim*.

Defendants' cited authorities include no contrary Ninth Circuit cases.  For example, in *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1123 (9th Cir. 2020), the court distinguished *Pittsburg Press* from situations involving the publication of truthful, fact-based information that was lawfully obtained.  The court said nothing about whether the legality of a proposed transaction must be determined solely from an ad's express language,

without considering coded terms or other textual or context information.  *See IMDB.com, Inc.*, 962 F.3d at 1123 ("But we find nothing illegal about truthful, fact-based publication of an individual's age and birthdate when that information was lawfully obtained.").

*Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822-23 (9th Cir. 2013), likewise contains no language that might limit Defendants' liability here.   In *Whiting*, the court held that Arizona could not target day laborers for harsher punishment when, in the course of soliciting lawful work (*i.e.*, engaging in lawful commercial speech), they violated an unrelated traffic law.  *Id.* at 814, 823.  *Whiting* contains no analysis or discussion of any ads or solicitations that use code words or other  indicia of illegal activity.

In *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009), the parties never disputed whether advertising in that case merited First Amendment protection.  The footnote Defendants cite merely states that "in the context of advertising, one must ask whether the goods or services the party advertises are illegal." *Id.* at 904 n.7. This doesn't support Defendants' instruction.

Defendants' out-of-Circuit authorities also miss the mark.  *Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 141-42 (3d Cir. 2020), for example, involved a challenge to an ordinance that prohibited employers from inquiring about prospective employees' wage histories; it says nothing about coded solicitations for illegal transactions, including whether jurors may consider the use and meaning of coded terms and similar information about an ad.  *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 114 (2d Cir. 2017), and *Pruett v. Harris County Bail Bond Bd.*, 499 F.3d 403, 414 (5th Cir. 2007), also contain no such discussion.

Defendants' reliance on a trilogy of cases from 2012-13 in which Backpage succeeded in invaliding three state laws that attempted to prohibit the sale of certain types of online prostitution solicitations is unavailing.  *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012), *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013).   These non-precedential cases were decided in part under Section 230 of the

Communications Decency Act—which has no application in this federal prosecution. (See Doc. 840 at 4-12.) The quoted language from *McKenna* contains a series of rhetorical questions and does not state a legal rule or requirement.

Since these cases were decided, there has been a sea change in the availability of evidence concerning Backpage, including Backpage's compelled production of more than 500,000 pages of internal documents to the United States Senate and the grand jury. Doc. 649, Resp. at 22-23. Following these disclosures, Backpage and its CEO pleaded guilty in April 2018 and admitted the "great majority" of Backpage's revenue-generating ads were "for prostitution services." 18-CR-464, Doc. 7-2 at 12-13; 18-CR-465, Doc. 8-2 at 11; *see also* Doc. 271 (plea agreement of Backpage Sales and Marketing Director). These and other factual developments undermined many of the assumptions underlying *McKenna*, *Cooper*, and *Hoffman*, including that Backpage was merely a passive recipient of third-party ads, and that Backpage policed (rather than promoted, or facilitated the promotion of) its customers' prostitution advertisements. Doc. 649, Resp. at 22-26.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 12**

**FIRST AMENDMENT PROTECTION—CODED ADVERTISEMENT**

**LANGUAGE**

If a classified ad posted by a third party to a website might, or might not, propose an illegal transaction, depending on how supposedly "coded" language or emojis in the ad are interpreted, because of supposedly implicit offers in the ad, or both, the ad does *not* propose a necessarily illegal act because the legality of the transaction proposed in the ad depends on circumstances outside the content of the ad.  A website's publication of such an ad posted by a third party would, therefore, be presumptively protected by the First Amendment.

**Supporting Authorities**

*See* the supporting authorities for proposed instruction #11 (above).

**UNITED STATES' OBJECTIONS**

The United States incorporates its objections to Defendants' Proposed Instructions Nos. 7 and 10-11, and also objects to this instruction as cumulative of Defendants' Proposed Instructions Nos. 7-11.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 13
## FIRST AMENDMENT PROTECTION—EXAMPLES OF LEGAL "ADULT" SERVICES

Advertisements for dating, massages, and escort services (which include private stripping) are presumptively legal and constitutionally protected speech, because dating, massages, and  escort services (including private stripping) all are legal activities.

### Supporting Authorities

*See* the supporting authorities for proposed instruction #11 (above).

*See also Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016) (rejecting sheriff's presumption that ads on Backpage.com were illegal:  Backpage.com was "an avenue of expression of ideas and opinions" protected by the First Amendment, including its "classified ads for 'adult' service;"  "Fetishism? Phone sex?  Performances by striptease artists?  (Vulgar is not violent.)  One ad in the category 'dom & fetish' is for the services of a 'professional dominatrix'—a woman who is paid to whip or otherwise humiliate a customer in order to arouse him sexually.  It's not obvious that such conduct endangers women or children or violates any laws, including laws against prostitution.   The district judge remarked 'that the majority of the advertisements [in Backpage's adult section] are for sex'—but a majority is not all, and not all advertisements for sex are advertisements for illegal sex.") (internal citations omitted); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) (Sheriff Dart "is simply wrong when he insists that [craigslist's adult services category and related subcategories] are all synonyms for illegal sexual services;" Craigslist's "adult services" section "is not unlawful in itself nor does it necessarily call for unlawful content"); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *9-11 (D.N.J. Aug. 20, 2013) (rejecting state's argument that adult-oriented ads on Backpage.com were unprotected speech); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 833-34 (M.D. Tenn. 2013) (same); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281-82 (W.D. Wash. 2012) (same).

*Cf. M.A. ex rel. P.K v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011) (rejecting similar presumptions in dismissing plaintiff's civil claims based, among other things, on 18 U.S.C. §§ 2, 1595, and 2255); *People v Ferrer*, 2016 WL 7237305, at *9 (Cal. Super. Ct. Dec. 9, 2016) (dismissing state's pimping charges against Larkin and Lacey; noting that the only "whiff of illegality" in the AG's complaint improperly "require[ed] the presumption that illegal content was contained in the ads," yet the website's actions in publishing the ads "would not be illegal").

## UNITED STATES' OBJECTIONS

The United States incorporates its objections to Defendants' Proposed Instructions Nos. 7 and 10-11, and also to this instruction as cumulative of Defendants' Proposed Instructions Nos. 7-12.

In addition, the instruction is not supported by the facts and the law. Merely labelling an ad as one for an ostensibly lawful service does not make it so. Doc. 1604 at 2. Rather, the United States anticipates that the trial evidence will show that while Backpage for many years maintained an "adult" "escorts" advertising category, Defendants were aware that the overwhelming majority of ads in that section were for prostitution—and Defendants deliberately pursued a number of business strategies specifically designed to attract more prostitution advertising customers and increase its prostitution-related revenues. SI ¶34 (Defendants "took a variety of steps to intentionally facilitate that illegal activity"); Doc. 1176 at 15-17; Doc. 1604 at 2-4. This evidence is expected to include testimony from numerous witnesses, including former Backpage employees and contractors, people who were advertised for sexual services on Backpage, and law enforcement agents who investigated ads on Backpage, including testimony that no one who investigated or responded to an ad on Backpage's "adult" or "escorts" sections ever encountered an advertisement for lawful "escort services." The upshot is that the label "escort," as used on Backpage, was nothing more than a euphemism for prostitution. (Doc. 1176 at 15-17; Doc. 1604 at 2-4.)

1    The cases Defendants cite to support the instruction are distinguishable—and

2    Backpage's more recent litigation history undermines Defendants' claim that Backpage's

3    "adult" ads involved "legal activities."  *See* Doc. 649, Resp. at 21-26.

4    First, most involved Section 230 of the Communications Decency Act, which—as

5    this Court has recognized—does not apply here.  47 U.S.C. § 230(e)(1) ("Nothing in this

6    section shall be construed to impair the enforcement of…[any] Federal criminal statute.");

7    (Doc. 840 at 4-12).  *See, e.g.*, *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d

8    1041, 1058 (E.D. Mo. 2011) (dismissing trafficking victim's civil case against Backpage's

9    then-parent; "Congress has declared such websites to be immune from suits arising from

10   such injuries."); *People v. Ferrer*, 2016 WL 7237305, at *11 (Cal. Super. Ct. Dec. 16, 2016)

11   (dismissing state law criminal charges against Lacey, Larkin and Ferrer; recognizing "it is

12   for Congress, not this Court, to revisit" the CDA).

13   Second, since these cases were decided, there has been a sea change in the

14   availability of evidence concerning Backpage, including Backpage's compelled production

15   of more than 500,000 pages of internal documents to the United States Senate and the grand

16   jury.  Doc. 649, Resp. at 22-23.  As alleged in the SI, evidence obtained pursuant to the

17   Senate and grand jury investigations revealed that Backpage misrepresented itself in the

18   above-referenced cases as merely a passive conduit for third-party content, and exposed its

19   supposed efforts to police unlawful ads on its site as a fiction.  *Cf. McKenna*, 881 F. Supp.

20   2d at 1266-67.

21   Rather, the evidence showed Backpage facilitated its customers' prostitution

22   ventures through "moderation" practices that edited or shaped ads to reduce the risk of

23   detection while still conveying the illegal message; business relationships with prostitution

24   websites (*e.g.*, The Erotic Review) and "super-affiliates" (*e.g.*, Dollar Bill) calculated to

25   increase the volume of prostitution ads on Backpage; "aggregation" practices that involved

26   creating prostitution ads and soliciting pimps and prostitutes to advertise on Backpage; and

27   money laundering.  *See generally* SI¶¶ 9-11, 34-159.  This evidence was not provided to

28   the courts that previously ruled in Backpage's favor.

1
2
3
4
5

Third, Defendants' cases were decided before Backpage and its CEO pleaded guilty in April 2018 and admitted the "great majority" of Backpage's revenue-generating ads were "for prostitution services." 18-CR-464, Doc. 7-2 at 12-13; 18-CR-465, Doc. 8-2 at 11. Backpage's Sales and Marketing Director pleaded guilty in August 2018 and made similar admissions. Doc. 271 at 10.

6
7
8
9
10

Following these developments, the Northern District of Illinois dismissed *Dart* as moot and sanctioned Backpage for "knowingly and repeatedly ma[king] false representations of fact concerning relevant aspects of its operations. This fraudulent conduct has been pervasive throughout this law suit[.]" Doc. 516-1 at 8; *see id.* at 2-9; *see also* Doc. 446-1 at 14-35.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED INSTRUCTION NO. 14**

**FIRST AMENDMENT PROTECTION—ADS PRESUMED PROTECTED**

The classified ads that are the bases for Counts 2 – 22 and 24 – 51 do not propose transactions that *necessarily* would be illegal acts and the legality of the transactions proposed in those ads depends on circumstances outside the content of the ads.  Therefore, Backpage.com's publication of those 49 ads was presumptively protected by the First Amendment to the United States Constitution.  Likewise, if any defendant took any action in relation to the publication of any of those ads, his or her conduct also was presumptively protected by the First Amendment.

**Supporting Authorities**

*See* the supporting authorities for proposed instruction #11 (above).

**UNITED STATES' OBJECTIONS**

The United States incorporates its objections to Defendants' Proposed Instructions Nos. 7 and 10-11, and also objects to this instruction as cumulative of Defendants' Proposed Instructions Nos. 7-13.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 15**

**FIRST AMENDMENT PROTECTION—GOVERNMENT'S BURDEN TO OVERCOME PRESUMPTION**

To overcome the presumption that a person's publication of a third-party's classified ad is protected by the First Amendment, the government must prove beyond a reasonable doubt that:

(1) the person had actual knowledge of the particular ad, and

(2) the person had actual knowledge that the particular ad was in fact associated with unlawful activity, and

(3) the person personally took an action causing the particular ad to be published, or to continue to be published, specifically intending to further the unlawful activity.

**Supporting Authorities**

*See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) ("The third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech' that fall outside of First Amendment protection.") (quoting *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 571–572 (1942)); *United States v Gibson Specialty Co.*, 507 F.2d 446, 450 fn. 8 (9th Cir. 1974) ("The presumption that one intends the natural and probable consequences of his actions is insufficient in this context to establish intent to facilitate criminal activity.  It is as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser."); *See United States v. Rundo*, 990 F.3d 709, 719-720 (9th Cir. 2021) ("'the intent to engage in one of the prohibited acts is a personal prerequisite to punishment under [the Act] . . . Simply put, knowing that some might choose to become violent is not at all the same as intending that they do so.").

*See Smith v. California*, 361 U.S. 147, 153-54 (1959); *Mishkin v. New York*, 383 U.S. 502, 511 (1966) ("The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material . . ."); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822 (9th Cir. 2013) (rejecting Arizona's proposed "novel extension of

- 174 -

*Central Hudson's* legality requirement, which has traditionally focused on the content of affected speech—*i.e.*, *whether the speech proposes an illegal transaction*—instead of whether the speech is associated with unlawful activity") (emphasis added); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 830 (M.D. Tenn. 2013) (the First Amendment burden imposed by self-censorship is magnified on the Internet, because "websites … will bear an impossible burden to review all of their millions of postings or, more likely, shut down their adult services section entirely.").

*United States v. Klaw*, 350 F.2d 155, 170 (2d Cir. 1965) ("The courts may have opened the floodgates for horror and filth, but if they are to be closed it should be done by the careful drafting of proper laws by our duly elected representatives, and not by a combination of zealous governmental inspectors, prosecutors, and uninformed juries. … Unless there be this protection, a witch hunt might well come to pass which would make the Salem tragedy fade into obscurity. Having in mind the alternatives of jail or freedom, courts must be aware of the facts of the [] cases [holding speech to be protected], and ensure that the proof is sufficient to allow a fact finder to set this case apart from them. Otherwise, it would be altogether too easy for any prosecutor to stand before a jury, display the exhibits involved, and merely ask in summation: 'Would you want your son or daughter to see or read this stuff?' A conviction in every instance would be virtually assured.")

*See also United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

**UNITED STATES' OBJECTIONS**

The United States incorporates its objections to Defendants' Proposed Instructions Nos. 7, 10-11, and 13, and also objects to the instruction as cumulative of Defendants' Proposed Instructions Nos. 7-14.

In addition, the instruction is not supported by the facts and the law.  This Court ruled in 2019 that the allegations in the SI, if proven, satisfy the mens rea required by the First Amendment in the context of this case.  Doc. 793 at 15-20.  Based on the Court's ruling, which is law of the case (Doc. 1524 at 4 n.2), the instruction should not be adopted.

As this Court has already found, the cases on which Defendants rely—including *Smith v. California*, 361 U.S. 147 (1959), and *Mishkin v. New York*, 383 U.S. 502 (1966)—do not support the scienter described in the instruction:

> Defendants argue the First Amendment requires the Government to prove that each Defendant was aware of each ad that make up the fifty Travel Act counts and knew that each ad proposed illegal transactions. The Court is not persuaded that the First Amendment demands such a standard.
>
> . . . . Defendants largely rely on four cases [including *Smith v. California*, 361 U.S. 147 (1959), and *Mishkin v. New York*, 383 U.S. 502, 511 (1966)]. The Court concludes none of these cases mandate the *mens rea* requirement described by Defendants, and, instead, agrees with the Government that intent to promote or facilitate prostitution is sufficient.
>
> . . . . [In *Smith*, the Supreme Court] did not consider "what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock" and explicitly left open the possibility of prosecution for something less than specific knowledge of the contents of a particular book.  [361 U.S.] at 154–55.
>
> Likewise, *Mishkin* upheld a scienter standard less demanding than the one proposed by defendants.  There, the defendant was convicted of violating a New York Penal Law prohibiting possession of obscene books with intent to sell and hiring others to prepare and publish obscene books.  *Mishkin*, 383 U.S. at 503.  The Court upheld the scienter standard used by the New York Court of Appeals, requiring the State show defendants were "in some manner aware of the character of the material they attempt to distribute." *Id.* at 510.  The Court reasoned, "proof of scienter" is required "to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." *Id.* at 511.  The scienter standard used in the prosecution "amply serve[d] those ends, and therefore fully [met] the demands of the Constitution." *Id.*

Doc. 793 at 15-16; *see also* Doc. 649, Resp. at 33-35.

Defendants' remaining cases do not support the instruction. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 814, 823 (9th Cir. 2013), held that Arizona could not target day laborers for harsher punishment when, in the course of soliciting lawful work (*i.e.*, engaging in lawful commercial speech), they violated an unrelated traffic law. It contains no language supporting the instruction and has nothing to do with this case.

In *United States v. Rundo*, 990 F.3d 709 (9th Cir. 2021), the Ninth Circuit reversed the dismissal of an indictment charging several defendants with violating the Anti-Riot Act, 18 U.S.C. § 2101-02. In the context of construing that statute, the court focused on separating protected advocacy from speech inciting imminent lawless violence. *Id*. at 716-20. This case, in contrast, does not present the same concerns—it involves different statutes, and none of the charged conduct involves anything that could be considered constitutionally-protected abstract advocacy. *Cf. Williams*, 553 U.S. at 298-89 ("To be sure, there remains an important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality. . . . The Act before us does not prohibit advocacy of child pornography, but only offers to provide or requests to obtain it. There is no doubt that this prohibition falls well within constitutional bounds.").

*United States v Gibson Specialty Co.*, 507 F.2d 446 (9th Cir. 1974), contains no First Amendment discussion, and is distinguishable for the additional reasons set forth in Doc. 649, Resp. at 31-32. *United States v. Klaw*, 350 F.2d 155 (2d Cir. 1965), reversed an obscenity conviction for insufficient evidence—it, too, has nothing to do with this case.

Defendants' quote from the December 4, 2020 hearing in this case does not support the proposed instruction, let alone purport to define the contours of the 100 counts in the SI. The Court's statement that "[t]his case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity" was made in the context of explaining that the focus of this case is on establishing the guilt of "these defendants," rather than Backpage (which had already been prosecuted and pleaded guilty in a separate case). 12/4/20 Hr'g Tr. at 38.

1    Defendants' isolated quote from the Court's May 4, 2020 Order denying their

2   Motion to Dismiss Indictment for Failure to Allege the Necessary Elements of the Travel

3   Act (Doc. 946) likewise fails to support the instruction.  In disagreeing with Defendants'

4   assertion that the SI failed to identify the "unlawful activity" under the Travel Act that

5   forms the basis for Travel Act charges, the Court wrote: "Based on the allegations here,

6   Defendants are not charged with anything related to gambling, narcotics, bribery, extortion

7   or arson.  Rather, they are clearly charged with intending to facilitate and thereafter

8   facilitating or attempting to facilitate businesses involved in prostitution. *See* 18 U.S.C. §

9   1952(b)(i)(1)."  Doc. 946 at 9; *see also id*. at 11 ("Additionally, and as noted, the 'to wit:

10  prostitution offenses' language directs Defendants to which 'unlawful activity' is charged

11  under each Travel Act count.") (citing SI¶ 201).  Addressing the individual substantive

12  Travel Act charges in Counts 2-51, the Court also observed that "the SI alleges fifty

13  instances where Defendants posted ads on Backpage.com to facilitate specific individual

14  prostitutes or pimps involved in the business of prostitution" and used language that

15  "almost identically mirrors the Travel Act's text."  Doc. 946 at 11, citing SI¶¶ 200-201.

16  Later, rejecting Defendants' suggestion that the SI indicted a "'boundless conspiracy' to

17  facilitate prostitution in general," the Court wrote that "[s]uch a claim is simply untrue"

18  because Defendants "were not indicted for facilitating the amorphous notion of

19  'prostitution.'  They were indicted for facilitating (via publishing ads) on fifty distinct

20  occasions where prostitutes, prostitution-related businesses, or other groups were involved

21  in the business of prostitution."  Doc. 946 at 13.  The Court went on to explain that these

22  fifty instances were part and parcel of "a continuous course of conduct where Defendants

23  facilitated 'unlawful activity' [including] numerous pimps, prostitutes and traffickers in

24  violation of the Travel Act."  Doc. 946 at 13-14.

25    Defendants' instruction also ignores the many ways of proving that a seller of goods

26  or services (including a website operator) intended to promote, or facilitate the promotion

27  of, business enterprises involved in unlawful activity.  Intent can be inferred from

28  knowledge (or deliberate ignorance) in a variety of circumstances—including several that

fit comfortably within the allegations of the SI.  In *People v. Lauria*, 59 Cal. Rptr. 628, 635 (Cal. Ct. App. 1967), for example, the court reversed a conspiracy conviction of a defendant who operated a telephone messaging service knowing that some of his customers were using his services to further their prostitution businesses.  The court found that the defendant's specific intent to facilitate unlawful activity may be inferred from knowledge in any one of several circumstances (none of which was present in *Lauria*), including:

- "[P]roof . . . of inflated charges" for goods or services used for illegal activities (the United States anticipates introducing evidence that Backpage charged much higher fees for its "adult" and "escort" ads than for ads in its non-adult sections);

- "[E]vidence of any unusual volume of business with prostitutes," such as where "sales for illegal use amount to a high proportion of the seller's total business" (the United States anticipates introducing evidence that Backpage derived the lion's share of its revenues from prostitution ads); or

- Selling goods or services that "serve no other purpose than to advertise the professional services of the prostitutes" (the United States anticipates introducing evidence that the vast majority of Backpage's "adult" and "escort" ads were prostitution ads).

*Lauria*, 59 Cal. Rptr. at 632-33.  *See also* Wayne R. LaFave, 2 *Substantive Criminal Law* (SUBCRL) § 12.2(c)(3), Providing goods or services, (3d ed., Oct. 2020 update) ("Intent may also be inferred from the fact that the seller has made inflated charges, that he has supplied goods or services which have no legitimate use, or that the sales to the illegal operation have become the dominant proportion of the seller's business."); *id*. (courts have also focused on deceptive or "secretive" tactics used by the seller); Monica J. DeLateur, *From Craigslist to Backpage.com: Conspiracy as a Strategy to Prosecute Third-Party Websites for Sex Trafficking*, 56 Santa Clara L. Rev. 531, 581 (2016) (intent can be proven, *inter alia*, by showing "the illegal activity was a high proportion of the business, the presence of a stake in the venture, or deliberate ignorance").  Moreover, *Lauria* found that no inference would be needed in cases where "the intent to further and promote the

1    criminal enterprise comes from the lips of the supplier himself[.]" 59 Cal. Rptr. at 632.

2          Furthermore, a website operator may be found to have the requisite intent when the

3    defendant's website was designed or tailored to further illegal activity.  *See, e.g.*, *United*

4    *States v. Ulbricht*, 31 F. Supp. 3d 540, 556 (S.D.N.Y. 2014); *United States v. Omuro*, N.D.

5    Cal. No. 14-CR-336, Doc. 70 at 1-3 (court accepted guilty plea and convicted

6    www.myRedBook.com founder Eric Omuro under the Travel Act, 18 U.S.C.

7    § 1952(a)(3)(A); Omuro's website hosted thousands of ads posted by prostitutes in the

8    western United States, and generated profits from fees paid by "escorts" to post their ads

9    more prominently); *United States v. Hurant*, E.D.N.Y. No. 16-CR-45, Doc. 117 at 1, 6 13-

10   14 (court accepted guilty plea and convicted www.Rentboy.com founder Jeffrey Hurant

11   for violating the Travel Act; Hurant admitted he "was well aware…that the escort ads he

12   posted…were thinly-veiled proposals of sexual services in exchange for money"; *id*. Doc.

13   125 at 2 (like Backpage, Hurant's employees often rejected ads with explicit offers of sex

14   for money "but allow[ed] the ad to be resubmitted with different language.  In many cases,

15   Rentboy.com employees would just edit the advertisement's language and approve it.").

16         The instruction is unnecessary for the additional reason that the contours of the

17   United States' burden of proof is adequately described by its jury instructions regarding

18   the SI's conspiracy, Travel Act and money laundering counts, including instructions

19   discussing *Pinkerton*.

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION NO. 16**

**FIRST AMENDMENT PROTECTION—ADS PRESUMED PROTECTED**

A website that publishes classified ads that are presumptively protected by the First Amendment to the United States Constitution (because the ads do not propose transactions that *necessarily* would be illegal acts) does not lose the protection of the First Amendment because some, or even many, of those ads actually are associated with illegal acts committed by the persons posting the ads.

A website that publishes classified ads that are presumptively protected by the First Amendment to the United States Constitution (because the ads do not propose transactions that *necessarily* would be illegal acts) does not lose the protection of the First Amendment because the website has been told that many of the ads it publishes are associated with illegal acts committed by the persons posting the ads.

**Supporting Authorities**

*See* the supporting authorities for proposed instruction #11 (above).

**UNITED STATES' OBJECTIONS**

The United States incorporates its objections to Defendants' Proposed Instructions Nos. 7, 10-11, and 13, and also objects to the instruction as cumulative of Defendants' Proposed Instructions Nos. 7-15.

In addition, the instruction misleadingly suggests Defendants' and Backpage's receipt of notice (including, *inter alia*, from the National Center for Missing and Exploited Children (NCMEC), the United States Senate, the National Association of Attorneys' General, other law enforcement agencies, financial institutions, news organizations, victims) that the overwhelming majority of Backpage's "adult" and "escort" ads were for prostitution is irrelevant to determining whether Backpage was a prostitution advertising website (and whether Defendants knowingly and intentionally operated it as such).

The instruction also should not be given because it is framed in terms of determining whether "[a] website that publishes classified ads" is protected by the First Amendment.

This case isn't about whether a website—namely, www.Backpage.com, was protected by the First Amendment.   The entities that operated the Backpage website—including Backpage.com, LLC and several related companies—have all pleaded guilty and admitted that the great majority of the website's ads were prostitution advertisements that are not protected by the First Amendment.   *See, e.g.*, *United States v. Backpage.com, LLC*, CR-18-465-PHX-SMB, Doc. 8-2 at 6-11, and Docs. 8-3 through 8-7.   To the extent the instruction suggests otherwise, it is irrelevant and confusing, and not supported by the law or the record.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 17**

**FIRST AMENDMENT PROTECTION—NO REQUIREMENT TO INVESTIGATE**

Publishers of third-party content, including internet providers, are not required to investigate or learn what their users are doing and whether anyone may be hurt as a result.

**Supporting Authorities**

*Winter v. G.P. Putnam's Son*s, 938 F.2d 1033, 1037 & n.8 (9th Cir. 1991) ("the First Amendment and the values embodied therein" preclude compelling a publisher to "independently investigate" third-party content).

**UNITED STATES' OBJECTIONS**

This "First Amendment" instruction is irrelevant, confusing and not supported by First Amendment or other law. The sole case Defendants cite is inapposite. *Winter v. G.P. Putnam's Son*s, 938 F.2d 1033 (9th Cir. 1991), involved "mushroom enthusiasts" who attempted to sue a book's publisher for negligence after they relied on information in a book that led them to pick and eat mushrooms that made them severely ill. The court found that the publisher did not have a duty of care that would have required it to investigate claims made in the book. *Winter*, 938 F.2d at 1037. The court noted, however, that "[a] stronger argument might be made" if the publisher engaged in intentional tortious conduct, such as "libel or fraudulent, intentional, or malicious misrepresentation, but such is not contended in this case." *Id.* at 1037 n.9.

Here, the SI alleges—and the United States anticipates the evidence will show— that Defendants intentionally developed and operated Backpage as a website whose revenue-generating business model was focused on selling prostitution ads. That intentional, deliberate conduct distinguishes *Winter*. *Cf. Ulbricht*, 31 F. Supp. 3d at 556 (unlike other online businesses, defendant "knowingly and intentionally constructed and operated an expansive black market for selling and purchasing narcotics and malicious software"); *J.S. v. Village Voice Media Holdings, Inc.*, 359 P.3d 714, 715-16 (Wash. 2015)

(discussing Backpage's involvement in victims' ads); SI ¶109 (Backpage is "a direct vehicle for prostitution").

**DEFENDANTS' PROPOSED INSTRUCTION NO. 18**

**FIRST AMENDMENT PROTECTION—NO REQUIREMENT TO SHUT DOWN**

The First Amendment to the United States Constitution prohibits the government from restricting or punishing legal speech in an effort to eliminate illegal speech.

For this reason, the government may not require a website that publishes classified ads that are presumptively protected by the First Amendment to the United States Constitution (because the ads do not propose transactions that necessarily would be illegal acts) to shut down its adult section, even if doing so could have reduced the number of ads on the website relating to illegal conduct.

For the same reason, the government may not prosecute and the jury may not convict any defendant because he, or she, or Backpage.com refused to cease publishing protected dating, massage, and escort ads, even if eliminating all adult-oriented ads would have reduced the number of ads on the website associated with illegal conduct.

**Supporting Authorities**

*Packingham v. North Carolina*, 137 S. Ct. 1730, 1738 (2017) ("as a general rule, the Government 'may not suppress lawful speech as the means to suppress unlawful speech'"); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("[A] law imposing criminal penalties on protected speech is a stark example of speech suppression. . . . The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere.")); *id* at 255 (rejecting the government's argument that Congress could ban virtual child pornography to aid in the prosecution of actual child pornography, the Court held: "The argument, in essence, is that protected speech may be banned as a means to ban unprotected speech. This analysis turns the First Amendment upside down. The government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. '[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted....'") (brackets in original);

*IMDB.com Inc. v. Bacerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) ("*Pittsburgh Press* implicates only those instances when the state restricts *speech that itself proposes an illegal transaction*…SAG's interpretation of *Pittsburgh Press* would require this court to permit the restriction not only of speech that proposes an illegal activity but also facially inoffensive speech that a third-party might use to facilitate its own illegal conduct.  But as the Supreme Court has noted, 'it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.'  *Bartnicki v. Vopper*, 532 U.S. 514, 529–30, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001)…Rather than restrict truthful speech, the typical 'method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it.'  *Bartnicki*, 532 U.S. at 529, 121 S.Ct. 1753.") (emphasis added).

## UNITED STATES' OBJECTIONS

The United States incorporates its objections to Defendants' Proposed Instruction No. 7, 10-11 and 13, and also objects to the instruction as cumulative of Defendants' Proposed Instructions Nos. 7-17.

Moreover, the instruction is confusing, irrelevant, and misleading.  This case is about Defendants' commission of federal offenses in the course of operating, for more than a decade, the internet's largest source of ads for the sale of people for sex.  *See generally* Doc. 793 (detailing the SI's factual and legal allegations).  The suggestion that this case was brought to "prosecute . . . and convict any defendant because he, or she, or Backpage.com refused to cease publishing protected dating, massage, and escort ads" mischaracterizes the SI and is untrue.  *See generally* Doc. 230.

The instruction also is confusing, irrelevant, and misleading because, in April 2018, Backpage pleaded guilty in a separate case and cooperated in its shut down.  *See United States v. Backpage.com, LLC*, CR-18-465-PHX-SMB, Doc. 8-2 at 6-11.  The instant case involves criminal charges against six individual Defendants, not Backpage.

1  Further, the instruction is not supported by the cases Defendants cite.   None
2  involved a website, like Backpage, whose revenue-generating business model consisted of
3  operating a massive online marketplace for illegal prostitution.  *Cf. Ulbricht*, 31 F. Supp.
4  at 558 (rejecting website operator's argument that his site's online marketplace for illegal
5  narcotics involved speech protected by First Amendment); *see also* Doc. 793 at 14 ("The
6  SI does not allege Defendants are criminally liable because they unknowingly and
7  unintentionally operated a website used by third parties to post prostitution ads. Rather, it
8  alleges Defendants purposely sought out opportunities to increase prostitution advertising
9  on Backpage. . . .  As alleged, Backpage's efforts to promote its website facilitated
10 prostitution and were not protected business practices."); Doc. 793 at 8 ("The SI
11 sufficiently explains why defendants in this case are not just merely hosting third party
12 content."); Doc. 840 at 9-10 & n.6 (explaining that the SI's allegations differentiate
13 Backpage's activities from passive hosting of third party content).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

**DEFENDANTS' PROPOSED INSTRUCTION NO. 19**

**FIRST AMENDMENT PROTECTION—WEBSITE HAS THE RIGHT TO**

**EXERCISE EDITORIAL CONTROL AND JUDGMENT**

4    The First Amendment presumptively protects the "editorial control and judgment"

5   of a publisher, including a website, including its decisions about whether to exclude,

6   moderate, filter, label, restrict, or promote third-party content.  The First Amendment

7   presumptively protected both the rights of Backpage.com users to post speech on the

8   website and the rights of Backpage, as the publisher of Backpage.com, to exercise its

9   editorial judgment over which speech it would, and would not, allow on its website.

10    Federal law also protects online service providers and encourages them to engage

11   in the editorial practices of monitoring, limiting, and/or editing user-submitted content to

12   "maintain the robust nature of Internet communication, and…keep government

13   interference in the medium to a minimum."

14    **Supporting Authorities**

15   *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of

16   material to go into a newspaper, and the decisions made as to limitations on the size and

17   content of the paper, and treatment of public issues and public officials—whether fair or

18   unfair—constitute the exercise of editorial control and judgment.  It has yet to be

19   demonstrated how governmental regulation of this crucial process can be exercised

20   consistent with First Amendment guarantees of a free press as they have evolved to this

21   time."); *Washington Post v. McManus*, 355 F. Supp. 3d 272, 300 (D. Md. 2019) (enjoining

22   Maryland statute requiring social media and news websites to self-publish information

23   about political ads as infringing editorial judgments; "This respect for a publisher's right

24   to exercise 'editorial control and judgment' … applies with equal force to outlets that

25   publish content on the Internet") (quoting *Tornillo*, 418 U.S. at 258), *aff'd.,* 944 F.3d 506

26   (4th Cir. 2019).

27   *NetChoice, LLC v. Attorney General, Florida*, 34 F.4th 1196, 1203, 1210 (11th Cir.

28   2022) ("Put simply, with minor exceptions, the government can't tell a private person or

1    entity what to say or how to say it…. Social-media platforms like Facebook, Twitter,

2    YouTube, and TikTok are private companies with First Amendment rights, and when they

3    (like other entities) 'disclos[e],' 'publish[ ],' or 'disseminat[e]' information, they engage

4    in 'speech within the meaning of the First Amendment[.]' More particularly, when a

5    platform removes or deprioritizes a user or post, it makes a judgment about whether and to

6    what extent it will publish information to its users—a judgment rooted in the platform's

7    own views about the sorts of content and viewpoints that are valuable and appropriate for

8    dissemination on its site….When a platform selectively removes what it perceives to be

9    incendiary political rhetoric, pornographic content, or public-health misinformation, it

10   conveys a message and thereby engages in 'speech' within the meaning of the First

11   Amendment.") (internal citations omitted); *id*. at 1213 ("Social-media platforms exercise

12   editorial judgment that is inherently expressive" and, therefore, "[w]hen platforms choose

13   to remove users or posts, deprioritize content in viewers' feeds or search results, or sanction

14   breaches of their community standards, they engage in First-Amendment-protected

15   activity."); *Hopson v. Google*, No. 21-cv-320-wmc, 2023 WL 2733665 (W.D. Wis. Mar.

16   31, 2023) ("At their core, each of these remaining claims against Google challenge its

17   editorial judgments about what to publish or not publish—whether by restricting and

18   filtering the website's contents or filtering search results. Thus, numerous district courts

19   have concluded that such activity is protected by the First Amendment."); *Huber v. Biden*,

20   No. 21-CV-06580-EMC, 2022 WL 827248, at *6 (N.D. Cal. Mar. 18, 2022) ("It is well-

21   established that the First Amendment protects the 'exercise of [a publisher's] editorial

22   control and judgment.' *Mia. Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). For

23   example, courts have recognized that '[s]ocial media platforms have a First Amendment

24   right to moderate content disseminated on their platforms.'") (brackets in original), *aff'd,*

25   No. 22-15443, 2022 WL 17818543  (9th Cir. Dec. 20, 2022); *O'Handley v. Padilla*, No.

26   21-CV-07063-CRB, 2022 WL 93625, at *14-15 (N.D. Cal. Jan. 10, 2022) ("Like a

27   newspaper or a news network, Twitter makes decisions about what content to include,

28   exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by

the First Amendment….   Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies.   The Court will issue no such order."); *e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) ("A search engine is akin to a publisher, whose judgments about what to publish and what not to publish are absolutely protected by the First Amendment;" holding that "Google's actions in … determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication. The First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism."); *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 438-40 (S.D.N.Y. 2014) (granting judgment on the pleadings because: "[A] 'search engine's editorial judgment is much like many other familiar editorial judgments,' such as the newspaper editor's judgment of which wire-service stories to run and where to place them in the newspaper… [T]he First Amendment…plainly shields Baidu from Plaintiffs' claims in this lawsuit … [because] they seek to hold Baidu liable for, and thus punish Baidu for [its content moderation decisions]… To allow such a suit to proceed would plainly 'violate[ ] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.'"); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-630 (D. Del. 2007) (First Amendment protects decisions about placement, ranking, or rejection of online advertisements); *Search King, Inc. v. Google Tech., Inc.*, 2003 WL 21464568 *4 (W.D. Okla. 2003) ("Google's PageRanks are entitled to 'full constitutional protection.'").

   *Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003) ("there is little doubt that the Cox–Wyden amendment, which added what ultimately became § 230 to the Act, sought to further First Amendment and e-commerce interests on the Internet"); *id.* at 1040 ("A proper analysis of § 230, which makes a human being's decision to disseminate a particular communication the touchstone of CDA immunity, reconciles Congress's intent to

deregulate the Internet with Congress's recognition that certain beneficial technologies, which promote efficient global communication and advance values enshrined in our First Amendment, are unique to the Internet and need special protection.") (Gould, J. concurring in part and dissenting in part); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1163 (N.D. Cal. 2017) ("the immunities in section 230(c) are far from tangential; they are one of the means by which Congress 'sought to further First Amendment and e-commerce interests on the Internet'"), *aff'd*, 2 F.4th 871 (9th Cir. 2021), *vacated and remanded on other grounds*, 598 U.S. ___, 143 S.Ct. 1191 (2023).

**UNITED STATES' OBJECTIONS**

The instruction should not be given because this case does not involve the exercise of traditional "editorial control and judgment" functions. *See, e.g., Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 254-558 (1974) (newspapers cannot be compelled to publish editorials or commentary; decisions regarding the inclusion of materials in the newspaper and "treatment of public issues and public officials—whether fair or unfair—constitute the exercise of [protected] editorial control and judgment").

Rather, as this Court has recognized (in reviewing the sufficiency of the SI), Defendants' management and operation of Backpage "fell outside 'traditional, editorial functions' protected by the First Amendment." Doc. 793 at 12-15. For example, Defendants "participated in [ad] moderation not merely to edit, but to 'conceal the true nature of the ads being posted on its website.' (SI¶ 11)." Doc. 793 at 12. Defendants' "official policy" for posts advertising child prostitution was to delete particular words in the ads indicative of underage prostitution and publish the revised version, thereby creating a veneer of deniability and helping its customers evade law enforcement. Doc. 793 at 12. Defendants followed similar policies for ads containing words or phrases indicative of adult prostitution. Doc. 793 at 12. Backpage also permitted users to include The Erotic Review (TER) ID numbers in ads—that is, numbers that Johns could use to locate on-line reviews of the advertisers' sex-for-money services. *See* Doc. 793 at 12. Moreover,

1    Backpage "taught customers how to word their ads to avoid moderator restrictions," and

2    maintained non-adult sections to provide "plausible deniability" and make the website

3    more "defensible" to law enforcement.  Doc. 793 at 12-13.  As the Court has already ruled,

4    *Tornillo* and its progeny do not apply to these policies and practices.  Doc. 793 at 12-15

5    ("The SI does not attack protected editorial functions"); *see also* Doc. 649, Resp. at 26-29.

6    This is law of the case.

7         Separately, Defendants' invocation of "[f]ederal law"—namely, Section 230 of the

8    Communications Decency Act, 47 U.S.C. § 230—should be precluded in the jury

9    instructions.  As this Court has already held, Section 230 has no application whatsoever in

10   this federal criminal case.  Doc. 793 at 13; Doc. 840 at 4-12.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 20
## FIRST AMENDMENT PROTECTION—GOVERNMENT'S BURDEN OF
## PROOF

In cases involving the First Amendment, the government has a heightened burden of proof.  The government must show that each defendant joined in the alleged criminal conspiracy with the intent to further the criminal objective.  It is not enough for the government to show that a defendant was aligned with criminal business enterprise for the purpose of supporting its legal objectives protected under the First Amendment.

### Supporting Authorities

*Noto v. United States*, 367 U.S. 290, 299 (1961) (the element of membership in a criminal enterprise "must be judged *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share").

### UNITED STATES' OBJECTIONS

This instruction is unnecessary and not supported by the facts or the law.  In this criminal prosecution, the United States already has the burden of proving Defendants' guilt beyond a reasonable doubt; no higher burden applies.  The United States' substantive burdens are adequately covered by instructions on the charged offenses.

*Noto v. United States*, 367 U.S. 290 (1961), has nothing to do with this case.  In *Noto*, the Supreme Court reversed the defendant's Smith Act conviction for belonging to the Communist Party, where the evidence was insufficient to show that his party membership involved anything more than abstract teaching or political advocacy.  367 U.S. at 298-99.  As the SI makes clear, this case does not involve protected abstract advocacy at all; rather, it concerns Defendants' operation of a massive online source of prostitution solicitations.

* * *

**The United States' Proposed Alternative to**

**Defendants' Proposed Instructions Nos. 7-20**

If, upon the close of the evidence, the Court nevertheless concludes that the record warrants any First Amendment instruction, *cf. Freeman*, 761 F.2d at 551-52, *Rowlee*, 899 F.2d at 1280, and *White*, 610 F.3d at 959, the following instruction should be given instead of Defendants' proposed instructions:

> The jury must presume that speech is protected, and the government has the burden of proving otherwise. Speech relating to illegal activity is not protected. Prostitution is illegal in 49 states and most of Nevada. Advertisements or solicitations for prostitution have no protection.
>
> You may consider any direct or circumstantial evidence in assessing whether any ads in this case related to illegal activity.

*See* Doc. 793 at 14; *Central Hudson*, 447 U.S. at 563-64 ("commercial speech related to illegal activity" is not protected by the First Amendment); *Erotic Service Provider*, 880 F.3d 450, *amended*, 881 F.3d at 792 ("[f]or commercial speech to receive First Amendment protection[,] the speech must concern lawful activity"). *See also Williams*, 553 U.S. at 297 ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); *Pittsburgh Press*, 413 U.S. at 388 ("a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes"); *Coyote Pub.*, 598 F.3d at 600-04 (explaining that prostitution is illegal nearly everywhere in the United States, and upholding Nevada ban on prostitution advertising); United States' Objections to Defendants' Proposed Instruction No. 11, Part IV, *supra* (citing additional authorities).