Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Additional counsel listed on next page

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　　　Defendants. | NO. CR-18-00422-PHX-DJH<br><br>**DEFENDANTS' PRELIMINARY OBJECTIONS TO THE GOVERNMENT'S PROPOSED EXHIBITS TO BE ADMITTED THROUGH CARL FERRER** |

Eric Kessler (AZ Bar No. 009158)
KESSLER LAW GROUP
6720 N. Scottsdale Rd., Suite 210
Scottsdale, AZ  85253
Telephone: (480) 644-0093
eric@kesslerlawgroup.com
*Attorney for Scott Spear*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

2

Defendants, by and through their undersigned counsel, submit the following preliminary objections to the government's proposed list of exhibits to be admitted through Carl Ferrer. Given that the government seeks to introduce about 400 exhibits through Mr. Ferrer, during the course of Mr. Ferrer's examination, Defendants intend to submit briefing to address various categories of exhibits that the Court should decline to admit. The instant brief concerns: (1) e-mails and other exhibits as to which Ferrer plainly lacks foundation and (2) exhibits that have been redacted in a prejudicial manner.

Defendants will raise specific objections in person to each tranche of Ferrer exhibits as the Court takes those up, including at today's conference with the Court. Defendants also reserve the right to further object to any Ferrer exhibits as they are offered at trial. This brief, however, is intended to provide an overview to the Court regarding certain issues that infect certain groups of the 400 or so exhibits the government intends to admit through Ferrer.

### I. EXHIBITS ON WHICH FERRER IS NOT COPIED SHOULD NOT BE ADMITTED THROUGH HIM.

The government proposes to introduce numerous documents through Ferrer, even though he will be unable to provide any foundation whatsoever for admission. For example, Exhibit 1911b is an email between Michael Lacey and his ex-wife, Kathleen Ferris. Ferrer was not a recipient of this email communication between these former spouses. Equally dubious is the government's request to admit Exhibit 1 through Ferrer. Exhibit 1 is a series of email communications between Michael Lacey and his trusts and estates counsel, John Becker. They discuss the formation of the foreign trust that is the subject of Count 100, but Ferrer was not a recipient of this email and there was no discussion whatsoever of Backpage. There is no basis for Ferrer to have any foundational information to admit these personal communications. This obvious overreach is not limited to these exhibits. *See also, e.g.,* Exhs. 500, 1047, 2038, 2040, 2042, 2043.

## II. EXHIBITS CONTAINING PREJUDICIAL REDACTIONS SHOULD BE EXCLUDED.

In several instances, the government has taken a previously disclosed exhibit and redacted it in a prejudicial way, marking the redacted version with an "a" (or "b" or "c") after the exhibit number. Under the rule of completeness (FRE 106), "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). Such is the case as to the below examples, which are not intended to be exhaustive, but rather are emblematic of the government's questionable approach to the redaction of its exhibits.

### A. Exhibit 140a (redacted version of January 5, 2011 letter from Auburn Theological Seminary).

Exhibit 140a is a redacted version of a January 5, 2011, letter from Auburn Theological Seminary (the unredacted letter is Exhibit 140). The Seminary describes itself on its website as "one of the oldest religious institutions in the US."[1] In its opening statement, the government said it will attempt to introduce this letter – among others – to demonstrate that Defendants purportedly were on "notice" that adult ads posted by third parties on Backpage.com were associated with prostitution or other illegal activity. The government has, however, redacted the letter in a prejudicial manner.

For example, the government redacts half of the first and second pages of the letter. That portion of the letter says, "We are coming at this from a different perspective – not as lawyers, government officials, or NGOs, but as moral and religious leaders who have a calling and responsibility to protect our children." Exh. 140 at 1. The letter goes on to indicate that "As a Christian, for me personally, my commitment to this issue has a Biblical basis," citing scripture ("It forecasts the coming of a Messiah who would be sent to 'bring good news to the oppressed'. . . ."). As discussed below, the reason this letter did not put Backpage (and

---

[1] https://auburnseminary.org/about/

4

1 Defendants) on notice of anything relevant to this case is precisely because of the portions the
2 government impermissibly redacts – Auburn's position was admittedly grounded in religion
3 and morality, *not the law.*
4     Indeed, the redacted version of the exhibit is even *more prejudicial* to the defense.
5 The Court need only observe that the government redacts the use of the word "moral"
6 throughout the letter, seemingly in an attempt to comply with Judge Brnovich's prior order.
7 Dkt. 1159 at 3.  The absurdity of these redactions is evident from the below example (found
8 on the bottom of p. 4 of the exhibit, DOJ-BP000052548):
9 **Exhibit 140a (redacted):** " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . . . .
12 ▮▮▮▮, the case is clear.  If your company could do anything more to help stop sex trafficking
13 of minors, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮, it should be done immediately.  Just because the problem is hard to solve doesn't
15 mean that you are ▮▮▮▮▮ free to profit from a site, on which, despite your implementation
16 of safety standards, children may be trafficked.  There is very little ▮▮▮ wiggle room . . . ."
17
18 **Exhibit 140 (unredacted):**  "The latter in particular we find morally objectionable.  By
19 continuing to operate Backpage.com's adult section, you are sending a message that a storied
20 American brand like the Village Voice is thumbing its nose at basic moral precepts . . . .
21 Morally, the case is clear.  If your company could do anything more to help stop sex trafficking
22 of minors, a heinous crime that robs girls and boys of their childhood and perhaps even their
23 adulthood, it should be done immediately.  Just because the problem is hard to solve doesn't
24 mean that you are morally free to profit from a site, on which, despite your implementation
25 of safety standards, children may be trafficked.  There is very little moral wiggle room . . . ."
26     Previously, Defendants moved in limine to preclude the government from admitting
27 any evidence premised on religious or moral views, as such views are irrelevant to the issue of
28 whether the Defendants have violated the law.  Dkt. 907.  Judge Brnovich ruled that the

Seminary letter was "highly prejudicial," but could be "redacted to take out the inflammatory language about the clergy's motivation and the moral opinion about Backpage.com." Dkt. 1159 at 3. But that remedy was never requested by the Defendants. More importantly, Judge Brnovich ruled in a vacuum and never saw the government's proposed redacted exhibit, which only renders the exhibit more prejudicial.

In any event, this Court should preclude admission of Exhibit 140a for several reasons. First, none of the evidence concerning the religious and moral views of religious leaders is relevant to whether the Defendants conspired to or facilitated any Travel Act violations because it did not put them on "notice" of any Travel Act violations (*i.e.*, specific instances of business enterprises being involved in prostitution offenses). Second, use of this exhibit is a highly improper invitation for members of the jury to judge Defendants based on religious grounds, rather than based on the law.

But, if this "highly prejudicial" exhibit is admitted, it must be admitted in full other than redactions unrelated to religious and moral views,[2] under the rule of completeness.

**B.     Exhibit 616a (redacted version of November 12, 2010 email from Scott Spear to Mary Lee Latta and John Brunst)**

This email reflects communications between Mr. Spear and Mary Lee Latta, a representative of the Bank of Montreal ("BMO"), with whom Backpage and certain of its parent companies banked. Those emails, however, both were in response to an October 18, 2010, email from James Larkin to Thomas McGraw and Ms. Latta at BMO, yet the government has redacted Mr. Larkin's original email from the exhibit. Mr. Larkin's email is necessary to provide context for Ms. Latta's subsequent email to Mr. Spear and Mr. Spear's reply. The exhibit should not be admitted without Mr. Larkin's email.

There is no legitimate reason for the government's redactions. In the original e-mail from Mr. Larkin (found in Exhibit 616), he informed BMO that Craigslist shut down its adult

---

[2]     The government's redactions of portions of the letter that concern murders or the age of certain individuals advertised on the site are proper pursuant to the Court's orders on the parties' motions *in limine*. Dkts. 908, 920.

section "under pressure" from state attorneys general and that in the aftermath of Craigslist's actions, Backpage had (1) "engaged an internet security and user safety firm . . . to direct us on changes that need to be made to the site," (2) "entered discussions with [Connecticut Attorney General] Blumenthal's office on changes that he thinks need to be made to the site," and (3) "cleaned up the most egregious portions of the site." Exh. 616 at 3. Larkin further represented to BMO that "we are clearly lawful in our operations here and this is a political dance."[3] *Id.*

The redactions eliminate necessary context from an exhibit, including exculpatory information, namely Mr. Larkin's contemporaneous view (shared by Defendants) that Backpage was cooperating with law enforcement and complying with the law, a view that he was communicating to a financial institution with whom Backpage did business. If so-called "notice" evidence is to come in on the part of the government, then evidence regarding the corresponding state of mind of Defendants and Backpage must come in as well, in part to combat the notion that Defendants deceived financial institutions, a claim that was advanced by the government during its opening statement. Further, the government's opening – which attributed the influx of adult advertisements on Backpage to Craigslist's shutting down of its adult section – directly puts at issue how Backpage responded to Craigslist's actions, as reflected in the redacted portion of Exhibit 616a.

**C.    Exhibit 1827a (redacted version of January 31, 2012 email from Michael Lacey to Scott Tobias and others).**

Here, the government has redacted the vast majority of the e-mail correspondence reflected in the exhibit. This email chain begins with Scott Tobias, who was the President and

---

[3] Although the subject of Mr. Larkin's email said "Attorney Client Privileged," the email plainly was not privileged. Mr. Larkin's email was sent to two representatives of BMO, which provided banking services to Backpage and its affiliates, and merely was copied to Backpage's in-house counsel. The government also does not appear to contend that it redacted the e-mail because of privilege, as the government produced the complete unredacted email in discovery (necessarily after review by the prosecution team), and the complete unredacted email has been included on the government's exhibit list *since before the first trial.*

7

CEO of Village Voice Media Holdings, which owned all the company's newspapers and Backpage.com, informing the newspaper's advertising staff of an article in the Denver Post relating to ads on Backpage. Among other things, he explains to the advertising staff:

> Village Voice Media spends millions of dollars policing the site to stop illegal activity and to try to protect young children from exploitation.
>
> Village Voice Media is a first responder, we work hand in hand with local law enforcement, the FBI and the National Center for Exploited and Missing Children (NCMEC). We turn over suspicious ads to these groups and are the first to respond, often responding in 24 hrs to subpoenas or request[s] for info regarding missing kids. Our mission is to save kids in distress.
>
> We are on the right side of this issue. These ads that run on Backpage ALSO run on Google, Twiter [sic], Facebook and in the Yellow Pages. These entities often take weeks if not months to cooperate with law enforcement.
>
> If Backpage were to exit this business it will only get worse. And there is NO guarantee that another organization would dedicate as much resource[s] or dollars to fighting these issues as we do.

(Ex. 1827 at p. 2.)

As reflected in Exhibit 1827a, the government has redacted the ***entire email from Tobias***, when the email only potentially required minor edits to omit references to child sex trafficking. This email was then forwarded to, among others, Lacey. Lacey's response (which is also heavily redacted) demonstrates his contemporaneous understanding of Backpage's cooperation with law enforcement and the basis for why he, in good faith, believed that Backpage was operating lawfully even though he learned, after the fact, of various people's misuse of the website. For example, under point number one in his email, which is redacted by the government, he documents his understanding that the National Association of Attorneys General in its ongoing communications with Backpage did not "identif[y] law breaking" by Backpage. Exh. 1827 at p. 1. Under point two, also redacted, he explains that he believes it is "a big lie that craig got out of adult," which directly counters the government's

narrative that Craigslist completely shut down the adult section of its website. *Id.* While the government properly redacts certain references to "Detroit," *i.e.*, certain murders linked to Backpage advertisers that the Court previously ruled are inadmissible (Dkt. 920), it once again over-redacts exculpatory information that provides necessary context to the e-mail and demonstrates Lacey's state of mind.

**D.    Exhibit 933a (redacted version of September 22, 2010 e-mail from Scott Spear to Carl Ferrer).**

There is no basis for the government to redact the e-mail that appears at the bottom of the chain, specifically what appears to be a draft e-mail from Mr. Ferrer to Detective Fitzgerald of the Montgomery County Policy Department in response to an inquiry from the detective. As reflected in Exhibit 933 (which is unredacted), in the redacted portion of the e-mail, Ferrer sets forth the extensive work Backpage was undertaking at the time to ferret out content on the website associated with illegal conduct, including hiring additional staff and working with law enforcement. *See* Exh. 933  This is yet another example of an exhibit where the government has selectively redacted exculpatory information, as well as information highly relevant to Defendants' (and Ferrer's) belief that Backpage was operating in compliance with the law.

/
/
/
/
/
/
/
/
/
/
/

9

### III. CONCLUSION

In light of the above, the Court should scrutinize and ultimately preclude exhibits where (1) Mr. Ferrer clearly lacks foundation and (2) the government has selectively and inconsistently applied redactions, redactions which will obscure for the jury the entire contents of emails and prejudice the defense. There are several other instances of redacted exhibits (*see, e.g.,* Exh. 1895c; the unredacted version of the exhibit can be found at Exh. 588); this brief is merely intended to preview for the Court issues that it will need to address throughout Mr. Ferrer's testimony.

RESPECTFULLY SUBMITTED this 6th day of September, 2023,

Paul J. Cambria, Jr.
Erin McCampbell Paris
LIPSITZ GREEN SCIME CAMBRIA LLP

By:   /s/ Paul J. Cambria, Jr.
      Paul J. Cambria, Jr.
      Attorneys for Michael Lacey

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II (C) (3), Paul J. Cambria hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

Gary S. Lincenberg
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By:   /s/ Gary Lincenberg
      Gary Lincenberg
      Attorneys for John Brunst

Eric W. Kessler
KESSLER LAW OFFICE

By:   /s/ Eric W. Kessler
      Eric W. Kessler
      Attorneys for Scott Spear

10

```
                        Bruce Feder
                        FEDER LAW OFFICE, P.A.

                        By:    /s/ Bruce Feder
                               Bruce Feder
                               Attorneys for Scott Spear

                        David Eisenberg
                        DAVID EISENBERG, P.L.C.

                        By:    /s/ David Eisenberg
                               David Eisenberg
                               Attorneys for Andrew Padilla

                        Joy Bertrand
                        JOY BERTRAND, ESQ.

                        By:    /s/ Joy Bertrand
                               Joy Bertrand
                               Attorneys for Joye Vaught
```

On September 6, 2023, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal of a Notice of Electronic Filing to the to the CM/ECF registrants who have entered their appearance as counsel of record