Gary S. Lincenberg *(admitted pro hac vice)*
   glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
   aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
   gkp@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-PHX-DJH |
| Plaintiff, | **DEFENDANT JOHN BRUNST'S RESPONSE TO UNITED STATES' MOTION FOR CURATIVE INSTRUCTIONS** |
| vs. | |
| Michael Lacey, et al., | |
| Defendants. | |

## I. INTRODUCTION

Defendant John Brunst responds to the portion of the government's motion concerning Sheriff Dart and the *Backpage v. Dart* opinion. In its opening, the government said it will use Visa's and MasterCard's terminations of their relationships with Backpage to show that Defendants were on notice that Backpage was engaged in illegal conduct. Defendants believe the evidence will demonstrate the opposite; namely, that these credit card companies instead acted out of concern for their brands and reputations, just days after receiving an unconstitutional and threatening letter from a law enforcement official. In response to what the government has called "credit card Armageddon," Defendants are entitled to show that they and Carl Ferrer believed: (1) the credit card terminations were prompted by unconstitutional cease-and-desist letters and other threats from Sheriff

3888758.2

Thomas Dart (the Sheriff of Cook County, Illinois, which includes the City of Chicago) to Visa and MasterCard; (2) as a consequence, Backpage sued Dart; (3) the Seventh Circuit ultimately ruled that Dart acted unconstitutionally and directed the district court to enter an injunction against Dart; and (4) Backpage and Ferrer communicated with the credit card companies regarding Dart's actions.

The government—through its indictment, opening statement, and exhibits—has put this factual narrative squarely at issue. Indeed, at least a dozen ***government exhibits*** reference the Dart saga from soup to nuts, from the June 2015 Dart cease-and-desist letters to filings and sworn statements from Carl Ferrer in *Dart*. Critically, almost all of the money laundering charges and about half of the Travel Act charges concern alleged acts that took place following the commencement of the Dart saga. Defendants therefore must be permitted to cross-examine Ferrer on the post-June 2015 developments that undermine the government's claim that the credit card terminations put Defendants on "notice" that Backpage was engaged in illegal conduct.

For these reasons, Defendants should be permitted to present evidence to the jury of (1) Backpage's *direct response* to what the government called "credit card Armageddon," namely that it sued Dart and (2) Defendants' and Ferrer's mental states at the time, which were informed by the Seventh Circuit's holding in *Dart* that the credit card terminations were triggered by Sheriff Dart's delivery of unconstitutional threats to MasterCard and Visa.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   The Government Has Directly Put at Issue Sheriff Dart's Actions and Backpage's Response.

In the Superseding Indictment, the government alleges that "the three major credit card companies stopped doing business with Backpage." Dkt. 230 at ¶ 182. Specifically, in July 2015, Visa and MasterCard terminated their relationships with Backpage. *Id*. The government also alleged those companies informed Backpage that their rules prohibit their credit cards "from being used for illegal activities." *Id*. In its opening statement, the

1  government claimed that Mr. Brunst was a "key cog, key player in this response to credit
2  card Armageddon." The government then stated, as to Defendants, "So what did they do?
3  They had to get creative." The government asks the jury to believe that (a) the credit card
4  terminations put Defendants and Ferrer on "notice" that Backpage was engaging in illegal
5  conduct and (b) Defendants and Ferrer responded by engaging in further illegal conduct.
6  The government seeks to do this while omitting that Backpage (a) communicated with the
7  credit card companies about the wrongful basis for that supposed "notice" (*i.e.*, Dart's
8  threats) and (b) pursued a proper channel – the courts – to test any inferences that could be
9  drawn from such notice. Defendants must be allowed to show what they actually did in
10 response to the credit card terminations, by presenting evidence of the following:

- The Visa and MasterCard terminations were triggered by identical cease-and-desist letters sent by Sheriff Dart on June 29, 2015 (Gov. Exs. 459, 478).
- Dart then threatened to hold a press conference during which he would publicly criticize the credit card companies for doing business with Backpage (Exs. 6006, 6008).
- In a matter of days following the receipt of the Dart letter, Visa and MasterCard terminated their relationships with Backpage (Ex. 6011).
- Backpage (acting through its counsel Thomas Brown, a former in-house attorney for Visa and then a respected attorney at Paul Hastings) sent Visa and Mastercard letters requesting that they reconsider their terminations, explaining how and why Backpage was operating in compliance with the law, and telling the companies that Backpage intended to seek an injunction against Dart (Ex. 6013).
- In response to "credit card Armageddon," Backpage sued Dart for interfering with its credit card relationships. Backpage ultimately prevailed in the Seventh Circuit, with Judge Posner holding that Sheriff Dart's actions were unconstitutional and directing the district court to enjoin Dart from taking any actions "to coerce or threaten credit card companies . . . with sanctions intended to ban credit card or other financial services from being provided to Backpage.com." (Ex. 5104 at 19).

1    Indeed, the Court need only look at the *government's exhibit list* to appreciate the relevance of the Sheriff Dart saga, including the ensuing litigation. *See* Gov. Ex. 186 (*Backpage v. Dart*, Seventh Circuit, Appendix to Brief); Gov. Ex. 232 (October 2, 2015 Google Alert to Backpage staff referencing the status of the case); Gov. Ex. 458 (August 16, 2015 Affidavit of Martin Elliot, executive at Visa and government witness, filed in the *Backpage v. Dart* case); Gov. Exs. 459, 478 (June 29, 2015 Letters from Dart to Visa and MasterCard re: Backpage), Gov. Ex. 477 (June 29, 2015 internal MasterCard correspondence regarding Dart letter); Gov. Ex. 663 and 663a (internal Backpage e-mail attaching legal memorandum from Samuel Fifer, a partner at Dentons (then SNR Denton), summarizing an earlier June 5, 2011 meeting between Backpage and Sheriff Dart); Gov. Ex. 794 (July 8, 2016 e-mail from Liz McDougall [Backpage's General Counsel] to a WSJ reporter regarding the *Backpage v. Dart* case); Gov Ex. 1127 (July 1, 2015 email from Ferrer to others at Backpage, stating "[MasterCard] and Sheriff Dart are now deciding what is legal and illegal speech. [A]re now arbiters of legal speech. We have our legal team on it. We have a good track record on these issues."); Gov. Ex. 1575 (June 29, 2015 internal MasterCard email regarding Dart letter); Gov. Ex. 1629 (July 21, 2015 Declaration of Carl Ferrer submitted in *Dart*); Gov. Ex. 1687 (August 18, 2015 deposition transcript of Carl Ferrer in *Dart*).

**B.     Dart's Letters to Visa and MasterCard Prompted the Terminations of the Backpage Relationship.**

As set forth in *government exhibits* 459 and 478, on June 29, 2015, Sheriff Dart sent identical letters to Visa and MasterCard requesting that they "immediately cease and desist from allowing [their] credit cards to be used to place ads on websites like Backpage.com." Through his letter, Dart was putting the reputation of Visa and MasterCard at stake. *Id.* at 3 ("For every one of the millions of ads on Backpage.com alone, your institution is making money. But at what cost to your image, our society and to those thousands of victims?"). Within a matter of days, Visa and MasterCard terminated their relationships with Backpage. *See, e.g.*, Ex. 6011 (July 2, 2015 internal

Visa email confirming termination of "payment facilities of Backpage."); *see also* Gov. Ex. 1629 (Ferrer Decl. in *Dart*) at ¶ 24 ("On July 1 and 2, 2015, Backpage.com received notice from its acquiring banks and credit card processors (companies that help facilitate credit card payments) that they could no longer process Visa and MasterCard transactions and were terminating their agreements with Backpage.com effective immediately."). Visa and MasterCard terminated the Backpage relationship for reputational reasons in response to the Dart letter, as internal correspondence at these companies makes clear. *See* Ex. 6008 (June 30, 2015 email from Dart's office to Visa noting that Dart would "be having a press conference tomorrow morning . . . Obviously the tone of the press conference will change considerably if your executives see fit to sever ties with Backpage. . . ."); Ex. 6010 (July 1, 2015 internal Visa e-mail where an executive says the "subtle messages [Dart's office has] been sending us . . . could easily be taken for blackmail.").

### C. Backpage Attempted to Stave off the Credit Card Terminations Pending a Lawsuit Against Sheriff Dart.

On July 6, 2015, Backpage sent letters to Visa and MasterCard, requesting that they continue to allow their cards to be used on Backpage.com "at least until such time as a court has ruled on Sheriff Dart's actions." Ex. 6013 at 1. The letter from Backpage highlighted the company's strict Terms of Use, cooperation with law enforcement, and its robust moderation process. The letter requested a meeting with Visa's executives, which later took place. Ferrer testified in the *Dart* case that he had reviewed the letter Backpage sent and did not recall disagreeing with any statements made in it. Gov. Ex. 1687 (Ferrer Depo. Tr. at 57:10-16).[1]

---

[1] At the September 8th hearing, the government indicated it intends to object to letters like this as "self-serving" and "inaccurate." But the letter's accuracy is irrelevant, as the letter goes to Backpage's position vis-à-vis the credit card companies and Defendants' collective state of mind (and directly responds to the government's "notice" evidence, which also is not coming in for the truth). It is not for the government to prejudge whether prior statements from Backpage or Ferrer were accurate. That is a question for the jury. This anticipated government argument would be particularly specious as to the letter found at

### D. Backpage Sued Sheriff Dart in Federal Court and Prevailed.

In response to Sheriff Dart's actions, Backpage sued Sheriff Dart in the Northern District of Illinois in July 2015. Later that month, Ferrer e-mailed Trent Voigt, CEO of JetPay (a payment processor that processed credit card payments tied to Visa and others), and said: "If we win on Dart, then Visa has cover for protected speech." Ex. 6025. In other words, Ferrer was of the mind that pursuing and winning the *Dart* case would lead Visa to reverse its termination.

Ferrer submitted a sworn declaration in *Dart*, in which he stated:

- From 2004 through 2015, the major credit card companies allowed their credit cards to be used to purchase ads on Backpage.com. Gov. Ex. 1629 at ¶ 6.
- On July 1 and 2, 2015, Backpage was informed of the terminations. *Id.* at ¶ 24.
- "The practical effect of Sheriff Dart's and the credit card companies' actions has been to cut off nearly all revenue to Backpage.com. This affects not only adult ads but also other ads for dating, housing, services, trade, and sales of goods, among others." *Id.* at ¶ 27.
- "Sheriff Dart's actions and the termination of credit card services have also harmed Backpage's efforts to police and preclude improper ads." *Id.* at ¶ 29.

After the district court granted a temporary restraining order but refused to issue a preliminary injunction, the Seventh Circuit reversed and directed the district court to enjoin Sheriff Dart. Ex. 5104. The Seventh Circuit held:

- "Visa and MasterCard bowed to pressure from Sheriff Dart and others by refusing to process transactions in which their credit cards are used to purchase *any* ads on Backpage, even those that advertise indisputably legal activities." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (emphasis in original).
- "[W]hile [Dart] has a First Amendment right to express his views about Backpage, a public official who tries to shut down an avenue of expression of ideas and

---

Ex. 6013, as Mr. Ferrer later testified to its accuracy.

opinions through 'actual or threatened imposition of government power or sanction' is violating the First Amendment." *Id.* (quoting *American Family Association, Inc. v. City & County of San Francisco,* 277 F.3d 1114, 1125 (9th Cir. 2002)).

- Dart "is intimating that two of the world's largest credit card companies may be criminal accomplices" and that "Visa and MasterCard got the message and cut *all* their ties to Backpage." *Id.* at 232 (emphasis in original).

- The Court also cast doubt on a declaration filed by Martin Elliot, in which Mr. Elliott, a Visa executive and government witness here, contended that "[a]t no point did Visa perceive Sheriff Dart to be threatening Visa with prosecution or any other official state action, nor did Visa base its decision on any such threat." Gov. Ex. 458 at ¶ 4. The Court remarked: "But what would one expect an executive of Visa to say? "I'm afraid of the guy?" More significant than Visa's denial of having succumbed to Sheriff Dart's pressure tactics is the statement in the affidavit that the withdrawal of credit card services from Backpage 'follow[ed] communication with Sheriff Dart's staff' and with 'Visa Legal Department' personnel. The reference was to those follow-up communications from the sheriff's office promised (which is to say threatened) in the letters to Visa and MasterCard. ***The promise/threat was honored***." *Id.* at 233 (emphasis added).

Further, in a later (unrelated) lawsuit regarding a payment dispute involving one of Backpage's payment processors, Carl Ferrer stated in a sworn declaration that he believed Dart waged a campaign against Backpage, attaching the *Dart* opinion to his declaration. Ferrer's prior statements are directly relevant to impeach any testimony by Ferrer claiming that Defendants or Ferrer were operating in bad faith at the time.

### E. Brunst's Opening Statement

In response to the government's claims regarding "credit card Armageddon," Mr. Lincenberg said in his opening that, in contrast to other law enforcement officials, "there was one sheriff in Cook County named Sheriff Dart, who –." 08/31/23 Tr. at 205:18-19. The government objected at the mere mention of "Dart"; the objection was

overruled.  *Id.* at 20:20-22.  Mr. Lincenberg explained that he expected the evidence to show that "Sheriff Dart threatened these credit card companies and sent them correspondence.  Some of this is documented in government exhibits.  Sent them correspondence to say, you should stop doing business with Backpage."  *Id*. at 205:23-206:2.  Mr. Lincenberg next stated: "What the evidence will show in this case is that all of the issues with Sheriff Dart were resolved in a manner that gave comfort to our clients that, in fact, Sheriff Dart was the one who was wrong in threatening to shut them down."  *Id*. at 206:8-12.  The government objected; the objection was again overruled.  *Id*. at 206:13-17.

### F. The Court's Pre-Trial Ruling Regarding Prior Lawsuits Involving Backpage

The Court held that "[t]hough some previously referenced cases alleged Backpage.com, LLC, engages in similar acts of posting ads for prostitution, those prior cases are distinguishable because they were (1) civil adjudications; (2) brought by different parties; and (3) reviewed under differing legal standards.  They are irrelevant because they bear no relation to this case or the criminal issues to be decided."  Dkt. 1643 at 11.  Even if the relevance of the *Dart* litigation was not apparent at the time of this Court's ruling, the government's opening put the *Dart* litigation squarely at issue in this case.

## III. ARGUMENT

### A. Evidence Relating to Sheriff Dart's Actions Is Manifestly Relevant.

Sheriff Dart's June 29, 2015 letters to Visa and MasterCard, those companies' responses to Dart's letters and threats, Backpage's decision to sue Sheriff Dart, and the ultimate result in that case all are relevant to the government's claims regarding "credit card Armageddon."  Defendants therefore should be permitted to cross-examine Carl Ferrer regarding his and Backpage's understanding of what transpired in the months following Sheriff Dart's threats to Visa and MasterCard.  The government should not be allowed to put at issue in its opening statement the purported basis for why MasterCard and Visa terminated their relationships with Backpage and whether those terminations put Defendants on "notice" regarding purported illegal activity, *without* Defendants having the

opportunity to show the jury how Backpage responded.  Further, Ferrer now claims that he (and Backpage) were not acting in good faith at the time of the credit card terminations, despite his contemporaneous e-mails, declarations, and testimony to the contrary.  Defendants therefore must be able to counter that the result in *Dart* gave Ferrer comfort that Backpage had done nothing wrong to trigger the credit card terminations.

Defendants also should be permitted to cross-examine Martin Elliott, a Visa executive and government witness, about the basis for Visa's termination of Backpage.  The defense will not be surprised if the government attempts to elicit from Mr. Elliott that Visa had long contemplated terminating Backpage, it considered the content on Backpage's site to be illegal, and that Dart's letter did not precipitate the termination.  Defendants should be allowed to (1) test these assumptions, (2) show that Visa was simply acting to protect its reputation against the threat of bad publicity, (3) inquire as to the effect the *Dart* letter and ensuing litigation had on Visa's decision-making, and (4) probe Visa's reaction to Mr. Brown's letter to Visa on behalf of Backpage, which defended the legality of Backpage's operations (Ex. 6013).  Indeed, Mr. Elliott was well aware of the *Dart* case: he submitted a declaration in the case (Gov. Ex. 458) and tracked its progress, as internal Visa correspondence shows (Exs. 6014, 6015, 6017).

### B. Reference to the *Dart* Opinion Should Not Be Excluded as a "Prior Case" Covered by the Court's Ruling.

Consistent with this Court's order, Defendants will not use the *Dart* opinion to argue that it immunizes them from the charges brought here.  But the opinion is relevant to show the mental states of Ferrer, Backpage, and Defendants at the time—that they believed, having prevailed in *Dart*, that the credit card terminations were the product of *illegal coercion by a public official*, not the result of any illegal conduct on their part.[2]

---

[2] The Court held: "The district judge remarked 'that the majority of the advertisements [in Backpage's adult section] are for sex'—but a majority is not all, and not all advertisements for sex are advertisements for illegal sex. There is no estimate of how many ads in Backpage's adult section promote illegal activity; we just gave examples of

This opinion was a guiding star for Defendants during the 2015 to 2018 time period—a large focus of the substantive counts in the indictment.[3]

## IV.     CONCLUSION

For the foregoing reasons, Defendants request that the Court deny the government's motion and permit the defense to introduce the evidence discussed herein, which is relevant by virtue of the superseding indictment, the government's opening statement, and at least a dozen government exhibits.  The proffered evidence specifically rebuts the government's argument that the credit card terminations put Defendants on "notice" regarding Backpage's alleged illegal conduct.

DATED:  September 11, 2023              Respectfully submitted,

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:     */s/ Gopi K. Panchapakesan*
            Gopi K. Panchapakesan
    Attorneys for Defendant John Brunst

---

some that do not." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015).  Had the Court held the opposite, the government undoubtedly would be clamoring to introduce the opinion as "notice" evidence of intent on the part of Defendants.

[3]    Just last week, in *Missouri v. Biden*, No. 23-30445, 2023 WL 5821788, at *19, 31 (5th Cir. Sept. 8, 2023), the Fifth Circuit Court of Appeals relied heavily on the holding in *Dart* and its reasoning to enjoin President Biden and others in the executive branch from interfering with the content-moderation decisions of social media platforms.