GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  v.<br><br>Michael Lacey, et al.,<br><br>  Defendants. | No. CR-18-422-PHX-SMB<br><br>**RESPONSE OF THE UNITED STATES TO DEFENDANTS' PROPOSED MODIFIED FORFEITURE JURY INSTRUCTIONS** |

The United States, by and through undersigned counsel, hereby submits this Response to Defendants' proposed modifications (Doc. 1940) to the United States' previously-filed Proposed Forfeiture Jury Instructions (Doc. 1935).

**Response to Modified Jury Instruction No.1:**

The government objects in part to the Defendants' modifications to this proposed instruction. Specifically, the government objects to the following modification to this instruction: "Count 1, which concerns: an agreement between two or more persons *to commit at least one Travel Act offense as charged in Counts 2-51 of the indictment* by promoting, or facilitating the promotion of, a business enterprise or enterprises involving prostitution offenses in violation of the laws of the State in which they were committed." (emphasis added). This modification not supported by statute or the law of the case, and should be rejected.

First, this modification is legally-incorrect. Pursuant to 18 U.S.C. 981(a)(1)(C), the government may seek forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation … any offense constituting specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." 18 U.S.C.§1957(c)(7)(A) incorporates by reference 18 U.S.C. § 1961(1), which specially refers to "any act which is *indictable* under any of the following provisions of title 18… section 1952 (relating to racketeering)" (emphasis added). As such, the government need not actually charge an SUA for the proceeds of such an SUA to be forfeitable, where the government obtains a conviction on a conspiracy to commit the same.

Second, Defendants' proposed modification is inconsistent with the law of the case. The Court has recognized that the Travel Act conspiracy charged in Count 1 covers Defendants' work at Backpage from 2004 to 2018, and that the 50 substantive Travel Act counts simply reflect specific examples of ads that the conspiracy produced. For example, in Doc. 1643 at 4, the Court wrote: "[T]hough not clearly stated, Defendants seem to argue

that the Government is prohibited from offering testimony or evidence about acts unrelated to a posted ad or witnesses who are not connected to a charged ad. Yet, the Court has already clarified that the Government may introduce proof of the entirety of the scope of the conspiracy." The Court then found that evidence of Defendants' prostitution marketing strategies were relevant and admissible, reasoning that:

> Given the nature of the SI's allegations, these categories of evidence are relevant to show Defendants knowledge of the ads, how and why they were created and their intended purposes. Further, it is relevant to show whether Defendants "intended to promote a business of prostitution" by posting the ads. (*See* Doc. 1272 at 3). Finally, the Court already found that facts that pre-date the 2013 allegations were relevant as evidence demonstrating "furtherance of the charged conspiracy." Therefore, evidence of ad moderation, Backpage's "reciprocal" advertising/link program with the Erotic Review, and content "aggregation' to secure future advertising revenues will not be precluded to the extent that (1) the SI provides notice to Defendants of these acts, and (2) the acts demonstrate Defendants' knowledge, intent and conduct in furtherance of the conspiracy's objective…

Doc. 1643 at 6. Similarly, in Doc. 793 at 20, the Court described the 50 charged ads as instances of Defendants' conduct during the conspiracy: "The alleged facts in the SI, taken as true, establish Defendants had the specific intent to promote prostitution in violation of the Travel Act. They conspired together to do so. The conspiracy was successful and resulted in the 50 ads for prostitution that now make up 50 counts of violating the Travel Act." And finally, in Doc. 946, the Court rejected Defendants' suggestion that the SI indicted a "'boundless conspiracy' to facilitate prostitution in general"; rather, Defendants "were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution." Doc. 946 at 13.  Critically, the Court then explained:

> To be sure, the allegations certainly describe a course of conduct where

> Defendants facilitated "unlawful activity," including numerous pimps, prostitutes and traffickers in violation of the Travel Act. They also certainly describe how these various groups continuously engaged in prostitution, which plausibly fits within the definition of a "business enterprise."
>
> When read in its entirety and accordingly to common sense, the SI adequately alleges the underlying unlawful businesses involved in prostitution that Defendants intended to facilitate and thereafter facilitated or attempted to facilitate by publishing ads on Backpage.com. This is true even though the SI does not label each supported prostitution venture as a "business enterprise involving prostitution," but instead alleges a continuous course of criminal conduct being supported on fifty distinct occasions.

Doc. 946 at 13-14. In summary, the SI alleges an agreement to promote prostitution business enterprises over 14 years, and charges 50 exemplar ads posted from 2013-2018, but as noted above, forfeiture under § 981(A)(1)(C) applies the proceeds of a conspiracy as a whole, not solely charged instances. Reading this section otherwise would effectively nullify the conspiracy provision in subsection (A)(1)(C), forcing the government to charge each and every underlying wrongful act in order to separate a convicted wrongdoer from the proceeds of crime. Such a holding would be unsupported by law.

**Response to Modified Jury Instruction No.2:**

The government has no objection to Defendants' modification to this proposed jury instruction.

**Response to Modified Jury Instruction No.3:**

The government has no objection to Defendants' modification to this proposed jury instruction.

**Response to Modified Jury Instruction No.4:**

The government has no objection to Defendants' modification to this proposed jury instruction.

**Response to Modified Jury Instruction No.5:**

The government objects to Defendants' modification to this proposed jury instruction, as the government's proposed instruction tracks the Ninth Circuit's Model Instruction for the preponderance of the evidence standard. Furthermore, the preceding proposed jury instruction (No.4) identifies for the jury that the burden remains on the government at this stage, so Defendants' proposed modification is redundant and unnecessary.

**Response to Modified Jury Instruction No.7:**

The government has no objection to Defendants' modification to this proposed jury instruction.

**Response to Defendants' New Jury Instruction No.8:**

The government has no objection to Defendants' new proposed jury instruction.

**Response to Defendants' New Jury Instruction No.9:**

The government has no objection to Defendants' new proposed jury instruction.

**Response to Modified Jury Instruction No. 8 (Modified No. 10):**

Defendants have not proposed any modifications to this proposed jury instruction other than renumbering, which the government does not object to.

**Response to Modified Jury Instruction No.9 :**

The government objects to Defendants' deletion of proposed jury instruction. This instruction accurately states the scope of forfeiture in the event of a conviction under Count 1. While Defendants have incorporated some portions of this instruction into later modified instructions, removing this instruction is likely to be confusing to the jury. For example, without first being instructed on the scope of forfeiture for this count, the following two instructions – defining "traceable to" and "proceeds" – are likely to confuse the jury, which will not have been instructed as to how these terms are relevant.

**Response Defendants' New Jury Instruction No.11:**

The government has no objection to Defendants' new proposed jury instruction.

**Response to Modified Jury Instruction No. 10 (Modified No. 12):**

The government objects to Defendants' modification to this proposed jury instruction. As noted in the government's cited authorities, the change in value of proceeds is not a question for the jury, and the jury should be specifically directed not to speculate about changes in value. For example, certain assets here were restrained in investment accounts which have continued to accrue value since seizure. The jury should be properly instructed that any subsequent changes in value are irrelevant to the question of nexus. Furthermore, language such as "obtained directly or indirectly" may be familiar to lawyers, but risks jury confusion without explaining how proceeds of an offense may be converted between different forms, but remain proceeds nonetheless. The government's proposed instruction adequate addresses these issues, and should be given as originally proposed.

**Response to Modified Jury Instruction No. 11 (Modified No. 13):**

The government objects to Defendants' modification to this proposed jury instruction on two grounds:

First, as described above in response to Defendants' modifications to instruction No.1, Defendants' attempt to limit forfeiture to the proceeds of the ads charged as substantive courts is incorrect and no supported by the law of the case.

Second, Defendants' modifications are likely to be confusing to the jury, as Defendants' modification fails to define what a "nexus" is for the jury, as such, the jury is left to speculate as to how to meet the second element proposed by the defense. As the Seventh Circuit's model jury instructions note – the authority relied on by Defendants – "For the most part, the nexus requirement of the Rule will be met under the statutory requirement of what property is subject to forfeiture." See William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit (2023 Ed.), p. 432 (Definition of Nexus Instruction). Here, to the extent that the jury finds that the identified assets are indeed proceeds of the conduct alleged in Count 1, the nexus requirement will necessarily have been met.

**Response to Modified Jury Instruction No. 12 (Modified No. 13):**

The government objects to Defendants' modification to this proposed jury instruction for many of the same reasons identified in response to Defendants' deletion of proposed jury instruction No. 9. The jury will be helped by being instructed on the relevant scope of forfeiture under the money laundering statutes before being instructed on the definitions of the relevant terms, which will also help distinguish between the relevant theories of forfeiture being put forth.

**Response to Modified Jury Instruction No. 13 (Modified No. 13):**

The government objects to Defendants' deletion of this proposed jury instruction.

Title 18, United States Code, Section 982(a)(1) provides for the criminal forfeiture of any property, real or personal, that is "involved in" a transaction or attempted transaction in violation 18 U.S.C. § 1956, 1957, or 1960. This language, "involved in," is

distinct from that used in the broader civil forfeiture statue, 18 U.S.C. § 981(a)(1)(C), which authorizes seizure of the "proceeds" of a wide range of offenses. See 18 U.S.C. § 981(a)(1)(C) (referring to "property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [enumerated statutes]").  For this reason, courts have held that forfeiture pursuant to the money laundering statutes must necessarily have a meaning distinct from the mere proceeds of crime. *See generally* Stefan Cassela, Asset *Forfeiture Law in the United States*, 2d, § 27-7 ("[A]s the courts have repeatedly held, the defendant in a criminal case or the claimant in a civil forfeiture case has no reason to complain that the Government is seeking to forfeit more than the proceeds of the underlying crime" and collecting cases). Courts have also recognized that the legislative history supports this conclusion. *See In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 563 (S.D.N.Y. 2011) (*quoting* 134 Cong. Record S17365 (daily ed. Nov. 10, 1988) ("[T]he term 'property involved' is intended to include the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.")).

One of the chief goals of forfeiture is to remove the profit from crime by separating the criminal from his or her dishonest gains, and to divest criminal actors from the apparatus allowing them to engage in criminal activity. *See United States v. Newman*, 659 F.3d 1235, 1242 (9th Cir. 2011); *United States v. Casey*, 444 F.3d 1071, 1073 (9th Cir. 2006). Consistent with these holdings, in cases involving a money laundering offense, numerous courts have held that the forfeiture statutes pertaining to money laundering offenses permit the government to seize and forfeit "untainted property" commingled with "tainted" property, when that untainted property facilitates the laundering offense, such as by disguising the nature, source, location, or control of the tainted funds. *See United States v. Kivanc*, 714 F.3d 782, 794-95 (4th Cir. 2013) ("[W]hen legitimate funds are commingled with property involved in money laundering or purchased with criminally derived proceeds, the entire property, including the legitimate funds, is subject to forfeiture.");

*United States v. Huber*, 404 F.3d 1047, 1056-1058 (8th Cir. 2005) (where defendant commingled fraud proceeds and legitimate crop sale proceeds, then transferred commingled funds, government was entitled to total amount involved in the money laundering transactions with no deduction for the amount of legitimate sales); *see also United States v. Guerrero*, 2021 WL 2550154, *9 (N.D. Ill. June 22, 2021) (money from unknown source that was commingled with fraud proceeds facilitated the concealment laundering of the fraud proceeds and, accordingly, property acquired with the commingled funds was forfeitable); *United States v. Romano*, 2021 WL 1711633, *5-6 (E.D.N.Y. Apr. 29, 2021) (by laundering fraud proceeds through their personal bank accounts, to commingle the proceeds with other funds for a concealment laundering purpose, the defendants made the commingled funds forfeitable as facilitating property); *United States v. Coffman*, 859 F. Supp. 2d 871, 876-77 (E.D. Ky. 2012) (concluding that clean funds in bank account were subject to forfeiture because they had "been co[m]mingled with tainted funds for the purpose of obfuscating the origin or existence of the tainted money"); *United States v. $1,761 in U.S. Currency*, No. 3:09–cv–814–J–34JRK, 2011 WL 4552354, *9 (M.D. Fla. Sept. 30, 2011) (legitimate funds may be forfeited if commingled with drug proceeds by a drug dealer). As such, this instruction accurately defines when property is "involved in" a money laundering violation for the jury.

### Response to Modified Jury Instruction No.14:

The government has no objection to Defendants' modification to this proposed jury instruction.

### Response to Modified Jury Instruction No.15:

Defendants' proposed Jury Instruction No. 15 (First Amendment) should not be given. First, the instruction is unnecessary. The jury has already been instructed on the First Amendment's application to this case. There is no need to provide an additional instruction

that would apply to the proceeds of Defendants' criminal conduct and/or to Defendants' laundering of those funds.

Second, Defendants' authorities do not support the instruction. *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Bd.*, 502 U.S. 105 (1991), invalidated as facially overbroad New York's "Son of Sam" statute, which required that a "criminal" place into an escrow account any income from works that he authored "on *any* subject, provided that they contained the author's thoughts or recollections about his crime, however tangentially or incidentally." 502 U.S. at 121. As the Court observed, a person never accused or charged, "but who admits in a book or other work to having committed a crime, is within the statute's coverage." *Id*. Had the statute been in effect at an earlier time, it would have applied to *The Autobiography of Malcom X* and Thoreau's *Civil Disobedience*. *Id*. at 122. The Court invalidated the statute as "significantly overinclusive" and confined its holding to that statute. *Id*. at 121-23. *Simon & Schuster* has no application here.

Moreover, *Simon & Schuster* involved content-based regulation of storytelling about an author's past—creative expression that stands on different constitutional footing than commercial speech. *See Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 562-63 (1980) ("The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."). *Simon & Schuster* also did not involve commercial speech proposing an illegal transaction, which is "categorically excluded from First Amendment protection." *United States v. Williams*, 553 US. 285, 297 (2008). Because the forfeitures concern funds derived from or traceable to prostitution advertising—speech devoid of First Amendment protection—*Simon & Schuster* is inapposite. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388 (1973) (wants ads soliciting prostitution are not protected by the First Amendment); *Coyote Pub*., *Inc. v. Miller*, 598 F.3d 592, 600-44 (9th Cir. 2010); (upholding Nevada ban on prostitution advertising); *Erotic Serv. Provider Leg. Educ. and Research Project v. Gascon*, 880 F.3d 450, 460 (9th Cir. 2018), *amended,* 881 F.3d 792 (9th Cir. 2018) (approving ordinance outlawing prostitution solicitations).  *See also*

Rodney A. Smolla, 2 RIGHTS AND LIABILITIES IN MEDIA CONTENT § 11:10 (2d ed.) ("There is no constitutional right to advertise crime.").

*Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822-23 (9th Cir. 2013), likewise contains no language that might limit Defendants' liability here. *Whiting* held that Arizona could not target day laborers for harsher punishment when, in the course of soliciting lawful day-laborer work, they violated unrelated traffic laws. *Id.* at 814, 823. It contains no analysis or discussion of whether code words or other signifiers of illegal activity may be considered in determining whether ads or solicitations propose unlawful transactions.

And, in *Whiting*, the Ninth Circuit cited with approval various formulations used by the Supreme Court in defining the outer limits of what commercial speech is categorically excluded from constitutional protection:

> Some decisions have expressly phrased the legality requirement as whether "the transactions proposed in the forbidden [communication] are themselves illegal in any way." *Va. State Bd. of Pharmacy,* 425 U.S. at 772. . . . Other decisions have used *Central Hudson's* more general "related to unlawful activity" language. *Cent. Hudson,* 447 U.S. at 564[.]

*Whiting*, 709 F.3d at 821. These Supreme Court- and Ninth Circuit-endorsed formulations do not support Defendants.

Defendants' out-of-Circuit case also misses the mark. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 107 (2d Cir. 2017), involved a challenge to a day-laborer ordinance that targeted unquestionably lawful speech— "soliciting employment of any kind." The court did not discuss coded solicitations for illegal transactions, let alone consider anything approaching the thinly-veiled prostitution ads that drove the overwhelming majority of Backpage's revenue. The Court has already ruled that Defendants cannot rely on the disguised nature of those ads to avoid accountability. (*See* Doc. 1643 at 8-9 ("[Defendants] may not . . . assert that their facilitation of unlawful business practices, i.e., publishing ads for prostitution, is activity that is protected by the First Amendment. . . . [T]o the extent that Defendants seek to invoke their First Amendment rights as a defense to the allegations that they conspired to promote and/or facilitate prostitution through veiled ads for prostitution, they are prohibited from

- 11 -

doing so.").)

**Response to Modified Jury Instruction No.16:**

The government largely has no objection to Defendants' proposed modifications to this jury instruction, or the corresponding modifications to the proposed special verdict form with one exception: the government objects to requesting that the jury identify an "amount" for forfeiture under Counts 69, 70, 83, 84. In those counts, the government is seeking forfeiture of entire real properties on the grounds these the properties themselves were involved in the charged transactional money laundering counts, and is not seeking any proposed amount in equity which might be readily divided. These assets are not alleged to be proceeds, and the question of whether such a forfeiture is disproportionate under the Eighth Amendment is one for the Court, not the jury.

Respectfully submitted this 6th day of November, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

*/s/*
KEVIN M. RAPP
MARGARET PERLMETER
PETER KOZINETS
ANDREW STONE
DAN G. BOYLE
Assistant U.S. Attorneys

AUSTIN M. BERRY
Trial Attorney

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Dan G. Boyle*
Dan G. Boyle
U.S. Attorney's Office